**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TOKA, LLC, | ) |
| | ) |
|       Plaintiff, | ) |
|   v. | ) Civil Action No. 2:26-cv-00414 |
| | ) |
| SCHEDULE A DEFENDANTS, | ) Chief Judge Cathy Bissoon |
| | ) |
|       Defendants. | ) |

**BRIEF IN SUPPORT OF APPEARING DEFENDANTS' MOTION FOR AN
ORDER TO SHOW CAUSE AND FOR SANCTIONS**

## I.    INTRODUCTION

**Plaintiff knew the Appearing Defendants since December 2025, knew they were represented by Glacier Law, and—when counsel repeatedly asked, in writing, whether these sellers were named in this case—chose to conceal the answer, not only from counsel but from this Court. That concealment is the primary basis of this Motion.**

Plaintiff obtained an extraordinary *ex parte* Temporary Restraining Order — a worldwide asset freeze and storefront shutdown — against parties it knew were represented by counsel, after that counsel had repeatedly identified the Appearing Defendants by name and Amazon Seller ID and asked, in writing, whether they were named in this case. Rather than disclose that fact to the Court, Plaintiff's counsel proceeded to obtain a sweeping *ex parte* order without ever advising the Court that the targets were represented and reachable.

This is the abusive "Schedule A" model at its most troubling: not merely lumping anonymous sellers together, but using the *ex parte* mechanism against known, represented businesses to deny them any opportunity to be heard. Plaintiff's own pre-suit correspondence

refutes the central premise of its application — that the Defendants are anonymous, untraceable foreign actors who must be enjoined in secret. The Appearing Defendants are represented by U.S. counsel who had identified them by name and Seller ID and repeatedly asked, in writing, whether they were named in this action.

The TRO should be dissolved as to the Appearing Defendants because Plaintiff obtained it by misrepresenting the very fact that justified proceeding without notice. The sole basis Plaintiff offered for *ex parte* relief was that the Defendants are anonymous, untraceable actors who would, if notified, transfer assets and disappear before they could be heard. As to the Appearing Defendants, that premise is demonstrably false, and Plaintiff knew it: these are known, represented businesses that had been dealing openly with Plaintiff's counsel for months, through counsel of record, without any attempt to flee or move assets.

Plaintiff violated the mandatory notice and certification requirements of Rule 65(b)(1) and breached the heightened duty of candor that governs a party seeking relief *ex parte*, where the court must rely on the moving party's representations without the benefit of an adversary. *Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 859 (N.D. Ill. 2023) ("In *ex parte* proceedings in particular, the Court has no choice but to rely on the plaintiff's truthfulness."); *See also* Fed. R. Civ. P. 65(b)(1); *see also* Model Rules of Pro. Conduct r. 3.3(d) (Am. Bar Ass'n 2020) (in an *ex parte* proceeding, "a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse"). The same conduct warrants an order to show cause why sanctions should not issue.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Appearing Defendants Appeared by Name Before This Court in Plaintiff's Related Action, Where Plaintiff Did Not Dispute That They Are Unconnected to Any*

*Defendant*

The Appearing Defendants are legitimate Amazon sellers represented by undersigned counsel, Glacier Law LLP. Plaintiff Toka, LLC, and its counsel, Ference & Associates, LLC, have dealt with Glacier Law regarding these very sellers since 2025, in connection with a related action by the same Plaintiff before this same Court, *Toka, LLC v. Milesstore*, No. 2:25-cv-00593-CB (W.D. Pa.) (the "593 Action").

In the 593 Action, the Appearing Defendants did not hide; they appeared, through counsel of record, and identified themselves by full corporate name, storefront, and Amazon Seller ID. **On December 9, 2025**, Glacier Law filed a Joinder on behalf of "Guangzhou Kaizichen Technology Co., Ltd. ('Kaizichen')," operating the storefront "Haodsso Direct," Seller ID A2FQDMEDEJY78E; "Bengbu YueShao E-Commerce Co., Ltd. ('YueShao')," operating the storefront "Yueshao," Seller ID A1MD9L71WI1Y0P; and "Shenzhen Shengxin Technology Co. ('Shengxin')," operating the storefront "Casesmile," Seller ID A13X88IZ7T5G1S. Joinder 2. (593 Action, Doc. 66, Ex. E). Those are the same three storefronts and Seller IDs that Plaintiff later named on Schedule "A" in this action.

On December 22, 2025, this Court entered an Order in the 593 Action addressing those filings. The Court recorded that Plaintiff "does not contest the scope of Rule 65(d)(2) or contend that any of the filers here are connected in any way to any of the Defendants in this action," and held that "it is uncontested that the TRO and PI in this case do not bind Mooye, Kaizichen, YueShao, or Shengxin." Order 1–2 (593 Action, Doc. 73, Ex. F). Plaintiff thus knew, months before applying for *ex parte* relief in this action, the full corporate identity, counsel, and Seller IDs of the Appearing Defendants — and had represented to this Court that these sellers are not connected to any defendant in Plaintiff's enforcement campaign.

Plaintiff's counsel separately confirmed this knowledge in writing. On November 25, 2025, Plaintiff's counsel corresponded with Glacier Law concerning Guangzhou Kaizichen Technology Co., Ltd. d/b/a Haodsso Direct, acknowledging that "Haodsso Direct is not a named defendant in the TRO." *See* Ex. A. Plaintiff's counsel was also informed on December 22, 2025, when Defendants' counsel reached out to Amazon to request the release of the wrongfully affected ASINs and copied Plaintiff's counsel on that email. *See* Ex. B.

### B.    *Plaintiff's Counsel Was Repeatedly Notified, in Writing, That the Appearing Defendants Were Represented and Asked Whether They Were Named in This Case*

On May 8, 2026, undersigned counsel wrote directly to Plaintiff's counsel regarding "the newly filed case, PAWD-26-cv-414," stating: "We previously represented the following clients in a related patent dispute. Could you please confirm if any of the following entities and their associated seller IDs are named as defendants in this new case?" The email then listed the sellers by name and Amazon Seller ID, including Haodsso Direct (A2FQDMEDEJY78E), Casesmile (A13X88IZ7T5G1S), and Yueshao (A1MD9L71WI1Y0P). *See* Ex. C.

Plaintiff's counsel responded on May 13, 2026. Rather than disclose the truth, counsel wrote: "To be clear, we are not confirming or denying the status of any party in Case No. 26-cv-414. While the case has been filed, no orders have been issued by the Court and no notifications or restraints have been processed at this time." *Id.* Counsel further professed not to "understand how these sellers obtained the case number." *Id.*

On May 18, 2026, undersigned counsel replied, expressly reminding Plaintiff's counsel "to ensure that any declarations or affidavits submitted to the Court in this new action are completely accurate and **do not mislead the Judge**, particularly in light of our ongoing communications." *Id.*

On May 21, 2026, following a telephone call, undersigned counsel again wrote to Plaintiff's

counsel, confirming a two-week extension and again requesting confirmation "whether our clients are included in the 26-cv-414 case," listing the same sellers and Seller IDs. *See* Ex. D. Plaintiff never disclosed that it was seeking, or had sought, *ex parte* relief against these very sellers.

### C.    *Plaintiff Obtained the Ex Parte TRO After These Communications — Without Disclosing the Representation*

Despite this record, Plaintiff applied for and obtained an *ex parte* TRO, asset freeze, and storefront restraint. The Court entered the TRO on May 27, 2026 (Doc. 23) — after every one of the communications described above. The Appearing Defendants are named on Schedule "A": Haodsso Direct (No. 27), Casesmile (No. 11), and Yueshao (No. 76).

Nowhere in Plaintiff's *ex parte* application did Plaintiff disclose that the Appearing Defendants were represented by U.S. counsel. To the contrary, Plaintiff represented to the Court that the Defendants are foreign, anonymous sellers who use aliases to avoid liability, whose identities are "difficult to attain given the fictitious names and addresses associated with the accounts." Mem. of Law in Supp. of Ex Parte Appl. 8 (Doc. 10). Plaintiff further represented that, if given notice, the Defendants could change the contents of their accounts and transfer assets. Decl. of Stanley D. Ference III ¶ 6 (Doc. 13); *accord* Mem. of Law 28–29 (Doc. 10). Those representations were the sole asserted basis for proceeding without notice.

### D.    *The Anonymity Premise Is Contradicted by Plaintiff's Own Evidence*

Plaintiff's assertion that the Defendants hide behind "fictitious names and addresses," Mem. of Law in Supp. of Ex Parte Appl. 8 (Doc. 10), is contradicted by Plaintiff's own submission. The Declaration of Dee Odell attaches Amazon "Detailed Seller Information" pages that display each seller's full registered business name, complete street address, province, postal code, and

country. *See* Decl. of Dee Odell (Doc. 12); Doc. 12-1. Plaintiff possessed this information and submitted it to the Court even as it characterized the Defendants as untraceable.

### E.    The Appearing Defendants Did Not Conceal Themselves, Transfer Assets, or Flee

Throughout the period described above, the Appearing Defendants did not hide, change identities, move assets beyond reach, or otherwise behave as the anonymous flight risks that Plaintiff's application describes. To the contrary, they appeared openly through counsel of record, identified themselves by name and Seller ID, and invited Plaintiff to confirm their status — the opposite of the conduct Plaintiff represented to the Court would occur upon notice. Had the Appearing Defendants intended to evade this dispute by relocating or dissipating assets, they had ample opportunity and incentive to do so during the months of open correspondence that preceded the *ex parte* application; they did not.

## III.  LEGAL STANDARD

Like a preliminary injunction, a temporary restraining order is "an extraordinary and drastic remedy ... that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). When sought *ex parte*, Rule 65(b)(1) imposes two strict, mandatory requirements: the movant must show, through specific facts in an affidavit or verified complaint, that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," Fed. R. Civ. P. 65(b)(1)(A); and the movant's attorney must "certif[y] in writing **any efforts made to give notice** and the reasons why it should not be required," Fed. R. Civ. P. 65(b)(1)(B). Failure to satisfy either prong is fatal to an ex parte application.

This Court's own Practices and Procedures reinforce these limits, directing that "[a]ny *ex parte* contact with the Court should be avoided" and that "no temporary restraining order will

issue … when the opposing party has been served" or "when the motion provides no certification indicating that prompt service cannot be accomplished." Practices and Procedures of Judge Cathy Bissoon § II.C.

Under Rule 65(b)(4), "[o]n 2 days' notice to the party who obtained the order without notice — or on shorter notice set by the court — the adverse party may appear and move to dissolve or modify the order." Finally, federal courts possess inherent power to sanction a party that has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33, 111 S. Ct. 2123, 2126, 115 L. Ed. 2d 27 (1991).

A movant must also establish that it is *likely* to suffer irreparable harm in the absence of relief; in this Circuit, no such harm is presumed, even in a Lanham Act case, and the movant must make "a clear showing" of likely, imminent injury. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210, 214 (3d Cir. 2014). A plaintiff's own delay in seeking relief undercuts that showing: "Delay in seeking enforcement of those rights ... tends to indicate at least a reduced need for such drastic, speedy action." *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 118 (3d Cir. 2013); *see also Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 383 (D.N.J. 2002) (extended delay "knocks the bottom out of any claim of immediate and irreparable harm"); *New Dana Perfumes v. The Disney Store, Inc.*, 131 F.Supp.2d 616, 630 (M.D.Pa.2001) (delay of two months in sending demand letter and five months in moving for relief precludes preliminary injunction); *Warner Lambert Co.*, 718 F.Supp. at 393–95 (seven-month delay and failure to move against other potential infringers "conclusively refutes" claim of irreparable *384 harm); *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 222 (2d Cir.1999) (delay is "perhaps more" important in dilution cases than in infringement cases); *Tough Traveler, Ltd. v. Outbound Prods.*,60 F.3d 964, 968 (2d Cir.1995) ("[D]elay alone may justify denial of a

9

preliminary injunction.") (citation omitted).

## IV.  ARGUMENT

### A.    *The TRO Should Be Dissolved Because Plaintiff Violated Rule 65(b) and Its Duty of Candor by Failing to Notify Known Counsel.*

Plaintiff's failure to notify the Appearing Defendants' known counsel is a fatal defect in its application for *ex parte* relief. A party's duty of candor is heightened in an *ex parte* proceeding, where the court must act on that party's representations alone, without the testing that an adversary provides. *See* Model Rules of Pro. Conduct r. 3.3(d) (Am. Bar Ass'n 2020); Pa. Rules of Pro. Conduct r. 3.3(d) (2024) (same). Plaintiff breached that heightened duty.

Here, notice was not merely possible—it was effortless, and indeed had already occurred. Plaintiff's counsel was engaged in active email and telephone communications with counsel for the Appearing Defendants regarding these exact sellers and this exact case number. A single reply email or telephone call would have produced an adversarial hearing. Instead, Plaintiff's counsel avoided the issue—not only with undersigned counsel, but more importantly, before the Court.

Nor is there any credible argument that notice would have rendered the relief fruitless. Plaintiff's sole asserted justification for proceeding *ex parte* was that the Defendants would, upon notice, change the contents of their accounts and transfer assets, rendering relief meaningless. Decl. of Stanley D. Ference III ¶ 6 (Doc. 13). As to the Appearing Defendants, that prediction is refuted by their own conduct: they had been dealing with Plaintiff's counsel openly, through counsel of record, for months before the application — identifying themselves by name and Seller ID and asking to confirm their status. A party intent on dissipating assets or vanishing upon notice does not spend months announcing itself through counsel and inviting confirmation

of its status. If the Appearing Defendants had any intention of fleeing or moving assets beyond the Court's reach, they had every opportunity to do so during that period and did not. Plaintiff's representation that notice would be futile was therefore not merely unsupported as to these Defendants — it was contradicted by facts squarely within Plaintiff's knowledge.

The only logical inference from Plaintiff's decision to withhold notice is that it sought to prevent the Appearing Defendants from appearing and presenting the very arguments contained in this Motion. That is a *per se* violation of Rule 65(b) and an abuse of the judicial process. The TRO should be dissolved as to the Appearing Defendants on that basis alone.

Plaintiff's Rule 65(b)(1)(B) certification compounds the violation. Counsel cannot have honestly certified "the reasons why [notice] should not be required" while sitting on written notice that the targets were represented and reachable. A certification that omits the single most material fact — that the adverse parties were known, represented, and had asked to be heard — does not satisfy Rule 65(b)(1)(B); its deficiency alone necessitates denial of ex parte relief.

### B.    *Plaintiff Cannot Show the Immediate, Irreparable Harm That Ex Parte Relief Requires, Because It Waited Months After Learning of the Appearing Defendants.*

*Ex parte* relief requires a showing that "immediate and irreparable injury" will occur "before the adverse party can be heard." Fed. R. Civ. P. 65(b)(1)(A). As to the Appearing Defendants, Plaintiff's own conduct forecloses that showing.

Plaintiff has known of the Appearing Defendants, their identities, their counsel, and their listings since 2025. Indeed, Plaintiff did not merely know of them; in the related 593 Action it caused their listings to be suppressed **under an injunction to which they were not parties**, prompting their appearance before this Court in December 2025. *See* Joinder 2–5 (593 Action, Doc. 66, Ex. E); Order 1–2 (593 Action, Doc. 73, Ex. F). Having had the Appearing Defendants

11

squarely in view since last year, Plaintiff nevertheless waited months — until March 2026 — before seeking an *ex parte* TRO against them in this action. A party that sits on its asserted rights for months cannot credibly claim that an injury is so urgent it must be redressed in secret, before the adverse party can be heard.

### C.    *The Balance of the Equities and the Public Interest Favor Dissolution.*

The equities favor dissolution. Plaintiff secured a sweeping *ex parte* restraint against represented parties by withholding the single fact that would have defeated the no-notice request — that those parties were known, reachable, and had asked to be heard. Dissolving the order as to the Appearing Defendants restores nothing more than the adversarial process that Rule 65(b) presumes. The public interest is disserved, not served, when the *ex parte* mechanism is used against known, represented parties to deny them a hearing; it is vindicated by requiring that disputes between identified, represented litigants be resolved on notice. *See* Fed. R. Civ. P. 65(b)(1).

### D.    *The Court Should Issue an Order to Show Cause Why Plaintiff Should Not Be Sanctioned.*

The same conduct that compels dissolution warrants an order to show cause regarding sanctions. Plaintiff did not merely obtain an improvident order; it did so after being told in writing that the Appearing Defendants were represented, after being asked directly whether they were named in this case. Misrepresenting known, represented defendants as anonymous flight risks — and concealing the representation from the Court in an *ex parte* certification — is conduct undertaken in "bad faith, vexatiously, wantonly, or for oppressive reasons" *Chambers*, 501 U.S. at 45–46.

This Court has already shown Plaintiff measured restraint once. In the 593 Action, after

Plaintiff's enforcement of its injunction reached the Appearing Defendants and other non-parties, the Court clarified the order's limits but declined to impose sanctions, finding them "not warranted" at that stage. Order 2 (593 Action, Doc. 73, Ex. F). That restraint addressed what may then have appeared to be over-enforcement. The conduct now before the Court is of a different character. Rather than correct course after the 593 clarification, Plaintiff returned — against the same sellers, before the same Court — and obtained secret relief by withholding from the Court the very facts it had previously placed on the record: that these sellers are identified, represented, and, by Plaintiff's own prior representation, unconnected to any defendant. An inquiry into sanctions is appropriate not to revisit the Court's earlier judgment, but because the earlier, measured response did not deter a repetition of the conduct in a more serious form — the deliberate concealment of material facts to secure *ex parte* relief.

An order to show cause is the appropriate first step. It permits Plaintiff to be heard while allowing the Court to determine whether sanctions — including the reasonable attorneys' fees and costs the Appearing Defendants have been forced to incur to obtain relief from an order procured without the required candor — are warranted. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017) (inherent-power sanctions must be causally linked to the misconduct under a but-for standard). The Appearing Defendants reserve the right to quantify the appropriate amount upon the Court's issuance of an order to show cause.

## V.    CONCLUSION

For the foregoing reasons, the Appearing Defendants respectfully request that the Court (1) issue an Order to Show Cause why the Temporary Restraining Order (Doc. 23) should not be immediately dissolved as to the Appearing Defendants; (2) following such hearing, dissolve the Temporary Restraining Order as to the Appearing Defendants; and (3) issue an Order to Show

Cause why Plaintiff and its counsel should not be sanctioned for obtaining ex parte relief against

parties they knew to be represented while concealing that representation from the Court.

Respectfully submitted,

/s/ Ruoting Men
Ruoting Men, Esq.
GLACIER LAW LLP
506 Second Avenue, Suite 1516
Seattle, WA 98104
Tel: (212) 729-5049
ruoting.men@glacier.law

Counsel for the Appearing Defendants

14

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2026, the foregoing was filed and served upon all counsel of record through the Court's CM/ECF system, which will send notification of such filing to all counsel of record, including counsel for Plaintiff.

Respectfully submitted,

/s/ Ruoting Men
Ruoting Men, Esq.
GLACIER LAW LLP
506 Second Avenue, Suite 1516
Seattle, WA 98104
Tel: (212) 729-5049
ruoting.men@glacier.law

Counsel for the Appearing Defendants

15