# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TOKA, LLC,

          Plaintiff,

          v.

SCHEDULE A DEFENDANTS,

          Defendants.

**No. 2:26-cv-00414-CB**

**Defendant Mooye's Brief in Opposition to
Plaintiff's Motion for Preliminary Injunction**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  THE COURT LACKS PERSONAL JURISDICTION OVER MOOYE ................................. 2

    A.  The Only Pennsylvania Contact Plaintiff Identifies Is a Purchase Manufactured by Plaintiff's Own Counsel ................................................................................ 4

    B.  The Mere Accessibility of an Amazon Storefront Does Not Establish Minimum Contacts 4

    C.  Rule 4(k)(2) Does Not Apply Because Mooye Is Subject to Jurisdiction in Washington . 5

III. PLAINTIFF LACKS ARTICLE III STANDING .......................................................... 6

IV.  LEGAL STANDARD FOR PRELIMINARY INJUNCTION ............................................ 8

V.   PLAINTIFF HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS ........ 8

    A.  Plaintiff's Design Patent Infringement Theory Corresponds to No Claim in the Complaint, and Plaintiff Cannot Succeed on Claims It Never Pleaded Against Mooye ........ 8

    B.  Plaintiff Is Not Likely to Succeed on Count II, the Only Lanham Act Claim Against Mooye ............................................................................................................ 9

    C.  The Common Law Claim (Count V) Fails With the Lanham Act Claim ........................ 13

    D.  Plaintiff's Bad Faith and Unclean Hands Independently Foreclose the Equitable Relief It Seeks ............................................................................................................ 14

VI.  PLAINTIFF CANNOT SHOW IRREPARABLE HARM ............................................ 16

    A.  Irreparable Harm May Not Be Presumed ............................................................ 16

    B.  Plaintiff's Delay Refutes Any Claim of Irreparable Harm ...................................... 16

    C.  Plaintiff's Alleged Harm Is Fully Compensable by Money Damages .......................... 17

    D.  Plaintiff's Claimed Reputational and Goodwill Harm Is Speculative and Unsupported . 18

VII. THE BALANCE OF HARDSHIPS WEIGHS DECISIVELY AGAINST AN INJUNCTION AS TO MOOYE ................................................................................................................ 18

VIII. THE PUBLIC INTEREST DOES NOT SUPPORT A PRELIMINARY INJUNCTION AGAINST MOOYE .................................................................................................................. 20

IX.    CONCLUSION ................................................................................................................. 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)............................................................................................3,4

*Continental Grp., Inc. v. Amoco Chems. Corp.,*
    614 F.2d 351 (3d Cir. 1980)...............................................................................18

*ECB USA, Inc. v. Savencia Cheese USA, LLC,*
    148 F.4th 1332 (11th Cir. 2025)............................................................................4

*Ferring Pharms., Inc. v. Watson Pharms., Inc.,*
    765 F.3d 205 (3d Cir. 2014)................................................................................16

*Finkelman v. NFL,*
    810 F.3d 187 (3d Cir. 2016)..................................................................................7

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.,*
    847 F.2d 100 (3d Cir. 1988)................................................................................17

*Gonzalez v. BAM Trading Servs., Inc.,*
    No. 2:24-CV-08521 (BRM), 2024 WL 4589791 (D.N.J. Oct. 28, 2024)...........................2

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC,*
    774 F.3d 192 (3d Cir. 2014)..................................................................................9

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,*
    527 U.S. 308 (1999)............................................................................................20

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984)..............................................................................................3

*Highmark, Inc. v. UPMC Health Plan, Inc.,*
    276 F.3d 160 (3d Cir. 2001)................................................................................14

*IMO Indus., Inc. v. Kiekert AG,*
    155 F.3d 254 (3d Cir. 1998)..................................................................................5

*In re Diet Drugs,*
    282 F.3d 220 (3d Cir. 2002)..................................................................................3

*Instant Air Freight Co. v. C.F. Air Freight, Inc.,*

882 F.2d 797 (3d Cir. 1989)............................................................................................16,17

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
        256 F.3d 548 (7th Cir. 2001)................................................................................6

*Joint Stock Society v. UDV North America, Inc.*,
        266 F.3d 164 (3d Cir. 2001)................................................................................7

*KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*,
        826 F. Supp. 2d 782 (E.D. Pa. 2011)................................................................13

*Kos Pharms., Inc. v. Andrx Corp.*,
        369 F.3d 700 (3d Cir. 2004)............................................................................8,18

*Lanin v. Borough of Tenafly*,
        515 F. App'x 114 (3d Cir. 2013)........................................................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
        572 U.S. 118 (2014)......................................................................................11,12

*Lujan v. Defenders of Wildlife*,
        504 U.S. 555 (1992).............................................................................................6

*Marten v. Godwin*,
        499 F.3d 290 (3d Cir. 2007)................................................................................3

*New Dana Perfumes Corp. v. The Disney Store, Inc.*,
        131 F. Supp. 2d 616 (M.D. Pa. 2001)................................................................16

*NexLearn, LLC v. Allen Interactions, Inc.*,
        859 F.3d 1371 (Fed. Cir. 2017)...........................................................................4

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
        290 F.3d 578 (3d Cir. 2002)...........................................................................10,18

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
        653 F.3d 241 (3d Cir. 2011)...........................................................................9,11

*Pharmacia Corp. v. Alcon Labs., Inc.*,
        201 F. Supp. 2d 335 (D.N.J. 2002)....................................................................16

*POM Wonderful LLC v. Coca-Cola Co.*,
        573 U.S. 102 (2014)...........................................................................................12

*Reilly v. City of Harrisburg*,
        858 F.3d 173 (3d Cir. 2017).........................................................................8,16,18

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999)........................................................................................................2

*Saudi v. Acomarit Maritimes Servs., S.A.*,
    114 F. App'x 449 (3d Cir. 2004).....................................................................................5

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).........................................................................................................6

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*,
    No. 2:19-cv-01715 (D. Ariz. Jan. 16, 2020).................................................................13

*Toka, LLC v. Milesstore*,
    No. 2:25-cv-00593 (W.D. Pa.)................................................................................passim

*Touchcom, Inc. v. Bereskin & Parr*,
    574 F.3d 1403 (Fed. Cir. 2009).......................................................................................6

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003).............................................................................................4

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021).........................................................................................................6

*Walden v. Fiore*,
    571 U.S. 277 (2014)....................................................................................................3,4,5

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)...........................................................................................................16

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997)................................................................................5

## I.  INTRODUCTION

This is the second time that Plaintiff has used emergency, no-notice process to strip the Amazon listings of the same known, represented seller. The first time, in the related action *Toka, LLC v. Milesstore*, No. 2:25-cv-00593 (W.D. Pa.), Mooye was not even a defendant; this Court rejected Plaintiff's overreach, held that its orders do not bind Mooye, and instructed Plaintiff that any rights against Mooye had to be pursued by motion. Rather than heed that instruction, Plaintiff filed this action and obtained, ex parte and on a $5,000 bond shared among 136 defendants, an order freezing the entirety of Mooye's funds and inventory and delisting its products. This is the sort of extraordinary relief typically reserved for anonymous counterfeiting defendants, yet it has been deployed against an identified seller, represented by counsel, in a garden-variety labeling dispute that Plaintiff could have raised with Mooye in a single email.

That relief cannot stand, and the requested preliminary injunction should be denied, for at least the reasons provided in this brief. For the same reasons, the ex parte temporary restraining order and asset freeze should be dissolved as to Mooye.

First, the Court lacks personal jurisdiction over Mooye. The only Pennsylvania contact Plaintiff identifies is a single purchase that Plaintiff's own counsel manufactured, designating Pennsylvania as the point of sale and shipping the product to a Pennsylvania address. A contact created by the plaintiff cannot support Mooye's minimum contacts, and the mere accessibility of an Amazon storefront adds nothing. Nor can Plaintiff resort to Rule 4(k)(2): that rule reaches a foreign defendant only when it is not amenable to suit in any state, but Mooye is subject to jurisdiction in the State of Washington, and specifically, the United States District Court for the Western District of Washington.

1

Second, Plaintiff lacks Article III standing. Plaintiff is one of many sellers of UL-compliant outlet extenders, so any sales it claims were diverted are dispersed across the entire field of compliant competitors, making its individualized injury speculative and unattributable to Mooye in particular.

Third, Plaintiff cannot show a likelihood of success on the merits. Of the five counts in the Complaint, only Count II (and the parallel common law claim in Count V) names Mooye, yet the TRO restrains Mooye from conduct alleged against other defendants in Counts I and IV. And the single claim that does name Mooye fails on its own terms: Mooye's listings state truthfully that the product "has a UL/FCC Report," Mooye in fact holds an actual UL test report, and Plaintiff has offered no evidence of consumer deception. Moreover, Plaintiff's own bad faith and unclean hands independently foreclose the equitable relief it seeks.

Fourth, Plaintiff cannot show irreparable harm. The accused listings have been public since September 2, 2025, yet Plaintiff waited more than seven months, through an entire related litigation, before seeking emergency relief, and the injury it identifies, displaced sales, is the quintessential economic loss fully compensable in money.

The balance of hardships and the public interest confirm what the gateway factors already establish: a truthful, lower-priced competitor should not be driven from the marketplace by a no-notice asset freeze in a dispute that belongs in the ordinary adversarial process, on notice.

Accordingly, the preliminary injunction should be denied as to Mooye.

## II. THE COURT LACKS PERSONAL JURISDICTION OVER MOOYE

Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). "The existence of personal jurisdiction, being a necessary element to a

federal court's authority, is a threshold issue a court should address before turning to the merits of a preliminary injunction application." *Gonzalez v. BAM Trading Servs., Inc.*, No. 2:24-CV-08521 (BRM), 2024 WL 4589791, at *5 (D.N.J. Oct. 28, 2024) (citing *In re Diet Drugs*, 282 F.3d 220, 229 (3d Cir. 2002), where the Court held that "[b]ecause there exists a strong policy to conserve judicial time and resources, we have held that preliminary matters such as ... personal jurisdiction ... should be raised and disposed of before the court considers the merits or quasi-merits of a controversy."). Plaintiff bears the burden of establishing personal jurisdiction over defendants. *See Marten v. Godwin*, 499 F.3d 290, 296-97 (3d Cir. 2007). Because Plaintiff cannot carry that burden here, the requested preliminary injunction against Mooye must be denied. Mooye raises this defense at the threshold and, in addressing the remaining issues below, does not waive but expressly preserves its objection to personal jurisdiction.

Pennsylvania's long-arm statute 42 Pa. Cons. Stat. § 5322(b) provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States and based on the most minimum contact with the Commonwealth allowed under the Constitution of the United States." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). Plaintiff does not argue that this Court has general jurisdiction over Mooye. Accordingly, we are only concerned with whether this Court has specific jurisdiction. Specific jurisdiction requires that Mooye purposefully directed its activities at Pennsylvania, that Plaintiff's claims arise out of those activities, and that the exercise of jurisdiction comports with fair play and substantial justice. *See id.* Those contacts must arise from the defendant's own contacts with the forum, not contacts the plaintiff or third parties created, and cannot rest on the plaintiff's unilateral activity. *See Walden v. Fiore*, 571 U.S. 277, 284–86 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

**A. The Only Pennsylvania Contact Plaintiff Identifies Is a Purchase Manufactured by Plaintiff's Own Counsel**

Plaintiff's entire jurisdictional showing as to Mooye is a single transaction that Plaintiff's counsel created. Plaintiff's counsel Dee Odell declares that he "designate[d] Pennsylvania as the point of purchase and delivery," and shipped the products to "the Pennsylvania Address." (Odell Decl. ¶¶ 3–6.) A contact the plaintiff manufactures for litigation cannot establish minimum contacts. *See ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1342–43 (11th Cir. 2025) (where the Court held that a plaintiff's decision to route its activity through forum-state counsel unilaterally created the only contact). Jurisdiction must rest on "actions by the defendant himself that create a substantial connection with the forum State." *See Burger King*, 471 U.S. at 475; *Walden*, 571 U.S. at 284. Courts "have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284. But for Plaintiff's counsel's own order, Plaintiff cannot establish that Mooye has any contacts with Pennsylvania.

**B. The Mere Accessibility of an Amazon Storefront Does Not Establish Minimum Contacts**

What remains is an Amazon storefront accessible in Pennsylvania and the abstract availability of shipping and tax collection. Operating an interactive website does not, without more, subject a seller to suit wherever the site can be reached; the plaintiff must show the defendant "purposefully availed" itself of the forum by "directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003); *see also NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378–79 (Fed. Cir. 2017) ("it

4

cannot be that the mere existence of an interactive website . . . is 'suit-related conduct . . . creat[ing] a substantial connection with the forum State'").

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, on which Plaintiff heavily relies in its Motion for TRO, underscores the gap: the *Zippo* court found jurisdiction only because the defendant had thousands of actual contracts with Pennsylvania residents. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1125–27 (W.D. Pa. 1997). Here, Plaintiff identifies no genuine third-party Pennsylvania sale by Mooye, and its allegation that Defendants "derive substantial revenue" from Pennsylvania is pleaded solely "upon information and belief" (Compl. ¶ 12), a conclusory assertion that cannot carry Plaintiff's burden.

To the extent Plaintiff relies on a tortious injury theory under 42 Pa. Cons. Stat. § 5322(a)(4) for its Lanham Act count, that theory fails as well. Injury to a plaintiff or its counsel located in Pennsylvania is not enough. The defendant must have expressly aimed its conduct at the forum. *See Walden*, 571 U.S. at 287–90; *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998) (holding that Plaintiff must "demonstrate that the defendant expressly aimed its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity."). Here, Plaintiff alleges no Pennsylvania-directed conduct beyond the generic accessibility of Amazon listings.

**C. Rule 4(k)(2) Does Not Apply Because Mooye Is Subject to Jurisdiction in Washington**

Plaintiff's fallback theory invokes Rule 4(k)(2), the "federal long-arm statute," which authorizes jurisdiction over a foreign defendant only when (1) the claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process. *See Saudi v. Acomarit Maritimes Servs.*,

*S.A.*, 114 F. App'x 449, 455 (3d Cir. 2004). A defendant defeats the rule by identifying a state in which it is amenable to suit. *See Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009); *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001). Mooye hereby identifies the State of Washington as a forum in which it is subject to personal jurisdiction, and submits that Plaintiff's claims against Mooye should be brought in the United States District Court for the Western District of Washington.

Every seller on Amazon.com is required to agree to the Amazon Services Business Solutions Agreement ("Amazon Agreement") as a condition of listing products. The Amazon Agreement provides that the "Governing Courts" means "the state or Federal court in King County, Washington." *See* Exhibit B (Amazon Services Business Solutions Agreement) at 8. Mooye has consented to suit in Washington under that agreement. Because Mooye expressly identifies the State of Washington (and specifically, the Western District of Washington) as a forum where it is subject to personal jurisdiction, Rule 4(k)(2) is not available. *See Touchcom*, 574 F.3d at 1415.

For these reasons, the Court lacks personal jurisdiction over Mooye and the preliminary injunction sought against Mooye should be denied.

### III. PLAINTIFF LACKS ARTICLE III STANDING

Article III standing is a threshold requirement that Plaintiff must establish for each claim and each form of relief it seeks, and Plaintiff must maintain its personal interest in the dispute at all stages of litigation. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing requires an injury that is concrete, particularized, and "actual or imminent," fairly traceable to the challenged conduct, and likely to be redressed by the relief sought. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan*,

504 U.S. at 560–61. Where the causal chain depends on speculation about the independent choices of many third parties, standing fails. *See Finkelman v. NFL*, 810 F.3d 187, 193–94, 200–02 (3d Cir. 2016).

Plaintiff's theory does not withstand scrutiny. Plaintiff alleges that Mooye falsely represents that its outlet extenders are UL-certified, and that those misrepresentations divert sales away from Plaintiff. But Plaintiff is only one of many sellers offering UL-compliant outlet extenders. Even assuming arguendo that Mooye has made representations that deceive some consumers, a consumer who buys a falsely labeled product instead of a compliant one was not necessarily, or even probably, going to buy from Plaintiff. Any diverted sales are dispersed across the entire field of compliant competitors, and Plaintiff's share of that diffuse, market-wide diversion is wholly speculative. That is precisely the speculative, attenuated injury that cannot establish Article III standing. *See Finkelman*, 810 F.3d at 200–02. The Third Circuit affirmed dismissal of a Lanham Act false-advertising claim for lack of Article III standing on analogous reasoning in *Joint Stock Society v. UDV North America, Inc.*, 266 F.3d 164, 176-77 (3d Cir. 2001), where the challenged advertising harmed every competitor in the market alike, rendering the plaintiffs' claimed diversion speculative and not fairly traceable to the defendants' allegedly false representation.

The traceability defect is even more pronounced for Mooye. Unlike the Count I defendants, who are alleged to have used Plaintiff's own product images, Mooye is nowhere alleged to have done so. Without any such borrowed imagery, nothing connects a consumer's purchase from Mooye to Plaintiff rather than to any of the other compliant sellers. There is no mechanism by which Mooye's conduct could divert a sale that would otherwise have gone to Plaintiff. Plaintiff thus cannot satisfy the traceability requirement as to Mooye.

Plaintiff has therefore failed to establish Article III standing, and the preliminary injunction should be denied as to Mooye on that basis alone.

## IV. LEGAL STANDARD FOR PRELIMINARY INJUNCTION

"A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). "Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Id.*

In this Circuit, likelihood of success and irreparable harm are "gateway factors" the movant must establish before the Court reaches the balance of equities or the public interest; a failure on either is dispositive. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

## V. PLAINTIFF HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS

### A. Plaintiff's Design Patent Infringement Theory Corresponds to No Claim in the Complaint, and Plaintiff Cannot Succeed on Claims It Never Pleaded Against Mooye

Plaintiff's motion for TRO devotes its first and most prominent merits argument to design patent infringement, asserting that it "Will Prevail on Its Design Patent Infringement Claim." *See* Plaintiff's Memorandum of Law in Support of Ex Parte Application for Temporary Restraining Order ("Plaintiff's TRO Memorandum") § III.B.1.a. However, the Complaint pleads no patent claim at all. Counts I through V are each styled "Federal Unfair Competition" under Section 43(a) of the Lanham Act or common law unfair competition. Not one count arises under

35 U.S.C. § 271. Although the Complaint's prayer for relief nonetheless demands patent remedies under § 271 and its jurisdictional allegations invoke § 281 (Compl. ¶¶ 9–10; Prayer ¶¶ 3–4), those scattered references cannot substitute for a pleaded patent count. Plaintiff cannot establish a likelihood of success on a claim that is not in the case. To the extent the TRO was granted on a finding that Plaintiff is likely to prevail on patent infringement, that finding has no pleaded claim to support it and cannot sustain continued relief against Mooye.

Moreover, of the five counts, Mooye (Defendant No. 1) is named in only two: Count II (passing off fully assembled product as meeting applicable UL standards) and Count V (common law unfair competition). *See* Dkt. 1 at 20, 24. Mooye is not named in Count I (use of Plaintiff's images in advertisements and delivering a product that differs from what is shown in the images), Count III (falsely stating products are ETL certified), or Count IV (falsely representing products are grounded). *See* Dkt. 1 at 19, 22, 23. Plaintiff therefore has no likelihood of success against Mooye on the image, ETL, or grounded theories, claims that Plaintiff never charged against Mooye. Nevertheless, the TRO restrains Mooye from precisely that conduct, including using Plaintiff's images and falsely representing that products are grounded. *See* Dkt. 23 (Sealed TRO) at 5. Relief cannot be predicated on a likelihood of success that Plaintiff has not even attempted to plead against Mooye.

**B. Plaintiff Is Not Likely to Succeed on Count II, the Only Lanham Act Claim Against Mooye**

The single false advertising theory Plaintiff actually asserts against Mooye is that Mooye "pass[es] off [a] fully assembled product as meeting applicable UL standards." *See* Dkt. 1 at 20. To prevail under Section 43(a), Plaintiff must prove "1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at

least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014). Plaintiff cannot make that showing.

First, the operative listing is not literally false. Each of Mooye's accused listings (ASINs: B0FPF7TYS2 and B0FVRDGRH3) states that the product has a "UL and FCC Report," not that it is "UL certified." *See* Composite Exhibit 1 to Declaration of Dee Odell in Support of Plaintiff's Ex Parte Application for TRO.

The distinction is meaningful. A UL certification mark indicates that a product has been evaluated and found to comply with specified standards and is manufactured under a factory surveillance system, distinguishing it from a one-time test report. *See* UL Solutions, *Third-Party Certification of Building Materials*, https://www.ul.com/news/third-party-certification-building-materials (last visited June 15, 2026). Plaintiff itself has embraced precisely this distinction: in the related action, Plaintiff's own response argued that "testing to a UL standard is not the same as being UL certified," citing to UL Solutions, *Is There an E-Bike in Your Future*, https://www.ul.com/there-e-bike-your-future#:~:text=UL%20Certified%20vs.,using%20our%20 online%20reporting%20tool (last visited June 15, 2026). *See Toka, LLC v. Milesstore*, No. 2:25-cv-00593, Dkt. 70 at 3-4 (W.D. Pa. Dec. 16, 2025) (attached as Exhibit D). A seller can therefore truthfully state that its product has a UL report, describing testing to a standard, without

representing that the product is UL certified. This distinction defeats Plaintiff's false advertising theory.

Mooye in fact holds a UL test report reflecting testing to the applicable UL standard (*see* Exhibit A), together with an FCC report and an FCC declaration of conformity. *See* Yao Decl. ¶ 4. A statement that the product "has a UL report," when the seller possesses an actual UL test report, is literally true.

Second, absent literal falsity, Plaintiff must prove implied falsity through extrinsic evidence of actual consumer deception, and it has none. Where a claim is not literally false, deception is not presumed; the plaintiff bears the burden of producing evidence, typically consumer surveys, that the audience was actually misled. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 587 (3d Cir. 2002); *see also Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) ("If the message conveyed by an advertisement is literally true or ambiguous, however, the plaintiff must prove actual deception or a tendency to deceive, and it may do so with a properly conducted consumer survey."). Plaintiff's ex parte application for TRO contains no survey, no consumer testimony, and no evidence whatsoever that any purchaser understood "UL/FCC Report" to mean full UL certification or was deceived by it. On this record, Plaintiff cannot carry its burden of establishing the key elements that Mooye has made false or misleading statements, or that there is actual deception or at least a tendency to deceive.

Moreover, the fact that Amazon, the marketplace on which the products are sold, permitted the accused listings bearing the "UL/FCC Report" statement to be offered for sale indicates that Amazon did not treat the "UL/FCC Report" statement as misleading, further confirming the absence of any tendency to deceive.

11

Third, the count that pleads Mooye's liability is not even about this product. Count II alleges that defendants "made … materially false statements of fact about the characteristics and/or qualities of *their lights*," and that consumers relied on those statements "in making their *flashlight* purchasing decisions." Compl. ¶¶ 65, 67. The product at issue is an outlet extender, not a flashlight. A claim that misidentifies the accused product cannot support a finding that Plaintiff is likely to prove *this* defendant made *these* false statements about *this* product.

Fourth, Plaintiff falls outside the Lanham Act's zone of interests and cannot establish proximate cause. To have a cause of action under § 43(a), a plaintiff must fall within the statute's "zone of interests" and must show that its injury was "proximately caused" by the defendant's misrepresentations. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–34 (2014). Plaintiff satisfies neither.

The Lanham Act protects commercial interests in sales and reputation, not the consuming public. *See id.* at 131–32. The Section 43(a) cause of action exists "for competitors, not consumers." *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). Yet Plaintiff's own declarant states that, "[i]n addition to trying to stop the injuries and damages caused to Plaintiff's business, Plaintiff is also seeking in this lawsuit to protect purchasers from potentially confusing or disappointing purchases." (Joynt Decl. ¶ 37.) Plaintiff cannot have it both ways: to the extent it sues to vindicate consumers' or the public's interest in product safety (Joynt Decl. ¶ 37), it asserts an interest the Lanham Act does not protect; and to the extent it sues as a competitor for its own diverted sales, it cannot—for the reasons set out in Part III and below—trace any lost sale to Mooye. Either way, Plaintiff falls outside Section 43(a)'s zone of interests and cannot establish proximate cause.

A plaintiff must show "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. An injury that is "purely derivative of misfortunes visited upon a third person by the defendant's acts" is too remote to be cognizable. *Id.* So too where the plaintiff's claimed loss "is not surely attributable to" the defendant's conduct but "might instead have resulted from any number of other reasons." *Id.* at 140. Even assuming arguendo that Mooye made a false statement, Plaintiff cannot show that Mooye's representations caused consumers to withhold trade from Plaintiff specifically. With numerous compliant sellers competing for the same buyers, the link between Mooye's listings and any lost sale by Plaintiff is broken by the independent choices of consumers who, but for the alleged misrepresentation, might have purchased from any of Plaintiff's many competitors, or not at all. Because Mooye's listings neither name nor compare themselves to Plaintiff, Plaintiff is entitled to no inference of diversion and must prove actual causation. Plaintiff has not even sufficiently alleged, let alone proven, actual causation.

Even between participants in the same market, a Section 43(a) plaintiff must show that the defendant's deception actually diverted trade to it; courts decline to infer that a sale the defendant made would otherwise have gone to this plaintiff. *See ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. 2:19-cv-01715, Dkt. 32 at 15 (D. Ariz. Jan. 16, 2020) (dismissing a Section 43(a) claim where the relationship between the parties' products "warrant[ed] no inference that a profit gained by Defendant would have necessarily gone to Plaintiff").

Because Plaintiff cannot establish either the zone of interests or proximate cause, it has no cause of action under the Lanham Act and no likelihood of success on the merits.

### C. The Common Law Claim (Count V) Fails With the Lanham Act Claim

Plaintiff's remaining claim against Mooye, Pennsylvania common law unfair competition, stands or falls with the Lanham Act analysis. As Plaintiff itself acknowledges, under Pennsylvania law, "the elements necessary to prove unfair competition through false advertising parallel those elements needed to show a Lanham Act violation, absent the requirement for goods to travel in interstate commerce." *KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 807 (E.D. Pa. 2011). Because Plaintiff is not likely to prevail on its Section 43(a) theory against Mooye, it is equally unlikely to prevail on the parallel common law claim. Count V therefore provides no independent basis for relief.

**D. Plaintiff's Bad Faith and Unclean Hands Independently Foreclose the Equitable Relief It Seeks**

"The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001). Plaintiff's conduct toward Mooye, across two successive actions before this Court, bears exactly that relation, because the misconduct is the very procurement and misuse of injunctive relief against Mooye.

In the prior action, Mooye was never named on Schedule A, never served, and bore no relationship to any defendant; its accused listings did not even exist when the TRO and preliminary injunction issued. *See Toka v. Milesstore*, No. 2:25-cv-00593, Dkt. 58 at 1; Dkt. 58-1 Yao Decl. ¶¶ 2–7; Dkt. 73 at 1–2 (W.D. Pa.). Dkt. 58 and supporting materials are attached hereto as Exhibit C; Dkt. 73 is attached hereto as Exhibit E. Plaintiff nonetheless invoked those orders to have Amazon delist Mooye's product, while admitting in writing that "your client has not been named as a Defendant," and offered shifting rationales for the takedown

14

(intellectual-property infringement, then false advertising, then lack of ETL certification). *See* Exhibit C, *Toka v. Milesstore*, No. 2:25-cv-00593, Dkt. 58 at 3–4; Dkt. 58-3. This Court rejected that overreach, clarified that its orders do not bind Mooye and neither authorize nor require freezing a non-party's assets, expressly "ma[de] no determination" that any Mooye listing was infringing or false, and instructed Plaintiff that to enforce any rights against Mooye it "must first present a request for adjudication ... by motion." *See* Exhibit E, *Toka v. Milesstore*, No. 2:25-cv-00593, Dkt. 73 at 2.

Plaintiff did not heed that instruction. Instead, already knowing Mooye's true identity, its Amazon storefront address, its counsel of record, and that the only dispute was a labeling disagreement, Plaintiff filed the present action and obtained, ex parte and on a $5,000 bond, an order freezing all of Mooye's funds and inventory and delisting its products: relief typically designed for anonymous counterfeiting defendants, not for a represented seller in a known labeling dispute. Plaintiff never contacted Mooye before suit, despite easy means to do so.

Plaintiff's lack of candor did not end with the prior action. After this Court ordered Plaintiff to disclose any suit it had brought on the patents at issue against any Defendant in this case (Dkt. 21), Plaintiff's counsel filed a sworn declaration representing that this is "the only action that Toka, LLC has brought in this or any other Court against any defendant in this case." (Dkt. 30-1 ¶ 2.) That representation cannot be reconciled with the prior *Toka v. Milesstore* action, in which Toka itself was the plaintiff suing on the same patents at issue. A plaintiff that procures no-notice relief while making incomplete disclosures to the Court has not come to equity with clean hands.

Moreover, Plaintiff's position is irreconcilable with the one it took before. In the prior case Plaintiff argued that Amazon removed Mooye's listing through Amazon's own contractual

15

authority under the Business Solutions Agreement, not through the Court's orders. *See* Exhibit D, *Toka v. Milesstore*, No. 2:25-cv-00593, Dkt. 70 at 2–3. Now it asks this Court to compel the very result it previously disclaimed any judicial responsibility for. A plaintiff that has twice used emergency, no-notice process to strip the same represented seller's listings, the first time admittedly against a non-party, has not made the clean-handed showing that equitable relief requires. This independently defeats Plaintiff's entitlement to a preliminary injunction against Mooye, whatever the strength of its underlying claim.

For these reasons, Plaintiff cannot satisfy the threshold likelihood of success requirement, and the preliminary injunction should be denied as to Mooye.

## VI. PLAINTIFF CANNOT SHOW IRREPARABLE HARM

A preliminary injunction is "an extraordinary remedy never awarded as of right," and the movant must demonstrate that it is likely to suffer irreparable harm in the absence of relief, a likelihood, not a mere possibility. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008); *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). The movant must make a clear showing that it cannot be remedied by money damages. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Plaintiff makes no such showing.

### A. Irreparable Harm May Not Be Presumed

Plaintiff's submissions assume that irreparable harm follows automatically from an alleged false advertisement between competitors. It does not. The Third Circuit has squarely held that there is no automatic presumption of irreparable harm in Lanham Act cases; the movant must demonstrate that irreparable injury is likely. *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 215-17 (3d Cir. 2014).

### B. Plaintiff's Delay Refutes Any Claim of Irreparable Harm

"Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights tends to indicate at least a reduced need for such drastic, speedy action." *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 117-18 (3d Cir. 2013); *see New Dana Perfumes Corp. v. The Disney Store, Inc.*, 131 F. Supp. 2d 616, 630 (M.D. Pa. 2001) (unexplained delay of five months in moving for injunctive relief precludes a preliminary injunction); *Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 383 (D.N.J. 2002) (extended delay "knocks the bottom out of any claim of immediate and irreparable harm"). The accused listings were publicly available on Amazon since September 2, 2025, more than seven months before Plaintiff sought ex parte relief in this case. *See* Yao Decl. ¶ 3. Moreover, Plaintiff has been litigating claims concerning the same EZ OUTLET product line in the related 2025 action, *Toka, LLC v. Milesstore*, No. 2:25-cv-00593 (W.D. Pa.), in which Mooye appeared as an intervening party. Plaintiff nonetheless waited until April 2026 to seek temporary injunctive relief and offers no explanation for the delay. A party that sits on its claimed rights cannot credibly contend that the resulting injury is so immediate and irreparable that only an injunction can prevent it.

### C. Plaintiff's Alleged Harm Is Fully Compensable by Money Damages

Economic injury compensable in money is not irreparable. *See Instant Air Freight*, 882 F.2d at 801; *see also Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) ("the availability of adequate monetary damages belies a claim of irreparable injury"). By Plaintiff's own account, its injury is displaced sales. Plaintiff contends that sales of Defendants' products displace sales of Plaintiff's products. *See* Plaintiff's TRO Memorandum at 40. That is the quintessential form of quantifiable economic loss, and the Lanham Act itself provides a remedy of damages and disgorgement for such injury. *See* 15 U.S.C. § 1117(a). Nor is

there any basis to conclude that such a remedy would be uncollectible. Mooye has appeared, is defending itself through counsel, operates an identifiable Amazon storefront, and its proceeds are currently identifiable—indeed, they are already restrained.

### D. Plaintiff's Claimed Reputational and Goodwill Harm Is Speculative and Unsupported

Plaintiff's remaining theory, generalized loss of goodwill and reputation, rests on conclusory assertions, not evidence. (Joynt Decl. ¶¶ 26–27.) However, "more than a risk of irreparable harm must be demonstrated;" the asserted injury must be actual and imminent. *See Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980). Plaintiff identifies no lost customer, no measurable reputational damage, and no consumer who attributed any Defendant's product to Plaintiff. The claimed harm is speculative for the further reason explained above: assuming arguendo that Mooye made false representations, because Plaintiff is only one of many sellers of compliant outlet extenders, any sale diverted by Mooye's listing is dispersed across the entire field of compliant competitors, leaving Plaintiff's individualized injury conjectural. Conclusory invocations of reputational harm do not satisfy Plaintiff's burden to make a clear showing of likely, non-compensable injury.

Because irreparable harm may not be presumed, because Plaintiff's delay belies any urgency, and because any injury Plaintiff can show is either speculative or fully compensable in money, Plaintiff has not carried its burden on the element of irreparable harm. The preliminary injunction should be denied as to Mooye.

### VII. THE BALANCE OF HARDSHIPS WEIGHS DECISIVELY AGAINST AN INJUNCTION AS TO MOOYE

Even if Plaintiff had cleared the gateway factors, and for the reasons already shown it has not, the Court must weigh the harm an injunction inflicts on Mooye against the harm Plaintiff would suffer without one. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). The harm to Mooye is severe and immediate; the harm to Plaintiff, as set forth in the "irreparable harm" section above, is at most speculative and fully compensable in money. The disparity is not marginal.

The hardship to Mooye is concrete and potentially terminal. The TRO did not simply restrain one listing; it froze the entirety of Mooye's Amazon proceeds, restrained its storefront, and exposed its inventory to seizure, all on a $5,000 bond shared among 136 defendants. The predictable result is the effective dismantling of a functioning business: lost revenue, inability to pay suppliers and meet operating obligations, collapse of marketplace ranking and seller metrics, and the liquidation or destruction of inventory. *See* Yao Decl. ¶ 5. And this is the second time in seven months that Plaintiff has used emergency, no-notice process to strip Mooye's listings; the first time, Mooye was not a defendant at all. *See Toka, LLC v. Milesstore*, No. 2:25-cv-00593, Dkt. 73 (W.D. Pa. Dec. 22, 2025).

The restraint is also grossly disproportionate to the single Lanham Act claim that names Mooye. It freezes all of Mooye's funds, not any traceable profit from the accused listings, and enjoins Mooye from conduct (using Plaintiff's images and falsely representing that products are grounded) that Plaintiff pleaded only against other defendants in Counts I and IV and never charged against Mooye. Independent of its breadth, the asset freeze exceeds the Court's remedial authority: a federal court has no power to freeze a defendant's general assets to secure a potential future award of money damages. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 329-33 (1999). That bar applies with special force here, where Plaintiff

has shown no basis to quantify its claimed damages and no causal connection between any Mooye listing and any lost sale of Plaintiff's own product, see supra Parts III and V.B. The freeze thus secures a money recovery that is itself speculative, unquantified, and untraceable to Mooye. Even if it were recharacterized as securing disgorgement, the freeze reaches the entirety of Mooye's funds rather than any profit traceable to the accused listings, and so cannot stand. The asset freeze should be dissolved.

Plaintiff cannot characterize Mooye's hardship as self-inflicted. The principle that an enjoined party's injury "merits little equitable consideration," which Plaintiff invokes through *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002), applies only to an adjudicated wrongdoer with no equitable claim to the fruits of proven false advertising. No such situation exists here, and the operative listing is truthful. The doctrine is therefore inapposite, and Mooye's substantial, disproportionate hardship controls. When weighed against an injury Plaintiff can fully recover in damages if it prevails, the balance tips decisively against a preliminary injunction. (Separately, and as Mooye will address by appropriate motion, the joinder of Mooye with scores of unrelated Schedule A sellers, absent any allegation that their listings arise from the same transaction or occurrence, is improper under Federal Rule of Civil Procedure 20.)

## VIII. THE PUBLIC INTEREST DOES NOT SUPPORT A PRELIMINARY INJUNCTION AGAINST MOOYE

The public interest likewise counsels against relief. The interest Plaintiff invokes, the consuming public's interest in receiving accurate information and avoiding confusion in the marketplace in order to facilitate free, open, and fair competition, is implicated only where deception exists to be enjoined. Mooye's operative listings state that the products have a

"UL/FCC Report," and Mooye holds an actual UL test report, an FCC report, and an FCC declaration of conformity. *See* Yao Decl. ¶ 4 and Exhibit A. Enjoining a truthful statement protects no one from deception; it suppresses accurate information and removes a lawful, lower-priced competitor, thereby disserving the public's interest in a competitive marketplace.

Plaintiff's safety framing fares no better. Policing product-safety standards is the province of the certification bodies and regulators charged with that responsibility, not of a private competitor wielding an ex parte asset freeze. In any event, Mooye holds a UL test report, an FCC report, and an FCC declaration that Amazon accepted.

Most fundamentally, the public interest is affirmatively disserved when Rule 65(b)'s no-notice mechanism, reserved for genuinely anonymous actors who would flee or dissipate assets before they could be heard, is turned against a known, represented seller that Plaintiff could have reached with a single email. The public interest is vindicated by resolving disputes between identified, represented litigants through the adversarial process, on notice.

Because neither the equities nor the public interest supports Plaintiff's position, the preliminary injunction should be denied as to Mooye.

## IX.    CONCLUSION

For the foregoing reasons, Mooye respectfully requests that the Court deny a preliminary injunction as to Mooye. Mooye further requests that the Court dissolve the ex parte temporary restraining order and asset freeze as to Mooye; direct Plaintiff to withdraw any takedown notices submitted to Amazon predicated on the challenged order and to take all steps necessary to restore Mooye's listings (ASINs B0FPF7TYS2 and B0FVRDGRH3); order Mooye's restrained funds and inventory released; and, to the extent any restraint remains, substantially increase the security required under Federal Rule of Civil Procedure 65(c) and preserve Mooye's right to

21

recover for any wrongful restraint.


DATED: June 16, 2026

By:

*/s/ Hongchang Deng*
Hongchang Deng *(pro hac vice)*
CA Bar No. 354529
LawMay P.C.
2108 N St., Ste. 9124
Sacramento, CA 95816
M: 267-888-8281
rdeng@lawmayus.com


*Attorney for Defendant Mooye*

22

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will provide notice of such filing to all counsel of record.

Dated: June 16, 2026

*/s/ Hongchang Deng*
Hongchang Deng

23