**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TOKA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:26-cv-00414 |
| v. | ) |
| | ) Chief Judge Cathy Bissoon |
| SCHEDULE A DEFENDANTS, | ) |
| | ) |
| Defendants. | ) |

**APPEARING DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE AND
OPPOSITION TO ENTRY OF PRELIMINARY INJUNCTION**

**I. PRELIMINARY STATEMENT**

**Plaintiff froze the business of this seller using evidence drawn from products
Plaintiff never tied to it, advertisements it never published, and claims it never uttered.**
That single sentence captures why the requested preliminary injunction must be denied as to the
Appearing Defendant -- Guangzhou Hongzhu Information Technology Co., Ltd., d/b/a olcorife
(No. 52) (the "Appearing Defendant" or "olcorife").

This is a "Schedule A" case. Plaintiff sued well over one hundred unrelated online sellers
in a single complaint, obtained a sealed *ex parte* temporary restraining order freezing every
defendant's storefront and funds, and supported that extraordinary relief with a short,
undifferentiated investigator declaration (the Declaration of Dee Odell) that never once
distinguishes one defendant from another. *See* Declaration of Dee Odell ("Odell Decl.") (Doc. 12,
at ¶¶ 6–11). Plaintiff's memorandum rests on two independent bodies of law. It first asserts that
the defendants infringe two patents-in-suit -- U.S. Design Patent No. D1,006,758 (the '758
design patent) and U.S. Patent No. 12,155,158 (the '158 utility patent). It then advances four

accusations of literal falsity under Section 43(a) of the Lanham Act: that the defendants (1) sell Plaintiff's product by using Plaintiff's images; (2) falsely claim the entirety of their outlet extenders comply with UL standards; (3) falsely claim ETL certification; and (4) falsely claim a functional grounded plug. As shown below, Plaintiff pleaded only one of those four theories -- the UL theory -- against olcorife, and it supported even that theory with no evidence about olcorife's product.

Plaintiff's motion fails for three independent reasons. *First*, Plaintiff cannot show a likelihood of success on its patent infringement claims: olcorife's accused product does not infringe either the '758 design patent or the '158 utility patent, and both patents-in-suit are, in any event, of dubious validity -- so Plaintiff's infringement claim cannot "likely withstand" the invalidity defense, as it must to support an injunction. *Second*, Plaintiff cannot carry its burden to show a likelihood of success on its false-advertising claim against *this* defendant, because the record contains no evidence that olcorife made any of the four challenged representations. *Third*, Plaintiff cannot show irreparable harm, because the relief it seeks -- a freeze of assets to secure a future money judgment -- is precisely the remedy the Supreme Court and the Third Circuit forbid on a false-advertising damages claim.

Two further points frame this Opposition. *First*, the manner in which Plaintiff obtained this relief -- securing an *ex parte* freeze against the seller while supporting it with no evidence specific to that seller -- underscores why the restraint should not continue. *Second*, and as developed below, Plaintiff pleaded only one of its theories against olcorife and supported even that one with no evidence about its product. The Appearing Defendant asks the Court to deny the injunction, dissolve the restraint as to it, address the inadequacy of the $5,000 security, and preserve its right to recover the costs and damages the wrongful restraint is causing.

2

## II. STATEMENT OF RELEVANT FACTS

### A. Plaintiff's Product and the Four Challenged Representations.

Plaintiff sells a single-outlet "EZ OUTLET®" extender. Its memorandum asserts that the Schedule A defendants, as an undifferentiated group, (1) advertise their products using Plaintiff's images; (2) mark the "entirety" of their outlet extenders as complying with UL standards when only a plug "pigtail" component is tested; (3) advertise ETL certification their products lack; and (4) advertise a "functional grounded plug" on products that in fact carry only two wires and no ground conductor. Mem. at 33–36; *see also* Odell Decl. ¶¶ 8–11.

### B. The Odell Declaration Does Not Identify Which Defendant Sold Which Product.

Plaintiff's entire false-advertising showing rests on the few substantive paragraphs of the Odell Declaration. That declaration sorts the accused goods into three "types" and then makes group-wide assertions about them. Critically, it concedes that the investigator did *not* find the alleged grounding defect across the board: as to "Type 3" products, the declaration states only that a "significant majority" -- not all -- lacked a connected ground, Odell Decl. ¶ 8, and it never states which seller's product was "Type 1," "Type 2," or "Type 3." The declaration does not name olcorife, does not attach olcorife's listing, and does not tie any of the four challenged representations to olcorife's storefront.

### C. olcorife's Actual Listing Makes None of the Four Representations.

olcorife's own product listing -- the very listing Plaintiff captured and produced -- refutes each theory. The listing advertises a multi-outlet, USB-equipped power strip -- specifically, an "Outlet Extender Stick, Power Strip with 6 Outlets & 4 USB Ports" -- sold under olcorife's own brand. It displays olcorife's own product photographs, not Plaintiff's. It contains no "ETL certified" claim. It contains no "UL certified" claim, and neither the product nor the listing bears

a UL or ETL certification mark. A representative capture of the listing is reproduced as **Exhibit A**.

### III. LEGAL STANDARD

To obtain a preliminary injunction the moving party must show as a prerequisite (1) a likelihood of success on the merits, (2) that it will suffer irreparable harm absent relief, (3) that the balance of equities favors it, and (4) that an injunction serves the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). The first two factors are "gateway factors": a movant who fails to establish either a likelihood of success or irreparable harm is not entitled to relief, regardless of the remaining factors. *Id.* at 179. The burden rests on the movant at all times, and the standard is no lower because the relief is sought against multiple defendants in a single action: Plaintiff must make the required showing as to *each* defendant it seeks to enjoin.

### IV. ARGUMENT

**A. Plaintiff Cannot Show a Likelihood of Success on Its Patent Infringement Claims.**

*1. The Accused Product Does Not Infringe Either Patent-in-Suit.*

The accused olcorife product is an extendable "outlet extender stick" -- a multi-outlet power strip with USB ports mounted on a telescoping shaft whose plug portion rotates only 180 degrees (90 degrees per side). It is sold under olcorife's own brand and bears no resemblance, in either its appearance or its mechanical features, to the narrow subject matter claimed in the patents-in-suit. As set out below, it practices neither the ornamental design of the '758 patent nor the structural limitations of the '158 patent.

*2. The Accused Product Does Not Infringe the '158 Utility Patent.*

Claim 1 of the '158 patent requires, among other things, "an extendable shaft positioned between the plug end and the outlet end, wherein the plug end is rotatable," "an electrical cord

portion positioned between the extendable shaft and the plug end," and "a bend collar configured to enable flexibility in the extendable shaft adjacent to the plug end." The accused product satisfies none of these limitations. Its shaft is a rigid, telescoping column; there is no flexible "electrical cord portion" between the shaft and the plug end, and there is no "bend collar" enabling flexibility adjacent to the plug. Because the rigid components seat directly into one another with no flexible or bendable junction, these limitations are absent both literally and under the doctrine of equivalents.



Independent claim 12 requires "an extendable shaft that comprises a bend collar [that] is telescopic and rotatable about the plug up to 360°," "an interchangeable faceplate selectively attached with the one or more outlet receptacles," and "a device cradle that includes wireless charging technology configured to hold a device and facilitate charging the device." The accused product meets none of these. Its plug rotates only 180 degrees, not 360; it has no "bend collar"; it

has no interchangeable or replaceable faceplate; and it has no wireless charging capability or device cradle of any kind. The product therefore does not infringe claim 12, literally or under the doctrine of equivalents.

### 3.  The Accused Product Does Not Infringe the ’758 Design Patent.

Design-patent infringement is measured by the "ordinary observer" test: infringement exists only where the accused design is, in the eye of an ordinary observer giving such attention as a purchaser usually gives, substantially the same as the patented design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc). Under that test, the accused product is plainly distinct. The ’758 patent's drawings depict a short single-outlet device with a distinctive "neck" or "sheath" below a curved, bowed faceplate. The accused olcorife product has no such neck or sheath; its outlet portion is a flat, rectangular multi-outlet power strip rather than a curved single-outlet faceplate; and its overall proportions -- a long telescoping stick with six outlets and four USB ports -- are far more akin to an extension cord than to the compact wall-outlet form claimed in the ’758 patent. An ordinary observer would not confuse the two. The accused product therefore does not infringe the ’758 design patent.



For the preceding reasons, Plaintiff is not likely to succeed on the merits of its patent infringement claims, and the Motion should be denied on that basis.

### 4. *Both Patents-in-Suit Are of Dubious Validity.*

At the preliminary injunction stage, the question this Court must answer is whether there is a "likelihood of success on the merits" of Plaintiff's patent infringement claim. With respect to a defense of obviousness, Plaintiff must show that its infringement claim "will likely withstand" Plaintiff's invalidity defense. *Amazon.com v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).  If Defendants raise "a substantial question concerning" validity, i.e., it asserts an invalidity defense that Plaintiff cannot prove "lacks substantial merit," the preliminary injunction should not issue. *Id.* at 1350–51.

### (1) The '758 *Design* Patent Is Likely Invalid as Obvious.

The '758 Patent, whose scope is limited to the shaft portion and the shape of the (curved) faceplate, is of dubious validity.  In particular, U.S. Patent No. D359,722, published on June 27, 1995 (Ex. B) discloses the shape of an outlet at the top of a shaft with a neck portion, as is claimed in the '758 Patent.  EU0021430730003S, published on November 27, 2012 (Ex. C) and US Publication No. 2014/0024247, published on January 23, 2014 (Ex. D)  each shows that it was known, in the prior art time frame, to use a rounded design for the area surrounding a wall outlet.  Thus, the combination of these references renders the '758 Patent invalid as obvious, and at least presents a substantial question as to the validity of the '758 Patent.

Any argument to the contrary emphasizes the importance of the features of the '758 Patent that are not present in the Accused Product (e.g., the "neck" or "sheath" between the shaft and the wall outlet), and confirms even further the non-infringement positions articulated above.

| D359,722 (June 27, 1995) | EU0021430730003S (November 27, 2012) | US 2014/0024247 (January 23, 2014) |
| --- | --- | --- |



**(2) The '158 Utility Patent Is Likely Invalid as Obvious.**

The '158 Patent is likewise of dubious validity, and the following claim charts present a substantial question as to the validity of independent claims 1 and 12 based on U.S Patent Publication No. 2020/0328568 to Greer, filed on November 28, 2019 ("Greer," Ex. E) in view of 2019/0027953 to Rohmer, published on January 24, 2019 ("Rohmer," Ex. F).

| '158 Patent – Claim Language | Greer and Rohmer |
| --- | --- |

| '158 Patent – Claim Language | Greer and Rohmer |
|---|---|
| 1[a]. A wall outlet extender comprising: | <br><br>The illustrated device in Greer is a wall outlet extender. |
| 1[b] a plug end configured to selectively plug into a wall outlet; | The plug end (comprised of items 3 and 8 above) is configured to selectively plug into a wall outlet. |

| '158 Patent – Claim Language | Greer and Rohmer |
|---|---|
| 1[c] an outlet end configured to selectively receive one or more plugs; | <br><br>The outlet end (comprised of items 2 and 9) of Greer is an outlet end configured to selectively receive one or more plugs. |
| 1[d] an extendable shaft positioned between the plug end and the outlet end, wherein the plug end is rotatable; | The shaft of Greer is extendable in the above figures, as indicated by item 4: "The device may also have one or a combination of the following : a portion (4) of the (1) body may be adjustable in length and shape."  Greer ¶ 4.<br><br>In addition, the plug end 8 of Greer is rotatable:  "The (8) rotating male end may rotate inside of the (1) to allow horizontal movement along a surface. The (9) rotating access point may rotate inside of the (1) body to allow a traditional vertical alignment of the access point."  Greer ¶ 5. |
| 1[e] an electrical cord portion positioned between the extendable | Embodiments disclosed in Greer make clear that an electrical cord portion may be positioned between the |

| '158 Patent – Claim Language | Greer and Rohmer |
|---|---|
| shaft and the plug end, | extendable shaft and the plug end:<br><br>[0004] The device may also have one or a combination of the following: a portion (4) of the (1) body may be adjustable in length and shape. The intent is to allow the (1) body to form to alternate dimensions to accommodate the user. These possibilities include, but in no way limit the scope of methods possible, by utilizing a telescoping type construction, by utilizing a flexible material that allows pliability, a sliding electrical contact system and/or by utilizing a swivel point that allows directional change. The body may be a combination of a solid component and a portion of an electrical cord. The body may be one solid shape. It may be one solid cast piece with no moving parts. Again, the intent is to provide alternative sizes and shapes to aid in access.<br><br>Greer ¶ 4. |
| 1[f] wherein the extendable shaft comprises a bend collar configured to enable flexibility in the extendable shaft adjacent to the plug end; and | The reference in Paragraph 4 of Greer to a "flexible material that allows pliability" discloses the use of a "bend collar configured to enable flexibility in the extendable shaft at adjacent to the plug end" as is required by this claim limitation. Greer ¶ 4. |
| 1[g] an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall. | Paragraph 12 of Greer makes clear that the disclosed device includes an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall:<br><br>[0012] The (1) body, (2) access point or (3) male end may have a means to attach to a structure, furniture, receptacle or electrical device. The goal is to be able to secure the device in place. This may include (5) holes molded or otherwise created into the (1) body; (2) access point or (3) male end for a fastener to fit through; or an adhesive applied to the device's structure that bonds this device to a wall or cabinet. This may also include attachment points (6) anchored to or molded into the (1) body for the purpose of allowing attachment to another object; the (6) attachment point can be located in any location on the (1) body. This may also include Clips, snaps, hook and loop systems, screws, nails, adhesives. Again, the goal of the attachment point is to further secure the device in place.<br><br>Greer ¶ 12. |
| 12. An extendable power outlet adaptor, comprising: | For the same reasons given above with respect to Claim 1[a], this limitation is met by Greer. |

| '158 Patent – Claim Language | Greer and Rohmer |
|---|---|
| a plug selectively configured to insert into a wall outlet; | For the same reasons given above with respect to Claim 1[b], this limitation is met by Greer. |
| an extendable shaft that comprises a bend collar is telescopic and rotatable about the plug up to 360°; | For the same reasons given with regard to claim 1[d] and 1[f], this limitation is met by Greer. |
| one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall; | For the same reasons given with respect to claim 1[c] and 1[g], this limitation is met by Greer. |
| an interchangeable faceplate selectively attached with the one or more outlet receptacles; | Paragraph 30 of Greer teaches or suggests the use of different shapes of faceplates.<br><br>[0030]  FIG. 2 shows a number of different embodiments of the present invention. For example, the (2) access point may be of a different shape such as triangular or rounded to allow additional receptacles to be accessed. Additionally, FIG. 2 shows that the present invention is not limited to only electrical power outlets but also shows an embodiment using CAT5/USB electrical adaptors.<br><br>Greer ¶ 30.  Thus, Greer teaches or suggests the use of interchangeable faceplates selectively attached with the one or more receptacles. |
| an electrical cord portion positioned between the extendable shaft and the plug end; and | For the same reasons given with respect to claim 1[e], this limitation is met by Greer. |
| a device cradle that includes wireless charging technology configured to hold a device and facilitate charging the device. | Paragraph 30 of Greer teaches or suggests that other electrical charging technologies can be used:<br><br>[0030]  FIG. 2 shows a number of different embodiments of the present invention. For example, the (2) access point may be of a different shape such as triangular or rounded to allow additional receptacles to be accessed. Additionally, FIG. 2 shows that the present invention is not limited to only electrical power outlets but also shows an embodiment using CAT5/USB electrical adaptors.<br><br>Greer ¶ 30.  Accordingly, it would have been obvious to include a wireless charging capability in the device of Greer, which would have necessarily included a "device cradle" to achieve the requisite proximity for such wireless |

| '158 Patent – Claim Language | Greer and Rohmer |
|---|---|
| | charging.  This is especially true in view of, for example, U.S. Patent Publication No. 2019/0027953 to Rohmer, published January 24, 2019, which (as shown below in Fig. 1A and Fig. 1C) and discloses the use of such wireless charging cradles in connection with wall outlets:<br><br><br>FIG. 1A<br><br><br>FIG. 1C<br><br>The use of this technique at the outlet end of Greer would have been obvious. |

Defendants reserve the right to further develop these theories of obviousness, including by presenting expert testimony in support of the obviousness of claims of the '158 Patent, should the need arise outside the context of a preliminary injunction hearing request based on patents that are plainly not infringed.

**B. Plaintiff Cannot Show a Likelihood of Success on Its Lanham Act Claim Against olcorife.**

Plaintiff bears the burden of making a "clear showing" of likelihood of success, and on an *ex parte* application that burden is, if anything, heightened: relief granted without an adversary's participation "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). Now that olcorife has appeared, the *ex parte* record cannot be carried forward into a preliminary injunction. On the merits, Plaintiff cannot satisfy the elements of a false-advertising claim against olcorife.

At the threshold, three of Plaintiff's four Lanham Act theories are not even asserted against olcorife. Plaintiff's own Complaint names defendants count-by-count, and olcorife (No. 52) appears *only* in **Count II, the UL theory**. It is not named in Count I (use of Plaintiff's images), which lists only Defendant Nos. 5, 13, 14, 20, 23, 24, 28, 39, 40, 41, 55, 60, 74, 77, 79, 80, 83, 87, 92, 93, 94, 96, 105, 107, 117, 122, 129, and 136; nor in Count III (ETL certification), which lists only Defendant Nos. 3, 5, 8, 9, 10, 15, 17, 18, 20, 25, 26, 29, 41, 43, 45, 49, 55, 56, 64, 66, 67, 69, 71, 79, 83, 84, 85, 89, 91, 93, 99, 104, 111, 112, and 115; nor in Count IV (grounding), which lists only Defendant Nos. 43, 54, 69, 118, 127, and 132. Compl., Counts I–IV. Because Plaintiff did not plead the image, ETL, or grounding theories against olcorife, those theories cannot support a preliminary injunction against it, and the analysis reduces to the single

14

theory Plaintiff actually asserts -- the UL theory in Count II.

A Section 43(a) false-advertising plaintiff must establish five elements: (1) that the defendant made false or misleading statements about its own or another's product; (2) actual deception or a tendency to deceive a substantial portion of the intended audience; (3) materiality; (4) that the goods traveled in interstate commerce; and (5) a likelihood of injury to the plaintiff from the diversion of sales or loss of goodwill. *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014).

The first element divides into two paths. A claim is *literally* false only where it conveys an "unambiguous" message that is in fact false. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586–87 (3d Cir. 2002). Conversely, a claim that is true or ambiguous on its face is actionable only as *impliedly* false, and "implied" falsity must be proven with extrinsic evidence -- ordinarily consumer surveys -- of how the audience actually understands the message. *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228–29 (3d Cir. 1990).

Recognizing it lacks the requisite extrinsic evidence, Plaintiff attempts to bypass the survey requirement by pleading that its UL theory is conveyed "by necessary implication." Mem. at 33. But under Third Circuit law, a message conveyed by necessary implication can constitute literal falsity only if the message is entirely unambiguous. *Groupe SEB*, 774 F.3d at 198 ("Unless the claim is unambiguous … it cannot be literally false."); *Novartis*, 290 F.3d at 587. Plaintiff's theory requires impermissible logical leaps and consumer inference to reach its desired conclusion, rendering the challenged statement inherently ambiguous. Plaintiff's claim therefore sounds strictly in implied falsity, and because Plaintiff offers no survey or other extrinsic proof

of consumer understanding, the claim fails as a matter of law.

The literal-falsity presumption of deception that Plaintiff invokes, *see* Mem. at 36, is therefore unavailable on this record for two reasons: it attaches *only* after the plaintiff proves the challenged statement was actually made and is unambiguously false, *Novartis*, 290 F.3d at 586–87, and it does not apply at all to claims of implied falsity, *Sandoz*, 902 F.2d at 228–29. Plaintiff cannot clear either hurdle against olcorife.

Plaintiff also cannot establish the fifth element -- injury proximately caused by *this* defendant. To come within the Lanham Act's false-advertising cause of action, a plaintiff must plead and prove an injury to a commercial interest in sales or business reputation that was *proximately caused* by the defendant's misrepresentations. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129–40 (2014). Proximate cause cannot be shown on a record that never connects any representation to olcorife. Plaintiff has lumped scores of unrelated sellers together and asks the Court to infer that each one caused it the same injury -- the very kind of attenuated, undifferentiated causal theory *Lexmark* forecloses.

### 1. Accusation One (Use of Plaintiff's Images): Is Not Asserted Against the Appearing Defendants.

Count I is not pleaded against olcorife. *See* Compl., Count I (naming other defendants only). It therefore cannot support an injunction against olcorife.

### 2. Accusation Two ("Entirety" Complies with UL): Plaintiff Has Not Carried Its Burden as to This Seller's Product, and Its Implied-Falsity Theory Requires Extrinsic Evidence It Has Not Offered.

Plaintiff's second theory is that the UL mark on the plug falsely tells consumers that the "entirety" of the device is UL certified when only the plug "pigtail" is. Mem. at 35. That theory cannot support a preliminary injunction against olcorife, because Plaintiff has not carried its burden of proof as to olcorife's product and because the theory is one of implied falsity for

which Plaintiff has offered no extrinsic evidence.

olcorife never used a UL certification mark on its webpage or product. Neither olcorife's listing nor its product bears any UL certification mark at all. Plaintiff bears the burden of a "clear showing" as to each seller it seeks to enjoin, and it has come forward with no evidence about olcorife's product. The Odell Declaration sorts the accused goods into anonymous "types" and never identifies which seller sold which device, never attaches olcorife's listing or packaging, and never ties any specific UL marking to olcorife. Odell Decl. ¶¶ 6–9. A movant cannot establish a likelihood of success on a UL-marking theory against a particular seller without evidence about that seller's product, and Plaintiff has offered none.

### 3. Accusation Three (ETL Certification): Is Not Asserted Against the Appearing Defendants.

Count III is not pleaded against olcorife. *See* Compl., Count III (naming other defendants only). It therefore cannot support an injunction against olcorife. In any event, Plaintiff's own CEO declares that "Toka places" the "ETL" certification mark "onto each of its *EZ OUTLET®* outlet extenders" -- confirming the ETL certification mark is Plaintiff's own, not a claim made by olcorife. Joynt Decl. ¶¶ 17–18. Consistent with that admission, neither olcorife's listing nor its product makes any ETL claim or bears any ETL certification mark.

### 4. Accusation Four (Functional Grounded Plug): Is Not Asserted Against the Appearing Defendants.

Count IV -- the grounding theory -- is pleaded against only six defendants: Nos. 43, 54, 69, 118, 127, and 132. Compl., Count IV. olcorife is not among them. Plaintiff therefore did not allege that olcorife sells an ungrounded product, and the grounding theory cannot support a preliminary injunction against it.

### 5. The Group-Pleading Defect Is Independently Fatal.

Each theory above fails for the same structural reason: Plaintiff seeks to enjoin scores of separate sellers on a record that never connects any challenged representation to any particular defendant. A preliminary injunction must be supported by a "clear showing" as to the party to be enjoined, *Reilly*, 858 F.3d at 176, and findings of likelihood of success cannot rest on undifferentiated, collective allegations. Plaintiff's reliance on a short declaration that lumps all defendants together and admits it did not test all of them cannot carry that burden as to olcorife.

### 6.    *Count V (Common Law) Adds Nothing, Because It Is Derivative of the Federal Counts.*

Although Count V (common-law unfair competition) is pleaded against "all Defendants," it cannot independently support an injunction against olcorife. Count V rests on the same conduct as the federal counts: it alleges that defendants infringed Plaintiff's design and "made literally false representations about the characteristics and/or qualities of its." Compl. ¶ 93. Pennsylvania common-law unfair competition tracks the federal standard and reaches "acts or practices that are actionable under federal or state statutes." *Id.* ¶ 92. Because the image, ETL, and grounding theories are not pleaded against olcorife, and because the UL theory fails for the reasons above, Count V fails with them as to olcorife. A derivative common-law claim cannot succeed where the federal theories it mirrors do not.

## C. Plaintiff Cannot Show Irreparable Harm, and the Asset Freeze Is Independently Improper.

Plaintiff's asserted injuries -- lost sales, price erosion, and lost goodwill from competition by lower-priced sellers -- are quintessentially economic. To establish irreparable harm, a movant must show "potential harm which cannot be redressed by a legal or an equitable remedy following a trial," and an injury that can be compensated by money damages is not irreparable. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Plaintiff's

own theory -- that each defendant's sales "directly displaces a sale of Plaintiff's" product, Mem. at 38 -- describes a calculable loss of sales, not an irreparable one.

Plaintiff cannot fill that gap with a presumption. Even if Plaintiff could invoke the rebuttable presumption recognized by 15 U.S.C. § 1116(a), that presumption does not relieve it of the ultimate burden of proving likely irreparable harm. *See Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 185–87 (3d Cir. 2022). The presumption is a procedural device, not a substitute for proof: it shifts only the burden of production, and it dissolves the moment a defendant introduces evidence from which a reasonable factfinder could conclude that irreparable harm is unlikely. *Id*. at 186. Once rebutted, the presumption "has no further effect," and the burden returns to Plaintiff to establish likely irreparable harm on the record as a whole. *Id.* at 186–87.

In this case, Plaintiff cannot connect any claimed harm to *this* seller. Irreparable harm must be "likely" and must flow from the conduct sought to be enjoined; a movant cannot show it by pointing to the defendant group as a whole. Plaintiff's evidence does not identify which seller sold which product, does not attach olcorife's listing, and offers no figure for sales, diverted customers, or lost goodwill attributable to olcorife. Having sorted the accused goods into anonymous "types" and declined to tie any "type" to any seller, *see* Odell Decl. ¶¶ 6–9, Plaintiff has no basis to claim that olcorife is causing it harm at all, let alone harm so imminent and irreparable that it justifies freezing its business before a hearing. A theory of injury that cannot be traced to the party to be enjoined is not a showing of irreparable harm as to that party.

*Ferring* is directly on point and confirms that a showing like Plaintiff's is insufficient. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 219 (3d Cir. 2014). There, the Third Circuit affirmed the denial of a Lanham Act preliminary injunction because the movant's

asserted injury rested on speculation, as the movant offered no evidence that anyone had actually changed behavior because of the challenged statements. *Ferring*, 765 F.3d at 219. Plaintiff's showing here is weaker still: it offers not even a speculative link between olcorife and any lost sale, because it never connects olcorife to any accused product. Under *Ferring*, a movant must show irreparable injury is *likely*, not merely possible, and "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm" is improper. *Id.* at 213.

The burden is heavier still because the relief Plaintiff seeks does not preserve the status quo -- it perpetuates a freeze that has already shuttered olcorife's storefront and sequestered its funds and inventory. A preliminary injunction that would *alter* the status quo in this way subjects the movant to "a particularly heavy burden in demonstrating its necessity." *Ferring*, 765 F.3d at 219 n.13 (quoting *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994)). Plaintiff cannot meet the ordinary irreparable-harm standard as to olcorife, let alone the heightened one that its continued, business-ending restraint demands.

**D. The Balance of Equities and the Public Interest Favor the Appearing Defendants.**

The freeze has shuttered olcorife's storefront and frozen its operating funds based on evidence that does not concern its product. The harm to a lawful business from a wrongful freeze of its accounts and inventory is severe and ongoing, while Plaintiff faces only a delay in a money recovery it can pursue at trial. The public interest is not served by enjoining a seller on theories Plaintiff did not plead against it and did not support with any evidence about its product; it is disserved by an injunction that removes goods from the market on a mistaken evidentiary premise.

The imbalance is acute. A frozen storefront does not merely lose sales during the freeze; it loses search ranking, customer reviews, Prime eligibility, and seller standing that may never be

recovered, and its inventory sits sequestered and unsalable. Those harms fall on a seller whom the record does not tie to the conduct alleged in the motion. Against that, Plaintiff has identified no harm that a damages award after trial could not cure. Where, as here, the movant's likelihood of success is weak and its irreparable-harm showing absent, the balance of equities and the public interest both counsel strongly against continuing the extraordinary relief of an asset freeze. *Cf. Reilly*, 858 F.3d at 179 (movant who fails the gateway factors is not entitled to relief). The public's interest in honest advertising is fully served by requiring Plaintiff to prove its claims against each seller before that seller's goods are removed from the market; it is undermined by an order that, on this record, suppresses lawful competition.

## V. THE WRONGFUL RESTRAINT IS CAUSING COMPENSABLE HARM, AND THE $5,000 BOND IS MANIFESTLY INADEQUATE

Because the restraint should not have issued against olcorife, the Court should also address the security that protects it from the restraint's consequences. Rule 65(c) permits preliminary relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The bond is not a formality; in this Circuit it is the *source* and, ordinarily, the *ceiling* of a wrongfully restrained party's recovery. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 803–05 (3d Cir. 1989) (a wrongfully enjoined party's recovery is generally limited to the amount of the bond, and the failure to require an adequate bond is reversible error).

The harm here is real and accruing daily. The Order froze olcorife's marketplace storefront and all funds in its associated accounts, and directed marketplaces to cease fulfillment and sequester its inventory. *See* Order ¶¶ I.A(7)–(10), I.B. For a live e-commerce business, that

is not a pause; it is the loss of active sales, the forfeiture of search ranking and "Prime" standing, the accumulation of storage and capital costs on sequestered inventory, the disruption of customer relationships and reviews, and the risk of permanent account deactivation -- harms that, as set out above, fall on a seller the record does not tie to the conduct alleged. These costs and damages are precisely what Rule 65(c) security exists to cover.

Yet the Court set security at only $5,000 for the entire defendant group combined. *See* Order ¶ IV. That figure cannot rationally approximate the costs and damages of freezing olcorife's business and inventory, let alone the entire defendant group. A $5,000 bond spread across scores of frozen storefronts is a small fraction of what a single seller stands to lose while its account and inventory remain locked through a preliminary-injunction determination. Because recovery is generally capped at the bond, an inadequate bond does not merely understate the security -- it threatens to leave olcorife without a meaningful remedy for a restraint that should not have issued against it. *Instant Air Freight*, 882 F.2d at 804–05.

Accordingly, if any restraint is to continue against olcorife pending the preliminary-injunction determination -- which, for the reasons above, it should not -- the Court should substantially increase the Rule 65(c) security to an amount that realistically reflects the costs and damages olcorife will sustain, and should permit expedited proof of those damages. olcorife further reserves its right to recover its costs and damages caused by the wrongful restraint, against the bond and to the full extent the law allows, upon a determination that it was wrongfully restrained.

### VI. CONCLUSION

For the foregoing reasons, the Appearing Defendant olcorife respectfully requests that the Court (1) decline to enter a preliminary injunction against olcorife; (2) dissolve the asset and

storefront restraints as to olcorife; and (3) to the extent any restraint continues against olcorife, substantially increase the Rule 65(c) security to an amount adequate to cover the costs and damages it will sustain. The patent infringement claims provide no separate basis for relief: because the accused product does not infringe the '758 or '158 patents and both patents are of dubious validity, Plaintiff cannot show that its infringement claims will likely withstand olcorife's invalidity defense, and the injunction must be denied on that ground as well.

olcorife further requests such other relief as the Court deems just.

Respectfully submitted,

/s/ Ruoting Men
Ruoting Men, Esq.
GLACIER LAW LLP
506 Second Avenue, Suite 1516
Seattle, WA 98104
Tel: (212) 729-5049
ruoting.men@glacier.law

Counsel for the Appearing Defendant

23

**CERTIFICATE OF SERVICE**

I certify that on June 16, 2026, the foregoing was filed with the Clerk of Court via the

CM/ECF system, which will serve notice on all counsel of record.

/s/ Ruoting Men
Ruoting Men

24