# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNYSLVANIA

TOKA, LLC.,

    Plaintiff,

   v.         Civil Action No.:123:-465AB

SCHEDULE A DEFENDANTS    Honorable Cathy Bissoon

    Defendant.

## DECLARATION OF JAMES B. BABCOCK

## I. INTRODUCTION

1. I, James B. Babcock, have been retained by counsel for defendants Guangzhou Kaizichen Technology Co., Ltd. d/b/a Haodsso Direct ("Haodsso"), Shenzhen Shengxin Technology Co., Ltd. d/b/a Casesmile ("Casesmile"), Bengbu YueShao E-Commerce Co., Ltd. d/b/a Yueshao ("Yueshao") and Shenzhen Andalian Technology Co., Ltd. d/b/a Beeyong ("Beeyong") to consider certain issues relating to U.S. Utility Patent No. 12,155,158 ("the '158 Patent"), titled "Wall Mounting Outlet Extender," and U.S. Design Patent No. D1,006,758 ("the '758 Patent") titled "Outlet Extender (collectively, "Patents-in-Suit").

2. I am over 18 years of age, and am competent to make this declaration.

3. In this declaration I address the Plaintiff, Toka LLC's ("Toka") assertion that it is likely to succeed in proving infringement of the Patents-in-Suit by the Defendants, which is (at least to some degree) the assertion I understand Toka is making in its Motion for Preliminary Injunction March 13, 2026.  Specifically I will address whether Toka is likely to succeed in proving that Defendants' wall outlet products infringe claims 1 and 12 of the '158 Patent, and the sole

1

design claim of the '758 Patent.  As I explain below, based on my understanding of the law and in my technical opinion, Toka is not likely to succeed in proving that Defendants infringe the Patents-in-Suit.

## II.    BACKGROUND AND QUALIFICATIONS

4.    I have attached my curriculum vitae as Exhibit A to this report.  As indicated in my CV, I am currently President of MechEx, LLC. I was previously the Vice President of Research and Development/Engineering at Taylor Technologies, Inc.  Taylor Technologies is a company that designs and manufactures water testing systems, and my role as Vice President of Research and Development/Engineering is to oversee all aspects of product design and manufacturing automation.

5.    My professional career has been devoted to the practice of mechanical engineering in various fields.  The mechanical engineering fields in which I have practiced range from the design of small implantable medical devices (e.g., the Vasca Dialysis Port shown below)



to large, high-speed printing systems weighing over 100,000 lbs, such as the Sun 625 Flexographic Rotary Diecutter shown here.





6.      I have been granted U.S. Patent No. 9,569,858 ("Cloud Based System for Water

Analysis"), at the core of which are several complex injection molded parts.



7.      I have extensive experience designing, testing, and developing complex consumer products that include with them AC and DC wiring and many complex molded parts.  For example, the kiosk and devices disclosed in U.S. Patent No. 9,569,858 contain no less than 14 injection molded plastic parts and contains a custom 120VAC outlet with 4 receptacles, for which I did all of the design, prototype and development work.  The test strip case disclosed contains 4 parts, one of which is a spring biasing member as shown in the patent figure below.



Fig. 5

4

8.      The kiosk contains a portable device mounting system that uses a clamp with to secure the device against a mounting surface.  Another mechanism within the same kiosk is a 2-axis articulated cam follower pin that contains a spring biasing mechanism as depicted in the figure below.



9.      I also significant experience with high and low voltage wiring, wire routing and management devices and connections for industrial and consumer products.

10.      I received a Bachelor of Science degree in Mechanical Engineering from Lehigh University in 1985 and a Masters of Engineering Management degree from George Washington University in 1993.

11.      For my work on this case I am being compensated at a rate of $475 per hour.  My compensation is for work performed and is not tied to any particular conclusions or outcomes in the case. I have testified as an expert at trial or by deposition in the cases identified in my CV, attached as Exhibit A, which includes cases in which I have testified during the previous 4 years.

**III.      INFORMATION CONSIDERED**

12.      In preparing my declaration, I have considered a variety of information and

5

documents, including those expressly cited in the body of this report. I have considered photographs of the accused products, and I have inspected the accused products and am prepared to discuss the same with the Court.

13.    I have also relied on my personal experiences in designing, developing and testing electrical and mechanical devices. My personal experiences, and professional background, are reflected in my *curriculum vitae*, which I am attaching as Exhibit F to this declaration.

14.    My analysis is ongoing, however, and I reserve the right to supplement this declaration in view of any additional information produced in this case. I expressly reserve the right to supplement this declaration in view of additional information produced.

15.    I will not offer opinions of law, as I am not an attorney. However, in formulating my opinions, I have taken into account the following principles of the law regarding patent infringement of which I have been informed.

## IV.    THE PATENTS-IN-SUIT

16.    The '158 Patent was filed on July 6, 2021 and claims priority to the '045 Application, filed on August 7, 2020, and to a provisional application filed on January 7, 2020. The '158 Patent describes a wall power outlet extender that "may allow a user to semi-permanently relocate the wall power outlet." Ex. A at Abstract. The device is essentially an extension cord, with one end (the plug end) connected to the other end (an outlet end) with an shaft that may be extendable or may have a flexible portion therein. Ex. A at 4:41-51, 9:10-18. In addition, the '158 Patent discloses that its plug end may be rotatable (Ex. A at 8:9-10), and that there may be a selectively attachment mechanism for attaching the outlet end to the wall "without causing damage to the underlying wall" (Ex. A at 10:8-11). This may include, for example, "peel and stick adhesive pad" or "putty and dry-down putty attachment." Ex. A at 10:21-25. The '158 Patent contains two

6

independent claims, which I address in more detail below.

17.     The '758 Patent was filed on July 6, 2021 and issued on December 5, 2023.  It claims priority to the same priority applications as the '158 Patent, but of course as a design patent does not include a specification or written claims.  I have reproduced Figures 1, 2, and 4 below as representative of the various features whose ornamental design is claimed in the '758 Patent:



18.    Notably, the '758 Patent includes in phantom several aspects of the illustrated device, including the entirety of the bottom plug component (and the "bend collar" (in the parlance of the '158 Patent) to which it is connected), as well as the actual outlet box itself.  What it does claim is the shaft (which has a rounded shape on the front side and a "neck" or "collar" where it

8

meets the box), the faceplate (which is rounded down toward the four corners, giving it a convex or dome shape), and the ratio in size and shape between the shaft and the faceplate and within the faceplate itself. I note that the faceplate's ratio is consistent with common, ordinary, wall outlets as people across the U.S. see every single day; this is derived by essentially having a consistent amount of space around all four sides of the two-plug arrangement. As I discuss below, an "ordinary observer" would associate this ratio with a common wall outlet, and thus would view the device in the '758 Patent as a replacement or augmentation of a standard wall outlet.

## V.    <u>INFRINGEMENT</u>

### <u>Infringement of a Utility Patent</u>

19.    I have been advised that determining whether a product or system directly infringes a patent claim requires (1) interpreting the meaning of that claim, and (2) comparing the interpreted claim to the product or system to determine whether the product or system in question contains or performs each of the elements of the claim. If one or more elements of the claim are not contained or performed by the product or system, that product or system does not infringe.

20.    I have also been advised that if a product or system does not directly infringe any independent claims in a patent, it cannot infringe any other dependent claims in that patent because dependent claims incorporate all of the limitations of independent claims from which they depend.

21.    I have been advised that interpreting (or construing) a claim involves reviewing the so-called intrinsic record to determine whether any specific definition needs to be given to any particular claim term of a utility patent. I understand that generally, the "plain and ordinary meaning" to a POSITA is the appropriate claim construction, but that there are certain situations where the law compels a more specific, or different, construction. As I discussed above, for purposes of this declaration, I have applied the plain and ordinary meaning to each claim term of

9

the '158 patent.

22.    I have been advised that infringement is possible under the so-called "doctrine of equivalents." I have been advised that even if a claim is not literally infringed, it may be infringed if an accused product achieves substantially the same function, in substantially the same way, to achieve substantially the same result. I understand that while the doctrine of equivalents allows for more "gray" area in an infringement analysis, it does not permit such a broad interpretation that a claim limitation is "vitiated," or removed, from the claim by way of a doctrine of equivalents analysis.

### Infringement of a Design Patent

23.    I understand that to determine infringement of a design patent, the test is whether, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other. Additionally, the question of substantial similarity is further refined as whether the accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by the similarity between the claimed and accused designs, inducing him to purchase one supposing it to be the other.

## VI.    PERSON OF SKILL IN THE ART ("POSITA") AND "ORDINARY OBSERVER"

24.    I understand that certain inquiries in patent cases (notably, here, construing claim terms) are made from the perspective of a POSITA. In patent law, a POSITA is a hypothetical person having the relevant level of ordinary skill in the art. I understand that a POSITA is generally a person of ordinary creativity, not an automaton, and is able to combine teachings in a particular field together. I understand that determining POSITA's appropriate level of ordinary skill in the

10

art may involve one or more of the inventor's educational level, the types of problems encountered in the art, prior solutions to those problems, and the sophistication of the technology.

25.     In my opinion, a POSITA in the field of the Patents-in-Suit here would have a working knowledge of consumer product design, as well as a basic understanding of mechanical principles needed to connect two items using common electrical plugs.  That is a POSITA would understand how to design mechanical elements to essentially create a specific, plastic-encased form factor for a standard extension cord.  The person would gain this knowledge through an undergraduate Bachelor of Science degree in Mechanical Engineering or a comparable field, and at least two years of work experience in relevant fields.  More experience can make up for less education, and vice versa.

26.     Likewise, an "ordinary observer" (which as I described above is the perspective for design patent infringement) for the types of products at issue in this case (and, in particular the '758 Patent, which is a design patent) would be an ordinary consumer purchasing household goods such as extension cords, phone chargers, and the like.

27.     I believe I can offer opinions as to what a POSITA and an ordinary observer would think regarding the '158 Patent and the '758 Patent, respectively.  I am a least a POSITA and an ordinary observer for the relevant disclosures/products/technologies, and have hired and trained POSITAs and ordinary observers in my career.

28.     I understand that Toka has not proposed a definition for a POSITA.  I reserve the right to address any proposed definition Toka may offer in the future.

## VII.     <u>PROSECUTION HISTORY SUMMARY FOR THE PATENTS-IN-SUIT</u>

29.     As part of my work in this matter, I reviewed the prosecution file histories of the '158 Patent and the '758 Patent.  Each of those patents claims priority to an abandoned parent—

U.S. Application Serial No. 16/988,045 (the "'045 Application").  And the '045 Application claims priority to U.S. Provisional Application Serial No. 62/957,903, which was filed on January 7, 2020. I summarize, briefly, the file history of the family of patents briefly below.

30.    The '045 Application's file history is attached as Exhibit C, the '758 Patent's file history is attached as Exhibit D, and the '158 Patent's file history is attached as Exhibit E.

31.    The '045 Application was filed on August 7, 2020, along with a request for prioritized examination.  Ex. C at 2.  The originally filed independent claims are reproduced below:

> 1.    A wall outlet extender that extends a wall outlet to a new position on a wall, comprising:
>
> a plug end configured to selectively plug into the wall outlet,
>
> an outlet end configured to selectively receive one or more plugs, and
>
> an extendable shaft between the plug end and the outlet end,
>
> wherein the wall outlet extender is rotatable about the plug end.

> 14.    An extendable power outlet adaptor, comprising:
>
> a plug selectively configured to insert into a wall outlet,
>
> a shaft that is telescopic and that is rotatable about the plug up to 360°, and
>
> one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall adjacent to the wall outlet.

Ex. C at 24-25.

32.    On September 14, 2020, the Patent Office rejected the claims over U.S. Patent No. 6,004,138 to Harbertson (Ex. C at 106-115), which discloses a remarkably similar design to what is shown and described in the '158 and '758 Patents, in combination with certain other references:



33.    In response, the applicant amended the claims to, among other things, require an interchangeable decorative faceplate:

> 1.    (Currently Amended) A wall outlet extender ~~that extends a wall outlet to a new position on a wall,~~ comprising:
>
> a plug end configured to selectively plug into [[the]] a wall outlet,
>
> an outlet end configured to selectively receive one or more plugs, wherein the outlet end comprises an interchangeable decorative faceplate, and
>
> an extendable shaft positioned between the plug end and the outlet end,
>
> wherein ~~the wall outlet extender is rotatable about~~ the plug end is rotatable.

> 14.    (Currently Amended) An extendable power outlet adaptor, comprising:
>
> a plug selectively configured to insert into a wall outlet,
>
> a shaft that is telescopic and that is rotatable about the plug up to 360°, and
>
> one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall ~~adjacent to the wall outlet~~
>
> an interchangeable decorative faceplate selectively attached with the one or more outlet receptacles.

Ex. C at 124-125.

34.    The Examiner again rejected the claims over Harbertson in combination with a reference alleged to disclose an interchangeable decorative faceplate. Ex. C at 150-159. The Applicant did not amend pending claim 1, but amended pending claim 14 as follows:

> 14.    (Currently Amended) An extendable power outlet adaptor, comprising:
>
> a plug selectively configured to insert into a wall outlet,
>
> a shaft that is telescopic and that is rotatable about the plug up to 360°, ~~and~~
>
> one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall; and
>
> a tamper preventer, wherein the tamper preventer comprises one or more springs that prevent full entry into the one or more outlet receptacles unless each of the one or more springs are compressed at a same time ~~an interchangeable decorative faceplate selectively attached with the one or more outlet receptacles~~.

14

Ex. C at 161-163.  The Applicant also argued the rejection based on the secondary reference used to disclose interchangeable decorative faceplates, and filed the response as an "after final" response.  Ex. C at 164-169.

35.    The Examiner was not persuaded by the Applicant's arguments, and confirmed the final rejection on April 6, 2021.  Ex. C at 187-190.

36.    The Applicant filed two continuation applications (one of which would issue as the '758 Patent, *see* Ex. Dm and one of which would issue as the '158 Patent, *see* Ex. E) on July 6, 2021, and the '045 Application went abandoned in August, 2021 (Ex. C at 198-199).

37.    The application that issued as the '758 Patent (the design patent at issue in this case) issued without a substantive rejection—the only official action from the Patent Office was a "restriction requirement," which required the applicant to choose from among two different, claimed designs.  *See generally* Ex. D.

38.    The application that issued as the '158 Patent was filed as a continuation of the abandoned '045 Application on July 6, 2021.  The two independent claims presented for examination in the continuation (by way of a preliminary amendment) are as follows:

> 1. (Currently Amended)    A wall outlet extender comprising:
>     a plug end configured to selectively plug into a wall outlet,
>     an outlet end configured to selectively receive one or more plugs, wherein the outlet end comprises an interchangeable decorative faceplate, and
>     an extendable shaft positioned between the plug end and the outlet end,
>     wherein the plug end is rotatable, and
>     an electrical cord portion positioned between the extendable shaft and the plug end.

> 14. (Currently Amended)     An extendable power outlet adaptor, comprising:
>
> a plug selectively configured to insert into a wall outlet,
>
> a shaft that is telescopic and that is rotatable about the plug up to 360°, ~~and~~
>
> one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall;
>
> an interchangeable ~~decorative~~ faceplate selectively attached with the one or more outlet receptacles, and
>
> an electrical cord portion positioned between the extendable shaft and the plug end.

Ex. E at 282-283.

39.     The Examiner rejected the claims over U.S. Patent Publication No. 2020/0313378 to Fyock, an example image from which is included below:



Ex. E at 324-336.

40.     In response, the applicant again amended the claims, presenting the following independent claims:

16

1. (Currently Amended) A wall outlet extender comprising:

a plug end configured to selectively plug into a wall outlet[[,]];

an outlet end configured to selectively receive one or more plugs[[,]];

an extendable shaft positioned between the plug end and the outlet end, wherein the plug end is rotatable[[,]]; and

an electrical cord portion positioned between the extendable shaft and the plug end, wherein the extendable shaft comprises a bend collar configured to enable flexibility in the extendable shaft adjacent to the plug end.

---

14. (Currently Amended) An extendable power outlet adaptor, comprising:

a plug selectively configured to insert into a wall outlet[[,]];

an extendable shaft that comprises a bend collar is telescopic and that is rotatable about the plug up to 360°[[,]];

one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall;

an interchangeable faceplate selectively attached with the one or more outlet receptacles[[,]]; and

an electrical cord portion positioned between the extendable shaft and the plug end.

Ex. E at 340-341.  The Examiner again rejected the claims over Fyock, asserting that Fyock rendered obvious the "bend collar" limitations added to the claims.  Ex. E at 367-375.  The applicant again amended the independent claims, further narrowing their scope as follows:

1. (Currently Amended) A wall outlet extender comprising:

a plug end configured to selectively plug into a wall outlet;

an outlet end configured to selectively receive one or more plugs;

an extendable shaft positioned between the plug end and the outlet end, wherein the plug end is rotatable; and

an electrical cord portion positioned between the extendable shaft and the plug end, wherein the extendable shaft comprises a bend collar configured to enable flexibility in the extendable shaft adjacent to the plug end; and

an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall.

17

> 14. (Currently Amended) An extendable power outlet adaptor, comprising:
>
> a plug selectively configured to insert into a wall outlet;
>
> an extendable shaft that comprises a bend collar is telescopic and rotatable about the plug up to 360°;
>
> one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall;
>
> an interchangeable faceplate selectively attached with the one or more outlet receptacles; ~~and~~
>
> an electrical cord portion positioned between the extendable shaft and the plug end.; and a device cradle that includes wireless charging technology configured to hold a device and facilitate charging the device.

Ex. E at 381-382.

41.     The Examiner finally allowed the claims on July 18, 2024, citing the newly added limitations as the reason for such allowance.  Ex. E at 408-416; Ex. A at Cover.

## VIII.   CLAIM CONSTRUCTION

42.     Based on my review of the Patents-in-Suit (including, for the '158 Patent, its claims) and the file histories (outlined in the section immediately above), I do not see any reason at this point to construe any claim term to have a meaning other than to have its "plain and ordinary meaning."  In particular, while certain limitations were added during examination (and ultimately to secure allowance of the '158 Patent), I do not see a need to construe those claim terms.  The ones I opine are clearly missing are missing under a "plain and ordinary" interpretation of each claim term.

43.     With respect to the '758 Patent, though I believe there are aspects of its design that are functional, for purposes of my non-infringement analysis, I have assumed that the entire design is non-functional.

44.     I expressly reserve the right to offer opinions about claim construction, or to apply any different claim construction the Court may order, as appropriate if this case proceeds.  For the opinions I offer herein, I do not need to rely on any specific construction of any claim term or

design feature.

## IX.    THE ACCUSED PRODUCTS

45.    The Accused Products are largely identical in design, albeit sold under different brands and therefore with different packaging.  I include photographs below of each of the Accused Products to demonstrate the packaging and the pertinent features of the same.

### ASIN B0FYY1L5LG

46.    I understand that under the above-noted ASIN, identical products may come in two different packages.  I have included photographs of what comes in each package below, though the product itself (i.e., all the items and packaging outside the outer box) are identical from what I can tell.  This, to my understanding, is the reason why the same ASIN is used despite the potentially different packages.









47.    When assembled, none of the parts of these products can move relative to one another.  And none of these products includes a wireless charging feature.

**ASINS B0G199W19V (SINGLE PACK) AND B0FXGDV8CJ (DOUBLE PACK)**

48.    I understand that for the above ASINs, the exact same product is sold in either a single pack or a double pack.  The actual products, however, are identical; the different ASINs merely refer to different quantities of products.  The photos I include below are for both the single pack and the double pack ASINs:

21





**ASINS B0G19B46RJ (SINGLE PACK)  AND B0G1BGVYQW (DOUBLE PACK)**

49.     Like the two products immediately above, I understand that for the above ASINs, the exact same product is sold in either a single pack or a double pack.  The actual products, however, are identical; the different ASINs merely refer to different quantities of products.  The

photos I include below are for both the single pack and the double pack ASINs:

50.    For these products, the shaft portion can be extended by pulling the outlet portion away from the plug portion.  When fully extended the shaft reaches approximately twice its original length.  In addition, the plug portion can be rotated by turning it (hard) within the housing it ships in.

51.    For these products, the plug end does not move at all with respect to the shaft portion.  There is no flexibility to move the plug end relative to the shaft, and there is no visible cord (or even a portion of the device in which a cord might be mounted) that is separate from either the shaft or the plug end.

52.    None of these products include a wireless charging feature or a device cradle.

53.    For purposes of my non-infringement analysis below, I refer to the modular products sold with ASIN B0FYY1L5LG as the "Accused Products having Design 1."  I refer to the one-piece products having ASINs B0G199W19V, B0FXGDV8CJ, B0G19B46RJ, and B0G1BGVYQW as the "Accused Products having Design 2."  It is my understanding from reviewing evidence in my material considered, as well as my personal inspection of physical product samples, that each product in each of these two groups is identical in construction and structure, and my non-infringement opinions apply equally to all products in the same group.

## X.    NON-INFRINGEMENT OF THE '158 PATENT

54.    I have been asked to opine about the issue of non-infringement by the Accused Products having Design 1 and the Accused Products having Design 2 as to both claims 1 and 12 of the '158 Patent.  Since these are the two independent claims of the '158 Patent, if the Accused Products do not infringe those claims, they cannot infringe any claim of the '158 Patent.

55.    I reproduce claims 1 and 12 of the '158 Patent below for reference:

23

| Claim 1 – '158 Patent | Claim 12 – '158 Patent |
|---|---|
| 1. A wall outlet extender comprising: | 12. An extendable power outlet adaptor, comprising: |
| a plug end configured to selectively plug into a wall outlet; | a plug selectively configured to insert into a wall outlet; |
| an outlet end configured to selectively receive one or more plugs; | an extendable shaft that comprises a bend collar is telescopic and rotatable about the plug up to 360°; |
| an extendable shaft positioned between the plug end and the outlet end, wherein the plug end is rotatable; | one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall; |
| an electrical cord portion positioned between the extendable shaft and the plug end, | an interchangeable faceplate selectively attached with the one or more outlet receptacles; |
| wherein the extendable shaft comprises a bend collar configured to enable flexibility in the extendable shaft adjacent to the plug end; and | an electrical cord portion positioned between the extendable shaft and the plug end; and |
| an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall. | a device cradle that includes wireless charging technology configured to hold a device and facilitate charging the device. |

56.    For the reasons that follow, it is my opinion that none of the Accused Products infringe either of the independent claims of the '158 Patent. I address the Accused Products having Design 1 and the Accused Products having Design 2 in turn below; since the designs of the products within those groups are identical, my opinions apply to *each* ASIN product that makes up the set of Accused Products. It should be noted that even if I do not address a particular limitation of one of the claims, that does not mean I concede that the limitation is present; I endeavor to identify the limitations that are most clearly missing from the Accused Products.

**Accused Products Having Design 1 (ASIN B0FYY1L5LG)**

57.    I include immediately below an exemplary photo of an Accused Product having

Design 1, which product design forms the basis for my opinions about non-infringement.



58.     With regard to Claim 1, the first limitation that is missing from the Accused Products having Design 1 is the limitation that there be "**an extendable shaft positioned between the plug end and the outlet end, wherein the plug end is rotatable**."  As can be seen above, nothing about the shaft portions included with these products is "extendable;" instead, three different segments are included in the packaging, and can be connected together between the plug end and the outlet end of the product.  This is not the same as being "extendable," which is described in the '158 Patent as being, for example, a telescoping arrangement.  Each portion of the shaft in these products has a fixed length, so nothing about the shaft is extendable.

59.     In addition with regard to this limitation, the plug end is not rotatable.  It is a fixed, immovable feature where no parts move.  The fact that it can be removed and re-plugged into the

shaft in a different orientation does not make it "rotatable," which the '158 Patent describes as occurring by way of a specific arrangement of connectors that maintain a connection with the three prongs of the plug regardless of how the product is oriented.

60.    Because of the modular design of the Accused Products having Design 1, there can be no "**electrical cord portion positioned between the extendable shaft and the plug end**."  The plug portion plugs directly into the shaft portion to achieve the modular design, so there is nothing positioned between the shaft (which, as noted above, is not extendable) and the plug end.

61.    For the same reasons as there is no electrical cord, there can be (and is not) a "**bend collar configured to enable flexibility in the extendable shaft adjacent to the plug end**."  When the parts are plugged together, no part can move relative to any other part.  Thus, there is no bend collar configured to enable flexibility in the extendable shaft, and as discussed above, no extendable shaft.

62.    In addition, because the design of the Accused Products having Design 1 is so drastically different than what is recited in claim 1, there can are no features that achieve substantially the same function, in substantially the same way, to achieve substantially the same result as what is claimed.  A device whose shape can only be changed by manually plugging and unplugging shaft portions is not the same as a telescoping shaft with a rotating plug and a flexible collar, so it is my opinion that the Accused Products having Design 1 also do not infringe Claim 1 of the '158 Patent under the doctrine of equivalents.

63.    With regard to Claim 12 of the '158 Patent, it is my opinion that the Accused Products having Design 1 do not infringe that claim for several reasons.  First, they do not satisfy the requirement that "**an extendable shaft that comprises a bend collar is telescopic and rotatable about the plug up to 360°**" at least because there is nothing in these products that can

26

be considered a "bend collar," either literally or under the doctrine of equivalents. As I explained earlier, the Accused Products having Design 1 do not include a plug portion that is movable at all with respect to the shaft portion, either rotatable or otherwise; instead, the plug and the shaft are connectable in a fixed relationship, such that they cannot move independently of the other except by being unplugged. Also, as I described with respect to claim 1, each shaft element in the modular design of the Accused Products having Design 1 is fixed in length, meaning that there is no "extendable shaft" in the Accused Products having Design 1. Thus, the Accused Products having Design 1 do not include this feature of claim 12 of the '158 Patent.

64.    The Accused Products having Design 1 do not have anything close to "**an interchangeable faceplate selectively attached with the one or more outlet receptacles.**" The device is a monolithic piece as shipped, and there are no faceplates that can be removed or replaced. This limitation is not met.

65.    For the same reasons I discussed above with respect to Claim 1, the Accused Products having Design 1 do not include a "**an electrical cord portion positioned between the extendable shaft and the plug end**." There is nothing (cord portion, bend collar, or otherwise) between the portion of the device that includes the plug and the portion of the device that is the shaft between the plug and the outlets, and as discussed above, no extendable shaft. Any argument that the Accused Products having Design 1 infringes under the doctrine of equivalents would necessarily eliminate the requirement for at least a "cord portion," which I understand is impermissible under the law. Thus, as sold, the Accused Products having Design 1 do not meet this claim limitation, literally or under the doctrine of equivalents.

66.    Finally, and perhaps most clearly missing, is the requirement in Claim 12 that the Accused Devices having Design 1 include "**a device cradle that includes wireless charging**

**technology configured to hold a device and facilitate charging the device** Based on my review of the products and the documentation, there is no wireless charging technology at all, and this limitation is simply absent from the Accused Products having Design 1.  Any argument that the Accused Products having Design 1 infringes under the doctrine of equivalents would necessarily eliminate the requirement for a "cord portion," which I understand is impermissible under the law. Thus, as sold, the Accused Products having Design 2 do not meet this claim limitation, literally or under the doctrine of equivalents.

67.    For the reasons given above, it is my opinion that the Accused Products having Design 1 do not infringe Claim 12 of the '158 Patent, either literally or under the doctrine of equivalents.

**Accused Products Having Design 2 (ASINs B0G199W19V, B0FXGDV8CJ, B0G19B46RJ, and B0G1BGVYQW)**

68.    I include immediately below an exemplary photo of an Accused Product having Design 2, which, along with my inspection of the physical product, forms the basis for my understanding of the accused products and thus for my opinions about non-infringement.  Notably, this design does have a telescoping shaft that can be pulled to the desired length, and also has a plug portion that can rotate to a desired orientation.



69.     With regard to Claim 1, there is no "**electrical cord portion positioned between the extendable shaft and the plug end**." The plug portion is permanently and rigidly connected directly into the shaft portion, so there is nothing positioned between the shaft and the plug end.

70.     For a similar reason, there cannot be (and is not) a "**bend collar configured to enable flexibility in the extendable shaft adjacent to the plug end**." While the plug portion can rotate, the plug end and the shaft end do not move flexibly relative to one another. Thus, there is no bend collar configured to enable flexibility in the extendable shaft. Instead, the shaft portion is immovable with respect to the plug portion.

71.     Claim 1 also requires "**an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall**." But in my review of the Accused Products having Design 2, there is nothing included with

29

the product that permits affixing to a wall. These products do not ship with screws, adhesives, or any other devices that can be sued to secure the outlet end to the wall; this omission is confirmed by the instruction sheet that comes with the product:



Thus, the Accused Products having Design 2 do not include the required "engagement portion…configured to selectively engage the wall," as is required. This is especially notable because this is the limitation that was added to secure allowance of the '158 Patent. Ex. E at 414 and is also present dependent Claim 7.

72.    In addition, because there is simply no electrical cord portion or bend portion whatsoever, it is my opinion that the doctrine of equivalents cannot save an argument for infringement without vitiating the "electrical cord portion" and the "bend collar" limitations from the claim, which I understand is impermissible. Thus, it is my opinion that the Accused Products having Design 2 do not infringe Claim 1 of the '158 Patent under the doctrine of equivalents.

73.    With regard to Claim 12 of the '158 Patent, it is my opinion that the Accused Products having Design 2 do not infringe that claim for several reasons. First, they do not satisfy the requirement that "**an extendable shaft that comprises a bend collar is telescopic and rotatable about the plug up to 360°**" at least because there is nothing in these products that can be considered a "bend collar," either literally or under the doctrine of equivalents. As I explained

30

earlier, the Accused Products having Design 2 do not include a plug portion that is movable at all with respect to the shaft portion; instead, the plug and the shaft are fixed together so that one cannot move independent of the other. In addition, while the Accused Products having Design 2 have a plug that rotates, it only rotates less than 180°, not the 360° required by this claim limitation. Thus, the Accused Products having Design 2 do not include this feature of claim 12 of the '158 Patent.

74.    The Accused Products having Design 2 also do not meet the claim 12 requirement for "**one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall**" because they do not include any mechanism for affixing the outlet portion to a wall. There are no screws, adhesives, or other mechanisms that permit the device to be affixed to the wall (selectively or otherwise). Any argument under the doctrine of equivalents would vitiate this limitation entirely. Thus, as sold, the Accused Products having Design 2 do not meet this claim limitation, literally or under the doctrine of equivalents.

75.    The Accused Products having Design 2 do not have anything close to "**an interchangeable faceplate selectively attached with the one or more outlet receptacles.**" The device is a monolithic piece as shipped, and there are no faceplates that can be removed or replaced. This limitation is not met.

76.    For the same reasons I discussed above with respect to Claim 1, the Accused Products having Design 2 do not include a "**an electrical cord portion positioned between the extendable shaft and the plug end**." There is nothing (cord portion, bend collar, or otherwise) between the portion of the device that includes the plug and the portion of the device that is the shaft between the plug and the outlets. Any argument under the doctrine of equivalents would vitiate this limitation entirely. Thus, as sold, the Accused Products having Design 2 do not meet this claim limitation, literally or under the doctrine of equivalents.

31

77. Finally, and perhaps most clearly missing, is the requirement in Claim 12 that the Accused Devices having Design 2 include "**a device cradle that includes wireless charging technology configured to hold a device and facilitate charging the device**." Based on my review of the products and the documentation, there is no wireless charging technology at all, and this limitation is simply absent from the Accused Products having Design 2. Any argument under the doctrine of equivalents would vitiate this limitation entirely. Thus, as sold, the Accused Products having Design 2 do not meet this claim limitation, literally or under the doctrine of equivalents.

78. For the reasons given above, it is my opinion that the Accused Products having Design 2 do not infringe Claim 12 of the '158 Patent, either literally or under the doctrine of equivalents.

## XI. NON-INFRINGEMENT OF THE '758 DESIGN PATENT

79. The '758 Patent includes several figures; I have reproduced Figure 1 below for ease of reference with respect to my opinions about non-infringement:



80.    As can be seen, the '758 Patent is characterized by only a small handful of features—the ratio of the thickness of the shaft to the wall outlet portion, a "sheath" or "neck" at the point where the shaft meets the wall outlet portion, and, most importantly, a curved or domed faceplate that differs from standard wall outlet faceplates, which are traditionally flat to minimize the disruption to an otherwise flat wall.

**Accused Products Having Design 1 (ASIN B0FYY1L5LG)**

81.    An exemplary picture of the Accused Products having Design 1 is reproduced below, and forms the basis for my analysis:



82.    In my opinion, each of the Accused Products having Design 1 is missing at least the "neck" portion illustrated at the point where the shaft meets the outlet portion. Instead, in the Accused Products having Design 1, the shaft portion maintains consistent thickness and cross-section up until the point it plugs into the bottom of the outlet portion. There is no "neck" or "sheath" at the point where the shaft portion meets the wall outlet portion. This is not surprising, as the Accused Products having Design 1 rely on a modular design (rather than a telescoping design), meaning that each of the three pieces included with the product that make up the shaft can be assembled in any order. If a "neck" or "sheath" were included, the assembly would be more difficult because the proper piece would need to be used next to the wall outlet portion. While this is not germane for design patent infringement, an "ordinary observer" would understand that the standard cross section of the shaft portions means that the Accused Products having Design 1 do

34

not have "substantially the same" design as the '758 Patent's design.

83.    With regard to the wall outlet portion itself, the Accused Products having Design 1 again differ in a meaningful way from the '758 Patent when viewed through the eyes of an "ordinary observer."  First, the face plate portion of the wall outlet in each Accused Product having Design 1 is completely flat.  This is at direct odds with the curved or domed faceplate disclosed and claimed in the '758 Patent, and "ordinary observer" would view this difference in design as substantial.

84.    The following demonstrates what an "ordinary observer" would expect from a standard, flush-mounted wall outlet:



85.    Particularly for a product type/category where, when mounted flush on a wall, minimizing the protrusion is important, the determination to use a flat, rather than curved, faceplate design is substantial and functional.

86.    In my opinion, this difference is the most prominent difference an "ordinary observer" would see when observing the Accused Products having Design 1, and is a basis for a finding of non-infringement.

87.    In addition, the relative dimensions of the wall outlet portion and the shaft are

35

substantially different when viewed from the perspective of an "ordinary observer." In the '758 Patent, it appears that a typical, standard, U.S. ratio faceplate is being claimed; everybody in this country has seen and used outlets of this type and with this dimension. On the other hand, the Accused Products having Design 1 rely on a wall outlet portion that is much narrower relative to its height than a standard wall outlet face plate, and as a result the overall appearance is different. Further, the difference in width from the shaft to the face plate in the Accused Products having Design 1 is far less drastic than that of the shaft to the face plate in the '758 Patent, and an "ordinary observer" would find that difference to be substantial. Indeed, in my opinion, the Accused Products having Design 1 have much more the look of an extension cord, with a minimally sized plug end, than an extension wall outlet, with its attendant length and width ratios:



88.    Particularly because the length (or height) of the device is largely driven by the size of the pair of outlets, the decision to make the outlet narrower is substantial; it is really the only dimension whose design can be changed without needing to change the arrangement or orientation of the plugs themselves.

89.    The following side-by-side illustration of the outlet portion of the Accused Products having Design 1 and the corresponding portion of the '758 Patent's figures confirms the substantial

36

differences in flatness and in dimensions to an ordinary observer:



90.    Because the Accused Products having Design 1 are not "substantially identical" to an "ordinary observer" with respect to (1) the "neck" or "sheath" at the point where the shaft meets the outlet portion, (2) the curved for domed ace plate in the '758 Patent as compared to the flat face plate of the Accused Products having Design 1, and (3) the dimensions of the wall outlet portion (internally and with respect to the shaft itself), it is my opinion that the Accused Products having Design 1 do not infringe the '758 Patent.

**Accused Products having Design 2 (ASINs B0G199W19V, B0FXGDV8CJ, B0G19B46RJ, and B0G1BGVYQW)**

91.    An exemplary picture of the Accused Products having Design 2 is reproduced below, and forms the basis for my analysis:



92.     In my opinion, each of the Accused Products having Design 2 is missing at least the "neck" portion illustrated at the point where the shaft meets the outlet portion.  Instead, in the Accused Products having Design 2, the shaft portion maintains consistent thickness and cross-section up until the point it plugs into the bottom of the outlet portion.  There is no "neck" or "sheath" at the point where the shaft portion meets the wall outlet portion.  Instead, the shaft portion of the Accused Products having Design 2 is sleek and consistently sized/shaped, meaning that there is no aesthetic "neck" or "sheath" where the shaft meets the outlet portion.  An "ordinary observer" would understand that the standard cross section of the shaft portions means that the Accused Products having Design 2 do not have "substantially the same" design as the '758 Patent's design.

93.     With regard to the wall outlet portion itself, the Accused Products having Design 2 again differ in a meaningful way from the '758 Patent when viewed through the eyes of an

"ordinary observer." First, the face plate portion of the wall outlet in each Accused Product having Design 2 is completely flat. This is at direct odds with the curved or domed faceplate disclosed and claimed in the '758 Patent, and "ordinary observer" would view this difference in design as substantial.

94.     The following demonstrates what an "ordinary observer" would expect from a standard, flush-mounted wall outlet:



95.     Particularly for a product type/category where, when mounted flush on a wall, minimizing the protrusion is important, the determination to use a flat, rather than curved, faceplate design is substantial and functional.

96.     In my opinion, this difference is the most prominent difference an "ordinary observer" would see when observing the Accused Products having Design 2, and is a basis for a finding of non-infringement.

97.     In addition, the relative dimensions of the wall outlet portion and the shaft are substantially different when viewed from the perspective of an "ordinary observer." In the '758 Patent, it appears that a typical, standard, U.S. ratio faceplate is being claimed; everybody in this country has seen and used outlets of this type and with this dimension. On the other hand, the

39

Accused Products having Design 2 rely on a wall outlet portion that is narrower relative to its height than a standard wall outlet face plate, and as a result the overall appearance is different. Further, the difference in width from the shaft to the face plate in the Accused Products having Design 2 is far less drastic than that of the shaft to the face plate in the '758 Patent, and an "ordinary observer" would find that difference to be substantial. Indeed, in my opinion, the Accused Products having Design 2 have much more the look of an extension cord, with a minimally sized plug end, than an extension wall outlet, with its attendant length and width ratios:



98.    Particularly because the length (or height) of the device is largely driven by the size of the pair of outlets, the decision to make the outlet narrower is substantial; it is really the only dimension whose design can be changed without needing to change the arrangement or orientation of the plugs themselves.

99.    The following side-by-side illustration of the outlet portion of the Accused Products having Design 2 and the corresponding portion of the '758 Patent's figures confirms the substantial differences in flatness and in dimensions to an ordinary observer:

40



100.    Because the Accused Products having Design 2 are not "substantially identical" to an "ordinary observer" with respect to (1) the "neck" or "sheath" at the point where the shaft meets the outlet portion, (2) the curved or domed face plate in the '758 Patent as compared to the flat face plate of the Accused Products having Design 2, and (3) the dimensions of the wall outlet portion (internally and with respect to the shaft itself), it is my opinion that the Accused Products having Design 2 do not infringe the '758 Patent.

## XII.    CONCLUSION

101.    For the reasons I have given above, it is my opinion that the Accused Products do not infringe any claim of either the '158 patent or the '758 Patent, literally or under the doctrine of equivalents.

102.    I understand that Toka has not provided claim charts (or any analysis of infringement whatsoever), but I reserve the right to respond to any infringement arguments or analysis provided in the future by Toka or its experts.

103.    While I have not been asked to opine about invalidity, I am willing and able to do so if asked (e.g., by the Court).

104.   I declare that all statements made of my own knowledge are true and that all statements made on information and belief are believed to be true, and that these statements were made with the knowledge that willful false statements and the like are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code.

Dated: June 16, 2026                                   By: _____
                                                            James B. Babcock

# BABCOCK DECLARATION

# EXHIBIT A

US012155158B2

(12) **United States Patent**

Galazin

(10) **Patent No.: US 12,155,158 B2**

(45) **Date of Patent: Nov. 26, 2024**

(54) **WALL MOUNTING OUTLET EXTENDER**

(71) Applicant: **TOKA, LLC**, Greenwich, CT (US)

(72) Inventor: **Tony Matthew Galazin**, Greenwich, CT (US)

(73) Assignee: **TOKA, LLC**, Greenwich, CT (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 99 days.

(21) Appl. No.: **17/420,884**

(22) PCT Filed: **Jan. 6, 2021**

(86) PCT No.: **PCT/US2021/012261**

§ 371 (c)(1),
(2) Date: **Jul. 6, 2021**

(87) PCT Pub. No.: **WO2021/141952**

PCT Pub. Date: **Jul. 15, 2021**

(65) **Prior Publication Data**

US 2023/0140080 A1     May 4, 2023

**Related U.S. Application Data**

(63) Continuation of application No. 16/988,045, filed on Aug. 7, 2020, now abandoned.

(Continued)

(51) **Int. Cl.**
**H01R 25/00** (2006.01)
**H01R 13/72** (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ............. **H01R 13/74** (2013.01); **H01R 13/72** (2013.01); **H01R 24/68** (2013.01); **H01R 25/006** (2013.01)

(58) **Field of Classification Search**
CPC ........ H01R 13/74; H01R 13/72; H01R 24/68; H01R 25/006
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,553,798 A | 11/1985 | Murphy | |
| 5,957,701 A | 9/1999 | McMillin | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| GB | 2571295 A | 8/2019 | |

OTHER PUBLICATIONS

International Search Report and Written Opinion mailed Apr. 6, 2021; International Patent Application No. PCT/US2021/012261 filed on Jan. 6, 2021.

*Primary Examiner* — Michael C Zarroli

(74) *Attorney, Agent, or Firm* — McDonald Hopkins LLC

(57) **ABSTRACT**

Provided is a wall power outlet extender that may relocate the wall power outlet to a different position without requiring electrical work or professional installation and without cluttering adjacent surfaces. The wall power outlet extender may be positionable along a surface of a wall adjacent to a wall power outlet and may allow a user to semi-permanently relocate the wall power outlet. The wall power outlet extender may be made fixed and stationary at a particular position and relatively unmovable unless acted on or repositioned by a user. The wall power outlet extender may be selectively rotatable and/or telescopic, and include a spinning or ambidextrous plug, to be adaptable to the specific location and to provide a myriad of different positions in which the new outlet may be placed. The wall power outlet extender may feature multiple outlets, USB ports, and surge protection, as well as Bluetooth and wireless capabilities.

**18 Claims, 12 Drawing Sheets**



## US 12,155,158 B2

Page 2

**Related U.S. Application Data**

(60)  Provisional application No. 62/957,903, filed on Jan. 7, 2020.

(51)  **Int. Cl.**
      **H01R 13/74**           (2006.01)
      **H01R 24/68**           (2011.01)

(56)                     **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,004,138 A | 12/1999 | Harbertson | |
| 7,220,128 B1 * | 5/2007 | Hicks | H01R 25/00 |
| | | | 439/502 |
| 2013/0052882 A1 | 2/2013 | Brausen | |
| 2017/0273203 A1 * | 9/2017 | Iaconis | H02G 3/18 |
| 2017/0346244 A1 * | 11/2017 | Comis | H01R 13/72 |
| 2018/0158305 A1 * | 6/2018 | Noland | G08B 21/0438 |
| 2020/0313378 A1 * | 10/2020 | Fyock | H02G 11/00 |

* cited by examiner



FIG. 1A

FIG. 1B



FIG. 2A          FIG. 2B



FIG. 2C          FIG. 2D



**FIG. 3A**

**FIG. 3B**



FIG. 4B



FIG. 4A



**FIG. 5**



**FIG. 6A**



**FIG. 6C**



**FIG. 6B**



**FIG. 6D**



**FIG. 7**



**FIG. 8**



**FIG. 9**



FIG. 10A

FIG. 10B



**FIG. 11A**



**FIG. 11B**



**FIG. 11C**

US 12,155,158 B2

**1**

## WALL MOUNTING OUTLET EXTENDER

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a 35 U.S.C. § 371 national stage application of PCT/US2021/012261 filed on Jan. 6, 2021, entitled "WALL MOUNTING OUTLET EXTENDER," which claims priority to U.S. Utility application Ser. No. 16/988,045 entitled "WALL MOUNTING OUTLET EXTENDER" filed on Aug. 7, 2020 and U.S. Provisional Patent Application No. 62/957,903 entitled "WALL MOUNTING OUTLET EXTENDER" filed on Jan. 7, 2020 each of which are hereby incorporated by reference in their entireties.

### FIELD OF THE INVENTION

The present disclosure generally relates to power outlet extenders and, more specifically, to a rotatable and/or telescopic power outlet extender that may be used to relocate a wall power outlet to multiple other positions on the wall.

### BACKGROUND

Wall power outlets are stationary and, as a result, may be located in inconvenient or inaccessible areas of a household, workplace, or business. For example, wall outlets may end up being positioned behind sofas, mattresses, furniture, shelving, storage items, and the like. Such inconvenient or inaccessible wall outlets may cause any number of problems including the inability to easily plug in or unplug cords and devices into the wall outlet. Additionally, in order to reach these wall outlets, the cord of a particular device, such as that for a smart device, television, computer, laptop, charger, lamp, and the like, may not be long enough to plug into the wall outlet and be used as desired.

As it stands, actually changing the location and accessibility of an otherwise stationary wall outlet requires an electrician and direct access into the wall. Such relocation of a wall outlet and access into the wall can be invasive, costly, and require a specialized workman or professional installation. Additionally, relocation of a wall outlet to another position on the wall by an electrician is permanent, and the new stationary wall outlet also cannot be further relocated or repositioned at a later time without going through the same process.

Other options for extending a wall outlet include extension cords. Extension cords typically comprise a flexible cord that plugs into the wall outlet on one end and runs along the floor or other flat surface to its other end that houses one or more outlets. Extension cords are often used temporarily, such as in situations for using power tools outside of the house, powering indoor and outdoor Christmas lights, and the like. When used in more permanent or daily situations, extension cords can clutter the floor or surface it lays on and cause other inconvenience, can be accidentally moved or damaged, and can put stress on the juncture between the wall outlet and the plug resulting in fraying or other damage.

What is needed is a wall power outlet extender that can be positioned or mounted on a wall and that can relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. What is also needed is a wall power outlet extender that is repositionable, re-mountable, and removable to accommodate changing needs.

**2**

### SUMMARY OF THE INVENTION

A wall outlet extender that extends a wall outlet to a new position on a wall may include a plug end configured to selectively plug into the wall outlet, an outlet end configured to selectively receive one or more plugs, and an extendable shaft between the plug end and the outlet end. The wall outlet extender may be rotatable about the plug end.

The wall outlet extender may also include any of the foregoing, which may be combined in any manner without departing from the present teachings. In an embodiment, the extendable shaft may include two more or telescoping portions. The extendable shaft may include a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter may be larger than the second diameter. The first telescoping portion may be configured to internally receive the second telescoping portion in a retracted position. In an embodiment, the extendable shaft may be extendable from about 21 inches to about 34 inches. In an embodiment, the plug end may be rotatable about 360°. In an embodiment, the wall outlet extender may further include an engagement portion. The engagement portion may be positioned on a wall-facing side of the outlet end and may be configured to selectively engage the wall. The engagement portion may comprise a non-permanent adhesive, removable putty, or stickable surface. The engagement portion may be free from any attachment to the wall that traverses or damages the wall surface. In an embodiment, the outlet end may include an even number of outlets and at least one USB port. In an embodiment, the outlet end may include interchangeable faceplates. In an embodiment, the outlet end may include a device cradle configured to hold a device while the device is plugged into the outlet end. In an embodiment, the wall outlet extender may include Bluetooth or Wi-Fi connectivity capabilities.

An extendable power outlet adaptor may include a plug selectively configured to insert into a wall outlet, a shaft that is telescopic and that is rotatable about the plug up to 360°, and one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall adjacent to the wall outlet.

The wall outlet extender may also include any of the foregoing, which may be combined in any manner without departing from the present teachings. In an embodiment, the outlet receptacles may be attachable to the wall by temporary adhesive, putty, or stickable surface. In an embodiment, the extendable power outlet adaptor may be free from any attachment to the wall that traverses or damages the wall surface. In an embodiment, the extendable power outlet adaptor may be removed and repositioned onto the wall.

### BRIEF DESCRIPTION OF THE DRAWINGS

The present teachings may be better understood by reference to the following detailed description taken in connection with the following illustrations, wherein:

FIG. **1A** depicts an isometric view of an embodiment of an outlet extender in an extended position in accordance with aspects of the present disclosure;

FIG. **1B** depicts an isometric view of an embodiment of an outlet extender in an extended position in accordance with aspects of the present disclosure;

FIG. **2A** depicts a front view of an embodiment of an outlet extender in a retracted position in accordance with aspects of the present disclosure;

US 12,155,158 B2

3

FIG. 2B depicts a side view of the outlet extender shown in FIG. 2A in a retracted position in accordance with aspects of the present disclosure;

FIG. 2C depicts a front view of the outlet extender shown in FIG. 2A in an extended position in accordance with aspects of the present disclosure;

FIG. 2D depicts a side view of the outlet extender shown in FIG. 2A in an extended position in accordance with aspects of the present disclosure;

FIG. 3A depicts a back view of an outlet extender in a retracted position in accordance with aspects of the present disclosure;

FIG. 3B depicts an expanded view of Box A of the outlet extender shown in FIG. 3A in accordance with aspects of the present disclosure;

FIG. 4A depicts an isometric view of an embodiment of an outlet extender as it is being plugged into a wall outlet in accordance with aspects of the present disclosure; and

FIG. 4B depicts a front view of an embodiment of an outlet extender plugged into a wall outlet and rotated about 90° counter clockwise to a side position in accordance with aspects of the present disclosure;

FIG. 5 depicts an exploded view of an embodiment of an outlet end and extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

FIG. 6A depicts an isometric view of an embodiment of a front outlet housing, where FIG. 6B shows a side view, FIG. 6C shows a front view, and FIG. 6D shows a back view of the front outlet housing in accordance with aspects of the present disclosure;

FIG. 7 depicts front and side views of an embodiment of a plug end and extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

FIG. 8 depicts an exploded view of an embodiment of a plug end of an outlet extender in accordance with aspects of the present disclosure;

FIG. 9 depicts an exploded view of an embodiment of an extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

FIG. 10A depicts an isometric view of an embodiment of a cord assembly and FIG. 10B shows an exploded view of a cord assembly in accordance with aspects of the present disclosure;

FIG. 11A depicts an isometric view of an embodiment of a front plug housing, where FIG. 11B shows a front view and FIG. 11C shows a back view of the front plug housing in accordance with aspects of the present disclosure.

DETAILED DESCRIPTION

Reference will now be made in detail to exemplary embodiments of the present teachings, examples of which are illustrated in the accompanying drawings. It is to be understood that other embodiments may be utilized and structural and functional changes may be made without departing from the respective scope of the present teachings. Moreover, features of the various embodiments may be combined or altered without departing from the scope of the present teachings. As such, the following description is presented by way of illustration only and should not limit in any way the various alternatives and modifications that may be made to the illustrated embodiments and still be within the spirit and scope of the present teachings. In this disclosure, numerous specific details provide a thorough understanding of the subject disclosure. It should be understood

4

that aspects of this disclosure may be practiced with other embodiments not necessarily including all aspects described herein, etc.

As used herein, the words "example" and "exemplary" means an instance, or illustration. The words "example" or "exemplary" do not indicate a key or preferred aspect or embodiment. The word "or" is intended to be inclusive rather than exclusive, unless context suggests otherwise. As an example, the phrase "A employs B or C," includes any inclusive permutation (e.g., A employs B; A employs C; or A employs both B and C). As another matter, the articles "a" and "an" are generally intended to mean "one or more" unless context suggest otherwise.

Provided is a wall power outlet extender that may be positioned or mounted on a wall and that may relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. The wall power outlet extender may be positionable along a surface of a wall adjacent to a wall power outlet and may allow a user to semi-permanently relocate the wall power outlet. The wall power outlet extender can be permanent in that it may not be as accidentally movable as an extension cord, may be able to have a low profile on or against a wall, and may have a rigid housing. The wall power outlet extender can be temporary in that it does not require any professional installation, does not require opening of a wall or electrical work, and can easily be unplugged and re-plugged into the same or a different wall power outlet.

The wall power outlet extender may become fixed and stationary at a particular position and relatively unmovable unless acted on or repositioned by a user. The wall power outlet extender may be selectively rotatable and/or telescopic, and include a spinning or ambidextrous plug, to be adaptable to the specific location and to provide a myriad of different positions in which the new outlet may be placed. The wall power outlet extender may feature multiple outlets, USB ports, and surge protection, as well as Bluetooth and wireless capabilities, which are described in more detail below.

FIGS. 1-4 depict an outlet extender 100 having a plug end 110 and an outlet or socket end 120 electrically connected by an elongated extender or extendable shaft 130. The outlet extender 100 may comprise a housing (such as 222 described in more detail below) that is partially hollow to accommodate electrical line or lines (of appropriate configuration) positioned through the elongated extender 130 and between the plug end 110 and the outlet end 120. The plug end 110 may include one or more plugs or sets of male contacts 112 that are operatively attachable to an outlet, such as a wall outlet. The plugs or male contacts 112 may be placed on a back or wall-facing side 102 of the outlet extender 100, see FIG. 4A. The plugs or male contacts 112 may be of any orientation and fitted to connect with any type of outlet, including household outlets, appliance outlets, industrial or commercial outlets, and outlets in any country, such as the U.S., Europe, Asia, Australia, etc. In some embodiments, the plugs or male contacts 112 may be replaceable, i.e., a user may remove one of the plugs or male contacts 112 and replace it with a different one, such as one that has a different configuration. This will allow a user to utilize the outlet extender 100 with one type of plug and then replace the plug or male contact 112 with a different one, such as by way of an example, by replacing a U.S. plug with one of a European configuration. The outlet end 120 may include one or more outlets or female receptacles 122, 124 that operatively receive a plug. In the embodiment shown in

US 12,155,158 B2

5

FIG. 1, a pair of outlets or female receptacles 122, 124 may be utilized. It should be understood, however, that any number of female receptacles may be utilized, e.g., one, three, four, five, six, etc.

The outlets or female receptacles 122, 124 may be placed on an opposite side from the plugs or male contacts 112, or on a front or room-facing side 104 of the outlet extender 100. As a result, the plugs or male contacts 112 may be plugged into a wall outlet and the outlets or female receptacles 122, 124 may face the room to be accessible to receive other plugs, see FIG. 4A. The outlets or female receptacles 122, 124 may be of any orientation and fitted to connect with any type of plug, including plugs for household items, appliances (such as electrical dryers), industrial or commercial devices or machinery, electrically powered items, and plugs that are used in any country, such as the U.S., Europe, Asia, Australia, etc. Although the drawings generally depict a three-prong AC plug and outlets as used in the U.S., it is noted that any plug and outlets may be incorporated into the outlet extender design. In some embodiments, the plug and outlet may be of a similar configuration or they may be of a different configuration such that the outlet extender 100 can act as an adapter to change the outlet from a first configuration to a second configuration (e.g. a U.S. plug and European receptacles or vice versa). In an embodiment, the plug end 110 and the outlet end 120 may include mating plugs and outlets, or the plug end 110 and the outlet end 120 may include plug and outlet types that are different. The plug end 100 may comprise Type A, B, C, D, E, F, G, H, I, J, K, L, M, N and O IEC plug ends that are utilized throughout the world. Further the plug end 100 may comprise a 120 volt end, 240 volt end or a combination of the foregoing.

In an embodiment, the plug end 110 may include a single plug, may include a single plug and a decoy plug, two plugs, or any number of plugs. The present disclosure contemplates use of any number of plug ends 110 (e.g., one, two, three, etc.). In an embodiment having a decoy plug, the decoy plug may plug into the second outlet in the wall outlet and may provide additional structural support to the outlet extender 100 as it is positioned against the wall. The decoy plug may be made of a plastic or non-electrically conductive material. In an embodiment with two plugs, each plug may enter into one of the outlets on the wall outlet and may receive or transfer power or electricity. FIG. 3B shows an embodiment of the plug end having a single plug 112. In an embodiment having a single plug, the other plug in the wall outlet may remain accessible and accommodate another outlet extender or a plugged in device.

In an embodiment, the outlet end 120 may include one or more outlets or receptacles 122, 124. For example, the outlet end 120 may include one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, or more outlets. The outlets 122 may be located on the face of the outlet end 120, as shown in FIGS. 1-4, but it is noted that the outlets 122 may be located on any side of the outlet end 120 as well, such as the side, top, or bottom edges. One or more of the outlets 122, 124 may include a GFCI (Ground Fault Circuit Interrupter). The outlets 122, 124 may also include surge protection that can protect against surges or spikes and limit the voltage supplied to a connected device by either blocking or shorting, to ground any voltages above a certain threshold. The outlets 122 may be able to accommodate any necessary voltage and power abilities so as to provide power to and charge cell phones, laptops, computers, tablets, appliances, and the like, and may be integrated with increased voltages, cables, and capabilities to provide faster or lightening charging and power. The outlet end 120 may also include one or

6

more USB type outlets 126, such as one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, or more USB type outlets. The USB type outlets 126 may be USB A (shown as 126) or USB C (shown as 127) outlets. The USB type outlets may be located on a face of the outlet end 120 with the plugs, as shown in FIGS. 1A, 2A, and 2C, or may be located on the side of the outlet end 120, and as shown in FIG. 1B. Although other outlet types may not be specifically mentioned, it is noted that any outlet or combination of outlets may be incorporated into the outlet end 120. Further, the outlet end 120 may comprise AFCI outlets, 20 A outlets, or any of Type A, B, C, D, E, F, G, H, I, J, K, L, M, N and O IEC outlets utilized throughout the world.

The outlet end 120 may include a device cradle, shelf, or holder, such as, for example holder 129. The device cradle, shelf, or holder may be located on any side of the outlet end 120 and may serve as a location to put or hold a device, such as a phone, tablet, home device, security device, or the like. The cradle, shelf, or holder may hold the device while such device is plugged into one of the outlets 122, 124. The cradle, shelf, or holder 129 may also include wireless charging technology to charge a device when it is in physical contact with the cradle, shelf, or holder if the device is within a threshold vicinity or distance to facilitate charging. The cradle, shelf, or holder 129 may also serve as a location to put or hold any item, including pencils, pens, other writing utensils, notebooks, address books, keys, wallets, purses, hairdryers, hair straighteners, toothbrushes, toothpaste, other bathroom items or household items, etc. In an embodiment, an extended shelf or faceplate with an extended shelf may be operatively attached to the outlet end 120 where the extended shelf is capable of holding heavier, larger, or specific objects (e.g., with holders or hooks configured to receive a key ring or hair item, etc.). The extended shelf may provide any size shelf as may be desired. The outlet end 120 may also include interchangeable faceplates 128 such as for, as an example, decoration or to provide an extended shelf. FIG. 4A, for example, shows a faceplate 128 having a different color than the remaining outlet extender 100. The faceplate 128 may include any color or colors, any pattern, any symbols, and the like, as may be desired. The faceplate 128 may be removed and attached by a sliding mechanism, snapping mechanism, fastener (such as a screw) friction fit, pressure fit, etc. It is noted that the color, shape, number of outlets, and the like, may vary when manufactured.

The outlet end 120 (or other portion of the outlet extender 100) may include capabilities to connect to Wi-Fi, Bluetooth, and other technology. The outlet end 120 (or other portion of the outlet extender 100) may communicate with any connected Wi-Fi, Bluetooth, Zigbee, or similar device. The outlet end 120 (or other portion of the outlet extender 100) may receive and transmit information to and from a connected device (such as a computer, smart device, tablet or the like), and may carry out instructions. For example, the outlet end 120 may communicate information about outlet extender 100 regarding health, plugged in devices, power utilized, power surges, power outages, whether the plugged in device is powered on or off, hours of use, amount of electricity used over a defined period of time, and the like. The outlet end 120 (or other portion of the outlet extender 100) may also be able to selectively turn on and turn off a plugged in device or power supply to any of the outlets 122, 124, individually or together. Turning on and off a plugged in device or power supply to any of the outlets 122, 124 may be done in response to a command from a connected device (such as a computer, laptop, smart device, smart phone,

US 12,155,158 B2

7                                                                              8

tablet or the like), through a home device, by voice command, by physical switch on the outlet end **120**, or in response to an event such as a power outage, a power surge, after a certain period of time, or as a result of a programmed routine. Further, the outlet extender **100** may include a sensor or a plurality of sensors that may be used to turn on and turn off the outlet extender **100**. By way of a non-limiting example, the sensor may comprise a motion sensor such that it may sense motion and turn on or provide power to the outlet extender **100**. Other types of sensors may be utilized, such as light sensors, sound sensors, and the like.

The outlet end **120** may also include one or more indicators, such as a light indicator. The light indicator may be an LED light. The indicators may indicate whether power is being (or not being) supplied through the outlets **122**, **124**, whether power is being received from the wall outlet, whether surge protection is enabled, whether the outlet extender **100** is connected to Wi-Fi or Bluetooth, Zigbee, and the like. The one or more light indicators may be different colors, may blink, and may create different patterns or combinations to convey its indications.

The outlet end **120** or plug end **110** may also include a light that is not an indicator, such as an LED light, that serves as a nightlight. The light may have a sensor to determine ambient light or darkness and may automatically turn on and off when a certain threshold is met (e.g. the light may automatically turn on at dusk and turn off at dawn, when a light in the room is turned on and off, and the like.) The light may further turn on and off by a user pressing a switch or by a command over Wi-Fi, over Bluetooth or Zigbee, by voice, through a home device, and the like. The light may be set to a certain timed schedule to turn on and off at a specific time each day. The light may also include a motion sensor and turn on or off when such motion is sensed, or after a certain set time when no motion is sensed.

The outlet end **120** or plug end **110** may further include a built-in speaker, for example, a Bluetooth speaker or other configuration of a speaker, or a speaker may be selectively attachable to the outlet end **120** or plug end (such as by a faceplate attachment). The speaker may be separately chargeable or may pull power from the wall outlet or outlet extender **100** in any appropriate manner. The speaker may be charged by the outlet extender **100** (or more specifically through the power provided to the outlet end **120**). The outlet end **120** may include an attachment device of any appropriate configuration to which the speaker may be selectively attached in any appropriate manner.

In an embodiment, the outlet extender **100** may be fixed, rigid, or stationary along the entirety of its length (e.g. not rotatable or not telescopic). For example, the fixed, rigid, or stationary outlet extender **100** may be provided in different sizes, e.g. 12 inches, 24 inches, 36 inches and any length lesser, greater, or in between. The outlet extender **100** may also include additional fixed adaptors that may be attached to the elongated shaft to adjust the length of the outlet extender **100** while still remaining fixed, rigid, or stationary overall. The fixed, rigid, or stationary outlet extender **100** may also include different oriented plugs or male contact **112** and plugs or female receptacles **122**, **124**, to facilitate plugging into a wall outlet in a straight orientation, a left side orientation, right side orientation, and similar.

In an embodiment, the outlet extender **100**, or a portion thereof, may be selectively rotatable at a point along its length. The outlet extender **100** may be selectively rotatable any range of degrees, such as, for example from about 5° to about 360°. The outlet extender **100** may be selectively rotatable about 180° so that the outlet end **120** may be positioned straight above the wall outlet in a straight configuration when plugged in (see FIG. **4**A), or straight to the left or right of the wall outlet in a horizontal configuration when plugged in (see FIG. **4**B), or any variation therebetween, e.g., 45 degrees, 90 degrees, 135 degrees, 225 degrees, 270 degrees, 315 degrees or anything therebetween. The appropriate angle to be utilized may depend on the specific use of the outlet extender **100**.

As shown in FIG. **3**B, the plug end **110** may be selectively rotatable in any appropriate manner. In an embodiment, a portion of the plug end **110** may be rotatable, such as the male contacts and associated base, or a swivel component. As seen in FIG. **4**A-B, the outlet extender **100** may be plugged into a wall outlet initially in a straight configuration. Once the outlet extender **100** is plugged in at the plug end **110**, the outlet end **120** may be rotated to the left about the point defined by the plug end **110** and its attachment to the wall outlet. This rotation may allow the outlet end **120** to clear the side of the couch or other furniture when in a horizontal position so that the outlets are accessible. Although the plug end **110** may be described as selectively rotatable, it is noted that any portion of the outlet extender **100** may be selectively rotatable, including, but not limited to, the extendable shaft **130**. A user may selectively rotate the outlet extender **100** prior to plugging in the outlet extender **100** into the wall or when the outlet extender **100** has already been plugged into a wall outlet. The outlet extender **100** or plug end **110** may include a locking mechanism so that once the outlet extender **100** has been positioned in the desired location and at a desired angle, any undesired rotation of the outlet extender **100** may be prevented. The locking mechanism may include a bolt and slot, rotatable bar, spring-loaded hinge, and the like. The rotation of the outlet extender **100** or plug end **110** may be biased towards a certain position, such as a straight state.

In an embodiment, the outlet extender **100** may include an electrical cord portion between the elongated extender **130** and the plug end **110** that plugs into the wall outlet. The outlet extender **100** may plug into a wall outlet at the plug end **100**, and then may be able to bend around a corner, be positioned on the floor, and the like, by the bendable cord portion. For example, the outlet extender **100** may be able to plug behind a desk, set on the floor or set on top of the desk, and have the outlets on the outlet end **120** available wherever the user desires. It is noted that while embodiments herein describe initial connection into a wall outlet, that any outlet may be used, such as an outlet in a power strip or surge protector.

In an embodiment, the outlet extender **100** may be selectively extendable. In an embodiment, the elongated extender **130** may be selectively extendable permitting the outlet extender **100** to be extendable. As shown in FIGS. **2**A-D, the elongated extender **130** may be transitioned between a retracted state (FIG. **2**A, **2**B) to an extended state (FIG. **2**C, **2**D). The extension may be facilitated by telescoping sections or members, wherein one or more sections of the elongated extender **130** may be of a smaller diameter than the immediately adjacent section (located at one of the section's ends) such that the smaller diameter section (see, e.g. **132**) may nest into the larger diameter section (see, e.g. **134**). The larger diameter section **134** may similarly nest into an even larger diameter section and the small diameter section **132** may similarly be able to nest within it an even smaller diameter section. The elongated extender **130** may include two or more telescoping sections including three, four, five, six, seven, eight, etc. sections. The sections may be at least partially hollow so as to accommodate smaller

US 12,155,158 B2

9      10

diameter telescoping sections in a collapsed state, as well as electrical lines running through the elongated extender **130** and between the plug end **110** and the outlet end **120**.

Although sections of the elongated extender **130** include reference to diameter, it is noted that a cross-section of the elongated extender **130** may be round, square, or triangular and that nesting of any telescoping sections could be achieved by adapting the perimeter or diameter as described. FIGS. **1-4** generally show an elongated extender **130** having a square or rectangular cross-section. Further, one of the small diameter section **132** or large diameter section **134** or both thereof may be rigid or fixed. This may result in the elongated extender **130** being rigid or fixed. In other embodiments, one of the small diameter section **132** or large diameter section **134** or both thereof may be flexible such that the elongated extender **130** or a portion thereof may be flexible such that it may be positionable around objects, such as furniture, walls, shelves, or the like. The flexible portion may allow the elongated extender **130** to be positioned at any applicable angle, e.g., between 5 degrees and 360 degrees, or between 5 degrees and 180 degrees.

The extension of the elongated extender **130** between a retracted state (FIG. **2A**, **2B**) to an extended state (FIG. **2C**, **2D**) may be facilitated by other extension mechanisms such as an accordion housing, modular adaptors that may be attached to an end of the elongated extender **130**, and the like. In an embodiment, the elongated extender **130** may allow extension for any range of length, such as, for example from about 1 inch to about 18 inches to even greater, and any length therebetween. In an embodiment, the elongated extender **130** may end from a length of about 21 inches to about 34 inches. The elongated extender **130** may include a locking mechanism so that once the outlet extender **100** has been transitioned to its desired length, any undesired extension or retraction of the elongated extender **130** may be prevented. The locking mechanism may include a bolt and slot, rotatable bar, spring-loaded hinge, and the like. The elongated extender **130** may be biased towards a certain position, such as a retracted state.

In an embodiment, the plug end **110** of the outlet extender **100** may plug into a wall outlet, and the outlet end **120** may be free to rotate and extend as desired by the user. The outlet extender **100**, aside from the operative attachment of the plug end **110** into a wall outlet, may otherwise remain free and unattached to the abutting wall. The outlet extender **100** itself may have sufficient weight distribution and sturdy materials to allow for these variable configurations (e.g. a decoy plug, rigid housing, straight configuration, etc.).

In an embodiment, the outlet end **120** may include an attachment backing **140** on the back or wall-facing side **102** of the outlet extender **100**, see FIG. **3A**. When the plug end **110** of the outlet extender **100** is plugged into a wall outlet, the attachment backing **140** may comprise a way to selectively attach the outlet end **120** to the abutting wall. This attachment may provide additional stability to the outlet extender **100**. This additional stability may be desired, for example, when the outlet extender **100** is in a horizontal configuration or extended fully. The attachment backing **140** may include a peel and stick adhesive pad for attachment to the wall, putty and dry-down putty attachment, hook and loop attachment, magnetic attachment, and the like. For example, a double sided adhesive pad may be attached to the wall-facing side **102** of the outlet end **120** and may be selectively attached to the wall, or two oppositely attracting magnets with peel back adhesive or putty attachments may be attached to the wall-facing side **102** of the outlet end **120** and the wall and be placed in magnetic contact. In using an

adhesive pad, such pad may include adhesive that is non-marking, i.e., when it is removed from the surface or surfaces to which it is attached it does not leave any marks. Any appropriate non-marking adhesive may be utilized and the present disclosure is not limited to a specific type. Multiple magnets may be placed on the wall to allow for various and moveable attachment to the wall.

The attachment backing **140** may be selectively attached, detached, and reattached to allow for repositioning of the outlet extender **100** and without causing damage to the underlying wall. Although described embodiments include the attachment backing **140** on the wall-facing side **102** of the outlet end **120**, it is noted that such attachment backing **140** may be located on any portion of the outlet extender **100**, including the perimeter of the plug end **110** or the elongated extender **130**. In an embodiment, the outlet extender **100** may be free from any attachment that fastens or anchors into, or otherwise traverses, the surface of the abutting wall (such as nails, screws, and the like). Such attachment may include the attachment backing **140** described herein (peel and stick adhesive pad for attachment to the wall, putty and dry-down putty attachment, hook and loop attachment, magnetic attachment, and the like), which may not fasten or anchor into, or otherwise traverse, the surface of the abutting wall. The attachment backing **140** being attached to (whether fixedly or removably) may permit a portion, e.g., the elongated extender **130** or a portion thereof, to be non-rigid or flexible. The attachment backing **140** being attached to a wall means that the elongated extender **130** does not need to be rigid as in other prior embodiments as the attachment backing **140** may provide additional structural support. In such embodiments, the elongated extender **130** does not need to provide support to the outlet end **120** to be positioned in the applicable location. Instead, the attachment backing **140** being attached to the wall allows the outlet end **120** to be positioned in its desired location.

In an embodiment, the outlet end **120** may include a fastening mechanism that does fasten or anchor into, or otherwise traverses, the surface of the abutting wall. Such fastening mechanisms can include nails, screws, pin and the like.

The exterior or housing of the outlet extender **100** may be formed from any suitable material including, but not limited to, plastics and polymers. Suitable materials may include polyethylene terephthalate (PETE or PET), high-density polyethylene (HDPE), polyvinyl chloride (PVC), low-density polyethylene (LDPE), polypropylene (PP), polystyrene or styrofoam (PS), other plastics such as polycarbonate, polylactide, acrylic, acrylonitrile butadiene, styrene, fiberglass, and nylon, or a combination of one or more thereof.

Turning to FIGS. **5-11** showing non-limiting detailed embodiments of the housing and components of an outlet extender, FIGS. **5-11** show exploded views and components of an outlet end **120** (such as FIGS. **5-6**), extendable shaft **130** (such as FIGS. **9** and **10**), and plug end **110** (such as FIGS. **8** and **11**).

FIG. **5** depicts an exploded view of a non-limiting embodiment of an outlet end **120** and extendable shaft **130** of an outlet extender **100**. In an embodiment, the outlet end **120** may include an outlet faceplate **128**, a front outlet housing **210**, a tamper preventer **214**, and a rear outlet housing **218**. The tamper preventer **214** may, as an example, ensure that only a corresponding plug (e.g. with two or three metal prongs) and not a foreign item, is able to plug into the outlet end **120** and make an electrical circuit or connection with the outlet extender **100**. The tamper preventer **214** may

US 12,155,158 B2

**11**

include a shutter/spring type mechanism so that full entry into the female receptacles of the outlet end **120** (opening of the shutters) is made possible only when each of the one or more springs are compressed at the same time (by insertion of a corresponding plug into each opening of the female receptacle at the same time). The extendable shaft **130** may include a first tube housing **222** and a contact plate **226**. In an embodiment, the first tube housing **222** may be part of an outer telescoping tube (i.e. a larger diameter tube that another tube with a smaller diameter nests within) or an inner telescoping tube (i.e. a smaller diameter tube that nests into a tube with a larger diameter). FIGS. **6**A-D show a non-limiting embodiment of the front outlet housing **210**, including female receptacles.

FIG. **7** shows an embodiment of a plug end **110** and extendable shaft **130** of an outlet extender **100** where FIG. **8** depicts an exploded view of an embodiment of the plug end **110** of the outlet extender **100** and FIG. **9** depicts an exploded view of an embodiment of the extendable shaft **130** of the outlet extender **100**. In an embodiment and as shown in FIG. **8**, the plug end **110** may include a plug faceplate **230**, an inset band **234**, fasteners **238** or another type of fitting mechanism as described herein, a front plug housing **242**, an outer ring **246** and inner ring **250**, a swivel seat **254**, a plug **258**, and a rear plug housing **262**. The swivel seat **254** may facilitate rotation of the outlet extender **100** about an axis defined by the plug **258** as described herein. FIGS. **11**A-C show a non-limiting embodiment of the front plug housing **242**.

In embodiment and as shown in FIG. **9**, the extendable shaft **130** may include a second tube housing **264**, a first cap **270**, a bend collar **274**, fasteners **278** or another type of fitting mechanism as described herein, and a cord assembly **282** and second cap **286**. In an embodiment, the second tube housing **264** may be part of an inner telescoping tube (i.e. a smaller diameter tube that nests into a tube with a larger diameter) or an outer telescoping tube (i.e. a larger diameter tube that another tube with a smaller diameter nests within). As an example, if the first tube housing **222** is an outer telescoping tube of a larger diameter, then the second tube housing **264** will be an inner telescoping tube of a smaller diameter, or vice versa, e.g., if the first tube housing **222** is an inner telescoping tube of a smaller diameter, then the second tube housing **264** will be an outer telescoping tube of a larger diameter. In an embodiment, the first cap **270** may selectively attach to the first tube housing **222** and the second cap **286** may selectively attach to the second tube housing **264**. The bend collar **274** may enable flexibility in the extendable shaft **130** and outlet extender **100**, such as during transition between different rotational and telescopic positions. The cord assembly **282**, shown in FIGS. **10**A-B, may further comprise ground **290**, neutral **294**, and hot **298** cords and assemblies.

Although the embodiments of the present teachings have been illustrated in the accompanying drawings and described in the foregoing detailed description, it is to be understood that the present teachings are not to be limited to just the embodiments disclosed, but that the present teachings described herein are capable of numerous rearrangements, modifications and substitutions without departing from the scope of the claims hereafter. The claims as follows are intended to include all modifications and alterations insofar as they come within the scope of the claims or the equivalent thereof.

**12**

What is claimed is:

1. A wall outlet extender comprising:
   a plug end configured to selectively plug into a wall outlet;
   an outlet end configured to selectively receive one or more plugs;
   an extendable shaft positioned between the plug end and the outlet end, wherein the plug end is rotatable;
   an electrical cord portion positioned between the extendable shaft and the plug end, wherein the extendable shaft comprises a bend collar configured to enable flexibility in the extendable shaft adjacent to the plug end; and
   an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall.

2. The wall outlet extender of claim **1**, wherein the extendable shaft includes two or more telescoping portions.

3. The wall outlet extender of claim **2**, wherein the extendable shaft includes a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter is larger than the second diameter.

4. The wall outlet extender of claim **3**, wherein the first telescoping portion is configured to internally receive the second telescoping portion in a retracted position.

5. The wall outlet extender of claim **4**, wherein the extendable shaft is extendable from about 21 inches to about 34 inches.

6. The wall outlet extender of claim **1**, wherein the plug end is rotatable about 360°.

7. The wall outlet extender of claim **1**, wherein the engagement portion comprises a non-permanent adhesive, removable putty, or stickable surface.

8. The wall outlet extender of claim **7**, wherein the engagement portion is free from any attachment to the wall that traverses or damages the wall surface.

9. The wall outlet extender of claim **1**, wherein the outlet end includes an even number of outlets and at least one USB port.

10. The wall outlet extender of claim **1**, wherein the outlet end comprises a device cradle configured to hold a device while the device is plugged into the outlet end.

11. The wall outlet extender of claim **1**, wherein the wall outlet extender comprises Bluetooth or Wi-Fi connectivity capabilities.

12. An extendable power outlet adaptor, comprising:
   a plug selectively configured to insert into a wall outlet;
   an extendable shaft that comprises a bend collar is telescopic and rotatable about the plug up to 360°;
   one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall;
   an interchangeable faceplate selectively attached with the one or more outlet receptacles;
   an electrical cord portion positioned between the extendable shaft and the plug end; and
   a device cradle that includes wireless charging technology configured to hold a device and facilitate charging the device.

13. The extendable power outlet adaptor of claim **12**, wherein the one or more outlet receptacles are attachable to the wall by temporary adhesive, putty, or stickable surface.

14. The extendable power outlet adaptor of claim **13**, wherein the one or more outlet receptacles are free from any attachment to the wall that traverses or damages the wall surface.

US 12,155,158 B2

13

14

**15**. The extendable power outlet adaptor of claim **12**, wherein the one or more outlet receptacles may be removed and repositioned onto the wall.

**16**. The extendable power outlet adaptor of claim **12**, wherein the plug end is replaceable with a different type of plug.

**17**. The extendable power outlet adaptor of claim **12**, wherein the plug end comprises Type A, B, C, D, E, F, G, H, I, J, K, L, M, N or O IEC plug ends, a 120 volt end or a 240 volt end.

**18**. The extendable power outlet adaptor of claim **12**, further comprises at least one USB port.

* * * * *

# BABCOCK DECLARATION

# EXHIBIT B

US0D1006758S

(12) **United States Design Patent**    (10) Patent No.:     **US D1,006,758 S**

Galazin    (45) **Date of Patent:**    ✳✳    **Dec. 5, 2023**

(54) **OUTLET EXTENDER**

(71) Applicant: **TOKA, LLC**, Greenwich, CT (US)

(72) Inventor: **Tony Matthew Galazin**, Greenwich, CT (US)

(73) Assignee: **TOKA, LLC**, Greenwich, CT (US)

(**) Term: **15 Years**

(21) Appl. No.: **29/798,129**

(22) Filed: **Jul. 6, 2021**

**Related U.S. Application Data**

(63) Continuation of application No. 16/988,045, filed on Aug. 7, 2020, now abandoned.

(60) Provisional application No. 62/957,903, filed on Jan. 7, 2020.

(51) **LOC (14) Cl.** ............................................... **13-03**

(52) **U.S. Cl.**
USPC ..................................................... **D13/137.1**

(58) **Field of Classification Search**
USPC ........ D13/137.1, 137.2, 137.3, 137.4, 138.1, D13/138.2, 139.1, 139.2, 139.3, 139.4, D13/139.5, 139.6, 139.7, 139.8, 184, 199
CPC .... H01R 13/11; H01R 13/518; H01R 13/642; H01R 13/652; H01R 25/003; H01R 25/006; H01R 43/26; H01H 71/62; H01H 73/14
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,553,798 | A | | 11/1985 | Murphy |
| D367,530 | S | * | 2/1996 | Stith ............................. D24/128 |
| 5,895,275 | A | * | 4/1999 | Harbertson ............ H01R 35/04 |
| | | | | 439/32 |
| 5,957,701 | A | | 9/1999 | McMillin |
| 6,004,138 | A | | 12/1999 | Harbertson |
| 7,163,409 | B1 | * | 1/2007 | Chen .................... H01R 25/006 |
| | | | | 439/131 |
| D788,063 | S | * | 5/2017 | Norrell ........................ D14/188 |
| 9,965,007 | B2 | | 5/2018 | Amelio |
| 2004/0082217 | A1 | * | 4/2004 | Love ................... H01R 25/006 |
| | | | | 439/535 |
| 2013/0052882 | A1 | | 2/2013 | Brausen |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| GB | 2571295 | B | 7/2022 |
| JP | D1731372 | * | 12/2022 |

OTHER PUBLICATIONS

"Packaging Design for Electrical Product—additional work for winning designer too", first accessed Feb. 1, 2023. 99Designs.com [https://99designs.com/product-packaging-design/contests/packaging-design-electrical-product-additional-work-winning-designer-1180191] (Year: 2023).*

(Continued)

*Primary Examiner* — Rosemary K Tarcza
*Assistant Examiner* — Seth David Kumpf
(74) *Attorney, Agent, or Firm* — McDonald Hopkins LLC

(57) **CLAIM**

The ornamental design for an outlet extender, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view of an embodiment of an outlet extender showing my new design;
FIG. **2** is a front view thereof;
FIG. **3** is a rear view thereof;
FIG. **4** is a first side view thereof;
FIG. **5** is a second side view thereof;
FIG. **6** is a top view thereof; and,
FIG. **7** is a bottom view thereof.
The broken lines in the figures are included for the purpose of illustrating portions of an outlet extender and form no part of the claimed design.

**1 Claim, 4 Drawing Sheets**



## US D1,006,758 S

Page 2

(56)                 **References Cited**

### U.S. PATENT DOCUMENTS

2015/0129722 A1        5/2015   Green
2017/0346244 A1       11/2017   Comis
2021/0210915 A1 *      7/2021   Galazin .............. H01R 13/6691

### OTHER PUBLICATIONS

"EZ Outlet Coming Soon!", first accessed Apr. 14, 2023. EZOutlet. com [https://www.ezoutlet.com/] (Year: 2023).*

"EZ Outlet", first posted Sep. 11, 2019. Facebook.com [https://www.facebook.com/EZOutletUSA/photos/a.111614443557876/111615090224478/] (Year: 2019).*

International Search Report and Written Opinion dated Apr. 6, 2021; International Patent Application No. PCT/US2021/012261 filed on Jan. 6, 2021.

* cited by examiner



**FIG. 1**



**FIG. 2**



**FIG. 3**



**FIG. 4**          **FIG. 5**



**FIG. 6**



**FIG. 7**

# BABCOCK DECLARATION

# EXHIBIT C

DocCode – SCORE

# SCORE Placeholder Sheet for IFW Content

Application Number: 16988045

Document Date: 08/07/2020

The presence of this form in the IFW record indicates that the following document type was received in electronic format on the date identified above.  This content is stored in the SCORE database.

Since this was an electronic submission, there is no physical artifact folder, no artifact folder is recorded in PALM, and no paper documents or physical media exist.  The TIFF images in the IFW record were created from the original documents that are stored in SCORE.

- Drawing

At the time of document entry (noted above):
- USPTO employees may access SCORE content via DAV or via the SCORE web page.
- External customers may access SCORE content via PAIR using the Supplemental Content tab.

Form Revision Date:  March 1, 2019

Doc Code: TRACK1.REQ
Document Description: TrackOne Request

PTO/AIA/424 (04-14)

## CERTIFICATION AND REQUEST FOR PRIORITIZED EXAMINATION
### UNDER 37 CFR 1.102(e) (Page 1 of 1)

| First Named Inventor: | Tony Matthew Galazin | Nonprovisional Application Number (if known): | 62/957,903 |
|---|---|---|---|
| Title of Invention: | WALL MOUNTING OUTLET EXTENDER | | |

**APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS PRIORITIZED EXAMINATION FOR THE ABOVE-IDENTIFIED APPLICATION.**

1.  The processing fee set forth in 37 CFR 1.17(i)(1) and the prioritized examination fee set forth in 37 CFR 1.17(c) have been filed with the request.  The publication fee requirement is met because that fee, set forth in 37 CFR 1.18(d), is currently $0.  The basic filing fee, search fee, and examination fee are filed with the request or have been already been paid.  I understand that any required excess claims fees or application size fee must be paid for the application.

2.  I understand that the application may not contain, or be amended to contain, more than four independent claims, more than thirty total claims, or any multiple dependent claims, and that any request for an extension of time will cause an outstanding Track I request to be dismissed.

3.  The applicable box is checked below:

    I.    ☑ **Original Application (Track One) - Prioritized Examination under § 1.102(e)(1)**

    i.    (a) The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a).  This certification and request is being filed with the utility application via EFS-Web.
          ---OR---
          (b) The application is an original nonprovisional plant application filed under 35 U.S.C. 111(a).  This certification and request is being filed with the plant application in paper.

    ii.   An executed inventor's oath or declaration under 37 CFR 1.63 or 37 CFR 1.64 for each inventor, **or** the application data sheet meeting the conditions specified in 37 CFR 1.53(f)(3)(i) is filed with the application.

    II.   ☐ **Request for Continued Examination - Prioritized Examination under § 1.102(e)(2)**

    i.    A request for continued examination has been filed with, or prior to, this form.
    ii.   If the application is a utility application, this certification and request is being filed via EFS-Web.
    iii.  The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a), or is a national stage entry under 35 U.S.C. 371.
    iv.   This certification and request is being filed prior to the mailing of a first Office action responsive to the request for continued examination.
    v.    No prior request for continued examination has been granted prioritized examination status under 37 CFR 1.102(e)(2).

| Signature | /Todd A. Benni/ | Date | 2020-08-07 |
|---|---|---|---|
| Name (Print/Typed) | Todd A. Benni | Practitioner Registration Number | 42313 |

**Note:**  This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required.*

☑ *Total of __1__ forms are submitted.

Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

UTILITY PATENT APPLICATION

Inventors:    Tony Matthew Galazin

Docket No.:    48071-00003

## TITLE

### WALL MOUNTING OUTLET EXTENDER

CROSS-REFERENCE TO RELATED APPLICATIONS

[0001] This application claims priority to U.S. Provisional Patent Application No. 62/957,903 entitled "WALL MOUNTING OUTLET EXTENDER" filed on January 7, 2020 which is hereby incorporated by reference in its entirety.

FIELD OF THE INVENTION

[0002] The present disclosure generally relates to power outlet extenders and, more specifically, to a rotatable and/or telescopic power outlet extender that may be used to relocate a wall power outlet to multiple other positions on the wall.

BACKGROUND

[0003] Wall power outlets are stationary and, as a result, may be located in inconvenient or inaccessible areas of a household, workplace, or business. For example, wall outlets may end up being positioned behind sofas, mattresses, furniture, shelving, storage items, and the like. Such inconvenient or inaccessible wall outlets may cause any number of problems including the inability to easily plug in or unplug cords and devices into the wall outlet. Additionally, in order to reach these wall outlets, the cord of a particular device, such as that for a smart device, television, computer, laptop, charger, lamp, and the like, may not be long enough to plug into the wall outlet and be used as desired.

[0004] As it stands, actually changing the location and accessibility of an otherwise stationary

wall outlet requires an electrician and direct access into the wall. Such relocation of a wall outlet and access into the wall can be invasive, costly, and require a specialized workman or professional installation. Additionally, relocation of a wall outlet to another position on the wall by an electrician is permanent, and the new stationary wall outlet also cannot be further relocated or repositioned at a later time without going through the same process.

[0005] Other options for extending a wall outlet include extension cords. Extension cords typically comprise a flexible cord that plugs into the wall outlet on one end and runs along the floor or other flat surface to its other end that houses one or more outlets. Extension cords are often used temporarily, such as in situations for using power tools outside of the house, powering indoor and outdoor Christmas lights, and the like. When used in more permanent or daily situations, extension cords can clutter the floor or surface it lays on and cause other inconvenience, can be accidentally moved or damaged, and can put stress on the juncture between the wall outlet and the plug resulting in fraying or other damage.

[0006] What is needed is a wall power outlet extender that can be positioned or mounted on a wall and that can relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. What is also needed is a wall power outlet extender that is repositionable, re-mountable, and removable to accommodate changing needs.

## SUMMARY OF THE INVENTION

[0007] A wall outlet extender that extends a wall outlet to a new position on a wall may include a plug end configured to selectively plug into the wall outlet, an outlet end configured to selectively receive one or more plugs, and an extendable shaft between the plug end and the outlet end. The wall outlet extender may be rotatable about the plug end.

[0008] The wall outlet extender may also include any of the foregoing, which may be combined in any manner without departing from the present teachings. In an embodiment, the extendable shaft may include two more or telescoping portions. The extendable shaft may include a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter may be larger than the second diameter. The first telescoping portion may be configured to internally receive the second telescoping portion in a retracted position. In an embodiment, the extendable shaft may be extendable from about 21 inches to about 34 inches. In an embodiment, the plug end may be rotatable about 360°. In an embodiment, the wall outlet extender may further include an engagement portion. The engagement portion may be positioned on a wall-facing side of the outlet end and may be configured to selectively engage the wall. The engagement portion may comprise a non-permanent adhesive, removable putty, or stickable surface. The engagement portion may be free from any attachment to the wall that traverses or damages the wall surface. In an embodiment, the outlet end may include an even number of outlets and at least one USB port. In an embodiment, the outlet end may include interchangeable faceplates. In an embodiment, the outlet end may include a device cradle configured to hold a device while the device is plugged into the outlet end. In an embodiment, the wall outlet extender may include Bluetooth or Wi-Fi connectivity capabilities.

[0009] An extendable power outlet adaptor may include a plug selectively configured to insert into a wall outlet, a shaft that is telescopic and that is rotatable about the plug up to 360°, and one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall adjacent to the wall outlet.

[0010] The wall outlet extender may also include any of the foregoing, which may be combined

in any manner without departing from the present teachings. In an embodiment, the outlet receptacles may be attachable to the wall by temporary adhesive, putty, or stickable surface. In an embodiment, the extendable power outlet adaptor may be free from any attachment to the wall that traverses or damages the wall surface. In an embodiment, the extendable power outlet adaptor may be removed and repositioned onto the wall.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0011] The present teachings may be better understood by reference to the following detailed description taken in connection with the following illustrations, wherein:

[0012] FIG. 1A depicts an isometric view of an embodiment of an outlet extender in an extended position in accordance with aspects of the present disclosure;

[0013] FIG. 1B depicts an isometric view of an embodiment of an outlet extender in an extended position in accordance with aspects of the present disclosure;

[0014] FIG. 2A depicts a front view of an embodiment of an outlet extender in a retracted position in accordance with aspects of the present disclosure;

[0015] FIG. 2B depicts a side view of the outlet extender shown in FIG. 2A in a retracted position in accordance with aspects of the present disclosure;

[0016] FIG. 2C depicts a front view of the outlet extender shown in FIG. 2A in an extended position in accordance with aspects of the present disclosure;

[0017] FIG. 2D depicts a side view of the outlet extender shown in FIG. 2A in an extended position in accordance with aspects of the present disclosure;

[0018] FIG. 3A depicts a back view of an outlet extender in a retracted position in accordance with aspects of the present disclosure;

**[0019]** FIG. 3B depicts an expanded view of Box A of the outlet extender shown in FIG. 3A in accordance with aspects of the present disclosure;

**[0020]** FIG. 4A depicts an isometric view of an embodiment of an outlet extender as it is being plugged into a wall outlet in accordance with aspects of the present disclosure; and

**[0021]** FIG. 4B depicts a front view of an embodiment of an outlet extender plugged into a wall outlet and rotated about 90° counter clockwise to a side position in accordance with aspects of the present disclosure;

**[0022]** FIG. 5 depicts an exploded view of an embodiment of an outlet end and extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

**[0023]** FIG. 6A depicts an isometric view of an embodiment of a front outlet housing, where FIG. 6B shows a side view, FIG. 6C shows a front view, and FIG. 6D shows a back view of the front outlet housing in accordance with aspects of the present disclosure;

**[0024]** FIG. 7 depicts front and side views of an embodiment of a plug end and extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

**[0025]** FIG. 8 depicts an exploded view of an embodiment of a plug end of an outlet extender in accordance with aspects of the present disclosure;

**[0026]** FIG. 9 depicts an exploded view of an embodiment of an extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

**[0027]** FIG. 10A depicts an isometric view of an embodiment of a cord assembly and FIG. 10B shows an exploded view of a cord assembly in accordance with aspects of the present disclosure;

**[0028]** FIG. 11A depicts an isometric view of an embodiment of a front plug housing, where FIG. 11B shows a front view and FIG. 11C shows a back view of the front plug housing in accordance with aspects of the present disclosure.

DETAILED DESCRIPTION

[0029] Reference will now be made in detail to exemplary embodiments of the present teachings, examples of which are illustrated in the accompanying drawings. It is to be understood that other embodiments may be utilized and structural and functional changes may be made without departing from the respective scope of the present teachings. Moreover, features of the various embodiments may be combined or altered without departing from the scope of the present teachings. As such, the following description is presented by way of illustration only and should not limit in any way the various alternatives and modifications that may be made to the illustrated embodiments and still be within the spirit and scope of the present teachings. In this disclosure, numerous specific details provide a thorough understanding of the subject disclosure. It should be understood that aspects of this disclosure may be practiced with other embodiments not necessarily including all aspects described herein, etc.

[0030] As used herein, the words "example" and "exemplary" means an instance, or illustration. The words "example" or "exemplary" do not indicate a key or preferred aspect or embodiment. The word "or" is intended to be inclusive rather than exclusive, unless context suggests otherwise. As an example, the phrase "A employs B or C," includes any inclusive permutation (e.g., A employs B; A employs C; or A employs both B and C). As another matter, the articles "a" and "an" are generally intended to mean "one or more" unless context suggest otherwise.

[0031] Provided is a wall power outlet extender that may be positioned or mounted on a wall and that may relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. The wall power outlet extender may be positionable along a surface of a wall adjacent to a wall power outlet and may allow a user to semi-permanently relocate the wall power outlet. The wall power

{8897786:8 }                                    6

outlet extender can be permanent in that it may not be as accidentally movable as an extension cord, may be able to have a low profile on or against a wall, and may have a rigid housing. The wall power outlet extender can be temporary in that it does not require any professional installation, does not require opening of a wall or electrical work, and can easily be unplugged and re-plugged into the same or a different wall power outlet.

[0032] The wall power outlet extender may become fixed and stationary at a particular position and relatively unmovable unless acted on or repositioned by a user. The wall power outlet extender may be selectively rotatable and/or telescopic, and include a spinning or ambidextrous plug, to be adaptable to the specific location and to provide a myriad of different positions in which the new outlet may be placed. The wall power outlet extender may feature multiple outlets, USB ports, and surge protection, as well as Bluetooth and wireless capabilities, which are described in more detail below.

[0033] FIGs. 1-4 depict an outlet extender 100 having a plug end 110 and an outlet or socket end 120 electrically connected by an elongated extender or extendable shaft 130. The outlet extender 100 may comprise a housing (such as 222 described in more detail below) that is partially hollow to accommodate electrical line or lines (of appropriate configuration) positioned through the elongated extender 130 and between the plug end 110 and the outlet end 120. The plug end 110 may include one or more plugs or sets of male contacts 112 that are operatively attachable to an outlet, such as a wall outlet. The plugs or male contacts 112 may be placed on a back or wall-facing side 102 of the outlet extender 100, see FIG. 4A. The plugs or male contacts 112 may be of any orientation and fitted to connect with any type of outlet, including household outlets, appliance outlets, industrial or commercial outlets, and outlets in any country, such as the U.S., Europe, Asia, Australia, etc. In some embodiments, the plugs or male contacts 112 may be

replaceable, i.e., a user may remove one of the plugs or male contacts 112 and replace it with a different one, such as one that has a different configuration. This will allow a user to utilize the outlet extender 100 with one type of plug and then replace the plug or male contact 112 with a different one, such as by way of an example, by replacing a U.S. plug with one of a European configuration. The outlet end 120 may include one or more outlets or female receptacles 122, 124 that operatively receive a plug. In the embodiment shown in FIG. 1, a pair of outlets or female receptacles 122, 124 may be utilized. It should be understood, however, that any number of female receptacles may be utilized, e.g., one, three, four, five, six, etc.

[0034] The outlets or female receptacles 122, 124 may be placed on an opposite side from the plugs or male contacts 112, or on a front or room-facing side 104 of the outlet extender 100. As a result, the plugs or male contacts 112 may be plugged into a wall outlet and the outlets or female receptacles 122, 124 may face the room to be accessible to receive other plugs, see FIG. 4A. The outlets or female receptacles 122, 124 may be of any orientation and fitted to connect with any type of plug, including plugs for household items, appliances (such as electrical dryers), industrial or commercial devices or machinery, electrically powered items, and plugs that are used in any country, such as the U.S., Europe, Asia, Australia, etc. Although the drawings generally depict a three-prong AC plug and outlets as used in the U.S., it is noted that any plug and outlets may be incorporated into the outlet extender design. In some embodiments, the plug and outlet may be of a similar configuration or they may be of a different configuration such that the outlet extender 100 can act as an adapter to change the outlet from a first configuration to a second configuration (e.g. a U.S. plug and European receptacles or vice versa). In an embodiment, the plug end 110 and the outlet end 120 may include mating plugs and outlets, or the plug end 110 and the outlet end 120 may include plug and outlet types that are different. The

plug end 100 may comprise Type A, B, C, D, E, F, G, H, I, J, K, L, M, N and O IEC plug ends that are utilized throughout the world. Further the plug end 100 may comprise a 120 volt end, 240 volt end or a combination of the foregoing.

[0035] In an embodiment, the plug end 110 may include a single plug, may include a single plug and a decoy plug, two plugs, or any number of plugs. The present disclosure contemplates use of any number of plug ends 110 (e.g., one, two, three, etc.). In an embodiment having a decoy plug, the decoy plug may plug into the second outlet in the wall outlet and may provide additional structural support to the outlet extender 100 as it is positioned against the wall. The decoy plug may be made of a plastic or non-electrically conductive material. In an embodiment with two plugs, each plug may enter into one of the outlets on the wall outlet and may receive or transfer power or electricity. FIG. 3B shows an embodiment of the plug end having a single plug 112. In an embodiment having a single plug, the other plug in the wall outlet may remain accessible and accommodate another outlet extender or a plugged in device.

[0036] In an embodiment, the outlet end 120 may include one or more outlets or receptacles 122, 124. For example, the outlet end 120 may include one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, or more outlets. The outlets 122 may be located on the face of the outlet end 120, as shown in FIGs. 1-4, but it is noted that the outlets 122 may be located on any side of the outlet end 120 as well, such as the side, top, or bottom edges. One or more of the outlets 122, 124 may include a GFCI (Ground Fault Circuit Interrupter). The outlets 122, 124 may also include surge protection that can protect against surges or spikes and limit the voltage supplied to a connected device by either blocking or shorting, to ground any voltages above a certain threshold. The outlets 122 may be able to accommodate any necessary voltage and power abilities so as to provide power to and charge cell phones, laptops, computers, tablets,

appliances, and the like, and may be integrated with increased voltages, cables, and capabilities to provide faster or lightening charging and power. The outlet end 120 may also include one or more USB type outlets 126, such as one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, or more USB type outlets. The USB type outlets 126 may be USB A (shown as 126) or USB C (shown as 127) outlets. The USB type outlets may be located on a face of the outlet end 120 with the plugs, as shown in FIGs. 1A, 2A, and 2C, or may be located on the side of the outlet end 120, and as shown in FIG. 1B. Although other outlet types may not be specifically mentioned, it is noted that any outlet or combination of outlets may be incorporated into the outlet end 120. Further, the outlet end 120 may comprise AFCI outlets, 20 A outlets, or any of Type A, B, C, D, E, F, G, H, I, J, K, L, M, N and O IEC outlets utilized throughout the world.

[0037] The outlet end 120 may include a device cradle, shelf, or holder, such as, for example holder 129. The device cradle, shelf, or holder may be located on any side of the outlet end 120 and may serve as a location to put or hold a device, such as a phone, tablet, home device, security device, or the like. The cradle, shelf, or holder may hold the device while such device is plugged into one of the outlets 122, 124. The cradle, shelf, or holder 129 may also include wireless charging technology to charge a device when it is in physical contact with the cradle, shelf, or holder if the device is within a threshold vicinity or distance to facilitate charging. The cradle, shelf, or holder 129 may also serve as a location to put or hold any item, including pencils, pens, other writing utensils, notebooks, address books, keys, wallets, purses, hairdryers, hair straighteners, toothbrushes, toothpaste, other bathroom items or household items, etc. In an embodiment, an extended shelf or faceplate with an extended shelf may be operatively attached to the outlet end 120 where the extended shelf is capable of holding heavier, larger, or specific objects (e.g., with holders or hooks configured to receive a key ring or hair item, etc.). The

extended shelf may provide any size shelf as may be desired. The outlet end 120 may also include interchangeable faceplates 128 such as for, as an example, decoration or to provide an extended shelf. FIG. 4A, for example, shows a faceplate 128 having a different color than the remaining outlet extender 100. The faceplate 128 may include any color or colors, any pattern, any symbols, and the like, as may be desired. The faceplate 128 may be removed and attached by a sliding mechanism, snapping mechanism, fastener (such as a screw) friction fit, pressure fit, etc. It is noted that the color, shape, number of outlets, and the like, may vary when manufactured.

[0038] The outlet end 120 (or other portion of the outlet extender 100) may include capabilities to connect to Wi-Fi, Bluetooth, and other technology. The outlet end 120 (or other portion of the outlet extender 100) may communicate with any connected Wi-Fi, Bluetooth, Zigbee, or similar device. The outlet end 120 (or other portion of the outlet extender 100) may receive and transmit information to and from a connected device (such as a computer, smart device, tablet or the like), and may carry out instructions. For example, the outlet end 120 may communicate information about outlet extender 100 regarding health, plugged in devices, power utilized, power surges, power outages, whether the plugged in device is powered on or off, hours of use, amount of electricity used over a defined period of time, and the like. The outlet end 120 (or other portion of the outlet extender 100) may also be able to selectively turn on and turn off a plugged in device or power supply to any of the outlets 122, 124, individually or together. Turning on and off a plugged in device or power supply to any of the outlets 122, 124 may be done in response to a command from a connected device (such as a computer, laptop, smart device, smart phone, tablet or the like), through a home device, by voice command, by physical switch on the outlet end 120, or in response to an event such as a power outage, a power surge, after a certain period

of time, or as a result of a programmed routine. Further, the outlet extender 100 may include a sensor or a plurality of sensors that may be used to turn on and turn off the outlet extender 100. By way of a non-limiting example, the sensor may comprise a motion sensor such that it may sense motion and turn on or provide power to the outlet extender 100. Other types of sensors may be utilized, such as light sensors, sound sensors, and the like.

[0039] The outlet end 120 may also include one or more indicators, such as a light indicator. The light indicator may be an LED light. The indicators may indicate whether power is being (or not being) supplied through the outlets 122, 124, whether power is being received from the wall outlet, whether surge protection is enabled, whether the outlet extender 100 is connected to Wi-Fi or Bluetooth, Zigbee, and the like. The one or more light indicators may be different colors, may blink, and may create different patterns or combinations to convey its indications.

[0040] The outlet end 120 or plug end 110 may also include a light that is not an indicator, such as an LED light, that serves as a nightlight. The light may have a sensor to determine ambient light or darkness and may automatically turn on and off when a certain threshold is met (e.g. the light may automatically turn on at dusk and turn off at dawn, when a light in the room is turned on and off, and the like.) The light may further turn on and off by a user pressing a switch or by a command over Wi-Fi, over Bluetooth or Zigbee, by voice, through a home device, and the like. The light may be set to a certain timed schedule to turn on and off at a specific time each day. The light may also include a motion sensor and turn on or off when such motion is sensed, or after a certain set time when no motion is sensed.

[0041] The outlet end 120 or plug end 110 may further include a built-in speaker, for example, a Bluetooth speaker or other configuration of a speaker, or a speaker may be selectively attachable to the outlet end 120 or plug end (such as by a faceplate attachment). The speaker may be

separately chargeable or may pull power from the wall outlet or outlet extender 100 in any appropriate manner. The speaker may be charged by the outlet extender 100 (or more specifically through the power provided to the outlet end 120). The outlet end 120 may include an attachment device of any appropriate configuration to which the speaker may be selectively attached in any appropriate manner.

[0042] In an embodiment, the outlet extender 100 may be fixed, rigid, or stationary along the entirety of its length (e.g. not rotatable or not telescopic). For example, the fixed, rigid, or stationary outlet extender 100 may be provided in different sizes, e.g. 12 inches, 24 inches, 36 inches and any length lesser, greater, or in between. The outlet extender 100 may also include additional fixed adaptors that may be attached to the elongated shaft to adjust the length of the outlet extender 100 while still remaining fixed, rigid, or stationary overall. The fixed, rigid, or stationary outlet extender 100 may also include different oriented plugs or male contact 112 and plugs or female receptacles 122, 124, to facilitate plugging into a wall outlet in a straight orientation, a left side orientation, right side orientation, and similar.

[0043] In an embodiment, the outlet extender 100, or a portion thereof, may be selectively rotatable at a point along its length. The outlet extender 100 may be selectively rotatable any range of degrees, such as, for example from about 5° to about 360°. The outlet extender 100 may be selectively rotatable about 180° so that the outlet end 120 may be positioned straight above the wall outlet in a straight configuration when plugged in (see FIG. 4A), or straight to the left or right of the wall outlet in a horizontal configuration when plugged in (see FIG. 4B), or any variation therebetween, e.g., 45 degrees, 90 degrees, 135 degrees, 225 degrees, 270 degrees, 315 degrees or anything therebetween. The appropriate angle to be utilized may depend on the specific use of the outlet extender 100.

**[0044]** As shown in FIG. 3B, the plug end 110 may be selectively rotatable in any appropriate manner. In an embodiment, a portion of the plug end 110 may be rotatable, such as the male contacts and associated base, or a swivel component. As seen in FIG. 4A-B, the outlet extender 100 may be plugged into a wall outlet initially in a straight configuration. Once the outlet extender 100 is plugged in at the plug end 110, the outlet end 120 may be rotated to the left about the point defined by the plug end 110 and its attachment to the wall outlet. This rotation may allow the outlet end 120 to clear the side of the couch or other furniture when in a horizontal position so that the outlets are accessible. Although the plug end 110 may be described as selectively rotatable, it is noted that any portion of the outlet extender 100 may be selectively rotatable, including, but not limited to, the extendable shaft 130. A user may selectively rotate the outlet extender 100 prior to plugging in the outlet extender 100 into the wall or when the outlet extender 100 has already been plugged into a wall outlet. The outlet extender 100 or plug end 110 may include a locking mechanism so that once the outlet extender 100 has been positioned in the desired location and at a desired angle, any undesired rotation of the outlet extender 100 may be prevented. The locking mechanism may include a bolt and slot, rotatable bar, spring-loaded hinge, and the like. The rotation of the outlet extender 100 or plug end 110 may be biased towards a certain position, such as a straight state.

**[0045]** In an embodiment, the outlet extender 100 may include an electrical cord portion between the elongated extender 130 and the plug end 110 that plugs into the wall outlet.  The outlet extender 100 may plug into a wall outlet at the plug end 100, and then may be able to bend around a corner, be positioned on the floor, and the like, by the bendable cord portion. For example, the outlet extender 100 may be able to plug behind a desk, set on the floor or set on top of the desk, and have the outlets on the outlet end 120 available wherever the user desires. It is

noted that while embodiments herein describe initial connection into a wall outlet, that any outlet may be used, such as an outlet in a power strip or surge protector.

[0046] In an embodiment, the outlet extender 100 may be selectively extendable. In an embodiment, the elongated extender 130 may be selectively extendable permitting the outlet extender 100 to be extendable. As shown in FIGs. 2A-D, the elongated extender 130 may be transitioned between a retracted state (FIG. 2A, 2B) to an extended state (FIG. 2C, 2D). The extension may be facilitated by telescoping sections or members, wherein one or more sections of the elongated extender 130 may be of a smaller diameter than the immediately adjacent section (located at one of the section's ends) such that the smaller diameter section (see, e.g. 132) may nest into the larger diameter section (see, e.g. 134). The larger diameter section 134 may similarly nest into an even larger diameter section and the small diameter section 132 may similarly be able to nest within it an even smaller diameter section. The elongated extender 130 may include two or more telescoping sections including three, four, five, six, seven eight, etc. sections. The sections may be at least partially hollow so as to accommodate smaller diameter telescoping sections in a collapsed state, as well as electrical lines running through the elongated extender 130 and between the plug end 110 and the outlet end 120.

[0047] Although sections of the elongated extender 130 include reference to diameter, it is noted that a cross-section of the elongated extender 130 may be round, square, or triangular and that nesting of any telescoping sections could be achieved by adapting the perimeter or diameter as described. FIGs. 1-4 generally show an elongated extender 130 having a square or rectangular cross-section. Further, one of the small diameter section 132 or large diameter section 134 or both thereof may be rigid or fixed. This may result in the elongated extender 130 being rigid or fixed. In other embodiments, one of the small diameter section 132 or large diameter section 134

or both thereof may be flexible such that the elongated extender 130 or a portion thereof may be flexible such that it may be positionable around objects, such as furniture, walls, shelves, or the like. The flexible portion may allow the elongated extender 130 to be positioned at any applicable angle, e.g., between 5 degrees and 360 degrees, or between 5 degrees and 180 degrees.

[0048] The extension of the elongated extender 130 between a retracted state (FIG. 2A, 2B) to an extended state (FIG. 2C, 2D) may be facilitated by other extension mechanisms such as an accordion housing, modular adaptors that may be attached to an end of the elongated extender 130, and the like. In an embodiment, the elongated extender 130 may allow extension for any range of length, such as, for example from about 1 inch to about 18 inches to even greater, and any length therebetween. In an embodiment, the elongated extender 130 may end from a length of about 21 inches to about 34 inches. The elongated extender 130 may include a locking mechanism so that once the outlet extender 100 has been transitioned to its desired length, any undesired extension or retraction of the elongated extender 130 may be prevented. The locking mechanism may include a bolt and slot, rotatable bar, spring-loaded hinge, and the like. The elongated extender 130 may be biased towards a certain position, such as a retracted state.

[0049] In an embodiment, the plug end 110 of the outlet extender 100 may plug into a wall outlet, and the outlet end 120 may be free to rotate and extend as desired by the user. The outlet extender 100, aside from the operative attachment of the plug end 110 into a wall outlet, may otherwise remain free and unattached to the abutting wall. The outlet extender 100 itself may have sufficient weight distribution and sturdy materials to allow for these variable configurations (e.g. a decoy plug, rigid housing, straight configuration, etc.).

[0050] In an embodiment, the outlet end 120 may include an attachment backing 140 on the back

or wall-facing side 102 of the outlet extender 100, see FIG. 3A. When the plug end 110 of the outlet extender 100 is plugged into a wall outlet, the attachment backing 140 may comprise a way to selectively attach the outlet end 120 to the abutting wall. This attachment may provide additional stability to the outlet extender 100. This additional stability may be desired, for example, when the outlet extender 100 is in a horizontal configuration or extended fully. The attachment backing 140 may include a peel and stick adhesive pad for attachment to the wall, putty and dry-down putty attachment, hook and loop attachment, magnetic attachment, and the like. For example, a double sided adhesive pad may be attached to the wall-facing side 102 of the outlet end 120 and may be selectively attached to the wall, or two oppositely attracting magnets with peel back adhesive or putty attachments may be attached to the wall-facing side 102 of the outlet end 120 and the wall and be placed in magnetic contact. In using an adhesive pad, such pad may include adhesive that is non-marking, i.e., when it is removed from the surface or surfaces to which it is attached it does not leave any marks. Any appropriate non-marking adhesive may be utilized and the present disclosure is not limited to a specific type. Multiple magnets may be placed on the wall to allow for various and moveable attachment to the wall.

[0051] The attachment backing 140 may be selectively attached, detached, and reattached to allow for repositioning of the outlet extender 100 and without causing damage to the underlying wall. Although described embodiments include the attachment backing 140 on the wall-facing side 102 of the outlet end 120, it is noted that such attachment backing 140 may be located on any portion of the outlet extender 100, including the perimeter of the plug end 110 or the elongated extender 130. In an embodiment, the outlet extender 100 may be free from any attachment that fastens or anchors into, or otherwise traverses, the surface of the abutting wall (such as nails, screws, and the like). Such attachment may include the attachment backing 140

described herein (peel and stick adhesive pad for attachment to the wall, putty and dry-down putty attachment, hook and loop attachment, magnetic attachment, and the like), which may not fasten or anchor into, or otherwise traverse, the surface of the abutting wall. The attachment backing 140 being attached to (whether fixedly or removably) may permit a portion, e.g., the elongated extender 130 or a portion thereof, to be non-rigid or flexible. The attachment backing 140 being attached to a wall means that the elongated extender 130 does not need to be rigid as in other prior embodiments as the attachment backing 140 may provide additional structural support. In such embodiments, the elongated extender 130 does not need to provide support to the outlet end 120 to be positioned in the applicable location. Instead, the attachment backing 140 being attached to the wall allows the outlet end 120 to be positioned in its desired location.

[0052] In an embodiment, the outlet end 120 may include a fastening mechanism that does fasten or anchor into, or otherwise traverses, the surface of the abutting wall. Such fastening mechanisms can include nails, screws, pin and the like.

[0053] The exterior or housing of the outlet extender 100 may be formed from any suitable material including, but not limited to, plastics and polymers. Suitable materials may include polyethylene terephthalate (PETE or PET), high-density polyethylene (HDPE), polyvinyl chloride (PVC), low-density polyethylene (LDPE), polypropylene (PP), polystyrene or styrofoam (PS), other plastics such as polycarbonate, polylactide, acrylic, acrylonitrile butadiene, styrene, fiberglass, and nylon, or a combination of one or more thereof.

[0054] Turning to FIGs. 5-11 showing non-limiting detailed embodiments of the housing and components of an outlet extender, FIGs. 5-11 show exploded views and components of an outlet end 120 (such as FIGs. 5-6), extendable shaft 130 (such as FIGs. 9 and 10), and plug end 110 (such as FIGs. 8, 11).

[0055] FIG. 5 depicts an exploded view of a non-limiting embodiment of an outlet end 120 and extendable shaft 130 of an outlet extender 100. In an embodiment, the outlet end 120 may include an outlet faceplate 128, a front outlet housing 210, a tamper preventer 214, and a rear outlet housing 218. The tamper preventer 214 may, as an example, ensure that only a corresponding plug (e.g. with two or three metal prongs) and not a foreign item, is able to plug into the outlet end 120 and make an electrical circuit or connection with the outlet extender 100. The tamper preventer 214 may include a shutter/spring type mechanism so that full entry into the female receptacles of the outlet end 120 (opening of the shutters) is made possible only when each of the one or more springs are compressed at the same time (by insertion of a corresponding plug into each opening of the female receptacle at the same time). The extendable shaft 130 may include a first tube housing 222 and a contact plate 226. In an embodiment, the first tube housing 222 may be part of an outer telescoping tube (i.e. a larger diameter tube that another tube with a smaller diameter nests within) or an inner telescoping tube (i.e. a smaller diameter tube that nests into a tube with a larger diameter). FIGs. 6A-D show a non-limiting embodiment of the front outlet housing 210, including female receptacles.

[0056] FIG. 7 shows an embodiment of a plug end 110 and extendable shaft 130 of an outlet extender 100 where FIG. 8 depicts an exploded view of an embodiment of the plug end 110 of the outlet extender 100 and FIG. 9 depicts an exploded view of an embodiment of the extendable shaft 130 of the outlet extender 10. In an embodiment and as shown in FIG. 8, the plug end 110 may include a plug faceplate 230, an inset band 234, fasteners 238 or another type of fitting mechanism as described herein, a front plug housing 242, an outer ring 246 and inner ring 250, a swivel seat 254, a plug 258, and a rear plug housing 262. The swivel seat 254 may facilitate rotation of the outlet extender 100 about an axis defined by the plug 258 as described herein.

FIGs. 11A-C show a non-limiting embodiment of the front plug housing 242.

[0057] In embodiment and as shown in FIG. 9, the extendable shaft 130 may include a second tube housing 264, a first cap 270, a bend collar 274, fasteners 278 or another type of fitting mechanism as described herein, and a cord assembly 282 and second cap 286. In an embodiment, the second tube housing 264 may be part of an inner telescoping tube (i.e. a smaller diameter tube that nests into a tube with a larger diameter) or an outer telescoping tube (i.e. a larger diameter tube that another tube with a smaller diameter nests within). As an example, if the first tube housing 222 is an outer telescoping tube of a larger diameter, then the second tube housing 264 will be an inner telescoping tube of a smaller diameter, or vice versa, e.g., if the first tube housing 222 is an inner telescoping tube of a smaller diameter, then the second tube housing 264 will be an outer telescoping tube of a larger diameter. In an embodiment, the first cap 270 may selectively attach to the first tube housing 222 and the second cap 286 may selectively attach to the second tube housing 264. The bend collar 274 may enable flexibility in the extendable shaft 130 and outlet extender 100, such as during transition between different rotational and telescopic positions. The cord assembly 282, shown in FIGs. 10A-B, may further comprise ground 290, neutral 294, and hot 298 cords and assemblies.

[0058] Although the embodiments of the present teachings have been illustrated in the accompanying drawings and described in the foregoing detailed description, it is to be understood that the present teachings are not to be limited to just the embodiments disclosed, but that the present teachings described herein are capable of numerous rearrangements, modifications and substitutions without departing from the scope of the claims hereafter. The claims as follows are intended to include all modifications and alterations insofar as they come within the scope of the claims or the equivalent thereof.

CLAIMS

What is claimed is:

1.      A wall outlet extender that extends a wall outlet to a new position on a wall, comprising:

a plug end configured to selectively plug into the wall outlet,

an outlet end configured to selectively receive one or more plugs, and

an extendable shaft between the plug end and the outlet end,

wherein the wall outlet extender is rotatable about the plug end.

2.      The wall outlet extender of claim 1, wherein the extendable shaft includes two more or telescoping portions.

3.      The wall outlet extender of claim 2, wherein the extendable shaft includes a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter is larger than the second diameter.

4.      The wall outlet extender of claim 3, wherein the first telescoping portion is configured to internally receive the second telescoping portion in a retracted position.

5.      The wall outlet extender of claim 4, wherein the extendable shaft is extendable from about 21 inches to about 34 inches.

6.      The wall outlet extender of claim 1, wherein the plug end is rotatable about 360°.

7.      The wall outlet extender of claim 1 further including an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall.

8.      The wall outlet extender of claim 7, wherein the engagement portion comprises a non-

permanent adhesive, removable putty, or stickable surface.

9.      The wall outlet extender of claim 8, wherein the engagement portion is free from any attachment to the wall that traverses or damages the wall surface.

10.     The wall outlet extender of claim 1, wherein the outlet end includes an even number of outlets and at least one USB port.

11.     The wall outlet extender of claim 1, wherein the outlet end includes interchangeable faceplates.

12.     The wall outlet extender of claim 1, wherein the outlet end includes a device cradle configured to hold a device while the device is plugged into the outlet end.

13.     The wall outlet extender of claim 1, wherein the wall outlet extender includes Bluetooth or Wi-Fi connectivity capabilities.

14.     An extendable power outlet adaptor, comprising:

a plug selectively configured to insert into a wall outlet,

a shaft that is telescopic and that is rotatable about the plug up to 360°, and

one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall adjacent to the wall outlet.

15.     The extendable power outlet adaptor of claim 14, wherein the outlet receptacles are attachable to the wall by temporary adhesive, putty, or stickable surface.

16.     The extendable power outlet adaptor of claim 15, wherein the extendable power outlet adaptor is free from any attachment to the wall that traverses or damages the wall surface.

17.     The extendable power outlet adaptor of claim 14, wherein the extendable power outlet

adaptor may be removed and repositioned onto the wall.

**ABSTRACT**

[0059] Provided is a wall power outlet extender that may be positioned or mounted on a wall and that may relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. The wall power outlet extender may be positionable along a surface of a wall adjacent to a wall power outlet and may allow a user to semi-permanently relocate the wall power outlet. The wall power outlet extender may be made fixed and stationary at a particular position and relatively unmovable unless acted on or repositioned by a user. The wall power outlet extender may be selectively rotatable and/or telescopic, and include a spinning or ambidextrous plug, to be adaptable to the specific location and to provide a myriad of different positions in which the new outlet may be placed. The wall power outlet extender may feature multiple outlets, USB ports, and surge protection, as well as Bluetooth and wireless capabilities.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 48071-00003 |
|---|---|---|
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | Remove |
|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Tony | Matthew | Galazin | |

**Residence Information (Select One)**   ● US Residency     Non US Residency     Active US Military Service

| City | Greenwich | State/Province | CT | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 351 Pemberwick Road | | |
|---|---|---|---|
| Address 2 | Apt. 914 | | |
| City | Greenwich | State/Province | CT |
| Postal Code | 06831 | Country i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.          | Add |

## Correspondence Information:

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐ **An Address is being provided for the correspondence Information of this application.**

| Customer Number | 33772 | | |
|---|---|---|---|
| Email Address | ipmailbox@mcdonaldhopkins.com | Add Email | Remove Email |

## Application Information:

| Title of the Invention | WALL MOUNTING OUTLET EXTENDER | | |
|---|---|---|---|
| Attorney Docket Number | 48071-00003 | Small Entity Status Claimed | ☒ |
| Application Type | Nonprovisional | | |
| Subject Matter | Utility | | |
| Total Number of Drawing Sheets (if any) | 13 | Suggested Figure for Publication (if any) | 1 |

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00003 |
| --- | --- | --- |
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
| --- | --- |

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
| --- | --- | --- |
| | | |

## Publication Information:

| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
| --- | --- |
| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
| --- | --- | --- | --- |
| Customer Number | 33772 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending ▼ | | Remove |
| --- | --- | --- | --- |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | Claims benefit of provisional ▼ | 62/957903 | 2020-01-07 |

| Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button. | Add |
| --- | --- |

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00003 |
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application.  Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55.  When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2).  Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|
| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

| Add |

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00003 |
|---|---|---|
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1. Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A. Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B. Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2. Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐ A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐ B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:** Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00003 |
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |

# Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

| **Applicant** | 1 | Remove |

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
| Person to whom the inventor is obligated to assign. | Person who shows sufficient proprietary interest |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

| ▼ |

Name of the Deceased or Legally Incapacitated Inventor:

| If the Applicant is an Organization check here. | ☒ |

| Organization Name | TOKA, LLC |

**Mailing Address Information For Applicant:**

| **Address 1** | 351 Pemberwick Road | | |
| Address 2 | Apt. 914 | | |
| **City** | Greenwich | **State/Province** | CT |
| **Country** | US | Postal Code | 06831 |
| Phone Number | 2163485400 | Fax Number | 2163485474 |
| Email Address | ipmailbox@mcdonaldhopkins.com | | |

Additional Applicant Data may be generated within this form by selecting the Add button.    Add

# Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00003 |
|---|---|---|
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

## Assignee  1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

Remove

| If the Assignee or Non-Applicant Assignee is an Organization check here. | ☐ |
|---|---|

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| ▼ | | | | ▼ |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | |
|---|---|
| Address 2 | |

| City | | State/Province | |
|---|---|---|---|
| Country i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.

Add

## Signature:

Remove

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the <u>INITIAL</u> filing of the application <u>and</u> either box A or B is <u>not</u> checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet <u>must</u> be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, <u>all</u> joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of <u>all</u> joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| **Signature** | /Todd A. Benni/ | | | Date (YYYY-MM-DD) | 2020-08-07 |
|---|---|---|---|---|---|
| First Name | Todd | Last Name | Benni | Registration Number | 42313 |

| Additional Signature may be generated within this form by selecting the Add button. | Add |
|---|---|

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00003 |
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |

This collection of information is required by 37 CFR 1.76.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent CooperationTreaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

For applications filed under AIA
(on or after September 16, 2012)

Title: "WALL MOUNTING OUTLET EXTENDER"
MH Ref No.: 48071-00002

## DECLARATION AND ASSIGNMENT
## FOR U.S. UTILITY OR DESIGN PATENT APPLICATION

Attorney Docket No.:  48071-00002

**As a below-named inventor, I hereby declare that:**

This declaration is directed to the application entitled:

WALL MOUNTING OUTLET EXTENDER
**(TITLE)**

(check only one item below)

[  ]    attached hereto,

OR

[X]    For which U.S. Provisional Application No. 62/957,903 filed on January 7, 2020; and any subsequent applications filed in connection with the above invention (the "Patent").

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the above-identified application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

WHEREAS, TOKA, LLC, having a place of business at 351 Pemberwick Road, Apt. 914, Greenwich, CT 06831, hereinafter referred to as "Assignee," is desirous of acquiring the entire right, title and interest in and to the Patent;

NOW, THEREFORE, be it known that, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, all right, title, and interest, in the United States and throughout the world, in, to and under the Patent, improvements and inventions and all patents, patent applications, patent rights, and inventors' certificates thereof, therefor, and therein, including without limitation said application for patent in the United States, all divisions and continuations thereof, all patents which may be granted thereon, all reissues and extensions thereof, all right to sue for past infringement thereunder, all patents which may be granted for said improvements and inventions by states or nations other than the United States, or by other authority, entity, or organization, all applications therefor, and all rights of priority resulting from the filing of said

{8993148: }                    Page 1 of 2

For applications filed under AIA
(on or after September 16, 2012)

Title: "WALL MOUNTING OUTLET EXTENDER"
MH Ref No.: 48071-00002

applications, have been and are hereby sold, assigned, transferred, and delivered unto Assignee, its successors and assigns by the undersigned; and it is covenanted and agreed by the undersigned, and for executors, administrators, and legal representatives of the undersigned, that at Assignee's request any and all applications, affidavits, assignments, and other instruments will be made, executed, and delivered as may be necessary, or desirable to secure for or vest in Assignee, its successors or assigns, any improvement, inventions, right, title, interest, application, patent, patent right or other right or property covered by this assignment, and the United States Commissioner of Patents and Trademarks is hereby requested and authorized to issue any and all United States patents granted on any of said applications to Assignee as owner of the entire right, title, and interest in, to, and under the same, and appropriately empowered officials of foreign countries are hereby authorized to issue any letters patent granted on any of said applications to Assignee as owner of the entire right, title and interest in, to, and under the same.

THIS DECLARATION AND ASSIGNMENT, has been executed below by the undersigned:

Legal Name of Inventor: Tony Matthew Galazin

Signature of Inventor: _____

Date: 8-7-2020

[  ]    Signatures of additional inventors on attached sheet(s)

> **Notice to Inventor(s):** You should not execute this Declaration unless you have reviewed and understand the contents of the above-identified application, including the claims.

> **Notice to Inventor(s):** You have a duty disclose to the USPTO all information known to you to be material to patentability as defined in 37 CFR 1.56 during prosecution of the Patent.

1/13



**FIG. 1A**

2/13



**FIG. 1B**

3/13



**FIG. 2A**

**FIG. 2B**



4/13

100

120

132

130

134

110

**FIG. 2C**

100

120

132

130

102

104

134

110

**FIG. 2D**

5/13



**FIG. 3A**

**FIG. 3B**

6/13



FIG. 4B

FIG. 4A

7/13



**FIG. 5**

8/13



210

**FIG. 6A**



210

**FIG. 6C**



210

**FIG. 6B**



210

**FIG. 6D**

9/13



130

130

110

110

**FIG. 7**

10/13



**FIG. 8**

11/13



**FIG. 9**

12/13



FIG. 10A

FIG. 10B

13/13



**FIG. 11A**



**FIG. 11B**          **FIG. 11C**

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony  Matthew  Galazin |
| **Filer:** | Todd A. Benni/Danielle Mueller |
| **Attorney Docket Number:** | 48071-00003 |

Filed as Small Entity

**Filing Fees for    Track I Prioritized Examination - Nonprovisional Application under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| UTILITY FILING FEE (ELECTRONIC FILING) | 4011 | 1 | 75 | 75 |
| UTILITY SEARCH FEE | 2111 | 1 | 330 | 330 |
| UTILITY EXAMINATION FEE | 2311 | 1 | 380 | 380 |
| REQUEST FOR PRIORITIZED EXAMINATION | 2817 | 1 | 2000 | 2000 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| PUBL. FEE- EARLY, VOLUNTARY, OR NORMAL | 1504 | 1 | 0 | 0 |
| PROCESSING FEE, EXCEPT PROV. APPLS. | 2830 | 1 | 70 | 70 |

**Petition:**

**Patent-Appeals-and-Interference:**

**Post-Allowance-and-Post-Issuance:**

**Extension-of-Time:**

**Miscellaneous:**

| | | |
|---|---|---|
| **Total in USD ($)** | | **2855** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 40227626 |
| **Application Number:** | 16988045 |
| **International Application Number:** | |
| **Confirmation Number:** | 4753 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Danielle Mueller |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00003 |
| **Receipt Date:** | 07-AUG-2020 |
| **Filing Date:** | |
| **Time Stamp:** | 15:56:18 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $ 2855 |
| RAM confirmation Number | E202087F56326799 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | TrackOne Request | 9015155.pdf | 110437 <br><br> 21e9fba453069ad3f70fae5de4c63c4724c85d45 | no | 2 |

| Warnings: |
|---|
| Information: |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | | 9015151.pdf | 161404 <br><br> 88963ed5970034006e1a4896eb26e40d1296e790 | yes | 24 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |
| Specification | 1 | 20 |
| Claims | 21 | 23 |
| Abstract | 24 | 24 |

| Warnings: |
|---|
| Information: |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Application Data Sheet | 9014807.pdf | 1291774 <br><br> 31d5322cf2229f4c34c6b162d6ff8d98e4bb9733 | no | 8 |

| Warnings: |
|---|
| Information: |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | Oath or Declaration filed | 9013928.pdf | 170011 <br><br> 4d5222976a1268ab09989b4414e15c7c9168e696 | no | 2 |

| Warnings: |
|---|
| Information: |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 5 | Drawings-only black and white line drawings | 9015192.pdf | 635082 <br><br> fe6bfba959afc4d9c7222345f48ae21c4f85c5a9 | no | 13 |

**Warnings:**

**Information:**

| 6 | Fee Worksheet (SB06) | fee-info.pdf | 40062<br><br>ce6e522d2bf474626b4a53641d007b519c13e934 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 2408770 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>16/988,045 |
|---|---|

## APPLICATION AS FILED - PART I

|  | (Column 1) | (Column 2) | SMALL ENTITY | | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE($) | FEE($) | | RATE($) | FEE($) |
| BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 75 | | N/A | |
| SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 330 | | N/A | |
| EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 380 | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | 17  minus 20 = | * | x  50  = | 0.00 | OR | | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | 2  minus 3 = | * | x  230  = | 0.00 | | | |
| APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 785 | | TOTAL | |

## APPLICATION AS AMENDED - PART II

|  |  | (Column 1) | | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
| AMENDMENT A | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x   = | | OR | x   = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x   = | | OR | x   = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL<br>ADD'L FEE | | OR | TOTAL<br>ADD'L FEE | |

|  |  | (Column 1) | | (Column 2) | (Column 3) | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | | |
| AMENDMENT B | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x   = | | OR | x   = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x   = | | OR | x   = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL<br>ADD'L FEE | | OR | TOTAL<br>ADD'L FEE | |

  * If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
 ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
   The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 16/988,045 | 08/07/2020 | 2848 | 785 | 48071-00003 | 17 | 2 |

**CONFIRMATION NO. 4753**

33772
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

**FILING RECEIPT**


0CC000000119221626

Date Mailed: 08/14/2020

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**
Tony Matthew Galazin, Greenwich, CT;

**Applicant(s)**
TOKA, LLC, Greenwich, CT;

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**
This appln claims benefit of 62/957,903 01/07/2020

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 08/13/2020

page 1 of 3

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 16/988,045**

**Projected Publication Date:** 07/08/2021

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

      WALL MOUNTING OUTLET EXTENDER

**Preliminary Class**

      174

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

U NITED S TATES P ATENT AND T RADEMARK O FFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/988,045 | 08/07/2020 | Tony Matthew Galazin | 48071-00003 | 4753 |

33772          7590          08/19/2020
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2848 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/19/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ipmailbox@mcdonaldhopkins.com

PTOL-90A (Rev. 04/07)

| **Decision Granting Request for Prioritized Examination (Track I)** | Application No. 16/988,045 | Applicant(s) Galazin, Tony Matthew | |
|---|---|---|---|
| | Examiner CHERYL P GIBSON BAYLOR | Art Unit OPET | AIA (FITF) Status Yes |

1.  THE REQUEST FILED <u>07 August 2020</u> IS **GRANTED** .

The above-identified application has met the requirements for prioritized examination
    A.    ☑ for an original nonprovisional application (Track I).
    B.    ☐ for an application undergoing continued examination (RCE).

2.  **The above-identified application will undergo prioritized examination**. The application will be accorded special status throughout its entire course of prosecution until one of the following occurs:

    A.    filing a **petition for extension of time** to extend the time period for filing a reply;

    B.    filing an **amendment to amend the application to contain more than four independent claims, more than thirty total claims** , or a multiple dependent claim;

    C.    filing a **request for continued examination** ;

    D.    filing a notice of appeal;

    E.    filing a request for suspension of action;

    F.    mailing of a notice of allowance;

    G.    mailing of a final Office action;

    H.    completion of examination as defined in 37 CFR 41.102; or

    I.    abandonment of the application.

Telephone inquiries with regard to this decision should be directed to CHERYL GIBSON BAYLOR at (571)272-3213. In his/her absence, calls may be directed to Petition Help Desk at (571) 272-3282.

| /CHERYL GIBSON BAYLOR/ Paralegal Specialist, OPET | |
|---|---|

U.S. Patent and Trademark Office
PTO-2298 (Rev. 02-2012)

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (03-15)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | 16988045 | |
| Filing Date | 2020-08-07 | |
| First Named Inventor | Galazin | |
| Art Unit | 2833 | |
| Examiner Name | | |
| Attorney Docket Number | 48071-00003 | |

**U.S.PATENTS**    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 6004138 | | 1999-12-21 | HARBERTSON | |
| | 2 | 7220128 | | 2007-05-22 | HICKS | |

If you wish to add additional U.S. Patent citation information please click the Add button.    Add

**U.S.PATENT APPLICATION PUBLICATIONS**    Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.    Add

**FOREIGN PATENT DOCUMENTS**    Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | WO2019/162691 | WO | | 2019-08-29 | TSANG | | |

If you wish to add additional Foreign Patent Document citation information please click the Add button    Add

**NON-PATENT LITERATURE DOCUMENTS**    Remove

EFS Web 2.1.17

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 16988045 |
|---|---|---|
| | Filing Date | 2020-08-07 |
| | First Named Inventor | Galazin |
| | Art Unit | 2833 |
| | Examiner Name | |
| | Attorney Docket Number | 48071-00003 |

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | | |

If you wish to add additional non-patent literature document citation information please click the Add button | Add

### EXAMINER SIGNATURE

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.17

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 16988045 |
| --- | --- | --- |
| | Filing Date | 2020-08-07 |
| | First Named Inventor | Galazin |
| | Art Unit | 2833 |
| | Examiner Name | |
| | Attorney Docket Number | 48071-00003 |

### CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

See attached certification statement.

The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Todd A. Benni/ | Date (YYYY-MM-DD) | 2020-08-24 |
| --- | --- | --- | --- |
| Name/Print | Todd A. Benni | Registration Number | 42313 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) World Intellectual Property
Organization
International Bureau

(43) International Publication Date
29 August 2019 (29.08.2019)



WIPO | PCT

(10) International Publication Number
WO 2019/162691 A1

(51) International Patent Classification:
*H01R 25/00* (2006.01)     *H01R 31/06* (2006.01)
*H01R 103/00* (2006.01)    *H01R 24/30* (2011.01)
*H01R 24/78* (2011.01)     *H01R 24/22* (2011.01)

(21) International Application Number:
PCT/GB2019/050498

(22) International Filing Date:
22 February 2019 (22.02.2019)

(25) Filing Language: English

(26) Publication Language: English

(30) Priority Data:
1802910.8     22 February 2018 (22.02.2018)     GB

(71) Applicant: INTELLECTUAL PRODUCTS LIMITED
[GB/GB]; 92 Station Road, Clacton on Sea, Essex CO15
1SG (GB).

(72) Inventor: TSANG, Michael; 4 Blake Drive, Clacton on
Sea, Essex CO16 8ED (GB).

(74) Agent: SANDERSONS et al.; D2, Knowledge Gateway,
Nesfield Road, Colchester Essex CO4 3ZL (GB).

(81) Designated States *(unless otherwise indicated, for every
kind of national protection available)*: AE, AG, AL, AM,
AO, AT, AU, AZ, BA, BB, BG, BH, BN, BR, BW, BY, BZ,
CA, CH, CL, CN, CO, CR, CU, CZ, DE, DJ, DK, DM, DO,
DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN,
HR, HU, ID, IL, IN, IR, IS, JO, JP, KE, KG, KH, KN, KP,
KR, KW, KZ, LA, LC, LK, LR, LS, LU, LY, MA, MD, ME,
MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ,
OM, PA, PE, PG, PH, PL, PT, QA, RO, RS, RU, RW, SA,
SC, SD, SE, SG, SK, SL, SM, ST, SV, SY, TH, TJ, TM, TN,
TR, TT, TZ, UA, UG, US, UZ, VC, VN, ZA, ZM, ZW.

(84) Designated States *(unless otherwise indicated, for every
kind of regional protection available)*: ARIPO (BW, GH,
GM, KE, LR, LS, MW, MZ, NA, RW, SD, SL, ST, SZ, TZ,
UG, ZM, ZW), Eurasian (AM, AZ, BY, KG, KZ, RU, TJ,
TM), European (AL, AT, BE, BG, CH, CY, CZ, DE, DK,
EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV,
MC, MK, MT, NL, NO, PL, PT, RO, RS, SE, SI, SK, SM,
TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW,
KM, ML, MR, NE, SN, TD, TG).

Published:
—     *with international search report (Art. 21(3))*

(54) Title: ELECTRICAL SOCKET EXTENDER



Figure 1

(57) Abstract: The present invention relates to an electrical socket extender to provide an electrical socket remote from a surface/wall-mounted electrical socket. In particular, the present invention relates to an electrical socket extender to provide an electrical socket remote from a surface/wall-mounted electrical socket, the socket extender comprising: a socket engaging portion connectable to the wall-mounted electrical socket; an appliance socket section providing one or more electrical appliance socket; and a linkage which connects the appliance socket section to the socket engaging portion.

WO 2019/162691 A1

- 1 -

# ELECTRICAL SOCKET EXTENDER

## FIELD OF THE INVENTION

The present invention relates to an electrical socket extender to provide an electrical socket remote from a wall-mounted electrical socket.

## BACKGROUND OF THE INVENTION

Wall-mounted electrical sockets are often pre-installed in domestic and commercial premises in order to provide sources of electricity for the occupants of those premises and their appliances. Unfortunately, the locations in which these electrical sockets are provided may not always be convenient, especially due to the positioning of furniture or equipment close to a wall on which the wall-mounted electrical socket is located. Furthermore, persons with physical impairments, such as those who are injured, disabled (e.g. wheelchair bound) or who have declining health, may well find it difficult to reach these wall-mounted electrical sockets, especially if a socket is located particularly low or high on a wall, or behind a piece of furniture. The problem is compounded by the fact that rewiring wall-mounted electrical sockets in order to relocate them is a manually intensive and expensive task, which involves considerable work being carried out on one or more walls of the premises, something which may not be permitted in certain circumstances, for instance should the premises be rented, or be a listed building.

Extension cords, having a male plug for insertion into an electrical socket, one or more female appliance outlets and an insulated cable connecting the plug to the one or more outlet are often used to extend the reach of such wall-mounted electrical sockets. These devices, though quite versatile, present a number of issues. For example, the cable can create a tripping hazard or may be chewed or tampered with by children and small animals, and the devices are also often visually unappealing, especially where there is sagging or coiled cabling. Furthermore, though the appliance outlet may have means for mounting to a wall, mounting the appliance outlet in such a way is rarely a suitable option for a user, due to unsightliness and issues with carrying out work on the walls. A further concern is that even if a user chooses to mount an extension cord to a wall, during subsequent use and reordering of the contents of the premises, the new location of the outlet may itself become

inconvenient. If the user is to remedy the problem, they then need to choose a new fixed location, perform the necessary work on the wall to provide a new mounting and probably also fix the damage caused by the initial mounting of the appliance outlet to the wall.

The present invention thus aims to provide a means by which a user can quickly, securely and simply create an electrical outlet, connected to, but remote from, a wall-mounted electrical socket, without damaging substantially the wall adjacent to the socket. The present invention also aims to provide a collapsible socket extender which allows improved portability and storage. The present invention allows a user quickly and easily to extend the reach of a surface/wall-mounted electrical socket in order to create an electrical socket in a more convenient location. This electrical socket can thus allow the user greater flexibility in how they organise the contents of a room and also makes reaching the electrical outlet much less demanding.

SUMMARY OF THE INVENTION

According to the present invention there is provided an electrical socket extender to provide an electrical socket remote from a wall-mounted electrical socket, the socket extender comprising:

- a socket engaging portion connectable to the wall-mounted electrical socket and comprising:
  - a non-conductive housing having at least one electrically conductive prong for insertion into a female recess of the wall-mounted electrical socket to electrically couple thereto; and
  - one or more secure primary coupling formation formed about a periphery of the socket engaging portion such that, when the socket engaging portion is engaged with a wall-mounted electrical socket one or more of the or each primary coupling formation may releasably connect to a linkage to form an electrical connection therewith;
- an appliance socket section providing one or more electrical appliance socket and comprising:

- a body having at least one electrically conductive recess formed therein, the recess allowing insertion of an electrically conductive prong of an electrical appliance plug; and

- one or more secure secondary coupling formation formed about a periphery of the appliance socket section, one or more of the or each secondary coupling formation releasably connectable to the linkage and the or each secondary coupling formation having an electrical connection, interior to the body, to electrically-couple the linkage to the electrical appliance socket; and

- a linkage, which connects the appliance socket section to the socket engaging portion, comprising:

  - an elongate and electrically insulated body having a first end releasably connectable to any primary coupling formation, a second end connectable to any secondary coupling formation; and

  - a conducting arrangement extending the length of the body, between the first end and the second end to electrically couple the socket engaging portion to the appliance socket section,

wherein the first end of the linkage is connected, or integrated, to the socket engaging portion and the second end of the linkage is connected, or integrated, to the appliance socket section such that the linkage extends from the socket engaging portion over the wall.

According to the present invention there is also provided an electrical socket extender to provide an electrical socket remote from a surface/wall-mounted electrical socket, the socket extender comprising:

- a socket engaging portion connectable to the wall-mounted electrical socket and comprising:

  - a non-conductive housing having at least one electrically conductive prong for insertion into a female recess of the wall-mounted electrical socket to electrically couple thereto; and

  - two or more secure primary coupling formations formed about a periphery of the socket engaging portion such that, when the socket engaging portion is engaged with a wall-mounted electrical socket each primary coupling formation may releasably connect to a linkage to form an electrical connection therewith;

- 4 -

- an appliance socket section providing one or more electrical appliance socket and comprising:

  - a body having at least one electrically conductive recess formed therein, the recess allowing insertion of an electrically conductive prong of an electrical appliance plug; and

  - two or more secure secondary coupling formations formed about a periphery of the appliance socket section, each secondary coupling formation releasably connectable to the linkage and each secondary coupling formation having an electrical connection, interior to the body, to electrically-couple the linkage to the electrical appliance socket; and

- a linkage, which connects the appliance socket section to the socket engaging portion, comprising:

  - a substantially rigid, elongate and electrically insulated body having a first end releasably connectable to any of the primary coupling formations, a second end connectable to any of the secondary coupling formations; and

  - a conducting arrangement extending the length of the body, between the first end and the second end to electrically couple the socket engaging portion to the appliance socket section,

wherein the first end of the linkage is connected, or integrated, to the socket engaging portion and the second end of the linkage is connected, or integrated, to the appliance socket section such that the linkage extends from the socket engaging portion over the wall/surface and the appliance socket section is supported in its position remote from the wall-mounted electrical socket by the linkage.

The provision of one or more secure primary coupling formations formed about a periphery of the socket engaging portion, and one or more secure secondary coupling formations formed about a periphery of the appliance socket section, permit the electrical socket extender to be assembled in various configurations, for instance, dependent upon the needs of the user and/or the space limitations of the premises where the electrical socket extender is being used. Each configuration may allow the extender to reach from the wall-mounted electrical socket in a different direction adjacent the wall. The specific locations of the primary coupling formations about the

periphery of the socket engaging portion may help to determine in which direction the linkage can extend from the socket engaging portion, when the linkage is connected to one of the primary couplings. The linkage may be integrated to one of the primary couplings.

Four primary coupling formations may be provided and disposed such that a connected or integrated linkage can extend generally upward towards the ceiling, downward towards the floor, or in either direction horizontally along the wall. An arrangement such as this should cover most of the orientations that an average user would require of such an electrical socket extender, in order to usefully relocate an electrical socket, adjacent a wall. A plurality of linkages and appliance socket sections may be provided with the electrical socket extender. One, or each, primary coupling formation of a single socket engaging portion may connect with a separate linkage. Each linkage may be connected, or integrated, to a separate appliance socket section, such that multiple appliance socket sections are provided remote from, but connected to, the single socket engaging portion and wall-mounted electrical socket. Where a plurality of linkages and appliance socket sections are provided, these may be connected or integrated in a modular fashion such that each appliance socket section may connect to and support one or more further linkages and appliance socket sections.

Primary coupling formations and/or secondary coupling formations which are not connected, or integrated, to the linkage may have covers to prevent tampering. This is especially useful as a safety mechanism, as it helps to avoid children tampering with the socket extender, and potentially receiving hazardous electric shocks. The covers of the primary and/or secondary coupling formations may comprise any suitable means, for instance bungs, inserts or shutters. The primary coupling formations may comprise isolating means to prevent a primary coupling formation from conducting electricity unless a linkage is connected or integrated therewith. The secondary coupling formations may comprise isolating means to prevent a secondary coupling formation from conducting electricity unless a linkage is connected or integrated therewith. The coupling formations may be covered in such a way that only by introduction of a linkage to the coupling formation is a cover thereof unlocked or moved to prevent accidental access.

The socket engaging portion may comprise disconnecting means to aid in disconnecting the socket engaging portion from the wall-mounted electrical socket.

The disconnecting means may be stowed when not required, to prevent the disconnecting means from becoming a nuisance during assembly, disassembly or use of the electrical socket extender, and to enhance the aesthetic appeal of the electrical socket extender. The disconnecting means may comprise a handle.  They may be stowed by a folding and/or sliding motion.

The socket engaging portion may further comprise one or more electrical appliance socket. This has the advantages of increasing the number of electrical appliance sockets and leaving one available at the original location of the socket. The socket engaging portion may comprise one or more features commonly found on wall-mounted electrical sockets, such as USB charging ports, electrical isolation means (which may comprise one or more ON/OFF switch) and indicator lights to indicate whether the socket engaging portion and/or any of the secure primary coupling formations are conducting electricity.

The appliance socket section may comprise one or more similar feature, such as USB charging porta, ON/OFF switch and indicator lights.

The electrical socket extender may comprise a timer to control the supply of electricity to any connected appliances. The timer may limit the supply of electricity to certain times of the day and/or may only supply electricity for a specific length of time after the timer is activated, the specific length of time which may be pre-set by a user.

Preferably, the linkage is extendable. The advantage of an extendable linkage is to allow alteration of the effective range of the socket extender to suit requirements. The extension of the linkage may be achieved by including various suitable means. Preferably, the linkage is also retractable so that it may lengthened and shortened.

Preferably, the linkage comprises a telescopic arrangement to permit adjustment thereof. The telescopic arrangement is a particularly compact means of providing linear contraction and/or extension of the linkage and may permit a wide range of positions. The telescopic arrangement may have at least 2 telescopic linkage sections.  The telescopic arrangement can also allow the linkage to be light-weight yet strong when appropriately constructed, for instance by using an appropriate material and/or by modifying the linkage structure. The telescopic arrangement may comprise two or more telescopic linkage sections which slide relative to one another.

The telescopic sections may have a variety of shapes and may be variously configured to allow extension.

The telescopic sections may be stacked upon one another and extend by the sliding of adjacent telescopic sections. The telescopic sections may be disposed concentrically of one another and extend by the sliding of internal sections relative to external sections. The telescopic sections may have a substantially constant cross-sectional shape along a portion, or the majority, of each telescopic section. The cross-section(s) of the linkage may be circular, square, rectangular or oval, though various other shapes are within the scope of the application.

One or more of the telescopic sections may include a stop, which can limit the extension of one telescopic section relative to a connected telescopic section or sections adjacent thereto. Stops may be particularly useful to prevent the telescopic arrangement from coming apart by over extension.

As an alternative to, or in combination with, a telescopic arrangement, the linkage may comprise a folding structure which permits extension of the linkage as relatively movable parts of the folding structure unfold. The folding structure may comprise folding members which fold or pivot relative to one another in order to extend, retract, and/or bend sideways as it will be described below.

Preferably, the telescopic arrangement comprises a releasable locking means to secure the telescopic arrangement at a desired position along a range of linear extended positions. A releasable locking means ensures that the linkage and appliance socket section may be supported stably in a desired extended position. There may be multiple releasable locking means, each acting between adjacent sections of the telescopic arrangement.

The releasable locking means may comprise any suitable mechanism, for instance, one or more clamp, a twist and locking means between adjacent telescopic sections, or a frictional fit between adjacent telescopic sections. A suitable mechanism for the releasable locking means may comprise a snap-lock configuration. A snap-lock configuration may be such that an interior telescopic section comprises a depressible locking formation which is spring-biased to project from the exterior surface of an interior telescopic section, the locking formation which may be depressible into the surface of the interior telescopic section until the projection is at least flush with the surface of the interior telescopic section.

An exterior telescopic section which slides telescopically relative to an interior section may have one or more opening formed along its surface. The opening or openings may be larger than the locking formation, so that the locking formation may spring up through an opening, when an opening slides into position directly above the locking formation (as the telescopic sections move relative to one another), thus securing the interior telescopic section to the exterior telescopic section. Where an exterior telescopic section comprises more than one opening, these may be equally spaced along the length of an exterior section, thus permitting the telescopic arrangement to be securable at a plurality of discrete, regular and secure locking positions.

The locking means may be selectively disengaged by a release mechanism to enable the linkage to be further extended or retracted. The release mechanism may be remote from the locking means. The release mechanism might allow simultaneous release and engagement of all locking means to enable rapid retraction, or further extension, of the linkage.

Preferably, the linkage comprises at least one joint either formed along the length of the linkage between sub-sections thereof and/or at either end of the linkage. Inclusion of at least one joint may allow the linkage to change direction/orientation.

Preferably, the elongate and electrically insulated body is or includes one or more resiliently deformable members, more preferably one or more accordion or concertina joints/members, either formed along the length of the linkage between sub-sections thereof or at either end of the linkage. The accordion/concertina joints/members may be designed to extend in length to some degree. The linkage may be formed as a single accordion/concertina member. The linkage may comprise two or more articulated sub-sections that are linked by one or more joint that may be an accordion/concertina joint(s). The sub-sections may be substantially rigid and have a fixed length. However, the sub-sections may be adjustable in length, for example, by using telescopic arrangements as described above. Advantageously, the accordion/concertina joints allow the linkage or the sub-sections of the linkage to flex in various directions, including bend sideways, relative to each other, enabling the socket extender to be collapsible or reconfigurable. It will be readily appreciated that this arrangement allows improved flexibility, portability and storage.

As an alternative to, or in combination with the above arrangement, the at least one joint may form a hinge mechanism that may comprise adjustable securing

means to ensure that the linkage and/or appliance socket section are supported stably in a desired angled position. Such securing means may comprise any suitable pivot hinge fixing position mechanism. Potentially, it could hinge away from the wall and establish an appliance socket section lying away from the plane of the wall on which the built-in socket is formed, yet with the appliance socket section still supported in this remote position.  The advantage of a joint formed along the length of the linkage between sub-sections thereof and/or at either end of the linkage is evident in that it affords greater flexibility in terms of how the appliance socket section is positionable. The at least one joint may permit sub-sections of the linkage to hinge in various planes, dependent upon the configuration of the at least one joint relative to the linkage.  For example, a joint may allow a sub-section to hinge within the vertical plane created by the wall, or hinge within a second vertical plane lying perpendicular to the plane of the wall, or a horizontal plane perpendicular to both the plane of the wall and the second vertical plane, or any other suitable plane.

Where the linkage comprises more than one joint, then the subsections of the linkage may enable the socket extender to traverse changes in the wall or obstacles located on or adjacent the wall and thus ensure that the appliance socket section may ultimately lie against the wall, if necessary.  For example, it may be the case that the wall-mounted electrical socket is located in a skirting board located at the base of the wall, the skirting board projecting a small distance from the wall.  In this scenario, a user may wish to use the socket extender to form an electrical socket directly above the wall-mounted electrical socket but with the socket extender lying against the wall.  The provision of at least two joints, configured appropriately, could thus permit the linkage to hinge about the top of the skirting board so that the appliance socket section lies against the wall, as required.

The linkage may comprise at least one joint stabiliser, selectively engageable to control articulation of the at least one joint.  A joint stabiliser is advantageous in ensuring that sub-sections of the linkage may be secured in a desired hinged position relative to one another.  This can be especially useful where the imposed moment upon a joint increases, for instance as the linkage is further extended and/or one or more appliance plug are inserted into the appliance socket section. The joint stabiliser may be any effective mechanism, for instance a lock within the joint to lock the joint in a given position, a tight frictional fit between portions of the joint, or a bracing support positioned between sub-sections of a linkage adjacent a joint in order

- 10 -

to reduce the load on the joint and instead distribute the weight of the electrical socket extender between sub-sections of the linkage.

Preferably, the linkage comprises at least one swivel formed along the length of the linkage or at either end of the linkage. The swivel may allow the linkage or a sub-section thereof to swivel relative to the general axis of extension of the linkage. A swivel is useful since in permits more variation in how the electrical socket extender can be orientated, to match the demands of the user and/or environment in which the electrical socket extender is being used. The linkage may comprise at least one swivel lock to prevent movement of parts relative to the at least one swivel.

The appliance socket section may comprise a handle for movement of the appliance socket section relative to the socket engaging portion. The handle may be electrically insulated. The handle, when grasped and manipulated by a user, may allow the user to more easily guide the electrical socket extender into a desired position. Preferably, the handle is movable between a use position and a storage position. The handle may slide or hinge from the use position to the storage position. The appliance socket section may further comprise a recess into which the handle is storable. The handle may be removably attached to the appliance socket section. Where the handle is removably attachable to the appliance socket section, the handle may be attachable to the appliance socket section at a plurality of separate locations, for instance to allow more convenient relocation of the appliance socket section and/or so as not to interfere generally with usage of the electrical socket extender.

Preferably, two or more linkages may be connected to one another. This can extend the reach of the electrical socket extender and/or change the direction/orientation it extends.

The linkage and/or appliance socket section may comprise connecting means to fix the linkage and/or appliance socket section to the wall/surface. Connecting means may be especially useful since, in certain circumstances, the total weight of the socket extender may be greater than can be easily supported by the connection of the socket engaging portion to the wall-mounted electrical socket. These circumstances could be where multiple linkages are connected in series, or a network of linkages and appliance socket sections extend in a modular arrangement from the wall-mounted electrical socket, all of which can become relatively heavy. Another situation may arise where the electrical socket extender must support the

weight of many appliance plugs (and perhaps also the cabling associated with each appliance plug) which are plugged into one or more appliance socket section of the electrical socket extender.

The connecting means may be non-damaging and thus may be configured to prevent superficial and/or invasive damage, to the wall. Such non-damaging connecting means may comprise any suitable arrangement, for instance one or more sucker or removable, marking or non-marking adhesives and/or securing mechanisms including but not limited to Velcro® pads/strips or magnetic means. As an alternative the connecting means may comprise any suitable arrangement, for instance threaded screws, nails, or non-removable adhesives.

Preferably, the appliance socket section is attached to a docking plate that is secured to a wall to support the appliance socket section in a suitable position remote from the wall-mounted electrical socket. The appliance socket station may be conveniently clipped onto the docking plate by clipping means or other connecting means. For safety reasons, the docking plate is preferably fixed permanently to the wall, but other suitable connecting may be used.

The linkage and/or appliance socket section may comprise means for securing loose cables of electrical appliance plugs. Provision of such means may reduce tripping or catching hazards that could otherwise result from hanging or trailing cables, and the means for securing loose wires may also enhance the aesthetics of the electrical socket extender when in use. The means for securing loose cables of electrical appliance plugs may comprise any suitable arrangement, for instance a hook over which the cables may be draped or looped.

Preferably, the socket engaging portion is interchangeable with differently configured socket engaging portions to accommodate wall-mounted electrical sockets of different configurations and the appliance socket section may be independently interchangeable to accommodate electrical appliance plugs of differing number or configuration. Interchangeable socket engaging portions may be particularly useful, for instance, where the configuration of the electrical socket differs, such as internationally, and so the socket engaging portion may be interchanged for a socket engaging portion which matches the differing configuration. By providing interchangeable socket engaging portions, a user may bring their appliances with them overseas to be used with the electrical socket extender. Similarly, an independently interchangeable appliance socket section, as mentioned

above, may be useful in international territories where a user seeks to use foreign appliance plugs with the electrical socket extender.

A part of the socket engaging portion, including the at least one electrically conductive prong, may be interchangeable to accommodate wall-mounted electrical sockets of different configurations. A part of the appliance socket section, including the at least one electrically conductive recess, may be interchangeable to accommodate electrical appliance plugs of differing number or configuration. This interchangeability confers the same and further advantages as those associated with the interchangeability of the appliance socket section and/or socket engaging portion, as mentioned above.

Preferably, the housing (of the socket engaging portion) is formed by a cover element and a plug element having conducting prongs, the plug element being connected to the cover. The plug element is preferably a conventional electric plug. For clarity, existing conventional electric plug may be considered as interchangeable parts, as described above. The cover may comprise one or more pieces which are pre-assembled, or integrated with, a conventional electric plug element, preferably wherein the one or more pieces are secured to the plug by clipping means. The cover may comprise a handle, as described above. The cover could be designed such that the handle couples electrically the socket engaging portion with the linkage.

An electrical socket extender as that described above may be provided in kit form, the kit including a plurality of interchangeable socket engaging portions to connect to wall-mounted electrical sockets of differing configuration and/or may comprise a plurality of independently interchangeable appliance socket sections to accommodate electrical appliance plugs of differing number or configuration. The kit may alternatively comprise a socket engaging portion with a plurality of interchangeable parts to accommodate wall-mounted electrical sockets of different configurations and/or the appliance socket section with a plurality of interchangeable parts to accept electrical appliance plugs of differing configuration. Kits such as those outlined above may be especially useful to a user who travels frequently to various countries, and who may want to pack only the elements of the kit required for that particular country or countries. The kit may comprise a cover element and a plug element having conducting prongs, the plug element being connected to the cover to form a housing of the socket engaging portion.

- 13 -

An electrical socket extender as that described above may be provided in an assembled form wherein the socket engaging portion, the appliance socket section, and the linkage may be integrated in a single unit.

BRIEF DESCRIPTION OF THE DRAWINGS

In order that it be better understood, but by way of example only, the present invention will now be described with reference to the accompanying drawings in which:

**Figure 1** is a perspective view of a first embodiment of an electrical socket extender connected to a wall-mounted electrical socket;

**Figure 2** is a perspective view of a second embodiment of an electrical socket extender connected to a wall-mounted electrical socket mounted near the top of a wall;

**Figure 3** is a perspective view of the electrical socket extender of Fig. 2, here connected to a wall and extending horizontally along the wall;

**Figure 4** is a perspective view of a third embodiment of an electrical socket extender extending around an interior corner of a room;

**Figure 5** is a perspective view of a fourth embodiment of an electrical socket extender extending horizontally around a corner and then vertically;

**Figure 6** is a perspective view of a fifth embodiment of electrical socket extender extending vertically upwards in front of an upper cupboard;

**Figure 7** is a perspective view of parts of an electrical socket extender;

**Figure 8** is a perspective view of a part of an electrical socket extender, wherein the socket engaging portion has interchangeable parts to accommodate wall-mounted electrical sockets of different configurations;

**Figure 9a** is a perspective view of a part of an electrical socket extender; and

**Figure 9b** is a similar perspective view wherein the socket engaging portion includes a timer; and

**Figure 10** is a perspective view of a sixth embodiment of an electrical socket extender connected to a wall-mounted electrical socket.

In the drawings, like parts are denoted by like reference numerals.

DETAILED DESCRIPTION

Figure 1 shows a perspective view of an electrical socket extender, generally indicated 10, in accordance with the present invention. The electrical socket extender 10 has a socket engaging portion 11 which is connected to a wall-mounted electrical socket 12 mounted in this view upon a skirting board 14, located at the base of a wall/surface 16. The socket extender 10 is shown extending vertically up the wall 16. The socket engaging portion 11 comprises a non-conductive housing having at least one electrically conductive prong (not shown) that inserts into a female recess 18 of the wall-mounted electrical socket 12 to electrically couple thereto. The socket engaging portion 11 further comprises four secure primary coupling formations 20 (not all of which are visible) formed about a periphery of the socket engaging portion 11 such that, when the socket engaging portion 11 is engaged with a wall-mounted electrical socket 12 each primary coupling formation 20 may releasably connect to a linkage, generally indicated 22, to form an electrical connection therewith. The electrical socket extender 10 further comprises an appliance socket section 24 providing two electrical appliance sockets 26. The appliance socket section 24 comprises a body having at least one electrically conductive recess 27 formed therein, the recess 27 allowing insertion of an electrically conductive prong of an electrical appliance plug.

The appliance socket section 24 further comprises four secure secondary coupling formations 28 formed about a periphery of the appliance socket section 24, though only two are visible, each secondary coupling formation 28 releasably connectable to the linkage 22 and each secondary coupling formation 28 having an electrical connection, interior of the body (and therefore not shown), to electrically-couple the linkage 22 to the two electrical appliance sockets 26.

The electrical socket extender 10 further comprises the linkage 22, which connects the appliance socket section 24 to the socket engaging portion 11. The linkage 22 comprises, in this embodiment, a substantially rigid, elongate and electrically insulated body having a first end 30 releasably connectable to any of the primary coupling formations 20, and a second end 32 connectable to any of the secondary coupling formations 28. The linkage 22 also comprises a conducting arrangement extending the length of the body (internal to the linkage 22 and thus not shown), between the first end 30 and the second end 32 to electrically couple the socket engaging portion 11 to the appliance socket section 24.

- 15 -

In use, when the first end of the linkage 30 is connected, or integrated, to the socket engaging portion 11 and the second end of the linkage 32 is connected, or integrated, to the appliance socket section 24 the linkage 22 extends from the socket engaging portion 11 over the wall 16 and the appliance socket section 24 is supported in its position remote from the wall-mounted electrical socket 12 by the linkage 22. In this embodiment, the linkage 22 linkage is linearly extendable and comprises a telescopic arrangement, generally indicated 34, to permit extension thereof. The telescopic arrangement 34 further comprises releasable locking means, generally indicated 36, to secure the relatively moveable parts of the telescopic arrangement 34 at various positions along a range of linear extended positions. The telescopic arrangement 34 also comprises three joints 37 formed along the length of the linkage 22 between sub-sections thereof. In this embodiment, the three joints 37, are formed as hinges 37, and these hinges 37 permit the sub-sections of the linkage 22 to hinge relative to each other. This allows it to be adjusted around the skirting board 14 so that the appliance socket section 24 is disposed in a recessed position (relative to the skirting board 14) and lying against the wall 16. In this way, the socket extender 10 forms an electrical socket generally above the wall-mounted electrical socket 12 but with the socket extender 10 lying against the wall 16 to save space.

The appliance socket section 24 further comprises a handle 38 for assisting movement of the appliance socket section 24 relative to the socket engaging portion 11. The handle 38 is movable between a use position (as shown) and a storage position. The handle 38 comprises a plurality of telescopic members 40 attached to the appliance socket section 24 and the telescopic members 40 of the handle 38 may be extended to the use position and collapsed to move to the storage position. Similarly, the socket engaging portion 11 comprises disconnecting means 42 to aid in disengaging the socket engaging portion 11 from the wall-mounted electrical socket 12 and in this embodiment the disconnecting means 42 takes the form of a foldable handle 42. The socket engaging portion 11 further comprises an electrical appliance socket 44.

The appliance socket section 24 further comprises features commonly found on wall-mounted electrical sockets, and this embodiment also includes two USB charging ports 46, ON/OFF switches 48 and operational indicator lights 50.

The releasable locking means 36 of the linkage 22 further comprises a snap-lock configuration, generally indicated 51, which is configured such that an interior telescopic section 52 comprises a depressible locking formation (hidden in Figure 1 but visible in Figures 7-9b as 106) which is spring-biased to project from the exterior surface of the interior telescopic section 52. An exterior telescopic section 54 which telescopes around the interior section 52 has several openings 56 formed along its surface, the openings 56 being large enough to accommodate the locking formation. The locking formation springs up under action of the spring, through an opening 56, when an opening 56 slides into position directly above the locking formation, thus securing the telescopic sections. The sections of the linkage 22 are generally hollow and square in cross-section.

Primary coupling formations 20, and secondary coupling formations 28, which are not connected, or integrated, to the linkage 22 are covered by moveable shutters 58 in order to prevent tampering.

Figure 2 shows a perspective view of a second embodiment of an electrical socket extender 200 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted near the top of a wall 16, close to the ceiling, the socket extender 200 extending vertically down the wall. Grasping of the handle 38 may help a user to extend the linkage of the electrical socket extender 200, to position the appliance socket section 24 in a convenient location for use.

Figure 3 shows a perspective view of the electrical socket extender 200 of Figure 2, here connected to a wall-mounted electrical socket 12 mounted near the floor, above a skirting board 14, the socket extender 200 extending horizontally along the wall 16, with the appliance socket section 24 supported in its position remote from the wall-mounted electrical socket 12 by the linkage 22.

Figure 4 shows a perspective view of a third embodiment of an electrical socket extender 300 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted near the floor, above a skirting board 14, the socket extender 300 extending horizontally along the wall 16 and around an interior corner of a room. This arrangement is made possible by the presence of a pivoting joint 70 formed between sub-sections of the linkage 22. This embodiment could just as usefully be used to traverse around an exterior corner between two walls.

- 17 -

Figure 5 shows a perspective view of a fourth embodiment of an electrical socket extender 400 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted near the floor, above a skirting board 14, the socket extender 400 extending first horizontally along the wall 16, then around an interior corner of a room by way of a first joint 70 and then vertically up a second wall. This embodiment is similar to that of Figure 4, except that a second joint 80, with an axis of rotation rotated 90 degrees relative to the joint 70, is formed along the length of the linkage 22 which allows the electrical socket extender 400 to extend further up the second wall, above the height of the wall-mounted electrical socket 12.

Figure 6 shows a perspective view of a fifth embodiment of an electrical socket extender 500 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted around the midpoint of a wall between two wall-mounted cupboards. The socket extender 500 first extends vertically up the wall, then out from the wall underneath the upper cupboard 90, then vertically upwards in front of the upper cupboard 90. This arrangement could be useful if the workspace above the lower cupboard 92 must be kept free from appliance plugs and their wiring. It will be appreciated that other suitable arrangements are also possible.

Figure 7 shows a perspective detail view, of a part of an electrical socket extender in accordance with the present invention, wherein the socket engaging portion, generally indicated 11a and 11b, is interchangeable to accommodate wall-mounted electrical sockets of different configurations, and two possible distinct interchangeable versions are illustrated; a three-pronged version 11a and a two-pronged version 11b. Existing (conventional) electrical plugs can be used. The cooperating shapes of the cuboidal locking formation 106 and square openings 56 formed on the surface of the exterior telescopic section 54 are also easily identifiable. Depressing the locking formation 106 permits the exterior telescopic section 54 to slide relative to the interior telescopic section 52, until an opening 56 is directly above the locking formation 106, whereupon the locking formation pops up through an opening 56, under action of a spring, and secures the exterior telescopic section 54 relative to the interior telescopic section 56.

Figure 8 shows a perspective detail view of a part of an electrical socket extender, in accordance with the present invention, wherein a region of the socket engaging portion 11, is interchangeable to accommodate wall-mounted electrical sockets of different configurations. Two possible distinct interchangeable parts with

the electrically conductive prongs are illustrated; a two-pronged version 112 and a three-pronged version 114. Either of these may be slid into a recess 110 on the socket engaging portion 11 to engage and electrically couple thereto.

Figure 9a shows a perspective detail view of a part of an electrical socket extender, in accordance with the present invention, wherein the socket engaging portion 11 comprises an electrical appliance socket 120 into which an appliance plug may be introduced.

Figure 9b shows a similar perspective detail view of a part of an electrical socket extender, in accordance with the present invention, with a different embodiment of socket engaging portion 126 which comprises a timer 130 to control the supply of electricity from the wall-mounted electrical socket (not shown) to any appliances connected to the electrical socket extender (not shown in this view).

Figure 10 shows a perspective view of a sixth embodiment of the electrical socket extender in accordance with the present invention. The features and advantages described in the above embodiments generally apply in this latter embodiment.

Figure 10 shows a socket extender 10 that extends upwardly on/over a wall 16. The electrical socket extender 10 has a socket engaging portion 11 which is connected to a wall-mounted electrical socket 12 that is mounted, for example, upon a skirting board 14, located at the base of the wall 16.

The sixth embodiment mainly differs from the embodiment of Figure 1 in that the three joints 37 (formed along the length of the linkage 22 between sub-sections thereof) are formed as resiliently deformable accordion or concertina types of joints/members, as shown in the enlarged side view of Figure 10. The provision of accordion/concertina joints/members 37 enables the sub-sections of the linkage 22 to flex in all directions relative to each other. As a result, the sub-sections can bend sideways relative to each other to allow the socket extender to collapse conveniently and easily or conform to underlying wall shapes or external structures. It will be readily evident that this arrangement allows enhanced adjustability and flexibility whilst also providing improved portability and storage.

It will be also readily evident that the arrangement shown in Figure 10 is similar to the arrangement shown in Figure 8. In fact, in the former example the socket engaging portion 11 forms a cover that is designed to enclose/frame a conventional plug element having conductive prongs. Such a cover may either slide

into, or clipped to, the plug element, for example, to the sides of the plug. It may also be permanently secured to the plug, for example, by adhesive means. The cover may be formed by one or more pieces which are pre-assembled or integrated with a plug element.

The cover may have a handle 42 to facilitate pulling of the plug from the wall-mounted socket.  Figure 10 shows a two-piece cover in which each piece comprises a portion of the handle 42 that is hollow-shaped such that when the pieces are assembled together and secured to the plug the electric cable (extending out of the plug) is fully enclosed in the handle to thereby forming an electrical connection with the linkage via the primary coupling formation 20 (that is formed in the socked engaging portion 11). The cover could also be designed such that the electric cable is partially enclosed in the handle, or runs fully or partially inside the cover.

In this embodiment, the handle 42 has a first end that is connected to the output electrical port of the plug and a second end that is connected to the linkage to enable the electric cable extending out of the plug to be channelled to the appliance socket section inside the handle hollowed section and the linkage. In this example the handle is oriented upwardly towards (and substantially aligned with) the linkage.

Figure 10 also shows a docking plate 15 that is secured to the wall/surface 16 by various securing means as indicated above. The docking plate is configured to allow an appliance socket section 24 to conveniently clip and unclip thereon to thereby improving the stability of the extender whilst also improving safety.

It will be understood that any features described in relation to any particular embodiment may be featured in combination with other embodiments.

- 20 -

## CLAIMS

1. An electrical socket extender to provide an electrical socket remote from a wall-mounted electrical socket, the socket extender comprising:

- a socket engaging portion connectable to the wall-mounted electrical socket and comprising:
    - a non-conductive housing having at least one electrically conductive prong for insertion into a female recess of the wall-mounted electrical socket to electrically couple thereto; and
    - one or more secure primary coupling formation formed about a periphery of the socket engaging portion such that, when the socket engaging portion is engaged with a wall-mounted electrical socket one or more of the or each primary coupling formation may releasably connect to a linkage to form an electrical connection therewith;

- an appliance socket section providing one or more electrical appliance socket and comprising:
    - a body having at least one electrically conductive recess formed therein, the recess allowing insertion of an electrically conductive prong of an electrical appliance plug; and
    - one or more secure secondary coupling formation formed about a periphery of the appliance socket section, one or more of the or each secondary coupling formation releasably connectable to the linkage and the or each secondary coupling formation having an electrical connection, interior to the body, to electrically-couple the linkage to the electrical appliance socket; and

- a linkage, which connects the appliance socket section to the socket engaging portion, comprising:
    - an elongate and electrically insulated body having a first end releasably connectable to any primary coupling formation, a second end connectable to any secondary coupling formation; and
    - a conducting arrangement extending the length of the body, between the first end and the second end to electrically couple the socket engaging portion to the appliance socket section,

- 21 -

wherein the first end of the linkage is connected, or integrated, to the socket engaging portion and the second end of the linkage is connected, or integrated, to the appliance socket section such that the linkage extends from the socket engaging portion over the wall.

2. An electrical socket extender to provide an electrical socket remote from a wall-mounted electrical socket, the socket extender comprising:

- a socket engaging portion connectable to the wall-mounted electrical socket and comprising:
    - a non-conductive housing having at least one electrically conductive prong for insertion into a female recess of the wall-mounted electrical socket to electrically couple thereto; and
    - two or more secure primary coupling formations formed about a periphery of the socket engaging portion such that, when the socket engaging portion is engaged with a wall-mounted electrical socket each primary coupling formation may releasably connect to a linkage to form an electrical connection therewith;

- an appliance socket section providing one or more electrical appliance socket and comprising:
    - a body having at least one electrically conductive recess formed therein, the recess allowing insertion of an electrically conductive prong of an electrical appliance plug; and
    - two or more secure secondary coupling formations formed about a periphery of the appliance socket section, each secondary coupling formation releasably connectable to the linkage and each secondary coupling formation having an electrical connection, interior to the body, to electrically-couple the linkage to the electrical appliance socket; and

- a linkage, which connects the appliance socket section to the socket engaging portion, comprising:
    - a substantially rigid, elongate and electrically insulated body having a first end releasably connectable to any of the primary coupling formations, a second end connectable to any of the secondary coupling formations; and

- 22 -

  – a conducting arrangement extending the length of the body, between the first end and the second end to electrically couple the socket engaging portion to the appliance socket section,

  wherein the first end of the linkage is connected, or integrated, to the socket engaging portion and the second end of the linkage is connected, or integrated, to the appliance socket section such that the linkage extends from the socket engaging portion over the wall and the appliance socket section is supported in its position remote from the wall-mounted electrical socket by the linkage.

3. An electrical socket extender as claimed in claim 1 or claim 2, wherein the linkage is extendable.

4. An electrical socket extender as claimed in any one of claims 1 to 3, wherein the linkage comprises a telescopic arrangement to permit extension thereof.

5. An electrical socket extender as claimed in claim 4, wherein the telescopic arrangement comprises a releasable locking means to secure the telescopic arrangement at various positions along a range of linear extended positions.

6. An electrical socket extender as claimed in any preceding claim, wherein the linkage includes at least one joint either formed along the length of the linkage between sub-sections thereof or at either end of the linkage.

7. An electrical socket extender as claimed in claim 6, wherein the linkage comprises at least one joint stabiliser, selectively engageable to prevent articulation of the at least one joint.

8. An electrical socket extender as claimed in any preceding claim, wherein the linkage comprises at least one swivel formed along the length of the linkage or at either end of the linkage.

9.  An electrical socket extender as claimed in claim 8, wherein the linkage comprises at least one swivel lock to prevent movement of parts relative to the at least one swivel.

10. An electrical socket extender as claimed in any of the preceding claims, wherein the appliance socket section and/or the socket engaging portion have a handle.

11. An electrical socket extender as claimed in claim 10, wherein the or each handle is movable between a use position and a storage position.

12. An electrical socket extender as claimed in any of claim 5 to claim 9, wherein the locking means may be selectively disengaged by a release mechanism to enable the linkage to be further extended or retracted.

13. An electrical socket extender as claimed in any preceding claim, wherein the linkage comprises means to enable two or more of such linkages to be connected, or integrated, to one another between the socket engaging portion and the appliance socket section, to extend the reach of the electrical socket extender and/or change direction/orientation.

14. An electrical socket extender as claimed in claim 13, wherein the linkage includes one or more accordion/concertina elements either formed along the length of the linkage between sub-sections thereof or at either end of the linkage, wherein the one or more accordion/concertina joints allow the linkage or the sub-sections to flex in all directions, including bend sideways, relative to each other.

15. An electrical socket extender as claimed in any preceding claim, wherein the linkage and/or appliance socket section comprises connecting means to connect the linkage and/or appliance socket section to the wall.

16. An electrical socket extender as claimed in claim 15, wherein the appliance socket section is attached, preferably by clipping means, to a docking plate

that is secured to the wall to thereby supporting the appliance socket section in its position remote from the wall-mounted electrical socket.

17. An electrical socket extender as claimed in any preceding claim, wherein the socket engaging portion is interchangeable with differently configured socket engaging portions to accommodate wall-mounted electrical sockets of different configurations and the appliance socket section is independently interchangeable to accommodate electrical appliance plugs of differing number or configuration, including existing conventional electric plug elements.

18. An electrical socket extender as claimed in any preceding claim, wherein the housing is formed by a cover and a plug element having conducting prongs, the plug element being attached to the cover.

19. An electrical socket extender as claimed in claim 18, wherein the cover comprises one or more pieces which are pre-assembled or integrated with the plug element, preferably wherein the one or more pieces are secured to the plug by clipping means.

20. An electrical socket extender as claimed in any preceding claim, wherein the cover comprises a handle that is preferably configured to electrically couple the socket engaging portion with the linkage.

21. An electrical socket extender as claimed in any preceding claim, wherein the elongate and electrically insulated body is formed by one accordion/concertina element or a plurality of articulated sub-sections, preferably interconnected by accordion/concertina elements.

# Figure 1



# Figure 2



# Figure 3



# Figure 4



WO 2019/162691          5/10          PCT/GB2019/050498

**Figure 5**



**Figure 6**



WO 2019/162691

7/10

PCT/GB2019/050498

# Figure 7



WO 2019/162691                          8/10                          PCT/GB2019/050498

**Figure 8**



**Figure 9a**

**Figure 9b**





# Figure 10



## INTERNATIONAL SEARCH REPORT

| | International application No |
|---|---|
| | PCT/GB2019/050498 |

**A. CLASSIFICATION OF SUBJECT MATTER**

INV. H01R25/00
ADD. H01R103/00    H01R24/78    H01R31/06    H01R24/30    H01R24/22

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)

H01R

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practicable, search terms used)

EPO-Internal, WPI Data

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X | US 4 553 798 A (MURPHY PETER [CA]) 19 November 1985 (1985-11-19) | 1-7, 10-13 |
| Y | abstract figures 1-13f | 8,9, 14-21 |
| Y | ----- US 6 004 138 A (HARBERTSON GRANT J [US]) 21 December 1999 (1999-12-21) abstract figures 1-5 | 8,9 |
| Y | ----- US 2017/346244 A1 (COMIS SHANE [CA]) 30 November 2017 (2017-11-30) abstract paragraph [0015] - paragraph [0015] figures 1-7 | 15,16 |
| | ----- -/-- | |

[X] Further documents are listed in the continuation of Box C.     [X] See patent family annex.

* Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier application or patent but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 26 April 2019 | 08/05/2019 |

| Name and mailing address of the ISA/ European Patent Office, P.B. 5818 Patentlaan 2 NL - 2280 HV Rijswijk Tel. (+31-70) 340-2040, Fax: (+31-70) 340-3016 | Authorized officer Pugliese, Sandro |
|---|---|

Form PCT/ISA/210 (second sheet) (April 2005)

# INTERNATIONAL SEARCH REPORT

| | International application No |
|---|---|
| | PCT/GB2019/050498 |

**C(Continuation).    DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| Y | US 2005/176281 A1 (ZHUGE RUI [CN])<br>11 August 2005 (2005-08-11)<br>abstract<br>figures 1-4C<br>----- | 17-20 |
| Y | DE 24 48 041 A1 (ERCO LEUCHTEN)<br>15 April 1976 (1976-04-15)<br>abstract<br>figures 1-6<br>----- | 14,21 |

Form PCT/ISA/210 (continuation of second sheet) (April 2005)

page 2 of 2

# INTERNATIONAL SEARCH REPORT

Information on patent family members

| International application No |
|---|
| PCT/GB2019/050498 |

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|---|
| US 4553798 | A | 19-11-1985 | NONE | | |
| US 6004138 | A | 21-12-1999 | US | 5895275 A | 20-04-1999 |
| | | | US | 6004138 A | 21-12-1999 |
| US 2017346244 | A1 | 30-11-2017 | NONE | | |
| US 2005176281 | A1 | 11-08-2005 | CN | 2694564 Y | 20-04-2005 |
| | | | US | 2005176281 A1 | 11-08-2005 |
| DE 2448041 | A1 | 15-04-1976 | AU | 8510675 A | 31-03-1977 |
| | | | DE | 2448041 A1 | 15-04-1976 |
| | | | JP | S5142977 A | 12-04-1976 |

Form PCT/ISA/210 (patent family annex) (April 2005)

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 40365260 |
| **Application Number:** | 16988045 |
| **International Application Number:** | |
| **Confirmation Number:** | 4753 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Kimberly Hefner |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00003 |
| **Receipt Date:** | 24-AUG-2020 |
| **Filing Date:** | 07-AUG-2020 |
| **Time Stamp:** | 15:39:38 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Information Disclosure Statement (IDS) Form (SB08) | 9048358.PDF | 1034454<br><br>7501179411d46195b0f3bc0786a5121011d7d3af | no | 4 |

**Warnings:**

**Information:**

| | | | 1511738 | | |
|---|---|---|---|---|---|
| 2 | Foreign Reference | 9048353.PDF | 7a1cf25331e4c01229a2d2d87a57a11bb11fbf76 | no | 38 |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 2546192 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oғғɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/988,045 | 08/07/2020 | Tony Matthew Galazin | 48071-00003 | 4753 |

33772        7590        09/14/2020
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| EXAMINER |
|---|
| FIGUEROA, FELIX O |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2833 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/14/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ipmailbox@mcdonaldhopkins.com

PTOL-90A (Rev. 04/07)

| Office Action Summary | Application No. 16/988,045 | Applicant(s) Galazin, Tony Matthew | |
|---|---|---|---|
| | Examiner FELIX O FIGUEROA | Art Unit 2833 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☐ Responsive to communication(s) filed on _____.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL.**          2b) ☑ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) _1-17_ is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) 1-17 is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or  b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☑ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☑ All      b) ☐ Some**      c) ☐ None of the:
      1. ☑ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

| | |
|---|---|
| 1) ☑ Notice of References Cited (PTO-892) | 3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____. |
| 2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____. | 4) ☐ Other: _____. |

Application/Control Number: 16/988,045 Page 2
Art Unit: 2833

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Drawings*

The drawings are objected to as failing to comply with 37 CFR 1.84(m) because they include shading that reduces legibility and does not aids understanding of the invention.

Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office action to avoid abandonment of the application. Any amended replacement drawing sheet should include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is being amended. The figure or figure number of an amended drawing should not be labeled as "amended." If a drawing figure is to be canceled, the appropriate figure must be removed from the replacement sheet, and where necessary, the remaining figures must be renumbered and appropriate changes made to the brief description of the several views of the drawings for consistency. Additional replacement sheets may be necessary to show the renumbering of the remaining figures. Each drawing sheet submitted after the filing date of an application must be labeled in the top margin as either "Replacement Sheet" or "New Sheet" pursuant to 37 CFR 1.121(d). If the changes are not accepted by the examiner, the applicant will be notified and informed of any required corrective action in the next Office action. The objection to the drawings will not be held in abeyance.

Application/Control Number: 16/988,045                                             Page 3
Art Unit: 2833

## *Specification*

Applicant is reminded of the proper language and format for an abstract of the disclosure.  The abstract should be in narrative form and generally limited to a single paragraph on a separate sheet within the range of 50 to 150 words in length.  It should avoid using phrases which can be implied, such as, "Provided is".  In addition, the form and legal phraseology often used in patent claims, such as "means" and "said," should be avoided.

The specification is objected because any abbreviation must be written out initially.  Therefore, "USB", "IEC", etc., should be written out initially.

## *Claim Objections*

Claim 2 is objected to because of the following informalities:  In claim 2, it appears that "two more or" should be --two or more--.

Appropriate correction is required.

## *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention.

Claims 1-4, 6, 13, and 14 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by Harbertson (US 6,004,138).

Application/Control Number: 16/988,045                                        Page 4
Art Unit: 2833

Harbertson discloses a wall outlet extender that extends a wall outlet to a new position on a wall, comprising: a plug end (12) configured to selectively plug into the wall outlet, an outlet end (72) configured to selectively receive one or more plugs, and an extendable shaft (14, 16) between the plug end and the outlet end, wherein the wall outlet extender is rotatable about the plug end.

Regarding claim 2, Harbertson discloses the extendable shaft including two more or telescoping portions.

Regarding claim 3, Harbertson discloses the extendable shaft including a first telescoping portion (14) having a first diameter and a second telescoping portion (16) having a second diameter, wherein the first diameter is larger than the second diameter.

Regarding claim 4, Harbertson discloses the first telescoping portion is configured to internally receive the second telescoping portion in a retracted position.

Regarding claim 6, Harbertson discloses the plug end being rotatable about 360 degrees.

Regarding claim 13, Harbertson discloses the wall outlet extender including Bluetooth or Wi-Fi connectivity capabilities (i.e. such devices can be connected to the extender).

Regarding claim 14, Harbertson discloses an extendable power outlet adaptor, comprising: a plug (12) selectively configured to insert into a wall outlet, a shaft that is telescopic and that is rotatable about the plug up to 360 degrees, and one or more

Application/Control Number: 16/988,045                                     Page 5
Art Unit: 2833

outlet receptacles (86, 88) connected to the shaft that are selectively attachable to a

position on a wall adjacent to the wall outlet.


### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

Claim 5 is rejected under 35 U.S.C. 103 as being unpatentable over Harbertson.

To the extent that Harbertson does not disclose the extendable shaft being

extendable from about 21 inches to about 34 inches, it would have been an obvious

matter of design preference to one skilled in the art before the invention was effectively

filed to define the extendable length range in order to accommodate the desire space,

and since such modification would have involved a mere change in the size of a

component. A change in size is recognized as being within the level of ordinary skill in

the art. *In re rose, 105 USPQ 237 (CCPA 1955).*


Claims 7-9, and 15-17 are rejected under 35 U.S.C. 103 as being unpatentable

over Harbertson in view of Hicks (US 7,220,128).

Regarding claim 7, Hicks teaches the use of an engagement portion (38),

wherein the engagement portion is positioned on a wall-facing side of the outlet end and

is configured to selectively engage the wall.

Application/Control Number: 16/988,045                                            Page 6
Art Unit: 2833

Regarding claim 8, Hicks teaches the engagement portion comprises a non-permanent adhesive, removable putty, or stickable surface.

Regarding claim 9, Hicks teaches the engagement portion is free from any attachment to the wall that traverses or damages the wall surface.

It would have been obvious to one having ordinary skill in the art before the invention was effectively filed to use a non-permanent adhesive, as taught by Hicks, in order to removably secure the outlet end.

Regarding claim 15, Hicks teaches the outlet receptacles being attachable to the wall by temporary adhesive, putty, or stickable surface.

Regarding claim 16, Hicks teaches the extendable power outlet adaptor being free from any attachment to the wall that traverses or damages the wall surface.

Regarding claim 17, Hicks teaches that the extendable power outlet adaptor may be removed and repositioned onto the wall.

Claims 10-11 are rejected under 35 U.S.C. 103 as being unpatentable over Harbertson in view of Amelio et al. (US 9,965,007).

Regarding claim 10, Amelio teaches an outlet end including an even number of outlets and at least one USB port. It would have been obvious to one having ordinary skill in the art before the invention was effectively filed to provide outlets and USB ports, as taught by Amelio, in order to provide the desire connection interfaces.

Regarding claim 11, Amelio teaches the outlet end including interchangeable faceplates. It would have been obvious to one having ordinary skill in the art before the

Application/Control Number: 16/988,045                                      Page 7
Art Unit: 2833

invention was effectively filed to allow for interchangeable faceplaces, as taught by

Amelio, in order to allow customization.


Claim 12 is rejected under 35 U.S.C. 103 as being unpatentable over Harbertson

in view of Green (US 2015/0129722).

Green teaches the use of an outlet end including a device cradle (1, 2)

configured to hold a device while the device is plugged into the outlet end. It would

have been obvious to one having ordinary skill in the art before the invention was

effectively filed to use a device cradle, as taught by Green, in order to hold a connected

device.


### Conclusion

The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to FELIX O FIGUEROA whose telephone number is

(571)272-2003. The examiner can normally be reached on M-F 9am-6pm.

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

Application/Control Number: 16/988,045                                        Page 8
Art Unit: 2833

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Renee Luebke can be reached on 571-272-2009. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see https://ppair-

my.uspto.gov/pair/PrivatePair. Should you have questions on access to the Private

PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

If you would like assistance from a USPTO Customer Service Representative or access

to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-

272-1000.


/FELIX O FIGUEROA/
Primary Examiner, Art Unit 2833

| | Notice of References Cited | Application/Control No.<br>16/988,045 | Applicant(s)/Patent Under Reexamination<br>Galazin, Tony Matthew | |
|---|---|---|---|---|
| | | Examiner<br>FELIX O FIGUEROA | Art Unit<br>2833 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-9965007-B2 | 05-2018 | Amelio; Alfonso | G06F1/1632 | 1/1 |
| * | B | US-20150129722-A1 | 05-2015 | GREEN; Philip | H02J7/0044 | 248/51 |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (03-15)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 16988045 |
| Filing Date | 2020-08-07 |
| First Named Inventor | Galazin |
| Art Unit | 2833 |
| Examiner Name | |
| Attorney Docket Number | 48071-00003 |

## U.S.PATENTS     Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 6004138 | | 1999-12-21 | HARBERTSON | |
| | 2 | 7220128 | | 2007-05-22 | HICKS | |

If you wish to add additional U.S. Patent citation information please click the Add button.    Add

## U.S.PATENT APPLICATION PUBLICATIONS     Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.    Add

## FOREIGN PATENT DOCUMENTS     Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | WO2019/162691 | WO | | 2019-08-29 | TSANG | | |

If you wish to add additional Foreign Patent Document citation information please click the Add button    Add

## NON-PATENT LITERATURE DOCUMENTS     Remove

EFS Web 2.1.17

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /F.O.F/

Case 2:26-cv-00414-CB    Document 60-2    Filed 06/16/26    Page 190 of 854

| | | | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | 16988045 | |
| | Filing Date | 2020-08-07 | |
| | First Named Inventor | Galazin | |
| | Art Unit | 2833 | |
| | Examiner Name | | |
| | Attorney Docket Number | 48071-00003 | |

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| | 1 | | |

If you wish to add additional non-patent literature document citation information please click the Add button | **Add**

### EXAMINER SIGNATURE

| Examiner Signature | /FELIX O FIGUEROA/ | Date Considered | 09/09/2020 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.17

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /F.O.F/

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 16988045 |
| Filing Date | 2020-08-07 |
| First Named Inventor | Galazin |
| Art Unit | 2833 |
| Examiner Name | |
| Attorney Docket Number | 48071-00003 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

See attached certification statement.

The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Todd A. Benni/ | Date (YYYY-MM-DD) | 2020-08-24 |
|---|---|---|---|
| Name/Print | Todd A. Benni | Registration Number | 42313 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.17

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /F.O.F/

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /F.O.F/

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L2 | 10 | (US-20170346244-$).did. or (US-6004138-$ or US-4553798-$ or US-7220128-$ or US-10186792-$ or US-5957701-$ or US-4148544-$ or US-8469730-$ or US-8011930-$ or US-4245873-$).did. | US-PGPUB; USPAT | OR | OFF | 2020/09/09 15:22 |
| L3 | 2 | l2 and adhesive | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2020/09/09 15:23 |
| L4 | 18 | h01R$.cpc. and (interchangeable with faceplate) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2020/09/09 15:44 |
| L5 | 249 | h01R$.cpc. and (outlet with (extender extension)) and usb | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2020/09/09 15:44 |
| L6 | 20 | h01R$.cpc. and (outlet with (extender extension)) and cradle | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2020/09/09 15:52 |
| L7 | 67 | h01R$.cpc. and (outlet with (extender extension)) and shelf | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2020/09/09 16:11 |
| L8 | 2,813 | h01R$.cpc. and (outlet and (shelf cradle holder)) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2020/09/09 16:12 |
| S1 | 0 | (Galazin with Tony with Matthew).in. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2020/09/09 10:30 |

**EAST Search History (Interference)**

&lt;This search history is empty&gt;

9/9/2020 4:40:08 PM
C:\Users\ffigueroa\Documents\EAST\Workspaces\16988045.wsp

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PATENT APPLICATION FEE DETERMINATION RECORD** Substitute for Form PTO-875 | Application or Docket Number 16/988,045 | Filing Date 08/07/2020 | ☐To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE    ☐ SMALL    ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | x $100 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | x $460 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| AMENDMENT 12/14/2020 | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * 18 | Minus | ** 20 | = 0 | x $100 = | 0 |
| Independent (37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | x $480 = | 0 |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | TOTAL ADD'L FEE | 0 |

| AMENDMENT | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | TOTAL ADD'L FEE | |

| | |
|---|---|
| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | SLIE |
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /APRIL L. WALKER/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Patent Application

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re application: | Tony Matthew Galazin | Group Art Unit: | 2833 |
| Serial No.: | 16/988,045 | Examiner: | Figuero, Felix O. |
| Filing Date: | August 7, 2020 | Docket No.: | 48071-00003 |
| | | Confirmation No.: | 4753 |

Title:   WALL MOUNTING OUTLET EXTENDER

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

## RESPONSE TO NON-FINAL OFFICE ACTION

Dear Examiner Figuero:

Applicant acknowledges receipt of the Non-Final Office Action with a notification date of September 14, 2020, setting a shortened statutory period of reply of three months. As this Response is being filed electronically on December 14, 2020, Applicant believes no additional fees are due. However, if any fees are required for filing this Response, please charge such fees to our Deposit Account No. 13-0265 identifying attorney docket no. 48071-00003.

Applicant respectfully requests that the Patent Office consider the following Amendments and Remarks in examining the present application.

{9255287: }                                        1

**CLAIMS**

The following listing of the claims replaces all prior versions, and listings, of the claims in the present application.

1.    (Currently Amended) A wall outlet extender ~~that extends a wall outlet to a new position on a wall,~~ comprising:

a plug end configured to selectively plug into [[the]] a wall outlet,

an outlet end configured to selectively receive one or more plugs, wherein the outlet end comprises an interchangeable decorative faceplate, and

an extendable shaft positioned between the plug end and the outlet end,

wherein ~~the wall outlet extender is rotatable about~~ the plug end is rotatable.

2.    (Currently Amended) The wall outlet extender of claim 1, wherein the extendable shaft includes two or more [[or]] telescoping portions.

3.    (Original) The wall outlet extender of claim 2, wherein the extendable shaft includes a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter is larger than the second diameter.

4.    (Original) The wall outlet extender of claim 3, wherein the first telescoping portion is configured to internally receive the second telescoping portion in a retracted position.

5.    (Original) The wall outlet extender of claim 4, wherein the extendable shaft is extendable from about 21 inches to about 34 inches.

6.    (Original) The wall outlet extender of claim 1, wherein the plug end is rotatable about 360°.

7.    (Currently Amended) The wall outlet extender of claim 1 further ~~including~~ comprising an

{9255287: }                                2

engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall.

8.      (Original) The wall outlet extender of claim 7, wherein the engagement portion comprises a non-permanent adhesive, removable putty, or stickable surface.

9.      (Original) The wall outlet extender of claim 8, wherein the engagement portion is free from any attachment to the wall that traverses or damages the wall surface.

10.     (Original) The wall outlet extender of claim 1, wherein the outlet end includes an even number of outlets and at least one USB port.

11.     (Canceled)

12.     (Currently Amended) The wall outlet extender of claim 1, wherein the outlet end ~~includes~~ comprises a device cradle configured to hold a device while the device is plugged into the outlet end.

13.     (Currently Amended) The wall outlet extender of claim 1, wherein the wall outlet extender ~~includes~~ comprises Bluetooth or Wi-Fi connectivity capabilities.

14.     (Currently Amended) An extendable power outlet adaptor, comprising:

a plug selectively configured to insert into a wall outlet,

a shaft that is telescopic and that is rotatable about the plug up to 360°, and

one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall ~~adjacent to the wall outlet~~

an interchangeable decorative faceplate selectively attached with the one or more outlet receptacles.

15.    (Currently Amended) The extendable power outlet adaptor of claim 14, wherein the one or more outlet receptacles are attachable to the wall by temporary adhesive, putty, or stickable surface.

16.    (Currently Amended) The extendable power outlet adaptor of claim 15, wherein the one or more outlet receptacles are ~~extendable power outlet adaptor is~~ free from any attachment to the wall that traverses or damages the wall surface.

17.    (Currently Amended) The extendable power outlet adaptor of claim 14, wherein the one or more outlet receptacles ~~extendable power outlet adaptor~~ may be removed and repositioned onto the wall.

18.    (New) The wall outlet extender of claim 1 further comprising an electrical cord portion positioned between the extendable shaft and the plug end.

19.    (New) The extendable power adaptor of claim 14 further comprising an electrical cord portion positioned between the shaft and the plug.

## REMARKS

The September 14, 2020 Non-Final Office Action identifies the following issues:

- The drawings stand objected to as failing to comply with 37 CFR 1.84(m) as including shading that reduces legibility.
- The specification stands objected to – specifically the Abstract stands objected to for not complying with the applicable requirements and the Specification is objected to as containing acronyms.
- Claim 2 stands objected to for certain informalities.
- Claims 1-4, 6, 13 and 14 stand rejected under 35 U.S.C. §102(a)(1) as being anticipated by U.S. Patent No. 6,004,138 to Harbertson.
- Claim 5 stands rejected under 35 U.S.C. §103 as being unpatentable over Harbertson.
- Claims 7-9 and 15-17 stand rejected under 35 U.S.C. §103 as being unpatentable over Harbertson in view of U.S. Patent No. 7,220,128 to Hicks.
- Claims 10-11 stand rejected under 35 U.S.C. §103 as being unpatentable over Harbertson in view of U.S. Patent No. 9,965,007 to Amelio.
- Claim 12 stands rejected under 35 U.S.C. §103 as being unpatentable over Harbertson in view of U.S. Patent Application No. 20150129722 to Green.

The following remarks address each of these issues and place the present application in condition for allowance.

**Drawings**

Applicant has included with this response 12 sheets of amended drawings to address the issues identified in the office action. Application respectfully requests, therefore, withdrawal of the rejection of the drawings and requests indication of acceptance of the drawings.

**Specification**

Applicant amended the Abstract consistent with the direction provided in the office action. Applicant, therefore, respectfully requests withdrawal of the rejection and requests indication of acceptance of the Abstract.

{9255287: }                                          8

Applicant further amended paragraphs 8 and 34 to clarify the acronyms used therein. Applicant respectfully requests that in view of the amendments that the objection to the Specification be withdrawn and that the Specification be indicated as accepted.

## Claim 2 – Objection

Applicant amended claim 2 to correct the informality identified therein. Applicant, therefore, respectfully requests withdrawal of the objection and requests an indication of allowance of claim 2.

## §102 Rejection

Applicant amended claims 1 and 14 as indicated above. Applicant respectfully contends that no new matter has been added by way of this amendment and that support for such may be found in the specification and drawings as originally filed, including, without limitation in paragraph [0037].

Applicant respectfully contends that Harbertson fails to disclose wherein the outlet end comprises an interchangeable decorative faceplate. The office action at page 6 indicates that Harbertson doesn't disclose an interchangeable faceplate. The office action at page 6 instead argues that Amelio discloses a faceplate. Amelio, however, fails to disclose the outlet end comprising an interchangeable decorative faceplate. Instead, Amelio discloses in paragraph 95 that the faceplate 170 utilized depends on the configuration of the front panel 120 on to which it's attached. Specifically, Amelio states in paragraph 95 that "The arrangement of these apertures depends on the location's electric system to receive different types of electric plugs with different

pin arrangements." Accordingly, Applicant respectfully contends that claim 1 is, therefore, allowable and requests indication of such.

Applicant amended claim 13 as indicated above to better clarify the claim presented. Applicant respectfully contends that no new matter has been added by way of this claim amendment and that support for such may be found in the specification and drawings as originally filed. Further, as claims 2-4, 6 and 13 depend from claim 1 and include additional limitations, Applicant incorporates the argument above regarding claim 1 being allowable. Applicant, therefore, respectfully contends that claims 2-4, 6 and 13 are allowable and requests indication of such.

Applicant respectfully contends that claim 14 is allowable over Harbertson. Specifically, similar arguments apply *mutatis mutandis* to claim 14 as presented above regarding claim 1. For at least this reason, therefore, Applicant respectfully contends that claim 9 is allowable and requests indication of such

**Claim 5 - §103 Rejection**

As claim 5 depends from claim 1 and includes additional limitations, Applicant incorporates the argument above regarding claim 1 being allowable. Applicant, therefore, respectfully contends that claim 5 is allowable and requests indication of such.

### Claims 7-9 - §103 Rejection

Applicant amended claim 7 as indicated above to better clarify the claim presented. Applicant respectfully contends that no new matter has been added by way of this claim amendment and that support for such may be found in the specification and drawings as originally filed. Further, as claims 7-9 depend from claim 1 and include additional limitations, Applicant incorporates the argument above regarding claim 1 being allowable over Harbertson. Applicant further contends that Hicks fails to remedy the deficiencies noted above. For at least this reason, therefore, Applicant respectfully contends that claims 7-9 are allowable and requests indication of such.

### Claims 15-17 - §103 Rejection

Applicant amended claims 15-17 as indicated above to better clarify the claims presented. Applicant respectfully contends that no new matter has been added by way of these claim amendments and that support for such may be found in the specification and drawings as originally filed. Further, as claims 15-17 depend from claim 14 and include additional limitations, Applicant incorporates the argument above regarding claim 14 being allowable over Harbertson. Applicant further contends that Hicks fails to remedy the deficiencies noted above. For at least this reason, therefore, Applicant respectfully contends that claims 15-17 are allowable and requests indication of such.

### Claim 10-11 - §103 Rejection

Applicant canceled claim 11 without prejudice. Applicant, therefore, respectfully contends that the rejection thereof is moot and respectfully requests withdrawal thereof. As claim 10 depends from claim 1 and includes additional limitations, Applicant incorporates the argument above regarding claim 1 being allowable over Harbertson. Applicant further contends that Amelio fails to remedy the deficiencies noted above. For at least this reason, therefore, Applicant respectfully contends that claim 10 is allowable and requests indication of such.

**Claim 12 - §103 Rejection**

Applicant amended claim 12 as indicated above to better clarify the claim presented. Applicant respectfully contends that no new matter has been added by way of this claim amendment and that support for such may be found in the specification and drawings as originally filed. Further, as claim 12 depends from claim 1 and includes additional limitations, Applicant incorporates the argument above regarding claim 1 being allowable over Harbertson. Applicant further contends that Green fails to remedy the deficiencies noted above. For at least this reason, therefore, Applicant respectfully contends that claim 12 is allowable and requests indication of such.

**New Claims 18-19**

Applicant added claims 18 and 19 as indicated above. Applicant respectfully contends that no new matter has been added by way of these additional claims and that support for the additional claims may be found in the specification as originally filed, including, without limitation, within paragraph 45 of the specification. As claim 18 depends from claim 1 and claim 19 depends from claim 14, respectively, Applicant incorporates the arguments above regarding claims 1 and 14 being allowable. Applicant, therefore, respectfully contends that claims 18 and 19 are allowable and requests indication of such.

## **CONCLUSION**

In light of the foregoing, Applicant submits that the application is now in condition for allowance and earnestly request indication of such. If the Examiner has any questions pertaining to the above, then the undersigned attorney would welcome a phone call to provide any further clarification or a formal interview.

Respectfully submitted,

Date:  December 14, 2020

/Todd A. Benni/
Todd A. Benni - Reg. No. 42,313
McDonald Hopkins LLC
600 Superior Avenue, E.
Suite 2100
Cleveland, OH 44114-2653
(216) 348-5712

{9255287: }                    13

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



FIG. 1A                    FIG. 1B

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 2A**

**FIG. 2B**



**100**

120

132

130

134

110

**FIG. 2C**

**100**

120

132

130

102

104    134

110

**FIG. 2D**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 3A**

**FIG. 3B**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



FIG. 4B



FIG. 4A

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 5**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



FIG. 6A

FIG. 6C

FIG. 6B

FIG. 6D

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 7**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 8**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 9**



FIG. 10A

FIG. 10B

242



**FIG. 11A**

242



**FIG. 11B**

242



**FIG. 11C**

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 41370717 |
| **Application Number:** | 16988045 |
| **International Application Number:** | |
| **Confirmation Number:** | 4753 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Danielle Mueller |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00003 |
| **Receipt Date:** | 14-DEC-2020 |
| **Filing Date:** | 07-AUG-2020 |
| **Time Stamp:** | 09:17:39 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 9275857.pdf | 182160<br><br>fc5ffd86bda6442d9358d18933b95d509f88e068 | yes | 13 |

## Multipart Description/PDF files in .zip description

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 4 |
| Specification | 5 | 7 |
| Applicant Arguments/Remarks Made in an Amendment | 8 | 13 |

**Warnings:**

**Information:**

| 2 | Drawings-only black and white line drawings | 9275849.pdf | 273322 <br> 031a53fabc2035dbfe0552ebf5e5e219d4bf b2a9 | no | 12 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 455482 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

ABSTRACT

Please amend the Abstract as indicated below.

~~Provided is a~~ A wall power outlet extender ~~that~~ may be positioned ~~or mounted~~ on a wall and ~~that~~ may relocate the wall power outlet to a different position ~~on the wall~~ without requiring electrical work or professional installation ~~and without cluttering adjacent surfaces~~. The wall power outlet extender may be positionable along a surface of a wall adjacent to a wall power outlet and may allow a user to semi-permanently relocate the wall power outlet. The wall power outlet extender may be made fixed ~~and stationary~~ at a particular position and relatively unmovable unless ~~acted on or~~ repositioned by a user. The wall power outlet extender may be selectively rotatable and/or telescopic, and include a spinning or ambidextrous plug, to be adaptable to the specific location and to provide a myriad of different positions in which the new outlet may be placed. The wall power outlet extender may feature multiple outlets, USB ports, and surge protection, as well as Bluetooth and wireless capabilities.

SPECIFICATION

Please amend the Specification as indicated below.

[0008]  The wall outlet extender may also include any of the foregoing, which may be combined in any manner without departing from the present teachings. In an embodiment, the extendable shaft may include two more or telescoping portions. The extendable shaft may include a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter may be larger than the second diameter. The first telescoping portion may be configured to internally receive the second telescoping portion in a retracted position. In an embodiment, the extendable shaft may be extendable from about 21 inches to about 34 inches. In an embodiment, the plug end may be rotatable about 360°. In an embodiment, the wall outlet extender may further include an engagement portion. The engagement portion may be positioned on a wall-facing side of the outlet end and may be configured to selectively engage the wall. The engagement portion may comprise a non-permanent adhesive, removable putty, or stickable surface. The engagement portion may be free from any attachment to the wall that traverses or damages the wall surface. In an embodiment, the outlet end may include an even number of outlets and at least one universal serial bus ("USB") port. In an embodiment, the outlet end may include interchangeable faceplates. In an embodiment, the outlet end may include a device cradle configured to hold a device while the device is plugged into the outlet end. In an embodiment, the wall outlet extender may include Bluetooth or Wi-Fi connectivity capabilities.


[0034] The outlets or female receptacles 122, 124 may be placed on an opposite side from the plugs or male contacts 112, or on a front or room-facing side 104 of the outlet extender 100. As a result, the plugs or male contacts 112 may be plugged into a wall outlet and the outlets or female receptacles 122, 124 may face the room to be accessible to receive other plugs, see FIG. 4A. The outlets or female receptacles 122, 124 may be of any orientation and fitted to connect with any

{9255287: }                                6

type of plug, including plugs for household items, appliances (such as electrical dryers), industrial or commercial devices or machinery, electrically powered items, and plugs that are used in any country, such as the U.S., Europe, Asia, Australia, etc. Although the drawings generally depict a three-prong AC plug and outlets as used in the U.S., it is noted that any plug and outlets may be incorporated into the outlet extender design. In some embodiments, the plug and outlet may be of a similar configuration or they may be of a different configuration such that the outlet extender 100 can act as an adapter to change the outlet from a first configuration to a second configuration (e.g. a U.S. plug and European receptacles or vice versa). In an embodiment, the plug end 110 and the outlet end 120 may include mating plugs and outlets, or the plug end 110 and the outlet end 120 may include plug and outlet types that are different. The plug end 100 may comprise Type A, B, C, D, E, F, G, H, I, J, K, L, M, N and O International Electrotechnical Commission ("IEC") plug ends that are utilized throughout the world. Further the plug end 100 may comprise a 120 volt end, 240 volt end or a combination of the foregoing.

U NITED S TATES P ATENT AND T RADEMARK O FFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/988,045 | 08/07/2020 | Tony Matthew Galazin | 48071-00003 | 4753 |

33772      7590      01/08/2021
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| EXAMINER |
|---|
| FIGUEROA, FELIX O |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2833 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 01/08/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ipmailbox@mcdonaldhopkins.com

PTOL-90A (Rev. 04/07)

| **Office Action Summary** | **Application No.**<br>16/988,045 | | **Applicant(s)**<br>Galazin, Tony Matthew | |
|---|---|---|---|---|
| | **Examiner**<br>FELIX O FIGUEROA | | **Art Unit**<br>2833 | **AIA (FITF) Status**<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
   Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☑ Responsive to communication(s) filed on 14 December 2020.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☑ This action is **FINAL.**   2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) 1-19 is/are pending in the application.
   5a) Of the above claim(s) 18-19 is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) 1-10 and 12-17 is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☑ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☑ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
      a)☐ All   b)☐ Some**   c)☐ None of the:
         1.☐ Certified copies of the priority documents have been received.
         2.☐ Certified copies of the priority documents have been received in Application No. _____.
         3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 11-13)        Office Action Summary        Part of Paper No./Mail Date 20210104

Application/Control Number: 16/988,045                                                                Page 2
Art Unit: 2833

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Election/Restrictions*

Newly submitted claims 18 and 19 are directed to an invention that is independent or distinct from the invention originally claimed for the following reasons: Claims 18 and 19 are directed to a different species not previously presented. Additionally, please note that the electrical cord is not shown in the drawings.

Since applicant has received an action on the merits for the originally presented invention, this invention has been constructively elected by original presentation for prosecution on the merits. Accordingly, claims 18 and 19 are withdrawn from consideration as being directed to a non-elected invention. See 37 CFR 1.142(b) and MPEP § 821.03.

### *Drawings*

The drawings are objected to under 37 CFR 1.84(h)&(i) because all views must be clearly separated from one another and one view must not be placed upon another or within the outline of another. Figures 3A and 3B should not share parts. Please note that if one of these figures were selected to be printed individually, it would be uncertain which figure should include the arrow.

Additionally, the drawings are objected to under 37 CFR 1.84(h)(3) because section lines in drawings should refer to the view number of the sectional view where it is shown. Figure 3A should have section line 3B–3B. Correction is required.

The drawings are objected to under 37 CFR 1.84(h)(1). When an exploded view is shown in a figure which is on the same sheet as another figure, the exploded view should be placed in brackets. See Figure 10B.

Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office action to avoid abandonment of the application. Any amended replacement drawing sheet should include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is being amended. The figure or figure number of an amended drawing should not be labeled as "amended." If a drawing figure is to be canceled, the appropriate figure must be removed from the replacement sheet, and where necessary, the remaining figures must be renumbered and appropriate changes made to the brief description of the several views of the drawings for consistency. Additional replacement sheets may be necessary to show the renumbering of the remaining figures. Each drawing sheet submitted after the filing date of an application must be labeled in the top margin as either "Replacement Sheet" or "New Sheet" pursuant to 37 CFR 1.121(d). If the changes are not accepted by the examiner, the applicant will be notified and informed of any required corrective action in the next Office action. The objection to the drawings will not be held in abeyance.

Application/Control Number: 16/988,045                                            Page 4
Art Unit: 2833

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

Claims 1-6, 10 13, and 14 are rejected under 35 U.S.C. 103 as being

unpatentable over Harbertson (US 6,004,138) in view of Amelio et al. (US 9,965,007).

Harbertson discloses a wall outlet extender, comprising: a plug end (12)

configured to selectively plug into a wall outlet, an outlet end (72) configured to

selectively receive one or more plugs, and an extendable shaft (14, 16) positioned

between the plug end and the outlet end, wherein the plug end is rotatable (plug 12 is

rotatable within socket 32).

Amelio teaches (in Fig. 5) an outlet end comprising an interchangeable

decorative faceplate (170). It would have been obvious to one having ordinary skill in

the art before the invention was effectively filed to use a faceplate, as taught by Amelio,

in order to provide the desired look and accessibility.

Regarding claim 2, Harbertson discloses the extendable shaft including two or

more telescoping portions (14, 16).

Regarding claim 3, Harbertson discloses the extendable shaft including a first

telescoping portion (14) having a first diameter and a second telescoping portion (16)

having a second diameter, wherein the first diameter is larger than the second

diameter.

Regarding claim 4, Harbertson discloses the first telescoping portion is configured to internally receive the second telescoping portion in a retracted position.

Regarding claim 5, to the extent that Harbertson does not disclose the extendable shaft being extendable from about 21 inches to about 34 inches, it would have been an obvious matter of design preference to one skilled in the art before the invention was effectively filed to define the extendable length range in order to accommodate the desire space, and since such modification would have involved a mere change in the size of a component. A change in size is recognized as being within the level of ordinary skill in the art. *In re rose, 105 USPQ 237 (CCPA 1955)*.

Regarding claim 6, Harbertson discloses the plug end being rotatable about 360 degrees.

Regarding claim 10, Amelio teaches an outlet end including an even number of outlets and at least one USB port. It would have been obvious to one having ordinary skill in the art before the invention was effectively filed to provide outlets and USB ports, as taught by Amelio, in order to provide the desire connection interfaces.

Regarding claim 13, Harbertson discloses the wall outlet extender comprises Bluetooth or Wi-Fi connectivity capabilities (i.e. such devices can be connected to the extender).

Regarding claim 14, Harbertson discloses an extendable power outlet adaptor, comprising: a plug (12) selectively configured to insert into a wall outlet, a shaft that is telescopic and that is rotatable about the plug up to 360 degrees, and one or more

Application/Control Number: 16/988,045                                                  Page 6
Art Unit: 2833

outlet receptacles (86, 88) connected to the shaft that are selectively attachable to a position on a wall.

Amelio teaches (in Fig. 5) an interchangeable decorative faceplate (170) selectively attached with the one or more outlet receptacles (at 120). It would have been obvious to one having ordinary skill in the art before the invention was effectively filed to use a faceplate, as taught by Amelio, in order to provide the desired look and accessibility.

Claims 7-9, and 15-17 are rejected under 35 U.S.C. 103 as being unpatentable over Harbertson and Amelio, and further in view of Hicks (US 7,220,128).

Regarding claim 7, Hicks teaches the use of an engagement portion (38), wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall.

Regarding claim 8, Hicks teaches the engagement portion comprises a non-permanent adhesive, removable putty, or stickable surface.

Regarding claim 9, Hicks teaches the engagement portion is free from any attachment to the wall that traverses or damages the wall surface.

It would have been obvious to one having ordinary skill in the art before the invention was effectively filed to use a non-permanent adhesive, as taught by Hicks, in order to removably secure the outlet end.

Regarding claim 15, Hicks teaches the one or more outlet receptacles being attachable to the wall by temporary adhesive, putty, or stickable surface.

Regarding claim 16, Hicks teaches the one or more outlet receptacles being free from any attachment to the wall that traverses or damages the wall surface.

Regarding claim 17, Hicks teaches that the one or more outlet receptacles may be removed and repositioned onto the wall.

Claim 12 is rejected under 35 U.S.C. 103 as being unpatentable over Harbertson and Amelio, and further in view of Green (US 2015/0129722).

Green teaches the use of an outlet end including a device cradle (1, 2) configured to hold a device while the device is plugged into the outlet end. It would have been obvious to one having ordinary skill in the art before the invention was effectively filed to use a device cradle, as taught by Green, in order to hold a connected device.

### Response to Arguments

Applicant's arguments with respect to the claims have been considered but are moot in view of the new grounds of rejection, as applied.

### Conclusion

Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP

Application/Control Number: 16/988,045                                    Page 8
Art Unit: 2833

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to FELIX O FIGUEROA whose telephone number is

(571)272-2003.  The examiner can normally be reached on M-F 9am-6pm.

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Renee Luebke can be reached on 571-272-2009.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Application/Control Number: 16/988,045                                             Page 9
Art Unit: 2833

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see https://ppair-

my.uspto.gov/pair/PrivatePair.  Should you have questions on access to the Private

PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

If you would like assistance from a USPTO Customer Service Representative or access

to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-

272-1000.


/FELIX O FIGUEROA/
Primary Examiner, Art Unit 2833

**Patent Application**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re application: | Tony Matthew Galazin | Group Art Unit: | 2833 |
| Serial No.: | 16/988,045 | Examiner: | Figuero, Felix O. |
| Filing Date: | August 7, 2020 | Docket No.: | 48071-00003 |
| | | Confirmation No.: | 4753 |

Title:   WALL MOUNTING OUTLET EXTENDER

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

## RESPONSE TO FINAL OFFICE ACTION

Dear Examiner Figuero:

Applicant acknowledges receipt of the Final Office Action with a notification date of January 8, 2021, setting a shortened statutory period of reply of three months. As this Response is being filed electronically on March 30, 2021, Applicant believes no additional fees are due. However, if any fees are required for filing this Response, please charge such fees to our Deposit Account No. 13-0265 identifying attorney docket no. 48071-00003.

Applicant respectfully requests that the Patent Office consider the following Amendments and Remarks in examining the present application.

{9486861: }                                    1

## CLAIMS

The following listing of the claims replaces all prior versions, and listings, of the claims in the present application.

1.    (Previously Presented) A wall outlet extender comprising:

a plug end configured to selectively plug into a wall outlet,

an outlet end configured to selectively receive one or more plugs, wherein the outlet end comprises an interchangeable decorative faceplate, and

an extendable shaft positioned between the plug end and the outlet end,

wherein the plug end is rotatable.

2.    (Previously Presented) The wall outlet extender of claim 1, wherein the extendable shaft includes two or more telescoping portions.

3.    (Original) The wall outlet extender of claim 2, wherein the extendable shaft includes a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter is larger than the second diameter.

4.    (Original) The wall outlet extender of claim 3, wherein the first telescoping portion is configured to internally receive the second telescoping portion in a retracted position.

5.    (Original) The wall outlet extender of claim 4, wherein the extendable shaft is extendable from about 21 inches to about 34 inches.

6.    (Original) The wall outlet extender of claim 1, wherein the plug end is rotatable about 360°.

7.    (Previously Presented) The wall outlet extender of claim 1 further comprising an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the

outlet end and is configured to selectively engage the wall.

8.    (Original) The wall outlet extender of claim 7, wherein the engagement portion comprises a non-permanent adhesive, removable putty, or stickable surface.

9.    (Original) The wall outlet extender of claim 8, wherein the engagement portion is free from any attachment to the wall that traverses or damages the wall surface.

10.    (Original) The wall outlet extender of claim 1, wherein the outlet end includes an even number of outlets and at least one USB port.

11.    (Canceled)

12.    (Previously Presented) The wall outlet extender of claim 1, wherein the outlet end comprises a device cradle configured to hold a device while the device is plugged into the outlet end.

13.    (Previously Presented) The wall outlet extender of claim 1, wherein the wall outlet extender comprises Bluetooth or Wi-Fi connectivity capabilities.

14.    (Currently Amended) An extendable power outlet adaptor, comprising:

a plug selectively configured to insert into a wall outlet,

a shaft that is telescopic and that is rotatable about the plug up to 360°, ~~and~~

one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall; and

a tamper preventer, wherein the tamper preventer comprises one or more springs that prevent full entry into the one or more outlet receptacles unless each of the one or more springs are compressed at a same time ~~an interchangeable decorative faceplate selectively attached with~~

~~the one or more outlet receptacles~~.

15.    (Previously Presented) The extendable power outlet adaptor of claim 14, wherein the one or more outlet receptacles are attachable to the wall by temporary adhesive, putty, or stickable surface.

16.    (Previously Presented) The extendable power outlet adaptor of claim 15, wherein the one or more outlet receptacles are free from any attachment to the wall that traverses or damages the wall surface.

17.    (Previously Presented) The extendable power outlet adaptor of claim 14, wherein the one or more outlet receptacles may be removed and repositioned onto the wall.

18.    (Withdrawn) The wall outlet extender of claim 1 further comprising an electrical cord portion positioned between the extendable shaft and the plug end.

19.    (Canceled)

20.    (New) The wall outlet extender of claim 1, wherein the outlet end comprises at least one outlet comprising a tamper preventer.

21.    (New) The wall outlet extender of claim 20, wherein the tamper preventer comprises one or more springs that prevent full entry into the at least one outlet unless each of the one or more springs are compressed at a same time.

## REMARKS

The January 8, 2021 Final Office Action identifies the following issues:

- Claims 18 and 19 are deemed withdrawn from consideration as being directed to a non-elected invention.
- The drawings stand objected to as failing to comply with 37 CFR 1.84(h) and (i) because all views must be clearly separated from one view and must not be placed upon another or within the outline of another.
- Claims 1-6, 10, 13 and 14 stand rejected under 35 U.S.C. §103 as being unpatentable over U.S. Patent No. 6,004,138 to Harbertson in view of U.S. Patent No. 9,965,007 to Amelio.
- Claims 7-9 and 15-17 stand rejected under 35 U.S.C. §103 as being unpatentable over Harbertson and Amelio in view of U.S. Patent No. 7,220,128 to Hicks.
- Claim 12 stands rejected under 35 U.S.C. §103 as being unpatentable over Harbertson and Amelio in view of U.S. Patent Application No. 20150129722 to Green.

The following remarks address each of these issues and place the present application in condition for allowance.

## Drawings

Applicant has included with this response 12 sheets of amended drawings to address the issues identified in the office action. Application respectfully requests, therefore, withdrawal of the rejection of the drawings and requests indication of acceptance of the drawings.

## §103 Rejection

Applicant respectfully contends that the combination of Harbertson and Amelio fail to disclose, teach or suggest wherein the outlet end comprises an interchangeable decorative faceplate. The office action argues that Amelio discloses a faceplate. Amelio, however, fails to disclose the outlet end comprising an interchangeable decorative faceplate as is recited in claim 1. Instead, Amelio discloses in paragraph 95 that the faceplate 170 utilized depends on the

{9486861: }                              5

configuration of the front panel 120 on to which it is attached. Specifically, Amelio states in paragraph 95 that "The arrangement of these apertures depends on the location's electric system to receive different types of electric plugs with different pin arrangements." The faceplates 170, therefore, in Amelio is not a decorative faceplate as is recited in claim 1 but instead is a functional faceplate. Accordingly, Applicant respectfully contends that claim 1 is, therefore, allowable and requests indication of such.

As claims 2-6, 10 and 13 depend from claim 1 and include additional limitations, Applicant incorporates the argument above regarding claim 1 being allowable. Applicant, therefore, respectfully contends that claims 2-6, 10 and 13 are allowable and requests indication of such.

Applicant amended claim 14 as indicated above. Applicant respectfully contends that no new matter has been added by way of these claim amendments and that support for the claim amendment may be found in the specification, including, without limitation, within paragraph 55. Applicant respectfully contends that claim 14 is allowable over Harbertson on view of Amelio. Specifically, neither of Harbertson nor Amelio disclose anything regarding a tamper preventer as is recited in claim 1. For at least this reason, therefore, Applicant respectfully contends that claim 14 is allowable and requests indication of such.

Further still, Applicant respectfully submits that Amelio does not qualify as prior art under § 103 as it is non-analogous art to claims 1-6, 10, 13 and 14.

The Office may only rely on analogous art to support an obviousness rejection. And, while the scope of analogous prior art may sometimes be wide the Federal Circuit has confirmed that it is not without limit. *See In re Klein*, 647F.3d 1343 (Fed. Cir. 2011) (reversing the BPAI's judgment of obviousness after concluding that five prior art references relied upon by the BPAI were non-analogous).

Art is non-analogous unless it is: (1) from the same field of endeavor as the claimed invention; or (2) reasonably pertinent to the particular problem faced by the inventor, if the art is not from the same field of endeavor. *In re Bigio*, 381 F.3d at 1325; *In re Wood and Eversole*, 599 F.2d 1032, 1036 (CCPA 1979). In order to be "reasonably pertinent" art must "logically commend itself" to an inventor's attention in considering his/her problem. *In re Icon Health and Fitness, Inc.*, 496 F.3d 1374, 1379-80 (Fed. Cir. 2007) (citing *In re Clay*, 966 F.2d 656, 658-59 (Fed. Cir. 1992)). *See also* MPEP § 2141.01(a). Conversely, when art is directed to a different purpose than a claimed invention, an inventor would have less motivation or occasion to consider it. *See In re Clay*, 966 F. 2d at 658-59.

Amelio isn't from the same field of endeavor and is not reasonably pertinent because it (i) does not address the same problem addressed by the claimed invention, and (ii) it serves a different purpose than the extendable power outlet adaptor of the claims. Thus, Amelio wouldn't have logically commended itself to Applicant's/inventor's attention.

1)    *Not the Same Field of Endeavor*

Amelio is directed to an in-wall electrical outlet. This in-wall electrical outlet isn't the same field of endeavor as an extendable power outlet adapter. The operation and composition of the two devices are significantly different. For example, Amelio relates to an outlet that is fixedly attached in a wall. On the other hand, the extendable power outlet adapter is selectively engaged with an outlet to relocate the position of the power source. While they may seem the same, they are not. Amelio requires a professional electrician to install, whereas the present invention is intended to be installed by any user. Therefore, Amelio isn't in the same field of endeavor as the present invention covered by the claims. As such, one must determine if Amelio is reasonably pertinent to the particular problem faced by the inventor.

*2)    Not Reasonably Pertinent to the Particular Problem Faced by the Inventor*

Further, both the problem addressed by Amelio and Amelio's solution to the problem are very different than that addressed by Applicant. An inventor considering the problem of "an extendable power outlet adapter" would not have been motivated to consider Amelio because Amelio deals with an in-wall outlet that requires installation by a professional electrician. As such, one of skill in the art would not consider Amelio to be analogous art as Amelio is not reasonably related to the problems solved by the claimed invention.

Applicant, therefore, submits that claims 1-6, 10, 13 and 14are patentable over Harbertson and Amelio and requests this rejection be withdrawn.

**Claims 7-9 - §103 Rejection**

As claims 7-9 depend from claim 1 and include additional limitations, Applicant incorporates the argument above regarding claim 1 being allowable over Harbertson. Applicant further contends that Hicks fails to remedy the deficiencies noted above. For at least this reason, therefore, Applicant respectfully contends that claims 7-9 are allowable and requests indication of such.

**Claims 15-17 - §103 Rejection**

As claims 15-17 depend from claim 14 and include additional limitations, Applicant incorporates the argument above regarding claim 14 being allowable over Harbertson. Applicant further contends that Hicks fails to remedy the deficiencies noted above. For at least this reason, therefore, Applicant respectfully contends that claims 15-17 are allowable and requests indication of such.

## Claim 12 - §103 Rejection

As claim 12 depends from claim 1 and includes additional limitations, Applicant incorporates the argument above regarding claim 1 being allowable over Harbertson. Applicant further contends that Green fails to remedy the deficiencies noted above. For at least this reason, therefore, Applicant respectfully contends that claim 12 is allowable and requests indication of such.

## New Claims 20-21

Applicant added claims 20 and 21 as indicated above. Applicant respectfully contends that no new matter has been added by way of these additional claims and that support for the additional claims may be found in the specification as originally filed, including, without limitation, within paragraph 55 of the specification. As claims 20 and 21 depend from claim 1 and include additional limitations, Applicant incorporates the arguments above regarding claim 1 being allowable. Applicant, therefore, respectfully contends that 20 and 21 are allowable and requests indication of such.

## CONCLUSION

In light of the foregoing, Applicant submits that the application is now in condition for allowance and earnestly request indication of such. If the Examiner has any questions pertaining to the above, then the undersigned attorney would welcome a phone call to provide any further clarification or a formal interview.

Respectfully submitted,

Date:  March 30, 2021

/Todd A. Benni/
Todd A. Benni - Reg. No. 42,313
McDonald Hopkins LLC
600 Superior Avenue, E.
Suite 2100
Cleveland, OH 44114-2653
(216) 348-5712

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 1A**

**FIG. 1B**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 2A**

**FIG. 2B**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 2C**          **FIG. 2D**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 3A**

**FIG. 3B**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



FIG. 4B



FIG. 4A

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 5**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



FIG. 6A

FIG. 6B

FIG. 6C

FIG. 6D

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 7**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 8**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 9**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin



**FIG. 10A**

**FIG. 10B**

REPLACEMENT SHEET
16/988,045
Tony Matthew Galazin

242



**FIG. 11A**

242





**FIG. 11B**

242



**FIG. 11C**

Doc Code: A.NE.AFCP
Document Description: After Final Consideration Pilot Program Request

PTO/SB/434 (12-20)

## CERTIFICATION AND REQUEST FOR CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0

| Practitioner Docket No.:<br>**48071-00003** | Application No.:<br>**16/988,045** | Filing Date:<br>**2020-08-07** |
|---|---|---|
| First Named Inventor:<br>**Tony Matthew Galazin** | Title:<br>**WALL MOUNTING OUTLET EXTENDER** | |

APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0 (AFCP 2.0) OF THE ACCOMPANYING RESPONSE UNDER 37 CFR 1.116.

1. The above-identified application is (i) an original utility, plant, or design nonprovisional application filed under 35 U.S.C. 111(a) [a continuing application (*e.g.*, a continuation or divisional application) is filed under 35 U.S.C. 111(a) and is eligible under (i)], or (ii) an international application that has entered the national stage in compliance with 35 U.S.C. 371(c).

2. The above-identified application contains an outstanding final rejection.

3. Submitted herewith is a response under 37 CFR 1.116 to the outstanding final rejection. The response includes an amendment to at least one independent claim, and the amendment does not broaden the scope of the independent claim in any aspect.

4. This certification and request for consideration under AFCP 2.0 is the only AFCP 2.0 certification and request filed in response to the outstanding final rejection.

5. Applicant is willing and available to participate in any interview requested by the examiner concerning the present response.

6. This certification and request is being filed electronically using the Office's electronic filing system (EFS-Web).

7. Any fees that would be necessary consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, extension of time fees, are being concurrently filed herewith. [There is no additional fee required to request consideration under AFCP 2.0.]

8. By filing this certification and request, applicant acknowledges the following:

- Reissue applications and reexamination proceedings are not eligible to participate in AFCP 2.0.
- The examiner will verify that the AFCP 2.0 submission is compliant, *i.e.*, that the requirements of the program have been met (see items 1 to 7 above). For compliant submissions:
    - The examiner will review the response under 37 CFR 1.116 to determine if additional search and/or consideration (i) is necessitated by the amendment and (ii) could be completed within the time allotted under AFCP 2.0. If additional search and/or consideration is required but cannot be completed within the allotted time, the examiner will process the submission consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, by mailing an advisory action.
    - If the examiner determines that the amendment does not necessitate additional search and/or consideration, or if the examiner determines that additional search and/or consideration is required and could be completed within the allotted time, then the examiner will consider whether the amendment places the application in condition for allowance (after completing the additional search and/or consideration, if required). If the examiner determines that the amendment does not place the application in condition for allowance, then the examiner will contact the applicant and request an interview.
        - The interview will be conducted by the examiner, and if the examiner does not have negotiation authority, a primary examiner and/or supervisory patent examiner will also participate.
        - If the applicant declines the interview, or if the interview cannot be scheduled within ten (10) calendar days from the date that the examiner first contacts the applicant, then the examiner will proceed consistent with current practice concerning responses after final rejection under 37 CFR 1.116.

| Signature<br>**/Todd A. Benni/** | Date<br>**2021-03-30** | Practitioner Registration No.<br>**42313** |
|---|---|---|
| Name (Print/Typed)<br>**Todd A. Benni** | Telephone Number<br>**216-348-5400** | |

*Note: This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below\*.*

✔ * Total of __1__ forms are submitted.

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 42316526 |
| **Application Number:** | 16988045 |
| **International Application Number:** | |
| **Confirmation Number:** | 4753 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Rebecca Shofar |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00003 |
| **Receipt Date:** | 30-MAR-2021 |
| **Filing Date:** | 07-AUG-2020 |
| **Time Stamp:** | 10:12:31 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| Submitted with Payment | no |
|---|---|

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 9498146.pdf | 174454<br>0819a13118fc4a58b8273976ec0ee5f1dac57172 | yes | 10 |

## Multipart Description/PDF files in .zip description

| Document Description | Start | End |
|---|---|---|
| Response After Final Action | 1 | 1 |
| Claims | 2 | 4 |
| Applicant Arguments/Remarks Made in an Amendment | 5 | 10 |

**Warnings:**

**Information:**

| 2 | Drawings-only black and white line drawings | 9497968.pdf | 5110910<br><br>064deddfa8824001934227b2263bb3b20c04a66f | no | 12 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 3 | After Final Consideration Program Request | 9498154.pdf | 232109<br><br>7012595bf5712f430935e5decd792ea6eccb3768 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 5517473 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>16/988,045 | Filing Date<br>08/07/2020 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:**  ☐ LARGE   ☑ SMALL   ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | | RATE ($) | FEE ($) |
|---|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | | x  $50 = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | | x  $230 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | 03/30/2021 | | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * 19 | Minus | ** 20 | = 0 | | x  $50 = | 0 |
| | Independent<br>(37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | | x  $240 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | | | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | | x  $0 = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | | x  $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | |

| | |
|---|---|
| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /ANGELA S WHITE/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/988,045 | 08/07/2020 | Tony Matthew Galazin | 48071-00003 | 4753 |

33772          7590          04/06/2021
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| EXAMINER |
|---|
| FIGUEROA, FELIX O |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2833 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 04/06/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ipmailbox@mcdonaldhopkins.com

PTOL-90A (Rev. 04/07)

| *Advisory Action* *Before the Filing of an Appeal Brief* | **Application No.** 16/988,045 | **Applicant(s)** Galazin, Tony Matthew | |
|---|---|---|---|
| | **Examiner** FELIX O FIGUEROA | **Art Unit** 2833 | **AIA (FITF) Status** Yes |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

THE REPLY FILED 30 March 2021 FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE.

<u>NO NOTICE OF APPEAL FILED</u>

1. ☑ The reply was filed after a final rejection. No Notice of Appeal has been filed. To avoid abandonment of this application, applicant must timely file one of the following replies: (1) an amendment, affidavit, or other evidence, which places the application in condition for allowance; (2) a Notice of Appeal (with appeal fee) in compliance with 37 CFR 41.31; or (3) a Request for Continued Examination (RCE) in compliance with 37 CFR 1.114 if this is a utility or plant application. Note that RCEs are not permitted in design applications. The reply must be filed within one of the following time periods:

    a) ☑ The period for reply expires <u>3</u> months from the mailing date of the final rejection.

    b) ☐ The period for reply expires on: (1) the mailing date of this Advisory Action; or (2) the date set forth in the final rejection, whichever is later. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection.

    c) ☐ A prior Advisory Action was mailed more than 3 months after the mailing date of the final rejection in response to a first after-final reply filed within 2 months of the mailing date of the final rejection.The current period for reply expires _____ months from the mailing date of *the prior Advisory Action* or SIX MONTHS from the mailing date of the final rejection, whichever is earlier.

        *Examiner Note*: If box 1 is checked, check either box (a), (b) or (c). ONLY CHECK BOX (b) WHEN THIS ADVISORY ACTION IS THE <u>FIRST</u> RESPONSE TO APPLICANTS <u>FIRST</u> AFTER-FINAL REPLY WHICH WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION. ONLY CHECK BOX (c) IN THE LIMITED SITUATION SET FORTH UNDER BOX (c). See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a). The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee. The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) or (c) above, if checked. Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

<u>NOTICE OF APPEAL</u>

2. ☐ The Notice of Appeal was filed on _____. A brief in compliance with 37 CFR 41.37 must be filed within two months of the date of filing the Notice of Appeal (37 CFR 41.37(a)), or any extension thereof (37 CFR 41.37(e)), to avoid dismissal of the appeal. Since a Notice of Appeal has been filed, any reply must be filed within the time period set forth in 37CFR 41.37(a).

<u>AMENDMENTS</u>

3. ☑ The proposed amendments filed after a final rejection, but prior to the date of filing a brief, will <u>not</u> be entered because

    a) ☑ They raise new issues that would require further consideration and/or search (see NOTE below);

    b) ☐ They raise the issue of new matter (see NOTE below);

    c) ☑ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or

    d) ☐ They present additional claims without canceling a corresponding number of finally rejected claims.

        NOTE: <u>See Continuation Sheet</u> (See 37CFR 1.116 and 41.33(a)).

4. ☐ The amendments are not in compliance with 37CFR 1.121. See attached Notice of Non-Compliant Amendment (PTOL-324).

5. ☐ Applicants reply has overcome the following rejection(s): _____

6. ☐ Newly proposed or amended claim(s) _____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).

7. ☑ For purposes of appeal, the proposed amendment(s):(a)☑ will not be entered, or (b)☐ will be entered, and an explanation of how the new or amended claims would be rejected is provided below or appended.

<u>AFFIDAVIT OR OTHER EVIDENCE</u>

8. ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____

9. ☐ The affidavit or other evidence filed after final action, but before or on the date of filing a Notice of Appeal will <u>not</u> be entered because applicant failed to provide a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented. See 37 CFR 1.116(e).

10. ☐ The affidavit or other evidence filed after the date of filing the Notice of Appeal, but prior to the date of filing a brief, will <u>not</u> be entered because the affidavit or other evidence failed to overcome <u>all</u> rejections under appeal and/or appellant fails to provide a showing of good and sufficient reasons why it is necessary and was not earlier presented. See 37 CFR 41.33(d)(1).

11. ☐ The affidavit or other evidence is entered. An explanation of the status of the claims after entry is below or attached.

<u>REQUEST FOR RECONSIDERATION/OTHER</u>

12. ☑ The request for reconsideration has been considered but does NOT place the application in condition for allowance because: <u>See Continuation Sheet</u>.

13. ☐ Note the attached Information *Disclosure Statement*(s). (PTO/SB/08) Paper No(s). _____

14. ☑ Other: <u>PTOL-2323</u>.

<u>STATUS OF CLAIMS</u>

15. The status of the claim(s) is (or will be) as follows:
    Claim(s) allowed:_____.
    Claim(s) objected to:_____.
    Claim(s) rejected:<u>1-10 and 12-17</u>.
    Claim(s) withdrawn from consideration:<u>18-19</u>.

/FELIX O FIGUEROA/
Primary Examiner, Art Unit 2833

**Continuation Sheet (PTOL-303)**                    **Application No.** 16/988,045

Continuation of 3. NOTE: The proposed amendment to claim 14 does not place the application in condition for allowance, but creates an issue of election by original presentation. The claims as originally file are directed to an outlet extender (a sub-combination). Newly amended claim 14 is drawn to the combination of an outlet extender and a tamper preventer. This combination would have been subjected to a restriction requirement from the sub-combination if originally presented.

Continuation of REQUEST FOR RECONSIDERATION/OTHER 12. The request for reconsideration has been considered but does NOT place the application in condition for allowance because: The arguments presented with respect to claim 1 are not persuasive. Please note that a faceplate by nature is a decorative device as it is selected from different options base on aesthetics. A faceplate is also interchangeable as it can be replaced by a different color, shape, or even an identical faceplate.
With respect to Applicant arguments that Amelio is non analogous art, please note that Amelio, Harbertson, and applicants invention are all in the field of electrical receptacles.
Regarding claim 14, in addition to the note on box 3 above, it is noted that the drawings only show a generic square and do not show the springs, nor how these perform the recited function. Additionally, the specification does not describe how this function is achieved by the springs in a manner that one of ordinary skill in the art would be able to use the recited structure.
The same restriction requirement described with respect to claim 14 apply to new claims 20 and 21.

| AFCP 2.0 Decision | Application No. | | Applicant(s) | |
|---|---|---|---|---|
| | 16/988,045 | | Galazin, Tony Matthew | |
| | **Examiner** | | **Art Unit** | **AIA (FITF) Status** |
| | FELIX O FIGUEROA | | 2833 | Yes |

This is in response to the After Final Consideration Pilot request filed <u>30 March 2021</u>.

1. **Improper Request** – The AFCP 2.0 request is improper for the following reason(s) and the after final amendment submitted with the request will be treated under pre-pilot procedure.

   ☐ An AFCP 2.0 request form PTO/SB/434 (or equivalent document) was not submitted.

   ☐ A non-broadening amendment to at least one independent claim was not submitted.

   ☐ The request is not the first proper AFCP 2.0 request submitted in response to the most recent final rejection.

   ☐ Other: _____

2. **Proper Request**

   **A.** After final amendment submitted with the request will not be treated under AFCP 2.0.
   The after final amendment cannot be reviewed and a search conducted within the guidelines of the pilot program.

   ☐ The after final amendment will be treated under pre-pilot procedure.

   **B.** Updated search and/or completed additional consideration.
   The examiner performed an updated search and/or completed additional consideration of the after final amendment within the time authorized for the pilot program. The result(s) of the updated search and/or completed additional consideration are:

   ☐ 1. All of the rejections in the most recent final Office action are overcome and a Notice of Allowance is issued herewith.

   ☐ 2. The after final amendment would not overcome all of the rejections in the most recent final Office action . See attached interview summary for further details.

   ☐ 3. The after final amendment was reviewed, and it raises a new issue(s). See attached interview summary for further details.

   ☐ 4. The after final amendment raises new issues, but would overcome all of the rejections in the most recent final Office action. A decision on determining allowability could not be made within the guidelines of the pilot. See attached interview summary for further details, including any newly discovered prior art.

   ☑ 5. Other:
   <u>The after final amendment would not overcome all of the rejections in the most recent final Office action.</u>

   Examiner Note: Please attach an interview summary when necessary as described above.

**Patent Application**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re application: | Tony Matthew Galazin | Group Art Unit: | 2833 |
| Serial No.: | 16/988,045 | Examiner: | Figuero, Felix O. |
| Filing Date: | August 7, 2020 | Docket No.: | 48071-00003 |
| | | Confirmation No.: | 4753 |

Title:   WALL MOUNTING OUTLET EXTENDER

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

DO NOT ENTER: /F.O.F/
04/01/2021

**RESPONSE TO FINAL OFFICE ACTION**

Dear Examiner Figuero:

Applicant acknowledges receipt of the Final Office Action with a notification date of January 8, 2021, setting a shortened statutory period of reply of three months. As this Response is being filed electronically on March 30, 2021, Applicant believes no additional fees are due. However, if any fees are required for filing this Response, please charge such fees to our Deposit Account No. 13-0265 identifying attorney docket no. 48071-00003.

Applicant respectfully requests that the Patent Office consider the following Amendments and Remarks in examining the present application.

{9486861: }                                    1

PATENT APPLICATION

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application:    Tony Matthew Galazin            Group Art Unit:    2833

Serial No.:              16/988,045                          Examiner:    Felix O. Figueroa

Filing Date:            August 7, 2020                    Docket No.:    48071-00003

Confirmation No.:    4753

Title:            WALL MOUNTING OUTLET EXTENDER

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## PETITION FOR EXTENSION OF TIME

Dear Sir:

Applicant acknowledges receipt of the Office Action mailed January 8, 2021. As the Office Action set a shortened statutory period for reply of three months and this Petition for a three-month extension of time is being filed electronically on July 6, 2021, along with the fee set forth in 37 CFR 1.17(a), Applicants believe no additional fees are due. However, if any additional fees are required, please charge such fees to our Deposit Account No. 13-0265.

Respectfully submitted,

Date:  July 6, 2021

/Todd A. Benni/
Todd A. Benni - Reg. No. 42,313
McDonald Hopkins LLC
600 Superior Avenue, E.
Suite 2100
Cleveland, OH 44114-2653
(216) 348-5400

{9695259: }

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 16988045 |
| **Filing Date:** | 07-Aug-2020 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Filer:** | Todd A. Benni/Rebecca Shofar |
| **Attorney Docket Number:** | 48071-00003 |

Filed as Small Entity

**Filing Fees for    Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 3 months with $0 paid | 2253 | 1 | 740 | 740 |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **740** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 43176805 |
| **Application Number:** | 16988045 |
| **International Application Number:** | |
| **Confirmation Number:** | 4753 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Rebecca Shofar |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00003 |
| **Receipt Date:** | 06-JUL-2021 |
| **Filing Date:** | 07-AUG-2020 |
| **Time Stamp:** | 15:34:09 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $740 |
| RAM confirmation Number | E202176F34220455 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Extension of Time | 9695634.pdf | 93673 <br> 42342829c860969a58d5853bf458f80fbbfded3b | no | 1 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 31125 <br> 5a59bc5f09dc38544d7bad9654930ecc823561bd | no | 2 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 124798 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 16/988,045 | 08/07/2020 | Tony Matthew Galazin | 48071-00003 |

**CONFIRMATION NO. 4753**

33772
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

**PUBLICATION NOTICE**


*OC000000126831973*

**Title:**WALL MOUNTING OUTLET EXTENDER

**Publication No.**US-2021-0210915-A1
**Publication Date:**07/08/2021

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Public Records Division. The Public Records Division can be reached by telephone at (571) 272-3150 or (800) 972-6382, by facsimile at (571) 273-3250, by mail addressed to the United States Patent and Trademark Office, Public Records Division, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently https://portal.uspto.gov/pair/PublicPair. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address:  COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/988,045 | 08/07/2020 | Tony Matthew Galazin | 48071-00003 | 4753 |

33772          7590          08/12/2021
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| EXAMINER |
|---|
| FIGUEROA, FELIX O |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2833 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/12/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ipmailbox@mcdonaldhopkins.com

PTOL-90A (Rev. 04/07)

| *Notice of Abandonment* | Application No. | Applicant(s) |
|---|---|---|
| | 16/988,045 | Galazin, Tony Matthew |
| | Examiner | Art Unit |
| | FELIX O FIGUEROA | 2833 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

This application is abandoned in view of:

1. ☑ Applicant's failure to timely file a proper reply to the Office letter mailed on 08 January 2021.
   (a) ☐ A reply was received on _____ (with a Certificate of Mailing or Transmission dated _____), which is after the expiration of the period for reply (including a total extension of time of _____ month(s)) which expired on _____.
   (b) ☑ A proposed reply was received on 30 March 2021, but it does not constitute a proper reply under 37 CFR 1.113 to the final rejection. (A proper reply under 37 CFR 1.113 to a final rejection consists only of:(1) a timely filed amendment which places the application in condition for allowance; (2) a timely filed Notice of Appeal (with appeal fee); or (3) if this is utility or plant application, a timely filed Request for Continued Examination (RCE) in compliance with 37 CFR 1.114. Note that RCEs are not permitted in design applications.)
   (c) ☐ A reply was received on _____ but it does not constitute a proper reply, or a *bona fide* attempt at a proper reply, to the non-final rejection. See 37 CFR 1.85(a) and 1.111. (See explanation in box 8 below).
   (d) ☐ No reply has been received.

2. ☐ Applicant's failure to timely pay the required issue fee and publication fee, if applicable, within the statutory period of three months from the mailing date of the Notice of Allowance (PTOL-85).
   (a) ☐ The issue fee and publication fee, if applicable, was received on _____ (with a Certificate of Mailing or Transmission dated _____), which is after the expiration of the statutory period for payment of the issue fee (and publication fee) set in the Notice of Allowance (PTOL-85).
   (b) ☐ The submitted fee of $ _____ is insufficient. A balance of $ _____ is due.
   The issue fee required by 37CFR 1.18 is $ _____ . The publication fee, if required by 37 CFR 1.18(d), is $ _____ .
   (c) ☐ The issue fee and publication fee, if applicable, has not been received.

3. ☐ Applicant's failure to timely file corrected drawings as required by, and within the three-month period set in, the Notice of Allowability (PTO-37).
   (a) ☐ Proposed corrected drawings were received on _____ (with a Certificate of Mailing or Transmission dated _____), which is after the expiration of the period for reply.
   (b) ☐ No corrected drawings have been received.

4. ☐ The letter of express abandonment which is signed by the attorney or agent of record or other party authorized under 37 CFR 1.33 (b). See 37 CFR 1.138(b).

5. ☐ The letter of express abandonment which is signed by an attorney or agent (acting in a representative capacity under 37 CFR 1.34) upon the filing of a continuing application.

6. ☐ The decision by the Patent Trial and Appeal Board rendered on _____ and because the period for seeking court review of the decision has expired and there are no allowed claims.

7. ☐ The dismissal of the appeal in an application having no allowed claims. (When an appeal is dismissed in an application having no allowed claims the application stands abandoned. See MPEP 1215.04 subsections I-V for an explanation of the reasons why an appeal is dismissed.)

8. ☐ The reason(s) below:

   _____

/FELIX O FIGUEROA/
Primary Examiner, Art Unit 2833

Petitions to revive under 37 CFR 1.137, or requests to withdraw the holding of abandonment under 37 CFR 1.181, should be promptly filed to minimize any negative effects on patent term.

U.S. Patent and Trademark Office
PTOL-1432 (Rev. 04-19)                     **Notice of Abandonment**                     Part of Paper No. 20210809

# BABCOCK DECLARATION
# EXHIBIT D

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 48071-00005 |
|---|---|---|
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2  (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | Remove |
|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| ▾ | Tony | Matthew | Galazin | ▾ |

Residence Information (Select One)   ● US Residency      Non US Residency      Active US Military Service

| City | Greenwich | State/Province | CT | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 351 Pemberwick Road | | |
|---|---|---|---|
| Address 2 | Apt. 914 | | |
| City | Greenwich | State/Province | CT |
| Postal Code | 06831 | Country i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.                    | Add |

## Correspondence Information:

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐  **An Address is being provided for the correspondence Information of this application.**

| Customer Number | 33772 | | |
|---|---|---|---|
| Email Address | ipmailbox@mcdonaldhopkins.com | Add Email | Remove Email |

## Application Information:

| Title of the Invention | WALL MOUNTING OUTLET EXTENDER | | |
|---|---|---|---|
| Attorney Docket Number | 48071-00005 | Small Entity Status Claimed | ☒ |
| Application Type | Nonprovisional | | ▾ |
| Subject Matter | Design | | ▾ |
| Total Number of Drawing Sheets (if any) | 8 | Suggested Figure for Publication (if any) | 1 |

EFS Web 2.2.13

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00005 |
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |

# Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
| | | |

# Publication Information:

| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |

| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |

# Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32).
Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
| Customer Number | 33772 | | |

# Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending ▼ | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | Continuation of ▼ | 16/988045 | 2020-08-07 |

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00005 |
|---|---|---|
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

| Prior Application Status | Expired ▾ | | | Remove |
|---|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) | |
| 16/988045 | Claims benefit of provisional ▾ | 62/957903 | 2020-01-07 | |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.    [Add]

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|
| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.    [Add]

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00005 |
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1. Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A. Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B. Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2. Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐ A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐ B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:** Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00005 |
|---|---|---|
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

# Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

| **Applicant**  1 | Remove |
|---|---|

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
|---|---|---|
| Person to whom the inventor is obligated to assign. | Person who shows sufficient proprietary interest | |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here.    ☒

| Organization Name | TOKA, LLC |
|---|---|

**Mailing Address Information For Applicant:**

| **Address 1** | 351 Pemberwick Road | | |
|---|---|---|---|
| Address 2 | Apt. 914 | | |
| **City** | Greenwich | **State/Province** | CT |
| **Country** | US | **Postal Code** | 06831 |
| Phone Number | 216-348-5400 | Fax Number | 216-348-5474 |
| Email Address | ipmailbox@mcdonaldhopkins.com | | |

Additional Applicant Data may be generated within this form by selecting the Add button.    Add

# Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00005 |
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
| --- | --- |

## Assignee 1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

Remove

If the Assignee or Non-Applicant Assignee is an Organization check here. ☐

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
| --- | --- | --- | --- | --- |
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| **Address 1** | |
| --- | --- |
| Address 2 | |

| **City** | | **State/Province** | |
| --- | --- | --- | --- |
| **Country** i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.          Add

# Signature:                                                          Remove

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

   This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

   See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| **Signature** | /Todd A. Benni/ | | | Date  (YYYY-MM-DD) | 2021-07-06 |
| --- | --- | --- | --- | --- | --- |
| First Name | Todd | Last Name | Benni | Registration Number | 42313 |

Additional Signature may be generated within this form by selecting the Add button.          Add

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00005 |
|---|---|---|
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

This collection of information is required by 37 CFR 1.76.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.   A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.   A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.   A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent CooperationTreaty.

6.   A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.   A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.   A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.   A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

THEREFORE:

I CLAIM:

The ornamental design for an outlet extender as shown and described.

DESIGN PATENT APPLICATION

Inventor:     Tony Matthew Galazin

Docket No.:    48071-00005

## OUTLET EXTENDER

### CROSS-REFERENCES TO RELATED APPLICATION

This application is a continuation of U.S. patent application Ser. No. 16/988,045, filed August 7, 2020, which is incorporated by reference herein.

TO WHOM IT MAY CONCERN:

Be it known that I, Tony Mathew Galazin, have invented a new, original and ornamental design for an outlet extender for which the following is a specification, reference being made to the accompanying drawings, forming a part hereof, in which:

Figure 1 is a perspective view of an outlet extender showing my new design;

Figure 2 is a front view thereof;

Figure 3 is a rear view thereof;

Figure 4 is a first side view thereof;

Figure 5 is a second side view thereof;

Figure 6 is a top view thereof;

Figure 7 is a bottom view thereof;

Figure 8 is a perspective view of a second embodiment of an outlet extender showing my new design;

Figure 9 is a front view thereof;

{9692665: }                                    1

Figure 10 is a rear view thereof;

Figure 11 is a first side view thereof;

Figure 12 is a second side view thereof;

Figure 13 is a top view thereof; and

Figure 14 is a bottom view thereof.

The broken lines in the figures are included for the purpose of illustrating portions of an outlet extender and form no part of the claimed design.



**FIG. 1**



**FIG. 2**

**FIG. 3**



**FIG. 4**



**FIG. 5**



**FIG. 6**



**FIG. 7**



FIG. 8



**FIG. 9**

**FIG. 10**



**FIG. 11**                    **FIG. 12**

8/8



**FIG. 13**



**FIG. 14**

For applications filed under AIA
(on or after September 16, 2012)

Title: "WALL MOUNTING OUTLET EXTENDER"
MH Ref No.: 48071-00002

**DECLARATION AND ASSIGNMENT
FOR U.S. UTILITY OR DESIGN PATENT APPLICATION**

Attorney Docket No.:  48071-00002

**As a below-named inventor, I hereby declare that:**

This declaration is directed to the application entitled:

WALL MOUNTING OUTLET EXTENDER
**(TITLE)**

(check only one item below)

[  ]    attached hereto,

OR

[X]    For which U.S. Provisional Application No. 62/957,903 filed on January 7, 2020; and any subsequent applications filed in connection with the above invention (the "Patent").

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the above-identified application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

WHEREAS, TOKA, LLC, having a place of business at 351 Pemberwick Road, Apt. 914, Greenwich, CT 06831, hereinafter referred to as "Assignee," is desirous of acquiring the entire right, title and interest in and to the Patent;

NOW, THEREFORE, be it known that, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, all right, title, and interest, in the United States and throughout the world, in, to and under the Patent, improvements and inventions and all patents, patent applications, patent rights, and inventors' certificates thereof, therefor, and therein, including without limitation said application for patent in the United States, all divisions and continuations thereof, all patents which may be granted thereon, all reissues and extensions thereof, all right to sue for past infringement thereunder, all patents which may be granted for said improvements and inventions by states or nations other than the United States, or by other authority, entity, or organization, all applications therefor, and all rights of priority resulting from the filing of said

{8993148: }                              Page 1 of 2

For applications filed under AIA
(on or after September 16, 2012)

Title: "WALL MOUNTING OUTLET EXTENDER"
MH Ref No.: 48071-00002

applications, have been and are hereby sold, assigned, transferred, and delivered unto Assignee, its successors and assigns by the undersigned; and it is covenanted and agreed by the undersigned, and for executors, administrators, and legal representatives of the undersigned, that at Assignee's request any and all applications, affidavits, assignments, and other instruments will be made, executed, and delivered as may be necessary, or desirable to secure for or vest in Assignee, its successors or assigns, any improvement, inventions, right, title, interest, application, patent, patent right or other right or property covered by this assignment, and the United States Commissioner of Patents and Trademarks is hereby requested and authorized to issue any and all United States patents granted on any of said applications to Assignee as owner of the entire right, title, and interest in, to, and under the same, and appropriately empowered officials of foreign countries are hereby authorized to issue any letters patent granted on any of said applications to Assignee as owner of the entire right, title and interest in, to, and under the same.

THIS DECLARATION AND ASSIGNMENT, has been executed below by the undersigned:

Legal Name of Inventor: Tony Matthew Galazin

Signature of Inventor: _____

Date: **8-7-2020**

[  ]    Signatures of additional inventors on attached sheet(s)

> **Notice to Inventor(s):** You should not execute this Declaration unless you have reviewed and understand the contents of the above-identified application, including the claims.

> **Notice to Inventor(s):** You have a duty disclose to the USPTO all information known to you to be material to patentability as defined in 37 CFR 1.56 during prosecution of the Patent.

{8993148: }                    Page 2 of 2

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony  Matthew  Galazin |
| **Filer:** | Todd A. Benni/Rebecca Shofar |
| **Attorney Docket Number:** | 48071-00005 |

Filed as Large Entity

**Filing Fees for   Design**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| DESIGN APPLICATION FILING | 1012 | 1 | 220 | 220 |
| DESIGN OR DESIGN CPA SEARCH FEE | 1112 | 1 | 160 | 160 |
| DESIGN OR DESIGN CPA EXAMINATION FEE | 1312 | 1 | 640 | 640 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | 1020 |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 43176969 |
| **Application Number:** | 29798129 |
| **International Application Number:** | |
| **Confirmation Number:** | 6583 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Rebecca Shofar |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00005 |
| **Receipt Date:** | 06-JUL-2021 |
| **Filing Date:** | |
| **Time Stamp:** | 15:40:39 |
| **Application Type:** | Design |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $ 1020 |
| RAM confirmation Number | E202176F40530619 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Application Data Sheet | 9695325.pdf | 1308980 <br><br> 4d5d342d3263f93f4548688b84f5660633f7b87a | no | 8 |

| **Warnings:** |
|---|
| **Information:** |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | | 9695660.pdf | 90134 <br><br> 63c44e37fadf599d9104cd59bcd6c3a0da9d65e8 | yes | 3 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |
| Claims | 3 | 3 |
| Specification | 1 | 2 |

| **Warnings:** |
|---|
| **Information:** |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Drawings-only black and white line drawings | 9695318.pdf | 358369 <br><br> 3d3406cc735d6304cc8e2ba1da39b9de7b171d62 | no | 8 |

| **Warnings:** |
|---|
| **Information:** |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | Oath or Declaration filed | 9695469.pdf | 170011 <br><br> 4d5222976a1268ab09989b4414e15c7c9168e696 | no | 2 |

| **Warnings:** |
|---|
| **Information:** |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 5 | Fee Worksheet (SB06) | fee-info.pdf | 34971 <br><br> 57b50a8c71faed3a2caaa6cda3be7b660fb0edde | no | 2 |

| **Warnings:** |
|---|
| **Information:** |

**Total Files Size (in bytes):**                                    1962465

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

DocCode – SCORE

# SCORE Placeholder Sheet for IFW Content

**Application Number:** 29798129     **Document Date:** 07/06/2021

The presence of this form in the IFW record indicates that the following document type was received in electronic format on the date identified above.  This content is stored in the SCORE database.

Since this was an electronic submission, there is no physical artifact folder, no artifact folder is recorded in PALM, and no paper documents or physical media exist.  The TIFF images in the IFW record were created from the original documents that are stored in SCORE.

- Drawing

At the time of document entry (noted above):
- USPTO employees may access SCORE content via DAV or via the SCORE web page.
- External customers may access SCORE content via PAIR using the Supplemental Content tab.

Form Revision Date:  March 1, 2019

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT6798201

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

### CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| TONY MATTHEW GALAZIN | 08/07/2020 |

### RECEIVING PARTY DATA

| | |
|---|---|
| Name: | TOKA, LLC |
| Street Address: | 351 PEMBERWICK ROAD |
| Internal Address: | APT. 914 |
| City: | GREENWICH |
| State/Country: | CONNECTICUT |
| Postal Code: | 06831 |

### PROPERTY NUMBERS Total: 1

| Property Type | Number |
|---|---|
| Application Number: | 29798129 |

### CORRESPONDENCE DATA

| | |
|---|---|
| Fax Number: | (216)348-5474 |

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Phone: | 216-348-5400 |
| Email: | ipmailbox@mcdonaldhopkins.com |
| Correspondent Name: | MCDONALD HOPKINS LLC |
| Address Line 1: | 600 SUPERIOR AVENUE, EAST |
| Address Line 2: | SUITE 2100 |
| Address Line 4: | CLEVELAND, OHIO 44114-2653 |

| ATTORNEY DOCKET NUMBER: | 48071-00005 |
|---|---|
| NAME OF SUBMITTER: | TODD A. BENNI |
| SIGNATURE: | /Todd A. Benni/ |
| DATE SIGNED: | 07/06/2021 |
| | This document serves as an Oath/Declaration (37 CFR 1.63). |

**Total Attachments: 2**
source=9695469#page1.tif
source=9695469#page2.tif

For applications filed under AIA
(on or after September 16, 2012)

Title: "WALL MOUNTING OUTLET EXTENDER"
MH Ref No.: 48071-00002

**DECLARATION AND ASSIGNMENT
FOR U.S. UTILITY OR DESIGN PATENT APPLICATION**

Attorney Docket No.:  48071-00002

**As a below-named inventor, I hereby declare that:**

This declaration is directed to the application entitled:

WALL MOUNTING OUTLET EXTENDER
**(TITLE)**

(check only one item below)

[   ]     attached hereto,

OR

[X]     For which U.S. Provisional Application No. 62/957,903 filed on January 7, 2020; and any subsequent applications filed in connection with the above invention (the "Patent").

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the above-identified application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

WHEREAS, TOKA, LLC, having a place of business at 351 Pemberwick Road, Apt. 914, Greenwich, CT 06831, hereinafter referred to as "Assignee," is desirous of acquiring the entire right, title and interest in and to the Patent;

NOW, THEREFORE, be it known that, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, all right, title, and interest, in the United States and throughout the world, in, to and under the Patent, improvements and inventions and all patents, patent applications, patent rights, and inventors' certificates thereof, therefor, and therein, including without limitation said application for patent in the United States, all divisions and continuations thereof, all patents which may be granted thereon, all reissues and extensions thereof, all right to sue for past infringement thereunder, all patents which may be granted for said improvements and inventions by states or nations other than the United States, or by other authority, entity, or organization, all applications therefor, and all rights of priority resulting from the filing of said

{8993148: }                          Page 1 of 2

For applications filed under AIA
(on or after September 16, 2012)

Title: "WALL MOUNTING OUTLET EXTENDER"
MH Ref No.: 48071-00002

applications, have been and are hereby sold, assigned, transferred, and delivered unto Assignee, its successors and assigns by the undersigned; and it is covenanted and agreed by the undersigned, and for executors, administrators, and legal representatives of the undersigned, that at Assignee's request any and all applications, affidavits, assignments, and other instruments will be made, executed, and delivered as may be necessary, or desirable to secure for or vest in Assignee, its successors or assigns, any improvement, inventions, right, title, interest, application, patent, patent right or other right or property covered by this assignment, and the United States Commissioner of Patents and Trademarks is hereby requested and authorized to issue any and all United States patents granted on any of said applications to Assignee as owner of the entire right, title, and interest in, to, and under the same, and appropriately empowered officials of foreign countries are hereby authorized to issue any letters patent granted on any of said applications to Assignee as owner of the entire right, title and interest in, to, and under the same.

THIS DECLARATION AND ASSIGNMENT, has been executed below by the undersigned:

Legal Name of Inventor: Tony Matthew Galazin

Signature of Inventor: _____

Date: **8-7-2020**

[  ]    Signatures of additional inventors on attached sheet(s)

> **Notice to Inventor(s):** You should not execute this Declaration unless you have reviewed and understand the contents of the above-identified application, including the claims.
>
> **Notice to Inventor(s):** You have a duty disclose to the USPTO all information known to you to be material to patentability as defined in 37 CFR 1.56 during prosecution of the Patent.



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY.DOCKET NO./TITLE | REQUEST ID |
|---|---|---|---|---|
| 29/798,129 | 07/06/2021 | Tony Matthew Galazin | 48071-00005 | 142831 |

## Acknowledgement of Change to Small Entity Status

The entity status change request below filed through Private PAIR on 07/07/2021 has been accepted.

## CERTIFICATIONS:

> **Change of Entity Status:**
>
> ✗ Applicant asserting small entity status. See 37 CFR 1.27.
> NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

**This portion must be completed by the signatory or signatories making the entity status change in accordance with 37 CFR 1.4(d)(4).**

| Signature: | /Todd A. Benni/ |
|---|---|
| Name: | Todd A. Benni |
| Registration Number: | 42313 |

Doc Code: RFN.REQ
Document Description Refund

PTO-2326 (12-2020)
Approved for use through 03/31/2021. OMB 0651-0043
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# REQUEST FOR REFUND

| Reference # *(Patent #, Application #, Trademark Serial #, Registration #, etc.)* | Title of Invention or Mark Information | |
|---|---|---|
| 29/798,129 | WALL MOUNTING OUTLET EXTENDER | |
| **Attorney Docket #** *(if applicable)* | **Payment Date** *(mm/dd/yyyy)* | **Refund Request Amount** |
| 48071-00005 | 07/06/2021 | $ 510.00 |

**Refund Option** *(Select one)*

- ● If approved, issue the refund to the account associated with the original payment.
- ○ If approved, and the original payment was a check, issue the refund to deposit account # _____.
- ○ If approved, and the original payment was a check, issue the refund as a U.S. Treasury check.

**Reason for Refund Request** *Refund requests must generally be filed within 2 years of payment date (37 CFR 1.26 and 2.209)*

- ☐ Duplicate Payment
- ☑ Small Entity Later Established* (*must be filed within 3 months of payment date, 37 CFR 1.28)
- ☐ No Fee Due
- ☐ Other _____
- ☐ Office Error

**Rationale** *(Supporting documentation may be submitted with this form)*

## Requester's Information

| Company or Firm Name *(if applicable)* | | |
|---|---|---|
| McDonald Hopkins LLC | | |
| **Address Line 1** | **City** | **State/Region** |
| 600 Superior Ave., E. | Cleveland | OH |
| **Address Line 2** *(if applicable)* | **Country** | **Zip/Postal Code** |
| Suite 2100 | US | 44114 |
| **Email Address** (You will receive an acknowledgment of receipt only if you provide a valid email address) | **Phone Number** | |
| ipmailbox@mcdonaldhopkins.com | 216-348-5400 | |
| **Requester's Name** | **Registration Number** *(if applicable)* | |
| Todd A. Benni | 42,313 | |
| **Signature** | **Date** *(mm/dd/yyyy)* | |
| /Todd A. Benni/ | 07/07/2021 | |

**Submit online:** EFS-Web *(registered users only; select "Request for Refund" from the document description menu)*, or
**Fax to:** 571-273-6500, or
**Mail to:** Mail Stop 16, Director of the U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 43183188 |
| **Application Number:** | 29798129 |
| **International Application Number:** | |
| **Confirmation Number:** | 6583 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Rebecca Shofar |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00005 |
| **Receipt Date:** | 07-JUL-2021 |
| **Filing Date:** | |
| **Time Stamp:** | 08:42:14 |
| **Application Type:** | Design |

## Payment information:

| Submitted with Payment | no |
|---|---|

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Refund Request | 9696154.pdf | 707610<br><br>c686da7dd22f2a7d20015399ee07d28d09c acfe4 | no | 1 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 707610 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**



# United States Patent and Trademark Office

*Office of the Chief Financial Officer*

Document Code:WFEE

User :C46575

Sale Accounting Date:07/08/2021

| Sale Item Reference Number | Effective Date |
|---|---|
| 29798129 | 07/07/2021 |

| Document Number | Fee Code | Fee Code Description | Amount Paid | Payment Method |
|---|---|---|---|---|
| I202178D52013689 | 1051 | LATE FILING FEE FOR OATH OR DECLARATION | $160.00 | Deposit Account |

 **United States Patent and Trademark Office**

*Office of the Chief Financial Officer*

Document Code:WFEE

User :C46472

Refund Accounting Date:07/09/2021

| Effective Date | Sale Item Reference Number | Refund Total |
|---|---|---|
| 07/07/2021 | 29798129 | $160.00 |

| Document Number | Fee Code | Fee Code Description | Amount Paid | Payment Method | Account Number |
|---|---|---|---|---|---|
| I202179A51303328 | 1051 | LATE FILING FEE FOR OATH OR DECLARATION | $160.00 | DA | 024035 |



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 29/798,129 | 07/06/2021 | 2913 | 510 | 48071-00005 | 1 | 1 |

**CONFIRMATION NO. 6583**

33772
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

**FILING RECEIPT**

0C000000128969103

Date Mailed: 07/15/2021

Receipt is acknowledged of this non-provisional design patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**
        Tony Matthew Galazin, Greenwich, CT;
**Applicant(s)**
        TOKA, LLC, Greenwich, CT;

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**
        This application is a CON of 16/988,045 08/07/2020
        which claims benefit of 62/957,903 01/07/2020

**Foreign Applications** for which priority is claimed  (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)  - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

page 1 of 3

**If Required, Foreign Filing License Granted:** 07/08/2021

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 29/798,129**

**Projected Publication Date:**  None, application is not eligible for pre-grant publication

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

> OUTLET EXTENDER

**Preliminary Class**

> D13

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

| *Notice of References Cited* | Application/Control No.<br>29/798,129 | Applicant(s)/Patent Under Reexamination<br>Galazin, Tony Matthew | |
|---|---|---|---|
| | Examiner<br>SETH D KUMPF | Art Unit<br>2926 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-5895275-A | 04-1999 | Harbertson; Grant J. | H01R35/04 | 439/32 |
| * | B | US-20210210915-A1 | 07-2021 | Galazin; Tony Matthew | H01R13/6691 | 1/1 |
| * | C | US-20040082217-A1 | 04-2004 | Love, Mark Edward Walker | H01R25/006 | 439/535 |
| * | D | US-7163409-B1 | 01-2007 | Chen; Wen-Chun | H01R25/006 | 439/131 |
| * | E | US-D367530-S | 02-1996 | Stith; Rosemarie | | D24/128 |
| * | F | US-D788063-S | 05-2017 | Norrell; Lance | | D14/188 |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | JPD1731372 | 12-2022 | JP | Yasunori Terao | 13-03 |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | "Packaging Design for Electrical Product- additional work for winning designer too", first accessed 01 February 2023. 99Designs.com [https://99designs.com/product-packaging-design/contests/packaging-design-electrical-product-additional-work-winning-designer-1180191] (Year: 2023) |
| | V | "EZ Outlet Coming Soon!", first accessed 14 April 2023. EZOutlet.com [https://www.ezoutlet.com/] (Year: 2023) |
| | W | "EZ Outlet", first posted 11 September 2019. Facebook.com [https://www.facebook.com/EZOutletUSA/photos/a.111614443557876/111615090224478/] (Year: 2019) |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20230414

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 29/798,129 | Galazin, Tony Matthew |
| | **Examiner** | **Art Unit** |
| | SETH D KUMPF | 2926 |

**CPC - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| H01R 13/11, 518, 642, 652 | 02/01/2023 | /S.D.K./ |
| H01R 25/003, 006 | 02/01/2023 | /S.D.K./ |
| H01R 43/26 | 02/01/2023 | /S.D.K./ |
| H01H 71/62 | 02/01/2023 | /S.D.K./ |
| H01H 73/14 | 02/01/2023 | /S.D.K./ |

**CPC Combination Sets - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| | | |

**US Classification - Searched***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| D13 | 137.1, 137.2, 137.3, 137.4, 138.1, 138.2, 139.1, 139.2, 139.3, 139.4, 139.5, 139.6, 139.7, 139.8, 184, 199 | 01/30/2023 | /S.D.K./ |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| | /S.D.K./ |
|---|---|
| | Examiner, Art Unit 2926 |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 29/798,129 | Galazin, Tony Matthew |
| | **Examiner** | **Art Unit** |
| | SETH D KUMPF | 2926 |

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor name search | 01/26/2023 | /S.D.K./ |
| SEARCH text search: Toka, Electrical Plug, Electrical Socket, Outlet Extender, Electrical Receptacle, Electrical Outlet, Power Supply Receptacle, Electrical Outlet Enclosure, Extension Socket | 01/27/2023 | /S.D.K./ |
| Internet text search: Toka, Electrical Plug, Electrical Socket, Outlet Extender, Electrical Receptacle, Electrical Outlet, Power Supply Receptacle, Electrical Outlet Enclosure, Extension Socket | 02/01/2023 | /S.D.K./ |
| Orbit text search: Toka, Electrical Plug, Electrical Socket, Outlet Extender, Electrical Receptacle, Electrical Outlet, Power Supply Receptacle, Electrical Outlet Enclosure, Extension Socket | 02/02/2023 | /S.D.K./ |
| Internet text search: EZ Outlet Vertical Electrical Outlet Extender | 04/14/2023 | /S.D.K./ |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| | /S.D.K./<br>Examiner, Art Unit 2926 |
|---|---|

03/02/23                              1                              16*20*05

**1/1-DESIGNS-©Questel**









03/02/23                                    2                                    16*20*05





RGN      - D1731372
CCDB     - **JP**
ET       - **Power supply** stand
OTI      - 電源供給用スタンド
CL       - 13-03
CLN      - H1-34220
CL1      - H1-34220
CLS      - H1-34220
OWN      - KOKUYO CO LTD
OWNO     - コクヨ株式会社, 大阪府大阪市東成区大今里南６丁目１番１号
OWA      - KOKUYO CO LTD

03/02/23                                    3                                    16*20*05

IN        - Yasunori Terao
            Tomoya Kuroo
INO       - 寺尾 保紀, 大阪府大阪市東成区大今里南６丁目１番１号 コクヨ株式会社内
            黒尾 智也, 大阪府大阪市東成区大今里南６丁目１番１号 コクヨ株式会社内
INVA      - Yasunori Terao;Tomoya Kuroo
REP       - Patent Attorney Corporation Fujimoto Partners
REPO      - 弁理士法人藤本パートナーズ
REPN      - 110002734
REPC      - 弁理士法人藤本パートナーズ
APN       - D2022-05866
APD       - 2022-03-22
RGD       - 2022-11-28
PD        - 2022-12-06
DESC      - The part indicated by solid lines is the part for which the design registration is requested..
            Specify the part for which the design registration is requested, including a perspective view. The
            left side view appears symmetrical to the right side view.

            Fig 1: Enlarged perspective view
            Fig 2: Front view
            Fig 3: Rear view
            Fig 4: Plan view
            Fig 5: Bottom view
            Fig 6: Right side view
ODES      - 実線であらわした部分が、意匠登録を受けようとする部分である。斜視図を含めて意匠登録を
            受けようとする部分を特定している。左側面図は右側面図と対称にあらわれる。

            Fig 1: 拡大斜視図
            Fig 2: 正面図
            Fig 3: 背面図
            Fig 4: 平面図
            Fig 5: 底面図
            Fig 6: 右側面図
NUM       - 1

## PE2E SEARCH – Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| L6 | 21 | (("Toka")).as. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/27 08:41 AM |
| L16 | 2249 | (("Electrical") near3 ("Plug")).ti. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/27 09:50 AM |
| L21 | 1214 | (("Electrical") near3 ("Socket")).ti. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/27 11:15 AM |
| L25 | 12 | (("Outlet") near3 ("Extender")).ti. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/27 11:59 AM |
| L30 | 1246 | (("Electrical") near3 ("Receptacle")).ti. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/27 12:07 PM |
| L31 | 1590 | (("Electrical") near3 ("Outlet")).ti. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/27 12:14 PM |
| L32 | 9 | (("Power") near3 ("Supply") near3 ("Receptacle")).ti. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/27 12:28 PM |
| L37 | 14 | (("Electrical") near3 ("Outlet") near3 ("Enclosure")).ti. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/27 12:37 PM |
| L38 | 149 | (("Extension") near3 ("Socket")).ti. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/27 12:37 PM |
| L43 | 149 | D13/137.1.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 11:33 AM |
| L44 | 367 | D13/137.2.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 01:11 PM |
| L45 | 101 | D13/137.3.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 01:15 PM |
| L46 | 154 | D13/137.4.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 01:18 PM |
| L47 | 289 | D13/138.1.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 01:19 PM |
| L48 | 148 | D13/138.2.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 01:24 PM |
| L49 | 229 | D13/139.1.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 01:26 PM |
| L50 | 49 | D13/139.2.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 01:44 PM |
| L51 | 112 | D13/139.3.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 01:49 PM |
| L52 | 264 | D13/139.4.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 01:50 PM |
| L53 | 28 | D13/139.5.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 01:53 PM |
| L54 | 123 | D13/139.6.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 01:53 PM |
| L55 | 118 | D13/139.7.ccls. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/01/30 01:55 PM |

| L56 | 257 | D13/139.8.ccls. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/01/30 01:56 PM |
|-----|-----|-----------------|-------------------|-----|-----|-----|----------|
| L57 | 1047 | D13/184.ccls. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/01/30 01:58 PM |
| L58 | 223 | D13/199.ccls. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/01/30 02:07 PM |
| L59 | 1431 | H01R13/11.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/01/31 09:14 AM |
| L60 | 2480 | H01R13/518.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/01/31 09:50 AM |
| L61 | 853 | H01R13/642.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/01 10:53 AM |
| L62 | 1187 | H01R13/652.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/01 02:50 PM |
| L63 | 1646 | H01R25/003.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/01 02:56 PM |
| L64 | 2723 | H01R25/006.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/01 03:01 PM |
| L65 | 2567 | H01R43/26.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/01 03:06 PM |
| L66 | 156 | H01H71/62.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/01 03:15 PM |
| L67 | 136 | H01H73/14.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/02/01 03:16 PM |

## PE2E SEARCH – Search History (Interference)

There are no Interference searches to show.

# Bibliographic Data

Application No:    29/798,129

Foreign Priority claimed:    ○ Yes    ● No

35 USC 119 (a-d) conditions met:    ☐ Yes    ☑ No    ☐ Met After Allowance

Verified and Acknowledged:    /SETH DAVID KUMPF/

Examiner's Signature    |    Initials

Title:    OUTLET EXTENDER

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/06/2021 **RULE** | D13 | 2926 | 48071-00005 |

**APPLICANTS**

TOKA, LLC, Greenwich, CT,

**INVENTORS**

Tony Matthew Galazin, Greenwich, CT, UNITED STATES

**CONTINUING DATA**

This application is a CON of 16988045 08/07/2020ABN

16988045 has PRO of 62957903 01/07/2020

**FOREIGN APPLICATIONS**

**IF REQUIRED, FOREIGN LICENSE GRANTED\*\***

07/08/2021

**\*\* SMALL ENTITY \*\***

**STATE OR COUNTRY**

UNITED STATES

**ADDRESS**

MCDONALD HOPKINS LLC

600 Superior Avenue, East

Suite 2100

CLEVELAND, OH 44114-2653

UNITED STATES

**FILING FEE RECEIVED**

$1,020

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 29/798,129 | 07/06/2021 | Tony Matthew Galazin | 48071-00005 | 6583 |

33772          7590          04/21/2023
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| EXAMINER |
|---|
| KUMPF, SETH DAVID |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2926 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 04/21/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ipmailbox@mcdonaldhopkins.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | **Application No.**<br>29/798,129 | | **Applicant(s)**<br>Galazin, Tony Matthew | |
|---|---|---|---|---|
| | **Examiner**<br>SETH D KUMPF | | **Art Unit**<br>2926 | **AIA (FITF) Status**<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>2</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☐ Responsive to communication(s) filed on _____.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL.**          2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s)  <u>1</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☐ Claim(s) _____ is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☑ Claim(s) <u>1</u> are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or  b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
      a)☐ All      b)☐ Some**      c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)
2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
      Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413)
      Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 11-13)          Office Action Summary          Part of Paper No./Mail Date 20230414

Application/Control Number: 29/798,129                                                    Page 2
Art Unit: 2926

## *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

## DETAILED ACTION

This application has been carefully examined and is subject to a requirement for

restriction for the reasons set forth below.

## Election/Restriction

This application discloses the following embodiments:

Embodiment 1 – Figs. 1-7

Embodiment 2 – Figs. 8-14

Multiple embodiments of a single inventive concept may be included in the same

design application only if they are patentably indistinct. See *In re Rubinfield*, 270 F.2d

391, 123 USPQ 210 (CCPA 1959). Embodiments that are patentably distinct from one

another do not constitute a single inventive concept and thus may not be included in the

same design application. See *In re Platner*, 155 USPQ 222 (Comm'r Pat. 1967).

The above embodiments divide into the following patentably distinct groups of

designs:

Group I: Embodiment 1

Group II: Embodiment 2

The following differences between the embodiments create patentably distinct

designs:

Application/Control Number: 29/798,129 Page 3

Art Unit: 2926

- Group I is patentably distinct from Group II because Group I claims an Outlet Extender with enclosure features on the top and bottom of the article, whereas Group II claims an Outlet Extender with a plate at the top of the article. These differences are substantial and are neither obvious nor *de minimis.*

Because of the differences identified, the groups of designs are considered to either have overall appearances that are not basically the same, or if they are basically the same, the differences are not minor and patentably indistinct or are not shown to be obvious in view of analogous prior art.

Restriction is required under 35 U.S.C. 121 to one of the patentably distinct groups of designs.

A reply to this requirement must include an election of a single group for prosecution on the merits, even if this requirement is traversed, 37 CFR 1.143. Any reply that does not include election of a single group will be held nonresponsive. Applicant is also requested to direct cancellation of all drawing figures and the corresponding descriptions which are directed to nonelected groups.

Should applicant traverse this requirement on the grounds that the groups are not patentably distinct, applicant should present evidence or identify such evidence now of record showing the groups to be obvious variations of one another. If the groups are determined not to be patentably distinct and they remain in this application, any rejection of one group over prior art will apply equally to all other groups. See *Ex parte Appeal No.* 315-40, 152 USPQ 71 (Bd. App. 1965). No argument asserting patentability

Application/Control Number: 29/798,129                                    Page 4
Art Unit: 2926

based on the differences between the groups will be considered once the groups have been determined to comprise a single inventive concept.

In view of the above requirement, action on the merits is deferred pending compliance with the requirement in accordance with *Ex parte Heckman*, 135 USPQ 229 (P.O. Super. Exam. 1960).

## Conclusion

A shortened statutory period of TWO MONTHS or SIXTY DAYS from the date of this letter, whichever is longer, is set for applicant to elect a single group for prosecution on the merits and to avoid a question of abandonment.

The examiner has cited the best references at his command, however a determination of patentability over the prior art will be made upon election of one of the embodiments.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to SETH D KUMPF whose telephone number is (571)272-9373. The examiner can normally be reached on Monday through Friday from 7:30 AM to 3:30 PM (ET).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, MICHELLE E WILSON, can be reached at telephone number (571)272-7639. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is

Application/Control Number: 29/798,129                                                    Page 5
Art Unit: 2926

available to registered users. To file and manage patent submissions in Patent Center,

visit: https://patentcenter.uspto.gov.  Visit https://www.uspto.gov/patents/apply/patent-

center for more information about Patent Center and

https://www.uspto.gov/patents/docx  for information about filing in DOCX format. For

additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Examiner interviews are available via telephone, in-person, and video conferencing
using a USPTO supplied web-based collaboration tool. To schedule an interview,
applicant is encouraged to use the USPTO Automated Interview Request (AIR) at
http://www.uspto.gov/interviewpractice.


/ROSEMARY K TARCZA/
Primary Examiner, Art Unit 2918


/S.D.K./
Examiner, Art Unit 2926

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (02-18)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 29798129 |
| Filing Date | 2021-07-06 |
| First Named Inventor | Tony Matthew Galazin |
| Art Unit | 2926 |
| Examiner Name | Seth David Kumpf |
| Attorney Docket  Number | 48071-00005 |

**U.S.PATENTS**  Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 4553798 | A | 1985-11-19 | MURPHY | |
| | 2 | 5957701 | A | 1999-09-28 | MCMILLIN | |
| | 3 | 6004138 | A | 1999-12-21 | HARBERTSON | |
| | 4 | 9965007 | B2 | 2018-05-08 | AMELIO | |

If you wish to add additional U.S. Patent citation information please click the Add button.  Add

**U.S.PATENT APPLICATION PUBLICATIONS**  Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20130052882 | A2 | 2013-02-28 | BRAUSEN | |
| | 2 | 20170346244 | A1 | 2017-11-30 | COMIS | |

EFS Web 2.1.18

| | | | | | | |
|---|---|---|---|---|---|---|

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 29798129 |
| Filing Date | 2021-07-06 |
| First Named Inventor | Tony Matthew Galazin |
| Art Unit | 2926 |
| Examiner Name | Seth David Kumpf |
| Attorney Docket  Number | 48071-00005 |

| | | | | |
|---|---|---|---|---|
| 3 | 20150129722 | A1 | 2015-05-14 | GREEN |

If you wish to add additional U.S. Published Application citation information please click the Add button. | Add

**FOREIGN PATENT DOCUMENTS** | Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2571295 | GB | B | 2022-07-06 | INTELLECTUAL PRODUCTS LTD. | | |

If you wish to add additional Foreign Patent Document citation information please click the Add button | Add

**NON-PATENT LITERATURE DOCUMENTS** | Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | International Search Report and Written Opinion mailed April 6, 2021; International Patent Application No. PCT/US2021/012261 filed on January 6, 2021. | |

If you wish to add additional non-patent literature document citation information please click the Add button | Add

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.18

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 29798129 |
| Filing Date | 2021-07-06 |
| First Named Inventor | Tony Matthew Galazin |
| Art Unit | 2926 |
| Examiner Name | Seth David Kumpf |
| Attorney Docket  Number | 48071-00005 |

---

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

See attached certification statement.

☒ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

A certification statement is not submitted herewith.

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Todd A. Benni/ | Date (YYYY-MM-DD) | 2023-05-17 |
|---|---|---|---|
| Name/Print | Todd A. Benni | Registration Number | 42313 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# (12) UK Patent (19) GB (11) 2571295 (13) B

(45) Date of B Publication 06.07.2022

(54) Title of the Invention: **Electrical socket extender**

(51) INT CL: *H01R 31/06* (2006.01)   *H01R 25/00* (2006.01)   *H01R 27/00* (2006.01)   *H01R 35/04* (2006.01)

| | |
|---|---|
| (21) Application No: **1802910.8** | (72) Inventor(s):<br>**Michael Man-Cheung Tsang** |
| (22) Date of Filing: **22.02.2018** | (73) Proprietor(s):<br>**Intellectual Products Limited**<br>**92 Station Road, Clacton-on-Sea, Essex, CO15 1SG,**<br>**United Kingdom** |
| (43) Date of A Publication **28.08.2019** | |
| (56) Documents Cited:<br>**DE 002448041 A**　**US 6004138 A**<br>**US 4553798 A**　**US 20170346244 A1**<br>**US 20050176281 A1** | (74) Agent and/or Address for Service:<br>**SANDERSONS**<br>**D2 Knowledge Gateway, Nesfield Road, Colchester,**<br>**Essex, CO4 3ZL, United Kingdom** |
| (58) Field of Search:<br>As for published application 2571295 A viz:<br>UK CL (Edition X) **H2E**<br>INT CL **H01R**<br>Other: **Online: WPI, EPODOC**<br>updated as appropriate<br><br>Additional Fields<br>INT CL **H02G**<br>Other: **WPI, EPODOC** | |

GB 2571295 B

# Figure 1



# Figure 2



# Figure 3



## Figure 4



**Figure 5**



**Figure 6**



**Figure 7**



**Figure 8**



9/9

**Figure 9a**

**Figure 9b**



## ELECTRICAL SOCKET EXTENDER

BACKGROUND OF THE INVENTION

The present invention relates to an electrical socket extender to provide an electrical socket remote from a wall-mounted electrical socket. The present invention allows a user quickly and easily to extend the reach of a surface/wall-mounted electrical socket in order to create an electrical socket in a more convenient location.

Wall-mounted electrical sockets are often pre-installed in domestic and commercial premises in order to provide sources of electricity for the occupants of those premises and their appliances. Unfortunately, the locations in which these electrical sockets are provided may not always be convenient, especially due to the positioning of furniture or equipment close to a wall on which the wall-mounted electrical socket is located. Furthermore, persons with physical impairments, such as those who are injured, disabled (e.g. wheelchair bound) or who have declining health, may well find it difficult to reach these wall-mounted electrical sockets, especially if a socket is located particularly low or high on a wall, or behind a piece of furniture. The problem is compounded by the fact that rewiring wall-mounted electrical sockets in order to relocate them is a manually intensive and expensive task, which involves considerable work being carried out on one or more walls of the premises, something which may not be permitted in certain circumstances, for instance should the premises be rented, or be a listed building.

Extension cords, having a male plug for insertion into an electrical socket, one or more female appliance outlets and an insulated cable connecting the plug to the one or more outlet are often used to extend the reach of such wall-mounted electrical sockets. These devices, though quite versatile, present a number of issues. For example, the cable can create a tripping hazard or may be chewed or tampered with by children and small animals, and the devices are also often visually unappealing, especially where there is sagging or coiled cabling. Furthermore, though the appliance outlet may have means for mounting to a wall, mounting the appliance outlet in such a way is rarely a suitable option for a user, due to unsightliness and issues with carrying out work on the walls. A further concern is that even if a user chooses to mount an extension cord to a wall, during subsequent use and reordering of the contents of the premises, the new location of the outlet may itself become inconvenient. If the user is to remedy the problem they then need to choose a new

- 2 -

fixed location, perform the necessary work on the wall to provide a new mounting and probably also fix the damage caused by the initial mounting of the appliance outlet to the wall. The present invention thus aims to provide a means by which a user can quickly, securely and simply create an electrical outlet, connected to, but remote from, a wall-mounted electrical socket, without damaging the wall adjacent to the socket. This electrical outlet can thus allow the user greater flexibility in how they organise the contents of a room and also makes reaching the electrical outlet much less demanding.

STATEMENT OF THE INVENTION

According to the present invention there is provided an electrical socket extender to provide an electrical socket remote from a surface/wall-mounted electrical socket, the socket extender comprising:

- a socket engaging portion connectable to the wall-mounted electrical socket and comprising:
  - a non-conductive housing having at least one electrically conductive prong for insertion into a female recess of the wall-mounted electrical socket to electrically couple thereto; and
  - two or more secure primary coupling formations formed about a periphery of the socket engaging portion such that, when the socket engaging portion is engaged with a wall-mounted electrical socket each primary coupling formation may releasably connect to a linkage to form an electrical connection therewith;
- an appliance socket section providing one or more electrical appliance socket and comprising:
  - a body having at least one electrically conductive recess formed therein, the recess allowing insertion of an electrically conductive prong of an electrical appliance plug; and
  - two or more secure secondary coupling formations formed about a periphery of the appliance socket section, each secondary coupling formation releasably connectable to the linkage and each secondary coupling formation having an electrical connection, interior to the body, to electrically-couple the linkage to the electrical appliance socket; and

- the linkage, which connects the appliance socket section to the socket engaging portion, comprising:
  - a substantially rigid, elongate and electrically insulated body having a first end releasably connectable to any of the primary coupling formations, a second end connectable to any of the secondary coupling formations; and
  - a conducting arrangement extending the length of the body, between the first end and the second end to electrically couple the socket engaging portion to the appliance socket section,

wherein the first end of the linkage is connected to the socket engaging portion and the second end of the linkage is connected to the appliance socket section such that the linkage extends from the socket engaging portion over the wall/surface and the appliance socket section is supported in its position remote from the wall-mounted electrical socket by the linkage,

wherein each of the appliance socket section and the socket engaging portion has a handle, and

wherein each handle is movable between a use position and a storage position.

The provision of two or more secure primary coupling formations formed about a periphery of the socket engaging portion, and two or more secure secondary coupling formations formed about a periphery of the appliance socket section, permit the electrical socket extender to be assembled in various configurations, for instance, dependent upon the needs of the user and/or the space limitations of the premises where the electrical socket extender is being used. Each configuration may allow the extender to reach from the wall-mounted electrical socket in a different direction adjacent the wall. The specific locations of the primary coupling formations about the periphery of the socket engaging portion may help to determine in which direction the linkage can extend from the socket engaging portion, when the linkage is connected to one of the primary couplings. The linkage may be integrated to one of the primary couplings.

Four primary coupling formations may be provided and disposed such that a connected linkage can extend generally upward towards the ceiling, downward towards the floor, or in either direction horizontally along the wall. An arrangement such as this should cover most of the orientations that an average user would require of such an electrical socket extender, in order to usefully relocate an electrical socket, adjacent a wall. A plurality of linkages and appliance socket sections may be provided

with the electrical socket extender.   More than one, or each, primary coupling formation of a single socket engaging portion may connect with a separate linkage. Each linkage may be connected to a separate appliance socket section, such that multiple appliance socket sections are provided remote from, but connected to, the single socket engaging portion and wall-mounted electrical socket.  Where a plurality of linkages and appliance socket sections are provided, these may be connected in a modular fashion such that each appliance socket section may connect to and support one or more further linkages and appliance socket sections.

Primary coupling formations and/or secondary coupling formations which are not connected to the linkage may have covers to prevent tampering. This is especially useful as a safety mechanism, as it helps to avoid children tampering with the socket extender, and potentially receiving hazardous electric shocks. The covers of the primary and/or secondary coupling formations may comprise any suitable means, for instance bungs, inserts or shutters. The primary coupling formations may comprise isolating means to prevent a primary coupling formation from conducting electricity unless a linkage is connected therewith. The secondary coupling formations may comprise isolating means to prevent a secondary coupling formation from conducting electricity unless a linkage is connected therewith.  The coupling formations may be covered in such a way that only by introduction of a linkage to the coupling formation is a cover thereof unlocked or moved to prevent accidental access.

The socket engaging portion may comprise disconnecting means to aid in disconnecting the socket engaging portion from the wall-mounted electrical socket. The disconnecting means may be stowed when not required, to prevent the disconnecting means from becoming a nuisance during assembly, disassembly or use of the electrical socket extender, and to enhance the aesthetic appeal of the electrical socket extender. The disconnecting means comprises a handle.  They may be stowed by a folding and/or sliding motion.

The socket engaging portion may further comprise one or more electrical appliance socket.  This has the advantages of increasing the number of electrical appliance sockets and leaving one available at the original location of the socket.  The socket engaging portion may comprise one or more features commonly found on wall-mounted electrical sockets, such as USB charging ports, electrical isolation means (which may comprise one or more ON/OFF switch) and indicator lights to indicate

- 5 -

whether the socket engaging portion and/or any of the secure primary coupling formations are conducting electricity.

The appliance socket section may comprise one or more similar feature, such as USB charging porta, ON/OFF switch and indicator lights.

The electrical socket extender may comprise a timer to control the supply of electricity to any connected appliances. The timer may limit the supply of electricity to certain times of the day and/or may only supply electricity for a specific length of time after the timer is activated, the specific length of time which may be pre-set by a user.

Preferably, the linkage is extendable. The advantage of an extendable linkage is to allow alteration of the effective range of the socket extender to suit requirements. The extension of the linkage may be achieved by including various suitable means.

Preferably, the linkage is also retractable so that it may lengthened and shortened.

Preferably, the linkage comprises a telescopic arrangement to permit adjustment thereof. A telescopic arrangement is a particularly compact means of providing linear contraction and/or extension of the linkage and may permit a wide range of positions. The telescopic arrangement may have at least 2 telescopic linkage sections. A telescopic arrangement can also allow the linkage to be light-weight yet strong when appropriately constructed, for instance by using an appropriate material and/or by modifying the linkage structure. The telescopic arrangement may comprise two or more telescopic linkage sections which slide relative to one another.

The telescopic sections may have a variety of shapes and may be variously configured to allow extension. The telescopic sections may be stacked upon one another and extend by the sliding of adjacent telescopic sections. The telescopic sections may be disposed concentrically of one another and extend by the sliding of internal sections relative to external sections. The telescopic sections may have a substantially constant cross-sectional shape along a portion, or the majority, of each telescopic section. The cross-section could be circular, square, rectangular or oval, though various other shapes are within the scope of the application.

One or more of the telescopic sections may include a stop, which can limit the extension of one telescopic section relative to a connected telescopic section or sections adjacent thereto. Stops may be particularly useful to prevent the telescopic arrangement from coming apart by over extension.

As an alternative to, or in combination with, a telescopic arrangement, the linkage may comprise a folding structure which permits extension of the linkage as relatively movable parts of the folding structure unfold. The folding structure may comprise folding members which fold or pivot relative to one another in order to extend or retract.

Preferably, the telescopic arrangement comprises a releasable locking means to secure the telescopic arrangement at a desired position along a range of linear extended positions. A releasable locking means ensures that the linkage and appliance socket section may be supported stably in a desired extended position. There may be multiple releasable locking means, each acting between adjacent sections of the telescopic arrangement.

The releasable locking means may comprise any suitable mechanism, for instance, one or more clamp, a twist and lock means between adjacent telescopic sections, or a frictional fit between adjacent telescopic sections. A suitable mechanism for the releasable locking means may comprise a snap-lock configuration. A snap-lock configuration may be such that an interior telescopic section comprises a depressible locking formation which is spring-biased to project from the exterior surface of an interior telescopic section, the locking formation which may be depressible into the surface of the interior telescopic section until the projection is at least flush with the surface of the interior telescopic section.

An exterior telescopic section which slides telescopically relative to an interior section may have one or more opening formed along its surface. The opening or openings may be larger than the locking formation, so that the locking formation may spring up through an opening, when an opening slides into position directly above the locking formation (as the telescopic sections move relative to one another), thus securing the interior telescopic section to the exterior telescopic section. Where an exterior telescopic section comprises more than one opening, these may be equally spaced along the length of an exterior section, thus permitting the telescopic arrangement to be securable at a plurality of discrete, regular and secure locking positions.

The locking means may be selectively disengaged by a release mechanism to enable the linkage to be further extended or retracted. The release mechanism may be remote from the locking means. The release mechanism might allow simultaneous

release and engagement of all locking means to enable rapid retraction, or further extension, of the linkage.

Preferably, the linkage comprises at least one joint either formed along the length of the linkage between sub-sections thereof and/or at either end of the linkage. Inclusion of at least one joint may allow the linkage to change direction/orientation. Such a hinge mechanism may comprise adjustable securing means to ensure that the linkage and/or appliance socket section are supported stably in a desired angled position. Such securing means may comprise any suitable pivot hinge fixing position mechanism. Potentially, it could hinge away from the wall and establish an appliance socket section lying away from the plane of the wall on which the built-in socket is formed, yet with the appliance socket section still supported in this remote position. The advantage of a joint formed along the length of the linkage between sub-sections thereof and/or at either end of the linkage is evident in that it affords greater flexibility in terms of how the appliance socket section is positionable. The at least one joint may permit sub-sections of the linkage to hinge in various planes, dependent upon the configuration of the at least one joint relative to the linkage. For example, a joint may allow a sub-section to hinge within the vertical plane created by the wall, or hinge within a second vertical plane lying perpendicular to the plane of the wall, or a horizontal plane perpendicular to both the plane of the wall and the second vertical plane, or any other suitable plane.

Where the linkage comprises more than one joint, then the subsections of the linkage may enable the socket extender to traverse changes in the wall or obstacles located on or adjacent the wall and thus ensure that the appliance socket section may ultimately lie against the wall, if necessary. For example, it may be the case that the wall-mounted electrical socket is located in a skirting board located at the base of the wall, the skirting board projecting a small distance from the wall. In this scenario, a user may wish to use the socket extender to form an electrical socket directly above the wall-mounted electrical socket but with the socket extender lying against the wall. The provision of at least two joints, configured appropriately, could thus permit the linkage to hinge about the top of the skirting board so that the appliance socket section lies against the wall, as required.

The linkage may comprise at least one joint stabiliser, selectively engageable to control articulation of the at least one joint. A joint stabiliser is advantageous in ensuring that sub-sections of the linkage may be secured in a desired hinged position

relative to one another.  This can be especially useful where the imposed moment upon a joint increases, for instance as the linkage is further extended and/or one or more appliance plug are inserted into the appliance socket section. The joint stabiliser may be any effective mechanism, for instance a lock within the joint to lock the joint in a given position, a tight frictional fit between portions of the joint, or a bracing support positioned between sub-sections of a linkage adjacent a joint in order to reduce the load on the joint and instead distribute the weight of the electrical socket extender between sub-sections of the linkage.

Preferably, the linkage comprises at least one swivel formed along the length of the linkage or at either end of the linkage.  The swivel may allow the linkage or a sub-section thereof to swivel relative to the general axis of extension of the linkage. A swivel is useful since in permits more variation in how the electrical socket extender can be orientated, to match the demands of the user and/or environment in which the electrical socket extender is being used. The linkage may comprise at least one swivel lock to prevent movement of parts relative to the at least one swivel.

The appliance socket section comprises a handle for movement of the appliance socket section relative to the socket engaging portion. The handle may be electrically insulated. The handle, when grasped and manipulated by a user, may allow the user to more easily guide the electrical socket extender into a desired position. The handle is movable between a use position and a storage position. The handle may slide or hinge from the use position to the storage position. The appliance socket section may further comprise a recess into which the handle is storable.  The handle may be removably attached to the appliance socket section. Where the handle is removably attachable to the appliance socket section, the handle may be attachable to the appliance socket section at a plurality of separate locations, for instance to allow more convenient relocation of the appliance socket section and/or so as not to interfere generally with usage of the electrical socket extender.

Preferably, two or more linkages may be connected to one another.  This can extend the reach of the electrical socket extender and/or change the direction it extends.

Further preferably, the linkage and/or appliance socket section comprises connecting means to connect/fix the linkage and/or appliance socket section to the wall. Connecting means may be especially useful since, in certain circumstances, the total weight of the socket extender may be greater than can be easily supported by

the connection of the socket engaging portion to the wall-mounted electrical socket. These circumstances could be where multiple linkages are connected in series, or a network of linkages and appliance socket sections extend in a modular arrangement from the wall-mounted electrical socket, all of which can become relatively heavy. Another situation may arise where the electrical socket extender must support the weight of many appliance plugs (and perhaps also the cabling associated with each appliance plug) which are plugged into one or more appliance socket section of the electrical socket extender.

The connecting means may be non-damaging and thus may be configured to prevent superficial and/or invasive damage, to the wall. Such non-damaging connecting means may comprise any suitable arrangement, for instance one or more sucker or removable, marking or non-marking adhesives and/or securing mechanisms including but not limited to Velcro® pads/strips or magnetic means. As an alternative the connecting means may comprise any suitable arrangement, for instance threaded screws, nails, or non-removable adhesives.

The linkage and/or appliance socket section may comprise means for securing loose cables of electrical appliance plugs. Provision of such means may reduce tripping or catching hazards that could otherwise result from hanging or trailing cables, and the means for securing loose wires may also enhance the aesthetics of the electrical socket extender when in use. The means for securing loose cables of electrical appliance plugs may comprise any suitable arrangement, for instance a hook over which the cables may be draped or looped.

Preferably, a part of the socket engaging portion is interchangeable with differently configured parts to accommodate wall-mounted electrical sockets of different configurations and a part of the appliance socket section may be independently interchangeable to accommodate electrical appliance plugs of differing configurations. Interchangeable socket engaging portions may be particularly useful, for instance, where the configuration of the electrical socket differs, such as internationally, and so the socket engaging portion may be interchanged for a socket engaging portion which matches the differing configuration. By providing interchangeable socket engaging portions, a user may bring their appliances with them overseas to be used with the electrical socket extender. Similarly, an independently interchangeable appliance socket section, as mentioned above, may be useful in

- 10 -

international territories where a user seeks to use foreign appliance plugs with the electrical socket extender.

A part of the socket engaging portion, including the at least one electrically conductive prong, may be interchangeable to accommodate wall-mounted electrical sockets of different configurations. A part of the appliance socket section, including the at least one electrically conductive recess, may be interchangeable to accommodate electrical appliance plugs of differing number or configuration. This interchangeability confers the same and further advantages as those associated with the interchangeability of the appliance socket section and/or socket engaging portion, as mentioned above.

An electrical socket extender as that described above may be provided in kit form, the kit including a plurality of interchangeable socket engaging portions to connect to wall-mounted electrical sockets of differing configuration and/or may comprise a plurality of independently interchangeable appliance socket sections to accommodate electrical appliance plugs of differing number or configuration. The kit may alternatively comprise a socket engaging portion with a plurality of interchangeable parts to accommodate wall-mounted electrical sockets of different configurations and/or the appliance socket section with a plurality of interchangeable parts to accept electrical appliance plugs of differing configuration. Kits such as those outlined above may be especially useful to a user who travels frequently to various countries, and who may want to pack only the elements of the kit required for that particular country or countries.

An electrical socket extender as that described above may be provided in an assembled form wherein the socket engaging portion, the appliance socket section, and the linkage may be integrated in a single unit.

BRIEF DESCRIPTION OF THE DRAWINGS

In order that it be better understood, but by way of example only, the present invention will now be described with reference to the accompanying drawings in which:

**Figure 1** is a perspective view of a first embodiment of an electrical socket extender connected to a wall-mounted electrical socket;

**Figure 2** is a perspective view of a second embodiment of an electrical socket extender connected to a wall-mounted electrical socket mounted near the top of a wall;

**Figure 3** is a perspective view of the electrical socket extender of Fig. 2, here connected to a wall and extending horizontally along the wall;

**Figure 4** is a perspective view of a third embodiment of an electrical socket extender extending around an interior corner of a room;

**Figure 5** is a perspective view of a fourth embodiment of an electrical socket extender extending horizontally around a corner and then vertically;

**Figure 6** is a perspective view of a fifth embodiment of electrical socket extender extending vertically upwards in front of an upper cupboard;

**Figure 7** is a perspective view of parts of an electrical socket extender;

**Figure 8** is a perspective view of a part of an electrical socket extender, wherein the socket engaging portion has interchangeable parts to accommodate wall-mounted electrical sockets of different configurations;

**Figure 9a** is a perspective view of a part of an electrical socket extender; and

**Figure 9b** is a similar perspective view wherein the socket engaging portion includes a timer.

In the drawings, like parts are denoted by like reference numerals.

DETAILED DESCRIPTION OF THE DRAWINGS

Figure 1 shows a perspective view of an electrical socket extender, generally indicated 10, in accordance with the present invention. The electrical socket extender 10 has a socket engaging portion 11 which is connects to a wall-mounted electrical socket 12 mounted in this view upon a skirting board 14, located at the base of a wall/surface 16. The socket extender 10 is shown extending vertically up the wall 16. The socket engaging portion 11 comprises a non-conductive housing having at least one electrically conductive prong (not shown) that inserts into a female recess 18 of the wall-mounted electrical socket 12 to electrically couple thereto. The socket engaging portion 11 further comprises four secure primary coupling formations 20 (not all of which are visible) formed about a periphery of the socket engaging portion 11 such that, when the socket engaging portion 11 is engaged with a wall-mounted electrical socket 12 each primary coupling formation 20 may releasably connect to a linkage, generally indicated 22, to form an electrical connection therewith. The electrical socket extender 10 further comprises an appliance socket section 24 providing two electrical appliance sockets 26. The appliance socket section 24 comprises a body having at

least one electrically conductive recess 27 formed therein, the recess 27 allowing insertion of an electrically conductive prong of an electrical appliance plug.

The appliance socket section 24 further comprises four secure secondary coupling formations 28 formed about a periphery of the appliance socket section 24, though only two are visible, each secondary coupling formation 28 releasably connectable to the linkage 22 and each secondary coupling formation 28 having an electrical connection, interior of the body (and therefore not shown), to electrically-couple the linkage 22 to the two electrical appliance sockets 26.

The electrical socket extender 10 further comprises the linkage 22, which connects the appliance socket section 24 to the socket engaging portion 11. The linkage 22 comprises, in this embodiment, a substantially rigid, elongate and electrically insulated body having a first end 30 releasably connectable to any of the primary coupling formations 20, and a second end 32 connectable to any of the secondary coupling formations 28. The linkage 22 also comprises a conducting arrangement extending the length of the body (internal to the linkage 22 and thus not shown), between the first end 30 and the second end 32 to electrically couple the socket engaging portion 11 to the appliance socket section 24.

In use, when the first end of the linkage 30 is connected, or integrated, to the socket engaging portion 11 and the second end of the linkage 32 is connected, or integrated, to the appliance socket section 24 the linkage 22 extends from the socket engaging portion 11 over the wall 16 and the appliance socket section 24 is supported in its position remote from the wall-mounted electrical socket 12 by the linkage 22. In this embodiment, the linkage 22 linkage is linearly extendable and comprises a telescopic arrangement, generally indicated 34, to permit extension thereof. The telescopic arrangement 34 further comprises releasable locking means, generally indicated 36, to secure the relatively moveable parts of the telescopic arrangement 34 at various positions along a range of linear extended positions. The telescopic arrangement 34 also comprises three joints 37 formed along the length of the linkage 22 between sub-sections thereof. In this embodiment, the three joints 37, are formed as hinges 37, and these hinges 37 permit the sub-sections of the linkage 22 to hinge relative to each other. This allows it to be adjusted around the skirting board 14 so that the appliance socket section 24 is disposed in a recessed position (relative to the skirting board 14) and lying against the wall 16. In this way, the socket extender 10

- 13 -

forms an electrical socket generally above the wall-mounted electrical socket 12 but with the socket extender 10 lying against the wall 16 to save space.

The appliance socket section 24 further comprises a handle 38 for assisting movement of the appliance socket section 24 relative to the socket engaging portion 11. The handle 38 is movable between a use position (as shown) and a storage position. The handle 38 comprises a plurality of telescopic members 40 attached to the appliance socket section 24 and the telescopic members 40 of the handle 38 may be extended to the use position and collapsed to move to the storage position. Similarly, the socket engaging portion 11 comprises disconnecting means 42 to aid in disengaging the socket engaging portion 11 from the wall-mounted electrical socket 12 and in this embodiment the disconnecting means 42 takes the form of a foldable handle 42. The socket engaging portion 11 further comprises an electrical appliance socket 44.

The appliance socket section 24 further comprises features commonly found on wall-mounted electrical sockets, and this embodiment also includes two USB charging ports 46, ON/OFF switches 48 and operational indicator lights 50.

The releasable locking means 36 of the linkage 22 further comprises a snap-lock configuration, generally indicated 51, which is configured such that an interior telescopic section 52 comprises a depressible locking formation (hidden in Figure 1 but visible in Figures 7-9b as 106) which is spring-biased to project from the exterior surface of the interior telescopic section 52. An exterior telescopic section 54 which telescopes around the interior section 52 has several openings 56 formed along its surface, the openings 56 being large enough to accommodate the locking formation. The locking formation springs up under action of the spring, through an opening 56, when an opening 56 slides into position directly above the locking formation, thus securing the telescopic sections. The sections of the linkage 22 are generally hollow and square in cross-section.

Primary coupling formations 20, and secondary coupling formations 28, which are not connected, or integrated, to the linkage 22 are covered by moveable shutters 58 in order to prevent tampering.

Figure 2 shows a perspective view of a second embodiment of an electrical socket extender 200 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted near the top of a wall 16, close to the ceiling, the socket extender 200 extending vertically down the wall. Grasping of the

- 14 -

handle 38 may help a user to extend the linkage of the electrical socket extender 200, to position the appliance socket section 24 in a convenient location for use.

Figure 3 shows a perspective view of the electrical socket extender 200 of Figure 2, here connected to a wall-mounted electrical socket 12 mounted near the floor, above a skirting board 14, the socket extender 200 extending horizontally along the wall 16, with the appliance socket section 24 supported in its position remote from the wall-mounted electrical socket 12 by the linkage 22.

Figure 4 shows a perspective view of a third embodiment of an electrical socket extender 300 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted near the floor, above a skirting board 14, the socket extender 300 extending horizontally along the wall 16 and around an interior corner of a room.  This arrangement is made possible by the presence of a pivoting joint 70 formed between sub-sections of the linkage 22. This embodiment could just as usefully be used to traverse around an exterior corner between two walls.

Figure 5 shows a perspective view of a fourth embodiment of an electrical socket extender 400 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted near the floor, above a skirting board 14, the socket extender 400 extending first horizontally along the wall 16, then around an interior corner of a room by way of a first joint 70 and then vertically up a second wall. This embodiment is similar to that of Figure 4, except that a second joint 80, with an axis of rotation rotated 90 degrees relative to the joint 70, is formed along the length of the linkage 22 which allows the electrical socket extender 400 to extend further up the second wall, above the height of the wall-mounted electrical socket 12.

Figure 6 shows a perspective view of a fifth embodiment of an electrical socket extender 500 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted around the midpoint of a wall between two wall-mounted cupboards.  The socket extender 500 first extends vertically up the wall, then out from the wall underneath the upper cupboard 90, then vertically upwards in front of the upper cupboard 90. This arrangement could be useful if the workspace above the lower cupboard 92 must be kept free from appliance plugs and their wiring. It will be appreciated that other suitable arrangements are also possible.

Figure 7 shows a perspective detail view, of a part of an electrical socket extender in accordance with the present invention, wherein the socket engaging portion, generally indicated 11a and 11b, is interchangeable to accommodate wall-

mounted electrical sockets of different configurations, and two possible distinct interchangeable versions are illustrated; a three-pronged version 11a and a two-pronged version 11b. The cooperating shapes of the cuboidal locking formation 106 and square openings 56 formed on the surface of the exterior telescopic section 54 are also easily identifiable. Depressing the locking formation 106 permits the exterior telescopic section 54 to slide relative to the interior telescopic section 52, until an opening 56 is directly above the locking formation 106, whereupon the locking formation pops up through an opening 56, under action of a spring, and secures the exterior telescopic section 54 relative to the interior telescopic section 56.

Figure 8 shows a perspective detail view of a part of an electrical socket extender, in accordance with the present invention, wherein a region of the socket engaging portion 11, is interchangeable to accommodate wall-mounted electrical sockets of different configurations. Two possible distinct interchangeable parts with the electrically conductive prongs are illustrated; a two-pronged version 112 and a three-pronged version 114. Either of these may be slid into a recess 110 on the socket engaging portion 11 to engage and electrically couple thereto.

Figure 9a shows a perspective detail view of a part of an electrical socket extender, in accordance with the present invention, wherein the socket engaging portion 11 comprises an electrical appliance socket 120 into which an appliance plug may be introduced.

Figure 9b shows a similar perspective detail view of a part of an electrical socket extender, in accordance with the present invention, with a different embodiment of socket engaging portion 126 which comprises a timer 130 to control the supply of electricity from the wall-mounted electrical socket (not shown) to any appliances connected to the electrical socket extender (not shown in this view).

- 16 -

## CLAIMS

1. An electrical socket extender to provide an electrical socket remote from a wall-mounted electrical socket, the socket extender comprising:

   - a socket engaging portion connectable to the wall-mounted electrical socket and comprising:

     - a non-conductive housing having at least one electrically conductive prong for insertion into a female recess of the wall-mounted electrical socket to electrically couple thereto; and

     - two or more secure primary coupling formations formed about a periphery of the socket engaging portion such that, when the socket engaging portion is engaged with a wall-mounted electrical socket each primary coupling formation may releasably connect to a linkage to form an electrical connection therewith;

   - an appliance socket section providing one or more electrical appliance socket and comprising:

     - a body having at least one electrically conductive recess formed therein, the recess allowing insertion of an electrically conductive prong of an electrical appliance plug; and

     - two or more secure secondary coupling formations formed about a periphery of the appliance socket section, each secondary coupling formation releasably connectable to the linkage and each secondary coupling formation having an electrical connection, interior to the body, to electrically-couple the linkage to the electrical appliance socket; and,

   - the linkage, which connects the appliance socket section to the socket engaging portion, comprising:

     - a substantially rigid, elongate and electrically insulated body having a first end releasably connectable to any of the primary coupling formations, a second end connectable to any of the secondary coupling formations; and

- 17 -

- a conducting arrangement extending the length of the body, between the first end and the second end to electrically couple the socket engaging portion to the appliance socket section,

wherein the first end of the linkage is connected to the socket engaging portion and the second end of the linkage is connected to the appliance socket section such that the linkage extends from the socket engaging portion over the wall and the appliance socket section is supported in its position remote from the wall-mounted electrical socket by the linkage,

wherein each of the appliance socket section and the socket engaging portion has a handle, and

wherein each handle is movable between a use position and a storage position.

2. An electrical socket extender as claimed in claim 1, wherein the linkage is extendable.

3. An electrical socket extender as claimed in claim 2, wherein the linkage comprises a telescopic arrangement to permit extension thereof.

4. An electrical socket extender as claimed in claim 3, wherein the telescopic arrangement comprises a releasable locking means to secure the telescopic arrangement at various positions along a range of linear extended positions.

5. An electrical socket extender as claimed in any preceding claim, wherein the linkage includes at least one joint either formed along the length of the linkage between sub-sections thereof or at either end of the linkage.

6. An electrical socket extender as claimed in claim 5, wherein the linkage comprises at least one joint stabiliser, selectively engageable to prevent articulation of the at least one joint.

7. An electrical socket extender as claimed in any preceding claim, wherein the linkage comprises at least one swivel formed along the length of the linkage or at either end of the linkage.

8.  An electrical socket extender as claimed in claim 7, wherein the linkage comprises at least one swivel lock to prevent movement of parts relative to the at least one swivel.

9.  An electrical socket extender as claimed in claim 4, wherein the locking means may be selectively disengaged by a release mechanism to enable the linkage to be further extended or retracted.

10. An electrical socket extender as claimed in any preceding claim, wherein the linkage comprises means to enable two or more of such linkages to be connected to one another between the socket engaging portion and the appliance socket section, to extend the reach of the electrical socket extender and/or change direction.

11. An electrical socket extender as claimed in any preceding claim, wherein the linkage and/or appliance socket section comprises connecting means to connect the linkage and/or appliance socket section to the wall.

12. An electrical socket extender as claimed in any preceding claim, wherein a part of the socket engaging portion is interchangeable with differently configured parts to accommodate wall-mounted electrical sockets of different configurations and a part of the appliance socket section is independently interchangeable to accommodate electrical appliance plugs of differing configurations.

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 29798129 |
| **Filing Date:** | 06-Jul-2021 |
| **Title of Invention:** | OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Filer:** | Todd A. Benni/Danielle Mueller |
| **Attorney Docket Number:** | 48071-00005 |

Filed as Small Entity

**Filing Fees for   Design**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| SUBMISSION- INFORMATION DISCLOSURE STMT | 2806 | 1 | 104 | 104 |
| **Total in USD ($)** | | | | **104** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 48014501 |
| **Application Number:** | 29798129 |
| **International Application Number:** | |
| **Confirmation Number:** | 6583 |
| **Title of Invention:** | OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Danielle Mueller |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00005 |
| **Receipt Date:** | 17-MAY-2023 |
| **Filing Date:** | 06-JUL-2021 |
| **Time Stamp:** | 08:16:37 |
| **Application Type:** | Design |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $ 104 |
| RAM confirmation Number | E20235G916595704 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Information Disclosure Statement (IDS) Form (SB08) | IDS_32024993v1.pdf | 1078672<br><br>bde8675ba92c239ecffb93b090c2468f29610037 | no | 4 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Non Patent Literature | NPL_-_ISR-WO_PCT-US2021-012261_32025224v1.pdf | 792981<br><br>0b2f6c7b5c9bdec0d5336ff9e99fddb330ed72d1 | no | 15 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Foreign Reference | FR1_-_GB2571295_32025181v1.pdf | 4479541<br><br>b705229f90ac340f59aaf5a586de5f6f61d80e23 | no | 28 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Fee Worksheet (SB06) | fee-info.pdf | 37587<br><br>493d2d0b74f7544d9f6aa0d267d953acd1ed8e9c | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 6388781 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

DocCode - SCORE

# SCORE Placeholder Sheet for IFW Content

Application Number: 29798129          Document Date: 06/08/2023

The presence of this form in the IFW record indicates that the following document type was received in electronic format on the date identified above.  This content is stored in the SCORE database.

Since this was an electronic submission, there is no physical artifact folder, no artifact folder is recorded in PALM, and no paper documents or physical media exist.  The TIFF images in the IFW record were created from the original documents that are stored in SCORE.

- Drawing

At the time of document entry (noted above):
- USPTO employees may access SCORE content via DAV or via the SCORE web page.
- External customers may access SCORE content via PAIR using the Supplemental Content tab.

Form Revision Date:  March 1, 2019

PATENT APPLICATION

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re app.: | Tony Matthew Galazin | Group Art Unit: | 2926 |
| Serial No.: | 29/798,129 | Examiner: | KUMPF, SETH DAVID |
| Filing Date: | July 6, 2021 | Docket No.: | 48071-00005 |
| | | Confirmation No.: | 6583 |

Title:   OUTLET EXTENDER

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

### RESPONSE TO RESTRICTION REQUIREMENT

Dear Sir:

Applicant acknowledges receipt of the April 21, 2023 Restriction Requirement, setting a shortened statutory period of reply of two months. As this Response is being filed electronically on June 8, 2023, applicant believes no additional fees are due. However, if any fees are required for filing this Response, please charge such fees to our Deposit Account No. 13-0265 identifying attorney docket number 48071-00005.

Applicant respectfully requests that the Patent Office consider the following Amendments and Remarks in examining the present application.

1

32108867.1

2

## SPECIFICATION

Please amend the specification as follows:

~~Figure 1 is a perspective view of an outlet extender showing my new design;~~

~~Figure 2 is a front view thereof;~~

~~Figure 3 is a rear view thereof;~~

~~Figure 4 is a first side view thereof;~~

~~Figure 5 is a second side view thereof;~~

~~Figure 6 is a top view thereof;~~

~~Figure 7 is a bottom view thereof;~~

Figure [[8]] 1 is a perspective view of ~~a second~~ an embodiment of an outlet extender showing my new design;

Figure [[9]] 2 is a front view thereof;

Figure [[10]] 3 is a rear view thereof;

Figure [[11]] 4 is a first side view thereof;

Figure [[12]] 5 is a second side view thereof;

Figure [[13]] 6 is a top view thereof; and

Figure [[14]] 7 is a bottom view thereof.

2

# DRAWINGS

Please amend the drawings as shown in the attached Replacement Drawing Sheets. Particularly, please cancel original Sheets 1-8 and replace them with the attached 8 Replacement Drawing Sheets, which withdraw original Figures 1-7.

32108867.1

## REMARKS

In the Restriction Requirement dated April 21, 2023, the Examiner indicates that election to one of the following patentably inventions are required under 35 U.S.C. §121:

- Group I:   Embodiment 1 - Figs. 1-7
- Group II:  Embodiment 2 - Figs. 8-14

### Election

In response to the Restriction Requirement, applicant elects to prosecute Group II: Embodiment 2, Figures 8-14 on the merits without traverse. Applicant hereby withdraws from the present application Figures 1-7 without prejudice – see the attached drawings canceling such figures without prejudice. Moreover, Applicant amends the Specification as indicated above to remove the reference to original Figures 1-7. Applicant, therefore, respectfully requests earnest allowance of Group II: Embodiment 2, Figures 8-14.

### CONCLUSION

In light of the foregoing, applicant submits that the application is now in condition for allowance and earnestly request indication of such. If the Examiner has any questions pertaining to the above, then the undersigned attorney would welcome a phone call to provide any further clarification or a formal interview.

Respectfully submitted,

Date: June 8, 2023

/Todd A. Benni/
Todd A. Benni, Reg. No. 42,313
McDonald Hopkins LLC
600 Superior Avenue, E.
Suite 2100
Cleveland, OH 44114-2653
(216) 348-5712

4

32108867.1

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 48122776 |
| **Application Number:** | 29798129 |
| **International Application Number:** | |
| **Confirmation Number:** | 6583 |
| **Title of Invention:** | OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Danielle Mueller |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00005 |
| **Receipt Date:** | 08-JUN-2023 |
| **Filing Date:** | 06-JUL-2021 |
| **Time Stamp:** | 14:10:19 |
| **Application Type:** | Design |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | Response_to_Restriction_Requirement_32110144v1.pdf | 120642<br><br>1726419e138de7fce088a42bcb4149c2ddaec722 | yes | 4 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Response to Election / Restriction Filed | 1 | 1 |
| Specification | 2 | 2 |
| Drawings-only black and white line drawings | 3 | 3 |
| Applicant Arguments/Remarks Made in an Amendment | 4 | 4 |

**Warnings:**

**Information:**

| 2 | Drawings-other than black and white line drawings | RR_Drawings_for_filing_32108 999v1.pdf | 398887 916d1ef335b55a5a374b18b32c8344808a7 131ae | no | 8 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| Total Files Size (in bytes): | 519529 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

CANCELLED



FIG. 1

CANCELLED



**FIG. 2**

**FIG. 3**

CANCELLED



FIG. 4                    FIG. 5

CANCELLED



FIG. 6



FIG. 7

Replacement Sheet
29/798,129
Tony Matthew Galazin



**FIG. 1**

Replacement Sheet
29/798,129
Tony Matthew Galazin



FIG. 2          FIG. 3

Replacement Sheet
29/798,129
Tony Matthew Galazin



**FIG. 4**          **FIG. 5**

Replacement Sheet
29/798,129
Tony Matthew Galazin



**FIG. 6**



**FIG. 7**



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 33772 | 7590 | 07/17/2023 |
|---|---|---|

MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| EXAMINER |
|---|
| KUMPF, SETH DAVID |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2926 | |

DATE MAILED: 07/17/2023

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 29/798,129 | 07/06/2021 | Tony Matthew Galazin | 48071-00005 | 6583 |

TITLE OF INVENTION: OUTLET EXTENDER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $296 | $0.00 | $0.00 | $296 | 10/17/2023 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 40% the amount of undiscounted fees, and micro entity fees are 20% the amount of undiscounted fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, *or via EFS-Web.*

By mail, send to:     Mail Stop ISSUE FEE
                      Commissioner for Patents
                      P.O. Box 1450
                      Alexandria, Virginia 22313-1450

By fax, send to:     (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

33772          7590          07/17/2023

MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

|  |  |
|---|---|
|  | (Typed or printed name) |
|  | (Signature) |
|  | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 29/798,129 | 07/06/2021 | Tony Matthew Galazin | 48071-00005 | 6583 |

TITLE OF INVENTION: OUTLET EXTENDER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $296 | $0.00 | $0.00 | $296 | 10/17/2023 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| KUMPF, SETH DAVID | 2926 | D13-137400 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❏ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

❏ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❏ Individual ❏ Corporation or other private group entity ❏ Government

4a. Fees submitted:     ❏Issue Fee     ❏Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

❏ Electronic Payment via Patent Center or EFS-Web     ❏ Enclosed check     ❏ Non-electronic payment by credit card (Attach form PTO-2038)

❏ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

❏ Applicant certifying micro entity status. See 37 CFR 1.29

❏ Applicant asserting small entity status. See 37 CFR 1.27

❏ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 29/798,129 | 07/06/2021 | Tony Matthew Galazin | 48071-00005 | 6583 |

| | | |
|---|---|---|
| 33772 | 7590 | 07/17/2023 |

MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| EXAMINER |
|---|
| KUMPF, SETH DAVID |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2926 | |

DATE MAILED: 07/17/2023

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

**OMB Clearance and PRA Burden Statement for PTOL-85 Part B**

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**Privacy Act Statement**

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability*<br>*For*<br>*A Design Application* | Application No.<br>29/798,129 | Applicant(s)<br>Galazin, Tony Matthew | |
|---|---|---|---|
| | Examiner<br>SETH D KUMPF | Art Unit<br>2926 | AIA (FITF) Status<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308. This notice does not set or reset the time period for paying the issue fee. The issue fee must be paid within THREE MONTHS FROM THE MAILING DATE of the Notice of Allowance (PTOL-85) or this application shall be regarded as ABANDONED. This statutory period cannot be extended. See 35 U.S.C.151.

1. ☑ This communication is responsive to <u>amendment on 08 June 2023</u> .

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ the restriction requirement and election have been incorporated into this action.

3. ☑ The claim is allowed.

4. ☑ Acceptable drawings:

    (a) ☑ The drawings filed on <u>08 June 2023</u> are accepted by the Examiner.

    (b) ☐ Drawing <u>Figures</u> filed on _____ and drawing <u>Figures</u> filed on _____ are accepted by the Examiner.

5. ☐ The claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f) is acknowledged.

    **Certified copies:**

    a) ☐ All    b) ☐ Some    *c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

        * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirement for corrected drawings noted in item 6 below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.** See 37 CFR 1.85(c).  **NOTE: This notice does not set or reset the time period for paying the issue fee.**

6. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of

    Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☑ Information Disclosure Statements (PTO/SB/08),<br>    Paper No./Receipt Date _____

3. ☐ Interview Summary (PTO-413),<br>    Paper No./Mail Date _____ .

4. ☐ Examiner's Amendment/Comment

5. ☐ Examiner's Statement of Reasons for Allowance

6. ☐ Other _____ .

| NOTE: _____ | _____ |
|---|---|
| /ROSEMARY K TARCZA/<br>Primary Examiner, Art Unit 2918 | /S.D.K./<br>Examiner, Art Unit 2926 |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 29/798,129 | Galazin, Tony Matthew |
| | **Examiner** | **Art Unit** |
| | SETH D KUMPF | 2926 |

**CPC**

| Symbol | | | | Type | Version |
|---|---|---|---|---|---|
| | / | | / | | |

**CPC Combination Sets**

| Symbol | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|
| | / | | / | | | |

| Use images from artifact folder? ○ Yes ◉ No | | |
|---|---|---|
| /SETH DAVID KUMPF/<br>Examiner, Art Unit 2926<br><br>(Assistant Examiner) | 26 June 2023<br><br><br>(Date) | **Total Claims Allowed:**<br><br>1 |
| /ROSEMARY K TARCZA/<br>Primary Examiner, Art Unit 2918<br><br>(Primary Examiner) | 26 June 2023<br><br><br>(Date) | O.G. Print Claim(s)<br><br>1 | O.G. Print Figure<br><br>1 |

U.S. Patent and Trademark Office  Page 1 of 3  Part of Paper No.: 20230626

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ‖‖‖‖‖‖‖‖‖‖‖ | 29/798,129 | Galazin, Tony Matthew |
| | **Examiner** | **Art Unit** |
| | SETH D KUMPF | 2926 |

**INTERNATIONAL CLASSIFICATION**

**CLAIMED**

|   |   | / | 13 |   | / | 03 |
|---|---|---|---|---|---|---|

**NON-CLAIMED**

|   |   | / |   |   | / |   |
|---|---|---|---|---|---|---|

**US ORIGINAL CLASSIFICATION**

| CLASS | SUBCLASS |
|---|---|
| D13 | 137.1 |

**CROSS REFERENCES(S)**

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

| Use images from artifact folder? ○ Yes ● No | | | | |
|---|---|---|---|---|
| /SETH DAVID KUMPF/<br>Examiner, Art Unit 2926<br><br>(Assistant Examiner) | 26 June 2023<br><br><br>(Date) | **Total Claims Allowed:**<br><br>1 | | |
| /ROSEMARY K TARCZA/<br>Primary Examiner, Art Unit 2918<br><br>(Primary Examiner) | 26 June 2023<br><br><br>(Date) | O.G. Print Claim(s)<br><br>1 | O.G. Print Figure<br><br>1 | |

| U.S. Patent and Trademark Office | Page 2 of 3 | Part of Paper No.: 20230626 |
|---|---|---|

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| [barcode] | 29/798,129 | Galazin, Tony Matthew |
| | **Examiner** | **Art Unit** |
| | SETH D KUMPF | 2926 |

| ☑ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 | | | | | |

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

| Use images from artifact folder? ○ Yes ◉ No | | |
|---|---|---|
| /SETH DAVID KUMPF/<br>Examiner, Art Unit 2926<br>(Assistant Examiner) | 26 June 2023<br><br>(Date) | **Total Claims Allowed:**<br><br>1 |
| /ROSEMARY K TARCZA/<br>Primary Examiner, Art Unit 2918<br>(Primary Examiner) | 26 June 2023<br><br>(Date) | O.G. Print Claim(s) | O.G. Print Figure |
| | | 1 | 1 |

| *Search Notes* | Application/Control No.<br><br>29/798,129 | Applicant(s)/Patent Under Reexamination<br><br>Galazin, Tony Matthew |
|---|---|---|
| | Examiner<br><br>SETH D KUMPF | Art Unit<br><br>2926 |

**CPC - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| H01R 13/11, 518, 642, 652 | 02/01/2023 | /S.D.K./ |
| H01R 25/003, 006 | 02/01/2023 | /S.D.K./ |
| H01R 43/26 | 02/01/2023 | /S.D.K./ |
| H01H 71/62 | 02/01/2023 | /S.D.K./ |
| H01H 73/14 | 02/01/2023 | /S.D.K./ |

**CPC Combination Sets - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| | | |

**US Classification - Searched***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| D13 | 137.1, 137.2, 137.3, 137.4, 138.1, 138.2, 139.1, 139.2, 139.3, 139.4, 139.5, 139.6, 139.7, 139.8, 184, 199 | 01/30/2023 | /S.D.K./ |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| | /S.D.K./<br>Examiner, Art Unit 2926 |
|---|---|
| | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 29/798,129 | Galazin, Tony Matthew |
| | **Examiner** | **Art Unit** |
| | SETH D KUMPF | 2926 |

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor name search | 01/26/2023 | /S.D.K./ |
| SEARCH text search: Toka, Electrical Plug, Electrical Socket, Outlet Extender, Electrical Receptacle, Electrical Outlet, Power Supply Receptacle, Electrical Outlet Enclosure, Extension Socket | 01/27/2023 | /S.D.K./ |
| Internet text search: Toka, Electrical Plug, Electrical Socket, Outlet Extender, Electrical Receptacle, Electrical Outlet, Power Supply Receptacle, Electrical Outlet Enclosure, Extension Socket | 02/01/2023 | /S.D.K./ |
| Orbit text search: Toka, Electrical Plug, Electrical Socket, Outlet Extender, Electrical Receptacle, Electrical Outlet, Power Supply Receptacle, Electrical Outlet Enclosure, Extension Socket | 02/02/2023 | /S.D.K./ |
| Internet text search: EZ Outlet Vertical Electrical Outlet Extender | 04/14/2023 | /S.D.K./ |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| D13 | 137.1 | 06/26/2023 | /S.D.K./ |

| | /S.D.K./<br>Examiner, Art Unit 2926 |
|---|---|

# Bibliographic Data

Application No: **29/798,129**

Foreign Priority claimed: ◯ Yes  ⬤ No

35 USC 119 (a-d) conditions met: ☐ Yes  ☑ No    ☐ Met After Allowance

Verified and Acknowledged: | /SETH DAVID KUMPF/ | |
| Examiner's Signature | Initials |

Title: | OUTLET EXTENDER |

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/06/2021 | D13 | 2926 | 48071-00005 |
| **RULE** | | | |

**APPLICANTS**

TOKA, LLC, Greenwich, CT,

**INVENTORS**

Tony Matthew Galazin, Greenwich, CT, UNITED STATES

**CONTINUING DATA**

This application is a CON of 16988045 08/07/2020ABN

16988045 has PRO of 62957903 01/07/2020

**FOREIGN APPLICATIONS**

**IF REQUIRED, FOREIGN LICENSE GRANTED\*\***

07/08/2021

**\*\* SMALL ENTITY \*\***

**STATE OR COUNTRY**

UNITED STATES

**ADDRESS**

MCDONALD HOPKINS LLC

600 Superior Avenue, East

Suite 2100

CLEVELAND, OH 44114-2653

UNITED STATES

**FILING FEE RECEIVED**

$1,020

## PE2E SEARCH – Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| L53 | 7 | ("20130052882" OR "20150129722" OR "20170346244" OR "4553798" OR "5957701" OR "6004138" OR "9965007").pn. | (US-PGPUB; USPAT) | OR | ON | ON | 2023/06/26 01:54 PM |

## PE2E SEARCH – Search History (Interference)

There are no Interference searches to show.

## PE2E SEARCH – Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| L271 | 5 | D13/137.1.ccls. AND @pd>"20230130" | (US-PGPUB; USPAT) | OR | ON | ON | 2023/06/26 01:48 PM |

## PE2E SEARCH – Search History (Interference)

There are no Interference searches to show.

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (02-18)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 29798129 |
| Filing Date | 2021-07-06 |
| First Named Inventor | Tony Matthew Galazin |
| Art Unit | 2926 |
| Examiner Name | Seth David Kumpf |
| Attorney Docket Number | 48071-00005 |

## U.S.PATENTS                    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 4553798 | A | 1985-11-19 | MURPHY | |
| | 2 | 5957701 | A | 1999-09-28 | MCMILLIN | |
| | 3 | 6004138 | A | 1999-12-21 | HARBERTSON | |
| | 4 | 9965007 | B2 | 2018-05-08 | AMELIO | |

If you wish to add additional U.S. Patent citation information please click the Add button.    Add

## U.S.PATENT APPLICATION PUBLICATIONS                    Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20130052882 | A2 | 2013-02-28 | BRAUSEN | |
| | 2 | 20170346244 | A1 | 2017-11-30 | COMIS | |

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.D.K./

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 29798129 |
| Filing Date | 2021-07-06 |
| First Named Inventor | Tony Matthew Galazin |
| Art Unit | 2926 |
| Examiner Name | Seth David Kumpf |
| Attorney Docket  Number | 48071-00005 |

| | 3 | 20150129722 | A1 | 2015-05-14 | GREEN | |
|---|---|---|---|---|---|---|

If you wish to add additional U.S. Published Application citation information please click the Add button. **Add**

## FOREIGN PATENT DOCUMENTS                                                       **Remove**

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2571295 | GB | B | 2022-07-06 | INTELLECTUAL PRODUCTS LTD. | | |

If you wish to add additional Foreign Patent Document citation information please click the Add button **Add**

## NON-PATENT LITERATURE DOCUMENTS                                                **Remove**

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | International Search Report and Written Opinion mailed April 6, 2021; International Patent Application No. PCT/US2021/012261 filed on January 6, 2021. | |

If you wish to add additional non-patent literature document citation information please click the Add button **Add**

## EXAMINER SIGNATURE

| Examiner Signature | /SETH DAVID KUMPF/ | Date Considered | 06/26/2023 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.D.K./

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 29798129 |
| Filing Date | 2021-07-06 |
| First Named Inventor | Tony Matthew Galazin |
| Art Unit | 2926 |
| Examiner Name | Seth David Kumpf |
| Attorney Docket  Number | 48071-00005 |

---

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☒ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☐ A certification statement is not submitted herewith.

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Todd A. Benni/ | Date (YYYY-MM-DD) | 2023-05-17 |
|---|---|---|---|
| Name/Print | Todd A. Benni | Registration Number | 42313 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.18

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.D.K./

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE | By fax, send to: | (571)-273-2885 |
|---|---|---|---|
| | Commissioner for Patents | | |
| | P.O. Box 1450 | | |
| | Alexandria, Virginia 22313-1450 | | |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

33772        7590        07/17/2023

MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

| | (Typed or printed name) |
|---|---|
| | (Signature) |
| EFS | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 29/798,129 | 07/06/2021 | Tony Matthew Galazin | 48071-00005 | 6583 |

TITLE OF INVENTION: OUTLET EXTENDER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $296 | $0.00 | $0.00 | $296 | 10/17/2023 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| KUMPF, SETH DAVID | 2926 | D13-137400 |

| 1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363). | 2. For printing on the patent front page, list | |
|---|---|---|
| ☐ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached. | (1) The names of up to 3 registered patent attorneys or agents OR, alternatively, | 1  McDonald Hopkins LLC |
| | (2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed. | 2 _____ |
| ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.** | | 3 _____ |

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

| (A) NAME OF ASSIGNEE | (B) RESIDENCE: (CITY and STATE OR COUNTRY) |
|---|---|
| TOKA, LLC | Greenwich, CT |

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. Fees submitted:  ☒ Issue Fee  ☐ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☒ Electronic Payment via Patent Center or EFS-Web       ☐ Enclosed check       ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. 130265

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

| Authorized Signature | /Todd A. Benni/ | Date | October 16, 2023 |
|---|---|---|---|
| Typed or printed name | Todd A. Benni | Registration No. | 42313 |

PTOL-85 Part B (08-18) Approved for use through 01/31/2020        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 29798129 |
| **Filing Date:** | 06-Jul-2021 |
| **Title of Invention:** | OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Filer:** | Todd A. Benni/Danielle Mueller |
| **Attorney Docket Number:** | 48071-00005 |

Filed as Small Entity

**Filing Fees for   Design**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| DESIGN ISSUE FEE | 2502 | 1 | 296 | 296 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **296** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 48721070 |
| **Application Number:** | 29798129 |
| **International Application Number:** | |
| **Confirmation Number:** | 6583 |
| **Title of Invention:** | OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Danielle Mueller |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00005 |
| **Receipt Date:** | 16-OCT-2023 |
| **Filing Date:** | 06-JUL-2021 |
| **Time Stamp:** | 06:57:51 |
| **Application Type:** | Design |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $296 |
| RAM confirmation Number | E20230F758118206 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | Issue_Fee_32673641v1.pdf | 143020<br><br>1f3fe8cac4dea4e748a1846e7fa1b1a21c3ac4c7 | no | 1 |

| Warnings: |
|---|
| Information: |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 37642<br><br>80a541c8092d1780895be9d3217e87860982c20d | no | 2 |

| Warnings: |
|---|
| Information: |

| | Total Files Size (in bytes): | 180662 |
|---|---|---|

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 29/798,129 | 12/05/2023 | D1006758 | 48071-00005 | 6583 |

33772       7590       11/15/2023
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above. The patent will issue electronically. The electronically issued patent is the official patent grant pursuant to 35 U.S.C. § 153. The patent may be accessed on or after the issue date through Patent Center at https://patentcenter.uspto.gov/. The patent will be available in both the public and the private sides of Patent Center. Further assistance in electronically accessing the patent, or about Patent Center, is available by calling the Patent Electronic Business Center at 1-888-217-9197.

The USPTO is implementing electronic patent issuance with a transition period, during which period the USPTO will mail a ceremonial paper copy of the electronic patent grant to the correspondence address of record. Additional copies of the patent (i.e., certified and presentation copies) may be ordered for a fee from the USPTO's Certified Copy Center at https://certifiedcopycenter.uspto.gov/index.html. The Certified Copy Center may be reached at (800)972-6382.

### Determination of Patent Term Extension or Adjustment under 35 U.S.C. 154 (b)

Design patents have a term measured from the issue date of the patent and the term remains the same length regardless of the time that the application for the design patent was pending. Since the above-identified application is an application for a design patent, the patent is not eligible for Patent Term Extension or Adjustment under 35 U.S.C. 154(b).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Patents Stakeholder Experience (OPSE), Stakeholder Support Division (SSD) at (571)-272-4200.

IR103 (Rev. 10/09)

INVENTOR(s)  (Please see PATENT CENTER site https://patentcenter.uspto.gov for additional inventors):

Tony Matthew Galazin, Greenwich, CT;

APPLICANT(s)  (Please see PATENT CENTER site https://patentcenter.uspto.gov for additional applicants):

TOKA, LLC, Greenwich, CT;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 29/798,129 | 07/06/2021 | Tony Matthew Galazin | 48071-00005 | 6583 |

33772        7590        12/05/2023
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| EXAMINER |
|---|
| KUMPF, SETH DAVID |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2926 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 12/05/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ipmailbox@mcdonaldhopkins.com

PTOL-90A (Rev. 04/07)

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. |
|---|---|---|
| 29/798,129 | 05-Dec-2023 | D1006758 |

MCDONALD HOPKINS LLC
600 Superior Avenue, East
CLEVELAND, OH 44114-2653

# EGRANT NOTIFICATION

Your electronic patent grant (eGrant) is now available, which can be accessed via Patent Center at https://patentcenter.uspto.gov

The electronic patent grant is the official patent grant under 35 U.S.C. 153. For more information, please visit https://www.uspto.gov/electronicgrants

DocCode - PATENT.GRANT

# SCORE Placeholder Sheet for IFW Content

Application Number: 29798129                    Document Date: 12/05/2023

The presence of this form in the IFW record indicates that the following document type was received in electronic format on the date identified above.  This content is stored in the SCORE database.

Since this was an electronic submission, there is no physical artifact folder, no artifact folder is recorded in PALM, and no paper documents or physical media exist.  The TIFF images in the IFW record were created from the original documents that are stored in SCORE.

- Patent Grant with Color/Grayscale Drawings

At the time of document entry (noted above):
- USPTO employees may access SCORE content via DAV or via the SCORE web page.
- External customers may access SCORE content via PAIR using the Supplemental Content tab.

Form Revision Date:  March 1, 2019

# BABCOCK DECLARATION

# EXHIBIT E

48071-00004

**PCT REQUEST**

1/4

Original (for **SUBMISSION** )

| 0 | For receiving Office use only | |
|---|---|---|
| 0-1 | International Application No. | PCT/US21/12261 |
| 0-2 | International Filing Date | 06 January 2021 (06.01.2021) |
| 0-3 | Name of receiving Office and "PCT International Application" | RO/US PCT INTERNATIONAL APPLICATION |

| 0-4 | Form PCT/RO/101 PCT Request | |
|---|---|---|
| 0-4-1 | Prepared Using | **PCT-SAFE [EFS-Web mode] Version 3.51.093.269 MT/FOP 20201001/0.20.5.24** |
| 0-5 | Petition | |
| | The undersigned requests that the present international application be processed according to the Patent Cooperation Treaty | |
| 0-6 | Receiving Office (specified by the applicant) | **United States Patent and Trademark Office (USPTO) (RO/US)** |
| 0-7 | Applicant's or agent's file reference | **48071-00004** |
| I | Title of Invention | **WALL MOUNTING OUTLET EXTENDER** |
| II | Applicant | |
| II-1 | This person is | **Applicant only** |
| II-2 | Applicant for | **All designated States** |
| II-4 | Name | **TOKA, LLC** |
| II-5 | Address | **351 Pemberwick Road, Apt. 914 Greenwich, Connecticut 06831 United States of America** |
| II-6 | State of nationality | **US** |
| II-7 | State of residence | **US** |
| II-8 | Telephone No. | **216-348-5400** |
| II-10 | e-mail | **ipmailbox@mcdonaldhopkins.com** |
| II-10(a) | E-mail authorization The receiving Office, the International Searching Authority, the International Bureau and the International Preliminary Examining Authority are authorized to use this e-mail address, if the Office or Authority so wishes, to send notifications issued in respect of this international application: | **exclusively in electronic form (no paper notifications will be sent)** |
| III-1 | Applicant and/or inventor | |
| III-1-1 | This person is | **Inventor only** |
| III-1-3 | Inventor for | **All designated States** |
| III-1-4 | Name (LAST, First) | **GALAZIN, Tony Matthew** |
| III-1-5 | Address | **351 Pemberwick Road, Apt. 914 Greenwich, Connecticut 06831 United States of America** |

48071-00004

2/4

**PCT REQUEST**

Original (for **SUBMISSION** )

| | | |
|---|---|---|
| **IV-1** | **Agent or common representative; or address for correspondence** | **Agent** |
| | The person identified below is hereby/ has been appointed to act on behalf of the applicant(s) before the competent International Authorities as: | |
| IV-1-1 | Name (LAST, First) | **BENNI, Todd A.** |
| IV-1-2 | Address | **MCDONALD HOPKINS LLC**<br>**600 Superior Ave., Suite 2100**<br>**Cleveland, Ohio 44114**<br>**United States of America** |
| IV-1-3 | Telephone No. | **216-348-5400** |
| IV-1-5 | e-mail | **ipmailbox@mcdonaldhopkins.com** |
| IV-1-5(a ) | E-mail authorization<br>The receiving Office, the International Searching Authority, the International Bureau and the International Preliminary Examining Authority are authorized to use this e-mail address, if the Office or Authority so wishes, to send notifications issued in respect of this international application: | **exclusively in electronic form (no paper notifications will be sent)** |
| IV-1-6 | Agent's registration No. | **42313** |
| **V** | **DESIGNATIONS** | |
| **V-1** | **The filing of this request constitutes under Rule 4.9(a), the designation of all Contracting States bound by the PCT on the international filing date, for the grant of every kind of protection available and, where applicable, for the grant of both regional and national patents.** | |
| **VI-1** | **Priority claim of earlier national application** | |
| VI-1-1 | Filing date | **07 January 2020 (07.01.2020)** |
| VI-1-2 | Number | **62/957,903** |
| VI-1-3 | Country or Member of WTO | **US** |
| **VI-2** | **Priority claim of earlier national application** | |
| VI-2-1 | Filing date | **07 August 2020 (07.08.2020)** |
| VI-2-2 | Number | **16/988,045** |
| VI-2-3 | Country or Member of WTO | **US** |
| **VI-3** | **Priority document request** | |
| | The receiving Office is requested to prepare and transmit to the International Bureau a certified copy of the earlier application(s) identified above as item(s): | **VI-1**<br>**VI-2** |
| **VI-4** | **Incorporation by reference :** | |
| | where an element of the international application referred to in Article 11(1)(iii)(d) or (e) or a part of the description, claims or drawings referred to in Rule 20.5(a), or an element or part of the description, claims or drawings referred to in Rule 20.5bis(a) is not otherwise contained in this international application but is completely contained in an earlier application whose priority is claimed on the date on which one or more elements referred to in Article 11(1)(iii) were first received by the receiving Office, that element or part is, subject to confirmation under Rule 20.6, incorporated by reference in this international application for the purposes of Rule 20.6. | |
| **VII-1** | **International Searching Authority Chosen** | **European Patent Office (EPO) (ISA/EP)** |

48071-00004

3/4

**PCT REQUEST**

Original (for **SUBMISSION** )

| VIII | Declarations | Number of declarations | |
|---|---|---|---|
| VIII-1 | Declaration as to the identity of the inventor | — | |
| VIII-2 | Declaration as to the applicant's entitlement, as at the international filing date, to apply for and be granted a patent | — | |
| VIII-3 | Declaration as to the applicant's entitlement, as at the international filing date, to claim the priority of the earlier application | — | |
| VIII-4 | Declaration of inventorship (only for the purposes of the designation of the United States of America) | — | |
| VIII-5 | Declaration as to non-prejudicial disclosures or exceptions to lack of novelty | — | |
| **IX** | **Check list** | Number of sheets | Electronic file(s) attached |
| IX-1 | Request (including declaration sheets) | **4** | ✓ |
| IX-2 | Description | **19** | — |
| IX-3 | Claims | **3** | — |
| IX-4 | Abstract | **1** | ✓ |
| IX-5 | Drawings | **12** | — |
| IX-6a | Sequence listing part of the description (also to be used for the purposes of international search) | — | — |
| IX-7 | TOTAL | **39** | |
| | Accompanying Items | Paper document(s) attached | Electronic file(s) attached |
| IX-8 | Fee calculation sheet | ✓ | — |
| **IX-20** | **Figure of the drawings which should accompany the abstract** | 1 | |
| **IX-21** | **Language of filing of the international application** | English | |
| **X-1** | Signature of applicant, agent or common representative | /Todd A. Benni, Reg. No. 42313/ | |
| **X-1-1** | Name (LAST, First) | BENNI, Todd A. | |
| **X-1-3** | Capacity (if such capacity is not obvious from reading the request) | | |

48071-00004

4/4

**PCT REQUEST**

Original (for **SUBMISSION** )

## FOR RECEIVING OFFICE USE ONLY

| 10-1 | Date of actual receipt of the purported international application | 06 January 2021 (06.01.2021) |
|---|---|---|
| **10-2** | **Drawings:** | |
| 10-2-1 | Received | |
| 10-2-2 | Not received | |
| **10-3** | **Corrected date of actual receipt due to later but timely received papers or drawings completing the purported international application** | |
| **10-4** | **Date of timely receipt of the required corrections under PCT Article 11(2)** | |
| **10-5** | **International Searching Authority** | ISA/EP |
| **10-6** | **Transmittal of search copy delayed until search fee is paid** | |

## FOR INTERNATIONAL BUREAU USE ONLY

| 11-1 | Date of receipt of the record copy by the International Bureau | |
|---|---|---|



**THE UNITED STATES OF AMERICA**

**TO ALL TO WHOM THESE PRESENTS SHALL COME:**

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

*January 27, 2021*

**THIS IS TO CERTIFY THAT ANNEXED HERETO IS A TRUE COPY FROM THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE OF THOSE PAPERS OF THE BELOW IDENTIFIED PATENT APPLICATION THAT MET THE REQUIREMENTS TO BE GRANTED A FILING DATE.**

**APPLICATION NUMBER:** *16/988,045*
**FILING DATE:** *August 07, 2020*
**RELATED PCT APPLICATION NUMBER:** *PCT/US21/12261*

**THE COUNTRY CODE AND NUMBER OF YOUR PRIORITY APPLICATION, TO BE USED FOR FILING ABROAD UNDER THE PARIS CONVENTION, IS** *US16/988,045*

Certified by

Under Secretary of Commerce
for Intellectual Property
and Director of the United States
Patent and Trademark Office

UTILITY PATENT APPLICATION

Inventors:    Tony Matthew Galazin

Docket No.:   48071-00003

## TITLE

## WALL MOUNTING OUTLET EXTENDER

CROSS-REFERENCE TO RELATED APPLICATIONS

[0001] This application claims priority to U.S. Provisional Patent Application No. 62/957,903 entitled "WALL MOUNTING OUTLET EXTENDER" filed on January 7, 2020 which is hereby incorporated by reference in its entirety.

FIELD OF THE INVENTION

[0002] The present disclosure generally relates to power outlet extenders and, more specifically, to a rotatable and/or telescopic power outlet extender that may be used to relocate a wall power outlet to multiple other positions on the wall.

BACKGROUND

[0003] Wall power outlets are stationary and, as a result, may be located in inconvenient or inaccessible areas of a household, workplace, or business. For example, wall outlets may end up being positioned behind sofas, mattresses, furniture, shelving, storage items, and the like. Such inconvenient or inaccessible wall outlets may cause any number of problems including the inability to easily plug in or unplug cords and devices into the wall outlet. Additionally, in order to reach these wall outlets, the cord of a particular device, such as that for a smart device, television, computer, laptop, charger, lamp, and the like, may not be long enough to plug into the wall outlet and be used as desired.

[0004] As it stands, actually changing the location and accessibility of an otherwise stationary

{8897786:8 }           1

wall outlet requires an electrician and direct access into the wall. Such relocation of a wall outlet and access into the wall can be invasive, costly, and require a specialized workman or professional installation. Additionally, relocation of a wall outlet to another position on the wall by an electrician is permanent, and the new stationary wall outlet also cannot be further relocated or repositioned at a later time without going through the same process.

[0005] Other options for extending a wall outlet include extension cords. Extension cords typically comprise a flexible cord that plugs into the wall outlet on one end and runs along the floor or other flat surface to its other end that houses one or more outlets. Extension cords are often used temporarily, such as in situations for using power tools outside of the house, powering indoor and outdoor Christmas lights, and the like. When used in more permanent or daily situations, extension cords can clutter the floor or surface it lays on and cause other inconvenience, can be accidentally moved or damaged, and can put stress on the juncture between the wall outlet and the plug resulting in fraying or other damage.

[0006] What is needed is a wall power outlet extender that can be positioned or mounted on a wall and that can relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. What is also needed is a wall power outlet extender that is repositionable, re-mountable, and removable to accommodate changing needs.

## SUMMARY OF THE INVENTION

[0007] A wall outlet extender that extends a wall outlet to a new position on a wall may include a plug end configured to selectively plug into the wall outlet, an outlet end configured to selectively receive one or more plugs, and an extendable shaft between the plug end and the outlet end. The wall outlet extender may be rotatable about the plug end.

[0008] The wall outlet extender may also include any of the foregoing, which may be combined in any manner without departing from the present teachings. In an embodiment, the extendable shaft may include two more or telescoping portions. The extendable shaft may include a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter may be larger than the second diameter. The first telescoping portion may be configured to internally receive the second telescoping portion in a retracted position. In an embodiment, the extendable shaft may be extendable from about 21 inches to about 34 inches. In an embodiment, the plug end may be rotatable about 360°. In an embodiment, the wall outlet extender may further include an engagement portion. The engagement portion may be positioned on a wall-facing side of the outlet end and may be configured to selectively engage the wall. The engagement portion may comprise a non-permanent adhesive, removable putty, or stickable surface. The engagement portion may be free from any attachment to the wall that traverses or damages the wall surface. In an embodiment, the outlet end may include an even number of outlets and at least one USB port. In an embodiment, the outlet end may include interchangeable faceplates. In an embodiment, the outlet end may include a device cradle configured to hold a device while the device is plugged into the outlet end. In an embodiment, the wall outlet extender may include Bluetooth or Wi-Fi connectivity capabilities.

[0009] An extendable power outlet adaptor may include a plug selectively configured to insert into a wall outlet, a shaft that is telescopic and that is rotatable about the plug up to 360°, and one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall adjacent to the wall outlet.

[0010] The wall outlet extender may also include any of the foregoing, which may be combined

in any manner without departing from the present teachings. In an embodiment, the outlet receptacles may be attachable to the wall by temporary adhesive, putty, or stickable surface. In an embodiment, the extendable power outlet adaptor may be free from any attachment to the wall that traverses or damages the wall surface. In an embodiment, the extendable power outlet adaptor may be removed and repositioned onto the wall.

<div align="center">BRIEF DESCRIPTION OF THE DRAWINGS</div>

[0011] The present teachings may be better understood by reference to the following detailed description taken in connection with the following illustrations, wherein:

[0012] FIG. 1A depicts an isometric view of an embodiment of an outlet extender in an extended position in accordance with aspects of the present disclosure;

[0013] FIG. 1B depicts an isometric view of an embodiment of an outlet extender in an extended position in accordance with aspects of the present disclosure;

[0014] FIG. 2A depicts a front view of an embodiment of an outlet extender in a retracted position in accordance with aspects of the present disclosure;

[0015] FIG. 2B depicts a side view of the outlet extender shown in FIG. 2A in a retracted position in accordance with aspects of the present disclosure;

[0016] FIG. 2C depicts a front view of the outlet extender shown in FIG. 2A in an extended position in accordance with aspects of the present disclosure;

[0017] FIG. 2D depicts a side view of the outlet extender shown in FIG. 2A in an extended position in accordance with aspects of the present disclosure;

[0018] FIG. 3A depicts a back view of an outlet extender in a retracted position in accordance with aspects of the present disclosure;

[0019] FIG. 3B depicts an expanded view of Box A of the outlet extender shown in FIG. 3A in accordance with aspects of the present disclosure;

[0020] FIG. 4A depicts an isometric view of an embodiment of an outlet extender as it is being plugged into a wall outlet in accordance with aspects of the present disclosure; and

[0021] FIG. 4B depicts a front view of an embodiment of an outlet extender plugged into a wall outlet and rotated about 90° counter clockwise to a side position in accordance with aspects of the present disclosure;

[0022] FIG. 5 depicts an exploded view of an embodiment of an outlet end and extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

[0023] FIG. 6A depicts an isometric view of an embodiment of a front outlet housing, where FIG. 6B shows a side view, FIG. 6C shows a front view, and FIG. 6D shows a back view of the front outlet housing in accordance with aspects of the present disclosure;

[0024] FIG. 7 depicts front and side views of an embodiment of a plug end and extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

[0025] FIG. 8 depicts an exploded view of an embodiment of a plug end of an outlet extender in accordance with aspects of the present disclosure;

[0026] FIG. 9 depicts an exploded view of an embodiment of an extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

[0027] FIG. 10A depicts an isometric view of an embodiment of a cord assembly and FIG. 10B shows an exploded view of a cord assembly in accordance with aspects of the present disclosure;

[0028] FIG. 11A depicts an isometric view of an embodiment of a front plug housing, where FIG. 11B shows a front view and FIG. 11C shows a back view of the front plug housing in accordance with aspects of the present disclosure.

DETAILED DESCRIPTION

[0029] Reference will now be made in detail to exemplary embodiments of the present teachings, examples of which are illustrated in the accompanying drawings. It is to be understood that other embodiments may be utilized and structural and functional changes may be made without departing from the respective scope of the present teachings. Moreover, features of the various embodiments may be combined or altered without departing from the scope of the present teachings. As such, the following description is presented by way of illustration only and should not limit in any way the various alternatives and modifications that may be made to the illustrated embodiments and still be within the spirit and scope of the present teachings. In this disclosure, numerous specific details provide a thorough understanding of the subject disclosure. It should be understood that aspects of this disclosure may be practiced with other embodiments not necessarily including all aspects described herein, etc.

[0030] As used herein, the words "example" and "exemplary" means an instance, or illustration. The words "example" or "exemplary" do not indicate a key or preferred aspect or embodiment. The word "or" is intended to be inclusive rather than exclusive, unless context suggests otherwise. As an example, the phrase "A employs B or C," includes any inclusive permutation (e.g., A employs B; A employs C; or A employs both B and C). As another matter, the articles "a" and "an" are generally intended to mean "one or more" unless context suggest otherwise.

[0031] Provided is a wall power outlet extender that may be positioned or mounted on a wall and that may relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. The wall power outlet extender may be positionable along a surface of a wall adjacent to a wall power outlet and may allow a user to semi-permanently relocate the wall power outlet. The wall power

outlet extender can be permanent in that it may not be as accidentally movable as an extension cord, may be able to have a low profile on or against a wall, and may have a rigid housing. The wall power outlet extender can be temporary in that it does not require any professional installation, does not require opening of a wall or electrical work, and can easily be unplugged and re-plugged into the same or a different wall power outlet.

[0032] The wall power outlet extender may become fixed and stationary at a particular position and relatively unmovable unless acted on or repositioned by a user. The wall power outlet extender may be selectively rotatable and/or telescopic, and include a spinning or ambidextrous plug, to be adaptable to the specific location and to provide a myriad of different positions in which the new outlet may be placed. The wall power outlet extender may feature multiple outlets, USB ports, and surge protection, as well as Bluetooth and wireless capabilities, which are described in more detail below.

[0033] FIGs. 1-4 depict an outlet extender 100 having a plug end 110 and an outlet or socket end 120 electrically connected by an elongated extender or extendable shaft 130. The outlet extender 100 may comprise a housing (such as 222 described in more detail below) that is partially hollow to accommodate electrical line or lines (of appropriate configuration) positioned through the elongated extender 130 and between the plug end 110 and the outlet end 120. The plug end 110 may include one or more plugs or sets of male contacts 112 that are operatively attachable to an outlet, such as a wall outlet. The plugs or male contacts 112 may be placed on a back or wall-facing side 102 of the outlet extender 100, see FIG. 4A. The plugs or male contacts 112 may be of any orientation and fitted to connect with any type of outlet, including household outlets, appliance outlets, industrial or commercial outlets, and outlets in any country, such as the U.S., Europe, Asia, Australia, etc. In some embodiments, the plugs or male contacts 112 may be

replaceable, i.e., a user may remove one of the plugs or male contacts 112 and replace it with a different one, such as one that has a different configuration. This will allow a user to utilize the outlet extender 100 with one type of plug and then replace the plug or male contact 112 with a different one, such as by way of an example, by replacing a U.S. plug with one of a European configuration. The outlet end 120 may include one or more outlets or female receptacles 122, 124 that operatively receive a plug. In the embodiment shown in FIG. 1, a pair of outlets or female receptacles 122, 124 may be utilized. It should be understood, however, that any number of female receptacles may be utilized, e.g., one, three, four, five, six, etc.

[0034] The outlets or female receptacles 122, 124 may be placed on an opposite side from the plugs or male contacts 112, or on a front or room-facing side 104 of the outlet extender 100. As a result, the plugs or male contacts 112 may be plugged into a wall outlet and the outlets or female receptacles 122, 124 may face the room to be accessible to receive other plugs, see FIG. 4A. The outlets or female receptacles 122, 124 may be of any orientation and fitted to connect with any type of plug, including plugs for household items, appliances (such as electrical dryers), industrial or commercial devices or machinery, electrically powered items, and plugs that are used in any country, such as the U.S., Europe, Asia, Australia, etc. Although the drawings generally depict a three-prong AC plug and outlets as used in the U.S., it is noted that any plug and outlets may be incorporated into the outlet extender design. In some embodiments, the plug and outlet may be of a similar configuration or they may be of a different configuration such that the outlet extender 100 can act as an adapter to change the outlet from a first configuration to a second configuration (e.g. a U.S. plug and European receptacles or vice versa). In an embodiment, the plug end 110 and the outlet end 120 may include mating plugs and outlets, or the plug end 110 and the outlet end 120 may include plug and outlet types that are different. The

plug end 100 may comprise Type A, B, C, D, E, F, G, H, I, J, K, L, M, N and O IEC plug ends that are utilized throughout the world. Further the plug end 100 may comprise a 120 volt end, 240 volt end or a combination of the foregoing.

[0035] In an embodiment, the plug end 110 may include a single plug, may include a single plug and a decoy plug, two plugs, or any number of plugs. The present disclosure contemplates use of any number of plug ends 110 (e.g., one, two, three, etc.). In an embodiment having a decoy plug, the decoy plug may plug into the second outlet in the wall outlet and may provide additional structural support to the outlet extender 100 as it is positioned against the wall. The decoy plug may be made of a plastic or non-electrically conductive material. In an embodiment with two plugs, each plug may enter into one of the outlets on the wall outlet and may receive or transfer power or electricity. FIG. 3B shows an embodiment of the plug end having a single plug 112. In an embodiment having a single plug, the other plug in the wall outlet may remain accessible and accommodate another outlet extender or a plugged in device.

[0036] In an embodiment, the outlet end 120 may include one or more outlets or receptacles 122, 124. For example, the outlet end 120 may include one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, or more outlets. The outlets 122 may be located on the face of the outlet end 120, as shown in FIGs. 1-4, but it is noted that the outlets 122 may be located on any side of the outlet end 120 as well, such as the side, top, or bottom edges. One or more of the outlets 122, 124 may include a GFCI (Ground Fault Circuit Interrupter). The outlets 122, 124 may also include surge protection that can protect against surges or spikes and limit the voltage supplied to a connected device by either blocking or shorting, to ground any voltages above a certain threshold. The outlets 122 may be able to accommodate any necessary voltage and power abilities so as to provide power to and charge cell phones, laptops, computers, tablets,

{8897786:8 }                                      9

appliances, and the like, and may be integrated with increased voltages, cables, and capabilities to provide faster or lightening charging and power. The outlet end 120 may also include one or more USB type outlets 126, such as one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, or more USB type outlets. The USB type outlets 126 may be USB A (shown as 126) or USB C (shown as 127) outlets. The USB type outlets may be located on a face of the outlet end 120 with the plugs, as shown in FIGs. 1A, 2A, and 2C, or may be located on the side of the outlet end 120, and as shown in FIG. 1B. Although other outlet types may not be specifically mentioned, it is noted that any outlet or combination of outlets may be incorporated into the outlet end 120. Further, the outlet end 120 may comprise AFCI outlets, 20 A outlets, or any of Type A, B, C, D, E, F, G, H, I, J, K, L, M, N and O IEC outlets utilized throughout the world.

[0037] The outlet end 120 may include a device cradle, shelf, or holder, such as, for example holder 129. The device cradle, shelf, or holder may be located on any side of the outlet end 120 and may serve as a location to put or hold a device, such as a phone, tablet, home device, security device, or the like. The cradle, shelf, or holder may hold the device while such device is plugged into one of the outlets 122, 124. The cradle, shelf, or holder 129 may also include wireless charging technology to charge a device when it is in physical contact with the cradle, shelf, or holder if the device is within a threshold vicinity or distance to facilitate charging. The cradle, shelf, or holder 129 may also serve as a location to put or hold any item, including pencils, pens, other writing utensils, notebooks, address books, keys, wallets, purses, hairdryers, hair straighteners, toothbrushes, toothpaste, other bathroom items or household items, etc. In an embodiment, an extended shelf or faceplate with an extended shelf may be operatively attached to the outlet end 120 where the extended shelf is capable of holding heavier, larger, or specific objects (e.g., with holders or hooks configured to receive a key ring or hair item, etc.). The

extended shelf may provide any size shelf as may be desired. The outlet end 120 may also include interchangeable faceplates 128 such as for, as an example, decoration or to provide an extended shelf. FIG. 4A, for example, shows a faceplate 128 having a different color than the remaining outlet extender 100. The faceplate 128 may include any color or colors, any pattern, any symbols, and the like, as may be desired. The faceplate 128 may be removed and attached by a sliding mechanism, snapping mechanism, fastener (such as a screw) friction fit, pressure fit, etc. It is noted that the color, shape, number of outlets, and the like, may vary when manufactured.

[0038] The outlet end 120 (or other portion of the outlet extender 100) may include capabilities to connect to Wi-Fi, Bluetooth, and other technology. The outlet end 120 (or other portion of the outlet extender 100) may communicate with any connected Wi-Fi, Bluetooth, Zigbee, or similar device. The outlet end 120 (or other portion of the outlet extender 100) may receive and transmit information to and from a connected device (such as a computer, smart device, tablet or the like), and may carry out instructions. For example, the outlet end 120 may communicate information about outlet extender 100 regarding health, plugged in devices, power utilized, power surges, power outages, whether the plugged in device is powered on or off, hours of use, amount of electricity used over a defined period of time, and the like. The outlet end 120 (or other portion of the outlet extender 100) may also be able to selectively turn on and turn off a plugged in device or power supply to any of the outlets 122, 124, individually or together. Turning on and off a plugged in device or power supply to any of the outlets 122, 124 may be done in response to a command from a connected device (such as a computer, laptop, smart device, smart phone, tablet or the like), through a home device, by voice command, by physical switch on the outlet end 120, or in response to an event such as a power outage, a power surge, after a certain period

of time, or as a result of a programmed routine. Further, the outlet extender 100 may include a sensor or a plurality of sensors that may be used to turn on and turn off the outlet extender 100. By way of a non-limiting example, the sensor may comprise a motion sensor such that it may sense motion and turn on or provide power to the outlet extender 100. Other types of sensors may be utilized, such as light sensors, sound sensors, and the like.

[0039] The outlet end 120 may also include one or more indicators, such as a light indicator. The light indicator may be an LED light. The indicators may indicate whether power is being (or not being) supplied through the outlets 122, 124, whether power is being received from the wall outlet, whether surge protection is enabled, whether the outlet extender 100 is connected to Wi-Fi or Bluetooth, Zigbee, and the like. The one or more light indicators may be different colors, may blink, and may create different patterns or combinations to convey its indications.

[0040] The outlet end 120 or plug end 110 may also include a light that is not an indicator, such as an LED light, that serves as a nightlight. The light may have a sensor to determine ambient light or darkness and may automatically turn on and off when a certain threshold is met (e.g. the light may automatically turn on at dusk and turn off at dawn, when a light in the room is turned on and off, and the like.) The light may further turn on and off by a user pressing a switch or by a command over Wi-Fi, over Bluetooth or Zigbee, by voice, through a home device, and the like. The light may be set to a certain timed schedule to turn on and off at a specific time each day. The light may also include a motion sensor and turn on or off when such motion is sensed, or after a certain set time when no motion is sensed.

[0041] The outlet end 120 or plug end 110 may further include a built-in speaker, for example, a Bluetooth speaker or other configuration of a speaker, or a speaker may be selectively attachable to the outlet end 120 or plug end (such as by a faceplate attachment). The speaker may be

separately chargeable or may pull power from the wall outlet or outlet extender 100 in any appropriate manner. The speaker may be charged by the outlet extender 100 (or more specifically through the power provided to the outlet end 120). The outlet end 120 may include an attachment device of any appropriate configuration to which the speaker may be selectively attached in any appropriate manner.

[0042] In an embodiment, the outlet extender 100 may be fixed, rigid, or stationary along the entirety of its length (e.g. not rotatable or not telescopic). For example, the fixed, rigid, or stationary outlet extender 100 may be provided in different sizes, e.g. 12 inches, 24 inches, 36 inches and any length lesser, greater, or in between. The outlet extender 100 may also include additional fixed adaptors that may be attached to the elongated shaft to adjust the length of the outlet extender 100 while still remaining fixed, rigid, or stationary overall. The fixed, rigid, or stationary outlet extender 100 may also include different oriented plugs or male contact 112 and plugs or female receptacles 122, 124, to facilitate plugging into a wall outlet in a straight orientation, a left side orientation, right side orientation, and similar.

[0043] In an embodiment, the outlet extender 100, or a portion thereof, may be selectively rotatable at a point along its length. The outlet extender 100 may be selectively rotatable any range of degrees, such as, for example from about 5° to about 360°. The outlet extender 100 may be selectively rotatable about 180° so that the outlet end 120 may be positioned straight above the wall outlet in a straight configuration when plugged in (see FIG. 4A), or straight to the left or right of the wall outlet in a horizontal configuration when plugged in (see FIG. 4B), or any variation therebetween, e.g., 45 degrees, 90 degrees, 135 degrees, 225 degrees, 270 degrees, 315 degrees or anything therebetween. The appropriate angle to be utilized may depend on the specific use of the outlet extender 100.

[0044] As shown in FIG. 3B, the plug end 110 may be selectively rotatable in any appropriate manner. In an embodiment, a portion of the plug end 110 may be rotatable, such as the male contacts and associated base, or a swivel component. As seen in FIG. 4A-B, the outlet extender 100 may be plugged into a wall outlet initially in a straight configuration. Once the outlet extender 100 is plugged in at the plug end 110, the outlet end 120 may be rotated to the left about the point defined by the plug end 110 and its attachment to the wall outlet. This rotation may allow the outlet end 120 to clear the side of the couch or other furniture when in a horizontal position so that the outlets are accessible. Although the plug end 110 may be described as selectively rotatable, it is noted that any portion of the outlet extender 100 may be selectively rotatable, including, but not limited to, the extendable shaft 130. A user may selectively rotate the outlet extender 100 prior to plugging in the outlet extender 100 into the wall or when the outlet extender 100 has already been plugged into a wall outlet. The outlet extender 100 or plug end 110 may include a locking mechanism so that once the outlet extender 100 has been positioned in the desired location and at a desired angle, any undesired rotation of the outlet extender 100 may be prevented. The locking mechanism may include a bolt and slot, rotatable bar, spring-loaded hinge, and the like. The rotation of the outlet extender 100 or plug end 110 may be biased towards a certain position, such as a straight state.

[0045] In an embodiment, the outlet extender 100 may include an electrical cord portion between the elongated extender 130 and the plug end 110 that plugs into the wall outlet. The outlet extender 100 may plug into a wall outlet at the plug end 100, and then may be able to bend around a corner, be positioned on the floor, and the like, by the bendable cord portion. For example, the outlet extender 100 may be able to plug behind a desk, set on the floor or set on top of the desk, and have the outlets on the outlet end 120 available wherever the user desires. It is

noted that while embodiments herein describe initial connection into a wall outlet, that any outlet may be used, such as an outlet in a power strip or surge protector.

[0046] In an embodiment, the outlet extender 100 may be selectively extendable. In an embodiment, the elongated extender 130 may be selectively extendable permitting the outlet extender 100 to be extendable. As shown in FIGs. 2A-D, the elongated extender 130 may be transitioned between a retracted state (FIG. 2A, 2B) to an extended state (FIG. 2C, 2D). The extension may be facilitated by telescoping sections or members, wherein one or more sections of the elongated extender 130 may be of a smaller diameter than the immediately adjacent section (located at one of the section's ends) such that the smaller diameter section (see, e.g. 132) may nest into the larger diameter section (see, e.g. 134). The larger diameter section 134 may similarly nest into an even larger diameter section and the small diameter section 132 may similarly be able to nest within it an even smaller diameter section. The elongated extender 130 may include two or more telescoping sections including three, four, five, six, seven eight, etc. sections. The sections may be at least partially hollow so as to accommodate smaller diameter telescoping sections in a collapsed state, as well as electrical lines running through the elongated extender 130 and between the plug end 110 and the outlet end 120.

[0047] Although sections of the elongated extender 130 include reference to diameter, it is noted that a cross-section of the elongated extender 130 may be round, square, or triangular and that nesting of any telescoping sections could be achieved by adapting the perimeter or diameter as described. FIGs. 1-4 generally show an elongated extender 130 having a square or rectangular cross-section. Further, one of the small diameter section 132 or large diameter section 134 or both thereof may be rigid or fixed. This may result in the elongated extender 130 being rigid or fixed. In other embodiments, one of the small diameter section 132 or large diameter section 134

or both thereof may be flexible such that the elongated extender 130 or a portion thereof may be flexible such that it may be positionable around objects, such as furniture, walls, shelves, or the like. The flexible portion may allow the elongated extender 130 to be positioned at any applicable angle, e.g., between 5 degrees and 360 degrees, or between 5 degrees and 180 degrees.

[0048] The extension of the elongated extender 130 between a retracted state (FIG. 2A, 2B) to an extended state (FIG. 2C, 2D) may be facilitated by other extension mechanisms such as an accordion housing, modular adaptors that may be attached to an end of the elongated extender 130, and the like. In an embodiment, the elongated extender 130 may allow extension for any range of length, such as, for example from about 1 inch to about 18 inches to even greater, and any length therebetween. In an embodiment, the elongated extender 130 may end from a length of about 21 inches to about 34 inches. The elongated extender 130 may include a locking mechanism so that once the outlet extender 100 has been transitioned to its desired length, any undesired extension or retraction of the elongated extender 130 may be prevented. The locking mechanism may include a bolt and slot, rotatable bar, spring-loaded hinge, and the like. The elongated extender 130 may be biased towards a certain position, such as a retracted state.

[0049] In an embodiment, the plug end 110 of the outlet extender 100 may plug into a wall outlet, and the outlet end 120 may be free to rotate and extend as desired by the user. The outlet extender 100, aside from the operative attachment of the plug end 110 into a wall outlet, may otherwise remain free and unattached to the abutting wall. The outlet extender 100 itself may have sufficient weight distribution and sturdy materials to allow for these variable configurations (e.g. a decoy plug, rigid housing, straight configuration, etc.).

[0050] In an embodiment, the outlet end 120 may include an attachment backing 140 on the back

or wall-facing side 102 of the outlet extender 100, see FIG. 3A. When the plug end 110 of the outlet extender 100 is plugged into a wall outlet, the attachment backing 140 may comprise a way to selectively attach the outlet end 120 to the abutting wall. This attachment may provide additional stability to the outlet extender 100. This additional stability may be desired, for example, when the outlet extender 100 is in a horizontal configuration or extended fully. The attachment backing 140 may include a peel and stick adhesive pad for attachment to the wall, putty and dry-down putty attachment, hook and loop attachment, magnetic attachment, and the like. For example, a double sided adhesive pad may be attached to the wall-facing side 102 of the outlet end 120 and may be selectively attached to the wall, or two oppositely attracting magnets with peel back adhesive or putty attachments may be attached to the wall-facing side 102 of the outlet end 120 and the wall and be placed in magnetic contact. In using an adhesive pad, such pad may include adhesive that is non-marking, i.e., when it is removed from the surface or surfaces to which it is attached it does not leave any marks. Any appropriate non-marking adhesive may be utilized and the present disclosure is not limited to a specific type. Multiple magnets may be placed on the wall to allow for various and moveable attachment to the wall.

[0051] The attachment backing 140 may be selectively attached, detached, and reattached to allow for repositioning of the outlet extender 100 and without causing damage to the underlying wall. Although described embodiments include the attachment backing 140 on the wall-facing side 102 of the outlet end 120, it is noted that such attachment backing 140 may be located on any portion of the outlet extender 100, including the perimeter of the plug end 110 or the elongated extender 130. In an embodiment, the outlet extender 100 may be free from any attachment that fastens or anchors into, or otherwise traverses, the surface of the abutting wall (such as nails, screws, and the like). Such attachment may include the attachment backing 140

described herein (peel and stick adhesive pad for attachment to the wall, putty and dry-down putty attachment, hook and loop attachment, magnetic attachment, and the like), which may not fasten or anchor into, or otherwise traverse, the surface of the abutting wall. The attachment backing 140 being attached to (whether fixedly or removably) may permit a portion, e.g., the elongated extender 130 or a portion thereof, to be non-rigid or flexible. The attachment backing 140 being attached to a wall means that the elongated extender 130 does not need to be rigid as in other prior embodiments as the attachment backing 140 may provide additional structural support. In such embodiments, the elongated extender 130 does not need to provide support to the outlet end 120 to be positioned in the applicable location. Instead, the attachment backing 140 being attached to the wall allows the outlet end 120 to be positioned in its desired location.

[0052] In an embodiment, the outlet end 120 may include a fastening mechanism that does fasten or anchor into, or otherwise traverses, the surface of the abutting wall. Such fastening mechanisms can include nails, screws, pin and the like.

[0053] The exterior or housing of the outlet extender 100 may be formed from any suitable material including, but not limited to, plastics and polymers. Suitable materials may include polyethylene terephthalate (PETE or PET), high-density polyethylene (HDPE), polyvinyl chloride (PVC), low-density polyethylene (LDPE), polypropylene (PP), polystyrene or styrofoam (PS), other plastics such as polycarbonate, polylactide, acrylic, acrylonitrile butadiene, styrene, fiberglass, and nylon, or a combination of one or more thereof.

[0054] Turning to FIGs. 5-11 showing non-limiting detailed embodiments of the housing and components of an outlet extender, FIGs. 5-11 show exploded views and components of an outlet end 120 (such as FIGs. 5-6), extendable shaft 130 (such as FIGs. 9 and 10), and plug end 110 (such as FIGs. 8, 11).

{8897786:8 }                                  18

[0055] FIG. 5 depicts an exploded view of a non-limiting embodiment of an outlet end 120 and extendable shaft 130 of an outlet extender 100. In an embodiment, the outlet end 120 may include an outlet faceplate 128, a front outlet housing 210, a tamper preventer 214, and a rear outlet housing 218. The tamper preventer 214 may, as an example, ensure that only a corresponding plug (e.g. with two or three metal prongs) and not a foreign item, is able to plug into the outlet end 120 and make an electrical circuit or connection with the outlet extender 100. The tamper preventer 214 may include a shutter/spring type mechanism so that full entry into the female receptacles of the outlet end 120 (opening of the shutters) is made possible only when each of the one or more springs are compressed at the same time (by insertion of a corresponding plug into each opening of the female receptacle at the same time). The extendable shaft 130 may include a first tube housing 222 and a contact plate 226. In an embodiment, the first tube housing 222 may be part of an outer telescoping tube (i.e. a larger diameter tube that another tube with a smaller diameter nests within) or an inner telescoping tube (i.e. a smaller diameter tube that nests into a tube with a larger diameter). FIGs. 6A-D show a non-limiting embodiment of the front outlet housing 210, including female receptacles.

[0056] FIG. 7 shows an embodiment of a plug end 110 and extendable shaft 130 of an outlet extender 100 where FIG. 8 depicts an exploded view of an embodiment of the plug end 110 of the outlet extender 100 and FIG. 9 depicts an exploded view of an embodiment of the extendable shaft 130 of the outlet extender 10. In an embodiment and as shown in FIG. 8, the plug end 110 may include a plug faceplate 230, an inset band 234, fasteners 238 or another type of fitting mechanism as described herein, a front plug housing 242, an outer ring 246 and inner ring 250, a swivel seat 254, a plug 258, and a rear plug housing 262. The swivel seat 254 may facilitate rotation of the outlet extender 100 about an axis defined by the plug 258 as described herein.

FIGs. 11A-C show a non-limiting embodiment of the front plug housing 242.

[0057] In embodiment and as shown in FIG. 9, the extendable shaft 130 may include a second tube housing 264, a first cap 270, a bend collar 274, fasteners 278 or another type of fitting mechanism as described herein, and a cord assembly 282 and second cap 286. In an embodiment, the second tube housing 264 may be part of an inner telescoping tube (i.e. a smaller diameter tube that nests into a tube with a larger diameter) or an outer telescoping tube (i.e. a larger diameter tube that another tube with a smaller diameter nests within). As an example, if the first tube housing 222 is an outer telescoping tube of a larger diameter, then the second tube housing 264 will be an inner telescoping tube of a smaller diameter, or vice versa, e.g., if the first tube housing 222 is an inner telescoping tube of a smaller diameter, then the second tube housing 264 will be an outer telescoping tube of a larger diameter. In an embodiment, the first cap 270 may selectively attach to the first tube housing 222 and the second cap 286 may selectively attach to the second tube housing 264. The bend collar 274 may enable flexibility in the extendable shaft 130 and outlet extender 100, such as during transition between different rotational and telescopic positions. The cord assembly 282, shown in FIGs. 10A-B, may further comprise ground 290, neutral 294, and hot 298 cords and assemblies.

[0058] Although the embodiments of the present teachings have been illustrated in the accompanying drawings and described in the foregoing detailed description, it is to be understood that the present teachings are not to be limited to just the embodiments disclosed, but that the present teachings described herein are capable of numerous rearrangements, modifications and substitutions without departing from the scope of the claims hereafter. The claims as follows are intended to include all modifications and alterations insofar as they come within the scope of the claims or the equivalent thereof.

CLAIMS

What is claimed is:

1.    A wall outlet extender that extends a wall outlet to a new position on a wall, comprising:

a plug end configured to selectively plug into the wall outlet,

an outlet end configured to selectively receive one or more plugs, and

an extendable shaft between the plug end and the outlet end,

wherein the wall outlet extender is rotatable about the plug end.

2.    The wall outlet extender of claim 1, wherein the extendable shaft includes two more or telescoping portions.

3.    The wall outlet extender of claim 2, wherein the extendable shaft includes a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter is larger than the second diameter.

4.    The wall outlet extender of claim 3, wherein the first telescoping portion is configured to internally receive the second telescoping portion in a retracted position.

5.    The wall outlet extender of claim 4, wherein the extendable shaft is extendable from about 21 inches to about 34 inches.

6.    The wall outlet extender of claim 1, wherein the plug end is rotatable about 360°.

7.    The wall outlet extender of claim 1 further including an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall.

8.    The wall outlet extender of claim 7, wherein the engagement portion comprises a non-

permanent adhesive, removable putty, or stickable surface.

9.      The wall outlet extender of claim 8, wherein the engagement portion is free from any attachment to the wall that traverses or damages the wall surface.

10.     The wall outlet extender of claim 1, wherein the outlet end includes an even number of outlets and at least one USB port.

11.     The wall outlet extender of claim 1, wherein the outlet end includes interchangeable faceplates.

12.     The wall outlet extender of claim 1, wherein the outlet end includes a device cradle configured to hold a device while the device is plugged into the outlet end.

13.     The wall outlet extender of claim 1, wherein the wall outlet extender includes Bluetooth or Wi-Fi connectivity capabilities.

14.     An extendable power outlet adaptor, comprising:

a plug selectively configured to insert into a wall outlet,

a shaft that is telescopic and that is rotatable about the plug up to 360°, and

one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall adjacent to the wall outlet.

15.     The extendable power outlet adaptor of claim 14, wherein the outlet receptacles are attachable to the wall by temporary adhesive, putty, or stickable surface.

16.     The extendable power outlet adaptor of claim 15, wherein the extendable power outlet adaptor is free from any attachment to the wall that traverses or damages the wall surface.

17.     The extendable power outlet adaptor of claim 14, wherein the extendable power outlet

adaptor may be removed and repositioned onto the wall.

## ABSTRACT

[0059] Provided is a wall power outlet extender that may be positioned or mounted on a wall and that may relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. The wall power outlet extender may be positionable along a surface of a wall adjacent to a wall power outlet and may allow a user to semi-permanently relocate the wall power outlet. The wall power outlet extender may be made fixed and stationary at a particular position and relatively unmovable unless acted on or repositioned by a user. The wall power outlet extender may be selectively rotatable and/or telescopic, and include a spinning or ambidextrous plug, to be adaptable to the specific location and to provide a myriad of different positions in which the new outlet may be placed. The wall power outlet extender may feature multiple outlets, USB ports, and surge protection, as well as Bluetooth and wireless capabilities.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 48071-00003 |
|---|---|---|
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | | Remove |
|---|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| ▾ | Tony | Matthew | Galazin | ▾ |

**Residence Information (Select One)** ● US Residency    Non US Residency    Active US Military Service

| City | Greenwich | State/Province | CT | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 351 Pemberwick Road | | |
|---|---|---|---|
| Address 2 | Apt. 914 | | |
| City | Greenwich | State/Province | CT |
| Postal Code | 06831 | Country i | US |

All Inventors Must Be Listed – Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.    [Add]

## Correspondence Information:

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐ **An Address is being provided for the correspondence Information of this application.**

| Customer Number | 33772 | | |
|---|---|---|---|
| Email Address | ipmailbox@mcdonaldhopkins.com | [Add Email] | [Remove Email] |

## Application Information:

| Title of the Invention | WALL MOUNTING OUTLET EXTENDER | | |
|---|---|---|---|
| Attorney Docket Number | 48071-00003 | **Small Entity Status Claimed** | ☒ |
| Application Type | Nonprovisional | | ▾ |
| Subject Matter | Utility | | ▾ |
| Total Number of Drawing Sheets (if any) | 13 | **Suggested Figure for Publication (if any)** | 1 |

EFS Web 2.2.13

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | **Attorney Docket Number** | 48071-00003 |
|---|---|---|
| | **Application Number** | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

| | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
|---|---|
| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 33772 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending | ▾ | | Remove |
|---|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) | |
| | Claims benefit of provisional ▾ | 62/957903 | 2020-01-07 | |

| Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button. | Add |
|---|---|

EFS Web 2.2.13

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | **Attorney Docket Number** | 48071-00003 |
|---|---|---|
| | **Application Number** | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|
| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

Add

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

| ☐ | This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.<br>NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA. |
|---|---|

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | **Attorney Docket Number** | 48071-00003 |
| | **Application Number** | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1. Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A. Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B. Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2. Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐   A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐   B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE**: Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | **Attorney Docket Number** | 48071-00003 |
|---|---|---|
| | **Application Number** | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant** 1                                                                 Remove

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
|---|---|---|
| Person to whom the inventor is obligated to assign. | Person who shows sufficient proprietary interest | |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here.    ☒

| Organization Name | TOKA, LLC |
|---|---|

**Mailing Address Information For Applicant:**

| **Address 1** | 351 Pemberwick Road | | |
|---|---|---|---|
| Address 2 | Apt. 914 | | |
| **City** | Greenwich | **State/Province** | CT |
| **Country** | US | **Postal Code** | 06831 |
| Phone Number | 2163485400 | Fax Number | 2163485474 |
| Email Address | ipmailbox@mcdonaldhopkins.com | | |

Additional Applicant Data may be generated within this form by selecting the Add button.    Add

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

EFS Web 2.2.13

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00003 |
|---|---|---|
| | Application Number | |
| Title of Invention | WALL MOUNTING OUTLET EXTENDER | |

---

**Assignee**    1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

Remove

If the Assignee or Non-Applicant Assignee is an Organization check here.    ☐

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| **Address 1** | |
|---|---|
| Address 2 | |
| **City** | | **State/Province** | |
| **Country** i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.    Add

---

## Signature:

Remove

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| **Signature** | /Todd A. Benni/ | | | Date (YYYY-MM-DD) | 2020-08-07 |
|---|---|---|---|---|---|
| **First Name** | Todd | Last Name | Benni | Registration Number | 42313 |

Additional Signature may be generated within this form by selecting the Add button.    Add

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00003 |
|---|---|---|
|  | Application Number |  |
| Title of Invention | WALL MOUNTING OUTLET EXTENDER | |

This collection of information is required by 37 CFR 1.76.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

For applications filed under AIA
(on or after September 16, 2012)

Title: "WALL MOUNTING OUTLET EXTENDER"
MH Ref No.: 48071-00002

## DECLARATION AND ASSIGNMENT
## FOR U.S. UTILITY OR DESIGN PATENT APPLICATION

Attorney Docket No.:  48071-00002

**As a below-named inventor, I hereby declare that:**

This declaration is directed to the application entitled:

WALL MOUNTING OUTLET EXTENDER
**(TITLE)**

(check only one item below)

[  ]      attached hereto,

OR

[X]      For which U.S. Provisional Application No. 62/957,903 filed on January 7, 2020; and any subsequent applications filed in connection with the above invention (the "Patent").

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the above-identified application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

WHEREAS, TOKA, LLC, having a place of business at 351 Pemberwick Road, Apt. 914, Greenwich, CT 06831, hereinafter referred to as "Assignee," is desirous of acquiring the entire right, title and interest in and to the Patent;

NOW, THEREFORE, be it known that, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, all right, title, and interest, in the United States and throughout the world, in, to and under the Patent, improvements and inventions and all patents, patent applications, patent rights, and inventors' certificates thereof, therefor, and therein, including without limitation said application for patent in the United States, all divisions and continuations thereof, all patents which may be granted thereon, all reissues and extensions thereof, all right to sue for past infringement thereunder, all patents which may be granted for said improvements and inventions by states or nations other than the United States, or by other authority, entity, or organization, all applications therefor, and all rights of priority resulting from the filing of said

{8993148: }                     Page 1 of 2

For applications filed under AIA
(on or after September 16, 2012)

Title: "WALL MOUNTING OUTLET EXTENDER"
MH Ref No.: 48071-00002

applications, have been and are hereby sold, assigned, transferred, and delivered unto Assignee, its successors and assigns by the undersigned; and it is covenanted and agreed by the undersigned, and for executors, administrators, and legal representatives of the undersigned, that at Assignee's request any and all applications, affidavits, assignments, and other instruments will be made, executed, and delivered as may be necessary, or desirable to secure for or vest in Assignee, its successors or assigns, any improvement, inventions, right, title, interest, application, patent, patent right or other right or property covered by this assignment, and the United States Commissioner of Patents and Trademarks is hereby requested and authorized to issue any and all United States patents granted on any of said applications to Assignee as owner of the entire right, title, and interest in, to, and under the same, and appropriately empowered officials of foreign countries are hereby authorized to issue any letters patent granted on any of said applications to Assignee as owner of the entire right, title and interest in, to, and under the same.

THIS DECLARATION AND ASSIGNMENT, has been executed below by the undersigned:

Legal Name of Inventor: Tony Matthew Galazin

Signature of Inventor: _____

Date: **8-7-2020** _____

[  ]    Signatures of additional inventors on attached sheet(s)

**Notice to Inventor(s):** You should not execute this Declaration unless you have reviewed and understand the contents of the above-identified application, including the claims.

**Notice to Inventor(s):** You have a duty disclose to the USPTO all information known to you to be material to patentability as defined in 37 CFR 1.56 during prosecution of the Patent.

1/13



**FIG. 1A**

2/13



**FIG. 1B**

3/13



**FIG. 2A**                    **FIG. 2B**



100

120

132

130

134

110

**FIG. 2C**

100

120

132

130

102

104

134

110

**FIG. 2D**

5/13



**FIG. 3A**

**FIG. 3B**

6/13



FIG. 4B

FIG. 4A

7/13



**FIG. 5**

8/13



**FIG. 6A**





**FIG. 6B**

**FIG. 6C**



**FIG. 6D**

9/13



**FIG. 7**

10/13



**FIG. 8**

11/13



**FIG. 9**

12/13



286

282

298

294

290

286

**FIG. 10B**

**FIG. 10A**

13/13



**FIG. 11A**



**FIG. 11B**          **FIG. 11C**

| Electronic Acknowledgement Receipt ||
|---|---|
| **EFS ID:** | 40227626 |
| **Application Number:** | 16988045 |
| **International Application Number:** | |
| **Confirmation Number:** | 4753 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Danielle Mueller |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00003 |
| **Receipt Date:** | 07-AUG-2020 |
| **Filing Date:** | |
| **Time Stamp:** | 15:56:18 |
| **Application Type:** | Utility under 35 USC 111(a) |

# Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $2855 |
| RAM confirmation Number | E202087F56326799 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: ||

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | TrackOne Request | 9015155.pdf | 110437 / 21e9fba453069ad3f70fae5de4c63c4724c85d45 | no | 2 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | | 9015151.pdf | 161404 / 88963ed5970034006e1a4896eb26e40d1296e790 | yes | 24 |

| | Multipart Description/PDF files in .zip description | | |
|---|---|---|---|
| | Document Description | Start | End |
| | Specification | 1 | 20 |
| | Claims | 21 | 23 |
| | Abstract | 24 | 24 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Application Data Sheet | 9014807.pdf | 1291774 / 31d5322cf2229f4c34c6b162d6ff8d98e4bb9733 | no | 8 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | Oath or Declaration filed | 9013928.pdf | 170011 / 4d5222976a1268ab09989b4414e15c7c9166e696 | no | 2 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 5 | Drawings-only black and white line drawings | 9015192.pdf | 635082 / fe6bfba959afc4d9c7222345f48ae21c4f85c5a9 | no | 13 |

| Warnings: | | | | | |
|---|---|---|---|---|---|
| Information: | | | | | |
| 6 | Fee Worksheet (SB06) | fee-info.pdf | 40062<br><br>ce6e522d2bf474626b4a53641d007b519c1<br>3e934 | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |

| Total Files Size (in bytes): | 2408770 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

DocCode – SCORE

# SCORE Placeholder Sheet for IFW Content

**Application Number:** 16988045          **Document Date:** 08/07/2020

The presence of this form in the IFW record indicates that the following document type was received in electronic format on the date identified above.  This content is stored in the SCORE database.

Since this was an electronic submission, there is no physical artifact folder, no artifact folder is recorded in PALM, and no paper documents or physical media exist.  The TIFF images in the IFW record were created from the original documents that are stored in SCORE.

- Drawing

At the time of document entry (noted above):
- USPTO employees may access SCORE content via DAV or via the SCORE web page.
- External customers may access SCORE content via PAIR using the Supplemental Content tab.

Form Revision Date: March 1, 2019



**WIPO**

WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

# DOCUMENT MADE AVAILABLE UNDER THE
# PATENT COOPERATION TREATY (PCT)

| | |
|---|---|
| International application number: | **PCT/US2021/012261** |
| International filing date: | **06 January 2021 (06.01.2021)** |
| Document type: | **Certified copy of priority document** |

| Document details: | Country/Office:<br>Number:<br>Filing date: | **US**<br>**16/988,045**<br>**07 August 2020 (07.08.2020)** |
|---|---|---|

| | |
|---|---|
| Date of receipt at the International Bureau: | **28 January 2021 (28.01.2021)** |

Remark:  Priority document submitted or transmitted to the International Bureau in compliance with Rule 17.1(a),(b) or (b-*bis*)

34, chemin des Colombettes
1211 Geneva 20, Switzerland
www.wipo.int

WO 2021/141952                                                                                   PCT/US2021/012261

CLAIMS

What is claimed is:

1.      A wall outlet extender comprising:

        a plug end configured to selectively plug into a wall outlet,

        an outlet end configured to selectively receive one or more plugs, wherein the outlet end comprises an interchangeable decorative faceplate, and

        an extendable shaft positioned between the plug end and the outlet end,

        wherein the plug end is rotatable.

2.      The wall outlet extender of claim 1, wherein the extendable shaft includes two or more telescoping portions.

3.      The wall outlet extender of claim 2, wherein the extendable shaft includes a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter is larger than the second diameter.

4.      The wall outlet extender of claim 3, wherein the first telescoping portion is configured to internally receive the second telescoping portion in a retracted position.

5.      The wall outlet extender of claim 4, wherein the extendable shaft is extendable from about 21 inches to about 34 inches.

6.      The wall outlet extender of any of the previous claims, wherein the plug end is rotatable about 360°.

7.      The wall outlet extender of any of the previous claims further comprising an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall.

8.      The wall outlet extender of claim 7, wherein the engagement portion comprises a non-permanent adhesive, removable putty, or stickable surface.

9.      The wall outlet extender of claim 8, wherein the engagement portion is free from any attachment to the wall that traverses or damages the wall surface.

10.     The wall outlet extender of any of the previous claims, wherein the outlet end includes an even number of outlets and at least one USB port.

11.     The wall outlet extender of any of the previous claims, wherein the outlet end comprises a device cradle configured to hold a device while the device is plugged into the outlet end.

12.     The wall outlet extender of any of the previous claims, wherein the wall outlet extender comprises Bluetooth or Wi-Fi connectivity capabilities.

13.     The wall outlet extender of claim 1 further comprising an electrical cord portion positioned between the extendable shaft and the plug end.

14.     An extendable power outlet adaptor, comprising:

a plug selectively configured to insert into a wall outlet,

a shaft that is telescopic and that is rotatable about the plug up to 360°, and

one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall;

an interchangeable decorative faceplate selectively attached with the one or more outlet receptacles.

15.     The extendable power outlet adaptor of claim 14, wherein the one or more outlet receptacles are attachable to the wall by temporary adhesive, putty, or stickable surface.

16.     The extendable power outlet adaptor of claim 15, wherein the one or more outlet receptacles are free from any attachment to the wall that traverses or damages the wall surface.

17.     The extendable power outlet adaptor of any of claims 14-16, wherein the one or more outlet receptacles may be removed and repositioned onto the wall.

18.     The extendable power adaptor of any of claims 14-17 further comprising an electrical cord portion positioned between the shaft and the plug.



1116684

## THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

*January 27, 2021*

**THIS IS TO CERTIFY THAT ANNEXED HERETO IS A TRUE COPY FROM THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE OF THOSE PAPERS OF THE BELOW IDENTIFIED PATENT APPLICATION THAT MET THE REQUIREMENTS TO BE GRANTED A FILING DATE.**

**APPLICATION NUMBER:** *62/957,903*
**FILING DATE:** *January 07, 2020*
**RELATED PCT APPLICATION NUMBER:** *PCT/US21/12261*

**THE COUNTRY CODE AND NUMBER OF YOUR PRIORITY APPLICATION, TO BE USED FOR FILING ABROAD UNDER THE PARIS CONVENTION, IS** *US62/957,903*

Certified by

Under Secretary of Commerce
for Intellectual Property
and Director of the United States
Patent and Trademark Office

Doc Code: **TR.PROV**
Document Description: Provisional Cover Sheet (SB16)

PTO/SB/16 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office:  U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## Provisional Application for Patent Cover Sheet
### This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53(c)

### Inventor(s)

Inventor 1        | Remove |

| Given Name | Middle Name | Family Name | City | State | Country ¡ |
|---|---|---|---|---|---|
| Tony | Matthew | Galazin | Greenwich | CT | US |

All Inventors Must Be Listed — Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.     | Add |

| **Title of Invention** | WALL MOUNTING OUTLET EXTENDER |
|---|---|
| Attorney Docket Number (if applicable) | 40537-Pending |

### Correspondence Address

Direct all correspondence to (select one):

| ⦿ The address corresponding to Customer Number | ◯ Firm or Individual Name |
|---|---|
| Customer Number | 33772 |

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.

| ● No. |
|---|
| Yes, the invention was made by an agency of the United States Government.  The U.S. Government agency name is: |
| Yes, the invention was under a contract with an agency of the United States Government. The name of the U.S. Government agency and Government contract number are: |

EFS - Web 1.0.2

Doc Code: **TR.PROV**
Document Description: Provisional Cover Sheet (SB16)

PTO/SB/16 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

**Entity Status**
**Applicant asserts small entity status under 37 CFR 1.27 or applicant certifies micro entity status under 37 CFR 1.29**

◉ Applicant asserts small entity status under 37 CFR 1.27

○ Applicant certifies micro entity status under 37 CFR 1.29. Applicant must attach form PTO/SB/15A or B or equivalent.

○ No

**Warning**

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

**Signature**

Please see 37 CFR 1.4(d) for the form of the signature.

| Signature | /Todd A. Benni/ | | | Date (YYYY-MM-DD) | 2020-01-07 |
| --- | --- | --- | --- | --- | --- |
| First Name | Todd | Last Name | Benni | Registration Number (If appropriate) | 42313 |

This collection of information is required by 37 CFR 1.51. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 8 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **This form can only be used when in conjunction with EFS-Web. If this form is mailed to the USPTO, it may cause delays in handling the provisional application.**

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or paten. Accordingly, pursuant to the requirements of the Act, please be advised that : (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, t o a n other federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.



**Fig. 1**



**Fig. 2**

10



300

302

308

304

306

**Fig. 3**



400



402

**Fig. 4**

## 7. Abstract

The proposed invention is a telescopic, wall mounted extension cord. The invention allows a user to semi-permanently move a power outlet to a more convenient spot. This can be achieved with a spinning plug, allowing the invention to be placed in any direction along a wall. The invention also features a telescopic neck, which can be extended or shortened based on the preferred location of placement. The housing may feature multiple outlets and USB ports.

CROSS REFERENCE TO RELATED APPLICATIONS

This application is the provisional application of a utility patent application to be filed within 12 months and claiming priority under 35 U.S.C. § 119(e).

STATEMENT REGARDING FEDERALLY SPONSORED RESEARCH OR DEVELOPMENT

Not Applicable

NAMES OF PARTIES TO A JOINT RESEARCH AGREEMENT

Not Applicable

INCORPORATION BY REFERENCE OF ELECTRONIC MEDIA

Not Applicable

STATEMENT REGARDING PRIOR DISCLOSURES

Not Applicable

1

THE UNITED STATES PATENT AND TRADEMARK OFFICE

Provisional Utility Patent Application

EZ Outlet

Tony Matthew Galazin

Greenwich, Connecticut

## 1. Field of the Invention.

The present invention generally relates power outlet extenders. More specifically, an ambidextrous power outlet extender that may be mounted to a wall.

## 2. Background of the Invention.

Extension cords have been used for decades to extend a wall connected power outlet. This is necessary for situations such as using power tools outside of the house, powering Christmas lights and many other applications. Though most extension cords prove as an efficient method to extend the range of the power outlet, they all seem to be missing one thing, a sleek design that can be mounted on a wall and serve as a permanent outlet.

Our invention, EZ-Outlet, isn't an extension cord for a power outlet, but rather an ambidextrous and permanent solution for outlets that are just out of reach or in bad spots in a household. Our design focuses on allowing a user to extend their power outlet to a more suitable location. This prevents the need to pay for installation of another power outlet which can be costly. The design of the EZ-Outlet allows a user to plug in the device into a power outlet in any direction of choosing and then use an adhesive backing to fasten it to a wall. This serves as an inexpensive method for extending power along a wall or other surfaces.

## 3. A Brief description of Current Invention.

The proposed invention is a telescopic, wall mounted extension cord. The invention allows a user to semi-permanently move a power outlet to a more convenient spot. This can be achieved with a spinning plug, allowing the invention to be placed in any direction along a wall. The invention also features a telescopic neck, which can be extended or shortened based on the preferred location of placement. The housing may feature multiple outlets and USB ports.

3

## 4. Brief Description of Drawings

Fig. 1 is an illustrative representation showing a line drawn depiction of the EZ-Outlet in isometric view in accordance with an embodiment of the present invention.

Fig. 2 is an illustrative representation showing a line drawn depiction of the EZ-Outlet in front view in accordance with an embodiment of the present invention.

Fig. 3 is an illustrative representation showing a line drawn depiction of the EZ-Outlet in back view in accordance with an embodiment of the present invention.

Fig. 4 is an illustrative representation showing a 3D model and photograph of the user of the EZ-Outlet in accordance with an embodiment of the present invention.

## 5. Reference numerals in drawings

100 Main Housing of Device (Fig. 1)
102 Telescopic Neck of Device (Fig. 1)
104 Outlet Plug of Device (Fig. 1)
200 Main Housing of Device (Fig. 2)
202 Outlets on Housing of Device (Fig. 2)
204 Telescopic Neck of Device (Fig. 2)
206 Telescopic Neck Extended (Fig. 2)
208 Outlet Plug of Device (Fig. 2)
300 Main Housing of Device (Fig. 3)
302 Adhesive Pad on Main Housing of Device (Fig. 3)
304 Rotating Plug of Device (Fig. 3)
306 Spinning Direction of Rotating Plug (Fig. 3)
308 Telescopic Neck of Device (Fig. 3)
400 Device (Fig. 4)
402 Couch (Fig. 4)

## 6.  Detailed Description

Fig. 1 is an illustrative representation showing a line drawn depiction of the EZ-Outlet in isometric view in accordance with an embodiment of the present invention.  This depiction provides a reference point for the upcoming figures. The color, shape, number of outlets may vary when manufactured. The body of the invention features a main housing (100), telescopic neck (102) and outlet plug (104). Figures 2, 3 and 4 will go into more details of each feature that is seen in this figure.

Fig. 2 is an illustrative representation showing a line drawn depiction of the EZ-Outlet in front view in accordance with an embodiment of the present invention. This depiction shows the front of the invention as well as the telescopic neck and its extended version. The housing (200) features several outlets and USB ports (202). The number may vary but two outlets and one USB port are seen in this example. The housing sits on the end of a telescopic neck (204). The telescopic neck may be extended (206) based on preference when installing it. The bottom of the telescopic neck features an outlet plug (208), better seen in figure 3.

Fig. 3 is an illustrative representation showing a line drawn depiction of the EZ-Outlet in back view in accordance with an embodiment of the present invention. This depiction shows the back of the invention as well as a close-up view of the rotating electrical plug. The back of the housing (300) features an adhesive pad (302). The adhesive pad is used to connect the housing of the invention to a wall or other material after installation. The rotating plug (304) can spin in 360 degrees (306) around the power outlet that the invention is plugged into. If the user desires that they need a power outlet moved from behind the couch, they may plug the invention into the power outlet and rotate it so that it is horizontally running along the wall. They may also extend or shorten the telescopic neck (308) based on the distance they need the invention to provide the new power outlet. Once the desired location is adjusted, the user would then remove the adhesive backing and stick the housing of the invention onto the wall. At this point, the user will now have additional power outlets located at the location that it was installed.

6

Fig. 4 is an illustrative representation showing a 3D model and photograph of the user of the EZ-Outlet in accordance with an embodiment of the present invention. This depiction provides a colored 3D model and photograph of the example application of the invention. The invention (400) is seen located next to a typical power outlet found in a home. Once the device is plugged in, based on the example shown in figure 3, the outlet is then spun to the left, extended to give enough clearance from being behind the couch (402) and glued to the wall.

7

## Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 38223829 |
| **Application Number:** | 62957903 |
| **International Application Number:** | |
| **Confirmation Number:** | 4043 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Rebecca Shofar |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 40537-Pending |
| **Receipt Date:** | 07-JAN-2020 |
| **Filing Date:** | |
| **Time Stamp:** | 13:08:07 |
| **Application Type:** | Provisional |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $ 140 |
| RAM confirmation Number | E202017D08262081 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Provisional Cover Sheet (SB16) | 8554096.pdf | 2034308 <br><br> af340e4ce10402cac266c920d9d1aa428656867b | no | 3 |

| Warnings: |
|---|
| **Information:** |

| 2 | | 8554428.pdf | 485169 <br><br> acdf641808afa5b4d51e9e13629a9b9ddf86ffd6 | yes | 12 |
|---|---|---|---|---|---|

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Drawings-other than black and white line drawings | 9 | 12 |
| Abstract | 8 | 8 |
| Specification | 1 | 7 |

| Warnings: |
|---|
| **Information:** |

| 3 | Fee Worksheet (SB06) | fee-info.pdf | 30082 <br><br> b4b273f6557bd3e33fedde15dd9c30f6234ee4b1 | no | 2 |
|---|---|---|---|---|---|

| Warnings: |
|---|
| **Information:** |

| | Total Files Size (in bytes): | 2549559 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

DocCode – SCORE

# SCORE Placeholder Sheet for IFW Content

**Application Number:** 62957903          **Document Date:** 01/07/2020

The presence of this form in the IFW record indicates that the following document type was received in electronic format on the date identified above.  This content is stored in the SCORE database.

Since this was an electronic submission, there is no physical artifact folder, no artifact folder is recorded in PALM, and no paper documents or physical media exist.  The TIFF images in the IFW record were created from the original documents that are stored in SCORE.

- Drawing

At the time of document entry (noted above):
- USPTO employees may access SCORE content via DAV or via the SCORE web page.
- External customers may access SCORE content via PAIR using the Supplemental Content tab.

Form Revision Date:  March 1, 2019



**WIPO**

WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

# DOCUMENT MADE AVAILABLE UNDER THE
# PATENT COOPERATION TREATY (PCT)

International application number:           **PCT/US2021/012261**

International filing date:                  **06 January 2021 (06.01.2021)**

Document type:                             **Certified copy of priority document**

Document details:       Country/Office:    **US**
                        Number:            **62/957,903**
                        Filing date:       **07 January 2020 (07.01.2020)**

Date of receipt at the International Bureau:  **28 January 2021 (28.01.2021)**

Remark:   Priority document submitted or transmitted to the International Bureau in compliance with Rule
17.1(a),(b) or (b-*bis*)

34, chemin des Colombettes
1211 Geneva 20, Switzerland
www.wipo.int

**(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)**

**(19) World Intellectual Property Organization**
International Bureau

**(43) International Publication Date**
15 July 2021 (15.07.2021)


WIPO|PCT

**(10) International Publication Number**
**WO 2021/141952 A1**



| | |
|---|---|
| **(51) International Patent Classification:** | AO, AT, AU, AZ, BA, BB, BG, BH, BN, BR, BW, BY, BZ, CA, CH, CL, CN, CO, CR, CU, CZ, DE, DJ, DK, DM, DO, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IR, IS, IT, JO, JP, KE, KG, KH, KN, KP, KR, KW, KZ, LA, LC, LK, LR, LS, LU, LY, MA, MD, ME, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PA, PE, PG, PH, PL, PT, QA, RO, RS, RU, RW, SA, SC, SD, SE, SG, SK, SL, ST, SV, SY, TH, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, WS, ZA, ZM, ZW. |

*H01R 24/70* (2011.01)   *H01R 13/46* (2006.01)
*H01R 35/04* (2006.01)   *H01R 24/68* (2011.01)
*H01R 25/00* (2006.01)   *H01R 24/78* (2011.01)
*H01B 7/06* (2006.01)

**(21) International Application Number:**
PCT/US2021/012261

**(22) International Filing Date:**
06 January 2021 (06.01.2021)

**(25) Filing Language:** English

**(26) Publication Language:** English

**(30) Priority Data:**
62/957,903    07 January 2020 (07.01.2020)    US
16/988,045    07 August 2020 (07.08.2020)    US

**(71) Applicant: TOKA, LLC** [US/US]; 351 Pemberwick Road, Apt. 914, Greenwich, Connecticut 06831 (US).

**(72) Inventor: GALAZIN, Tony Matthew**; 351 Pemberwick Road, Apt. 914, Greenwich, Connecticut 06831 (US).

**(74) Agent: BENNI, Todd A.**; MCDONALD HOPKINS LLC, 600 Superior Ave., Suite 2100, Cleveland, Ohio 44114 (US).

**(81) Designated States** *(unless otherwise indicated, for every kind of national protection available)*: AE, AG, AL, AM,

**(84) Designated States** *(unless otherwise indicated, for every kind of regional protection available)*: ARIPO (BW, GH, GM, KE, LR, LS, MW, MZ, NA, RW, SD, SL, ST, SZ, TZ, UG, ZM, ZW), Eurasian (AM, AZ, BY, KG, KZ, RU, TJ, TM), European (AL, AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV, MC, MK, MT, NL, NO, PL, PT, RO, RS, SE, SI, SK, SM, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, KM, ML, MR, NE, SN, TD, TG).

**Published:**
— *with international search report (Art. 21(3))*

**(54) Title:** WALL MOUNTING OUTLET EXTENDER



FIG. 1A          FIG. 1B

**(57) Abstract:** Provided is a wall power outlet extender that may be positioned or mounted on a wall and that may relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. The wall power outlet extender may be positionable along a surface of a wall adjacent to a wall power outlet and may allow a user to semi-permanently relocate the wall power outlet. The wall power outlet extender may be made fixed and stationary at a particular position and relatively unmovable unless acted on or repositioned by a user. The wall power outlet extender may be selectively rotatable and/or telescopic, and include a spinning or ambidextrous plug, to be adaptable to the specific location and to provide a myriad of different positions in which the new outlet may be placed. The wall power outlet extender may feature multiple outlets, USB ports, and surge protection, as well as Bluetooth and wireless capabilities.

WO 2021/141952 A1

WO 2021/141952                                                                    PCT/US2021/012261

TITLE

**WALL MOUNTING OUTLET EXTENDER**

CROSS-REFERENCE TO RELATED APPLICATIONS

[0001] This application claims priority to U.S. Utility Application No. 16/988,045 entitled "WALL MOUNTING OUTLET EXTENDER" filed on August 7, 2020 and U.S. Provisional Patent Application No. 62/957,903 entitled "WALL MOUNTING OUTLET EXTENDER" filed on January 7, 2020 each of which are hereby incorporated by reference in their entireties.

FIELD OF THE INVENTION

[0002] The present disclosure generally relates to power outlet extenders and, more specifically, to a rotatable and/or telescopic power outlet extender that may be used to relocate a wall power outlet to multiple other positions on the wall.

BACKGROUND

[0003] Wall power outlets are stationary and, as a result, may be located in inconvenient or inaccessible areas of a household, workplace, or business. For example, wall outlets may end up being positioned behind sofas, mattresses, furniture, shelving, storage items, and the like. Such inconvenient or inaccessible wall outlets may cause any number of problems including the inability to easily plug in or unplug cords and devices into the wall outlet. Additionally, in order to reach these wall outlets, the cord of a particular device, such as that for a smart device, television, computer, laptop, charger, lamp, and the like, may not be long enough to plug into the wall outlet and be used as desired.

[0004] As it stands, actually changing the location and accessibility of an otherwise stationary

wall outlet requires an electrician and direct access into the wall. Such relocation of a wall outlet and access into the wall can be invasive, costly, and require a specialized workman or professional installation. Additionally, relocation of a wall outlet to another position on the wall by an electrician is permanent, and the new stationary wall outlet also cannot be further relocated or repositioned at a later time without going through the same process.

[0005] Other options for extending a wall outlet include extension cords. Extension cords typically comprise a flexible cord that plugs into the wall outlet on one end and runs along the floor or other flat surface to its other end that houses one or more outlets. Extension cords are often used temporarily, such as in situations for using power tools outside of the house, powering indoor and outdoor Christmas lights, and the like. When used in more permanent or daily situations, extension cords can clutter the floor or surface it lays on and cause other inconvenience, can be accidentally moved or damaged, and can put stress on the juncture between the wall outlet and the plug resulting in fraying or other damage.

[0006] What is needed is a wall power outlet extender that can be positioned or mounted on a wall and that can relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. What is also needed is a wall power outlet extender that is repositionable, re-mountable, and removable to accommodate changing needs.

SUMMARY OF THE INVENTION

[0007] A wall outlet extender that extends a wall outlet to a new position on a wall may include a plug end configured to selectively plug into the wall outlet, an outlet end configured to selectively receive one or more plugs, and an extendable shaft between the plug end and the outlet end. The wall outlet extender may be rotatable about the plug end.

[0008] The wall outlet extender may also include any of the foregoing, which may be combined

2

WO 2021/141952                                                                                    PCT/US2021/012261

in any manner without departing from the present teachings. In an embodiment, the extendable shaft may include two more or telescoping portions. The extendable shaft may include a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter may be larger than the second diameter. The first telescoping portion may be configured to internally receive the second telescoping portion in a retracted position. In an embodiment, the extendable shaft may be extendable from about 21 inches to about 34 inches. In an embodiment, the plug end may be rotatable about 360°. In an embodiment, the wall outlet extender may further include an engagement portion. The engagement portion may be positioned on a wall-facing side of the outlet end and may be configured to selectively engage the wall. The engagement portion may comprise a non-permanent adhesive, removable putty, or stickable surface. The engagement portion may be free from any attachment to the wall that traverses or damages the wall surface. In an embodiment, the outlet end may include an even number of outlets and at least one USB port. In an embodiment, the outlet end may include interchangeable faceplates. In an embodiment, the outlet end may include a device cradle configured to hold a device while the device is plugged into the outlet end. In an embodiment, the wall outlet extender may include Bluetooth or Wi-Fi connectivity capabilities.

[0009] An extendable power outlet adaptor may include a plug selectively configured to insert into a wall outlet, a shaft that is telescopic and that is rotatable about the plug up to 360°, and one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall adjacent to the wall outlet.

[0010] The wall outlet extender may also include any of the foregoing, which may be combined in any manner without departing from the present teachings. In an embodiment, the outlet receptacles may be attachable to the wall by temporary adhesive, putty, or stickable surface. In an embodiment, the extendable power outlet adaptor may be free from any attachment to the

wall that traverses or damages the wall surface. In an embodiment, the extendable power outlet adaptor may be removed and repositioned onto the wall.

BRIEF DESCRIPTION OF THE DRAWINGS

[0011] The present teachings may be better understood by reference to the following detailed description taken in connection with the following illustrations, wherein:

[0012] FIG. 1A depicts an isometric view of an embodiment of an outlet extender in an extended position in accordance with aspects of the present disclosure;

[0013] FIG. 1B depicts an isometric view of an embodiment of an outlet extender in an extended position in accordance with aspects of the present disclosure;

[0014] FIG. 2A depicts a front view of an embodiment of an outlet extender in a retracted position in accordance with aspects of the present disclosure;

[0015] FIG. 2B depicts a side view of the outlet extender shown in FIG. 2A in a retracted position in accordance with aspects of the present disclosure;

[0016] FIG. 2C depicts a front view of the outlet extender shown in FIG. 2A in an extended position in accordance with aspects of the present disclosure;

[0017] FIG. 2D depicts a side view of the outlet extender shown in FIG. 2A in an extended position in accordance with aspects of the present disclosure;

[0018] FIG. 3A depicts a back view of an outlet extender in a retracted position in accordance with aspects of the present disclosure;

[0019] FIG. 3B depicts an expanded view of Box A of the outlet extender shown in FIG. 3A in accordance with aspects of the present disclosure;

[0020] FIG. 4A depicts an isometric view of an embodiment of an outlet extender as it is being plugged into a wall outlet in accordance with aspects of the present disclosure; and

[0021] FIG. 4B depicts a front view of an embodiment of an outlet extender plugged into a wall outlet and rotated about 90° counter clockwise to a side position in accordance with aspects of the present disclosure;

[0022] FIG. 5 depicts an exploded view of an embodiment of an outlet end and extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

[0023] FIG. 6A depicts an isometric view of an embodiment of a front outlet housing, where FIG. 6B shows a side view, FIG. 6C shows a front view, and FIG. 6D shows a back view of the front outlet housing in accordance with aspects of the present disclosure;

[0024] FIG. 7 depicts front and side views of an embodiment of a plug end and extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

[0025] FIG. 8 depicts an exploded view of an embodiment of a plug end of an outlet extender in accordance with aspects of the present disclosure;

[0026] FIG. 9 depicts an exploded view of an embodiment of an extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

[0027] FIG. 10A depicts an isometric view of an embodiment of a cord assembly and FIG. 10B shows an exploded view of a cord assembly in accordance with aspects of the present disclosure;

[0028] FIG. 11A depicts an isometric view of an embodiment of a front plug housing, where FIG. 11B shows a front view and FIG. 11C shows a back view of the front plug housing in accordance with aspects of the present disclosure.

## DETAILED DESCRIPTION

[0029] Reference will now be made in detail to exemplary embodiments of the present teachings, examples of which are illustrated in the accompanying drawings. It is to be understood that other embodiments may be utilized and structural and functional changes may be made without departing from the respective scope of the present teachings. Moreover,

features of the various embodiments may be combined or altered without departing from the scope of the present teachings. As such, the following description is presented by way of illustration only and should not limit in any way the various alternatives and modifications that may be made to the illustrated embodiments and still be within the spirit and scope of the present teachings. In this disclosure, numerous specific details provide a thorough understanding of the subject disclosure. It should be understood that aspects of this disclosure may be practiced with other embodiments not necessarily including all aspects described herein, etc.

[0030] As used herein, the words "example" and "exemplary" means an instance, or illustration. The words "example" or "exemplary" do not indicate a key or preferred aspect or embodiment. The word "or" is intended to be inclusive rather than exclusive, unless context suggests otherwise. As an example, the phrase "A employs B or C," includes any inclusive permutation (e.g., A employs B; A employs C; or A employs both B and C). As another matter, the articles "a" and "an" are generally intended to mean "one or more" unless context suggest otherwise.

[0031] Provided is a wall power outlet extender that may be positioned or mounted on a wall and that may relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. The wall power outlet extender may be positionable along a surface of a wall adjacent to a wall power outlet and may allow a user to semi-permanently relocate the wall power outlet. The wall power outlet extender can be permanent in that it may not be as accidentally movable as an extension cord, may be able to have a low profile on or against a wall, and may have a rigid housing. The wall power outlet extender can be temporary in that it does not require any professional installation, does not require opening of a wall or electrical work, and can easily be unplugged and re-plugged into the same or a different wall power outlet.

[0032] The wall power outlet extender may become fixed and stationary at a particular position and relatively unmovable unless acted on or repositioned by a user. The wall power outlet extender may be selectively rotatable and/or telescopic, and include a spinning or ambidextrous plug, to be adaptable to the specific location and to provide a myriad of different positions in which the new outlet may be placed. The wall power outlet extender may feature multiple outlets, USB ports, and surge protection, as well as Bluetooth and wireless capabilities, which are described in more detail below.

[0033] FIGs. 1-4 depict an outlet extender 100 having a plug end 110 and an outlet or socket end 120 electrically connected by an elongated extender or extendable shaft 130. The outlet extender 100 may comprise a housing (such as 222 described in more detail below) that is partially hollow to accommodate electrical line or lines (of appropriate configuration) positioned through the elongated extender 130 and between the plug end 110 and the outlet end 120. The plug end 110 may include one or more plugs or sets of male contacts 112 that are operatively attachable to an outlet, such as a wall outlet. The plugs or male contacts 112 may be placed on a back or wall-facing side 102 of the outlet extender 100, see FIG. 4A. The plugs or male contacts 112 may be of any orientation and fitted to connect with any type of outlet, including household outlets, appliance outlets, industrial or commercial outlets, and outlets in any country, such as the U.S., Europe, Asia, Australia, etc. In some embodiments, the plugs or male contacts 112 may be replaceable, i.e., a user may remove one of the plugs or male contacts 112 and replace it with a different one, such as one that has a different configuration. This will allow a user to utilize the outlet extender 100 with one type of plug and then replace the plug or male contact 112 with a different one, such as by way of an example, by replacing a U.S. plug with one of a European configuration. The outlet end 120 may include one or more outlets or female receptacles 122, 124 that operatively receive a plug. In the embodiment shown in FIG. 1, a pair of outlets or female receptacles 122, 124 may be utilized. It should be understood,

7

however, that any number of female receptacles may be utilized, e.g., one, three, four, five, six, etc.

[0034] The outlets or female receptacles 122, 124 may be placed on an opposite side from the plugs or male contacts 112, or on a front or room-facing side 104 of the outlet extender 100. As a result, the plugs or male contacts 112 may be plugged into a wall outlet and the outlets or female receptacles 122, 124 may face the room to be accessible to receive other plugs, see FIG. 4A. The outlets or female receptacles 122, 124 may be of any orientation and fitted to connect with any type of plug, including plugs for household items, appliances (such as electrical dryers), industrial or commercial devices or machinery, electrically powered items, and plugs that are used in any country, such as the U.S., Europe, Asia, Australia, etc. Although the drawings generally depict a three-prong AC plug and outlets as used in the U.S., it is noted that any plug and outlets may be incorporated into the outlet extender design. In some embodiments, the plug and outlet may be of a similar configuration or they may be of a different configuration such that the outlet extender 100 can act as an adapter to change the outlet from a first configuration to a second configuration (e.g. a U.S. plug and European receptacles or vice versa). In an embodiment, the plug end 110 and the outlet end 120 may include mating plugs and outlets, or the plug end 110 and the outlet end 120 may include plug and outlet types that are different. The plug end 100 may comprise Type A, B, C, D, E, F, G, H, I, J, K, L, M, N and O IEC plug ends that are utilized throughout the world. Further the plug end 100 may comprise a 120 volt end, 240 volt end or a combination of the foregoing.

[0035] In an embodiment, the plug end 110 may include a single plug, may include a single plug and a decoy plug, two plugs, or any number of plugs. The present disclosure contemplates use of any number of plug ends 110 (e.g., one, two, three, etc.). In an embodiment having a decoy plug, the decoy plug may plug into the second outlet in the wall outlet and may provide additional structural support to the outlet extender 100 as it is positioned against the wall. The

decoy plug may be made of a plastic or non-electrically conductive material. In an embodiment with two plugs, each plug may enter into one of the outlets on the wall outlet and may receive or transfer power or electricity. FIG. 3B shows an embodiment of the plug end having a single plug 112. In an embodiment having a single plug, the other plug in the wall outlet may remain accessible and accommodate another outlet extender or a plugged in device.

[0036] In an embodiment, the outlet end 120 may include one or more outlets or receptacles 122, 124. For example, the outlet end 120 may include one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, or more outlets. The outlets 122 may be located on the face of the outlet end 120, as shown in FIGs. 1-4, but it is noted that the outlets 122 may be located on any side of the outlet end 120 as well, such as the side, top, or bottom edges. One or more of the outlets 122, 124 may include a GFCI (Ground Fault Circuit Interrupter). The outlets 122, 124 may also include surge protection that can protect against surges or spikes and limit the voltage supplied to a connected device by either blocking or shorting, to ground any voltages above a certain threshold. The outlets 122 may be able to accommodate any necessary voltage and power abilities so as to provide power to and charge cell phones, laptops, computers, tablets, appliances, and the like, and may be integrated with increased voltages, cables, and capabilities to provide faster or lightening charging and power. The outlet end 120 may also include one or more USB type outlets 126, such as one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, or more USB type outlets. The USB type outlets 126 may be USB A (shown as 126) or USB C (shown as 127) outlets. The USB type outlets may be located on a face of the outlet end 120 with the plugs, as shown in FIGs. 1A, 2A, and 2C, or may be located on the side of the outlet end 120, and as shown in FIG. 1B. Although other outlet types may not be specifically mentioned, it is noted that any outlet or combination of outlets may be incorporated into the outlet end 120. Further, the outlet end 120 may comprise AFCI outlets, 20 A outlets, or any of Type A, B, C, D, E, F, G, H, I, J, K, L, M, N and O IEC outlets utilized

throughout the world.

[0037] The outlet end 120 may include a device cradle, shelf, or holder, such as, for example holder 129. The device cradle, shelf, or holder may be located on any side of the outlet end 120 and may serve as a location to put or hold a device, such as a phone, tablet, home device, security device, or the like. The cradle, shelf, or holder may hold the device while such device is plugged into one of the outlets 122, 124. The cradle, shelf, or holder 129 may also include wireless charging technology to charge a device when it is in physical contact with the cradle, shelf, or holder if the device is within a threshold vicinity or distance to facilitate charging. The cradle, shelf, or holder 129 may also serve as a location to put or hold any item, including pencils, pens, other writing utensils, notebooks, address books, keys, wallets, purses, hairdryers, hair straighteners, toothbrushes, toothpaste, other bathroom items or household items, etc. In an embodiment, an extended shelf or faceplate with an extended shelf may be operatively attached to the outlet end 120 where the extended shelf is capable of holding heavier, larger, or specific objects (e.g., with holders or hooks configured to receive a key ring or hair item, etc.). The extended shelf may provide any size shelf as may be desired. The outlet end 120 may also include interchangeable faceplates 128 such as for, as an example, decoration or to provide an extended shelf. FIG. 4A, for example, shows a faceplate 128 having a different color than the remaining outlet extender 100. The faceplate 128 may include any color or colors, any pattern, any symbols, and the like, as may be desired. The faceplate 128 may be removed and attached by a sliding mechanism, snapping mechanism, fastener (such as a screw) friction fit, pressure fit, etc. It is noted that the color, shape, number of outlets, and the like, may vary when manufactured.

[0038] The outlet end 120 (or other portion of the outlet extender 100) may include capabilities to connect to Wi-Fi, Bluetooth, and other technology. The outlet end 120 (or other portion of the outlet extender 100) may communicate with any connected Wi-Fi, Bluetooth, Zigbee, or

similar device. The outlet end 120 (or other portion of the outlet extender 100) may receive and transmit information to and from a connected device (such as a computer, smart device, tablet or the like), and may carry out instructions. For example, the outlet end 120 may communicate information about outlet extender 100 regarding health, plugged in devices, power utilized, power surges, power outages, whether the plugged in device is powered on or off, hours of use, amount of electricity used over a defined period of time, and the like. The outlet end 120 (or other portion of the outlet extender 100) may also be able to selectively turn on and turn off a plugged in device or power supply to any of the outlets 122, 124, individually or together. Turning on and off a plugged in device or power supply to any of the outlets 122, 124 may be done in response to a command from a connected device (such as a computer, laptop, smart device, smart phone, tablet or the like), through a home device, by voice command, by physical switch on the outlet end 120, or in response to an event such as a power outage, a power surge, after a certain period of time, or as a result of a programmed routine. Further, the outlet extender 100 may include a sensor or a plurality of sensors that may be used to turn on and turn off the outlet extender 100. By way of a non-limiting example, the sensor may comprise a motion sensor such that it may sense motion and turn on or provide power to the outlet extender 100. Other types of sensors may be utilized, such as light sensors, sound sensors, and the like.

[0039] The outlet end 120 may also include one or more indicators, such as a light indicator. The light indicator may be an LED light. The indicators may indicate whether power is being (or not being) supplied through the outlets 122, 124, whether power is being received from the wall outlet, whether surge protection is enabled, whether the outlet extender 100 is connected to Wi-Fi or Bluetooth, Zigbee, and the like. The one or more light indicators may be different colors, may blink, and may create different patterns or combinations to convey its indications.

[0040] The outlet end 120 or plug end 110 may also include a light that is not an indicator, such as an LED light, that serves as a nightlight. The light may have a sensor to determine

ambient light or darkness and may automatically turn on and off when a certain threshold is met (e.g. the light may automatically turn on at dusk and turn off at dawn, when a light in the room is turned on and off, and the like.) The light may further turn on and off by a user pressing a switch or by a command over Wi-Fi, over Bluetooth or Zigbee, by voice, through a home device, and the like. The light may be set to a certain timed schedule to turn on and off at a specific time each day. The light may also include a motion sensor and turn on or off when such motion is sensed, or after a certain set time when no motion is sensed.

[0041] The outlet end 120 or plug end 110 may further include a built-in speaker, for example, a Bluetooth speaker or other configuration of a speaker, or a speaker may be selectively attachable to the outlet end 120 or plug end (such as by a faceplate attachment). The speaker may be separately chargeable or may pull power from the wall outlet or outlet extender 100 in any appropriate manner. The speaker may be charged by the outlet extender 100 (or more specifically through the power provided to the outlet end 120). The outlet end 120 may include an attachment device of any appropriate configuration to which the speaker may be selectively attached in any appropriate manner.

[0042] In an embodiment, the outlet extender 100 may be fixed, rigid, or stationary along the entirety of its length (e.g. not rotatable or not telescopic). For example, the fixed, rigid, or stationary outlet extender 100 may be provided in different sizes, e.g. 12 inches, 24 inches, 36 inches and any length lesser, greater, or in between. The outlet extender 100 may also include additional fixed adaptors that may be attached to the elongated shaft to adjust the length of the outlet extender 100 while still remaining fixed, rigid, or stationary overall. The fixed, rigid, or stationary outlet extender 100 may also include different oriented plugs or male contact 112 and plugs or female receptacles 122, 124, to facilitate plugging into a wall outlet in a straight orientation, a left side orientation, right side orientation, and similar.

[0043] In an embodiment, the outlet extender 100, or a portion thereof, may be selectively

12

rotatable at a point along its length. The outlet extender 100 may be selectively rotatable any range of degrees, such as, for example from about 5° to about 360°. The outlet extender 100 may be selectively rotatable about 180° so that the outlet end 120 may be positioned straight above the wall outlet in a straight configuration when plugged in (see FIG. 4A), or straight to the left or right of the wall outlet in a horizontal configuration when plugged in (see FIG. 4B), or any variation therebetween, e.g., 45 degrees, 90 degrees, 135 degrees, 225 degrees, 270 degrees, 315 degrees or anything therebetween. The appropriate angle to be utilized may depend on the specific use of the outlet extender 100.

[0044] As shown in FIG. 3B, the plug end 110 may be selectively rotatable in any appropriate manner. In an embodiment, a portion of the plug end 110 may be rotatable, such as the male contacts and associated base, or a swivel component. As seen in FIG. 4A-B, the outlet extender 100 may be plugged into a wall outlet initially in a straight configuration. Once the outlet extender 100 is plugged in at the plug end 110, the outlet end 120 may be rotated to the left about the point defined by the plug end 110 and its attachment to the wall outlet. This rotation may allow the outlet end 120 to clear the side of the couch or other furniture when in a horizontal position so that the outlets are accessible. Although the plug end 110 may be described as selectively rotatable, it is noted that any portion of the outlet extender 100 may be selectively rotatable, including, but not limited to, the extendable shaft 130. A user may selectively rotate the outlet extender 100 prior to plugging in the outlet extender 100 into the wall or when the outlet extender 100 has already been plugged into a wall outlet. The outlet extender 100 or plug end 110 may include a locking mechanism so that once the outlet extender 100 has been positioned in the desired location and at a desired angle, any undesired rotation of the outlet extender 100 may be prevented. The locking mechanism may include a bolt and slot, rotatable bar, spring-loaded hinge, and the like. The rotation of the outlet extender 100 or plug end 110 may be biased towards a certain position, such as a straight state.

[0045] In an embodiment, the outlet extender 100 may include an electrical cord portion between the elongated extender 130 and the plug end 110 that plugs into the wall outlet. The outlet extender 100 may plug into a wall outlet at the plug end 100, and then may be able to bend around a corner, be positioned on the floor, and the like, by the bendable cord portion. For example, the outlet extender 100 may be able to plug behind a desk, set on the floor or set on top of the desk, and have the outlets on the outlet end 120 available wherever the user desires. It is noted that while embodiments herein describe initial connection into a wall outlet, that any outlet may be used, such as an outlet in a power strip or surge protector.

[0046] In an embodiment, the outlet extender 100 may be selectively extendable. In an embodiment, the elongated extender 130 may be selectively extendable permitting the outlet extender 100 to be extendable. As shown in FIGs. 2A-D, the elongated extender 130 may be transitioned between a retracted state (FIG. 2A, 2B) to an extended state (FIG. 2C, 2D). The extension may be facilitated by telescoping sections or members, wherein one or more sections of the elongated extender 130 may be of a smaller diameter than the immediately adjacent section (located at one of the section's ends) such that the smaller diameter section (see, e.g. 132) may nest into the larger diameter section (see, e.g. 134). The larger diameter section 134 may similarly nest into an even larger diameter section and the small diameter section 132 may similarly be able to nest within it an even smaller diameter section. The elongated extender 130 may include two or more telescoping sections including three, four, five, six, seven eight, etc. sections. The sections may be at least partially hollow so as to accommodate smaller diameter telescoping sections in a collapsed state, as well as electrical lines running through the elongated extender 130 and between the plug end 110 and the outlet end 120.

[0047] Although sections of the elongated extender 130 include reference to diameter, it is noted that a cross-section of the elongated extender 130 may be round, square, or triangular and that nesting of any telescoping sections could be achieved by adapting the perimeter or

diameter as described. FIGs. 1-4 generally show an elongated extender 130 having a square or rectangular cross-section. Further, one of the small diameter section 132 or large diameter section 134 or both thereof may be rigid or fixed. This may result in the elongated extender 130 being rigid or fixed. In other embodiments, one of the small diameter section 132 or large diameter section 134 or both thereof may be flexible such that the elongated extender 130 or a portion thereof may be flexible such that it may be positionable around objects, such as furniture, walls, shelves, or the like. The flexible portion may allow the elongated extender 130 to be positioned at any applicable angle, e.g., between 5 degrees and 360 degrees, or between 5 degrees and 180 degrees.

[0048] The extension of the elongated extender 130 between a retracted state (FIG. 2A, 2B) to an extended state (FIG. 2C, 2D) may be facilitated by other extension mechanisms such as an accordion housing, modular adaptors that may be attached to an end of the elongated extender 130, and the like. In an embodiment, the elongated extender 130 may allow extension for any range of length, such as, for example from about 1 inch to about 18 inches to even greater, and any length therebetween. In an embodiment, the elongated extender 130 may end from a length of about 21 inches to about 34 inches. The elongated extender 130 may include a locking mechanism so that once the outlet extender 100 has been transitioned to its desired length, any undesired extension or retraction of the elongated extender 130 may be prevented. The locking mechanism may include a bolt and slot, rotatable bar, spring-loaded hinge, and the like. The elongated extender 130 may be biased towards a certain position, such as a retracted state.

[0049] In an embodiment, the plug end 110 of the outlet extender 100 may plug into a wall outlet, and the outlet end 120 may be free to rotate and extend as desired by the user. The outlet extender 100, aside from the operative attachment of the plug end 110 into a wall outlet, may otherwise remain free and unattached to the abutting wall. The outlet extender 100 itself may have sufficient weight distribution and sturdy materials to allow for these variable

configurations (e.g. a decoy plug, rigid housing, straight configuration, etc.).

[0050] In an embodiment, the outlet end 120 may include an attachment backing 140 on the back or wall-facing side 102 of the outlet extender 100, see FIG. 3A. When the plug end 110 of the outlet extender 100 is plugged into a wall outlet, the attachment backing 140 may comprise a way to selectively attach the outlet end 120 to the abutting wall. This attachment may provide additional stability to the outlet extender 100. This additional stability may be desired, for example, when the outlet extender 100 is in a horizontal configuration or extended fully. The attachment backing 140 may include a peel and stick adhesive pad for attachment to the wall, putty and dry-down putty attachment, hook and loop attachment, magnetic attachment, and the like. For example, a double sided adhesive pad may be attached to the wall-facing side 102 of the outlet end 120 and may be selectively attached to the wall, or two oppositely attracting magnets with peel back adhesive or putty attachments may be attached to the wall-facing side 102 of the outlet end 120 and the wall and be placed in magnetic contact. In using an adhesive pad, such pad may include adhesive that is non-marking, i.e., when it is removed from the surface or surfaces to which it is attached it does not leave any marks. Any appropriate non-marking adhesive may be utilized and the present disclosure is not limited to a specific type. Multiple magnets may be placed on the wall to allow for various and moveable attachment to the wall.

[0051] The attachment backing 140 may be selectively attached, detached, and reattached to allow for repositioning of the outlet extender 100 and without causing damage to the underlying wall. Although described embodiments include the attachment backing 140 on the wall-facing side 102 of the outlet end 120, it is noted that such attachment backing 140 may be located on any portion of the outlet extender 100, including the perimeter of the plug end 110 or the elongated extender 130. In an embodiment, the outlet extender 100 may be free from any attachment that fastens or anchors into, or otherwise traverses, the surface of the abutting wall

(such as nails, screws, and the like). Such attachment may include the attachment backing 140 described herein (peel and stick adhesive pad for attachment to the wall, putty and dry-down putty attachment, hook and loop attachment, magnetic attachment, and the like), which may not fasten or anchor into, or otherwise traverse, the surface of the abutting wall. The attachment backing 140 being attached to (whether fixedly or removably) may permit a portion, e.g., the elongated extender 130 or a portion thereof, to be non-rigid or flexible. The attachment backing 140 being attached to a wall means that the elongated extender 130 does not need to be rigid as in other prior embodiments as the attachment backing 140 may provide additional structural support. In such embodiments, the elongated extender 130 does not need to provide support to the outlet end 120 to be positioned in the applicable location. Instead, the attachment backing 140 being attached to the wall allows the outlet end 120 to be positioned in its desired location.

[0052] In an embodiment, the outlet end 120 may include a fastening mechanism that does fasten or anchor into, or otherwise traverses, the surface of the abutting wall. Such fastening mechanisms can include nails, screws, pin and the like.

[0053] The exterior or housing of the outlet extender 100 may be formed from any suitable material including, but not limited to, plastics and polymers. Suitable materials may include polyethylene terephthalate (PETE or PET), high-density polyethylene (HDPE), polyvinyl chloride (PVC), low-density polyethylene (LDPE), polypropylene (PP), polystyrene or styrofoam (PS), other plastics such as polycarbonate, polylactide, acrylic, acrylonitrile butadiene, styrene, fiberglass, and nylon, or a combination of one or more thereof.

[0054] Turning to FIGs. 5-11 showing non-limiting detailed embodiments of the housing and components of an outlet extender, FIGs. 5-11 show exploded views and components of an outlet end 120 (such as FIGs. 5-6), extendable shaft 130 (such as FIGs. 9 and 10), and plug end 110 (such as FIGs. 8, 11).

17

[0055] FIG. 5 depicts an exploded view of a non-limiting embodiment of an outlet end 120 and extendable shaft 130 of an outlet extender 100. In an embodiment, the outlet end 120 may include an outlet faceplate 128, a front outlet housing 210, a tamper preventer 214, and a rear outlet housing 218. The tamper preventer 214 may, as an example, ensure that only a corresponding plug (e.g. with two or three metal prongs) and not a foreign item, is able to plug into the outlet end 120 and make an electrical circuit or connection with the outlet extender 100. The tamper preventer 214 may include a shutter/spring type mechanism so that full entry into the female receptacles of the outlet end 120 (opening of the shutters) is made possible only when each of the one or more springs are compressed at the same time (by insertion of a corresponding plug into each opening of the female receptacle at the same time). The extendable shaft 130 may include a first tube housing 222 and a contact plate 226. In an embodiment, the first tube housing 222 may be part of an outer telescoping tube (i.e. a larger diameter tube that another tube with a smaller diameter nests within) or an inner telescoping tube (i.e. a smaller diameter tube that nests into a tube with a larger diameter). FIGs. 6A-D show a non-limiting embodiment of the front outlet housing 210, including female receptacles.

[0056] FIG. 7 shows an embodiment of a plug end 110 and extendable shaft 130 of an outlet extender 100 where FIG. 8 depicts an exploded view of an embodiment of the plug end 110 of the outlet extender 100 and FIG. 9 depicts an exploded view of an embodiment of the extendable shaft 130 of the outlet extender 10. In an embodiment and as shown in FIG. 8, the plug end 110 may include a plug faceplate 230, an inset band 234, fasteners 238 or another type of fitting mechanism as described herein, a front plug housing 242, an outer ring 246 and inner ring 250, a swivel seat 254, a plug 258, and a rear plug housing 262. The swivel seat 254 may facilitate rotation of the outlet extender 100 about an axis defined by the plug 258 as described herein. FIGs. 11A-C show a non-limiting embodiment of the front plug housing 242.

[0057] In embodiment and as shown in FIG. 9, the extendable shaft 130 may include a second

18

tube housing 264, a first cap 270, a bend collar 274, fasteners 278 or another type of fitting mechanism as described herein, and a cord assembly 282 and second cap 286. In an embodiment, the second tube housing 264 may be part of an inner telescoping tube (i.e. a smaller diameter tube that nests into a tube with a larger diameter) or an outer telescoping tube (i.e. a larger diameter tube that another tube with a smaller diameter nests within). As an example, if the first tube housing 222 is an outer telescoping tube of a larger diameter, then the second tube housing 264 will be an inner telescoping tube of a smaller diameter, or vice versa, e.g., if the first tube housing 222 is an inner telescoping tube of a smaller diameter, then the second tube housing 264 will be an outer telescoping tube of a larger diameter. In an embodiment, the first cap 270 may selectively attach to the first tube housing 222 and the second cap 286 may selectively attach to the second tube housing 264. The bend collar 274 may enable flexibility in the extendable shaft 130 and outlet extender 100, such as during transition between different rotational and telescopic positions. The cord assembly 282, shown in FIGs. 10A-B, may further comprise ground 290, neutral 294, and hot 298 cords and assemblies.

[0058] Although the embodiments of the present teachings have been illustrated in the accompanying drawings and described in the foregoing detailed description, it is to be understood that the present teachings are not to be limited to just the embodiments disclosed, but that the present teachings described herein are capable of numerous rearrangements, modifications and substitutions without departing from the scope of the claims hereafter. The claims as follows are intended to include all modifications and alterations insofar as they come within the scope of the claims or the equivalent thereof.

WO 2021/141952 PCT/US2021/012261

1/12



**FIG. 1A**         **FIG. 1B**

WO 2021/141952                                                                                                  PCT/US2021/012261

2/12



**FIG. 2A**                                                                                                  **FIG. 2B**

WO 2021/141952                                                              PCT/US2021/012261

3/12



**FIG. 2C**                                                    **FIG. 2D**

WO 2021/141952                                                                PCT/US2021/012261

4/12



**FIG. 3A**

**FIG. 3B**

WO 2021/141952

PCT/US2021/012261

5/12



**FIG. 4B**



**FIG. 4A**

WO 2021/141952

PCT/US2021/012261

6/12



**FIG. 5**

WO 2021/141952    PCT/US2021/012261

7/12



**FIG. 6A**

**FIG. 6C**

**FIG. 6B**

**FIG. 6D**

WO 2021/141952                                                                    PCT/US2021/012261

8/12



FIG. 7

WO 2021/141952

PCT/US2021/012261

9/12



**FIG. 8**

WO 2021/141952                                                                    PCT/US2021/012261

10/12



FIG. 9

WO 2021/141952

PCT/US2021/012261

11/12



FIG. 10A

FIG. 10B

WO 2021/141952

PCT/US2021/012261

12/12



**FIG. 11A**



**FIG. 11B**



**FIG. 11C**

PTO-1390 (10-20)
Approved for use through 10/31/2022. OMB 0651-0021
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TRANSMITTAL LETTER TO THE UNITED STATES DESIGNATED/ELECTED OFFICE (DO/EO/US) CONCERNING A SUBMISSION UNDER 35 U.S.C. 371 | Attorney Docket No. 48071-00006 |
|---|---|
| | U.S. Application No. (if known, see 37 CFR 1.5) |

| International Application No. PCT/US2021/012261 | International Filing Date 2021-01-06 | Priority Date Claimed 2020-01-07 |
|---|---|---|

**Title of Invention**
WALL MOUNTING OUTLET EXTENDER

**First Named Inventor**
Tony Matthew Galazin

**Applicant herewith submits to the United States Designated/Elected Office (DO/EO/US) the following items and other information.**

1. ☒ This is an express request to begin national examination procedures (35 U.S.C. 371(f)). NOTE: The express request under 35 U.S.C. 371(f) will not be effective unless the requirements under 35 U.S.C. 371(c)(1), (2), and (4) for payment of the basic national fee, copy of the International Application and English translation thereof (if required), and the oath or declaration of the inventor(s) have been received.

2. ☒ A copy of the International Application (35 U.S.C. 371(c)(2)) is attached hereto (not required if the International Application was previously communicated by the International Bureau or was filed in the United States Receiving Office (RO/US)).

3. An English language translation of the International Application (35 U.S.C. 371(c)(2))
   a. ☐ is attached hereto.
   b. ☐ has been previously submitted under 35 U.S.C. 154(d)(4).

4. An oath or declaration of the inventor(s) (35 U.S.C. 371(c)(4))
   a. ☒ is attached.
   b. ☐ was previously filed in the international phase under PCT Rule 4.17(iv).

**Items 5 to 8 below concern amendments made in the international phase.**

PCT Article 19 and 34 amendments

5. ☐ Amendments to the claims under PCT Article 19 are attached (not required if communicated by the International Bureau) (35 U.S.C. 371(c)(3)).

6. ☐ English translation of the PCT Article 19 amendment is attached (35 U.S.C. 371(c)(3)).

7. ☐ English translation of annexes (Article 19 and/or 34 amendments only) of the International Preliminary Examination Report is attached (35 U.S.C. 371(c)(5)).

Cancellation of amendments made in the international phase

8a. ☐ Do not enter the amendment made in the international phase under PCT Article 19.

8b. ☐ Do not enter the amendment made in the international phase under PCT Article 34.

NOTE: A proper amendment made in English under Article 19 or 34 will be entered in the U.S. national phase application absent a clear instruction from applicant not to enter the amendment(s).

**The following items 9 to 17 concern a document(s) or information included.**

9. ☒ An Information Disclosure Statement under 37 CFR 1.97 and 1.98.

10. ☒ A preliminary amendment.

11. ☒ An Application Data Sheet under 37 CFR 1.76.

12. ☐ A substitute specification. NOTE: A substitute specification cannot include claims. See 37 CFR 1.125(b).

13. ☐ A power of attorney and/or change of address letter.

14. ☐ A computer-readable form of the sequence listing in accordance with PCT Rule 13ter.3 and 37 CFR 1.821-1.825 (not required if sequence listing in text format was indicated on the PCT Request as part of the International Application and the sequence listing was published as part of the international application).

15. ☒ Assignment papers (cover sheet and document(s)). Name of Assignee: TOKA, LLC

16. ☐ 37 CFR 3.73(c) Statement (when there is an Assignee).

This collection of information is required by 37 CFR 1.414 and 1.491-1.492. The information is required to obtain or retain a benefit by the public, which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 15 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Mail Stop PCT, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

PTO-1390 (10-20)
Approved for use through 10/31/2022. OMB 0651-0021
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| U.S. APPLN. No. (if known – see 37 CFR 1.5) | INTERNATIONAL APPLICATION No.<br>**PCT/US2021/012261** | ATTORNEY DOCKET No.<br>**48071-00006** |
|---|---|---|

**17.** ☐ Other items or information:

---

| **The following fees have been submitted.** | CALCULATIONS |
|---|---|
| **18.** ■ Basic national fee (37 CFR 1.492(a)) ............................................................ $320 | $ 320.00 |
| **19.** ■ Examination fee (37 CFR 1.492(c))<br>• If the written opinion prepared by ISA/US or the international preliminary examination report prepared by IPEA/US indicates all claims satisfy provisions of PCT Article 33(1)-(4).............. $0<br>• All other situations ............................................................................... $800 | $ 800.00 |
| **20.** ■ Search fee (37 CFR 1.492(b))<br>• If the written opinion prepared by ISA/US or the international preliminary examination report prepared by IPEA/US indicates all claims satisfy provisions of PCT Article 33(1)-(4).............. $0<br>• Search fee (37 CFR 1.445(a)(2)) has been paid on the international application to the USPTO as an International Searching Authority .................................................... $140<br>• International Search Report prepared by an ISA other than the US and provided to the Office or previously communicated to the US by the IB........................................... $540<br>• All other situations ............................................................................... $700 | $ 540.00 |
| **TOTAL OF 18, 19, and 20 =** | $ 1660.00 |

| ☐ Additional fee for specification and drawings filed in paper over 100 sheets (excluding sequence listing in compliance with 37 CFR 1.821(c) or (e) in an electronic medium or computer program listing in an electronic medium) (37 CFR 1.492(j)).<br><br>Fee for each additional 50 sheets of paper or fraction thereof ............................... $420 | $ |
|---|---|

| Total Sheets | Extra Sheets | Number of each additional 50 or fraction thereof (round **up** to a whole number) | RATE |
|---|---|---|---|
| - 100 = | / 50 = | | x **$420** |

| Surcharge for furnishing any of the search fee, examination fee, or the oath or declaration after the date of commencement of the national stage (37 CFR 1.492(h))................................................. $160 | $ |
|---|---|

| CLAIMS | NUMBER FILED | NUMBER EXTRA | RATE | |
|---|---|---|---|---|
| Total claims | - 20 = | | x **$100** | $ |
| Independent claims | - 3 = | | x **$480** | $ |
| MULTIPLE DEPENDENT CLAIM(S) (if applicable) | | | + **$860** | $ |

| Fee for submission of Sequence Listing text file of 300 MB to 800 MB (37 CFR 1.21(o)(1)).................. **$1,060** | $ |
|---|---|
| Fee for submission of Sequence Listing text file of more than 800 MB (37 CFR 1.21(o)(2))...................**$10,500** | $ |
| Processing fee for furnishing the English translation later than 30 months from the earliest claimed priority date (37 CFR 1.492(i))..................................................................................................**$140 +** | $ |
| **TOTAL OF ABOVE CALCULATIONS =** | $ 1660.00 |

| ■ **Applicant asserts small entity status.** See 37 CFR 1.27. Fees above are reduced by ½. | |
|---|---|
| ☐ **Applicant certifies micro entity status.** See 37 CFR 1.29. Fees above are reduced by ¾.<br>Applicant must attach form PTO/SB/15A or B or equivalent. | |
| **TOTAL NATIONAL FEE =** | $ 830.00 |
| Fee for recording the enclosed assignment (37 CFR 1.21(h)). The assignment must be accompanied by an appropriate cover sheet (37 CFR 3.28, 3.31)................................................. **$50.00 per property    +** | $ |
| **TOTAL FEES ENCLOSED =** | $ 830.00 |

PTO-1390 (10-20)
Approved for use through 10/31/2022. OMB 0651-0021
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

a. ☐ A check in the amount of $_____ to cover the above fees is enclosed.

b. ☐ Please charge my Deposit Account No. _____ in the amount of $_____ to cover the above fees.

c. ☑ The Director is hereby authorized to charge additional fees which may be required, or credit any overpayment, to Deposit Account No. 130265_____ as follows:

    i. ☐ any required fee.

    ii. ☑ any required fee except for excess claims fees required under 37 CFR 1.492(d) and (e) and multiple dependent claim fee required under 37 CFR 1.492(f).

d. ☑ Fees are to be charged to a credit card. **WARNING:** Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038. The PTO-2038 should only be mailed or faxed to the USPTO. However, when paying the basic national fee, the PTO-2038 may NOT be faxed to the USPTO.

    **ADVISORY:** If filing by EFS-Web, do **NOT** attach the PTO-2038 form as a PDF along with your EFS-Web submission. Please be advised that this is **not** recommended and by doing so your **credit card information may be displayed via PAIR**. To protect your information, it is recommended to pay fees online by using the electronic payment method.

**NOTE: Where an appropriate time limit under 37 CFR 1.495 has not been met, a petition to revive (37 CFR 1.137(a) or (b)) must be filed and granted to restore the International Application to pending status.**

---

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications**

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013, and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.

**NOTE 1:** By providing this statement under 37 CFR 1.55 or 1.78, **this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.**

**NOTE 2:** A U.S. national stage application may not claim priority to the international application of which it is the national phase. The filing date of a U.S. national stage application is the international filing date. See 35 U.S.C. 363.

---

**Correspondence Address**

☑ The address associated with Customer Number: 33772 _____ **OR** ☐ Correspondence address below

| Name | |
|---|---|
| Address | |

| City | | State | | Zip Code | |
|---|---|---|---|---|---|

| Country | | Telephone | |
|---|---|---|---|

| Email | ipmailbox@mcdonaldhopkins.com |
|---|---|

| Signature | /Todd A. Benni/ | Date | 2021-07-06 |
|---|---|---|---|
| Name (Print/Type) | Todd A. Benni | Registration No. (Attorney/Agent) | 42313 |

[Page 3 of 3]

Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | **Attorney Docket Number** | 48071-00006 |
|---|---|---|
| | **Application Number** | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2  (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | Remove |
|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| ▾ | Tony | Matthew | Galazin | ▾ |

**Residence Information (Select One)**   ● US Residency      Non US Residency      Active US Military Service

| City | Greenwich | State/Province | CT | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 351 Pemberwick Road | | |
|---|---|---|---|
| Address 2 | Apt. 914 | | |
| City | Greenwich | State/Province | CT |
| Postal Code | 06831 | Country i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.   | Add |

## Correspondence Information:

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐  **An Address is being provided for the correspondence Information of this application.**

| Customer Number | 33772 | | |
|---|---|---|---|
| Email Address | ipmailbox@mcdonaldhopkins.com | Add Email | Remove Email |

## Application Information:

| Title of the Invention | WALL MOUNTING OUTLET EXTENDER | | |
|---|---|---|---|
| Attorney Docket Number | 48071-00006 | **Small Entity Status Claimed** | ☒ |
| Application Type | Nonprovisional | | ▾ |
| Subject Matter | Utility | | ▾ |
| **Total Number of Drawing Sheets (if any)** | 12 | **Suggested Figure for Publication (if any)** | 1A |

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00006 |
|---|---|---|
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

| | |
|---|---|
| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32).
Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 33772 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending ▼ | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | a 371 of international ▼ | PCT/US2021/012261 | 2021-01-06 |

EFS Web 2.2.13

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00006 |
|---|---|---|
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

| Prior Application Status | Pending ▼ | | Remove |
|---|---|---|---|
| **Application Number** | **Continuity Type** | **Prior Application Number** | **Filing or 371(c) Date (YYYY-MM-DD)** |
| PCT/US2021/012261 | Continuation of ▼ | 16/988045 | 2020-08-07 |
| Prior Application Status | Expired ▼ | | Remove |
| **Application Number** | **Continuity Type** | **Prior Application Number** | **Filing or 371(c) Date (YYYY-MM-DD)** |
| 16/988045 | Claims benefit of provisional ▼ | 62/957903 | 2020-01-07 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.          Add

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application.  Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55.  When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2).  Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|
| **Application Number** | **Country[i]** | **Filing Date (YYYY-MM-DD)** | **Access Code[i] (if applicable)** |
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.          Add

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

| ☐ | This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013. |
|---|---|
| | NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA. |

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00006 |
|---|---|---|
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**:  This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application.  After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s).  Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1.  Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A.  Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2)  any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B.  Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2.  Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐   A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed.  If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐   B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:**  Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00006 |
|---|---|---|
| | Application Number | |
| Title of Invention | WALL MOUNTING OUTLET EXTENDER | |

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant** 1                                                              Remove

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
|---|---|---|
| Person to whom the inventor is obligated to assign. | Person who shows sufficient proprietary interest | |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here.    ☒

| Organization Name | TOKA, LLC |
|---|---|

**Mailing Address Information For Applicant:**

| **Address 1** | 351 Pemberwick Road | | |
|---|---|---|---|
| Address 2 | Apt. 914 | | |
| **City** | Greenwich | **State/Province** | CT |
| **Country** | US | **Postal Code** | 06831 |
| Phone Number | 216-348-5400 | Fax Number | 216-348-5474 |
| Email Address | ipmailbox@mcdonaldhopkins.com | | |

Additional Applicant Data may be generated within this form by selecting the Add button.    Add

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00006 |
|---|---|---|
|  | Application Number |  |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
|---|---|

---

## Assignee    1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

Remove

If the Assignee or Non-Applicant Assignee is an Organization check here.  ☐

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
|---|---|---|---|---|
| ▼ |  |  |  | ▼ |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| **Address 1** |  |  |  |
|---|---|---|---|
| Address 2 |  |  |  |
| **City** |  | **State/Province** |  |
| **Country** i |  | Postal Code |  |
| Phone Number |  | Fax Number |  |
| Email Address |  |  |  |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.    Add

---

# Signature:                                                                 Remove

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| **Signature** | /Todd A. Benni/ |  |  | Date (YYYY-MM-DD) | 2021-07-06 |
|---|---|---|---|---|---|
| First Name | Todd | Last Name | Benni | Registration Number | 42313 |

Additional Signature may be generated within this form by selecting the Add button.    Add

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 48071-00006 |
| | Application Number | |

| Title of Invention | WALL MOUNTING OUTLET EXTENDER |
| --- | --- |

This collection of information is required by 37 CFR 1.76.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.   The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.   A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.   A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.   A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.   A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent CooperationTreaty.

6.   A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.   A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.   A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.   A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

## ABSTRACT

[0059] Provided is a wall power outlet extender that may be positioned or mounted on a wall and that may relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. The wall power outlet extender may be positionable along a surface of a wall adjacent to a wall power outlet and may allow a user to semi-permanently relocate the wall power outlet. The wall power outlet extender may be made fixed and stationary at a particular position and relatively unmovable unless acted on or repositioned by a user. The wall power outlet extender may be selectively rotatable and/or telescopic, and include a spinning or ambidextrous plug, to be adaptable to the specific location and to provide a myriad of different positions in which the new outlet may be placed. The wall power outlet extender may feature multiple outlets, USB ports, and surge protection, as well as Bluetooth and wireless capabilities.

CLAIMS

What is claimed is:

1.      A wall outlet extender comprising:

a plug end configured to selectively plug into a wall outlet,

an outlet end configured to selectively receive one or more plugs, wherein the outlet end comprises an interchangeable decorative faceplate, and

an extendable shaft positioned between the plug end and the outlet end,

wherein the plug end is rotatable.

2.      The wall outlet extender of claim 1, wherein the extendable shaft includes two or more telescoping portions.

3.      The wall outlet extender of claim 2, wherein the extendable shaft includes a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter is larger than the second diameter.

4.      The wall outlet extender of claim 3, wherein the first telescoping portion is configured to internally receive the second telescoping portion in a retracted position.

5.      The wall outlet extender of claim 4, wherein the extendable shaft is extendable from about 21 inches to about 34 inches.

6.      The wall outlet extender of any of the previous claims, wherein the plug end is rotatable about 360°.

7.      The wall outlet extender of any of the previous claims further comprising an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall.

8.      The wall outlet extender of claim 7, wherein the engagement portion comprises a non-permanent adhesive, removable putty, or stickable surface.

9.      The wall outlet extender of claim 8, wherein the engagement portion is free from any attachment to the wall that traverses or damages the wall surface.

10.      The wall outlet extender of any of the previous claims, wherein the outlet end includes an even number of outlets and at least one USB port.

11.      The wall outlet extender of any of the previous claims, wherein the outlet end comprises a device cradle configured to hold a device while the device is plugged into the outlet end.

12.      The wall outlet extender of any of the previous claims, wherein the wall outlet extender comprises Bluetooth or Wi-Fi connectivity capabilities.

13.      The wall outlet extender of claim 1 further comprising an electrical cord portion positioned between the extendable shaft and the plug end.

14.      An extendable power outlet adaptor, comprising:

        a plug selectively configured to insert into a wall outlet,

        a shaft that is telescopic and that is rotatable about the plug up to 360°, and

        one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall;

        an interchangeable decorative faceplate selectively attached with the one or more outlet receptacles.

15.      The extendable power outlet adaptor of claim 14, wherein the one or more outlet receptacles are attachable to the wall by temporary adhesive, putty, or stickable surface.

16.      The extendable power outlet adaptor of claim 15, wherein the one or more outlet receptacles are free from any attachment to the wall that traverses or damages the wall surface.

17.    The extendable power outlet adaptor of any of claims 14-16, wherein the one or more outlet receptacles may be removed and repositioned onto the wall.

18.    The extendable power adaptor of any of claims 14-17 further comprising an electrical cord portion positioned between the shaft and the plug.

PATENT APPLICATION

Inventors:    Tony Matthew Galazin

Docket No.:    48071-00004

TITLE

## WALL MOUNTING OUTLET EXTENDER

CROSS-REFERENCE TO RELATED APPLICATIONS

[0001] This application claims priority to U.S. Utility Application No. 16/988,045 entitled "WALL MOUNTING OUTLET EXTENDER" filed on August 7, 2020 and U.S. Provisional Patent Application No. 62/957,903 entitled "WALL MOUNTING OUTLET EXTENDER" filed on January 7, 2020 each of which are hereby incorporated by reference in their entireties.

FIELD OF THE INVENTION

[0002] The present disclosure generally relates to power outlet extenders and, more specifically, to a rotatable and/or telescopic power outlet extender that may be used to relocate a wall power outlet to multiple other positions on the wall.

BACKGROUND

[0003] Wall power outlets are stationary and, as a result, may be located in inconvenient or inaccessible areas of a household, workplace, or business. For example, wall outlets may end up being positioned behind sofas, mattresses, furniture, shelving, storage items, and the like. Such inconvenient or inaccessible wall outlets may cause any number of problems including the inability to easily plug in or unplug cords and devices into the wall outlet. Additionally, in order to reach these wall outlets, the cord of a particular device, such as that for a smart device, television, computer, laptop, charger, lamp, and the like, may not be long enough to plug into the wall outlet and be used as desired.

[0004] As it stands, actually changing the location and accessibility of an otherwise stationary

wall outlet requires an electrician and direct access into the wall. Such relocation of a wall outlet and access into the wall can be invasive, costly, and require a specialized workman or professional installation. Additionally, relocation of a wall outlet to another position on the wall by an electrician is permanent, and the new stationary wall outlet also cannot be further relocated or repositioned at a later time without going through the same process.

[0005] Other options for extending a wall outlet include extension cords. Extension cords typically comprise a flexible cord that plugs into the wall outlet on one end and runs along the floor or other flat surface to its other end that houses one or more outlets. Extension cords are often used temporarily, such as in situations for using power tools outside of the house, powering indoor and outdoor Christmas lights, and the like. When used in more permanent or daily situations, extension cords can clutter the floor or surface it lays on and cause other inconvenience, can be accidentally moved or damaged, and can put stress on the juncture between the wall outlet and the plug resulting in fraying or other damage.

[0006] What is needed is a wall power outlet extender that can be positioned or mounted on a wall and that can relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. What is also needed is a wall power outlet extender that is repositionable, re-mountable, and removable to accommodate changing needs.

## SUMMARY OF THE INVENTION

[0007] A wall outlet extender that extends a wall outlet to a new position on a wall may include a plug end configured to selectively plug into the wall outlet, an outlet end configured to selectively receive one or more plugs, and an extendable shaft between the plug end and the outlet end. The wall outlet extender may be rotatable about the plug end.

[0008] The wall outlet extender may also include any of the foregoing, which may be combined

in any manner without departing from the present teachings. In an embodiment, the extendable shaft may include two more or telescoping portions. The extendable shaft may include a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter may be larger than the second diameter. The first telescoping portion may be configured to internally receive the second telescoping portion in a retracted position. In an embodiment, the extendable shaft may be extendable from about 21 inches to about 34 inches. In an embodiment, the plug end may be rotatable about 360°. In an embodiment, the wall outlet extender may further include an engagement portion. The engagement portion may be positioned on a wall-facing side of the outlet end and may be configured to selectively engage the wall. The engagement portion may comprise a non-permanent adhesive, removable putty, or stickable surface. The engagement portion may be free from any attachment to the wall that traverses or damages the wall surface. In an embodiment, the outlet end may include an even number of outlets and at least one USB port. In an embodiment, the outlet end may include interchangeable faceplates. In an embodiment, the outlet end may include a device cradle configured to hold a device while the device is plugged into the outlet end. In an embodiment, the wall outlet extender may include Bluetooth or Wi-Fi connectivity capabilities.

[0009] An extendable power outlet adaptor may include a plug selectively configured to insert into a wall outlet, a shaft that is telescopic and that is rotatable about the plug up to 360°, and one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall adjacent to the wall outlet.

[0010] The wall outlet extender may also include any of the foregoing, which may be combined in any manner without departing from the present teachings. In an embodiment, the outlet receptacles may be attachable to the wall by temporary adhesive, putty, or stickable surface. In an embodiment, the extendable power outlet adaptor may be free from any attachment to the

wall that traverses or damages the wall surface. In an embodiment, the extendable power outlet adaptor may be removed and repositioned onto the wall.

<div align="center">BRIEF DESCRIPTION OF THE DRAWINGS</div>

[0011] The present teachings may be better understood by reference to the following detailed description taken in connection with the following illustrations, wherein:

[0012] FIG. 1A depicts an isometric view of an embodiment of an outlet extender in an extended position in accordance with aspects of the present disclosure;

[0013] FIG. 1B depicts an isometric view of an embodiment of an outlet extender in an extended position in accordance with aspects of the present disclosure;

[0014] FIG. 2A depicts a front view of an embodiment of an outlet extender in a retracted position in accordance with aspects of the present disclosure;

[0015] FIG. 2B depicts a side view of the outlet extender shown in FIG. 2A in a retracted position in accordance with aspects of the present disclosure;

[0016] FIG. 2C depicts a front view of the outlet extender shown in FIG. 2A in an extended position in accordance with aspects of the present disclosure;

[0017] FIG. 2D depicts a side view of the outlet extender shown in FIG. 2A in an extended position in accordance with aspects of the present disclosure;

[0018] FIG. 3A depicts a back view of an outlet extender in a retracted position in accordance with aspects of the present disclosure;

[0019] FIG. 3B depicts an expanded view of Box A of the outlet extender shown in FIG. 3A in accordance with aspects of the present disclosure;

[0020] FIG. 4A depicts an isometric view of an embodiment of an outlet extender as it is being plugged into a wall outlet in accordance with aspects of the present disclosure; and

[0021] FIG. 4B depicts a front view of an embodiment of an outlet extender plugged into a wall outlet and rotated about 90° counter clockwise to a side position in accordance with aspects of the present disclosure;

[0022] FIG. 5 depicts an exploded view of an embodiment of an outlet end and extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

[0023] FIG. 6A depicts an isometric view of an embodiment of a front outlet housing, where FIG. 6B shows a side view, FIG. 6C shows a front view, and FIG. 6D shows a back view of the front outlet housing in accordance with aspects of the present disclosure;

[0024] FIG. 7 depicts front and side views of an embodiment of a plug end and extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

[0025] FIG. 8 depicts an exploded view of an embodiment of a plug end of an outlet extender in accordance with aspects of the present disclosure;

[0026] FIG. 9 depicts an exploded view of an embodiment of an extendable shaft of an outlet extender in accordance with aspects of the present disclosure;

[0027] FIG. 10A depicts an isometric view of an embodiment of a cord assembly and FIG. 10B shows an exploded view of a cord assembly in accordance with aspects of the present disclosure;

[0028] FIG. 11A depicts an isometric view of an embodiment of a front plug housing, where FIG. 11B shows a front view and FIG. 11C shows a back view of the front plug housing in accordance with aspects of the present disclosure.

<div align="center">DETAILED DESCRIPTION</div>

[0029] Reference will now be made in detail to exemplary embodiments of the present teachings, examples of which are illustrated in the accompanying drawings. It is to be understood that other embodiments may be utilized and structural and functional changes may be made without departing from the respective scope of the present teachings. Moreover,

features of the various embodiments may be combined or altered without departing from the scope of the present teachings. As such, the following description is presented by way of illustration only and should not limit in any way the various alternatives and modifications that may be made to the illustrated embodiments and still be within the spirit and scope of the present teachings. In this disclosure, numerous specific details provide a thorough understanding of the subject disclosure. It should be understood that aspects of this disclosure may be practiced with other embodiments not necessarily including all aspects described herein, etc.

[0030] As used herein, the words "example" and "exemplary" means an instance, or illustration. The words "example" or "exemplary" do not indicate a key or preferred aspect or embodiment. The word "or" is intended to be inclusive rather than exclusive, unless context suggests otherwise. As an example, the phrase "A employs B or C," includes any inclusive permutation (e.g., A employs B; A employs C; or A employs both B and C). As another matter, the articles "a" and "an" are generally intended to mean "one or more" unless context suggest otherwise.

[0031] Provided is a wall power outlet extender that may be positioned or mounted on a wall and that may relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces. The wall power outlet extender may be positionable along a surface of a wall adjacent to a wall power outlet and may allow a user to semi-permanently relocate the wall power outlet.  The wall power outlet extender can be permanent in that it may not be as accidentally movable as an extension cord, may be able to have a low profile on or against a wall, and may have a rigid housing. The wall power outlet extender can be temporary in that it does not require any professional installation, does not require opening of a wall or electrical work, and can easily be unplugged and re-plugged into the same or a different wall power outlet.

{9324486: }                                6

[0032] The wall power outlet extender may become fixed and stationary at a particular position and relatively unmovable unless acted on or repositioned by a user. The wall power outlet extender may be selectively rotatable and/or telescopic, and include a spinning or ambidextrous plug, to be adaptable to the specific location and to provide a myriad of different positions in which the new outlet may be placed. The wall power outlet extender may feature multiple outlets, USB ports, and surge protection, as well as Bluetooth and wireless capabilities, which are described in more detail below.

[0033] FIGs. 1-4 depict an outlet extender 100 having a plug end 110 and an outlet or socket end 120 electrically connected by an elongated extender or extendable shaft 130. The outlet extender 100 may comprise a housing (such as 222 described in more detail below) that is partially hollow to accommodate electrical line or lines (of appropriate configuration) positioned through the elongated extender 130 and between the plug end 110 and the outlet end 120. The plug end 110 may include one or more plugs or sets of male contacts 112 that are operatively attachable to an outlet, such as a wall outlet. The plugs or male contacts 112 may be placed on a back or wall-facing side 102 of the outlet extender 100, see FIG. 4A. The plugs or male contacts 112 may be of any orientation and fitted to connect with any type of outlet, including household outlets, appliance outlets, industrial or commercial outlets, and outlets in any country, such as the U.S., Europe, Asia, Australia, etc. In some embodiments, the plugs or male contacts 112 may be replaceable, i.e., a user may remove one of the plugs or male contacts 112 and replace it with a different one, such as one that has a different configuration. This will allow a user to utilize the outlet extender 100 with one type of plug and then replace the plug or male contact 112 with a different one, such as by way of an example, by replacing a U.S. plug with one of a European configuration. The outlet end 120 may include one or more outlets or female receptacles 122, 124 that operatively receive a plug. In the embodiment shown in FIG. 1, a pair of outlets or female receptacles 122, 124 may be utilized. It should be understood,

however, that any number of female receptacles may be utilized, e.g., one, three, four, five, six, etc.

[0034] The outlets or female receptacles 122, 124 may be placed on an opposite side from the plugs or male contacts 112, or on a front or room-facing side 104 of the outlet extender 100. As a result, the plugs or male contacts 112 may be plugged into a wall outlet and the outlets or female receptacles 122, 124 may face the room to be accessible to receive other plugs, see FIG. 4A. The outlets or female receptacles 122, 124 may be of any orientation and fitted to connect with any type of plug, including plugs for household items, appliances (such as electrical dryers), industrial or commercial devices or machinery, electrically powered items, and plugs that are used in any country, such as the U.S., Europe, Asia, Australia, etc. Although the drawings generally depict a three-prong AC plug and outlets as used in the U.S., it is noted that any plug and outlets may be incorporated into the outlet extender design. In some embodiments, the plug and outlet may be of a similar configuration or they may be of a different configuration such that the outlet extender 100 can act as an adapter to change the outlet from a first configuration to a second configuration (e.g. a U.S. plug and European receptacles or vice versa). In an embodiment, the plug end 110 and the outlet end 120 may include mating plugs and outlets, or the plug end 110 and the outlet end 120 may include plug and outlet types that are different. The plug end 100 may comprise Type A, B, C, D, E, F, G, H, I, J, K, L, M, N and O IEC plug ends that are utilized throughout the world. Further the plug end 100 may comprise a 120 volt end, 240 volt end or a combination of the foregoing.

[0035] In an embodiment, the plug end 110 may include a single plug, may include a single plug and a decoy plug, two plugs, or any number of plugs. The present disclosure contemplates use of any number of plug ends 110 (e.g., one, two, three, etc.). In an embodiment having a decoy plug, the decoy plug may plug into the second outlet in the wall outlet and may provide additional structural support to the outlet extender 100 as it is positioned against the wall. The

decoy plug may be made of a plastic or non-electrically conductive material. In an embodiment with two plugs, each plug may enter into one of the outlets on the wall outlet and may receive or transfer power or electricity. FIG. 3B shows an embodiment of the plug end having a single plug 112. In an embodiment having a single plug, the other plug in the wall outlet may remain accessible and accommodate another outlet extender or a plugged in device.

[0036] In an embodiment, the outlet end 120 may include one or more outlets or receptacles 122, 124. For example, the outlet end 120 may include one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, or more outlets. The outlets 122 may be located on the face of the outlet end 120, as shown in FIGs. 1-4, but it is noted that the outlets 122 may be located on any side of the outlet end 120 as well, such as the side, top, or bottom edges. One or more of the outlets 122, 124 may include a GFCI (Ground Fault Circuit Interrupter). The outlets 122, 124 may also include surge protection that can protect against surges or spikes and limit the voltage supplied to a connected device by either blocking or shorting, to ground any voltages above a certain threshold. The outlets 122 may be able to accommodate any necessary voltage and power abilities so as to provide power to and charge cell phones, laptops, computers, tablets, appliances, and the like, and may be integrated with increased voltages, cables, and capabilities to provide faster or lightening charging and power. The outlet end 120 may also include one or more USB type outlets 126, such as one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, or more USB type outlets. The USB type outlets 126 may be USB A (shown as 126) or USB C (shown as 127) outlets. The USB type outlets may be located on a face of the outlet end 120 with the plugs, as shown in FIGs. 1A, 2A, and 2C, or may be located on the side of the outlet end 120, and as shown in FIG. 1B. Although other outlet types may not be specifically mentioned, it is noted that any outlet or combination of outlets may be incorporated into the outlet end 120. Further, the outlet end 120 may comprise AFCI outlets, 20 A outlets, or any of Type A, B, C, D, E, F, G, H, I, J, K, L, M, N and O IEC outlets utilized

throughout the world.

[0037] The outlet end 120 may include a device cradle, shelf, or holder, such as, for example holder 129. The device cradle, shelf, or holder may be located on any side of the outlet end 120 and may serve as a location to put or hold a device, such as a phone, tablet, home device, security device, or the like. The cradle, shelf, or holder may hold the device while such device is plugged into one of the outlets 122, 124. The cradle, shelf, or holder 129 may also include wireless charging technology to charge a device when it is in physical contact with the cradle, shelf, or holder if the device is within a threshold vicinity or distance to facilitate charging. The cradle, shelf, or holder 129 may also serve as a location to put or hold any item, including pencils, pens, other writing utensils, notebooks, address books, keys, wallets, purses, hairdryers, hair straighteners, toothbrushes, toothpaste, other bathroom items or household items, etc. In an embodiment, an extended shelf or faceplate with an extended shelf may be operatively attached to the outlet end 120 where the extended shelf is capable of holding heavier, larger, or specific objects (e.g., with holders or hooks configured to receive a key ring or hair item, etc.). The extended shelf may provide any size shelf as may be desired. The outlet end 120 may also include interchangeable faceplates 128 such as for, as an example, decoration or to provide an extended shelf. FIG. 4A, for example, shows a faceplate 128 having a different color than the remaining outlet extender 100. The faceplate 128 may include any color or colors, any pattern, any symbols, and the like, as may be desired. The faceplate 128 may be removed and attached by a sliding mechanism, snapping mechanism, fastener (such as a screw) friction fit, pressure fit, etc. It is noted that the color, shape, number of outlets, and the like, may vary when manufactured.

[0038] The outlet end 120 (or other portion of the outlet extender 100) may include capabilities to connect to Wi-Fi, Bluetooth, and other technology. The outlet end 120 (or other portion of the outlet extender 100) may communicate with any connected Wi-Fi, Bluetooth, Zigbee, or

similar device. The outlet end 120 (or other portion of the outlet extender 100) may receive and transmit information to and from a connected device (such as a computer, smart device, tablet or the like), and may carry out instructions. For example, the outlet end 120 may communicate information about outlet extender 100 regarding health, plugged in devices, power utilized, power surges, power outages, whether the plugged in device is powered on or off, hours of use, amount of electricity used over a defined period of time, and the like. The outlet end 120 (or other portion of the outlet extender 100) may also be able to selectively turn on and turn off a plugged in device or power supply to any of the outlets 122, 124, individually or together. Turning on and off a plugged in device or power supply to any of the outlets 122, 124 may be done in response to a command from a connected device (such as a computer, laptop, smart device, smart phone, tablet or the like), through a home device, by voice command, by physical switch on the outlet end 120, or in response to an event such as a power outage, a power surge, after a certain period of time, or as a result of a programmed routine. Further, the outlet extender 100 may include a sensor or a plurality of sensors that may be used to turn on and turn off the outlet extender 100. By way of a non-limiting example, the sensor may comprise a motion sensor such that it may sense motion and turn on or provide power to the outlet extender 100. Other types of sensors may be utilized, such as light sensors, sound sensors, and the like.

[0039] The outlet end 120 may also include one or more indicators, such as a light indicator. The light indicator may be an LED light. The indicators may indicate whether power is being (or not being) supplied through the outlets 122, 124, whether power is being received from the wall outlet, whether surge protection is enabled, whether the outlet extender 100 is connected to Wi-Fi or Bluetooth, Zigbee, and the like. The one or more light indicators may be different colors, may blink, and may create different patterns or combinations to convey its indications.

[0040] The outlet end 120 or plug end 110 may also include a light that is not an indicator, such as an LED light, that serves as a nightlight. The light may have a sensor to determine

ambient light or darkness and may automatically turn on and off when a certain threshold is met (e.g. the light may automatically turn on at dusk and turn off at dawn, when a light in the room is turned on and off, and the like.) The light may further turn on and off by a user pressing a switch or by a command over Wi-Fi, over Bluetooth or Zigbee, by voice, through a home device, and the like. The light may be set to a certain timed schedule to turn on and off at a specific time each day. The light may also include a motion sensor and turn on or off when such motion is sensed, or after a certain set time when no motion is sensed.

[0041] The outlet end 120 or plug end 110 may further include a built-in speaker, for example, a Bluetooth speaker or other configuration of a speaker, or a speaker may be selectively attachable to the outlet end 120 or plug end (such as by a faceplate attachment). The speaker may be separately chargeable or may pull power from the wall outlet or outlet extender 100 in any appropriate manner. The speaker may be charged by the outlet extender 100 (or more specifically through the power provided to the outlet end 120). The outlet end 120 may include an attachment device of any appropriate configuration to which the speaker may be selectively attached in any appropriate manner.

[0042] In an embodiment, the outlet extender 100 may be fixed, rigid, or stationary along the entirety of its length (e.g. not rotatable or not telescopic). For example, the fixed, rigid, or stationary outlet extender 100 may be provided in different sizes, e.g. 12 inches, 24 inches, 36 inches and any length lesser, greater, or in between. The outlet extender 100 may also include additional fixed adaptors that may be attached to the elongated shaft to adjust the length of the outlet extender 100 while still remaining fixed, rigid, or stationary overall. The fixed, rigid, or stationary outlet extender 100 may also include different oriented plugs or male contact 112 and plugs or female receptacles 122, 124, to facilitate plugging into a wall outlet in a straight orientation, a left side orientation, right side orientation, and similar.

[0043] In an embodiment, the outlet extender 100, or a portion thereof, may be selectively

rotatable at a point along its length. The outlet extender 100 may be selectively rotatable any range of degrees, such as, for example from about 5° to about 360°. The outlet extender 100 may be selectively rotatable about 180° so that the outlet end 120 may be positioned straight above the wall outlet in a straight configuration when plugged in (see FIG. 4A), or straight to the left or right of the wall outlet in a horizontal configuration when plugged in (see FIG. 4B), or any variation therebetween, e.g., 45 degrees, 90 degrees, 135 degrees, 225 degrees, 270 degrees, 315 degrees or anything therebetween. The appropriate angle to be utilized may depend on the specific use of the outlet extender 100.

[0044] As shown in FIG. 3B, the plug end 110 may be selectively rotatable in any appropriate manner. In an embodiment, a portion of the plug end 110 may be rotatable, such as the male contacts and associated base, or a swivel component. As seen in FIG. 4A-B, the outlet extender 100 may be plugged into a wall outlet initially in a straight configuration. Once the outlet extender 100 is plugged in at the plug end 110, the outlet end 120 may be rotated to the left about the point defined by the plug end 110 and its attachment to the wall outlet. This rotation may allow the outlet end 120 to clear the side of the couch or other furniture when in a horizontal position so that the outlets are accessible. Although the plug end 110 may be described as selectively rotatable, it is noted that any portion of the outlet extender 100 may be selectively rotatable, including, but not limited to, the extendable shaft 130. A user may selectively rotate the outlet extender 100 prior to plugging in the outlet extender 100 into the wall or when the outlet extender 100 has already been plugged into a wall outlet. The outlet extender 100 or plug end 110 may include a locking mechanism so that once the outlet extender 100 has been positioned in the desired location and at a desired angle, any undesired rotation of the outlet extender 100 may be prevented. The locking mechanism may include a bolt and slot, rotatable bar, spring-loaded hinge, and the like. The rotation of the outlet extender 100 or plug end 110 may be biased towards a certain position, such as a straight state.

[0045] In an embodiment, the outlet extender 100 may include an electrical cord portion between the elongated extender 130 and the plug end 110 that plugs into the wall outlet. The outlet extender 100 may plug into a wall outlet at the plug end 100, and then may be able to bend around a corner, be positioned on the floor, and the like, by the bendable cord portion. For example, the outlet extender 100 may be able to plug behind a desk, set on the floor or set on top of the desk, and have the outlets on the outlet end 120 available wherever the user desires. It is noted that while embodiments herein describe initial connection into a wall outlet, that any outlet may be used, such as an outlet in a power strip or surge protector.

[0046] In an embodiment, the outlet extender 100 may be selectively extendable. In an embodiment, the elongated extender 130 may be selectively extendable permitting the outlet extender 100 to be extendable. As shown in FIGs. 2A-D, the elongated extender 130 may be transitioned between a retracted state (FIG. 2A, 2B) to an extended state (FIG. 2C, 2D). The extension may be facilitated by telescoping sections or members, wherein one or more sections of the elongated extender 130 may be of a smaller diameter than the immediately adjacent section (located at one of the section's ends) such that the smaller diameter section (see, e.g. 132) may nest into the larger diameter section (see, e.g. 134). The larger diameter section 134 may similarly nest into an even larger diameter section and the small diameter section 132 may similarly be able to nest within it an even smaller diameter section. The elongated extender 130 may include two or more telescoping sections including three, four, five, six, seven eight, etc. sections. The sections may be at least partially hollow so as to accommodate smaller diameter telescoping sections in a collapsed state, as well as electrical lines running through the elongated extender 130 and between the plug end 110 and the outlet end 120.

[0047] Although sections of the elongated extender 130 include reference to diameter, it is noted that a cross-section of the elongated extender 130 may be round, square, or triangular and that nesting of any telescoping sections could be achieved by adapting the perimeter or

diameter as described. FIGs. 1-4 generally show an elongated extender 130 having a square or rectangular cross-section. Further, one of the small diameter section 132 or large diameter section 134 or both thereof may be rigid or fixed. This may result in the elongated extender 130 being rigid or fixed. In other embodiments, one of the small diameter section 132 or large diameter section 134 or both thereof may be flexible such that the elongated extender 130 or a portion thereof may be flexible such that it may be positionable around objects, such as furniture, walls, shelves, or the like. The flexible portion may allow the elongated extender 130 to be positioned at any applicable angle, e.g., between 5 degrees and 360 degrees, or between 5 degrees and 180 degrees.

[0048] The extension of the elongated extender 130 between a retracted state (FIG. 2A, 2B) to an extended state (FIG. 2C, 2D) may be facilitated by other extension mechanisms such as an accordion housing, modular adaptors that may be attached to an end of the elongated extender 130, and the like. In an embodiment, the elongated extender 130 may allow extension for any range of length, such as, for example from about 1 inch to about 18 inches to even greater, and any length therebetween. In an embodiment, the elongated extender 130 may end from a length of about 21 inches to about 34 inches. The elongated extender 130 may include a locking mechanism so that once the outlet extender 100 has been transitioned to its desired length, any undesired extension or retraction of the elongated extender 130 may be prevented. The locking mechanism may include a bolt and slot, rotatable bar, spring-loaded hinge, and the like. The elongated extender 130 may be biased towards a certain position, such as a retracted state.

[0049] In an embodiment, the plug end 110 of the outlet extender 100 may plug into a wall outlet, and the outlet end 120 may be free to rotate and extend as desired by the user. The outlet extender 100, aside from the operative attachment of the plug end 110 into a wall outlet, may otherwise remain free and unattached to the abutting wall. The outlet extender 100 itself may have sufficient weight distribution and sturdy materials to allow for these variable

configurations (e.g. a decoy plug, rigid housing, straight configuration, etc.).

[0050] In an embodiment, the outlet end 120 may include an attachment backing 140 on the back or wall-facing side 102 of the outlet extender 100, see FIG. 3A. When the plug end 110 of the outlet extender 100 is plugged into a wall outlet, the attachment backing 140 may comprise a way to selectively attach the outlet end 120 to the abutting wall. This attachment may provide additional stability to the outlet extender 100. This additional stability may be desired, for example, when the outlet extender 100 is in a horizontal configuration or extended fully. The attachment backing 140 may include a peel and stick adhesive pad for attachment to the wall, putty and dry-down putty attachment, hook and loop attachment, magnetic attachment, and the like. For example, a double sided adhesive pad may be attached to the wall-facing side 102 of the outlet end 120 and may be selectively attached to the wall, or two oppositely attracting magnets with peel back adhesive or putty attachments may be attached to the wall-facing side 102 of the outlet end 120 and the wall and be placed in magnetic contact. In using an adhesive pad, such pad may include adhesive that is non-marking, i.e., when it is removed from the surface or surfaces to which it is attached it does not leave any marks. Any appropriate non-marking adhesive may be utilized and the present disclosure is not limited to a specific type. Multiple magnets may be placed on the wall to allow for various and moveable attachment to the wall.

[0051] The attachment backing 140 may be selectively attached, detached, and reattached to allow for repositioning of the outlet extender 100 and without causing damage to the underlying wall. Although described embodiments include the attachment backing 140 on the wall-facing side 102 of the outlet end 120, it is noted that such attachment backing 140 may be located on any portion of the outlet extender 100, including the perimeter of the plug end 110 or the elongated extender 130. In an embodiment, the outlet extender 100 may be free from any attachment that fastens or anchors into, or otherwise traverses, the surface of the abutting wall

(such as nails, screws, and the like). Such attachment may include the attachment backing 140 described herein (peel and stick adhesive pad for attachment to the wall, putty and dry-down putty attachment, hook and loop attachment, magnetic attachment, and the like), which may not fasten or anchor into, or otherwise traverse, the surface of the abutting wall. The attachment backing 140 being attached to (whether fixedly or removably) may permit a portion, e.g., the elongated extender 130 or a portion thereof, to be non-rigid or flexible. The attachment backing 140 being attached to a wall means that the elongated extender 130 does not need to be rigid as in other prior embodiments as the attachment backing 140 may provide additional structural support. In such embodiments, the elongated extender 130 does not need to provide support to the outlet end 120 to be positioned in the applicable location. Instead, the attachment backing 140 being attached to the wall allows the outlet end 120 to be positioned in its desired location.

[0052] In an embodiment, the outlet end 120 may include a fastening mechanism that does fasten or anchor into, or otherwise traverses, the surface of the abutting wall. Such fastening mechanisms can include nails, screws, pin and the like.

[0053] The exterior or housing of the outlet extender 100 may be formed from any suitable material including, but not limited to, plastics and polymers. Suitable materials may include polyethylene terephthalate (PETE or PET), high-density polyethylene (HDPE), polyvinyl chloride (PVC), low-density polyethylene (LDPE), polypropylene (PP), polystyrene or styrofoam (PS), other plastics such as polycarbonate, polylactide, acrylic, acrylonitrile butadiene, styrene, fiberglass, and nylon, or a combination of one or more thereof.

[0054] Turning to FIGs. 5-11 showing non-limiting detailed embodiments of the housing and components of an outlet extender, FIGs. 5-11 show exploded views and components of an outlet end 120 (such as FIGs. 5-6), extendable shaft 130 (such as FIGs. 9 and 10), and plug end 110 (such as FIGs. 8, 11).

{9324486: }                                                17

[0055] FIG. 5 depicts an exploded view of a non-limiting embodiment of an outlet end 120 and extendable shaft 130 of an outlet extender 100. In an embodiment, the outlet end 120 may include an outlet faceplate 128, a front outlet housing 210, a tamper preventer 214, and a rear outlet housing 218. The tamper preventer 214 may, as an example, ensure that only a corresponding plug (e.g. with two or three metal prongs) and not a foreign item, is able to plug into the outlet end 120 and make an electrical circuit or connection with the outlet extender 100. The tamper preventer 214 may include a shutter/spring type mechanism so that full entry into the female receptacles of the outlet end 120 (opening of the shutters) is made possible only when each of the one or more springs are compressed at the same time (by insertion of a corresponding plug into each opening of the female receptacle at the same time). The extendable shaft 130 may include a first tube housing 222 and a contact plate 226. In an embodiment, the first tube housing 222 may be part of an outer telescoping tube (i.e. a larger diameter tube that another tube with a smaller diameter nests within) or an inner telescoping tube (i.e. a smaller diameter tube that nests into a tube with a larger diameter). FIGs. 6A-D show a non-limiting embodiment of the front outlet housing 210, including female receptacles.

[0056] FIG. 7 shows an embodiment of a plug end 110 and extendable shaft 130 of an outlet extender 100 where FIG. 8 depicts an exploded view of an embodiment of the plug end 110 of the outlet extender 100 and FIG. 9 depicts an exploded view of an embodiment of the extendable shaft 130 of the outlet extender 10. In an embodiment and as shown in FIG. 8, the plug end 110 may include a plug faceplate 230, an inset band 234, fasteners 238 or another type of fitting mechanism as described herein, a front plug housing 242, an outer ring 246 and inner ring 250, a swivel seat 254, a plug 258, and a rear plug housing 262. The swivel seat 254 may facilitate rotation of the outlet extender 100 about an axis defined by the plug 258 as described herein. FIGs. 11A-C show a non-limiting embodiment of the front plug housing 242.

[0057] In embodiment and as shown in FIG. 9, the extendable shaft 130 may include a second

tube housing 264, a first cap 270, a bend collar 274, fasteners 278 or another type of fitting mechanism as described herein, and a cord assembly 282 and second cap 286. In an embodiment, the second tube housing 264 may be part of an inner telescoping tube (i.e. a smaller diameter tube that nests into a tube with a larger diameter) or an outer telescoping tube (i.e. a larger diameter tube that another tube with a smaller diameter nests within). As an example, if the first tube housing 222 is an outer telescoping tube of a larger diameter, then the second tube housing 264 will be an inner telescoping tube of a smaller diameter, or vice versa, e.g., if the first tube housing 222 is an inner telescoping tube of a smaller diameter, then the second tube housing 264 will be an outer telescoping tube of a larger diameter. In an embodiment, the first cap 270 may selectively attach to the first tube housing 222 and the second cap 286 may selectively attach to the second tube housing 264. The bend collar 274 may enable flexibility in the extendable shaft 130 and outlet extender 100, such as during transition between different rotational and telescopic positions. The cord assembly 282, shown in FIGs. 10A-B, may further comprise ground 290, neutral 294, and hot 298 cords and assemblies.

[0058] Although the embodiments of the present teachings have been illustrated in the accompanying drawings and described in the foregoing detailed description, it is to be understood that the present teachings are not to be limited to just the embodiments disclosed, but that the present teachings described herein are capable of numerous rearrangements, modifications and substitutions without departing from the scope of the claims hereafter. The claims as follows are intended to include all modifications and alterations insofar as they come within the scope of the claims or the equivalent thereof.

1/12



FIG. 1A

FIG. 1B

2/12



**FIG. 2A**

**FIG. 2B**



**FIG. 2C**          **FIG. 2D**

4/12



FIG. 3A

FIG. 3B



**FIG. 4B**



**FIG. 4A**

6/12



**FIG. 5**



FIG. 6A

FIG. 6C

FIG. 6B

FIG. 6D

8/12



FIG. 7

9/12



**FIG. 8**



**FIG. 9**

11/12



286

282

286

290

294

298

FIG. 10A

FIG. 10B

12/12



**FIG. 11A**



**FIG. 11B**



**FIG. 11C**

For applications filed under AIA
(on or after September 16, 2012)

Title: "WALL MOUNTING OUTLET EXTENDER"
MH Ref No.: 48071-00002

**DECLARATION AND ASSIGNMENT**
**FOR U.S. UTILITY OR DESIGN PATENT APPLICATION**

Attorney Docket No.: 48071-00002

**As a below-named inventor, I hereby declare that:**

This declaration is directed to the application entitled:

WALL MOUNTING OUTLET EXTENDER
**(TITLE)**

(check only one item below)

[  ]    attached hereto,

OR

[X]    For which U.S. Provisional Application No. 62/957,903 filed on January 7, 2020; and any subsequent applications filed in connection with the above invention (the "Patent").

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the above-identified application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

WHEREAS, TOKA, LLC, having a place of business at 351 Pemberwick Road, Apt. 914, Greenwich, CT 06831, hereinafter referred to as "Assignee," is desirous of acquiring the entire right, title and interest in and to the Patent;

NOW, THEREFORE, be it known that, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, all right, title, and interest, in the United States and throughout the world, in, to and under the Patent, improvements and inventions and all patents, patent applications, patent rights, and inventors' certificates thereof, therefor, and therein, including without limitation said application for patent in the United States, all divisions and continuations thereof, all patents which may be granted thereon, all reissues and extensions thereof, all right to sue for past infringement thereunder, all patents which may be granted for said improvements and inventions by states or nations other than the United States, or by other authority, entity, or organization, all applications therefor, and all rights of priority resulting from the filing of said

{8993148: }                              Page 1 of 2

applications, have been and are hereby sold, assigned, transferred, and delivered unto Assignee, its successors and assigns by the undersigned; and it is covenanted and agreed by the undersigned, and for executors, administrators, and legal representatives of the undersigned, that at Assignee's request any and all applications, affidavits, assignments, and other instruments will be made, executed, and delivered as may be necessary, or desirable to secure for or vest in Assignee, its successors or assigns, any improvement, inventions, right, title, interest, application, patent, patent right or other right or property covered by this assignment, and the United States Commissioner of Patents and Trademarks is hereby requested and authorized to issue any and all United States patents granted on any of said applications to Assignee as owner of the entire right, title, and interest in, to, and under the same, and appropriately empowered officials of foreign countries are hereby authorized to issue any letters patent granted on any of said applications to Assignee as owner of the entire right, title and interest in, to, and under the same.

THIS DECLARATION AND ASSIGNMENT, has been executed below by the undersigned:

Legal Name of Inventor: Tony Matthew Galazin

Signature of Inventor: _____

Date: **8-7-2020**

[  ]    Signatures of additional inventors on attached sheet(s)

> **Notice to Inventor(s):** You should not execute this Declaration unless you have reviewed and understand the contents of the above-identified application, including the claims.

> **Notice to Inventor(s):** You have a duty disclose to the USPTO all information known to you to be material to patentability as defined in 37 CFR 1.56 during prosecution of the Patent.

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (02-18)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

## INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| Application Number | |
| --- | --- |
| Filing Date | |
| First Named Inventor | Tony Matthew Galazin |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 48071-00006 |

### U.S.PATENTS    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| --- | --- | --- | --- | --- | --- | --- |
| | 1 | 4553798 | A | 1985-11-19 | MURPHY | |
| | 2 | 5957701 | A | 1999-09-28 | MCMILLIN | |
| | 3 | 6004138 | A | 1999-12-21 | HARBERTSON | |

If you wish to add additional U.S. Patent citation information please click the Add button.    Add

### U.S.PATENT APPLICATION PUBLICATIONS    Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| --- | --- | --- | --- | --- | --- | --- |
| | 1 | 20130052882 | A2 | 2013-02-28 | BRAUSEN | |
| | 2 | 20170346244 | A1 | 2017-11-30 | COMIS | |

If you wish to add additional U.S. Published Application citation information please click the Add button.    Add

### FOREIGN PATENT DOCUMENTS    Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |

EFS Web 2.1.18

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | Tony Matthew Galazin |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 48071-00006 |

| | 1 | 2571295 | GB | A | 2019-08-28 | INTELLECTUAL PRODUCTS LTD. | | |
|---|---|---|---|---|---|---|---|---|

If you wish to add additional Foreign Patent Document citation information please click the Add button    **Add**

### NON-PATENT LITERATURE DOCUMENTS    Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| | 1 | International Search Report and Written Opinion mailed April 6, 2021; International Patent Application No. PCT/US2021/012261 filed on January 6, 2021. | |

If you wish to add additional non-patent literature document citation information please click the Add button    **Add**

### EXAMINER SIGNATURE

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | Tony Matthew Galazin |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket  Number | 48071-00006 |

---

### CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

See attached certification statement.

The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Todd A. Benni/ | Date (YYYY-MM-DD) | 2021-07-06 |
|---|---|---|---|
| Name/Print | Todd A. Benni | Registration Number | 42313 |

This collection of information is required by 37 CFR 1.97 and 1.98.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.       The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.       A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.       A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.       A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.       A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.       A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.       A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.       A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.       A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# (12) UK Patent Application (19) GB (11) 2571295 (13) A

(43) Date of A Publication 28.08.2019

| | | | |
|---|---|---|---|
| (21) Application No: | 1802910.8 | (51) INT CL: | |
| | | H01R 31/06 (2006.01) | H01R 25/00 (2006.01) |
| (22) Date of Filing: | 22.02.2018 | H01R 35/04 (2006.01) | |

(56) Documents Cited:
US 4553798 A

(71) Applicant(s):
**Intellectual Products Limited**
**92 Station Road, Clacton-on-Sea, Essex, CO15 1SG,**
**United Kingdom**

(58) Field of Search:
UK CL (Edition X) **H2E**
INT CL **H01R**
Other: **Online: WPI, EPODOC**

(72) Inventor(s):
**Michael Man-Cheung Tsang**

(74) Agent and/or Address for Service:
**SANDERSONS**
**D2 Knowledge Gateway, Nesfield Road, Colchester,**
**CO4 3ZL, United Kingdom**

(54) Title of the Invention: **Electrical socket extender**
Abstract Title: **Electrical socket extender**

(57) An electrical socket extender, to provide an electrical socket remote from a surface/wall-mounted electrical socket, comprises a socket engaging portion 11 connectable to the wall socket 12, an appliance socket section 24 providing one or more appliance sockets 26, and a linkage 22 which connects these. The appliance socket section and the socket engaging portion both have multiple couplings 20, 28 to allow the linkage to be connected in different positions. The linkage may be telescopic and may have hinged joints 37 to allow the linkage to lie on a wall above a skirting board or to go around an internal (Fig 4) or external corner. Switches 48, handles 38 and 42, USB charging ports 46 and lights 50 may be provided.



Figure 1

GB 2571295 A

# Figure 1



# Figure 2



# Figure 3



# Figure 4



**Figure 5**



**Figure 6**



7/9

**Figure 7**



**Figure 8**



**Figure 9a**

**Figure 9b**



11

120



126

130

## ELECTRICAL SOCKET EXTENDER

BACKGROUND OF THE INVENTION

The present invention relates to an electrical socket extender to provide an electrical socket remote from a wall-mounted electrical socket. The present invention allows a user quickly and easily to extend the reach of a surface/wall-mounted electrical socket in order to create an electrical socket in a more convenient location.

Wall-mounted electrical sockets are often pre-installed in domestic and commercial premises in order to provide sources of electricity for the occupants of those premises and their appliances. Unfortunately, the locations in which these electrical sockets are provided may not always be convenient, especially due to the positioning of furniture or equipment close to a wall on which the wall-mounted electrical socket is located. Furthermore, persons with physical impairments, such as those who are injured, disabled (e.g. wheelchair bound) or who have declining health, may well find it difficult to reach these wall-mounted electrical sockets, especially if a socket is located particularly low or high on a wall, or behind a piece of furniture. The problem is compounded by the fact that rewiring wall-mounted electrical sockets in order to relocate them is a manually intensive and expensive task, which involves considerable work being carried out on one or more walls of the premises, something which may not be permitted in certain circumstances, for instance should the premises be rented, or be a listed building.

Extension cords, having a male plug for insertion into an electrical socket, one or more female appliance outlets and an insulated cable connecting the plug to the one or more outlet are often used to extend the reach of such wall-mounted electrical sockets. These devices, though quite versatile, present a number of issues. For example, the cable can create a tripping hazard or may be chewed or tampered with by children and small animals, and the devices are also often visually unappealing, especially where there is sagging or coiled cabling. Furthermore, though the appliance outlet may have means for mounting to a wall, mounting the appliance outlet in such a way is rarely a suitable option for a user, due to unsightliness and issues with carrying out work on the walls. A further concern is that even if a user chooses to mount an extension cord to a wall, during subsequent use and reordering of the contents of the premises, the new location of the outlet may itself become inconvenient. If the user is to remedy the problem they then need to choose a new

- 2 -

fixed location, perform the necessary work on the wall to provide a new mounting and probably also fix the damage caused by the initial mounting of the appliance outlet to the wall. The present invention thus aims to provide a means by which a user can quickly, securely and simply create an electrical outlet, connected to, but remote from, a wall-mounted electrical socket, without damaging the wall adjacent to the socket. This electrical outlet can thus allow the user greater flexibility in how they organise the contents of a room and also makes reaching the electrical outlet much less demanding.

STATEMENT OF THE INVENTION

According to the present invention there is provided an electrical socket extender to provide an electrical socket remote from a surface/wall-mounted electrical socket, the socket extender comprising:

- a socket engaging portion connectable to the wall-mounted electrical socket and comprising:
    - a non-conductive housing having at least one electrically conductive prong for insertion into a female recess of the wall-mounted electrical socket to electrically couple thereto; and
    - two or more secure primary coupling formations formed about a periphery of the socket engaging portion such that, when the socket engaging portion is engaged with a wall-mounted electrical socket each primary coupling formation may releasably connect to a linkage to form an electrical connection therewith;
- an appliance socket section providing one or more electrical appliance socket and comprising:
    - a body having at least one electrically conductive recess formed therein, the recess allowing insertion of an electrically conductive prong of an electrical appliance plug; and
    - two or more secure secondary coupling formations formed about a periphery of the appliance socket section, each secondary coupling formation releasably connectable to the linkage and each secondary coupling formation having an electrical connection, interior to the body, to electrically-couple the linkage to the electrical appliance socket; and

- a linkage, which connects the appliance socket section to the socket engaging portion, comprising:
  - a substantially rigid, elongate and electrically insulated body having a first end releasably connectable to any of the primary coupling formations, a second end connectable to any of the secondary coupling formations; and
  - a conducting arrangement extending the length of the body, between the first end and the second end to electrically couple the socket engaging portion to the appliance socket section,

wherein the first end of the linkage is connected, or integrated, to the socket engaging portion and the second end of the linkage is connected, or integrated, to the appliance socket section such that the linkage extends from the socket engaging portion over the wall/surface and the appliance socket section is supported in its position remote from the wall-mounted electrical socket by the linkage.

The provision of two or more secure primary coupling formations formed about a periphery of the socket engaging portion, and two or more secure secondary coupling formations formed about a periphery of the appliance socket section, permit the electrical socket extender to be assembled in various configurations, for instance, dependent upon the needs of the user and/or the space limitations of the premises where the electrical socket extender is being used. Each configuration may allow the extender to reach from the wall-mounted electrical socket in a different direction adjacent the wall. The specific locations of the primary coupling formations about the periphery of the socket engaging portion may help to determine in which direction the linkage can extend from the socket engaging portion, when the linkage is connected to one of the primary couplings. The linkage may be integrated to one of the primary couplings.

Four primary coupling formations may be provided and disposed such that a connected or integrated linkage can extend generally upward towards the ceiling, downward towards the floor, or in either direction horizontally along the wall. An arrangement such as this should cover most of the orientations that an average user would require of such an electrical socket extender, in order to usefully relocate an electrical socket, adjacent a wall. A plurality of linkages and appliance socket sections may be provided with the electrical socket extender. More than one, or each, primary coupling formation of a single socket engaging portion may connect with a separate linkage. Each linkage may be connected, or integrated, to a separate appliance socket

- 4 -

section, such that multiple appliance socket sections are provided remote from, but connected to, the single socket engaging portion and wall-mounted electrical socket. Where a plurality of linkages and appliance socket sections are provided, these may be connected or integrated in a modular fashion such that each appliance socket section may connect to and support one or more further linkages and appliance socket sections.

Primary coupling formations and/or secondary coupling formations which are not connected, or integrated, to the linkage may have covers to prevent tampering. This is especially useful as a safety mechanism, as it helps to avoid children tampering with the socket extender, and potentially receiving hazardous electric shocks. The covers of the primary and/or secondary coupling formations may comprise any suitable means, for instance bungs, inserts or shutters. The primary coupling formations may comprise isolating means to prevent a primary coupling formation from conducting electricity unless a linkage is connected or integrated therewith. The secondary coupling formations may comprise isolating means to prevent a secondary coupling formation from conducting electricity unless a linkage is connected or integrated therewith. The coupling formations may be covered in such a way that only by introduction of a linkage to the coupling formation is a cover thereof unlocked or moved to prevent accidental access.

The socket engaging portion may comprise disconnecting means to aid in disconnecting the socket engaging portion from the wall-mounted electrical socket. The disconnecting means may be stowed when not required, to prevent the disconnecting means from becoming a nuisance during assembly, disassembly or use of the electrical socket extender, and to enhance the aesthetic appeal of the electrical socket extender. The disconnecting means may comprise a handle. They may be stowed by a folding and/or sliding motion.

The socket engaging portion may further comprise one or more electrical appliance socket. This has the advantages of increasing the number of electrical appliance sockets and leaving one available at the original location of the socket. The socket engaging portion may comprise one or more features commonly found on wall-mounted electrical sockets, such as USB charging ports, electrical isolation means (which may comprise one or more ON/OFF switch) and indicator lights to indicate whether the socket engaging portion and/or any of the secure primary coupling formations are conducting electricity.

The appliance socket section may comprise one or more similar feature, such as USB charging porta, ON/OFF switch and indicator lights.

The electrical socket extender may comprise a timer to control the supply of electricity to any connected appliances. The timer may limit the supply of electricity to certain times of the day and/or may only may supply electricity for a specific length of time after the timer is activated, the specific length of time which may be pre-set by a user.

Preferably, the linkage is extendable. The advantage of an extendable linkage is to allow alteration of the effective range of the socket extender to suit requirements. The extension of the linkage may be achieved by including various suitable means.

Preferably, the linkage is also retractable so that it may lengthened and shortened.

Preferably, the linkage comprises a telescopic arrangement to permit adjustment thereof. A telescopic arrangement is a particularly compact means of providing linear contraction and/or extension of the linkage and may permit a wide range of positions. The telescopic arrangement may have at least 2 telescopic linkage sections. A telescopic arrangement can also allow the linkage to be light-weight yet strong when appropriately constructed, for instance by using an appropriate material and/or by modifying the linkage structure. The telescopic arrangement may comprise two or more telescopic linkage sections which slide relative to one another.

The telescopic sections may have a variety of shapes and may be variously configured to allow extension. The telescopic sections may be stacked upon one another and extend by the sliding of adjacent telescopic sections. The telescopic sections may be disposed concentrically of one another and extend by the sliding of internal sections relative to external sections. The telescopic sections may have a substantially constant cross-sectional shape along a portion, or the majority, of each telescopic section. The cross-section could be circular, square, rectangular or oval, though various other shapes are within the scope of the application.

One or more of the telescopic sections may include a stop, which can limit the extension of one telescopic section relative to a connected telescopic section or sections adjacent thereto. Stops may be particularly useful to prevent the telescopic arrangement from coming apart by over extension.

As an alternative to, or in combination with, a telescopic arrangement, the linkage may comprise a folding structure which permits extension of the linkage as

relatively movable parts of the folding structure unfold. The folding structure may comprise folding members which fold or pivot relative to one another in order to extend or retract.

Preferably, the telescopic arrangement comprises a releasable locking means to secure the telescopic arrangement at a desired position along a range of linear extended positions. A releasable locking means ensures that the linkage and appliance socket section may be supported stably in a desired extended position. There may be multiple releasable locking means, each acting between adjacent sections of the telescopic arrangement.

The releasable locking means may comprise any suitable mechanism, for instance, one or more clamp, a twist and lock means between adjacent telescopic sections, or a frictional fit between adjacent telescopic sections. A suitable mechanism for the releasable locking means may comprise a snap-lock configuration. A snap-lock configuration may be such that an interior telescopic section comprises a depressible locking formation which is spring-biased to project from the exterior surface of an interior telescopic section, the locking formation which may be depressible into the surface of the interior telescopic section until the projection is at least flush with the surface of the interior telescopic section.

An exterior telescopic section which slides telescopically relative to an interior section may have one or more opening formed along its surface. The opening or openings may be larger than the locking formation, so that the locking formation may spring up through an opening, when an opening slides into position directly above the locking formation (as the telescopic sections move relative to one another), thus securing the interior telescopic section to the exterior telescopic section. Where an exterior telescopic section comprises more than one opening, these may be equally spaced along the length of an exterior section, thus permitting the telescopic arrangement to be securable at a plurality of discrete, regular and secure locking positions.

The locking means may be selectively disengaged by a release mechanism to enable the linkage to be further extended or retracted. The release mechanism may be remote from the locking means. The release mechanism might allow simultaneous release and engagement of all locking means to enable rapid retraction, or further extension, of the linkage.

Preferably, the linkage comprises at least one joint either formed along the length of the linkage between sub-sections thereof and/or at either end of the linkage. Inclusion of at least one joint may allow the linkage to change direction/orientation. Such a hinge mechanism may comprise adjustable securing means to ensure that the linkage and/or appliance socket section are supported stably in a desired angled position. Such securing means may comprise any suitable pivot hinge fixing position mechanism. Potentially, it could hinge away from the wall and establish an appliance socket section lying away from the plane of the wall on which the built-in socket is formed, yet with the appliance socket section still supported in this remote position. The advantage of a joint formed along the length of the linkage between sub-sections thereof and/or at either end of the linkage is evident in that it affords greater flexibility in terms of how the appliance socket section is positionable. The at least one joint may permit sub-sections of the linkage to hinge in various planes, dependent upon the configuration of the at least one joint relative to the linkage.  For example, a joint may allow a sub-section to hinge within the vertical plane created by the wall, or hinge within a second vertical plane lying perpendicular to the plane of the wall, or a horizontal plane perpendicular to both the plane of the wall and the second vertical plane, or any other suitable plane.

Where the linkage comprises more than one joint, then the subsections of the linkage may enable the socket extender to traverse changes in the wall or obstacles located on or adjacent the wall and thus ensure that the appliance socket section may ultimately lie against the wall, if necessary.  For example, it may be the case that the wall-mounted electrical socket is located in a skirting board located at the base of the wall, the skirting board projecting a small distance from the wall.  In this scenario, a user may wish to use the socket extender to form an electrical socket directly above the wall-mounted electrical socket but with the socket extender lying against the wall. The provision of at least two joints, configured appropriately, could thus permit the linkage to hinge about the top of the skirting board so that the appliance socket section lies against the wall, as required.

The linkage may comprise at least one joint stabiliser, selectively engageable to control articulation of the at least one joint.  A joint stabiliser is advantageous in ensuring that sub-sections of the linkage may be secured in a desired hinged position relative to one another.  This can be especially useful where the imposed moment upon a joint increases, for instance as the linkage is further extended and/or one or

more appliance plug are inserted into the appliance socket section. The joint stabiliser may be any effective mechanism, for instance a lock within the joint to lock the joint in a given position, a tight frictional fit between portions of the joint, or a bracing support positioned between sub-sections of a linkage adjacent a joint in order to reduce the load on the joint and instead distribute the weight of the electrical socket extender between sub-sections of the linkage.

Preferably, the linkage comprises at least one swivel formed along the length of the linkage or at either end of the linkage.  The swivel may allow the linkage or a sub-section thereof to swivel relative to the general axis of extension of the linkage. A swivel is useful since in permits more variation in how the electrical socket extender can be orientated, to match the demands of the user and/or environment in which the electrical socket extender is being used. The linkage may comprise at least one swivel lock to prevent movement of parts relative to the at least one swivel.

The appliance socket section may comprise a handle for movement of the appliance socket section relative to the socket engaging portion. The handle may be electrically insulated. The handle, when grasped and manipulated by a user, may allow the user to more easily guide the electrical socket extender into a desired position. Preferably, the handle is movable between a use position and a storage position. The handle may slide or hinge from the use position to the storage position. The appliance socket section may further comprise a recess into which the handle is storable.  The handle may be removably attached to the appliance socket section. Where the handle is removably attachable to the appliance socket section, the handle may be attachable to the appliance socket section at a plurality of separate locations, for instance to allow more convenient relocation of the appliance socket section and/or so as not to interfere generally with usage of the electrical socket extender.

Preferably, two or more linkages may be connected to one another.  This can extend the reach of the electrical socket extender and/or change the direction it extends.

Further preferably, the linkage and/or appliance socket section comprises connecting means to connect/fix the linkage and/or appliance socket section to the wall. Connecting means may be especially useful since, in certain circumstances, the total weight of the socket extender may be greater than can be easily supported by the connection of the socket engaging portion to the wall-mounted electrical socket. These circumstances could be where multiple linkages are connected in series, or a

network of linkages and appliance socket sections extend in a modular arrangement from the wall-mounted electrical socket, all of which can become relatively heavy. Another situation may arise where the electrical socket extender must support the weight of many appliance plugs (and perhaps also the cabling associated with each appliance plug) which are plugged into one or more appliance socket section of the electrical socket extender.

The connecting means may be non-damaging and thus may be configured to prevent superficial and/or invasive damage, to the wall. Such non-damaging connecting means may comprise any suitable arrangement, for instance one or more sucker or removable, marking or non-marking adhesives and/or securing mechanisms including but not limited to Velcro® pads/strips or magnetic means. As an alternative the connecting means may comprise any suitable arrangement, for instance threaded screws, nails, or non-removable adhesives.

The linkage and/or appliance socket section may comprise means for securing loose cables of electrical appliance plugs. Provision of such means may reduce tripping or catching hazards that could otherwise result from hanging or trailing cables, and the means for securing loose wires may also enhance the aesthetics of the electrical socket extender when in use. The means for securing loose cables of electrical appliance plugs may comprise any suitable arrangement, for instance a hook over which the cables may be draped or looped.

Preferably, the socket engaging portion is interchangeable with differently configured socket engaging portions to accommodate wall-mounted electrical sockets of different configurations and the appliance socket section may be independently interchangeable to accommodate electrical appliance plugs of differing number or configuration. Interchangeable socket engaging portions may be particularly useful, for instance, where the configuration of the electrical socket differs, such as internationally, and so the socket engaging portion may be interchanged for a socket engaging portion which matches the differing configuration. By providing interchangeable socket engaging portions, a user may bring their appliances with them overseas to be used with the electrical socket extender. Similarly, an independently interchangeable appliance socket section, as mentioned above, may be useful in international territories where a user seeks to use foreign appliance plugs with the electrical socket extender.

- 10 -

A part of the socket engaging portion, including the at least one electrically conductive prong, may be interchangeable to accommodate wall-mounted electrical sockets of different configurations. A part of the appliance socket section, including the at least one electrically conductive recess, may be interchangeable to accommodate electrical appliance plugs of differing number or configuration. This interchangeability confers the same and further advantages as those associated with the interchangeability of the appliance socket section and/or socket engaging portion, as mentioned above.

An electrical socket extender as that described above may be provided in kit form, the kit including a plurality of interchangeable socket engaging portions to connect to wall-mounted electrical sockets of differing configuration and/or may comprise a plurality of independently interchangeable appliance socket sections to accommodate electrical appliance plugs of differing number or configuration. The kit may alternatively comprise a socket engaging portion with a plurality of interchangeable parts to accommodate wall-mounted electrical sockets of different configurations and/or the appliance socket section with a plurality of interchangeable parts to accept electrical appliance plugs of differing configuration. Kits such as those outlined above may be especially useful to a user who travels frequently to various countries, and who may want to pack only the elements of the kit required for that particular country or countries.

An electrical socket extender as that described above may be provided in an assembled form wherein the socket engaging portion, the appliance socket section, and the linkage may be integrated in an single unit.

BRIEF DESCRIPTION OF THE DRAWINGS

In order that it be better understood, but by way of example only, the present invention will now be described with reference to the accompanying drawings in which:

**Figure 1** is a perspective view of a first embodiment of an electrical socket extender connected to a wall-mounted electrical socket;

**Figure 2** is a perspective view of a second embodiment of an electrical socket extender connected to a wall-mounted electrical socket mounted near the top of a wall;

**Figure 3** is a perspective view of the electrical socket extender of Fig. 2, here connected to a wall and extending horizontally along the wall;

**Figure 4** is a perspective view of a third embodiment of an electrical socket extender extending around an interior corner of a room;

**Figure 5** is a perspective view of a fourth embodiment of an electrical socket extender extending horizontally around a corner and then vertically;

**Figure 6** is a perspective view of a fifth embodiment of electrical socket extender extending vertically upwards in front of an upper cupboard;

**Figure 7** is a perspective view of parts of an electrical socket extender;

**Figure 8** is a perspective view of a part of an electrical socket extender, wherein the socket engaging portion has interchangeable parts to accommodate wall-mounted electrical sockets of different configurations;

**Figure 9a** is a perspective view of a part of an electrical socket extender; and

**Figure 9b** is a similar perspective view wherein the socket engaging portion includes a timer.

In the drawings, like parts are denoted by like reference numerals.

DETAILED DESCRIPTION OF THE DRAWINGS

Figure 1 shows a perspective view of an electrical socket extender, generally indicated 10, in accordance with the present invention.  The electrical socket extender 10 has a socket engaging portion 11 which is connects to a wall-mounted electrical socket 12 mounted in this view upon a skirting board 14, located at the base of a wall/surface 16.  The socket extender 10 is shown extending vertically up the wall 16.  The socket engaging portion 11 comprises a non-conductive housing having at least one electrically conductive prong (not shown) that inserts into a female recess 18 of the wall-mounted electrical socket 12 to electrically couple thereto.  The socket engaging portion 11 further comprises four secure primary coupling formations 20 (not all of which are visible) formed about a periphery of the socket engaging portion 11 such that, when the socket engaging portion 11 is engaged with a wall-mounted electrical socket 12 each primary coupling formation 20 may releasably connect to a linkage, generally indicated 22, to form an electrical connection therewith.  The electrical socket extender 10 further comprises an appliance socket section 24 providing two electrical appliance sockets 26.  The appliance socket section 24 comprises a body having at least one electrically conductive recess 27 formed therein, the recess 27 allowing insertion of an electrically conductive prong of an electrical appliance plug.

The appliance socket section 24 further comprises four secure secondary coupling formations 28 formed about a periphery of the appliance socket section 24, though only two are visible, each secondary coupling formation 28 releasably connectable to the linkage 22 and each secondary coupling formation 28 having an electrical connection, interior of the body (and therefore not shown), to electrically-couple the linkage 22 to the two electrical appliance sockets 26.

The electrical socket extender 10 further comprises the linkage 22, which connects the appliance socket section 24 to the socket engaging portion 11. The linkage 22 comprises, in this embodiment, a substantially rigid, elongate and electrically insulated body having a first end 30 releasably connectable to any of the primary coupling formations 20, and a second end 32 connectable to any of the secondary coupling formations 28. The linkage 22 also comprises a conducting arrangement extending the length of the body (internal to the linkage 22 and thus not shown), between the first end 30 and the second end 32 to electrically couple the socket engaging portion 11 to the appliance socket section 24.

In use, when the first end of the linkage 30 is connected, or integrated, to the socket engaging portion 11 and the second end of the linkage 32 is connected, or integrated, to the appliance socket section 24 the linkage 22 extends from the socket engaging portion 11 over the wall 16 and the appliance socket section 24 is supported in its position remote from the wall-mounted electrical socket 12 by the linkage 22. In this embodiment, the linkage 22 linkage is linearly extendable and comprises a telescopic arrangement, generally indicated 34, to permit extension thereof. The telescopic arrangement 34 further comprises releasable locking means, generally indicated 36, to secure the relatively moveable parts of the telescopic arrangement 34 at various positions along a range of linear extended positions. The telescopic arrangement 34 also comprises three joints 37 formed along the length of the linkage 22 between sub-sections thereof. In this embodiment, the three joints 37, are formed as hinges 37, and these hinges 37 permit the sub-sections of the linkage 22 to hinge relative to each other. This allows it to be adjusted around the skirting board 14 so that the appliance socket section 24 is disposed in a recessed position (relative to the skirting board 14) and lying against the wall 16. In this way, the socket extender 10 forms an electrical socket generally above the wall-mounted electrical socket 12 but with the socket extender 10 lying against the wall 16 to save space.

The appliance socket section 24 further comprises a handle 38 for assisting movement of the appliance socket section 24 relative to the socket engaging portion 11. The handle 38 is movable between a use position (as shown) and a storage position. The handle 38 comprises a plurality of telescopic members 40 attached to the appliance socket section 24 and the telescopic members 40 of the handle 38 may be extended to the use position and collapsed to move to the storage position. Similarly, the socket engaging portion 11 comprises disconnecting means 42 to aid in disengaging the socket engaging portion 11 from the wall-mounted electrical socket 12 and in this embodiment the disconnecting means 42 takes the form of a foldable handle 42. The socket engaging portion 11 further comprises an electrical appliance socket 44.

The appliance socket section 24 further comprises features commonly found on wall-mounted electrical sockets, and this embodiment also includes two USB charging ports 46, ON/OFF switches 48 and operational indicator lights 50.

The releasable locking means 36 of the linkage 22 further comprises a snap-lock configuration, generally indicated 51, which is configured such that an interior telescopic section 52 comprises a depressible locking formation (hidden in Figure 1 but visible in Figures 7-9b as 106) which is spring-biased to project from the exterior surface of the interior telescopic section 52. An exterior telescopic section 54 which telescopes around the interior section 52 has several openings 56 formed along its surface, the openings 56 being large enough to accommodate the locking formation. The locking formation springs up under action of the spring, through an opening 56, when an opening 56 slides into position directly above the locking formation, thus securing the telescopic sections. The sections of the linkage 22 are generally hollow and square in cross-section.

Primary coupling formations 20, and secondary coupling formations 28, which are not connected, or integrated, to the linkage 22 are covered by moveable shutters 58 in order to prevent tampering.

Figure 2 shows a perspective view of a second embodiment of an electrical socket extender 200 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted near the top of a wall 16, close to the ceiling, the socket extender 200 extending vertically down the wall. Grasping of the handle 38 may help a user to extend the linkage of the electrical socket extender 200, to position the appliance socket section 24 in a convenient location for use.

- 14 -

Figure 3 shows a perspective view of the electrical socket extender 200 of Figure 2, here connected to a wall-mounted electrical socket 12 mounted near the floor, above a skirting board 14, the socket extender 200 extending horizontally along the wall 16, with the appliance socket section 24 supported in its position remote from the wall-mounted electrical socket 12 by the linkage 22.

Figure 4 shows a perspective view of a third embodiment of an electrical socket extender 300 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted near the floor, above a skirting board 14, the socket extender 300 extending horizontally along the wall 16 and around an interior corner of a room.  This arrangement is made possible by the presence of a pivoting joint 70 formed between sub-sections of the linkage 22. This embodiment could just as usefully be used to traverse around an exterior corner between two walls.

Figure 5 shows a perspective view of a fourth embodiment of an electrical socket extender 400 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted near the floor, above a skirting board 14, the socket extender 400 extending first horizontally along the wall 16, then around an interior corner of a room by way of a first joint 70 and then vertically up a second wall. This embodiment is similar to that of Figure 4, except that a second joint 80, with an axis of rotation rotated 90 degrees relative to the joint 70, is formed along the length of the linkage 22 which allows the electrical socket extender 400 to extend further up the second wall, above the height of the wall-mounted electrical socket 12.

Figure 6 shows a perspective view of a fifth embodiment of an electrical socket extender 500 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted around the midpoint of a wall between two wall-mounted cupboards.  The socket extender 500 first extends vertically up the wall, then out from the wall underneath the upper cupboard 90, then vertically upwards in front of the upper cupboard 90. This arrangement could be useful if the workspace above the lower cupboard 92 must be kept free from appliance plugs and their wiring. It will be appreciated that other suitable arrangements are also possible.

Figure 7 shows a perspective detail view, of a part of an electrical socket extender in accordance with the present invention, wherein the socket engaging portion, generally indicated 11a and 11b, is interchangeable to accommodate wall-mounted electrical sockets of different configurations, and two possible distinct interchangeable versions are illustrated; a three-pronged version 11a and a two-

pronged version 11b.  The cooperating shapes of the cuboidal locking formation 106 and square openings 56 formed on the surface of the exterior telescopic section 54 are also easily identifiable. Depressing the locking formation 106 permits the exterior telescopic section 54 to slide relative to the interior telescopic section 52, until an opening 56 is directly above the locking formation 106, whereupon the locking formation pops up through an opening 56, under action of a spring, and secures the exterior telescopic section 54 relative to the interior telescopic section 56.

Figure 8 shows a perspective detail view of a part of an electrical socket extender, in accordance with the present invention, wherein a region of the socket engaging portion 11, is interchangeable to accommodate wall-mounted electrical sockets of different configurations.  Two possible distinct interchangeable parts with the electrically conductive prongs are illustrated; a two-pronged version 112 and a three-pronged version 114. Either of these may be slid into a recess 110 on the socket engaging portion 11 to engage and electrically couple thereto.

Figure 9a shows a perspective detail view of a part of an electrical socket extender, in accordance with the present invention, wherein the socket engaging portion 11 comprises an electrical appliance socket 120 into which an appliance plug may be introduced.

Figure 9b shows a similar perspective detail view of a part of an electrical socket extender, in accordance with the present invention, with a different embodiment of socket engaging portion 126 which comprises a timer 130 to control the supply of electricity from the wall-mounted electrical socket (not shown) to any appliances connected to the electrical socket extender (not shown in this view).

CLAIMS

1. An electrical socket extender to provide an electrical socket remote from a wall-mounted electrical socket, the socket extender comprising:

   - a socket engaging portion connectable to the wall-mounted electrical socket and comprising:
     - a non-conductive housing having at least one electrically conductive prong for insertion into a female recess of the wall-mounted electrical socket to electrically couple thereto; and
     - two or more secure primary coupling formations formed about a periphery of the socket engaging portion such that, when the socket engaging portion is engaged with a wall-mounted electrical socket each primary coupling formation may releasably connect to a linkage to form an electrical connection therewith;
   - an appliance socket section providing one or more electrical appliance socket and comprising:
     - a body having at least one electrically conductive recess formed therein, the recess allowing insertion of an electrically conductive prong of an electrical appliance plug; and
     - two or more secure secondary coupling formations formed about a periphery of the appliance socket section, each secondary coupling formation releasably connectable to the linkage and each secondary coupling formation having an electrical connection, interior to the body, to electrically-couple the linkage to the electrical appliance socket; and,
   - a linkage, which connects the appliance socket section to the socket engaging portion, comprising:
     - a substantially rigid, elongate and electrically insulated body having a first end releasably connectable to any of the primary coupling formations, a second end connectable to any of the secondary coupling formations; and

– a conducting arrangement extending the length of the body, between the first end and the second end to electrically couple the socket engaging portion to the appliance socket section,

wherein the first end of the linkage is connected, or integrated, to the socket engaging portion and the second end of the linkage is connected, or integrated, to the appliance socket section such that the linkage extends from the socket engaging portion over the wall and the appliance socket section is supported in its position remote from the wall-mounted electrical socket by the linkage.

2. An electrical socket extender as claimed in claim 1, wherein the linkage is extendable.

3. An electrical socket extender as claimed in claim 2, wherein the linkage comprises a telescopic arrangement to permit extension thereof.

4. An electrical socket extender as claimed in claim 3, wherein the telescopic arrangement comprises a releasable locking means to secure the telescopic arrangement at various positions along a range of linear extended positions.

5. An electrical socket extender as claimed in any preceding claim, wherein the linkage includes at least one joint either formed along the length of the linkage between sub-sections thereof or at either end of the linkage.

6. An electrical socket extender as claimed in claim 5, wherein the linkage comprises at least one joint stabiliser, selectively engageable to prevent articulation of the at least one joint.

7. An electrical socket extender as claimed in any preceding claim, wherein the linkage comprises at least one swivel formed along the length of the linkage or at either end of the linkage.

- 18 -

8. An electrical socket extender as claimed in claim 7, wherein the linkage comprises at least one swivel lock to prevent movement of parts relative to the at least one swivel.

9. An electrical socket extender as claimed in any of the preceding claims, wherein the appliance socket section and/or the socket engaging portion have a handle.

10. An electrical socket extender as claimed in claim 9, wherein the or each handle is movable between a use position and a storage position.

11. An electrical socket extender as claimed in any of claim 4 to claim 10, wherein the locking means may be selectively disengaged by a release mechanism to enable the linkage to be further extended or retracted.

12. An electrical socket extender as claimed in any preceding claim, wherein the linkage comprises means to enable two or more of such linkages to be connected, or integrated, to one another between the socket engaging portion and the appliance socket section, to extend the reach of the electrical socket extender and/or change direction.

13. An electrical socket extender as claimed in any preceding claim, wherein the linkage and/or appliance socket section comprises connecting means to connect the linkage and/or appliance socket section to the wall.

14. An electrical socket extender as claimed in any preceding claim, wherein the socket engaging portion is interchangeable with differently configured socket engaging portions to accommodate wall-mounted electrical sockets of different configurations and the appliance socket section is independently interchangeable to accommodate electrical appliance plugs of differing number or configuration.



# Intellectual Property Office

|  |  |  |  |
|---|---|---|---|
| **Application No:** | GB1802910.8 | **Examiner:** | Paul Nicholls |
| **Claims searched:** | 1 - 14 | **Date of search:** | 17 August 2018 |

## Patents Act 1977: Search Report under Section 17

### Documents considered to be relevant:

| Category | Relevant to claims | Identity of document and passage or figure of particular relevance |
|---|---|---|
| X | 1-5, 7, 11-13 | US 4553798 A (MURPHY) - See figure 3, figure 13b in which plug 6 has two couplings, figure 13d in which socket 16 has two couplings, and figure 6 showing a telescopic linkage |

### Categories:

| | | | |
|---|---|---|---|
| X | Document indicating lack of novelty or inventive step | A | Document indicating technological background and/or state of the art. |
| Y | Document indicating lack of inventive step if combined with one or more other documents of same category. | P | Document published on or after the declared priority date but before the filing date of this invention. |
| & | Member of the same patent family | E | Patent document published on or after, but with priority date earlier than, the filing date of this application. |

### Field of Search:

Search of GB, EP, WO & US patent documents classified in the following areas of the UKC$^X$ :

| H2E |
|---|

Worldwide search of patent documents classified in the following areas of the IPC

| H01R |
|---|

The following online and other databases have been used in the preparation of this search report

| WPI, EPODOC |
|---|

### International Classification:

| Subclass | Subgroup | Valid From |
|---|---|---|
| H01R | 0031/06 | 01/01/2006 |
| H01R | 0025/00 | 01/01/2006 |
| H01R | 0035/04 | 01/01/2006 |

# PATENT COOPERATION TREATY

| | |
|---|---|
| From the INTERNATIONAL SEARCHING AUTHORITY | **PCT** |

| To:<br>Benni, Todd A.<br>MCDONALD HOPKINS LLC<br>600 Superior Avenue East Suite 2100<br>Cleveland OH 44114-2653<br>ETATS-UNIS D'AMERIQUE | NOTIFICATION OF TRANSMITTAL OF<br>THE INTERNATIONAL SEARCH REPORT AND<br>THE WRITTEN OPINION OF THE INTERNATIONAL<br>SEARCHING AUTHORITY, OR THE DECLARATION |
|---|---|
| | **(PCT Rule 44.1)** |
| | Date of mailing<br>*(day/month/year)*<br>6 April 2021 (06-04-2021) |
| Applicant's or agent's file reference<br>48071-00004 | **FOR FURTHER ACTION**    See paragraphs 1 and 4 below |
| International application No.<br>PCT/US2021/012261 | International filing date<br>*(day/month/year)*<br>6 January 2021 (06-01-2021) |
| Applicant<br><br>TOKA, LLC | |

1. [X] The applicant is hereby notified that the international search report and the written opinion of the International Searching Authority have been established and are transmitted herewith.

   **Filing of amendments and statement under Article 19:**
   The applicant is entitled, if he so wishes, to amend the claims of the international application (see Rule 46):

   **When?**    The time limit for filing such amendments is normally two months from the date of transmittal of the international search report.

   **How?**    Directly to the International Bureau preferably through ePCT, or on paper to:
   The International Bureau of WIPO, 34 chemin des Colombettes, 1211 Geneva 20, Switzerland
   **For more detailed instructions,** see the *PCT Applicant's Guide,* International Phase, paragraphs 9.004 - 9.011.

2. [ ] The applicant is hereby notified that no international search report will be established and that the declaration under Article 17(2)(a) to that effect and the written opinion of the International Searching Authority are transmitted herewith.

3. [ ] **With regard to any protest** against payment of (an) additional fee(s) under Rule 40.2, the applicant is notified that:

   [ ] the protest together with the decision thereon has been transmitted to the International Bureau together with any request to forward the texts of both the protest and the decision thereon to the designated Offices.

   [ ] no decision has been made yet on the protest; the applicant will be notified as soon as a decision is made.

4. **Reminders**

   The applicant may **submit comments on an informal basis on the written opinion of the International Searching Authority** to the International Bureau. These comments will be made available to the public after international publication. The International Bureau will send a copy of such comments to all designated Offices unless an international preliminary examination report has been or is to be established.

   Shortly after the expiration of **18 months from the priority date, the international application will be published** by the International Bureau. If the applicant wishes to avoid or postpone publication, a notice of withdrawal of the international application, or of the priority claim, must reach the International Bureau before the completion of the technical preparations for international publication (Rules 90*bis*.1 and 90*bis*.3).

   Within **19 months** from the priority date, but only in respect of some designated Offices, a demand for international preliminary examination must be filed if the applicant wishes to postpone the entry into the national phase **until 30 months** from the priority date (in some Offices even later); otherwise, the applicant must, **within 20 months** from the priority date, perform the prescribed acts for **entry into the national phase** before those designated Offices. In respect of other designated Offices, the time limit of **30 months** (or later) will apply even if no demand is filed within 19 months. For details about the applicable time limits, Office by Office, see www.wipo.int/pct/en/texts/time_limits.html and the *PCT Applicant's Guide,* National Chapters.

   Within **22 months from the priority date, the applicant may request that a supplementary international search be carried out** by a different International Searching Authority that offers this service (Rule 45*bis*.1). The procedure for requesting supplementary international search is described in the *PCT Applicant's Guide,* International Phase, paragraphs 8.006-8.032.

| Name and mailing address of the International Searching Authority | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2<br>NL-2280 HV Rijswijk<br>Tel. (+31-70) 340-2040<br>Fax: (+31-70) 340-3016 | DUBRET, Françoise<br>Tel: +31 (0)70 340-3584 |

Form PCT/ISA/220 (revised January 2020)

PATENT COOPERATION TREATY

# PCT

## INTERNATIONAL SEARCH REPORT

(PCT Article 18 and Rules 43 and 44)

| Applicant's or agent's file reference 48071-00004 | **FOR FURTHER ACTION** | see Form PCT/ISA/220 as well as, where applicable, item 5 below. |
|---|---|---|
| International application No. PCT/US2021/012261 | International filing date (day/month/year) 6 January 2021 (06-01-2021) | (Earliest) Priority Date (day/month/year) 7 January 2020 (07-01-2020) |

| Applicant |
|---|
| TOKA, LLC |

This international search report has been prepared by this International Searching Authority and is transmitted to the applicant according to Article 18. A copy is being transmitted to the International Bureau.

This international search report consists of a total of _____4_____ sheets.

[X]  It is also accompanied by a copy of each prior art document cited in this report.

1. **Basis of the report**
   a.  With regard to the **language,** the international search was carried out on the basis of:
       [X]  the international application in the language in which it was filed
       [ ]  a translation of the international application into _____ , which is the language of a translation furnished for the purposes of international search (Rules 12.3(a) and 23.1(b))

   b.  [ ]  This international search report has been established taking into account the **rectification of an obvious mistake** authorized by or notified to this Authority under Rule 91 (Rule 43.6bis(a)).

   c.  [ ]  With regard to any **nucleotide and/or amino acid sequence** disclosed in the international application, see Box No. I.

2.  [ ]  **Certain claims were found unsearchable** (See Box No. II)

3.  [ ]  **Unity of invention is lacking** (see Box No III)

4.  With regard to the **title,**
    [X]  the text is approved as submitted by the applicant
    [ ]  the text has been established by this Authority to read as follows:

5.  With regard to the **abstract,**
    [X]  the text is approved as submitted by the applicant
    [ ]  the text has been established, according to Rule 38.2, by this Authority as it appears in Box No. IV. The applicant may, within one month from the date of mailing of this international search report, submit comments to this Authority

6.  With regard to the **drawings,**
    a.  the figure of the **drawings** to be published with the abstract is Figure No. ____1_____
        [X]  as suggested by the applicant
        [ ]  as selected by this Authority, because the applicant failed to suggest a figure
        [ ]  as selected by this Authority, because this figure better characterizes the invention
    b.  [ ]  none of the figures is to be published with the abstract

Form PCT/ISA/210 (first sheet) (January 2015)

# INTERNATIONAL SEARCH REPORT

International application No

PCT/US2021/012261

**A. CLASSIFICATION OF SUBJECT MATTER**

INV. H01R24/70　　H01R35/04　　H01R25/00　　H01B7/06　　H01R13/46
H01R24/68　　H01R24/78

ADD.

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)

H01R　H01B

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practicable, search terms used)

EPO-Internal, WPI Data

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| Y | US 2013/052882 A1 (BRAUSEN DANIEL JOHN [US]) 28 February 2013 (2013-02-28) paragraph [0019]; figure 3 ----- | 1-18 |
| Y | GB 2 571 295 A (INTELLECTUAL PRODUCTS LTD [GB]) 28 August 2019 (2019-08-28) page 9, lines 7-13 ----- | 8,13 |
| Y | US 2017/346244 A1 (COMIS SHANE [CA]) 30 November 2017 (2017-11-30) | 12,18 |
| A | paragraph [0015]; claim 1; figures 1-3,6 ----- | 1 |
| A | US 4 553 798 A (MURPHY PETER [CA]) 19 November 1985 (1985-11-19) abstract; figure 6 ----- | 1 |

-/--

| X | Further documents are listed in the continuation of Box C. | | X | See patent family annex. |

* Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier application or patent but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 25 March 2021 | 06/04/2021 |

| Name and mailing address of the ISA/ | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2 NL - 2280 HV Rijswijk Tel. (+31-70) 340-2040, Fax: (+31-70) 340-3016 | Jiménez, Jesús |

Form PCT/ISA/210 (second sheet) (April 2005)

page 1 of 2

**INTERNATIONAL SEARCH REPORT**

International application No

PCT/US2021/012261

| C(Continuation). DOCUMENTS CONSIDERED TO BE RELEVANT | | |
|---|---|---|
| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
| A | US 5 957 701 A (MCMILLIN KENNETH G [US]) 28 September 1999 (1999-09-28) claim 1; figure 1 ----- | 1 |
| Y | US 6 004 138 A (HARBERTSON GRANT J [US]) 21 December 1999 (1999-12-21) column 3, lines 19-22; claim 1; figures 1-5 ----- | 1-18 |

Form PCT/ISA/210 (continuation of second sheet) (April 2005)

page 2 of 2

# INTERNATIONAL SEARCH REPORT

Information on patent family members

International application No

PCT/US2021/012261

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|---|
| US 2013052882 | A1 | 28-02-2013 | NONE | | |
| GB 2571295 | A | 28-08-2019 | GB | 2571295 A | 28-08-2019 |
| | | | US | 2021050695 A1 | 18-02-2021 |
| | | | WO | 2019162691 A1 | 29-08-2019 |
| US 2017346244 | A1 | 30-11-2017 | NONE | | |
| US 4553798 | A | 19-11-1985 | NONE | | |
| US 5957701 | A | 28-09-1999 | NONE | | |
| US 6004138 | A | 21-12-1999 | US | 5895275 A | 20-04-1999 |
| | | | US | 6004138 A | 21-12-1999 |

**Information on Search Strategy** - **Pilot phase (see OJ 2015, A86)**
The type of information contained in this sheet may change during the pilot for improving
the usefulness of this new service.

Application Number

PCT/US2021/012261

TITLE: WALL MOUNTING OUTLET EXTENDER

APPLICANT: TOKA, LLC

IPC CLASSIFICATION: H01R24/70, H01R35/04, H01R25/00, H01B7/06, H01R13/46, H01R24/68, H01R24/78

EXAMINER: Jiménez, Jesús

CONSULTED DATABASES: WPI


CLASSIFICATION SYMBOLS DEFINING EXTENT OF THE SEARCH:

IPC:

CPC: H01R24/70, H01R2103/00, H01R35/04, H01R25/003, H01R24/22, H01R24/30, H01B7/06, H01R13/447, H01R13/465, H01R24/68, H01R24/78, H01R25/006

FI/F-TERMS:


KEYWORDS OR OTHER ELEMENTS FEATURING THE INVENTION:
To provide a wall power outlet extender that can be positioned or mounted on a wall and that can relocate the wall power outlet to a different position on the wall without requiring electrical work or professional installation and without cluttering adjacent surfaces.
To provide a wall power outlet extender that is repositionable, re-mountable, and removable to accommodate changing needs.

EPO FORM P04A42

## PATENT COOPERATION TREATY

From the
INTERNATIONAL SEARCHING AUTHORITY

| To:<br><br>see form PCT/ISA/220 | **PCT**<br><br>WRITTEN OPINION OF THE<br>INTERNATIONAL SEARCHING AUTHORITY<br>(PCT Rule 43*bis*.1) |
|---|---|

| | Date of mailing<br>*(day/month/year)*    see form PCT/ISA/210 (second sheet) |
|---|---|

| Applicant's or agent's file reference<br>see form PCT/ISA/220 | **FOR FURTHER ACTION**<br>See paragraph 2 below |
|---|---|

| International application No.<br>PCT/US2021/012261 | International filing date *(day/month/year)*<br>06.01.2021 | Priority date *(day/month/year)*<br>07.01.2020 |
|---|---|---|

International Patent Classification (IPC) or both national classification and IPC
INV. H01R24/70 H01R35/04 H01R25/00 H01B7/06 H01R13/46 H01R24/68 H01R24/78

Applicant
TOKA, LLC

1.  This opinion contains indications relating to the following items:

   ☒ Box No. I      Basis of the opinion

   ☐ Box No. II     Priority

   ☐ Box No. III    Non-establishment of opinion with regard to novelty, inventive step and industrial applicability

   ☐ Box No. IV     Lack of unity of invention

   ☒ Box No. V      Reasoned statement under Rule 43*bis*.1(a)(i) with regard to novelty, inventive step and industrial applicability; citations and explanations supporting such statement

   ☐ Box No. VI     Certain documents cited

   ☒ Box No. VII    Certain defects in the international application

   ☐ Box No. VIII   Certain observations on the international application

2.  **FURTHER ACTION**

   If a demand for international preliminary examination is made, this opinion will usually be considered to be a written opinion of the International Preliminary Examining Authority ("IPEA") except that this does not apply where the applicant chooses an Authority other than this one to be the IPEA and the chosen IPEA has notifed the International Bureau under Rule 66.1*bis*(b) that written opinions of this International Searching Authority will not be so considered.

   If this opinion is, as provided above, considered to be a written opinion of the IPEA, the applicant is invited to submit to the IPEA a written reply together, where appropriate, with amendments, before the expiration of 3 months from the date of mailing of Form PCT/ISA/220 or before the expiration of 22 months from the priority date, whichever expires later.

   For further options, see Form PCT/ISA/220.

| Name and mailing address of the ISA:<br><br>European Patent Office<br>P.B. 5818 Patentlaan 2<br>NL-2280 HV Rijswijk - Pays Bas<br>Tel. +31 70 340 - 2040<br>Fax: +31 70 340 - 3016 | Date of completion of<br>this opinion<br><br>see form<br>PCT/ISA/210 | Authorized Officer<br><br>Jiménez, Jesús<br><br>Telephone No. +31 70 340-0 |  |
|---|---|---|---|

Form PCT/ISA/237 (Cover Sheet) (January 2015)

**WRITTEN OPINION OF THE**
**INTERNATIONAL SEARCHING AUTHORITY**

International application No.
PCT/US2021/012261

---

**Box No. I    Basis of the opinion**

1. With regard to the **language**, this opinion has been established on the basis of:

☒    the international application in the language in which it was filed.

☐    a translation of the international application into  , which is the language of a translation furnished for the purposes of international search (Rules 12.3(a) and 23.1 (b)).

2. ☐    This opinion has been established taking into account the **rectification of an obvious mistake** authorized by or notified to this Authority under Rule 91 (Rule 43*bis*.1(a))

3. ☐    With regard to any **nucleotide and/or amino acid sequence** disclosed in the international application, this opinion has been established on the basis of a sequence listing:

a.  ☐    forming part of the international application as filed:

☐  in the form of an Annex C/ST.25 text file.

☐  on paper or in the form of an image file.

b.  ☐    furnished together with the international application under PCT Rule 13*ter*.1(a) for the purposes of international search only in the form of an Annex C/ST.25 text file.

c.  ☐    furnished subsequent to the international filing date for the purposes of international search only:

☐  in the form of an Annex C/ST.25 text file (Rule 13*ter*.1(a)).

☐  on paper or in the form of an image file (Rule 13*ter*.1(b) and Administrative Instructions, Section 713).

4. ☐    In addition, in the case that more than one version or copy of a sequence listing has been filed or furnished, the required statements that the information in the subsequent or additional copies is identical to that forming part of the application as filed or does not go beyond the application as filed, as appropriate, were furnished.

5. Additional comments:

Form PCT/ISA/237 (January 2015)

**WRITTEN OPINION OF THE**
**INTERNATIONAL SEARCHING AUTHORITY**

International application No.
PCT/US2021/012261

---

**Box No. V    Reasoned statement under Rule 43***bis***.1(a)(i) with regard to novelty, inventive step or industrial applicability; citations and explanations supporting such statement**

1. Statement

| | | | |
|---|---|---|---|
| Novelty (N) | Yes: | Claims | 1-18 |
| | No: | Claims | |
| Inventive step (IS) | Yes: | Claims | |
| | No: | Claims | 1-18 |
| Industrial applicability (IA) | Yes: | Claims | 1-18 |
| | No: | Claims | |

2. Citations and explanations

**see separate sheet**

---

**Box No. VII    Certain defects in the international application**

The following defects in the form or contents of the international application have been noted:

**see separate sheet**

Form PCT/ISA/237 (January 2015)

**WRITTEN OPINION OF THE**
**INTERNATIONAL SEARCHING**
**AUTHORITY (SEPARATE SHEET)**

International application No.

PCT/US2021/012261

## Re Item V

**Reasoned statement with regard to novelty, inventive step or industrial applicability; citations and explanations supporting such statement**

### 1.  CITED DOCUMENTS

Reference is made to the following documents:

D1    US 6 004 138 A (HARBERTSON GRANT J [US]) 21 December 1999 (1999-12-21)

D2    US 2013/052882 A1 (BRAUSEN DANIEL JOHN [US]) 28 February 2013 (2013-02-28)

D3    GB 2 571 295 A (INTELLECTUAL PRODUCTS LTD [GB]) 28 August 2019 (2019-08-28)

D4    US 2017/346244 A1 (COMIS SHANE [CA]) 30 November 2017 (2017-11-30)

### 2.  INDEPENDENT CLAIMS 1 AND 14

The present application does not meet the criteria of Article 33(1) PCT, because the subject-matter of claims 1 and 14 does not involve an inventive step in the sense of Article 33(3) PCT.

### 2.1  Independent claim 1

The document D1 is regarded as being the closest prior art to the subject-matter of claim 1, and discloses (the references in parentheses applying to this document): discloses a wall outlet extender (10) comprising:
a plug end (12) configured to selectively plug into a wall outlet,
an outlet end (86, 88) configured to selectively receive one or more plugs,

~~wherein the outlet end comprises an interchangeable decorative faceplate,~~ and an extendable shaft (14) positioned between the plug end and the outlet end, wherein the plug end (12) is rotatable (column 3, lines 19-22).



FIG. 1                                        D1, fig. 1

The subject-matter of claim 1 therefore differs from this known wall outlet extender in that:

f1) the outlet end comprises an interchangeable decorative faceplate.

The problem to be solved by the present invention may therefore be regarded as to improve the aesthetics of the outlet end.

The solution proposed in claim 1 of the present application cannot be considered as involving an inventive step (Article 33(3) PCT) for the following reasons.

Feature f1 is described in document D2 (paragraph [0019]; figure 3) as providing the same advantages as in the present application. The skilled person would therefore regard it as a normal option to include this feature in the wall outlet extender described in D1 in order to solve the problem posed.


### 2.2   Independent claim 14

The document D1 is regarded as being the closest prior art to the subject-matter of claim 1, and discloses (the references in parentheses applying to this document) an extendable power outlet adaptor (10), comprising:
a plug (12) selectively configured to insert into a wall outlet,
a shaft (14) that is telescopic and that is rotatable about the plug up to 360°, and
one or more outlet receptacles (86, 88) connected to the shaft (14) that are selectively attachable to a position on a wall;
~~an interchangeable decorative faceplate selectively attached with the one or more outlet receptacles.~~

The subject-matter of claim 1 therefore differs from this known extendable power outlet adaptor in that:

f2) an interchangeable decorative faceplate selectively attached with the one or more outlet receptacles.

| WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY (SEPARATE SHEET) | International application No. |
|---|---|
| | PCT/US2021/012261 |

The problem to be solved by the present invention may therefore be regarded as to improve the aesthetics of the outlet end.

The solution proposed in claim 1 of the present application cannot be considered as involving an inventive step (Article 33(3) PCT) for the following reasons.

Feature f2 is described in document D2 (paragraph [0019]; figure 3) as providing the same advantages as in the present application. The skilled person would therefore regard it as a normal option to include this feature in the extendable power outlet adaptor described in D1 in order to solve the problem posed.

## 3.   DEPENDENT CLAIMS 2-13 AND 15-18

Dependent claims 2-15 do not contain any features which, in combination with the features of any claim to which they refer, meet the requirements of the PCT in respect of inventive step.

3.1   Additional features of claims 2-4 are known from D1(portions 14, 16).

3.2   Additional features of claims 6 are known from D1 (column 3, lines 19-22; claim 1; figures 1-5).

3.3   Additional features of claims 7, 9 and 16-17 are known from D1 (see fig. 2).

3.4   Additional features of claim 8 and 13 are known from D3 (page 9, lines 7-13).

3.5   Additional features of claim 12 and 18 are known from D4 (paragraph [0015]; figure 6).

3.6   Additional features of claims 5 and 10-11 are merely one of several straightforward possibilities from which the skilled person would select, in accordance with circumstances, without the exercise of inventive skill, in order to solve the problem posed.

## Re Item VII

### Certain defects in the international application (Form or Content)

1.   If the drawings contain a large number of reference signs, it is strongly recommended to attach a separate sheet listing all reference signs and the features denoted by them (Rule 11.13(n)).

2.   Where the international application contains drawings, the technical features mentioned in the claims shall preferably be followed by reference signs (between parentheses) relating to such features (Rule 6.2(b)).

**WRITTEN OPINION OF THE**
**INTERNATIONAL SEARCHING**
**AUTHORITY (SEPARATE SHEET)**

International application No.

PCT/US2021/012261

3.    Contrary to the requirements of Rule 5.1(a)(ii) PCT, the <u>relevant background art</u> disclosed in D1-D4 is not mentioned in the description, not are these documents identified therein.

4.    Although claims 1 and 14 have been drafted as <u>separate independent claims</u>, they appear to relate effectively to the same subject-matter and to differ from each other only with regard to the definition of the subject-matter for which protection is sought and/or in respect of the terminology used for the features of that subject-matter. The aforementioned claims therefore lack conciseness and as such do not meet the requirements of Article 6 PCT.

5.    The <u>unit "inch"</u> employed is not recognised in international practice used, contrary to the requirements of Rule 10.1(d) PCT. This unit of measure is not additionally expressed in terms of the units stipulated by Rule 10.1(a) and (b) PCT.

**Possible steps after receipt of the international search report (ISR) and written opinion of the International Searching Authority (WO/ISA)**

| | |
|---|---|
| **General information** | For all international applications, the competent International Searching Authority (**ISA**) will establish an international search report (**ISR**) accompanied by a written opinion of the International Searching Authority (**WO/ISA**). The **WO/ISA** may be responded to by<br><br>• filing informal comments with the **International Bureau of WIPO (IB)** (where no demand for international preliminary examination (**demand**) is filed)<br>• filing amendments under Art. 19 PCT (this can be done whether or not a **demand** is filed)<br>• filing amendments under Art. 34 PCT and/or formal observations in response to objections raised in the **WO/ISA** (where a **demand** *is* actually filed)<br><br>This document explains these possibilities. |
| **Filing informal comments** | After receipt of the **ISR and WO/ISA**, the applicant may file informal comments on the **WO/ISA, directly with the IB** (see International Search and Preliminary Examination Guidelines 2.15). These will be communicated to the designated/elected Offices, together with the International Preliminary Report on Patentability (**IPRP**) at 30 months from the priority date. |
| **Amending claims under Art. 19 PCT** | The applicant may file **amended claims** under Art. 19 PCT, **directly with the IB** by the later of the following dates:<br><br>• 2 months from the date of mailing of the **ISR** and the **WO/ISA**<br>• 16 months from the priority date<br><br>**However**, any such amendment received by the **IB** after the expiration of the applicable time limit shall be **considered to have been received on time** by the **IB**, if it reaches it **before** the technical preparations for international publication have been completed (the 15th day prior to the date of publication, see PCT Applicant's Guide, International Phase, 9.013).<br><br>For further information, please see Rule 46 PCT as well as form PCT/ISA/220.<br><br>Please also note that, when filing amended claims under Art. 19 PCT, such amendments shall be **accompanied by a letter** identifying the amendments made and also the basis for the amendments in the application as originally filed (Rule 46.5(b) PCT). Where a **demand** is filed, failure to comply with this requirement may result in the amendments being ignored in the International Preliminary Examination Report (**IPER**), see Rule 70.2(*c-bis*) PCT. |

BNSDOCID: <XS_____200704010CK_I_>

**Filing a demand for international preliminary examination**

In principle, the **WO/ISA** will be considered to be the written opinion of the International Preliminary Examining Authority (**IPEA**). Where the **WO/ISA** issued by the **EPO** as **ISA** gives a positive opinion on the international application and the invention to which it relates, filing a **demand** with the **EPO** as **IPEA** would normally be unnecessary, since a positive IPRP would anyway be established by the IB based on the WO/ISA (see also further below).

If the applicant wishes to file a **demand** (for example, to allow him to argue his case in international preliminary examination with regard to objections raised in a negative **WO/ISA** before the **IPEA** issues an **IPER**), this must be done before expiration of **3 months after the date of mailing of the ISR and WO/ISA** or **22 months after priority date,** whichever expires later (Rule 54*bis* PCT). Amendments under Art. 34 PCT can be filed with the IPEA, normally at the same time as filing the demand (Rule 66.1(b) PCT) or within the time limit set for reply to any written opinion issued during international preliminary examination by the **IPEA.**

If a **demand** is filed at the **EPO** as **IPEA** and no comments/amendments have been received by the time the **EPO** starts drawing up the **IPER** (Rule 66.4*bis* PCT), the **WO/ISA** will be transformed by the **IPEA** into an **IPER** (also called the **IPRP (Chapter II)** which would merely reflect the content of the **WO/ISA** (OJ 10/2011, 532). The **demand** can still be withdrawn (Art. 37 PCT).

Please also note that, when filing amendments under Art. 34 PCT, such amendments shall be accompanied by a letter which identifies the amendments made and also the basis for the amendments in the application as originally filed (Rule 66.8(a) PCT). Failure to comply with this requirement may result in the amendments being ignored in the **IPER (IPRP (Chapter II)),** see Rule 70.2(c-*bis*) PCT.

---

**Filing a request for supplementary international search**

The applicant may, with the **IB**, file a request for **supplementary international search** under Rule 45*bis*.1 PCT. The present **ISR** and **WO/ISA** may also be taken into account in the execution of that supplementary international search, provided that these are available to the Authority charged with this task before it starts the supplementary search (Rule 45*bis*.5 PCT).

This kind of request **cannot be filed specifying the ISA** who did the **international search.**

More information on this topic can be found in the **PCT Applicant's Guide,** Chapter 8 (http://www.wipo.int/pct/en/guide/ip08.html).

---

**End of the international phase**

Where no **demand** is filed, at the end of the international phase, the **IB** will transform the **WO/ISA** into the IPRP (PCT Chapter I) (Rule 44*bis* PCT), which will then be transmitted together with possible informal comments to the designated Offices. Where a demand is filed, the **WO/ISA** is not transformed into an **IPRP (Chapter I)** by the IB, but rather the **IPEA** will establish an **IPER,** (the IPER is the same as the IPRP (PCT Chapter II), see Rule 70.15 PCT).

---

BNSDOCID: <XS_____200704010CK_I_>



US 20130052882A1

(19) **United States**

(12) **Patent Application Publication**     (10) Pub. No.: **US 2013/0052882 A1**

Brausen     (43) Pub. Date:     **Feb. 28, 2013**

(54) **ELECTRIAL OUTLET SAFETY DEVICE**

(76) Inventor: **Daniel John Brausen**, Little Canada, MN (US)

(21) Appl. No.: **13/593,691**

(22) Filed: **Aug. 24, 2012**

**Related U.S. Application Data**

(60) Provisional application No. 61/526,711, filed on Aug. 24, 2011.

**Publication Classification**

(51) **Int. Cl.**
    *H01R 9/22*         (2006.01)
(52) **U.S. Cl.** ....................................................... **439/718**

(57)         **ABSTRACT**

An electrical safety device for updating an existing electrical outlet into a Ground Fault Circuit Interrupter (GFCI)/Arc Fault protected receptacle. The electrical safety device is a surface mounted GFCI/Arc Fault receptacle for converting a grounded or ungrounded electrical receptacle with limited electrocution protection into semi-permanent GFCI/Arc Fault protected outlet that is not easily removed.



BNSDOCID: <US___20130052882A1_I_>

Case 2:26-cv-00414-CB    Document 60-2    Filed 06/16/26    Page 619 of 854



FIG. 1

BNSDOCID: <US____20130052882A1_I_>



FIG. 2

BNSDOCID: <US____20130052882A1_I_>

Case 2:26-cv-00414-CB    Document 60-2    Filed 06/16/26    Page 621 of 854



FIG. 3

BNSDOCID: <US____20130052882A1_I_>

Patent Application Publication    Feb. 28, 2013  Sheet 4 of 4    US 2013/0052882 A1



FIG. 4

BNSDOCID: <US____20130052882A1_I_>

US 2013/0052882 A1

Feb. 28, 2013

1

## ELECTRICAL OUTLET SAFETY DEVICE

### CROSS-REFERENCE

[0001] This application claims priority from Provisional Patent Application Ser. No. 61/526,711 filed Aug. 24, 2011.

### FIELD OF THE INVENTION

[0002] This invention pertains generally to a safety device adaptable to existing unprotected electrical outlets, and more particularly to a surface mounted Ground Fault Circuit Interrupter (GFCI)/Arc Fault receptacle for converting grounded or ungrounded electrical receptacles into permanent GFCI/Arc Fault protected outlets.

### BACKGROUND

[0003] Existing ungrounded or unprotected electrical receptacles present a significant hazard of electrical shock to users in proximity to grounded surfaces, such as kitchen sink counters, bathrooms, exterior receptacles, basements, garages, and laundry and pool areas. In addition to the electrical hazard, existing out-dated two-blade electrical receptacles are highly inconvenient when attempting to use a modern electrical device designed to be plugged into a three-prong receptacle. Similarly, receptacles located throughout bedrooms, dens, living rooms, and other living areas can present the risk of fire when an electrical device with potentially faulty components, such as a lamp with the wrong bulb or frayed internal wiring, are used by a person who may fall asleep during use or who leaves the room.

[0004] Compounding the safety issue are new building code regulations that require updated electrical protection prior to a home sale or new tenant occupying a residence. Traditional solutions include completely replacing the outlets, completely rewiring the outlet, or employing a temporary add-on protection device. Typically, permanent solutions require homeowners to hire a qualified electrical contractor at great expense. However, many homeowners attempt to do the work themselves without the proper knowledge, skill, and without having the work inspected for compliance with the regulations. Furthermore, temporary add-on devices may easily be removed intentionally or unintentionally, thereby nullifying the protection. Modern GFCI replacement outlets are often too large for existing electrical boxes requiring substantial additional remodeling with the associated costs.

[0005] Consequently, there is a need for a quick, simple, economical solution to update existing electrical receptacles to improve safety and to meet modern building code requirements. The present invention discloses a surface mounted GFCI/Arc Fault receptacle for converting a grounded or ungrounded existing duplex or quadplex receptacle into a two to six outlet, three-prong GFCI and/or Arc Fault protected receptacle. The device provides simulated ground protection to a two-blade receptacle complex by converting it to a three-prong outlet. The invention allows individuals to quickly and safely modify existing receptacles economically without any specialized knowledge or the need to cut off the power supply.

### SUMMARY

[0006] The following presents a simplified summary in order to provide a basic understanding of some aspects of the disclosed invention. This summary is not an extensive overview, and it is not intended to identify key/critical elements or to delineate the scope thereof. Its sole purpose is to present some concepts in a simplified form as a prelude to the more detailed description that is presented later.

[0007] The subject matter disclosed and claimed herein, in one aspect thereof, comprises an electrical safety device for converting an unprotected existing electrical outlet into a GFCI and/or Ground Fault protected receptacle. The electrical safety device comprises existing GFCI/Arc Fault circuitry integrated into a housing assembly with a mounting element for securing the electric safety device to the unprotected existing electrical outlet without the need to disassemble the outlet during installation. The electrical safety device is installable by removing an existing cover plate from a duplex or quadplex receptacle and pressing a plurality of blades and/or prongs into the receptacle, and then securing the electrical safety device with the mounting element.

[0008] Furthermore, in the preferred embodiment of the invention, the electrical safety device converts an unprotected two-prong or three-prong receptacle into a protected three-prong protected outlet. The mounting element comprises a one-way, non-retractable mounting screw for permanently coupling the electrical safety device to the unprotected outlet. Additional stabilization is provided by the plurality of blades and/or the prongs so that the coupled elements are fixed in place and resist movement once installed.

[0009] To the accomplishment of the foregoing and related ends, certain illustrative aspects are described herein in connection with the following description and the annexed drawings. These aspects are indicative of the various ways in which the principles disclosed herein can be practiced and all aspects and equivalents thereof are intended to be within the scope of the claimed subject matter. Other advantages and novel features will become apparent from the following detailed description when considered in conjunction with the drawings.

### BRIEF DESCRIPTION OF THE DRAWINGS

[0010] FIG. 1 illustrates a front perspective view of an electrical outlet safety device in accordance with the disclosed architecture.

[0011] FIG. 2 illustrates an exploded rear perspective view of an electrical outlet safety device for use with an unprotected two-prong outlet in accordance with the disclosed architecture.

[0012] FIG. 3 illustrates an exploded rear perspective view of an electrical outlet safety device for use with an unprotected three-prong outlet in accordance with the disclosed architecture.

[0013] FIG. 4 illustrates a front perspective view of an electrical outlet safety device for use in converting an unprotected two outlet receptacle into a protected four outlet receptacle accordance with the disclosed architecture.

### DETAILED DESCRIPTION

[0014] The present invention discloses an electrical safety device for coupling with an existing unprotected electrical outlet to provide Ground Fault and/or Arc Fault protection to enhance safety and comply with modern building code requirements without the need to rewire the entire outlet or to first cut off the power supply. The preferred embodiment allows a layperson, without any extensive electrical knowledge, to quickly and easily convert an unprotected receptacle into a protected one. The electrical safety device comprises a housing assembly and a plug assembly. The electrical safety

BNSDOCID: <US____20130052882A1_I_>

2

device also comprises a mounting element for permanently or semi-permanently coupling the electrical safety device to the unprotected outlet where the electrical safety device is surface mounted and not installed within an existing outlet box. The electrical safety device provides a simple to install, economical alternative for upgrading electrical safety.

[0015] Reference is now made to the drawings, wherein like reference numerals are used to refer to like elements throughout. In the following description, for purposes of explanation, numerous specific details are set forth in order to provide a thorough understanding thereof. It may be evident, however, that the novel embodiments can be practiced without these specific details. In other instances, well known structures and devices are shown in block diagram form in order to facilitate a description thereof. The intention is to cover all modifications, equivalents, and alternatives falling within the spirit and scope of the claimed subject matter.

[0016] Illustrated in FIG. 1 is an electrical safety device 100 for use in updating a less protected electrical outlet into a more protected outlet. FIGS. 2 and 3 show an unprotected receptacle 10, wherein the unprotected receptacle 10 does not have either Ground Fault Circuit Interrupter (GFCI) or Arc Fault protection. Residential electrical wiring systems typically employ either two or three wiring systems. A two wire system has a hot wire and a neutral wire, wherein the neutral wire is used to sense the lack of a ground and shut off in the event of a significant current imbalance. Typically two wire systems utilize the unprotected outlet 10 as shown in FIG. 2 where the unprotected outlet 10 is a two-prong outlet 30. GFCI's work on the two wire system by internally sensing and correcting this current imbalance at a much smaller amperage between the hot and the neutral wires and by interrupting the circuit prior to causing an electrocution hazard caused by a ground fault. An Arc Fault Circuit Protector detects an unintended electrical arc in an appliance, such as a lamp with a frayed wire, and interrupts the power to the circuit before the arc causes a fire.

[0017] A three wire system includes a ground wire with a three-prong outlet 40, as seen in FIG. 3, to protect against electrocution by providing a lower resistance path for the electricity to follow in the event of a short or ground fault. However, as the GFCI detects and interrupts the circuit much faster than a traditional fuse or circuit breaker, the GFCI significantly decreases the likelihood of electrocution. Modern building codes require the greater protection of the GFCI in higher hazard areas such as bathrooms, basements, kitchens, and the like. However, existing prior art devices either require significant electrical knowledge to install, or are easily removable thereby defeating the purpose of the code if removed.

[0018] Returning to FIG. 1, the electrical safety device 100 once installed with the unprotected receptacle 10 creates a protected receptacle. Both the electrical safety device 100 and the unprotected receptacle 10 may be duplex, quadplex, or multiplex as desired. For example, FIG. 1 illustrates a duplex, or two-plug, outlet capable of accepting two plugs. FIG. 4 illustrates a quadplex, or four-plug embodiment of the invention. While the majority of applications may require the duplex or the quadplex option, the inventor contemplates an embodiment where a multiplex option having between six and ten plugs may be advantageous as well. Additionally, the unprotected receptacle 10 may be duplex, but the protected receptacle may be duplex, quadplex, or multiplex as desired. This is advantageous as it allows a user to safely increase the number of plugs available for use. The electrical safety device 100 also converts either a two-prong outlet 30 or three-prong outlet 40 into a three-prong protected outlet comprising either GFCI or Arc Fault protection.

[0019] The electrical safety device 100 comprises a housing assembly 116 and a plug assembly 130. The housing assembly 116 comprises four sides 118, a face plate 120, and a back 122. The housing assembly 116 is typically constructed from plastic, although it is contemplated that other suitable materials, including without limitation nylon, or polymer, and the like may be used without affecting the overall scope of the invention. The housing assembly 116 typically comprises a rectangular shape where the electric safety device 100 is approximately between four and six inches in height, approximately between two and ten inches in width. However, this is not meant as a limitation as the electric safety device 100 may be of larger and/or smaller dimensions, without deviating from the scope of the invention. For example, the only dimensional limitation is that the back 112 must completely cover an opening holding the unprotected receptacle 10 when a cover plate 42, as seen in FIGS. 2 and 3 is removed prior to installation.

[0020] The housing assembly 116 further comprises a top through-hole 124, a bottom through-hole 126, and a center mounting aperture 128. The top through-hole 124 and the bottom through-hole 128 transect the face plate 120, the back 122, and the plug assembly 130. Furthermore, the top through-hole 124 and the bottom through-hole 128 are in line with a top mounting screw 50 and a bottom mounting screw 60 respectively of the unprotected receptacle 10. Similarly, the center mounting aperture 128 is in line with a center hole 70 located between a top plug 80 and a bottom plug 90 in the unprotected receptacle 10. When installed, the electrical safety device 100 is surface mountable over the unprotected receptacle 10 so that the back 122 substantially covers the unprotected receptacle 10.

[0021] The plug assembly 130 comprises a ground fault circuit interrupter or an arc fault circuit interrupter. The plug assembly 130 is integrated within the housing assembly 116 so that the plug assembly 130 is substantially encased or encapsulated by the housing assembly 116. When installed, the plug assembly 130 is in electrical communication with the unprotected receptacle 10, thereby converting the unprotected receptacle 10 into either a GFCI protected or Arc Fault protected receptacle.

[0022] The plug assembly 130 further comprises a plurality of contact elements 132 that extend rearwardly through the back 122 of the housing assembly 116. At least two of the plurality of contact elements 132 electrically communicate with the unprotected receptacle 10 by plugging directly into the top plug 80 and the bottom plug 90 in a duplex receptacle, or into as many plugs as may be available in the unprotected receptacle 10. The plurality of contact elements 132 comprise at least a first pair of contact blades 138 and a second pair of contact blades 140. Protecting the two-prong unprotected outlet 30 as illustrated in FIG. 2, is accomplished when the first pair of contact blades 138 engage the top plug 80, and the second pair of contact blades 140 which are electrically isolated engage the bottom plug 90 of the unprotected receptacle 10. To protect a three-prong unprotected outlet 40, as illustrated in FIG. 3, the plurality of contact elements 132 further comprise a plurality of grounding prongs 144. To protect the duplex receptacle, the plurality of grounding prongs 144 comprise a first grounding prong 146 for engaging the top

BNSDOCID: <US____20130052882A1_I_>

US 2013/0052882 A1

Feb. 28, 2013

3

plug **80** in conjunction with the first pair of contact blades **138**, and a second grounding prong **148** for engaging the bottom plug **90** in conjunction with the second pair of contact blades **140**.

[0023] The plurality of contact elements **132** may comprise additional contact blades and grounding prongs as required. For example, the plurality of contact elements in the electrical safety device **100** illustrated in FIG. **4** further comprise four pairs of contact blades (not shown). Additionally, the plurality of grounding prongs **144** may further comprise four corresponding grounding prongs (not shown) depending on the nature of the unprotected outlet **10** to be upgraded. Similarly, this is not meant as a limitation as any number of pairs of contact blades and/or grounding prongs may be employed as desired depending on the size of the unprotected outlet **10**.

[0024] In addition to providing electrical communication, the plurality of contact elements **132** further help to stabilize the electrical safety device **100** on the unprotected outlet **10**. Preferably the plurality of contact elements **132** further comprise a plurality of barbed contact blades **136**. As illustrated in FIG. **2**, the plurality of barbed contact blades **136** employ a plurality of micro-barbs **134** for engaging with the unprotected receptacle **10**. The plurality of micro-barbs **134** are advantageous as they create a series of angled points of contact with the top plug **80** and the bottom plug **90**. The plurality of micro-barbs **134** are angled away from the back **122** of the housing assembly **116** so as to facilitate installation of the electrical safety device **100**, while simultaneously substantially preventing easy removal as the barbs resist a pulling movement Not only does this enhance stabilization of the electrical safety device **100** once installed, but it makes removal of the electrical safety device **100** unlikely without a destructive act. This is advantageous as it does not permit easy removal of the electrical safety device **100** once installed so that the protection is not inadvertently easily undone. Therefore, once installed, the electrical safety device **100** becomes a substantially permanent GFCI or Arc Fault converter without the need to rewire the unprotected outlet **10**. While the plurality of micro-barbs **134** are preferred, they are not required as the inventor contemplates an embodiment with less permanent installations as described infra.

[0025] The electrical safety device **100** further comprises a mounting element **150** for coupling the electrical safety device **100** to the unprotected receptacle **10**. While the mounting element **150** is preferably non-removable, it may be removable as well. The mounting element **150** preferably comprises a one-way non-retractable screw **152** which serves to limit movement of the electrical safety device **100** and to prevent removal. The one-way non-retractable screw **152** may comprise a one-way drive head screw **154** which is insertable through the center mounting aperture **128** and into the center hole **70** of the unprotected receptacle **10**. However, this is not meant as a limitation as the mounting element **150** may further comprise any type of screw, such as a screw with micro-barbs similar to the plurality of micro-barbs **134** discussed supra, a square head screw, and the like as is known in the art without affecting the overall scope of the invention. Once installed, the semi-permanent embodiment of the electrical safety device **100** is only removable by accessing and unscrewing the top mounting screw **50** and the bottom mounting screw **50** of the unprotected receptacle **10** through the top through-hole **124** and the bottom through-hole **126**. Once unscrewed, the electrical safety device **100** and unprotected

receptacle **10** may be removed as a unit thereby preventing bypassing the added protection.

[0026] The electrical safety device **100** further comprises a circuit testing element **156** and a circuit resetting element **158** found in existing GFCI outlets. The electrical safety device **100** may also comprise weather-stripping and/or a weatherproof cover for outdoor applications as necessary.

[0027] Other variations are within the spirit of the present invention. Thus, while the invention is susceptible to various modifications and alternative constructions, a certain illustrated embodiment thereof is shown in the drawings and has been described above in detail. It should be understood, however, that there is no intention to limit the invention to the specific form or forms disclosed, but on the contrary, the intention is to cover all modifications, alternative constructions, and equivalents falling within the spirit and scope of the invention, as defined in the appended claims.

[0028] The use of the terms "a" and "an" and "the" and similar referents in the context of describing the invention (especially in the context of the following claims) are to be construed to cover both the singular and the plural, unless otherwise indicated herein or clearly contradicted by context. The terms "comprising," "having," "including," and "containing" are to be construed as open-ended terms (i.e., meaning "including, but not limited to,") unless otherwise noted. The term "connected" is to be construed as partly or wholly contained within, attached to, or joined together, even if there is something intervening. Recitation of ranges of values herein are merely intended to serve as a shorthand method of referring individually to each separate value falling within the range, unless otherwise indicated herein, and each separate value is incorporated into the specification as if it were individually recited herein. All methods described herein can be performed in any suitable order unless otherwise indicated herein or otherwise clearly contradicted by context. The use of any and all examples, or exemplary language (e.g., "such as") provided herein, is intended merely to better illuminate embodiments of the invention and does not pose a limitation on the scope of the invention unless otherwise claimed. No language in the specification should be construed as indicating any non-claimed element as essential to the practice of the invention.

[0029] Preferred embodiments of this invention are described herein. Variations of those preferred embodiments may become apparent to those of ordinary skill in the art upon reading the foregoing description. The inventor expects skilled artisans to employ such variations as appropriate, and the inventor intends for the invention to be practiced otherwise than as specifically described herein. Accordingly, this invention includes all modifications and equivalents of the subject matter recited in the claims appended hereto as permitted by applicable law. Moreover, any combination of the above-described elements in all possible variations thereof is encompassed by the invention unless otherwise indicated herein or otherwise clearly contradicted by context.

What is claimed is:

1. An electrical safety device for converting an unprotected electrical receptacle into a protected receptacle, the electrical safety device comprising:

a housing assembly comprising four sides, a faceplate, and a back;

a plug assembly in electrical communication with the unprotected electrical receptacle, wherein the plug assembly is integrated within the housing assembly; and

US 2013/0052882 A1
Feb. 28, 2013

4

a mounting element for permanently coupling the electrical safety device to the unprotected electrical receptacle.

2. The electrical safety device of claim 1, wherein the unprotected receptacle is a duplex receptacle and the protected receptacle is a protected duplex receptacle.

3. The electrical safety device of claim 1, wherein the unprotected receptacle is a duplex receptacle and the protected receptacle is a protected quadplex receptacle.

4. The electrical safety device of claim 1, wherein the unprotected receptacle is a duplex receptacle and the protected receptacle is a protected multiplex receptacle.

5. The electrical safety device of claim 1, wherein the electrical safety device converts a two-prong unprotected outlet into a three-prong protected outlet via incorporating an Arc Fault circuit interrupter.

6. The electrical safety device of claim 1, wherein the electrical safety device converts a three-prong unprotected outlet into a three-prong protected outlet via incorporating a ground fault circuit interrupter.

7. An electrical safety device for converting an unprotected electrical receptacle into a Ground Fault Circuit Interrupter protected receptacle, the electrical safety device comprising:
   a housing assembly comprising four sides, a faceplate, and a back, wherein the faceplate and the back have a top and a bottom through-hole aligned with a top and a bottom mounting screw of the unprotected receptacle; and
   a plug assembly in electrical communication with the unprotected electrical receptacle, wherein the plug assembly is encased within the housing assembly, and wherein a plurality of contact elements extend rearwardly through the back of the housing assembly and are connectable with the unprotected electrical receptacle; and
   a mounting element for non-removably coupling the electrical safety device to the unprotected electrical receptacle.

8. The electrical safety device of claim 7, wherein the plurality of contact elements comprise a first pair of contact blades and a second pair of contact blades, wherein the first pair of contact blades engage only a top plug of the unprotected electrical receptacle and the second pair of contact blades engage only a bottom plug of the unprotected electrical receptacle.

9. The electrical safety device of claim 8, wherein the plurality of contact elements further comprise a first grounding prong and a second grounding prong.

10. The electrical safety device of claim 7, wherein the plurality of contact elements comprise four pairs of contact blades.

11. The electrical safety device of claim 7, wherein a center-mounting aperture transects the housing assembly and the plug assembly from front to back.

12. The electrical safety device of claim 11, wherein the mounting element comprises one-way drive head screw element partially insertable through the center mounting aperture and into a center hole in the unprotected electrical receptacle.

13. The electrical safety device of claim 7, further comprising a circuit testing element and a circuit resetting element.

14. An electrical safety device for converting an unprotected electrical receptacle into an Arc-Fault protected receptacle, the electrical safety device comprising:
   a housing assembly comprising four sides, a faceplate, and a back;
   a plug assembly in electrical communication with the unprotected electrical receptacle, wherein the plug assembly is integrated within the housing assembly, and wherein a plurality of contact elements extend rearwardly through the back of the housing assembly and are connectable with the unprotected electrical receptacle; and
   a mounting element for non-removably coupling the electrical safety device to the unprotected electrical receptacle, wherein the mounting element comprises a one-way non-retractable screw.

15. The electrical safety device of claim 14, wherein the plurality of contact elements comprise a plurality of barbed contact blades.

16. The electrical safety device of claim 15, wherein the plurality of contact elements further comprise a plurality of grounding prongs.

17. The electrical safety device of claim 14, wherein the plurality of contact elements in conjunction with the one-way non-retractable screw stabilize the electrical safety device once installed.

18. The electrical safety device of claim 14, wherein the plurality of contact elements each employ a plurality of micro-barbs to stabilize the electrical safety device.

19. The electrical safety device of claim 14, wherein the electrical safety device is a plug-in, permanent Arc-Fault converter.

20. The electrical safety device of claim 14, wherein the electrical safety device is mounted flush with a wall surface over the unprotected electrical receptacle.

* * * * *

BNSDOCID: <US____20130052882A1_I_>

(12) **UK Patent Application** (19)**GB** (11)**2571295** (13)**A**

(43) Date of A Publication    28.08.2019

| | |
|---|---|
| (21) Application No: 1802910.8 | |
| (22) Date of Filing: 22.02.2018 | |

(51) INT CL:
**H01R 31/06** (2006.01)    **H01R 25/00** (2006.01)
*H01R 35/04* (2006.01)

(71) Applicant(s):
**Intellectual Products Limited**
**92 Station Road, Clacton-on-Sea, Essex, CO15 1SG,**
**United Kingdom**

(72) Inventor(s):
**Michael Man-Cheung Tsang**

(74) Agent and/or Address for Service:
**SANDERSONS**
**D2 Knowledge Gateway, Nesfield Road, Colchester,**
**CO4 3ZL, United Kingdom**

(56) Documents Cited:
**US 4553798 A**

(58) Field of Search:
UK CL (Edition X) **H2E**
INT CL **H01R**
Other: **Online: WPI, EPODOC**

(54) Title of the Invention: **Electrical socket extender**
Abstract Title: **Electrical socket extender**

(57) An electrical socket extender, to provide an electrical socket remote from a surface/wall-mounted electrical socket, comprises a socket engaging portion 11 connectable to the wall socket 12, an appliance socket section 24 providing one or more appliance sockets 26, and a linkage 22 which connects these. The appliance socket section and the socket engaging portion both have multiple couplings 20, 28 to allow the linkage to be connected in different positions. The linkage may be telescopic and may have hinged joints 37 to allow the linkage to lie on a wall above a skirting board or to go around an internal (Fig 4) or external corner. Switches 48, handles 38 and 42, USB charging ports 46 and lights 50 may be provided.

Figure 1



GB 2571295 A

BNSDOCID: <GB_____2571295A__I_>

1/9

**Figure 1**



BNSDOCID: <GB_____2571295A__I_>

# Figure 2



BNSDOCID: <GB_____2571295A__I_>

## Figure 3



BNSDOCID: <GB_____2571295A__I_>

4 / 9

# Figure 4



16

300

70

14

12

BNSDOCID: <GB_____2571295A__I_>

**Figure 5**

16

400

70

80

22

14

12



## Figure 6



BNSDOCID: <GB_____2571295A__I_>

**Figure 7**



BNSDOCID: <GB_____2571295A__I_>

# Figure 8



BNSDOCID: <GB_____2571295A__I_>

9/9

**Figure 9a**

**Figure 9b**



11

120



126

130

BNSDOCID: <GB_____2571295A__I_>

## ELECTRICAL SOCKET EXTENDER

BACKGROUND OF THE INVENTION

The present invention relates to an electrical socket extender to provide an electrical socket remote from a wall-mounted electrical socket. The present invention allows a user quickly and easily to extend the reach of a surface/wall-mounted electrical socket in order to create an electrical socket in a more convenient location.

Wall-mounted electrical sockets are often pre-installed in domestic and commercial premises in order to provide sources of electricity for the occupants of those premises and their appliances. Unfortunately, the locations in which these electrical sockets are provided may not always be convenient, especially due to the positioning of furniture or equipment close to a wall on which the wall-mounted electrical socket is located. Furthermore, persons with physical impairments, such as those who are injured, disabled (e.g. wheelchair bound) or who have declining health, may well find it difficult to reach these wall-mounted electrical sockets, especially if a socket is located particularly low or high on a wall, or behind a piece of furniture. The problem is compounded by the fact that rewiring wall-mounted electrical sockets in order to relocate them is a manually intensive and expensive task, which involves considerable work being carried out on one or more walls of the premises, something which may not be permitted in certain circumstances, for instance should the premises be rented, or be a listed building.

Extension cords, having a male plug for insertion into an electrical socket, one or more female appliance outlets and an insulated cable connecting the plug to the one or more outlet are often used to extend the reach of such wall-mounted electrical sockets. These devices, though quite versatile, present a number of issues. For example, the cable can create a tripping hazard or may be chewed or tampered with by children and small animals, and the devices are also often visually unappealing, especially where there is sagging or coiled cabling. Furthermore, though the appliance outlet may have means for mounting to a wall, mounting the appliance outlet in such a way is rarely a suitable option for a user, due to unsightliness and issues with carrying out work on the walls. A further concern is that even if a user chooses to mount an extension cord to a wall, during subsequent use and reordering of the contents of the premises, the new location of the outlet may itself become inconvenient. If the user is to remedy the problem they then need to choose a new

BNSDOCID: <GB_____2571295A__I >

- 2 -

fixed location, perform the necessary work on the wall to provide a new mounting and probably also fix the damage caused by the initial mounting of the appliance outlet to the wall. The present invention thus aims to provide a means by which a user can quickly, securely and simply create an electrical outlet, connected to, but remote from, a wall-mounted electrical socket, without damaging the wall adjacent to the socket. This electrical outlet can thus allow the user greater flexibility in how they organise the contents of a room and also makes reaching the electrical outlet much less demanding.

STATEMENT OF THE INVENTION

According to the present invention there is provided an electrical socket extender to provide an electrical socket remote from a surface/wall-mounted electrical socket, the socket extender comprising:

- a socket engaging portion connectable to the wall-mounted electrical socket and comprising:
    - a non-conductive housing having at least one electrically conductive prong for insertion into a female recess of the wall-mounted electrical socket to electrically couple thereto; and
    - two or more secure primary coupling formations formed about a periphery of the socket engaging portion such that, when the socket engaging portion is engaged with a wall-mounted electrical socket each primary coupling formation may releasably connect to a linkage to form an electrical connection therewith;
- an appliance socket section providing one or more electrical appliance socket and comprising:
    - a body having at least one electrically conductive recess formed therein, the recess allowing insertion of an electrically conductive prong of an electrical appliance plug; and
    - two or more secure secondary coupling formations formed about a periphery of the appliance socket section, each secondary coupling formation releasably connectable to the linkage and each secondary coupling formation having an electrical connection, interior to the body, to electrically-couple the linkage to the electrical appliance socket; and

BNSDOCID: <GB_____2571295A__I_>

- 3 -

- a linkage, which connects the appliance socket section to the socket engaging portion, comprising:

  - a substantially rigid, elongate and electrically insulated body having a first end releasably connectable to any of the primary coupling formations, a second end connectable to any of the secondary coupling formations; and

  - a conducting arrangement extending the length of the body, between the first end and the second end to electrically couple the socket engaging portion to the appliance socket section,

wherein the first end of the linkage is connected, or integrated, to the socket engaging portion and the second end of the linkage is connected, or integrated, to the appliance socket section such that the linkage extends from the socket engaging portion over the wall/surface and the appliance socket section is supported in its position remote from the wall-mounted electrical socket by the linkage.

The provision of two or more secure primary coupling formations formed about a periphery of the socket engaging portion, and two or more secure secondary coupling formations formed about a periphery of the appliance socket section, permit the electrical socket extender to be assembled in various configurations, for instance, dependent upon the needs of the user and/or the space limitations of the premises where the electrical socket extender is being used. Each configuration may allow the extender to reach from the wall-mounted electrical socket in a different direction adjacent the wall. The specific locations of the primary coupling formations about the periphery of the socket engaging portion may help to determine in which direction the linkage can extend from the socket engaging portion, when the linkage is connected to one of the primary couplings. The linkage may be integrated to one of the primary couplings.

Four primary coupling formations may be provided and disposed such that a connected or integrated linkage can extend generally upward towards the ceiling, downward towards the floor, or in either direction horizontally along the wall. An arrangement such as this should cover most of the orientations that an average user would require of such an electrical socket extender, in order to usefully relocate an electrical socket, adjacent a wall. A plurality of linkages and appliance socket sections may be provided with the electrical socket extender. More than one, or each, primary coupling formation of a single socket engaging portion may connect with a separate linkage. Each linkage may be connected, or integrated, to a separate appliance socket

BNSDOCID: <GB    2571295A__I_>

- 4 -

section, such that multiple appliance socket sections are provided remote from, but connected to, the single socket engaging portion and wall-mounted electrical socket. Where a plurality of linkages and appliance socket sections are provided, these may be connected or integrated in a modular fashion such that each appliance socket section may connect to and support one or more further linkages and appliance socket sections.

Primary coupling formations and/or secondary coupling formations which are not connected, or integrated, to the linkage may have covers to prevent tampering. This is especially useful as a safety mechanism, as it helps to avoid children tampering with the socket extender, and potentially receiving hazardous electric shocks. The covers of the primary and/or secondary coupling formations may comprise any suitable means, for instance bungs, inserts or shutters. The primary coupling formations may comprise isolating means to prevent a primary coupling formation from conducting electricity unless a linkage is connected or integrated therewith. The secondary coupling formations may comprise isolating means to prevent a secondary coupling formation from conducting electricity unless a linkage is connected or integrated therewith. The coupling formations may be covered in such a way that only by introduction of a linkage to the coupling formation is a cover thereof unlocked or moved to prevent accidental access.

The socket engaging portion may comprise disconnecting means to aid in disconnecting the socket engaging portion from the wall-mounted electrical socket. The disconnecting means may be stowed when not required, to prevent the disconnecting means from becoming a nuisance during assembly, disassembly or use of the electrical socket extender, and to enhance the aesthetic appeal of the electrical socket extender. The disconnecting means may comprise a handle. They may be stowed by a folding and/or sliding motion.

The socket engaging portion may further comprise one or more electrical appliance socket. This has the advantages of increasing the number of electrical appliance sockets and leaving one available at the original location of the socket. The socket engaging portion may comprise one or more features commonly found on wall-mounted electrical sockets, such as USB charging ports, electrical isolation means (which may comprise one or more ON/OFF switch) and indicator lights to indicate whether the socket engaging portion and/or any of the secure primary coupling formations are conducting electricity.

BNSDOCID: <GB_____2571295A__I_>

- 5 -

The appliance socket section may comprise one or more similar feature, such as USB charging porta, ON/OFF switch and indicator lights.

The electrical socket extender may comprise a timer to control the supply of electricity to any connected appliances. The timer may limit the supply of electricity to certain times of the day and/or may only may supply electricity for a specific length of time after the timer is activated, the specific length of time which may be pre-set by a user.

Preferably, the linkage is extendable. The advantage of an extendable linkage is to allow alteration of the effective range of the socket extender to suit requirements. The extension of the linkage may be achieved by including various suitable means.

Preferably, the linkage is also retractable so that it may lengthened and shortened.

Preferably, the linkage comprises a telescopic arrangement to permit adjustment thereof. A telescopic arrangement is a particularly compact means of providing linear contraction and/or extension of the linkage and may permit a wide range of positions. The telescopic arrangement may have at least 2 telescopic linkage sections. A telescopic arrangement can also allow the linkage to be light-weight yet strong when appropriately constructed, for instance by using an appropriate material and/or by modifying the linkage structure. The telescopic arrangement may comprise two or more telescopic linkage sections which slide relative to one another.

The telescopic sections may have a variety of shapes and may be variously configured to allow extension. The telescopic sections may be stacked upon one another and extend by the sliding of adjacent telescopic sections. The telescopic sections may be disposed concentrically of one another and extend by the sliding of internal sections relative to external sections. The telescopic sections may have a substantially constant cross-sectional shape along a portion, or the majority, of each telescopic section. The cross-section could be circular, square, rectangular or oval, though various other shapes are within the scope of the application.

One or more of the telescopic sections may include a stop, which can limit the extension of one telescopic section relative to a connected telescopic section or sections adjacent thereto. Stops may be particularly useful to prevent the telescopic arrangement from coming apart by over extension.

As an alternative to, or in combination with, a telescopic arrangement, the linkage may comprise a folding structure which permits extension of the linkage as

BNSDOCID: <GB    2571295A   I >

- 6 -

relatively movable parts of the folding structure unfold. The folding structure may comprise folding members which fold or pivot relative to one another in order to extend or retract.

Preferably, the telescopic arrangement comprises a releasable locking means to secure the telescopic arrangement at a desired position along a range of linear extended positions. A releasable locking means ensures that the linkage and appliance socket section may be supported stably in a desired extended position. There may be multiple releasable locking means, each acting between adjacent sections of the telescopic arrangement.

The releasable locking means may comprise any suitable mechanism, for instance, one or more clamp, a twist and lock means between adjacent telescopic sections, or a frictional fit between adjacent telescopic sections. A suitable mechanism for the releasable locking means may comprise a snap-lock configuration. A snap-lock configuration may be such that an interior telescopic section comprises a depressible locking formation which is spring-biased to project from the exterior surface of an interior telescopic section, the locking formation which may be depressible into the surface of the interior telescopic section until the projection is at least flush with the surface of the interior telescopic section.

An exterior telescopic section which slides telescopically relative to an interior section may have one or more opening formed along its surface. The opening or openings may be larger than the locking formation, so that the locking formation may spring up through an opening, when an opening slides into position directly above the locking formation (as the telescopic sections move relative to one another), thus securing the interior telescopic section to the exterior telescopic section. Where an exterior telescopic section comprises more than one opening, these may be equally spaced along the length of an exterior section, thus permitting the telescopic arrangement to be securable at a plurality of discrete, regular and secure locking positions.

The locking means may be selectively disengaged by a release mechanism to enable the linkage to be further extended or retracted. The release mechanism may be remote from the locking means. The release mechanism might allow simultaneous release and engagement of all locking means to enable rapid retraction, or further extension, of the linkage.

BNSDOCID: <GB_____2571295A__I_>

- 7 -

Preferably, the linkage comprises at least one joint either formed along the length of the linkage between sub-sections thereof and/or at either end of the linkage. Inclusion of at least one joint may allow the linkage to change direction/orientation. Such a hinge mechanism may comprise adjustable securing means to ensure that the linkage and/or appliance socket section are supported stably in a desired angled position. Such securing means may comprise any suitable pivot hinge fixing position mechanism. Potentially, it could hinge away from the wall and establish an appliance socket section lying away from the plane of the wall on which the built-in socket is formed, yet with the appliance socket section still supported in this remote position. The advantage of a joint formed along the length of the linkage between sub-sections thereof and/or at either end of the linkage is evident in that it affords greater flexibility in terms of how the appliance socket section is positionable. The at least one joint may permit sub-sections of the linkage to hinge in various planes, dependent upon the configuration of the at least one joint relative to the linkage. For example, a joint may allow a sub-section to hinge within the vertical plane created by the wall, or hinge within a second vertical plane lying perpendicular to the plane of the wall, or a horizontal plane perpendicular to both the plane of the wall and the second vertical plane, or any other suitable plane.

Where the linkage comprises more than one joint, then the subsections of the linkage may enable the socket extender to traverse changes in the wall or obstacles located on or adjacent the wall and thus ensure that the appliance socket section may ultimately lie against the wall, if necessary. For example, it may be the case that the wall-mounted electrical socket is located in a skirting board located at the base of the wall, the skirting board projecting a small distance from the wall. In this scenario, a user may wish to use the socket extender to form an electrical socket directly above the wall-mounted electrical socket but with the socket extender lying against the wall. The provision of at least two joints, configured appropriately, could thus permit the linkage to hinge about the top of the skirting board so that the appliance socket section lies against the wall, as required.

The linkage may comprise at least one joint stabiliser, selectively engageable to control articulation of the at least one joint. A joint stabiliser is advantageous in ensuring that sub-sections of the linkage may be secured in a desired hinged position relative to one another. This can be especially useful where the imposed moment upon a joint increases, for instance as the linkage is further extended and/or one or

BNSDOCID: <GB_____2571295A__I_>

- 8 -

more appliance plug are inserted into the appliance socket section. The joint stabiliser may be any effective mechanism, for instance a lock within the joint to lock the joint in a given position, a tight frictional fit between portions of the joint, or a bracing support positioned between sub-sections of a linkage adjacent a joint in order to reduce the load on the joint and instead distribute the weight of the electrical socket extender between sub-sections of the linkage.

Preferably, the linkage comprises at least one swivel formed along the length of the linkage or at either end of the linkage.  The swivel may allow the linkage or a sub-section thereof to swivel relative to the general axis of extension of the linkage. A swivel is useful since in permits more variation in how the electrical socket extender can be orientated, to match the demands of the user and/or environment in which the electrical socket extender is being used. The linkage may comprise at least one swivel lock to prevent movement of parts relative to the at least one swivel.

The appliance socket section may comprise a handle for movement of the appliance socket section relative to the socket engaging portion. The handle may be electrically insulated. The handle, when grasped and manipulated by a user, may allow the user to more easily guide the electrical socket extender into a desired position. Preferably, the handle is movable between a use position and a storage position. The handle may slide or hinge from the use position to the storage position. The appliance socket section may further comprise a recess into which the handle is storable.  The handle may be removably attached to the appliance socket section. Where the handle is removably attachable to the appliance socket section, the handle may be attachable to the appliance socket section at a plurality of separate locations, for instance to allow more convenient relocation of the appliance socket section and/or so as not to interfere generally with usage of the electrical socket extender.

Preferably, two or more linkages may be connected to one another.  This can extend the reach of the electrical socket extender and/or change the direction it extends.

Further preferably, the linkage and/or appliance socket section comprises connecting means to connect/fix the linkage and/or appliance socket section to the wall. Connecting means may be especially useful since, in certain circumstances, the total weight of the socket extender may be greater than can be easily supported by the connection of the socket engaging portion to the wall-mounted electrical socket. These circumstances could be where multiple linkages are connected in series, or a

network of linkages and appliance socket sections extend in a modular arrangement from the wall-mounted electrical socket, all of which can become relatively heavy. Another situation may arise where the electrical socket extender must support the weight of many appliance plugs (and perhaps also the cabling associated with each appliance plug) which are plugged into one or more appliance socket section of the electrical socket extender.

The connecting means may be non-damaging and thus may be configured to prevent superficial and/or invasive damage, to the wall. Such non-damaging connecting means may comprise any suitable arrangement, for instance one or more sucker or removable, marking or non-marking adhesives and/or securing mechanisms including but not limited to Velcro® pads/strips or magnetic means. As an alternative the connecting means may comprise any suitable arrangement, for instance threaded screws, nails, or non-removable adhesives.

The linkage and/or appliance socket section may comprise means for securing loose cables of electrical appliance plugs. Provision of such means may reduce tripping or catching hazards that could otherwise result from hanging or trailing cables, and the means for securing loose wires may also enhance the aesthetics of the electrical socket extender when in use. The means for securing loose cables of electrical appliance plugs may comprise any suitable arrangement, for instance a hook over which the cables may be draped or looped.

Preferably, the socket engaging portion is interchangeable with differently configured socket engaging portions to accommodate wall-mounted electrical sockets of different configurations and the appliance socket section may be independently interchangeable to accommodate electrical appliance plugs of differing number or configuration. Interchangeable socket engaging portions may be particularly useful, for instance, where the configuration of the electrical socket differs, such as internationally, and so the socket engaging portion may be interchanged for a socket engaging portion which matches the differing configuration. By providing interchangeable socket engaging portions, a user may bring their appliances with them overseas to be used with the electrical socket extender. Similarly, an independently interchangeable appliance socket section, as mentioned above, may be useful in international territories where a user seeks to use foreign appliance plugs with the electrical socket extender.

BNSDOCID: <GB_____2571295A__I_>

- 10 -

A part of the socket engaging portion, including the at least one electrically conductive prong, may be interchangeable to accommodate wall-mounted electrical sockets of different configurations. A part of the appliance socket section, including the at least one electrically conductive recess, may be interchangeable to accommodate electrical appliance plugs of differing number or configuration. This interchangeability confers the same and further advantages as those associated with the interchangeability of the appliance socket section and/or socket engaging portion, as mentioned above.

An electrical socket extender as that described above may be provided in kit form, the kit including a plurality of interchangeable socket engaging portions to connect to wall-mounted electrical sockets of differing configuration and/or may comprise a plurality of independently interchangeable appliance socket sections to accommodate electrical appliance plugs of differing number or configuration. The kit may alternatively comprise a socket engaging portion with a plurality of interchangeable parts to accommodate wall-mounted electrical sockets of different configurations and/or the appliance socket section with a plurality of interchangeable parts to accept electrical appliance plugs of differing configuration. Kits such as those outlined above may be especially useful to a user who travels frequently to various countries, and who may want to pack only the elements of the kit required for that particular country or countries.

An electrical socket extender as that described above may be provided in an assembled form wherein the socket engaging portion, the appliance socket section, and the linkage may be integrated in an single unit.

BRIEF DESCRIPTION OF THE DRAWINGS

In order that it be better understood, but by way of example only, the present invention will now be described with reference to the accompanying drawings in which:

**Figure 1** is a perspective view of a first embodiment of an electrical socket extender connected to a wall-mounted electrical socket;

**Figure 2** is a perspective view of a second embodiment of an electrical socket extender connected to a wall-mounted electrical socket mounted near the top of a wall;

**Figure 3** is a perspective view of the electrical socket extender of Fig. 2, here connected to a wall and extending horizontally along the wall;

BNSDOCID: <GB_____2571295A__I_>

- 11 -

**Figure 4** is a perspective view of a third embodiment of an electrical socket extender extending around an interior corner of a room;

**Figure 5** is a perspective view of a fourth embodiment of an electrical socket extender extending horizontally around a corner and then vertically;

**Figure 6** is a perspective view of a fifth embodiment of electrical socket extender extending vertically upwards in front of an upper cupboard;

**Figure 7** is a perspective view of parts of an electrical socket extender;

**Figure 8** is a perspective view of a part of an electrical socket extender, wherein the socket engaging portion has interchangeable parts to accommodate wall-mounted electrical sockets of different configurations;

**Figure 9a** is a perspective view of a part of an electrical socket extender; and

**Figure 9b** is a similar perspective view wherein the socket engaging portion includes a timer.

In the drawings, like parts are denoted by like reference numerals.

DETAILED DESCRIPTION OF THE DRAWINGS

Figure 1 shows a perspective view of an electrical socket extender, generally indicated 10, in accordance with the present invention. The electrical socket extender 10 has a socket engaging portion 11 which is connects to a wall-mounted electrical socket 12 mounted in this view upon a skirting board 14, located at the base of a wall/surface 16. The socket extender 10 is shown extending vertically up the wall 16. The socket engaging portion 11 comprises a non-conductive housing having at least one electrically conductive prong (not shown) that inserts into a female recess 18 of the wall-mounted electrical socket 12 to electrically couple thereto. The socket engaging portion 11 further comprises four secure primary coupling formations 20 (not all of which are visible) formed about a periphery of the socket engaging portion 11 such that, when the socket engaging portion 11 is engaged with a wall-mounted electrical socket 12 each primary coupling formation 20 may releasably connect to a linkage, generally indicated 22, to form an electrical connection therewith. The electrical socket extender 10 further comprises an appliance socket section 24 providing two electrical appliance sockets 26. The appliance socket section 24 comprises a body having at least one electrically conductive recess 27 formed therein, the recess 27 allowing insertion of an electrically conductive prong of an electrical appliance plug.

BNSDOCID: <GB_____2571295A__I_>

- 12 -

The appliance socket section 24 further comprises four secure secondary coupling formations 28 formed about a periphery of the appliance socket section 24, though only two are visible, each secondary coupling formation 28 releasably connectable to the linkage 22 and each secondary coupling formation 28 having an electrical connection, interior of the body (and therefore not shown), to electrically-couple the linkage 22 to the two electrical appliance sockets 26.

The electrical socket extender 10 further comprises the linkage 22, which connects the appliance socket section 24 to the socket engaging portion 11. The linkage 22 comprises, in this embodiment, a substantially rigid, elongate and electrically insulated body having a first end 30 releasably connectable to any of the primary coupling formations 20, and a second end 32 connectable to any of the secondary coupling formations 28. The linkage 22 also comprises a conducting arrangement extending the length of the body (internal to the linkage 22 and thus not shown), between the first end 30 and the second end 32 to electrically couple the socket engaging portion 11 to the appliance socket section 24.

In use, when the first end of the linkage 30 is connected, or integrated, to the socket engaging portion 11 and the second end of the linkage 32 is connected, or integrated, to the appliance socket section 24 the linkage 22 extends from the socket engaging portion 11 over the wall 16 and the appliance socket section 24 is supported in its position remote from the wall-mounted electrical socket 12 by the linkage 22. In this embodiment, the linkage 22 linkage is linearly extendable and comprises a telescopic arrangement, generally indicated 34, to permit extension thereof. The telescopic arrangement 34 further comprises releasable locking means, generally indicated 36, to secure the relatively moveable parts of the telescopic arrangement 34 at various positions along a range of linear extended positions. The telescopic arrangement 34 also comprises three joints 37 formed along the length of the linkage 22 between sub-sections thereof. In this embodiment, the three joints 37, are formed as hinges 37, and these hinges 37 permit the sub-sections of the linkage 22 to hinge relative to each other. This allows it to be adjusted around the skirting board 14 so that the appliance socket section 24 is disposed in a recessed position (relative to the skirting board 14) and lying against the wall 16. In this way, the socket extender 10 forms an electrical socket generally above the wall-mounted electrical socket 12 but with the socket extender 10 lying against the wall 16 to save space.

The appliance socket section 24 further comprises a handle 38 for assisting movement of the appliance socket section 24 relative to the socket engaging portion 11. The handle 38 is movable between a use position (as shown) and a storage position. The handle 38 comprises a plurality of telescopic members 40 attached to the appliance socket section 24 and the telescopic members 40 of the handle 38 may be extended to the use position and collapsed to move to the storage position. Similarly, the socket engaging portion 11 comprises disconnecting means 42 to aid in disengaging the socket engaging portion 11 from the wall-mounted electrical socket 12 and in this embodiment the disconnecting means 42 takes the form of a foldable handle 42. The socket engaging portion 11 further comprises an electrical appliance socket 44.

The appliance socket section 24 further comprises features commonly found on wall-mounted electrical sockets, and this embodiment also includes two USB charging ports 46, ON/OFF switches 48 and operational indicator lights 50.

The releasable locking means 36 of the linkage 22 further comprises a snap-lock configuration, generally indicated 51, which is configured such that an interior telescopic section 52 comprises a depressible locking formation (hidden in Figure 1 but visible in Figures 7-9b as 106) which is spring-biased to project from the exterior surface of the interior telescopic section 52. An exterior telescopic section 54 which telescopes around the interior section 52 has several openings 56 formed along its surface, the openings 56 being large enough to accommodate the locking formation. The locking formation springs up under action of the spring, through an opening 56, when an opening 56 slides into position directly above the locking formation, thus securing the telescopic sections. The sections of the linkage 22 are generally hollow and square in cross-section.

Primary coupling formations 20, and secondary coupling formations 28, which are not connected, or integrated, to the linkage 22 are covered by moveable shutters 58 in order to prevent tampering.

Figure 2 shows a perspective view of a second embodiment of an electrical socket extender 200 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted near the top of a wall 16, close to the ceiling, the socket extender 200 extending vertically down the wall. Grasping of the handle 38 may help a user to extend the linkage of the electrical socket extender 200, to position the appliance socket section 24 in a convenient location for use.

BNSDOCID: <GB_____2571295A__I_>

- 14 -

Figure 3 shows a perspective view of the electrical socket extender 200 of Figure 2, here connected to a wall-mounted electrical socket 12 mounted near the floor, above a skirting board 14, the socket extender 200 extending horizontally along the wall 16, with the appliance socket section 24 supported in its position remote from the wall-mounted electrical socket 12 by the linkage 22.

Figure 4 shows a perspective view of a third embodiment of an electrical socket extender 300 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted near the floor, above a skirting board 14, the socket extender 300 extending horizontally along the wall 16 and around an interior corner of a room. This arrangement is made possible by the presence of a pivoting joint 70 formed between sub-sections of the linkage 22. This embodiment could just as usefully be used to traverse around an exterior corner between two walls.

Figure 5 shows a perspective view of a fourth embodiment of an electrical socket extender 400 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted near the floor, above a skirting board 14, the socket extender 400 extending first horizontally along the wall 16, then around an interior corner of a room by way of a first joint 70 and then vertically up a second wall. This embodiment is similar to that of Figure 4, except that a second joint 80, with an axis of rotation rotated 90 degrees relative to the joint 70, is formed along the length of the linkage 22 which allows the electrical socket extender 400 to extend further up the second wall, above the height of the wall-mounted electrical socket 12.

Figure 6 shows a perspective view of a fifth embodiment of an electrical socket extender 500 in accordance with the present invention, here connected to a wall-mounted electrical socket 12 mounted around the midpoint of a wall between two wall-mounted cupboards. The socket extender 500 first extends vertically up the wall, then out from the wall underneath the upper cupboard 90, then vertically upwards in front of the upper cupboard 90. This arrangement could be useful if the workspace above the lower cupboard 92 must be kept free from appliance plugs and their wiring. It will be appreciated that other suitable arrangements are also possible.

Figure 7 shows a perspective detail view, of a part of an electrical socket extender in accordance with the present invention, wherein the socket engaging portion, generally indicated 11a and 11b, is interchangeable to accommodate wall-mounted electrical sockets of different configurations, and two possible distinct interchangeable versions are illustrated; a three-pronged version 11a and a two-

BNSDOCID: <GB_____2571295A__I_>

pronged version 11b. The cooperating shapes of the cuboidal locking formation 106 and square openings 56 formed on the surface of the exterior telescopic section 54 are also easily identifiable. Depressing the locking formation 106 permits the exterior telescopic section 54 to slide relative to the interior telescopic section 52, until an opening 56 is directly above the locking formation 106, whereupon the locking formation pops up through an opening 56, under action of a spring, and secures the exterior telescopic section 54 relative to the interior telescopic section 56.

Figure 8 shows a perspective detail view of a part of an electrical socket extender, in accordance with the present invention, wherein a region of the socket engaging portion 11, is interchangeable to accommodate wall-mounted electrical sockets of different configurations. Two possible distinct interchangeable parts with the electrically conductive prongs are illustrated; a two-pronged version 112 and a three-pronged version 114. Either of these may be slid into a recess 110 on the socket engaging portion 11 to engage and electrically couple thereto.

Figure 9a shows a perspective detail view of a part of an electrical socket extender, in accordance with the present invention, wherein the socket engaging portion 11 comprises an electrical appliance socket 120 into which an appliance plug may be introduced.

Figure 9b shows a similar perspective detail view of a part of an electrical socket extender, in accordance with the present invention, with a different embodiment of socket engaging portion 126 which comprises a timer 130 to control the supply of electricity from the wall-mounted electrical socket (not shown) to any appliances connected to the electrical socket extender (not shown in this view).

BNSDOCID: <GB_____2571295A__I_>

- 16 -

CLAIMS

1.  An electrical socket extender to provide an electrical socket remote from a wall-mounted electrical socket, the socket extender comprising:

    - a socket engaging portion connectable to the wall-mounted electrical socket and comprising:

        - a non-conductive housing having at least one electrically conductive prong for insertion into a female recess of the wall-mounted electrical socket to electrically couple thereto; and

        - two or more secure primary coupling formations formed about a periphery of the socket engaging portion such that, when the socket engaging portion is engaged with a wall-mounted electrical socket each primary coupling formation may releasably connect to a linkage to form an electrical connection therewith;

    - an appliance socket section providing one or more electrical appliance socket and comprising:

        - a body having at least one electrically conductive recess formed therein, the recess allowing insertion of an electrically conductive prong of an electrical appliance plug; and

        - two or more secure secondary coupling formations formed about a periphery of the appliance socket section, each secondary coupling formation releasably connectable to the linkage and each secondary coupling formation having an electrical connection, interior to the body, to electrically-couple the linkage to the electrical appliance socket; and,

    - a linkage, which connects the appliance socket section to the socket engaging portion, comprising:

        - a substantially rigid, elongate and electrically insulated body having a first end releasably connectable to any of the primary coupling formations, a second end connectable to any of the secondary coupling formations; and

BNSDOCID: <GB_____2571295A__I_>

- 17 -

     – a conducting arrangement extending the length of the body, between the first end and the second end to electrically couple the socket engaging portion to the appliance socket section,

wherein the first end of the linkage is connected, or integrated, to the socket engaging portion and the second end of the linkage is connected, or integrated, to the appliance socket section such that the linkage extends from the socket engaging portion over the wall and the appliance socket section is supported in its position remote from the wall-mounted electrical socket by the linkage.

2.   An electrical socket extender as claimed in claim 1, wherein the linkage is extendable.

3.   An electrical socket extender as claimed in claim 2, wherein the linkage comprises a telescopic arrangement to permit extension thereof.

4.   An electrical socket extender as claimed in claim 3, wherein the telescopic arrangement comprises a releasable locking means to secure the telescopic arrangement at various positions along a range of linear extended positions.

5.   An electrical socket extender as claimed in any preceding claim, wherein the linkage includes at least one joint either formed along the length of the linkage between sub-sections thereof or at either end of the linkage.

6.   An electrical socket extender as claimed in claim 5, wherein the linkage comprises at least one joint stabiliser, selectively engageable to prevent articulation of the at least one joint.

7.   An electrical socket extender as claimed in any preceding claim, wherein the linkage comprises at least one swivel formed along the length of the linkage or at either end of the linkage.

BNSDOCID: <GB_____2571295A__I_>

- 18 -

8. An electrical socket extender as claimed in claim 7, wherein the linkage comprises at least one swivel lock to prevent movement of parts relative to the at least one swivel.

9. An electrical socket extender as claimed in any of the preceding claims, wherein the appliance socket section and/or the socket engaging portion have a handle.

10. An electrical socket extender as claimed in claim 9, wherein the or each handle is movable between a use position and a storage position.

11. An electrical socket extender as claimed in any of claim 4 to claim 10, wherein the locking means may be selectively disengaged by a release mechanism to enable the linkage to be further extended or retracted.

12. An electrical socket extender as claimed in any preceding claim, wherein the linkage comprises means to enable two or more of such linkages to be connected, or integrated, to one another between the socket engaging portion and the appliance socket section, to extend the reach of the electrical socket extender and/or change direction.

13. An electrical socket extender as claimed in any preceding claim, wherein the linkage and/or appliance socket section comprises connecting means to connect the linkage and/or appliance socket section to the wall.

14. An electrical socket extender as claimed in any preceding claim, wherein the socket engaging portion is interchangeable with differently configured socket engaging portions to accommodate wall-mounted electrical sockets of different configurations and the appliance socket section is independently interchangeable to accommodate electrical appliance plugs of differing number or configuration.

BNSDOCID: <GB_____2571295A__I_>

Intellectual
Property
Office

| | |
|---|---|
| **Application No:** GB1802910.8 | **Examiner:** Paul Nicholls |
| **Claims searched:** 1 - 14 | **Date of search:** 17 August 2018 |

## Patents Act 1977: Search Report under Section 17

**Documents considered to be relevant:**

| Category | Relevant to claims | Identity of document and passage or figure of particular relevance |
|---|---|---|
| X | 1-5, 7, 11-13 | US 4553798 A<br>(MURPHY) - See figure 3, figure 13b in which plug 6 has two couplings, figure 13d in which socket 16 has two couplings, and figure 6 showing a telescopic linkage |

Categories:

| | | | |
|---|---|---|---|
| X | Document indicating lack of novelty or inventive step | A | Document indicating technological background and/or state of the art. |
| Y | Document indicating lack of inventive step if combined with one or more other documents of same category. | P | Document published on or after the declared priority date but before the filing date of this invention. |
| & | Member of the same patent family | E | Patent document published on or after, but with priority date earlier than, the filing date of this application. |

## Field of Search:

Search of GB, EP, WO & US patent documents classified in the following areas of the UKC[X] :

| H2E |
|---|

Worldwide search of patent documents classified in the following areas of the IPC

| H01R |
|---|

The following online and other databases have been used in the preparation of this search report

| WPI, EPODOC |
|---|

## International Classification:

| Subclass | Subgroup | Valid From |
|---|---|---|
| H01R | 0031/06 | 01/01/2006 |
| H01R | 0025/00 | 01/01/2006 |
| H01R | 0035/04 | 01/01/2006 |

US 20170346244A1

(19) **United States**
(12) **Patent Application Publication**    (10) Pub. No.: **US 2017/0346244 A1**
     Comis                                  (43) **Pub. Date:**    **Nov. 30, 2017**

(54) **RECEPTACLE RELOCATOR**

(71) Applicant: **Shane Comis**, Mission (CA)

(72) Inventor: **Shane Comis**, Mission (CA)

(21) Appl. No.: **15/168,308**

(22) Filed: **May 31, 2016**

**Publication Classification**

(51) **Int. Cl.**
     *H01R 25/00*     (2006.01)
     *H01R 13/73*     (2006.01)
     *H01R 13/72*     (2006.01)

(52) **U.S. Cl.**
     CPC .......... *H01R 25/006* (2013.01); *H01R 13/72* (2013.01); *H01R 13/73* (2013.01)

(57)     **ABSTRACT**

The current invention is an electrical relocator. It is designed to make an inaccessible outlet useable. The device plugs into the wired outlet at one end, a new receptacle can be provided in a more convenient location through the use of an extendable bar. A blank cover that has prongs on the backside that fit into the hot, neutral, and grounded openings of the wired socket, which is blocked. Wires running through the hollow bar will carry the power from the blocked outlet to a new outlet attached to the other end of the arm. This new outlet can be secured to the wall in a more convenient location using removable tape or screws.



BNSDOCID: <US____20170346244A1_I_>

Case 2:26-cv-00414-CB    Document 60-2    Filed 06/16/26    Page 657 of 854



Fig. 1

BNSDOCID: <US____20170346244A1_I_>



Back-Side View

Fig. 2

BNSDOCID: <US____20170346244A1_I_>

Patent Application Publication    Nov. 30, 2017  Sheet 3 of 7    US 2017/0346244 A1



Fig. 3

BNSDOCID: <US___20170346244A1_I_>



Fig. 4

BNSDOCID: <US____20170346244A1_I_>

Case 2:26-cv-00414-CB   Document 60-2   Filed 06/16/26   Page 661 of 854



Fig. 5

BNSDOCID: <US    20170346244A1_I_>



Fig. 6

BNSDOCID: <US____20170346244A1_I_>

Patent Application Publication    Nov. 30, 2017 Sheet 7 of 7    US 2017/0346244 A1



Fig. 7

BNSDOCID: <US____20170346244A1_I_>

US 2017/0346244 A1

Nov. 30, 2017

1

## RECEPTACLE RELOCATOR

### METHOD OF USE FIELD OF THE INVENTION

[0001] This invention relates to a device that can be used to 'relocate' an electric outlet that is blocked by a heavy piece of furniture, rendering it unusable. The device will be used to provide a more useable outlet, which is wired to the one hidden by the piece of furniture. When a nearby outlet is needed, this will make a previously unusable outlet, accessible so it can be used conveniently.

### BACKGROUND OF THE INVENTION

[0002] Too often, the closest electrical outlet may be blocked by a piece of heavy furniture. In a living room, where several entertainment devices need access to power, and in offices, cluttered with computers and various accessories, there never seem to be enough outlets. It is very inconvenient when the closest outlet is hidden or covered by a bookcase or couch, making it difficult to reach when it is needed.

[0003] There exists a need for a new product to make blocked outlets accessible and easy to use. There is still room for improvement in the art.

### SUMMARY OF THE INVENTION

[0004] The present invention relates to an electric receptacle relocator. The unique features and objectives of this invention is to provide the following benefits for consumer: provides for a way to make a previously inaccessible outlet easier to use, eliminates having to have unsightly extension cords lying on the floor near an outlet which is blocked by furniture, and makes it possible to move an outlet up from the floor, so it will be easier to reach when wanting to plug and unplug electric devices.

[0005] The current invention, the electric receptacle relocator, is comprised of a case, a hollow for wire to pass through, a power outlet, and an extension. It is designed to make an inaccessible outlet useable. The device plugs into the wired outlet at one end, a new receptacle can be provided in a more convenient location through the use of an extendable bar. A blank cover that has prongs on the backside that fit into the hot, neutral, and grounded openings of the wired socket, which is blocked. Wires running through the hollow bar will carry the power from the blocked outlet to a new outlet attached to the other end of the arm. This new outlet can be secured to the wall in a more convenient location using removable tape or screws.

### BRIEF DESCRIPTION OF THE DRAWINGS

[0006] Without restricting the full scope of this invention, the preferred form of this invention is illustrated in the following drawings:

[0007] FIG. 1 is a top left solid view of the electric receptacle relocator;

[0008] FIG. 2 is a top back left solid view of the electric receptacle relocator;

[0009] FIG. 3 is a front view with the extension in use;

[0010] FIG. 4 is a top right sectional view of the electric receptacle relocator;

[0011] FIG. 5 shows a crosscut side view of the case; and

[0012] FIG. 6 shows a schematic of the wiring.

### DETAILED DESCRIPTION

[0013] There are a number of significant design features and improvements incorporated within the invention.

[0014] All illustrations of the drawings are for the purpose of describing selected versions of the present invention and are not intended to limit the scope of the present invention.

[0015] In the present invention, an electric receptacle relocator 1, it is comprised of a case 10, a hollow 20 for wires 30 to pass through, a power outlet 40, and an extension 50. It is designed to make an inaccessible outlet useable. Using this device, which plugs into the wired outlet at one end, a new receptacle can be provided in a more convenient location. An extendable bar is attached to a blank cover that has prongs on the backside that fit into the hot, neutral, and grounded openings of the wired socket, which is blocked. Wires 30 running through the hollow bar 20 will carry the power from the blocked outlet to a new outlet 40 attached to the other end of the arm. This new outlet can be secured to the wall in a more convenient location using removable tape or with screws. The hollow 20 can also be rotated so the new outlet 40 can be attached in any position that is more convenient such as left, right, above or below. The case 10 in the preferred embodiment, which covers the wired outlet, is about ½" thick so the piece of furniture will still fit against the wall. The new outlet 40 will be about ¾" thick.

[0016] Between the case 10 and the new outlet 40 is the bar 25. The bar 25 is comprised of two components, the extension 50 and the hollow 20. The bar 25 is about ⅜" thick, with rounded corners, making it easier to adjust its length. It is designed with an extra bend to add strength to the bar 25 so it will not bend when fully extended. Future versions will include a USB port for charging various devices and possibly surge protection.

[0017] In reference to FIG. 1-FIG. 4, the electric receptacle relocator 1 is an elongated rectangular shaped object that is comprised of a power outlet positioned on both ends. Moreover, the electrical relocate is comprised of a hollow 20 for the wires 30 to pass through which is embedded inside as shown in FIG. 5. The hollow 20 is hollow enough to allow space for wire connector to connect to both ends of the electric receptacle relocator 1 and transport electrical power. The electric receptacle relocator 1 has an extension 50. The extension 50 is an elongated rectangular shaped object and it serves as an extended to extend the electric receptacle relocator 1 and slides inside of the hollow 20. On one end of the electric receptacle relocator 1 is the power outlet 40. It is a rectangular object with curved corners and it is comprised of a female input 45 for power supply outage.

[0018] The case 10 is comprised of a subcomponent which is the male outlet plug 15 as shown in FIGS. 2 and 6. It is positioned in the back of the case 10. The male outlet plug 15 is three rounded receptors to connect to a female outlet. On the other end of the electric receptacle relocator is the case. The case 10 is a rectangular shape object with curved corners that is used to cover the power outlet.

[0019] The wires 30, as shown in FIG. 6, connect the corresponding male outlet plugs 15 of the case 10 to the corresponding female outlet plugs 45 of the power outlet 40. The wires 30 will be able to handle the proper voltage and amps and will be long enough for when the bar 25 is fully extended but flexible enough for when the bar 25 is fully collapsed.

[0020] Although the invention has been explained in relation to its preferred embodiment, it is to be understood that

BNSDOCID: <US____20170346244A1_I_>

US 2017/0346244 A1

Nov. 30, 2017

2

many other possible modifications and variations can be made without departing from the spirit and scope of the invention.

[0021] Although the present invention has been described with reference to preferred embodiments, workers skilled in the art will recognize that changes may be made in form and detail without departing from the spirit and scope of the invention.

1. A device comprising:

a case with a front, a back, a top, bottom and right side and left sides with male outlet plugs in the back connected to a bar where the bar is connect to a power outlet with female outlet plugs with wires that run from the male outlet plugs to the corresponding female outlet plugs where said case, is ½" thick or thinner, having the bar consist of an extension within a hollow where the hollow can also be rotated attaching to either of the left sides, right side, top or bottom and having the extension move within the hollow to change the length of the bar.

2. (canceled)

3. (canceled)

4. The device of claim 1 further comprising having the bar attached to a blank cover that has prongs on the backside.

5. The device of claim 1 further comprising having said wires run through the hollow bar will carry the power from a blocked outlet to a new outlet.

6. The device of claim 1 further comprising having the case secured a wall.

7. (canceled)

8. (canceled)

9. (canceled)

10. The device of claim 1 further comprising where said power outlet has a USB port.

11. The device of claim 1 further comprising where said hollow is elongated rectangular shaped.

12. (canceled)

13. The device of claim 1 further comprising said wires and will be long enough for when the bar is fully extended.

14. The device of claim 1 further comprising said wires are flexible.

15-20. (canceled)

\* \* \* \* \*

BNSDOCID: <US___20170346244A1_I_>

# United States Patent [19]

## Murphy

[11] **Patent Number:** **4,553,798**

[45] **Date of Patent:** **Nov. 19, 1985**

[54] **ELECTRICAL OUTLET**

[76] Inventor: Peter Murphy, 5027 Erin Way, Delta, British Columbia, Canada, V4M 1K2

[21] Appl. No.: **596,610**

[22] Filed: **Apr. 4, 1984**

[51] Int. Cl.$^4$ ........................................... H01R 41/00
[52] U.S. Cl. ...................................................... 339/9 R
[58] Field of Search ..................... 339/28, 23, 24, 9 R, 339/9 RY, 159 C

[56] **References Cited**

### U.S. PATENT DOCUMENTS

2,706,225  4/1955  Freeman ..................... 339/159 C X
4,148,544  4/1979  Markowitz ..................... 339/9 R X

*Primary Examiner*—Eugene F. Desmond
*Attorney, Agent, or Firm*—Christie, Parker & Hale

[57]     **ABSTRACT**

Apparatus to provide a remote outlet from a master electrical outlet is provided with electrical conducting recesses connected to an electrical power source. The apparatus has a plug member and conductor prongs on the plug member to engage the recesses in the master outlet. A conductor attachment is formed on the plug member, in electrical contact with the conductor prongs. There is a limb adapted to be attached to the plug member. Conductors are present in the limb, each conductor in the electrical contact with one conductor prong of the plug member. A conductor attachment in the limb releasably engages the conductor attachment at the master outlet and is in electrical contact with the conductors in the limb. There is a remote outlet with conductor recesses. There is a further conductor attachment at the distal end of the limb, in electrical contact with the conductors in the limb. Each recess is in electrical contact with a conductor in the limb. Conductor attachments are provided in the remote outlet corresponding to the further conductor attachments at the distal end of the limb and in electrical contact with the recesses in the remote outlet. The limb may be disconnected from the plug member and the remote outlet. The secondary outlet is provided remote from but duplicating the master outlet and is in electrical contact with the master outlet.

**5 Claims, 19 Drawing Figures**



BNSDOCID: <US____4553798A1_I_>



BNSDOCID: <US_____4553798A1_I_>



BNSDOCID: <US_____4553798A1_I_>



Fig.10.

Fig.11.

Fig.12.

Fig.13a.

Fig.13b.

Fig.13c.

Fig.13d.

Fig.13e.

Fig.13f.

BNSDOCID: <US_____4553798A1_I_>

4,553,798

**1**

## ELECTRICAL OUTLET

### FIELD OF THE INVENTION

This invention relates to an apparatus to provide a remote outlet or slave outlet for an electrical outlet mounted on a wall or other part of a building.

### DESCRIPTION OF THE PRIOR ART

Electrical outlets in buildings are, of course, well-known. Any modern building is provided with outlets fixed into the wall at the time of building and provided with a source of electrical power. Outlets may, of course, be added subsequently but only at some inconvenience. For example channeling may be cut in the walls and generally the structure of the existing building is changed.

The location of electrical outlets can be inconvenient if it is desired to position furniture, which can easily block off an outlet. If furniture is placed close to a wall then the outlet becomes useless. If an item is to be left permanently plugged then the same disadvantages do not result although, of course, the furniture must be moved a certain distance from the wall to allow the plug to engage the outlet. However where it is desired to disconnect a piece of electrical equipment frequently then the positioning of furniture by an outlet can be an inconvenience.

There have been a number of proposals to provide extension devices that can be attached to a standard wall outlet when the outlet is to be blocked in the above way. For example Quartarone in U.S. Pat. No. 4,146,281 discloses an articulated electrical extension device that can be attached to a standard wall outlet. However a conventional lead and plug is used. Bonhomme in U.S. Pat. No. 566,332 discloses a reel type wall extension socket. Abramson in U.S. Pat. No. 1,983,725 shows a cord type wall and baseboard mounted electrical extension device. Winders in U.S. Pat. No. 3,187,290 shows a floor mounted outlet extension device. Rooney in U.S. Pat. No. 3,221,287 discloses an outlet extension device with support means. Wayne in U.S. Pat. No. 2,441,461 shows a connection device that has a continuous outlet track so that an unordinary electrical plug can be inserted anywhere along its length and slid along the track. O'Brien in U.S. Pat. No. 2,495,280 shows a conductor strip that is yieldable and ribbon like. Cabral in U.S. Pat. No. 2,831,049 shows a conductor formed on adhesive backing. Severino in U.S. Pat. No. 3,029,303 shows an adhesively secured electrical device, reminiscent of the Cabral teaching Naughton in U.S. Pat. No. 2,611,800 shows the use of a conductor embedded in insulation designed to be used in the construction of a building and positioned flush in the plaster used to face the wall and Howk in U.S. Pat. No. 1,812,956 shows baseboard electrical devices.

All the devices shown in the prior art have found little commercial application. It is believed that in many circumstances the devices are excessively complicated or bulky whereas, of course, the conventional electrical outlet on a wall is commendably unobtrusive.

### SUMMARY OF THE INVENTION

The present invention seeks to provide an apparatus that is able to provide a remote outlet for an electrical outlet that may be blocked off. Accordingly, in its broadest aspect, the present invention is an apparatus to provide a remote outlet from a master electrical outlet

**2**

provided with electrical conducting recesses and connected to an electrical power source, the apparatus comprising a plug member; conductor prongs on the plug member to engage the recesses in the master outlet; conductor attachment means formed on the plug member, in electrical contact with the conductor prongs; a limb attached to and extending from the plug member; conductors in the limb, each conductor in electrical contact with one conductor prong of the plug member; conductor attachment means in the limb to releasably engage the conductor attachment means at the master outlet and in electrical contact with the conductors in the limb; a remote outlet attached to the limb, spaced from the plug member; further conductor attachment means at the distal end of the limb, in electrical contact with the conductors in the limb; conductor recesses in the remote outlet, each recess in electrical contact with a conductor in the limb; conductor attachment means in the remote outlet corresponding to the further conductor attachment means at said distal end of the limb and in electrical contact with the recesses in the remote outlet, whereby the limb may be disconnected from the plug member and the remote outlet; whereby a secondary outlet is provided remote from but duplicating the master outlet and in electrical contact with the master outlet.

### BRIEF DESCRIPTION OF THE DRAWINGS

Aspects of the invention are illustrated, merely by way of example, in the accompanying drawings in which:

FIG. 1 is an isometric view of an apparatus according to the invention;

FIG. 2 is a plan view of the apparatus of FIG. 1, installed;

FIG. 3 is an exploded view of a further embodiment of the present invention;

FIG. 4 is a detail variation of the embodiment of FIG. 3;

FIG. 5 illustrates conductors within apparatus of the invention;

FIG. 6 is an isometric view showing a further feature of the invention;

FIG. 7 is a section on the line 7—7 in FIG. 6;

FIG. 7a shows an alternative arrangement to that of FIG. 7;

FIG. 8 is a section on the line 8—8 in FIG. 7;

FIG. 9 is a section on the line 9—9 in FIG 7;

FIGS. 10 to 12 show various arrangements according to the invention; and

FIGS. 13a to 13f show, somewhat diagrammatically various configurations possible with the apparatus of the present invention.

### DESCRIPTION OF THE PREFERRED EMBODIMENTS

The drawings show an apparatus to provide a remote outlet, remote that is from a master electrical outlet 2 provided with electrical conducting recesses (not shown) and connected to an electrical power source through wires 4. The electrical outlet 2 is, of course, completely conventional.

The apparatus of the invention comprises a plug member 6 having conductor prongs 8 to engage the recesses in the master outlet 2. A limb 10 is attached to the plug member 6. In the embodiment illustrated in FIGS. 1 and 2 the limb 10 is provided with a bend 12 so

BNSDOCID: <US____4553798A1_I_>

**4,553,798**

**3**

that the main body of the limb 10 may lie against a wall 14, the arrangement being shown most clearly in FIG. 2; which also shows an obstacle 15.

There are conductors in the limb 10, one conductor in electrical contact with each conductor prong 8 in the plug member 2. There is a remote outlet 16 attached to the end of the limb 10 remote from plug member 6 and conductor recesses 18, corresponding to the recesses in the wall outlet 2 are provided in the remote outlet 16. Again each recess 18 in the remote outlet 16 is in electrical contact with a conductor in the limb 10. By this means a secondary or slave outlet is provided, in electrical contact with, but remote from and duplicating the master outlet 2. Outlets to receive double prong plugs are shown but, of course, circuits including a ground lead can equally easily be provided.

The length of the limb 10 can either be fixed, as in the embodiment of FIGS. 1 and 2, or a modular approach can be adopted as exemplified in FIG. 3. In the embodiment shown there the plug 6 is formed with conductor attachment means in the form of second prongs 2D in electrical contact with the first prongs 8. There are conductor attachment means in the form of corresponding sockets 22 in the limb 10 to releasably engage the prongs 20. At the other end of the limb there are further recesses 22 to receive secondary prongs 20 on the remote outlet 16. The embodiment of FIG. 3 is thus useful for either convenience of storage or for the fact that limbs 10 of varying length can be used to vary the distance between the plug member 6, (and thus the wall outlet 2) and the remote outlet 16.

As shown in FIG. 4 simple toggle switches 26, or other equivalent switches, may be provided. Such an embodiment can be useful as a means of closing off power to the remote outlet 16, for example if children can reach the remote outlet. The embodiment of FIG. 4 also demonstrates the use of further secondary prongs 20, that is to receive a plurality of the limbs 10 as shown in FIG. 3. Pull switches using cords or the like may also be used in place of toggle switches 26. The cords may be anchored in a wall above the apparatus.

FIG. 5 shows conductors 100 embedded within the apparatus and attached to prongs 8 and sockets 18 in conventional manner. FIG. 5 shows a three prong arrangement with a ground prong and socket. As indicated the invention is equally applicable to grounded and ungrounded circuits.

FIG. 6 illustrates an embodiment of the invention in which the limb 10 is telescopic, that is can be extended and retracted. An internal portion 28 of the limb can either be provided with flexible leads inside or can be provided with tracks, desirably on that side of the limb that will be against wall 14. An outer portion 30 of the limb 10 can be provided with corresponding leads or tracks to ensure electrical continuity.

FIGS. 7 to 9 illustrate means of making contact between portions 28 and 30. In FIGS. 7, 8 and 9 outer portion 30 has internal conductor tracks 102 attached to conductors 100. Corresponding external conductor tracks 104 are provided on internal portion 28. Tracks 102 and 104 are in contact with conductors 100 through leads 106.

In FIG. 7a a conductor track 108 in portion 28 slidably receives slide 110. Track 108 and slide 110 are in electrical contact with conductors 100.

FIG. 10 shows limb 10 extending beyond outlet 16 and plug member 6. A switch 112 is shown at an end of limb 10. FIG. 11 shows the outlet 6, with prongs 8

**4**

formed as a simple continuation of limb 10. Such an embodiment is very compact.

FIG. 12 illustrates a plug member 6 attached to a wall outlet 2. A first limb 10a extends to contact a second limb 10b, in turn in contact with limbs 10c and 10d extending to remote outlets 16. The limbs 10a to 10d may be formed as one continuous piece but the modular approach, as exemplified in FIG. 3, may be used.

FIGS. 13a through 13f simply illustrate the use of various shapes of limbs 10.

FIG. 13e illustrates the use of a plastically deformable limb, that is a limb that can be put in one shape and will then retain that shape. Such device can have wide application.

It should also be noted from FIGS. 1 and 2 that attachment means may be provided to locate the remote outlet 16 against the wall 14. In the illustrated embodiment a screw 32 extends through the remote outlet 16, through the wall 14 to engage a conventional anchor 34 on the far side of the wall 14.

The apparatus of the present invention may be made of plastics conventionally useful in the electrical field, that is exhibiting good insulation properties. PVC, nylon and the like may be used. The plastic may be hot or cold moldable. The conductors used will, generally, be of copper or aluminum, in conventional manner and in compliance with local bylaws. The plastic will usually be structurally rigid, apart from the use as shown in FIG. 13e.

The present invention provides an apparatus that is quick to install, is out of the way when in use and thus does not present a potential hazard as an extension cord can, and can be installed without any professional help as no installation of sockets or changes in building structure are required.

I claim:

1. Apparatus to provide a remote outlet from a master electrical outlet provided with electrical conducting recesses connected to an electrical power source, the apparatus comprising:

a plug member;

conductor prongs on the plug member to engage the recesses in the master outlet;

conductor attachment means formed on the plug member, in electrical contact with the conductor prongs;

a limb adapted to be attached to the plug member;

conductors in the limb, each conductor adapted to be in electrical contact with one conductor prong of the plug member;

conductor attachment means in the limb to releasably engage the conductor attachment means at the master outlet and in electrical contact with the conductors in the limb;

a remote outlet;

further conductor attachment means at the distal end of the limb, in electrical contact with the conductors in the limb;

conductor recesses in the remote outlet, each recess adapted to be in electrical contact with a conductor in the limb;

conductor attachment means in the remote outlet corresponding to the further conductor attachment means at said distal end of the limb and in electrical contact with the recesses in the remote outlet, whereby the limb may be disconnected from the plug member and the remote outlet;

BNSDOCID: <US_____4553798A1_I_>

4,553,798

5

whereby a secondary outlet is provided remote from but duplicating the master outlet and adapted to be in electrical contact with the master outlet.

2. Apparatus as claimed in claim 1 in which the limb is extendible and retractable.

6

3. Apparatus as claimed in claim 1 including means to locate the remote outlet on a wall.

4. Apparatus as claimed in claim 1 in which the limbs are plastically flexible.

5. Apparatus as claimed in claim 1 including at least one switch formed in the plug member or the remote outlet.

*    *    *    *    *

BNSDOCID: <US_____4553798A1_I_>

US005957701A

# United States Patent [19]

## McMillin

[11] **Patent Number:** **5,957,701**

[45] **Date of Patent:** **Sep. 28, 1999**

[54] **ELECTRICAL OUTLET EXTENSION**

[76] Inventor: **Kenneth G. McMillin**, Rt. 10 Box 91L, Santa Fe, N.Mex. 87501

[21] Appl. No.: **08/871,841**

[22] Filed: **Jun. 6, 1997**

[51] **Int. Cl.**[6] .................................................... **H01R 39/00**
[52] **U.S. Cl.** ................................. **439/13**; 439/32; 439/652
[58] **Field of Search** ............................... 439/32, 373, 13, 439/651, 652

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2,269,779 | 1/1942 | Morten . |
| 2,408,442 | 10/1946 | O'Brien . |
| 2,611,800 | 9/1952 | Naughton . |
| 4,037,900 | 7/1977 | Scmidger . |
| 4,245,873 | 1/1981 | Markowitz ................................. 439/32 |
| 4,553,798 | 11/1985 | Murphy ..................................... 439/32 |
| 5,554,039 | 9/1996 | Doudon ..................................... 439/13 |

*Primary Examiner*—Gary F. Paumen
*Attorney, Agent, or Firm*—Kenneth L. Tolar

[57] **ABSTRACT**

A device that can easily extend an existing wall socket that is obstructed by furniture or other items to allow access thereto includes an electrical outlet box having a sleeve extending from a side thereof and one or more female electrical receptacles on its exterior surface. A substantially flat base member having two planar sides is slidably extendible within the sleeve of the outlet box. The base component has an aperture for receiving a rotatable male plug component which allows the device to be rotated relative to the male plug component and extended horizontally or vertically as desired. Each male plug component is electrically connected to each of the female receptacles. The male plug component is plugged into a standard wall outlet, the outlet component is rotated and extended to a desired position and attached to a wall using an attachment means.

**4 Claims, 3 Drawing Sheets**



BNSDOCID: <US_____5957701A1_I_>



FIG.2

FIG.1

BNSDOCID: <US_____5957701A1_I_>

*FIG.3*



*FIG.4*



BNSDOCID: <US_____5957701A1_I_>



FIG.5

BNSDOCID: <US    5957701A1 I >

5,957,701

# 1

## ELECTRICAL OUTLET EXTENSION

### BACKGROUND OF THE INVENTION

The present invention relates to an electrical outlet extension which allows easier access to obstructed wall sockets. The device comprises an electrical outlet box with a sleeve extending therefrom. The outlet box has one or more female electrical receptacles for receiving a male plug from an electrical cord. A flat, substantially rectangular base component is slidably received within the sleeve of the outlet box allowing the box to be selectively extended away from the base component. The base component has a large aperture for receiving a rotatable male plug component which may be plugged into a standard wall receptacle. The rotatable plug component allows the outlet box to be selectively extended horizontally or vertically whenever the male plug component is plugged into a wall socket.

Power rings electrically interconnect the male plug component and the female receptacle using a telescoping electrical brush. This arrangement allows the female receptacle and male plug component to remain in electrical communication as the outlet box is extended or retracted. The rotatable plug component is plugged into a standard wall socket; tue electrical outlet box is extended vetically or horizontally to the desired position allowing an obstructed wall socket to be accessed. Alternatively, a transformer may be received within the outlet box or base component allowing it to also operate as a voltage converter.

### DESCRIPTION OF THE PRIOR ART

Electrical cornnectors, junction boxes and other devices designed to extend the source of electrical power within buildings are generally known in the prior art. However, none of these devices address the problem associated with conveniently accessing electrical outlets that may be blocked by furniture or other items. U.S. Pat. No. 4,037,900 issued to Schmidger relates to a baseboard for electrical installations having a cover part which is fastened to a wall. The cover part has a plurality of extending bare wires which may be readily connected to adapters to form electrical switch apparatus or distributing elements in the baseboard.

U.S. Pat. No. 2,611,800 issued to Naughton, discloses electrical conductors permanently imbedded in strips of plastic to form sectional, removably attachable pieces of molding that may be used as a convenient, easy to assemble wiring system.

U.S. Pat. No. 2,408,442 issued to O'Brien relates to a wiring system comprising a plurality of interconnecting elongated conductor units.

U.S. Pat. No. 2,269,779 issued to Morton, relates to a wiring circuit comprising interconnecting electrical conduits each having electrical wall type sockets on an exterior side thereof. As indicated above, numerous varieties of electrical connectors and wiring systems exist that make it easier and simpler to extend electrical power to other locations in a room, home, or building. However, none of these devices address the problem of accessing standard electrical wall outlets that are blocked by televisions, stereos, furniture or appliances.

### SUMMARY OF THE INVENTION

Electrical wall sockets are typically placed one to two feet from the floor. Due to space limitations and the design of a particular room, many of these wall sockets are blocked by appliances, televisions, stereos or furniture making access

# 2

thereto impossible or difficult. Typically very heavy furniture will have to be moved and replaced each time an electrical cord is plugged into a wall socket or removed therefrom.

Extension cords, power strips, surge protectors and the like do not adequately address the problem. These devices cannot be secured to a wall making them cumbersome to use and possibly dangerous since exposed electrical sockets may be lying on the floor. Furthermore, a user still must move the obstruction each time the extension or power cord is to be unplugged. Therefore, there is currently a need for a device that will allow easy and convenient access to a blocked wall socket without having to move or relocate the obstruction.

The present invention provides a permanent, more aesthetically appealing solution to the above described problem by providing an adapter that effectively extends a wall socket beyond an obstruction allowing easy access thereto. It is therefore an object of the present invention to provide a simple and easy to use electrical outlet extension.

It is yet another object of the present invention to provide an electrical outlet extension that may be selectively extended either vertically, horizontally or obliquely as desired

It is yet another object of the present invention to provide an electrical outlet extension that remains in electrical communication with a wall socket regardless of the selected extension distance.

It is yet another object of the present invention to provide an electrical outlet extension that may be easily and quickly attached to a wall socket and/or a wall.

It is yet another object of the present invention to provide an electrical outlet extension that may also be interchangeably used as a 220/110 volt converter. Other objects, features and advantages of the present invention its details of construction and arrangements of parts will be seen from the following description of the preferred embodiment when considered with the attached drawings and the appended claims.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows the base member completely extended from the electrical outlet box

FIG. 2 shows a schematic of the cooperating electrical brush system interconnecting a rotating male plug component with a female plug receptacle on the electrical outlet box.

FIG. 3 illustrates the rotatable plug component.

FIG. 4 is a cross sectional view of the base component depicting the interconnecting electrical power busses and power ring in phantom and the wall attachment means on a side of the outlet box.

FIG. 5 is a bottom view of the device depicted in FIG. 1 with the male plug component extending from a side of the base component.

### DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring now to FIGS. 1 through 5, the invention generally relates to an electrical outlet extension allowing convenient access to obstructed electrical wall sockets. The device comprises a substantially hollow electrical outlet box 3 having an exterior surface and a substantially rectangular sleeve 15 extending from a side thereof. The sleeve 15 is in communication with the hollow interior portion of the outlet

5,957,701

3

box 3. On the exterior surface of the outlet box 3 are one or more female electrical receptacles 8. The receptacles 8 are standard 110 Volt plug style receptacles known in the prior art and found on most wall sockets. Each has a pair of flat hot blade receptacles 8A and a ground plug receptacle 8B for receiving corresponding hot blades and ground plug from an electrical cord.

Received within the sleeve 15 and slidably engaging the interior thereof is a substantially rectangular base component 2 with an aperture therethrough. Preferably, there is a stop means on a distal end of said base component to prevent it from sliding completely out of said sleeve. Received within the aperture is a rotatable male electrical plug component 20. The rotatable male plug component 20 comprises a substantially circular wheel component having a planar side; extending from the opposing side of said wheel portion are a pair of hot blades 20A and preferably a ground plug 20B for inserting into a standard wall socket. The male plug component 20 is similar to a standard plug found on most electrical cords generally known in the prior art. The male plug component 20 may be secured within the aperture using a variety of attachment or securing means such as mating grooves, slots, tabs, etc.

The rotatable male plug component 20 allows the outlet box 3 and the extended base component 2 to rotate relative to the male plug component 20 whenever the device is plugged into a wall socket. Accordingly, the device may be selectively extended in a vertical, horizontal or even an oblique direction.

Within said base component 2 is a circular power ring 5 proximal said male plug component 20. The power ring 5 is made from a highly conductive material. A series of power busses 7 electrically connect the male plug component 20 to the power ring 5. Preferably, three separate power busses are used, two to connect each hot blade 20A, and a third to connect the ground plug 20B to the ring 5 as shown in FIG. 4.

The power ring 5 is electrically connected to a telescoping electrical brush 13. A second set of power busses 3 are connected to each hot blade receptacle 8A and ground plug receptacle 8B on the female receptacle 8 and to said telescoping brush 13. Electrically interconnecting the male plug component 20 and the female receptacle 8 in this manner allows the two components to remain in electrical communication with each other as the outlet box 3 is extended or retracted In addition, as depicted in FIGS. 2 and 4, the power ring 5 allows electrical communication between the male plug component 20 and the female receptacle 8 to remain intact as the plug component or the extended outlet box 3 is rotated.

The rotatable male plug component 20 has a centrally located aperture through which is an attachment means 9 such as a bolt or screw allowing the base component 2 to be easily attached to a conventional wall socket. Preferably, the base component 2 would replace the conventional wall outlet face plate. Extending from a side of the outlet box is a ring or hook with a screw or bolt received therethrough, or another similar attachment means 10, allowing the outlet box 3 to be removably attached to a wall. In another embodiment, the electrical outlet box 3 would also have a transformer received therein giving the device the additional capability of functioning as a voltage converter.

To use the above described invention the user would first remove the existing wall outlet face plate and plug in the male plug component 20 into an existing wall socket. Using the attachment means 9, the user would then attach the base

4

component 2 to the existing outlet, preferably using the same screw access hole used for the wall socket face plate. The outlet box 3 is then selectively rotated and extended to a desired position. Using the attachment means 10, the outlet box 3 may then be attached to a wall at a desired location. Appliances, furniture or other obstructions could then be relocated in front of the existing wall socket allowing a user to plug electrical cords into the unobstructed outlet extension. In addition, the device described above may be installed and used as a voltage converter.

As will be appreciated by those skilled in the art to which the present invention applies, the electrical outlet extension may be constructed in various dimensions, sizes, shapes using various materials. The outlet box 3 and base component 2 could be manufactured using plastic or any other similar non-conductive material. The conductive components are preferably manufactured from stamped spring steel that is heavily electroplated with brass. However, many other similar conductive materials can be used. For illustration purposes only, the electrical outlet extension pictured in FIGS. 1–5 has a pair of male plug components in electrical communication with two female receptacles. However, as will be readily apparent to those skilled in the art to which the invention applies, various numbers of male plug components may be attached to a side of the base component which may then be electrically connected to a variable number of female receptacles depending upon the application.

Therefore, the foregoing is considered illustrative only of the principles of the invention. It is understood that although there has been shown and described the preferred embodiment of the described invention, that modifications may be made to the invention and equivalents may be resorted to which fall within the scope of the invention and do not exceed the scope of the appended claims. Accordingly the scope of my invention is to be limited only by the following claims.

I claim:

1. An electrical outlet extension for use with an electrical wall socket comprising:

a substantially hollow electrical outlet box having an exterior surface and a sleeve extending therefrom;

a female electrical receptacle on the exterior surface of said electrical box;

a base component slidably received within said sleeve and extendable therefrom;

a rotatable male electrical plug component attached to said base component;

means for maintaining electrical communication between said male component and said female receptacle as said outlet box is rotated relative to said male plug whereby said male component may be coupled with said electrical wall socket and said outlet box is extended in a desired direction to circumvent an obstruction to said wall socket.

2. A device according to claim 1 wherein said means for means for maintaining electrical communication comprises:

a telescoping electrical brush component received within said outlet box and electrically connected to said female receptacle;

a power ring electrically connected to said telescoping brush and to said male plug component.

3. A device according to claim 1 further comprising means for securing said base component to said wall socket.

4. A device according to claim 1 further comprising means for securing said outlet box to a wall.

5,957,701

5                                            6

*   *   *   *   *

BNSDOCID: <US_____5957701A1_I_>

US006004138A

# United States Patent [19]

## Harbertson

[11] **Patent Number:** **6,004,138**

[45] **Date of Patent:** **Dec. 21, 1999**

[54] **ELECTRIC OUTLET EXTENDER**

[76] Inventor: **Grant J. Harbertson**, 1952 S. Jeri Dr., Bountiful, Utah 84010

[21] Appl. No.: **08/789,054**

[22] Filed: **Jan. 28, 1997**

### Related U.S. Application Data

[63] Continuation-in-part of application No. 08/550,761, Oct. 31, 1995.

[51] Int. Cl.$^6$ ................................................... **H01R 39/00**

[52] U.S. Cl. ................................................ **439/32**; 439/21

[58] Field of Search ................................ 439/22, 21, 20, 439/27, 652, 32, 33

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,245,873 | 1/1981 | Markowitz | 439/32 |
| 5,399,093 | 3/1995 | Schneider et al. | 439/21 |
| 5,441,416 | 8/1995 | Gajewski et al. | 439/32 |
| 5,727,953 | 3/1998 | Pasholk | 439/21 |

*Primary Examiner*—Gary Paumen
*Attorney, Agent, or Firm*—Lloyd W. Sadler

[57] **ABSTRACT**

An electrical outlet extender with a male plug at one end to be connected into a wall outlet and a female electrical outlet at an opposite end and with one or more tubular members connected between the male plug and the female outlet. The tubular member are connected to each other through a slidable, rotatable or both slidable and rotatable means, thereby permitting the extender to be easily adjusted and adapted to fit the widest variety of electrical extension requirements, while maintaining a desired length and position and while avoiding the drawbacks of coils of standard extension cords

**4 Claims, 4 Drawing Sheets**



BNSDOCID: <US_____6004138A1_I_>



FIG. 1

BNSDOCID: <US_____6004138A1_I_>



FIG. 2

BNSDOCID: <US_____6004138A1_I_>



FIG. 3



FIG. 4

BNSDOCID: <US_____6004138A1_I_>



FIG. 5

BNSDOCID: <US_____6004138A1_I_>

6,004,138

# ELECTRIC OUTLET EXTENDER

This patent application is a continuation-in-part of U.S. patent application Ser. No. 08/550,761, which was filed on Oct. 31, 1995 and priority is claimed thereto.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

This invention relates to devices to extend the effectiveness of electrical wall outlets. It is particularly concerned with rigid extension devices that effectively move an outlet from a difficult to reach and use location to a convenient location for the coupling of extension cords and electrical devices.

### 2. Description of Related Art

Extension cords are widely used as devices to effectively extend electrical outlets from a fixed location in a wall to a remote location where an electrically powered device can be attached and used. Such cords are flexible and have a plug on one end to be plugged into a wall outlet and an outlet on the other end of the cord into which a male electrical plug can be inserted. While they may work reasonably well in situations where the cords are allowed to fall as they may, after insertion of the male plug end into a wall outlet and movement of the female receptacle end to a desired location, they are unsightly and in some instances may constitute traffic hazards.

Various special configurations of extension cords have been proposed in the past. Some are intended to prevent the sprawling flexible cord and the hazards associated therewith and others recognize a need to have a flat cord that will extend an electrical wall outlet to a remote location. U.S. Design Pat. No. 324,669, for example, discloses an extension cord with a reel in a housing that will rest against a wall when the cord is plugged into a wall receptacle. A similar retractable extension cord unit is shown in U.S. Pat. No. 3,815,078. U.S. Pat. No. 4,708,094 discloses an extension cord of undercarpet flat cable with a flexible extension and male plug extending from one end of one member of a flat telescoping, conductive assembly, the other telescoping member of which has a female outlet fixed thereto.

There remains a need for a device that will plug into a wall outlet and transmit power from such outlet to a desired location, with the device hugging the wall so as not to be unsightly and constructed to be readily rotated with respect to the wall outlet so that female outlet on the end remote from the male plug can be located directly above or below the wall outlet, to either side of the wall outlet or at any desired angle with respect to the wall plug.

For general background the reader is directed to the following U.S. Pat. Nos.: 3,815,078, 4,875,871, 5,041,002, 5,052,937, 5,067,906 and U.S. Design Pat. No. 324,669, each of with is hereby incorporated by reference in its entirety for the material disclosed therein.

## OBJECTS OF THE INVENTION

It is not uncommon that when furniture is positioned in a building electrical wall outlets are hidden behind the furniture. It is also not uncommon that it is often desirable to connect electrically powered devices into the hidden and difficult to reach wall outlet. As previously noted this can be accomplished with the usual flexible extension cords. However, the conventional extension cords are, at best, difficult to use where it is desired that the female outlet of the cord be held in an assigned raised position. For example, a wall outlet positioned behind the head of a bed cannot be easily accessed or the insertion of the plug of a lamp, clock, radio or other electrical device. Such electrical device may be positioned on a table at either side of the head of the bed or may be mounted on or in a headboard of the bed.

Accordingly, it is a principal object of the present invention to provide an electrical outlet extender that will plug into a wall outlet and having a substantially rigid, conductor section that will pivot about the male plug inserted into the wall outlet to position a female outlet at a desired position relative to the wall outlet where the female outlet is conveniently accessed for receipt of the plug of one or more electrical devices.

## FEATURES OF THE INVENTION

Principal features of the invention include a first substantially rigid, non-conductive, telescoping (or in an alternative embodiment, pivoting) member having a male plug rotatably mounted on one end thereof and electrically connected to first flat electrical connectors extending the length of the first substantially rigid member.

In one embodiment of the invention, a second substantially rigid, non-conductive, telescoping member telescopes within said first substantially rigid telescoping member and has second flat electrical connectors therein, with sliding contacts projecting therefrom to engage the first electrical connectors in the first substantially rigid telescoping member.

In another embodiment of the invention, a second substantially rigid, non-conductive member is pivotally connected to said first substantially rigid member. Rotatable contacts connect said first and said second substantially rigid members.

In still another embodiment of the invention, a second su

Additional objects and features of the invention will become apparent from the following detailed description and drawings, disclosing what is presently contemplated as being the best mode of the invention

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of the electric outlet extender of the invention

FIG. 2 is an exploded perspective view of the electric outlet extender.

FIG. 3 is a sectional view through the plug of the extender, taken on the line 3—3 of FIG. 1.

FIG. 4 is a sectional view of the extender, taken on the line 4—4 of FIG. 1.

FIG. 5 is an alternative embodiment of the invention, wherein the outlet extender extends itself through pivotally unfolding rather than slidably protruding.

## DETAILED DESCRIPTION OF THE INVENTION

Referring now to the drawings:

In the illustrated preferred embodiment of the invention, the electric outlet extender is shown generally at 10.

Electric outlet extender 10 includes a male plug assembly 12, a first substantially rigid, non-conductive, tubular telescoping member 14 and a second substantially rigid, non-conductive telescoping member 16.

Male plug assembly 12 has a base 18 with a circular outer periphery 20, molded or otherwise formed from a non-conductive material such as rubber, plastic, composites, or

BNSDOCID: <US_____6004138A1_I_>

6,004,138

**3**

the like. The usual contact prongs 22 and 24 and ground probe 26, such as are commonly associated with male plugs of electrical devices, project from one face 28 of the base 18. The prongs 22 and 24 and probe 26 are embedded in the base 18 and extend through the base to make electrical connections when the plug assembly 12 is snapped into one end 30 of the first electrically non-conductive telescoping member 14.

A socket 32, formed at the end 30 of the first telescoping member 14, has an interior circumference 34 just larger than the outer periphery of the base 18. An inturned lip 36 surrounds the open end 38 of the socket 32.

A bottom 40 of the socket 32 has concentric electrical contact members 42, 44, and 46 molded or otherwise placed therein to be respectively contacted by the contact prongs 22 and 24 and the ground probe 26 when the plug assembly 12 is snapped into the socket 32. Plug assembly 12 is forced through lip 36 and into the socket 32 and is held in place by the lip 36. The plug assembly 12 is rotatable within the socket 32, while maintaining engagement of the prongs 22 and 24 and ground probe 26 with the concentric contact members 42, 44 and 46. The close engagement of the interior circumference 34 with the outer periphery 20 of the base 18 and the pressure applied to the base 18 by the lip 36, while allowing rotation of the plug assembly 12 relative to the socket 32 prevents undesired rotation of the socket 32 and the first telescoping member 14, once they have been positioned with respect to the plug assembly 12.

The concentric electrical contact members 42, 44 and 46 are respectively connected to flat, spaced apart conductor strips 52, 54, and 56 that extend through substantially the full length of a tubular housing 58 of the first telescoping member 14 at one side of the housing 58. The flat strips 52, 54 and 56 are molded into the socket 32 to engage the concentric contact members 42, 44 and 46, without engaging the surfaces of such contact members engaged by the prongs 22 and 24 and probe 26 of the plug assembly 12.

The second telescoping member 14 comprises a solid elongate bar with spaced apart conductors 62, 64 and 66 extending from one end 68 of the bar to a flat outlet housing 72 at the other end 74 of the bar. The conductors 62, 64 and 66 projecting from end 68 each are crimped at 76 to form V-shaped contacts 78, 80 and 82. The flat outlet housing 72 has a pair of electrical outlets 86 and 88 molded or otherwise affixed therein and the electrical outlets are each connected to the conductors 52, 54 and 56 in conventional fashion with the outlets 86 and 88 facing opposite to direction of projection of the prongs 22 and 24 and ground probe 26. Alternatively, the outlets 86 and 88 can be positioned so that they away from and at a ninety degree angle from the prongs 22 and 24 and ground probe 26. In this embodiment, no bending of the electrical conductors 52, 54, and 56 is required within the outlet housing 72.

When assembled, the plug assembly 12 snaps into socket 32 and the end 68 of the second telescoping member 14 is tightly be slidably inserted into the end 84 of the tubular first telescoping member 12 with the contacts 78, 80 and 82 respectively engaging the flat conductor strips 52, 54 and 56.

A U-shaped spring clip 90 has one leg 92 fixed to the end 84 of the first telescoping member 12 and another leg 94 extending into the tubular first telescoping where it will engage the second telescoping member 16 as the second telescoping member reciprocates in the first telescoping member. The leg 94 also extends into a groove 96 formed in the end 86 of the second telescoping member 16 and engages an abrupt wall 98 of the notch to prevent withdrawal of the

**4**

second telescoping member 16 from the first telescoping member 14. The sloped wall 100 of the groove 96 allows the leg 94 to be pulled from groove 96 as the second telescoping member 16 is pushed into the first telescoping member 14.

In use, the prongs 22 and 24 and ground probe 26 are inserted into a wall outlet, the telescoped first and second telescoping members 14 and 16 are rotated about the plug assembly 12 to extend in a desired direction and member 16 is pulled from member 14 to position the outlets 86 and 88 at a desired location to receive the plugs of electrical devices to be powered.

It will be apparent that more than two telescoping members can be provided for the electrical extender 10 of the invention as may be necessary to provide a device capable of reaching a greater range of distances from the wall outlet.

An alternative embodiment of the invention is shown in FIG. 5. In this embodiment of the invention 101, the extension is accomplished by unfolding a plurality of substantially rigid sections about one or more pivot points. A first substantially rigid section 102 is connected at its first end 110 to a male plug assembly 108. This male plug assembly 108 is essentially constructed in the same manner and with the same component elements as previously described 12. The first substantially rigid section 102 has a second end 111 which is connected to a pivot point 113. The pivot point 113 contains a conductor ring substantially similar to the internal construction of the male plug assembly 12. The pivot point 113 is designed to permit retraction, that is positioning of the first and second substantially rigid sections 102 and 103 adjacent and essentially parallel to each other, to fully extended, that is positioning of the first and second substantially rigid sections 102 and 103 so that they form essentially a straight extended outlet extension. The pivot point 113 is frictionally fitted so that it will maintain its position after being set in place. The pivot point 113 is also connected to the first end 112 of a second substantially rigid section 103. The second end 104 of the second substantially rigid section 103 is contains plurality of female electric outlets 105, 106 and 107, each of which is adapted to receive standard electric plugs.

Each substantially rigid section 102 and 103 contains within it a power cable composed of two conductors, insulation and a ground sheathing.

The male plug assembly 108, of this embodiment, is provided with a securing means to attach the outlet assembly 101 to a standard wall outlet. In the preferred embodiment of this embodiment of the invention, the securing means is a common screw, which is screwed into the standard center screw hole of standard wall outlets.

Is should be clear to the reader that although this embodiment of the invention is described with two substantially rigid sections 102 and 103 and a single pivot point 113, additional substantially rigid sections and additional pivot points can be used, thereby providing additional length and flexibility in this invention, while maintaining the ability to fold the substantially rigid sections into a compact area, and to alternatively extend the outlet extender into an essentially straight extender. Similarly, since the sections can be positioned at a broad range of angles about the pivot points, this embodiment of the invention provides exceptional directional flexibility.

Although a preferred form of this invention has been herein disclosed, it is to be understood that the present disclosure is by way of example and that variations are possible without departing from the subject matter coming within the scope of the following claims, which subject is regarded by the inventor as his invention.

BNSDOCID: <US_____6004138A1_I_>

6,004,138

5

I claim:

1. An electric outlet extender comprising:

(A) a plug assembly, including a plurality of electrical prongs projecting from a face of an electrically non-conductive base;

(B) a first substantially rigid non-conductive member, having an interior channel, an electrical conductor within said interior channel, a first end and a second end, wherein said first end is rotatably connected to said plug assembly; and

(C) a second substantially rigid non-conductive member, having an interior channel, an electrical conductor within said interior channel, a first end and a second end, wherein said second end of said second substantially rigid non-conductive member includes at least one female outlet, and wherein said electrical conductor of said second substantially rigid non-conductive member is electrically connected to said electrical conductor of said first substantially rigid member;

wherein said second substantially rigid non-conductive member is snugly inserted into said first substantially rigid non-conductive member; and

6

wherein said second substantially rigid non-conductive member is designed to telescope from said first substantially rigid non-conductive member while maintaining electrical connection with said first substantially rigid non-conductive member.

2. An electric outlet extender as recited in claim 1 further comprising a pivot point being mechanically and electrically connected to said first substantially rigid non-conductive member and said second substantially rigid non-conductive member.

3. An electric outlet extender as recited in claim 2 wherein said pivot point frictionally resists motion to hold the relative position of said first and second substantially rigid non-conductive members.

4. An electric outlet extender as recited in claim 1 further comprising a second electrical conductor within said interior channel of said first substantially rigid non-conductive member.

*    *    *    *    *

BNSDOCID: <US_____6004138A1_I_>

**REMARKS**

Applicant submits this Preliminary Amendment prior to substantive examination of the application. Applicant respectfully submits that no new matter has been added by way of this amendment and that support for such may be found in the claims and specification as originally filed. This Preliminary Amendment is being filed prior to an Official Office Action on the merits, the amendments presented in this Preliminary Amendment are not made in response to any rejections or prior art references of record. Accordingly, no prejudice should apply to these amendments.

Please contact the undersigned if any issues exist.


Respectfully submitted,


Date:  July 6, 2021          /Todd A. Benni/
                             Todd A. Benni
                             Reg. No. 42,313
                             McDonald Hopkins LLC
                             600 Superior Avenue, E.
                             Suite 2100
                             Cleveland, OH 44114-2653
                             (216) 348-5400

## CLAIMS

The Listing of Claims replaces all previous versions of the claims:

1. (Currently Amended)    A wall outlet extender comprising:

a plug end configured to selectively plug into a wall outlet,

an outlet end configured to selectively receive one or more plugs, ~~wherein the outlet end comprises an interchangeable decorative faceplate~~, and

an extendable shaft positioned between the plug end and the outlet end,

wherein the plug end is rotatable, and

an electrical cord portion positioned between the extendable shaft and the plug end.

2. (Original)    The wall outlet extender of claim 1, wherein the extendable shaft includes two or more telescoping portions.

3. (Original)    The wall outlet extender of claim 2, wherein the extendable shaft includes a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter is larger than the second diameter.

4. (Original)    The wall outlet extender of claim 3, wherein the first telescoping portion is configured to internally receive the second telescoping portion in a retracted position.

5. (Original)    The wall outlet extender of claim 4, wherein the extendable shaft is extendable from about 21 inches to about 34 inches.

6. (Currently Amended)    The wall outlet extender of ~~any of the previous claims~~ claim 1, wherein the plug end is rotatable about 360°.

7. (Currently Amended)    The wall outlet extender of ~~any of the previous claims~~ claim 1 further comprising an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall.

{9695392: }                                   3

8. (Original)    The wall outlet extender of claim 7, wherein the engagement portion comprises a non-permanent adhesive, removable putty, or stickable surface.

9. (Original)    The wall outlet extender of claim 8, wherein the engagement portion is free from any attachment to the wall that traverses or damages the wall surface.

10. (Currently Amended)    The wall outlet extender of ~~any of the previous claims~~ claim 1, wherein the outlet end includes an even number of outlets and at least one USB port.

11. (Currently Amended)    The wall outlet extender of ~~any of the previous claims~~ claim 1, wherein the outlet end comprises a device cradle configured to hold a device while the device is plugged into the outlet end.

12. (Currently Amended)    The wall outlet extender of ~~any of the previous claims~~ claim 1, wherein the wall outlet extender comprises Bluetooth or Wi-Fi connectivity capabilities.

13. (Canceled) ~~The wall outlet extender of claim 1 further comprising an electrical cord portion positioned between the extendable shaft and the plug end~~.

14. (Currently Amended)    An extendable power outlet adaptor, comprising:

a plug selectively configured to insert into a wall outlet,

a shaft that is telescopic and that is rotatable about the plug up to 360°, ~~and~~

one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall;

an interchangeable ~~decorative~~ faceplate selectively attached with the one or more outlet receptacles, and

an electrical cord portion positioned between the extendable shaft and the plug end.

15. (Original)  The extendable power outlet adaptor of claim 14, wherein the one or more outlet receptacles are attachable to the wall by temporary adhesive, putty, or stickable surface.

16. (Original)  The extendable power outlet adaptor of claim 15, wherein the one or more outlet receptacles are free from any attachment to the wall that traverses or damages the wall surface.

17. (Currently Amended)    The extendable power outlet adaptor of claim 14~~any of claims 14-16~~, wherein the one or more outlet receptacles may be removed and repositioned onto the wall.

18. (Canceled)      ~~The extendable power adaptor of any of claims 14-17 further comprising an electrical cord portion positioned between the shaft and the plug~~.

## AMENDMENTS TO THE SPECIFICATION

Please amend the Specification as follows:

On page 1 of the Specification, please amend paragraph one as follows:

[0001] This application is a 35 U.S.C. §371 national stage application of PCT/US2021/012261 filed on January 6, 2021, entitled "WALL MOUNTING OUTLET EXTENDER," which claims priority to U.S. Utility Application No. 16/988,045 entitled "WALL MOUNTING OUTLET EXTENDER" filed on August 7, 2020 and U.S. Provisional Patent Application No. 62/957,903 entitled "WALL MOUNTING OUTLET EXTENDER" filed on January 7, 2020 each of which are hereby incorporated by reference in their entireties.

PATENT APPLICATION

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re application: | Tony Matthew Galazin | Group Art Unit: | Not yet assigned |
| Serial No.: | Not yet assigned | Examiner: | Not yet assigned |
| Filing Date: | Herewith | Docket No.: | 48071-00006 |

Title:   WALL MOUNTING OUTLET EXTENDER

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

## PRELIMINARY AMENDMENT

Prior to the calculation of fees for entry into the U.S. National phase, Applicant submits this Preliminary Amendment. As this paper is being filed concurrently with the filing of the application and prior to any action on the merits Applicant believes no additional fees appear due. However, if any additional fees are required for filing this Preliminary Amendment, please charge such fees to our Deposit Account No. 13-0265.

Prior to substantive examination, please amend the present application as follows.

**Amendments to the Specification** begin on page 2 of this paper.

**Amendments to the Claims** begin on page 3 of this paper.

**Arguments/Remarks** begin on page 6 of this paper.

{9695392: }                                          1

# Electronic Patent Application Fee Transmittal

| **Application Number:** | |
|---|---|
| **Filing Date:** | |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony  Matthew Galazin |
| **Filer:** | Todd A. Benni/Rebecca Shofar |
| **Attorney Docket Number:** | 48071-00006 |

Filed as Small Entity

**Filing Fees for   U.S. National Stage under 35 USC 371**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| BASIC NATIONAL STAGE FEE | 2631 | 1 | 160 | 160 |
| NATL STAGE SEARCH FEE - REPORT PROVIDED | 2642 | 1 | 270 | 270 |
| NATL STAGE EXAM FEE - ALL OTHER CASES | 2633 | 1 | 400 | 400 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | 830 |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 43177408 |
| **Application Number:** | 17420884 |
| **International Application Number:** | PCT/US2021/012261 |
| **Confirmation Number:** | 5873 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Rebecca Shofar |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00006 |
| **Receipt Date:** | 06-JUL-2021 |
| **Filing Date:** | |
| **Time Stamp:** | 15:57:47 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $830 |
| RAM confirmation Number | E202176F58041046 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal of New Application | 9695438.pdf | 751888<br>1cf28d65eff44ea4348d65781ae54326e0cef86a | no | 4 |

| **Warnings:** |
| **Information:** |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Application Data Sheet | 9695410.pdf | 1309692<br>23089b78e222a23c900e2a5eee85037cf39fe61f | no | 8 |

| **Warnings:** |
| **Information:** |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | | 9326279.pdf | 194565<br>b3147f048264c1eb6178e3869d48ddc355266cf7 | yes | 23 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |
| Abstract | 23 | 23 |
| Claims | 20 | 22 |
| Specification | 1 | 19 |

| **Warnings:** |
| **Information:** |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | Drawings-only black and white line drawings | 9324508.pdf | 291710<br>7b70ae24998e7d83533719f6efb984fc5a34e93f | no | 12 |

| **Warnings:** |
| **Information:** |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 5 | Oath or Declaration filed | 9695469.pdf | 170011<br>4d5222976a1268ab09989b4414e15c7c9168e696 | no | 2 |

| | **Warnings:** | | | | |
|---|---|---|---|---|---|
| | **Information:** | | | | |
| 6 | Information Disclosure Statement (IDS) Form (SB08) | 9695474.pdf | 1033534<br><br>775ad68695bfd58e01d58c4074d250a70d59d2a9 | no | 4 |
| | **Warnings:** | | | | |
| | **Information:** | | | | |
| 7 | Foreign Reference | 9695529.pdf | 1128457<br><br>969376acbc3d18b0453ac023029b78a09511bc84 | no | 29 |
| | **Warnings:** | | | | |
| | **Information:** | | | | |
| 8 | Non Patent Literature | 9695519.pdf | 4198525<br><br>05403bf2388c13609719c76d1e803d25043035e7 | no | 85 |
| | **Warnings:** | | | | |
| | **Information:** | | | | |
| 9 | | 9695690.pdf | 113046<br><br>f4d13e8b415ef317d757b1423db95c96c8ec9879 | yes | 6 |

| **Multipart Description/PDF files in .zip description** | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 6 |
| Claims | 3 | 5 |
| Specification | 2 | 2 |
| Preliminary Amendment | 1 | 1 |

| | **Warnings:** | | | | |
|---|---|---|---|---|---|
| | **Information:** | | | | |
| 10 | Fee Worksheet (SB06) | fee-info.pdf | 35282<br><br>30680a03d694f444fb5e0f0ec4a5407ed2f18cb2 | no | 2 |
| | **Warnings:** | | | | |
| | **Information:** | | | | |

| | **Total Files Size (in bytes):** | 9226710 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT6798279

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| TONY MATTHEW GALAZIN | 08/07/2020 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | TOKA, LLC |
| Street Address: | 351 PEMBERWICK ROAD |
| Internal Address: | APT. 914 |
| City: | GREENWICH |
| State/Country: | CONNECTICUT |
| Postal Code: | 06831 |

**PROPERTY NUMBERS Total: 1**

| Property Type | Number |
|---|---|
| Application Number: | 17420884 |

**CORRESPONDENCE DATA**

| | |
|---|---|
| Fax Number: | (216)348-5474 |

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Phone: | 216-348-5400 |
| Email: | ipmailbox@mcdonaldhopkins.com |
| Correspondent Name: | MCDONALD HOPKINS LLC |
| Address Line 1: | 600 SUPERIOR AVENUE, EAST |
| Address Line 2: | SUITE 2100 |
| Address Line 4: | CLEVELAND, OHIO 44114-2653 |

| ATTORNEY DOCKET NUMBER: | 48071-00006 |
|---|---|
| NAME OF SUBMITTER: | TODD A. BENNI |
| SIGNATURE: | /Todd A. Benni/ |
| DATE SIGNED: | 07/06/2021 |
| | This document serves as an Oath/Declaration (37 CFR 1.63). |

**Total Attachments: 2**
source=9695469#page1.tif
source=9695469#page2.tif

For applications filed under AIA
(on or after September 16, 2012)

Title: "WALL MOUNTING OUTLET EXTENDER"
MH Ref No.: 48071-00002

## DECLARATION AND ASSIGNMENT
## FOR U.S. UTILITY OR DESIGN PATENT APPLICATION

Attorney Docket No.:  48071-00002

**As a below-named inventor, I hereby declare that:**

This declaration is directed to the application entitled:

WALL MOUNTING OUTLET EXTENDER
**(TITLE)**

(check only one item below)

[  ]    attached hereto,

OR

[X]    For which U.S. Provisional Application No. 62/957,903 filed on January 7, 2020; and any subsequent applications filed in connection with the above invention (the "Patent").

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the above-identified application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

WHEREAS, TOKA, LLC, having a place of business at 351 Pemberwick Road, Apt. 914, Greenwich, CT 06831, hereinafter referred to as "Assignee," is desirous of acquiring the entire right, title and interest in and to the Patent;

NOW, THEREFORE, be it known that, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, all right, title, and interest, in the United States and throughout the world, in, to and under the Patent, improvements and inventions and all patents, patent applications, patent rights, and inventors' certificates thereof, therefor, and therein, including without limitation said application for patent in the United States, all divisions and continuations thereof, all patents which may be granted thereon, all reissues and extensions thereof, all right to sue for past infringement thereunder, all patents which may be granted for said improvements and inventions by states or nations other than the United States, or by other authority, entity, or organization, all applications therefor, and all rights of priority resulting from the filing of said

{8993148: }                              Page 1 of 2

For applications filed under AIA
(on or after September 16, 2012)

Title: "WALL MOUNTING OUTLET EXTENDER"
MH Ref No.: 48071-00002

applications, have been and are hereby sold, assigned, transferred, and delivered unto Assignee, its successors and assigns by the undersigned; and it is covenanted and agreed by the undersigned, and for executors, administrators, and legal representatives of the undersigned, that at Assignee's request any and all applications, affidavits, assignments, and other instruments will be made, executed, and delivered as may be necessary, or desirable to secure for or vest in Assignee, its successors or assigns, any improvement, inventions, right, title, interest, application, patent, patent right or other right or property covered by this assignment, and the United States Commissioner of Patents and Trademarks is hereby requested and authorized to issue any and all United States patents granted on any of said applications to Assignee as owner of the entire right, title, and interest in, to, and under the same, and appropriately empowered officials of foreign countries are hereby authorized to issue any letters patent granted on any of said applications to Assignee as owner of the entire right, title and interest in, to, and under the same.

THIS DECLARATION AND ASSIGNMENT, has been executed below by the undersigned:

Legal Name of Inventor: Tony Matthew Galazin

Signature of Inventor: _____

Date: **8-7-2020**

[   ]    Signatures of additional inventors on attached sheet(s)

**Notice to Inventor(s):** You should not execute this Declaration unless you have reviewed and understand the contents of the above-identified application, including the claims.

**Notice to Inventor(s):** You have a duty disclose to the USPTO all information known to you to be material to patentability as defined in 37 CFR 1.56 during prosecution of the Patent.

{8993148: }                           Page 2 of 2

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 17/420,884 | 07/06/2021 | | 830 | 48071-00006 | 17 | 2 |

33772
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

**CONFIRMATION NO. 5873**
**FILING RECEIPT**

Date Mailed: 01/24/2023

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**
          Tony Matthew Galazin, Greenwich, CT;
**Applicant(s)**
          TOKA, LLC, Greenwich, CT;

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**
          This application is a 371 of PCT/US2021/012261 01/06/2021
          which claims benefit of 62/957,903 01/07/2020
          and is a CIP of 16/988,045 08/07/2020 ABN

**Foreign Applications** for which priority is claimed  (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)  - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

page 1 of 3

**If Required, Foreign Filing License Granted:** 01/20/2023

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 17/420,884**

**Projected Publication Date:** 05/04/2023

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

          WALL MOUNTING OUTLET EXTENDER

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| U.S. APPLICATION NO. | FIRST NAMED INVENTOR | ATTY. DOCKET NO. |
|---|---|---|
| 17/420,884 | Tony Matthew Galazin | 48071-00006 |

33772
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| INTERNATIONAL APPLICATION NO. | |
|---|---|
| PCT/US2021/012261 | |
| I.A. FILING DATE | PRIORITY DATE |
| 01/06/2021 | 01/07/2020 |

**CONFIRMATION NO. 5873**
**371 ACCEPTANCE LETTER**


*OC000000137248416*

Date Mailed: 01/24/2023

## NOTICE OF ACCEPTANCE OF APPLICATION UNDER 35 U.S.C 371 AND 37 CFR 1.495

The applicant is hereby advised that the United States Patent and Trademark Office, in its capacity as a Designated / Elected Office (37 CFR 1.495), has ACCEPTED the above identified international application for national patentability examination in the United States Patent and Trademark Office.

The United States Application Number assigned to the application is shown above. A Filing Receipt will be issued for the present application in due course. **THE DATE APPEARING ON THE FILING RECEIPT AS THE "FILING DATE or 371(c) DATE" IS THE DATE ON WHICH THE LAST OF THE 35 U.S.C. 371 (c)(1) and (c)(2) REQUIREMENTS HAS BEEN RECEIVED IN THE OFFICE. THIS DATE IS SHOWN BELOW.** The filing date of the above identified application is the international filing date of the international application (Article 11(3) and 35 U.S.C. 363)

<u>07/06/2021</u>
DATE OF RECEIPT OF 35 U.S.C.
371(c)(1) and (c)(2) REQUIREMENTS

The following items have been received:

- Indication of Small Entity Status
- Copy of the International Application filed on 07/06/2021
- Copy of the International Search Report filed on 07/06/2021
- Preliminary Amendments filed on 07/06/2021
- Information Disclosure Statements filed on 07/06/2021
- Inventor's Oath or Declaration filed on 07/06/2021
- Request for Immediate Examination filed on 07/06/2021
- U.S. Basic National Fees filed on 07/06/2021
- Authorize Access to Search Results filed on 07/06/2021
- Priority Documents filed on 07/06/2021
- Authorization to Permit Access filed on 07/06/2021
- Application Data Sheet (37 CFR 1.76) filed on 07/06/2021

FORM PCT/DO/EO/903 (371 Acceptance Notice)

Applicant is reminded that any communications to the United States Patent and Trademark Office must be mailed to the address given in the heading and include the U.S. application no. shown above (37 CFR 1.5)


BARBARA A CAMPBELL

_____

Telephone: (571) 272-3892

FORM PCT/DO/EO/903 (371 Acceptance Notice)

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | | Application or Docket Number<br>17/420,884 |

## APPLICATION AS FILED - PART I

| | (Column 1) | (Column 2) | SMALL ENTITY | | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE($) | FEE($) | | RATE($) | FEE($) |
| BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 128 | | N/A | |
| SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 216 | | N/A | |
| EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 320 | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | 17  minus 20 = | * | x 40 = | 0.00 | OR | | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | 2  minus 3 = | * | x 192 = | 0.00 | | | |
| APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 664 | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| | | (Column 1) | | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT A** | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL<br>ADD'L FEE | | OR | TOTAL<br>ADD'L FEE | |

| | | (Column 1) | | (Column 2) | (Column 3) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT B** | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL<br>ADD'L FEE | | OR | TOTAL<br>ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
  The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

# MULTIPLE DEPENDENT CLAIM FEE CALCULATION SHEET

Substitute for Form PTO-1360
(For use with Form PTO/SB/06)

| Application Number | Filing Date |
|---|---|
| 17420884 | |

Applicant(s) **Tony Galazin**

\* May be used for additional claims or amendments

| CLAIMS | AS FILED Indep | AS FILED Depend | AFTER FIRST AMENDMENT Indep | AFTER FIRST AMENDMENT Depend | AFTER SECOND AMENDMENT Indep | AFTER SECOND AMENDMENT Depend |
|---|---|---|---|---|---|---|
| 1 | 1 | | 1 | | | |
| 2 | | 1 | | 1 | | |
| 3 | | 1 | | 1 | | |
| 4 | | 1 | | 1 | | |
| 5 | | 1 | | 1 | | |
| 6 | | 5 | | 1 | | |
| 7 | | ( 1 ) | | 1 | | |
| 8 | | 1 | | 1 | | |
| 9 | | 1 | | 1 | | |
| 10 | | ( 1 ) | | 1 | | |
| 11 | | ( 1 ) | | 1 | | |
| 12 | | ( 1 ) | | 1 | | |
| 13 | | 1 | --- | --- | | |
| 14 | 1 | | 1 | | | |
| 15 | | 1 | | 1 | | |
| 16 | | 1 | | 1 | | |
| 17 | | 3 | | 1 | | |
| 18 | | ( 1 ) | | 1 | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |
| 25 | | | | | | |
| 26 | | | | | | |
| 27 | | | | | | |
| 28 | | | | | | |
| 29 | | | | | | |
| 30 | | | | | | |
| 31 | | | | | | |
| 32 | | | | | | |
| 33 | | | | | | |
| 34 | | | | | | |
| 35 | | | | | | |
| 36 | | | | | | |
| 37 | | | | | | |
| 38 | | | | | | |
| 39 | | | | | | |
| 40 | | | | | | |
| 41 | | | | | | |
| 42 | | | | | | |
| 43 | | | | | | |
| 44 | | | | | | |
| 45 | | | | | | |
| 46 | | | | | | |
| 47 | | | | | | |
| 48 | | | | | | |
| 49 | | | | | | |
| 50 | | | | | | |
| Total Indep | 2 | | 2 | | 0 | |
| Total Depend | 22 | | 15 | | 0 | |
| Total Claims | 24 | | 17 | | 0 | |

| CLAIMS | * Indep | * Depend | * Indep | * Depend | * Indep | * Depend |
|---|---|---|---|---|---|---|
| 51 | | | | | | |
| 52 | | | | | | |
| 53 | | | | | | |
| 54 | | | | | | |
| 55 | | | | | | |
| 56 | | | | | | |
| 57 | | | | | | |
| 58 | | | | | | |
| 59 | | | | | | |
| 60 | | | | | | |
| 61 | | | | | | |
| 62 | | | | | | |
| 63 | | | | | | |
| 64 | | | | | | |
| 65 | | | | | | |
| 66 | | | | | | |
| 67 | | | | | | |
| 68 | | | | | | |
| 69 | | | | | | |
| 70 | | | | | | |
| 71 | | | | | | |
| 72 | | | | | | |
| 73 | | | | | | |
| 74 | | | | | | |
| 75 | | | | | | |
| 76 | | | | | | |
| 77 | | | | | | |
| 78 | | | | | | |
| 79 | | | | | | |
| 80 | | | | | | |
| 81 | | | | | | |
| 82 | | | | | | |
| 83 | | | | | | |
| 84 | | | | | | |
| 85 | | | | | | |
| 86 | | | | | | |
| 87 | | | | | | |
| 88 | | | | | | |
| 89 | | | | | | |
| 90 | | | | | | |
| 91 | | | | | | |
| 92 | | | | | | |
| 93 | | | | | | |
| 94 | | | | | | |
| 95 | | | | | | |
| 96 | | | | | | |
| 97 | | | | | | |
| 98 | | | | | | |
| 99 | | | | | | |
| 100 | | | | | | |

| | Notice of References Cited | Application/Control No.<br>17/420,884 | Applicant(s)/Patent Under Reexamination<br>Galazin, Tony Matthew | |
|---|---|---|---|---|
| | | Examiner<br>Michael C Zarroli | Art Unit<br>3649 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20200313378-A1 | 10-2020 | Fyock; David | H02G11/00 | 1/1 |
| * | B | US-20170346244-A1 | 11-2017 | Comis; Shane | H01R13/72 | 1/1 |
| * | C | US-20170273203-A1 | 09-2017 | Iaconis; Jean-Louis | H02G3/18 | 1/1 |
| * | D | US-20180158305-A1 | 06-2018 | Noland; Bryan Lee | G08B21/0438 | 1/1 |
| * | E | US-7220128-B1 | 05-2007 | Hicks; Miguel | H01R25/00 | 439/502 |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 17/420,884 | Galazin, Tony Matthew |
| | **Examiner** | **Art Unit** |
| | Michael C Zarroli | 3649 |

**CPC - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| H01R13/74 OR H01R13/72 OR H01R24/68 OR H01R25/006 | 03/19/2023 | MCZ |

**CPC Combination Sets - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| | | |

**US Classification - Searched***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| H01R13/74 OR H01R13/72 OR H01R24/68 OR H01R25/006 | 03/21/2023 | MCZ |
| PE2E searches, see printout. | 03/22/2023 | MCZ |
| Inventor double patent search. Also search in PALM. | 03/19/2023 | MCZ |
| PE2E Similarity search. | 03/21/2023 | MCZ |
| Global Dossier & Common Citation searches. | 03/21/2023 | MCZ |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

/M.C.Z/
Primary Examiner, Art Unit 3649

## PE2E SEARCH - Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| L1 | 1 | (((("GALAZIN") near3 ("Tony"))).INV. | (US-PGPUB;  USPAT; USOCR;  EPO;  JPO; DERWENT) | ADJ | ON | ON | 2023/03/19 10:07 AM |
| L2 | 28685 | (H01R13/74 OR H01R13/72 OR H01R24/68 OR H01R25/006).cpc. | (US-PGPUB;  USPAT; USOCR;  FIT (CA, CN, EP, FR, JP, WO); FPRS;  EPO;  JPO; DERWENT;  IBM_TDB) | ADJ | ON | ON | 2023/03/19 10:08 AM |
| L3 | 29 | (Artificial Intelligence) Similar to: 17/420,884 with 0 CPC Selections and 0 Text Selections<br><br>Text:<br>(EP-4088350-A1 OR US-20210210915-A1 OR WO-2021141952-A1 OR US-8920191-B2 OR US-20140030910-A1 OR GB-2481736-A OR KR-101235586-B1 OR EP-1182747-B1 OR EP-1182747-A2 OR DE-20014760-U1 OR US-20170346244-A1 OR KR-100991709-B1 OR CN-111564737-A OR CN-111564737-B OR ES-2239080-T3 OR CA-2159403-A1 OR KR-20050021644-A OR KR-20020071831-A OR US-9478920-B1 OR CN-115693232-A OR CN-210201361-U OR DE-202013102026-U1 OR US-20230027748-A1 OR US-9955601-B2 OR KR-20170065145-A OR US-10468835-B1 OR US-20190319411-A1 OR US-20170250509-A1 OR CN-111106496-A OR US-10122127-B2 OR CA-2959323-A1 OR GB-2561268-B OR US-5539821-A OR WO-2013106297-A1 OR CA-2646781-C OR US-6379182-B1 OR CN-113363779-A OR US- | (US-PGPUB;  USPAT; USOCR;  FIT (CA, CN, EP, FR, JP, WO)) | ADJ | ON | ON | 2023/03/19 10:09 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 4863398-A OR DE-102007051053-A1 OR US-11355891-B2 OR CN-111628365-A OR KR-101382698-B1 OR US-4447106-A OR DE-102017012143-A1 OR DE-102017012143-B4 OR DE-202019102122-U1 OR DE-102007002307-A1 OR GB-2561267-B OR US-11201444-B1 OR DE-102014215077-B4).did. | | | | | |
| L4 | 38 | (Artificial Intelligence) More like doc: US-20210210915-A1 Text: (WO-2021141952-A1 OR EP-4088350-A1 OR US-11271351-B1 OR US-5895275-A OR US-6004138-A OR WO-2019162691-A1 OR US-20210050695-A1 OR US-11303080-B2 OR GB-2571295-A OR US-20220077622-A1 OR US-9525232-B1 OR CA-2947173-C OR US-4553798-A OR US-5957701-A OR US-20170346244-A1 OR WO-2022174115-A1 OR US-8834210-B2 OR US-20130052882-A1 OR US-11450997-B1 OR WO-2018111678-A1).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/19 10:11 AM |
| L5 | 78 | L2 AND (wall NEAR outlet) AND plug AND cord AND faceplate | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/19 10:21 AM |
| L6 | 28 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20230027748-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US- | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/19 10:27 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 10468835-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-11271351-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A).did. AND USPT.dbnm.) OR ((EP-1182747-B1 OR WO-2013106297-A1 OR WO-2021141952-A1).did. AND FTDB.dbnm.) OR ((CA-3148560-A1 OR GB-2571295-A OR US-6004138-A).did. AND DWPI.dbnm.) | | | | | |
| L7 | 77 | ("6004138"\|"20150129722"\|"9965007"\|"7220128") | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2023/03/19 10:33 AM |
| L8 | 4 | ("6004138"\|"20150129722"\|"9965007"\|"7220128").pn. | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2023/03/19 10:33 AM |
| L9 | 30 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20230027748-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-10468835-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-11271351-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A).did. AND | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/19 10:36 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | USPT.dbnm.) OR ((EP-1182747-B1 OR WO-2013106297-A1 OR WO-2021141952-A1).did. AND FTDB.dbnm.) OR ((CA-3148560-A1 OR GB-2571295-A OR US-6004138-A).did. AND DWPI.dbnm.) | | | | | |
| L10 | 30 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20230027748-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-10468835-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-11271351-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A).did. AND USPT.dbnm.) OR ((EP-1182747-B1 OR WO-2013106297-A1 OR WO-2021141952-A1).did. AND FTDB.dbnm.) OR ((CA-3148560-A1 OR GB-2571295-A OR US-6004138-A).did. AND DWPI.dbnm.) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/19 10:55 AM |
| L11 | 33 | (Artificial Intelligence) More like doc: GB-2571295-A<br>Text: (WO-2019162691-A1 OR US-20210050695-A1 OR US-11303080-B2 OR EP-4088350-A1 OR US-20210210915- | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, | ADJ | ON | ON | 2023/03/19 02:27 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | A1 OR GB-201802910-D0 OR GB-2571295-B OR US-20220393408-A1 OR US-20210143587-A1 OR WO-2021141952-A1 OR US-11462865-B2 OR US-5895275-A OR US-6004138-A OR TW-200950232-A OR US-20100099287-A1 OR WO-2022174115-A1 OR CA-3148560-A1 OR WO-2004015824-A1 OR US-20130248242-A1 OR US-8723055-B2).did. | MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
| L12 | 37 | (Artificial Intelligence) More like doc: US-20170346244-A1<br><br>Text: (US-20210210915-A1 OR EP-4088350-A1 OR WO-2021141952-A1 OR US-20160329670-A1 OR US-8740627-B1 OR US-20140148049-A1 OR US-20150249310-A1 OR US-7220128-B1 OR US-8221131-B1 OR US-20170098910-A1 OR US-6077086-A OR US-9478920-B1 OR US-20200313378-A1 OR US-20100035479-A1 OR CA-2730698-A1 OR US-10797456-B1 OR US-9660382-B2 OR GB-2553186-A OR US-20150129722-A1 OR US-7604511-B1).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/19 02:32 PM |
| L13 | 1 | ("6004138").pn. | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2023/03/19 02:40 PM |
| L14 | 27 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1).did. AND PGPB.dbnm.) OR | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/19 02:41 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | (((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A).did. AND USPT.dbnm.) OR (((WO-2021141952-A1 OR GB-2553186-A).did. AND FTDB.dbnm.) OR (((GB-2571295-A OR US-6004138-A).did. AND DWPI.dbnm.) | | | | | | |
| L15 | 26 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1).did. AND PGPB.dbnm.) OR (((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A).did. AND USPT.dbnm.) OR (((WO-2021141952-A1 OR GB-2553186-A).did. AND FTDB.dbnm.) OR (((GB-2571295-A).did. AND DWPI.dbnm.) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/19 02:43 PM |
| L16 | 25 | ((US-20210210915-A1 | (US-PGPUB; USPAT; | ADJ | ON | ON | 2023/03/19 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 OR GB-2553186-A).did. AND FTDB.dbnm.) OR ((GB-2571295-A).did. AND DWPI.dbnm.) | USOCR;  FIT (CA, CN, EP, FR, JP, WO); FPRS;  EPO;  JPO; IBM_TDB) | | | | | 02:44 PM |
| L17 | 26 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US- | (US-PGPUB;  USPAT; USOCR;  FIT (CA, CN, EP, FR, JP, WO); FPRS;  EPO;  JPO; DERWENT;  IBM_TDB) | ADJ | ON | ON | | 2023/03/20 11:15 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 5700150-A OR US-7220128-B1 OR US-6004138-A).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 OR GB-2553186-A).did. AND FTDB.dbnm.) OR ((GB-2571295-A).did. AND DWPI.dbnm.) | | | | | |
| L18 | 10 | ((GB-2571295-A).did. AND DWPI.dbnm.) OR ((US-20210143587-A1 OR US-20170346244-A1 OR US-20200313378-A1 OR US-20140148049-A1 OR US-20160079721-A1).did. AND PGPB.dbnm.) OR ((US-5895275-A OR US-7220128-B1 OR US-4553798-A OR US-6004138-A).did. AND USPT.dbnm.) OR ((GB-2553186-A).did. AND FTDB.dbnm.) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 11:16 AM |
| L19 | 38 | (Artificial Intelligence) More like doc: US-20200313378-A1<br><br>Text: (US-10797456-B1 OR US-9711900-B1 OR US-8221131-B1 OR CA-2769419-A1 OR US-11146019-B1 OR US-5957701-A OR US-20210135407-A1 OR US-11108197-B2 OR US-10931073-B1 OR US-9991627-B1 OR US-8070524-B2 OR US-6004138-A OR US-20180149350-A1 OR US-20140127948-A1 OR US-20110039453-A1 OR US-5895275-A OR US-6068490-A OR CA-2228089-A1 OR US-6118643-A OR US-8118616-B1).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 11:25 AM |
| L20 | 33 | (Artificial Intelligence) More like doc: GB-2571295-A<br><br>Text: (WO-2019162691-A1 OR US-20210050695-A1 OR US-11303080- | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, | ADJ | ON | ON | 2023/03/20 11:35 AM |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | B2 OR EP-4088350-A1 OR US-20210210915-A1 OR GB-201802910-D0 OR GB-2571295-B OR US-20220393408-A1 OR US-20210143587-A1 OR WO-2021141952-A1 OR US-11462865-B2 OR US-5895275-A OR US-6004138-A OR TW-200950232-A OR US-20100099287-A1 OR WO-2022174115-A1 OR CA-3148560-A1 OR WO-2004015824-A1 OR US-20130248242-A1 OR US-8723055-B2).did. | IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
| L21 | 37 | (Artificial Intelligence) More like doc: US-20170346244-A1<br><br>Text: (US-20210210915-A1 OR EP-4088350-A1 OR WO-2021141952-A1 OR US-20160329670-A1 OR US-8740627-B1 OR US-20140148049-A1 OR US-20150249310-A1 OR US-7220128-B1 OR US-8221131-B1 OR US-20170098910-A1 OR US-6077086-A OR US-9478920-B1 OR US-20200313378-A1 OR US-20100035479-A1 OR CA-2730698-A1 OR US-10797456-B1 OR US-9660382-B2 OR GB-2553186-A OR US-20150129722-A1 OR US-7604511-B1).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 11:39 AM |
| L22 | 40 | (Artificial Intelligence) More like doc: US-7220128-B1<br><br>Text: (US-20220077622-A1 OR US-20150056849-A1 OR US-9941648-B2 OR US-20080146054-A1 OR WO-2007081378-A1 OR US-20080188106-A1 OR US-7465178-B2 OR US-20080254661-A1 | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, | ADJ | ON | ON | 2023/03/20 11:47 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | OR US-7905737-B2 OR US-5735710-A OR US-20100184316-A1 OR US-5957701-A OR CA-2783131-C OR US-7374444-B1 OR CA-2783131-A1 OR US-20030224636-A1 OR GB-2553186-A OR US-20170346244-A1 OR US-9478920-B1 OR US-7604511-B1).did. | VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
| L23 | 37 | (Artificial Intelligence) More like doc: US-5895275-A<br><br>Text: (US-6004138-A OR WO-2021141952-A1 OR EP-4088350-A1 OR US-20210210915-A1 OR US-4553798-A OR WO-2017132738-A1 OR US-20140148049-A1 OR US-8740627-B1 OR CA-2889872-A1 OR US-6419504-B1 OR US-6945805-B1 OR US-6077086-A OR US-9496648-B1 OR US-8118616-B1 OR US-10797456-B1 OR US-20200313378-A1 OR US-20160322747-A1 OR CA-2889872-C OR US-7220128-B1 OR WO-2004015824-A1).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 11:53 AM |
| L24 | 7 | ((US-20200313378-A1 OR US-20170346244-A1).did. AND PGPB.dbnm.) OR ((US-10797456-B1 OR US-7220128-B1 OR US-5895275-A OR US-6004138-A).did. AND USPT.dbnm.) OR ((GB-2571295-A).did. AND DWPI.dbnm.) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 12:01 PM |
| L25 | 27 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 02:17 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | OR US-20200313378-A1 OR US-20140148049-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A OR US-10797456-B1).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 OR GB-2553186-A).did. AND FTDB.dbnm.) OR ((GB-2571295-A).did. AND DWPI.dbnm.) | | | | | |
| L26 | 9 | L25 AND faceplate | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 02:17 PM |
| L27 | 14 | L2 AND (interchangeable NEAR faceplate) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 02:25 PM |
| L28 | 0 | L2 AND ((swap OR swapping) NEAR faceplate) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 02:27 PM |
| L29 | 7 | ((US-20200313378-A1 OR US-20170346244-A1).did. AND PGPB.dbnm.) OR ((US-10797456-B1 OR US-7220128-B1 OR US-5895275-A OR US-6004138-A).did. AND USPT.dbnm.) OR ((GB-2571295-A).did. AND DWPI.dbnm.) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 02:33 PM |
| L30 | 0 | ("2020/0313378").urpn. AND (PGPB \| USPT \| USOC).dbnm. | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2023/03/20 02:38 PM |
| L31 | 38 | (Artificial Intelligence) | (US-PGPUB; USPAT; | ADJ | ON | ON | 2023/03/20 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | More like doc: US-20200313378-A1 <br><br> Text: (US-10797456-B1 OR US-9711900-B1 OR US-8221131-B1 OR CA-2769419-A1 OR US-11146019-B1 OR US-5957701-A OR US-20210135407-A1 OR US-11108197-B2 OR US-10931073-B1 OR US-9991627-B1 OR US-8070524-B2 OR US-6004138-A OR US-20180149350-A1 OR US-20140127948-A1 OR US-20110039453-A1 OR US-5895275-A OR US-6068490-A OR CA-2228089-A1 OR US-6118643-A OR US-8118616-B1).did. | USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | 02:38 PM |
| L32 | 12 | ("5895275" \| "5957701" \| "6004138" \| "6068490" \| "6638074" \| "7997546" \| "8802985" \| "9124044" \| "9742094" \| "20140213072" \| "20170302026" \| "20170346244").pn. OR ("10797456").urpn. AND (PGPB \| USPT \| USOC).dbnm. | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2023/03/20 02:41 PM |
| L33 | 38 | (Artificial Intelligence) More like doc: US-10797456-B1 <br><br> Text: (US-20200313378-A1 OR US-9711900-B1 OR US-8221131-B1 OR CA-2769419-A1 OR US-11146019-B1 OR US-20210135407-A1 OR US-11108197-B2 OR US-10931073-B1 OR US-9991627-B1 OR US-6004138-A OR US-20180149350-A1 OR US-20140127948-A1 OR US-20110039453-A1 OR US-9124044-B2 OR US-5895275-A OR US-6118643-A OR US-8118616-B1 OR US-9960539-B2 OR US-9478920-B1 OR US- | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 02:44 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 20150270673-A1).did. | | | | | |
| L34 | 6 | L2 AND (decorative NEAR faceplate) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 03:54 PM |
| L35 | 5 | L2 AND (detachable NEAR faceplate) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/20 03:57 PM |
| L36 | 30 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1 OR US-20140030910-A1 OR US-20170273203-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A OR US-10797456-B1).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 OR GB-2553186-A).did. AND FTDB.dbnm.) OR ((GB-2571295-A OR US-20200244022-A1).did. AND DWPI.dbnm.) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/21 11:38 AM |
| L37 | 17 | (L36 OR L35 OR L34) AND (adhesive OR glue OR velcro OR (hook loop)) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/21 12:26 PM |

| L38 | 13 | (L36 OR L35 OR L34) AND ((adhesive OR glue OR velcro OR (hook loop)) SAME wall) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/21 12:27 PM |
|-----|-----|-----|-----|-----|-----|-----|-----|
| L39 | 10 | (L36 OR L35 OR L34) AND ((adhesive OR glue OR velcro OR (hook loop)) WITH wall) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/21 12:28 PM |
| L40 | 17 | (L36 OR L35 OR L34) AND ((adhesive OR glue OR velcro OR (hook loop) WITH wall)) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/21 12:30 PM |
| L41 | 10 | (L36 OR L35 OR L34) AND ((adhesive OR glue OR velcro) WITH wall) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/21 12:31 PM |
| L42 | 30 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1 OR US-20140030910-A1 OR US-20170273203-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A OR US-10797456-B1).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 OR GB-2553186-A).did. AND FTDB.dbnm.) OR ((GB-2571295-A OR | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/21 01:43 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | US-20200244022-A1).did. AND DWPI.dbnm.) | | | | | |
| L43 | 10 | L42 AND USB | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/21 01:43 PM |
| L44 | 2 | L42 AND WiFi | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/21 01:52 PM |
| L45 | 3 | L42 AND (Wi Fi) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/21 01:52 PM |
| L46 | 5 | L2 AND (WiFi WITH (wall outlet)) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/22 09:16 AM |
| L47 | 4 | L2 AND (WiFi WITH (wall outlet)) | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2023/03/22 09:17 AM |
| L48 | 4 | L2 AND (WiFi WITH (wall NEAR outlet)) | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2023/03/22 09:17 AM |
| L49 | 0 | L42 AND (WiFi WITH (wall NEAR outlet)) | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2023/03/22 09:18 AM |
| L50 | 1 | L42 AND (Wi Fi WITH (wall NEAR outlet)) | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2023/03/22 09:18 AM |
| L51 | 82 | (Wi Fi WITH (wall NEAR outlet)) | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2023/03/22 09:19 AM |
| L52 | 32 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1 OR US-20200253029-A1 OR US-20180158305-A1 OR US-20140030910-A1 OR US-20170273203-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US- | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/22 09:47 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A OR US-10797456-B1).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 OR GB-2553186-A).did. AND FTDB.dbnm.) OR ((GB-2571295-A OR US-20200244022-A1).did. AND DWPI.dbnm.) | | | | | |

## PE2E SEARCH – Search History (Interference)

There are no Interference searches to show.

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (02-18)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Receipt date: 07/06/2021 | Application Number | 17/420,884 – GAU: 3649 |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Filing Date | |
| | First Named Inventor | Tony Matthew Galazin |
| | Art Unit | |
| | Examiner Name | Zarroli |
| | Attorney Docket Number | 48071-00006 |

| | | | | U.S.PATENTS | | Remove |
|---|---|---|---|---|---|---|

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 4553798 | A | 1985-11-19 | MURPHY | |
| | 2 | 5957701 | A | 1999-09-28 | MCMILLIN | |
| | 3 | 6004138 | A | 1999-12-21 | HARBERTSON | |

If you wish to add additional U.S. Patent citation information please click the Add button. | Add

| | | | U.S.PATENT APPLICATION PUBLICATIONS | | | Remove |
|---|---|---|---|---|---|---|

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20130052882 | A2 | 2013-02-28 | BRAUSEN | |
| | 2 | 20170346244 | A1 | 2017-11-30 | COMIS | |

If you wish to add additional U.S. Published Application citation information please click the Add button. | Add

| | | | FOREIGN PATENT DOCUMENTS | | | Remove |
|---|---|---|---|---|---|---|

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C.Z/

EFS Web 2.1.18

17/420,884 - GAU: 3649

| Receipt date: 07/06/2021 **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | | Application Number | |
|---|---|---|---|
| | | Filing Date | |
| | | First Named Inventor | Tony Matthew Galazin |
| | | Art Unit | |
| | | Examiner Name | |
| | | Attorney Docket Number | 48071-00006 |

| | 1 | 2571295 | GB | A | 2019-08-28 | INTELLECTUAL PRODUCTS LTD. | |
|---|---|---|---|---|---|---|---|

If you wish to add additional Foreign Patent Document citation information please click the Add button    Add

### NON-PATENT LITERATURE DOCUMENTS    Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | International Search Report and Written Opinion mailed April 6, 2021; International Patent Application No. PCT/US2021/012261 filed on January 6, 2021. | |

If you wish to add additional non-patent literature document citation information please click the Add button    Add

### EXAMINER SIGNATURE

| Examiner Signature | /MICHAEL C ZARROLI/  (03/21/2023) | Date Considered | 03/21/2023 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C.Z/

EFS Web 2.1.18

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | |
|---|---|---|
| | Filing Date | |
| | First Named Inventor | Tony Matthew Galazin |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | 48071-00006 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

See attached certification statement.

The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

✕ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Todd A. Benni/ | Date (YYYY-MM-DD) | 2021-07-06 |
|---|---|---|---|
| Name/Print | Todd A. Benni | Registration Number | 42313 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.18

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C.Z/

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,884 | 07/06/2021 | Tony Matthew Galazin | 48071-00006 | 5873 |

33772          7590          03/27/2023
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| EXAMINER |
|---|
| ZARROLI, MICHAEL C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3649 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/27/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ipmailbox@mcdonaldhopkins.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | **Application No.**<br>17/420,884 | **Applicant(s)**<br>Galazin, Tony Matthew | |
|---|---|---|---|
| | **Examiner**<br>Michael C Zarroli | **Art Unit**<br>3649 | **AIA (FITF) Status**<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☑ Responsive to communication(s) filed on 7/6/2021.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☐ This action is **FINAL.**    2b) ☑ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) _1-12 and 14-17_ is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) 1-12 and 14-17 is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10)☑ The specification is objected to by the Examiner.
11)☑ The drawing(s) filed on 7/6/2021 is/are: a)☐ accepted or b)☑ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
**Certified copies:**
    a)☐ All    b)☐ Some**    c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
    Paper No(s)/Mail Date 7/6/2021.

3) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 11-13)          Office Action Summary          Part of Paper No./Mail Date 20230320

Application/Control Number: 17/420,884                                    Page 2
Art Unit: 3649

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Drawings*

2.      The drawings are objected to under 37 CFR 1.83(a).  The drawings must show every feature of the invention specified in the claims.  Therefore, the "**engagement portion**" and "**outlet receptacles**" and the must be shown or the feature(s) canceled from the claim(s).  No new matter should be entered.

Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office action to avoid abandonment of the application. Any amended replacement drawing sheet should include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is being amended. The figure or figure number of an amended drawing should not be labeled as "amended." If a drawing figure is to be canceled, the appropriate figure must be removed from the replacement sheet, and where necessary, the remaining figures must be renumbered and appropriate changes made to the

Application/Control Number: 17/420,884                                    Page 3
Art Unit: 3649

brief description of the several views of the drawings for consistency. Additional

replacement sheets may be necessary to show the renumbering of the remaining

figures. Each drawing sheet submitted after the filing date of an application must

be labeled in the top margin as either "Replacement Sheet" or "New Sheet"

pursuant to 37 CFR 1.121(d). If the changes are not accepted by the examiner, the

applicant will be notified and informed of any required corrective action in the

next Office action. The objection to the drawings will not be held in abeyance.

### *Specification*

3.      The abstract of the disclosure is objected to because it is greater than 150

words.  Correction is required.  See MPEP § 608.01(b).

### *Claim Rejections - 35 USC § 102*

4.      In the event the determination of the status of the application as subject to

AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is

incorrect, any correction of the statutory basis for the rejection will not be

considered a new ground of rejection if the prior art relied upon, and the

rationale supporting the rejection, would be the same under either status.

Application/Control Number: 17/420,884                                      Page 4

Art Unit: 3649

1.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102

that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (a)(2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

2.      Claims 1-4, 6-7, 11 are rejected under 35 U.S.C. 102(a)(2) as being clearly

anticipated by Fyock (US2020/0313378A).

A wall outlet extender (fig. 1) comprising:

a plug end (12) configured to selectively plug into a wall outlet (14 in fig. 7), an

outlet end (54) configured to selectively receive one or more plugs (54 in fig. 7),

an extendable shaft (42) positioned between the plug end and the outlet end (fig.

2), wherein the plug end is rotatable (figures 5 & 6 at curved double ended

arrow), and

an electrical cord (68) portion positioned between the extendable shaft and the

plug end (figures 4a/b).

Claim 2 Fyock discloses that the extendable shaft includes two or more

telescoping portions (fig. 5 at 42/38/40).

Claim 3 Fyock discloses (fig. 6) that the extendable shaft includes a first

telescoping portion (38) having a first diameter and a second telescoping portion

Application/Control Number: 17/420,884                                    Page 5
Art Unit: 3649

having a second diameter (40), wherein the first diameter is larger than the

second diameter.

Claim 4 Fyock discloses that the first telescoping portion is configured to

internally receive the second telescoping portion in a retracted position (figures 5

& 6).

Claim 6 Fyock discloses the plug end is rotatable about 360° (fig. 5, 16 rotates

within circle 28).

Claim 7 Fyock discloses an engagement portion, wherein the engagement portion

is positioned on a wall-facing side of the outlet end (54) and is configured to

selectively engage the wall (fig. 7).

Claim 11 Fyock discloses that the outlet end comprises a device cradle (60)

configured to hold a device while the device is plugged into the outlet end.



Application/Control Number: 17/420,884 Page 6
Art Unit: 3649

### *Claim Rejections - 35 USC § 103*

5. In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

6. The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

7. Claim 5 is rejected under 35 U.S.C. 103 as being unpatentable over Fyock (US2020/0313378A).

Fyock does not disclose that the shaft is extendable between 21 and 34 inches. At the time the invention was made it would have been well within the knowledge of one of ordinary skill to adjust the extension range of the shaft of Fyock to be within a certain range. Regarding the particular dimensions of the extendable shaft of Fyock, to the extent that Fyock does not specify exact

Application/Control Number: 17/420,884                                    Page 7
Art Unit: 3649

dimensions, at the time of the invention, workable dimensions of the shaft would have been a matter of routine experimentation.  *In re Antonie*, 559 F.2d 618 (CCPA 1977).  Variations in the distance would have been obvious minor adjustments without patentable significance.  See *In re Aller*, 105 USPQ 233 (CCPA 1955) (Where general conditions of the claim are disclosed in the prior art, it is not inventive to discover optimal or workable ranges by routine experimentation).

8.      Claims 8-9 are rejected under 35 U.S.C. 103 as being unpatentable over Fyock in view of Hicks.

Fyock does not disclose one or more outlet receptacles are attachable to the wall by temporary adhesive, putty, or stickable surface.

Hicks discloses an outlet receptacle stuck onto a wall with adhesive (col. 3 ll 59 to col. 4 ll 6).  At the time the invention was made it would have been well known to one of ordinary skill to utilize some type of affixing material as taught by Hicks to stick the outlet receptacle of Fyock onto a wall.

Claim 9 Hicks discloses that the one or more outlet receptacles are free from any attachment to the wall that traverses or damages the wall surface ("two-sided adhesive tape").

Application/Control Number: 17/420,884                                    Page 8

Art Unit: 3649

9.      Claim 10 is rejected under 35 U.S.C. 103 as being unpatentable over Fyock

(US2020/0313378A) in view of Comis.

Fyock discloses that the outlet end includes an even number of outlets (2) but

does not disclose a USB outlet.

Comis discloses an outlet end includes one USB port (claim 10).

At the time the invention was made it would have been well known to one of

ordinary skill to include a USB port as taught by Comis on the outlet end of Fyock.

A motivation for this would be to increase device functionality. The claim would

have been obvious because the technique for improving a particular class of

devices (including a USB port) was part of the ordinary capabilities of a person of

ordinary skill in the art, in view of the teaching of the technique for improvement

in other situations.

10.     Claim 12 is rejected under 35 U.S.C. 103 as being unpatentable over Fyock

in view of Noland et al.

Fyock does not disclose that the wall outlet includes WiFi capabilities.

Noland discloses a wall outlet with WiFi capabilities (¶0079 & ¶0230). At the time

the invention was made it would have been well known to one of ordinary skill in

this art to include WiFi capabilities as taught by Noland with the outlet of Fyock.

One motivation for this combination could be to increase functionality of the

Application/Control Number: 17/420,884                                    Page 9

Art Unit: 3649

whole device. The claim would have been obvious because the technique for

improving a particular class of devices (including WiFi capability) was part of the

ordinary capabilities of a person of ordinary skill in the art, in view of the teaching

of the technique for improvement in other situations.

11.    Claims 14 & 17 are rejected under 35 U.S.C. 103 as being unpatentable over

Fyock (US2020/0313378A) in view of Iaconis.

An extendable power outlet adaptor (fig. 7), comprising:

a plug (12) selectively configured to insert into a wall outlet (14),

a shaft (42) that is telescopic (fig. 5) and that is rotatable about the plug up to

360° (fig. 5 double ended arrow),

one or more outlet receptacles (figures 1 & 3 at 66; fig. 5 at 16), connected to the

shaft that are selectively attachable to a position on a wall (fig. 7);

an interchangeable faceplate selectively attached with the one or more outlet

receptacles, and

an electrical cord (68) portion positioned between the extendable shaft and the

plug end (figures 4a/b).

Fyock does not disclose an interchangeable faceplate.

Application/Control Number: 17/420,884                                  Page 10
Art Unit: 3649

Iaconis discloses interchanging faceplates for outlet receptacles (120 in figures 1, 5, 10 & 11).  At the time the invention was made it would have been well known to one of ordinary skill in this art to provide interchangeable faceplates as taught by Iaconis for the outlet receptacles of Fyock.  A motivation for this would be to provide decorative faceplates.

Claim 17 Fyock discloses that the one or more outlet receptacles may be removed and repositioned onto the wall (e.g. figure 7 outlet 54 could be rotated along with the extension shaft up higher on the wall).

12.    Claims 15-16 are rejected under 35 U.S.C. 103 as being unpatentable over Fyock in view of Iaconis as applied to claim 14 above, and further in view of Hicks. Fyock does not disclose one or more outlet receptacles are attachable to the wall by temporary adhesive, putty, or stickable surface.

Hicks discloses an outlet receptacle stuck onto a wall with adhesive (col. 3 ll 59 to col. 4 ll 6).  At the time the invention was made it would have been well known to one of ordinary skill to utilize some type of affixing material as taught by Hicks to stick the outlet receptacle of Fyock onto a wall.

Claim 16 Hicks discloses that the one or more outlet receptacles are free from any attachment to the wall that traverses or damages the wall surface ("two-sided adhesive tape").

Application/Control Number: 17/420,884                                        Page 11
Art Unit: 3649

### *Conclusion*

13.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to Michael C Zarroli whose telephone number is (571)272-2101. The examiner can normally be reached Monday-Friday 9-5 ET IFP.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Darnell M Jayne can be reached on 5712727723. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business

Application/Control Number: 17/420,884                                    Page 12
Art Unit: 3649

Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA)

or 571-272-1000.

MICHAEL C. ZARROLI
Primary Examiner
Art Unit 3649


/MICHAEL C ZARROLI/
Primary Examiner, Art Unit 3649
/M.C.Z/
Primary Examiner, Art Unit 3649



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 17/420,884 | 07/06/2021 | Tony Matthew Galazin | 48071-00006 |

**CONFIRMATION NO. 5873**

33772
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

**PUBLICATION NOTICE**


*OC000000137855589*

**Title:** WALL MOUNTING OUTLET EXTENDER

**Publication No.** US-2023-0140080-A1
**Publication Date:** 05/04/2023

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Public Records Division. The Public Records Division can be reached by telephone at (571) 272-3150 or (800) 972-6382, by facsimile at (571) 273-3250, by mail addressed to the United States Patent and Trademark Office, Public Records Division, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently https://portal.uspto.gov/pair/PublicPair. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>17/420,884 | Filing Date<br>07/06/2021 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE  ☑ SMALL  ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | x $50 = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | x $240 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 09/27/2023 | | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | | x $40 = | 0 |
| | Independent<br>(37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | | x $192 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | | x $0 = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | SLIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /SHANDA E ROSS/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Patent Application

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re application: | Tony Matthew Galazin | Group Art Unit: | 3649 |
| Serial No.: | 17/420,884 | Examiner: | Zarroli, Michael C. |
| Filing Date: | July 6, 2021 | Docket No.: | 48071-00006 |
| | | Confirmation No.: | 5873 |

Title:   WALL MOUNTING OUTLET EXTENDER

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

### RESPONSE TO NON-FINAL OFFICE ACTION

Dear Examiner Zarroli:

Applicant acknowledges receipt of the Non-Final Office Action with a notification date of March 27, 2023, setting a shortened statutory period of reply of three months. As this Response is being filed electronically on September 27, 2023, along with a petition for a three-month extension of time, Applicant believes no additional fees are due. However, if any fees are required for filing this Response, please charge such fees to our Deposit Account No. 13-0265 identifying attorney docket no. 48071-00006.

Applicant respectfully requests that the Patent Office consider the following Amendments and Remarks in examining the present application.

1

32295777.2

## <u>AMENDMENT TO THE CLAIMS</u>

This listing of claims will replace all prior versions, and listings, of claims in the application:

1. (Currently Amended) A wall outlet extender comprising:

a plug end configured to selectively plug into a wall outlet[[,]];

an outlet end configured to selectively receive one or more plugs[[,]];

an extendable shaft positioned between the plug end and the outlet end, wherein the plug end is rotatable[[,]]; and

an electrical cord portion positioned between the extendable shaft and the plug end, <u>wherein the extendable shaft comprises a bend collar configured to enable flexibility in the extendable shaft adjacent to the plug end</u>.

2. (Original) The wall outlet extender of claim 1, wherein the extendable shaft includes two or more telescoping portions.

3. (Original) The wall outlet extender of claim 2, wherein the extendable shaft includes a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter is larger than the second diameter.

4. (Original) The wall outlet extender of claim 3, wherein the first telescoping portion is configured to internally receive the second telescoping portion in a retracted position.

5. (Original) The wall outlet extender of claim 4, wherein the extendable shaft is extendable from about 21 inches to about 34 inches.

6. (Previously Presented) The wall outlet extender of claim 1, wherein the plug end is rotatable about 360°.

2

7. (Previously Presented) The wall outlet extender of claim 1 further comprising an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall.

8. (Original) The wall outlet extender of claim 7, wherein the engagement portion comprises a non-permanent adhesive, removable putty, or stickable surface.

9. (Original) The wall outlet extender of claim 8, wherein the engagement portion is free from any attachment to the wall that traverses or damages the wall surface.

10. (Previously Presented) The wall outlet extender of claim 1, wherein the outlet end includes an even number of outlets and at least one USB port.

11. (Previously Presented) The wall outlet extender of claim 1, wherein the outlet end comprises a device cradle configured to hold a device while the device is plugged into the outlet end.

12. (Previously Presented) The wall outlet extender of claim 1, wherein the wall outlet extender comprises Bluetooth or Wi-Fi connectivity capabilities.

13. (Canceled)

14. (Currently Amended) An extendable power outlet adaptor, comprising:

a plug selectively configured to insert into a wall outlet[[,]];

an extendable shaft that comprises a bend collar is telescopic and that is rotatable about the plug up to 360°[[,]];

one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall;

an interchangeable faceplate selectively attached with the one or more outlet receptacles[[,]]; and

an electrical cord portion positioned between the extendable shaft and the plug end.

3

4

15. (Original) The extendable power outlet adaptor of claim 14, wherein the one or more outlet receptacles are attachable to the wall by temporary adhesive, putty, or stickable surface.

16. (Original) The extendable power outlet adaptor of claim 15, wherein the one or more outlet receptacles are free from any attachment to the wall that traverses or damages the wall surface.

17. (Previously Presented) The extendable power outlet adaptor of claim 14, wherein the one or more outlet receptacles may be removed and repositioned onto the wall.

18. (Canceled)

19. (New) The extendable power outlet adaptor of claim 14, wherein the plug end is replaceable with a different type of plug.

20. (New) The extendable power outlet adaptor of claim 14, wherein the plug end comprises Type A, B, C, D, E, F, G, H, I, J, K, L, M, N or O IEC plug ends, a 120 volt end or a 240 volt end.

21. (New) The extendable power outlet adaptor of claim 14, further comprises at least one USB port.

22. (New) The extendable power outlet adaptor of claim 14, further comprises a device cradle that includes wireless charging technology configured to hold a device and facilitate charging the device.

4

## AMENDMENT TO THE SPECIFICATION

I.    Please replace the abstract with the following amended abstract.

Provided is a wall power outlet extender that ~~may be positioned or mounted on a wall and that~~ may relocate the wall power outlet to a different position ~~on the wall~~ without requiring electrical work or professional installation and without cluttering adjacent surfaces. The wall power outlet extender may be positionable along a surface of a wall adjacent to a wall power outlet and may allow a user to semi-permanently relocate the wall power outlet. The wall power outlet extender may be made fixed and stationary at a particular position and relatively unmovable unless acted on or repositioned by a user. The wall power outlet extender may be selectively rotatable and/or telescopic, and include a spinning or ambidextrous plug, to be adaptable to the specific location and to provide a myriad of different positions in which the new outlet may be placed. The wall power outlet extender may feature multiple outlets, USB ports, and surge protection, as well as Bluetooth and wireless capabilities.

II.    Please replace paragraph [0046] with the following amended paragraph.

In an embodiment, the outlet extender 100 may be selectively extendable. In an embodiment, the elongated extender 130 may be selectively extendable permitting the outlet extender 100 to be extendable. As shown in FIGS. 2A-D, the elongated extender 130 may be transitioned between a retracted state (FIG. 2A, 2B) to an extended state (FIG. 2C, 2D). The extension may be facilitated by telescoping sections or members, wherein one or more sections of the elongated extender 130 may be of a smaller diameter than the immediately adjacent section (located at one of the section's ends) such that the smaller diameter section (see, e.g. 132) may nest into the larger diameter section (see, e.g. 134). The larger diameter section 134 may similarly nest into an even larger diameter section and the small diameter section 132 may similarly be able to nest within it an even smaller diameter section. The elongated extender 130 may include two or more telescoping sections including three, four, five, six, seven, eight, etc. sections. The sections may be at least partially hollow so as to accommodate smaller diameter

5

32295777.2

telescoping sections in a collapsed state, as well as electrical lines running through the elongated extender 130 and between the plug end 110 and the outlet end 120.

III.    Please replace paragraph [0054] with the following amended paragraph.

Turning to FIGS. 5-11 showing non-limiting detailed embodiments of the housing and components of an outlet extender, FIGS. 5-11 show exploded views and components of an outlet end 120 (such as FIGS. 5-6), extendable shaft 130 (such as FIGS. 9 and 10), and plug end 110 (such as FIGS. ~~8,~~ 8 and 11).

IV.    Please replace paragraph [0056] with the following amended paragraph.

FIG. 7 shows an embodiment of a plug end 110 and extendable shaft 130 of an outlet extender 100 where FIG. 8 depicts an exploded view of an embodiment of the plug end 110 of the outlet extender 100 and FIG. 9 depicts an exploded view of an embodiment of the extendable shaft 130 of the outlet extender ~~10.~~ 100. In an embodiment and as shown in FIG. 8, the plug end 110 may include a plug faceplate 230, an inset band 234, fasteners 238 or another type of fitting mechanism as described herein, a front plug housing 242, an outer ring 246 and inner ring 250, a swivel seat 254, a plug 258, and a rear plug housing 262. The swivel seat 254 may facilitate rotation of the outlet extender 100 about an axis defined by the plug 258 as described herein. FIGS. 11A-C show a non-limiting embodiment of the front plug housing 242.

6

32295777.2

## REMARKS

The Non-Final Office Action dated March 27, 2023, has been carefully reviewed and the following amendments and remarks are responsive thereto. Prior to this response, claims 1-12 and 14-17 were pending and claims 13 and 18 were canceled. By this response, claims 1 and 14 have been amended. In conformance with the applicable statutory requirements, this paper constitutes a complete reply and/or a bona fide attempt to advance the application to allowance. Favorable consideration of the claims now presented is respectfully requested, in view of the remarks and amendments set forth herein.

### Drawings

The "engagement portion" is shown in the drawings as element 140. The "outlet receptacles" is shown in the drawings as elements 122, 124. Applicant respectfully requests, therefore, withdrawal of the objection of the drawings and requests indication of acceptance of the drawings.

### Specification

Applicant amended the abstract consistent with the direction provided in the office action. Applicant further amended paragraphs 46, 54, and 56 to correct typographical errors therein. Applicant, therefore, respectfully requests withdrawal of the objection and requests indication of acceptance of the abstract.

### §102 Rejection

7

32295777.2

Claims 1-4, 6-7, and 11 stand rejected under 35 U.S.C. § 102(a)(2) as being anticipated over US2020/0313378A (hereinafter, "Fyock").

Claim 1 is amended to recite, "wherein the extendable shaft comprises a bend collar configured to enable flexibility in the extendable shaft adjacent to the plug end." Fyock does not teach or disclose a bend collar.

For at least the reasons cited above, Fyock does not teach of or disclose the limitations recited in independent claim 1. Therefore, claim 1 is not anticipated by Fyock. Claims 3-4, 6-7, and 11, which depend in one way or another from claim 1, are allowable for at least the same reasons.

### §103 Rejection

Claim 5 stands rejected under 35 U.S.C. § 103 as being obvious over US2020/0313378A (hereinafter, "Fyock"). Claims 8-9 stand rejected under 35 U.S.C. § 103 as being obvious over Fyock in view of US 7,220,128 B1 (hereinafter, "Hicks"). Claim 10 stands rejected under 35 U.S.C. § 103 as being obvious over Fyock in view of US2017/0346244A1 (hereinafter, "Comis"). Claim 12 stands rejected under 35 U.S.C. § 103 as being obvious over Fyock in view of US2018/0158305A1 (hereinafter, "Noland"). Claims 14 and 17 stand rejected under 35 U.S.C. § 103 as being obvious over Fyock in view of Laconis. Claims 15-16 stand rejected under 35 U.S.C. § 103 as being obvious over Fyock in view of Laconis and further in view of Hicks.

Claim 14 is amended to recite, "a shaft that comprises a bend collar is telescopic and rotatable about the plug up to 360°." Fyock does not teach or disclose a bend collar.

For at least the reasons cited above, Fyock does not teach of or disclose the limitations recited in independent claims 1 and 14. Therefore, claims 1 and 14 are not anticipated by Fyock. Claims 5, 8-9, 10, and 12 depend on claim 1 and is allowable for at least the same reasons. Claims 15-17, which depend in one way or another from claim 14, are allowable for at least the same reasons.

8

32295777.2

**New Claims 19-22**

Applicant added claims 19, 20, 21, and 22 as indicated above. Applicant respectfully contends that no new matter has been added by way of these additional claims and that support for the additional claims may be found in the specification as originally filed. As claims 19-22 depend from claim 14, Applicant incorporates the arguments above regarding claim 14 being allowable. Applicant, therefore, respectfully contends that claims 19-22 are allowable and requests indication of such.

*Disclaimers or Disavowals*

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application. Applicant reserves the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

9

## CONCLUSION

Based on the foregoing remarks, the pending claims are believed to be in condition for allowance, and such allowance is courteously solicited. If any further amendment is necessary to advance prosecution and place this case in allowable condition, the Examiner is requested to contact the undersigned by e-mail or telephone at the contact information listed below.

In general, the Office Action makes various statements regarding the pending claims and the cited references that are now moot in light of the above amendments and remarks. Thus, those statements are not addressed at the present time. However, Applicant expressly reserves the right to challenge such statements in the future should the need arise (e.g., if any such statement should become relevant by appearing in a rejection of any current or future claim).

Respectfully submitted,

Date:   September 27, 2023

/Todd A. Benni/
Todd A. Benni - Reg. No. 42,313
McDonald Hopkins LLC
600 Superior Avenue, E.
Suite 2100
Cleveland, OH 44114-2653
(216) 348-5712
tbenni@mcdonaldhopkins.com

10

32295777.2

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 17420884 |
| **Filing Date:** | 06-Jul-2021 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Filer:** | Todd A. Benni/Danielle Mueller |
| **Attorney Docket Number:** | 48071-00006 |

Filed as Small Entity

**Filing Fees for   U.S. National Stage under 35 USC 371**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 3 months with $0 paid | 2253 | 1 | 592 | 592 |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **592** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 48645551 |
| **Application Number:** | 17420884 |
| **International Application Number:** | |
| **Confirmation Number:** | 5873 |
| **Title of Invention:** | WALL MOUNTING OUTLET EXTENDER |
| **First Named Inventor/Applicant Name:** | Tony Matthew Galazin |
| **Customer Number:** | 33772 |
| **Filer:** | Todd A. Benni/Danielle Mueller |
| **Filer Authorized By:** | Todd A. Benni |
| **Attorney Docket Number:** | 48071-00006 |
| **Receipt Date:** | 27-SEP-2023 |
| **Filing Date:** | 06-JUL-2021 |
| **Time Stamp:** | 09:30:35 |
| **Application Type:** | U.S. National Stage under 35 USC 371 |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $592 |
| RAM confirmation Number | E20239Q030588013 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | Response_-_NFOA_dated_3-27-2023_32578562v1.pdf | 162288 <br><br> 0f7527b5486b09b4088461f20453883f1f1fc48b | yes | 10 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |
| Amendment/Request for Reconsideration-After Non-Final Rejection | 1 | 1 |
| Claims | 2 | 4 |
| Specification | 5 | 6 |
| Applicant Arguments/Remarks Made in an Amendment | 7 | 10 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 38431 <br><br> ca70dc04f63839960088cd840d2d68b4f6656719 | no | 2 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 200719 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 17/420,884 | Galazin, Tony Matthew |
| | **Examiner** | **Art Unit** |
| | Michael C Zarroli | 3649 |

**CPC - Searched\***

| Symbol | Date | Examiner |
|---|---|---|
| H01R13/74 OR H01R13/72 OR H01R24/68 OR H01R25/006 | 03/19/2023 | MCZ |

**CPC Combination Sets - Searched\***

| Symbol | Date | Examiner |
|---|---|---|
| | | |

**US Classification - Searched\***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| H01R13/74 OR H01R13/72 OR H01R24/68 OR H01R25/006 | 03/21/2023 | MCZ |
| PE2E searches, see printout. | 11/13/2023 | MCZ |
| Inventor double patent search. Also search in PALM. | 03/19/2023 | MCZ |
| PE2E Similarity search. | 11/09/2023 | MCZ |
| Global Dossier & Common Citation searches. | 11/09/2023 | MCZ |
| GOOGLE Patents term search. | 11/13/2023 | MCZ |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| /M.C.Z/ <br> Primary Examiner, Art Unit 3649 | /M.C.Z/ <br> Primary Examiner, Art Unit 3649 |
|---|---|

U.S. Patent and Trademark Office | Page 1 of 1 | Part of Paper No.: 20231113

## PE2E SEARCH – Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| L51 | 82 | (Wi Fi WITH (wall NEAR outlet)) | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2023/03/22 09:19 AM |
| L52 | 32 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1 OR US-20200253029-A1 OR US-20180158305-A1 OR US-20140030910-A1 OR US-20170273203-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A OR US-10797456-B1).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 OR GB-2553186-A).did. AND FTDB.dbnm.) OR ((GB-2571295-A OR US-20200244022-A1).did. AND DWPI.dbnm.) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/03/22 09:47 AM |
| L53 | 37 | (Artificial Intelligence) More like doc: US-20210210915-A1<br><br>Text: (WO-2021141952-A1 OR EP-4088350-A1 OR US-20230140080-A1 | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, | ADJ | ON | ON | 2023/11/09 08:11 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | OR US-5895275-A OR US-6004138-A OR WO-2019162691-A1 OR US-20210050695-A1 OR US-11303080-B2 OR GB-2571295-A OR US-9525232-B1 OR CA-2947173-C OR CA-2947173-A1 OR US-4553798-A OR US-5957701-A OR US-20170346244-A1 OR US-9509080-B1 OR US-8834210-B2 OR US-20130052882-A1 OR WO-2018111678-A1 OR US-20110070773-A1).did. | IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
| L54 | 36 | (Artificial Intelligence) More like doc: WO-2021141952-A1<br><br>Text: (US-20210210915-A1 OR EP-4088350-A1 OR US-20230140080-A1 OR US-5895275-A OR US-6004138-A OR WO-2019162691-A1 OR US-20210050695-A1 OR US-11303080-B2 OR GB-2571295-A OR US-20110227535-A1 OR US-5957701-A OR US-4553798-A OR US-9525232-B1 OR CA-2947173-C OR CA-2947173-A1 OR US-20170346244-A1 OR US-8834210-B2 OR US-9509080-B1 OR US-20130052882-A1 OR WO-2018111678-A1).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/11/09 08:16 AM |
| L55 | 33 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1 OR US-20200253029-A1 OR US-20180158305- | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; | ADJ | ON | ON | 2023/11/09 08:19 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | A1 OR US-20140030910-A1 OR US-20170273203-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A OR US-10797456-B1).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 OR GB-2553186-A).did. AND FTDB.dbnm.) OR ((GB-2571295-A OR US-20200244022-A1).did. AND DWPI.dbnm.) | JPO; DERWENT; IBM_TDB) | | | | |
| L56 | 31 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1 OR US-20200253029-A1 OR US-20180158305-A1 OR US-20140030910-A1 OR US-20170273203-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US- | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; IBM_TDB) | ADJ | ON | ON | 2023/11/09 08:19 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A OR US-10797456-B1).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 OR GB-2553186-A).did. AND FTDB.dbnm.) OR ((GB-2571295-A OR US-20200244022-A1).did. AND DWPI.dbnm.) | | | | | |
| L57 | 3156 | L2 AND shaft | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; IBM_TDB) | ADJ | ON | ON | 2023/11/09 08:28 AM |
| L58 | 181 | L2 AND ((extend OR extend$4) NEAR shaft) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; IBM_TDB) | ADJ | ON | ON | 2023/11/09 08:29 AM |
| L59 | 252 | L2 AND ((extend OR extend$4) NEAR (shaft OR conduit)) | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; IBM_TDB) | ADJ | ON | ON | 2023/11/09 08:31 AM |
| L60 | 37 | (Artificial Intelligence) More like doc: US-20210210915-A1<br>Text: (WO-2021141952-A1 OR EP-4088350-A1 OR US-20230140080-A1 OR US-5895275-A OR US-6004138-A OR WO-2019162691-A1 OR US-20210050695-A1 OR US-11303080-B2 OR GB-2571295-A OR US-9525232-B1 OR CA-2947173-C OR CA-2947173-A1 OR US-4553798-A OR US-5957701-A OR US-20170346244-A1 OR US-9509080-B1 OR US-8834210-B2 OR US-20130052882-A1 OR WO-2018111678-A1 OR US-20110070773-A1).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/11/09 08:31 AM |
| L61 | 25 | (WO-2021141952-A1 OR EP-4088350-A1 OR | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, | ADJ | ON | ON | 2023/11/09 08:32 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | US-20230140080-A1 OR US-5895275-A OR US-6004138-A OR WO-2019162691-A1 OR US-20210050695-A1 OR US-11303080-B2 OR GB-2571295-A OR US-9525232-B1 OR CA-2947173-C OR CA-2947173-A1 OR US-4553798-A OR US-5957701-A OR US-20170346244-A1 OR US-9509080-B1 OR US-8834210-B2 OR US-20130052882-A1 OR WO-2018111678-A1 OR US-20110070773-A1).did. | AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN);  FPRS;  EPO; JPO;  IBM_TDB) | | | | |
| L62 | 3 | L2 AND ((flexible OR flex OR bendable) NEAR collar) | (US-PGPUB;  USPAT; USOCR;  FIT (CA, CN, EP, FR, JP, WO); FPRS;  EPO;  JPO; IBM_TDB) | ADJ | ON | ON | 2023/11/09 08:47 AM |
| L63 | 414 | (shaft WITH ((flexible OR flex OR bendable) NEAR collar)) | (US-PGPUB;  USPAT; USOCR;  FIT (CA, CN, EP, FR, JP, WO); FPRS;  EPO;  JPO; IBM_TDB) | ADJ | ON | ON | 2023/11/09 08:48 AM |
| L64 | 0 | (shaft WITH ((flexible OR flex OR bendable) NEAR collar)) AND (wall NEAR outlet) | (US-PGPUB;  USPAT; USOCR;  FIT (CA, CN, EP, FR, JP, WO); FPRS;  EPO;  JPO; IBM_TDB) | ADJ | ON | ON | 2023/11/09 08:49 AM |
| L65 | 7 | (shaft WITH ((flexible OR flex OR bendable) NEAR collar)) AND (wall WITH outlet) | (US-PGPUB;  USPAT; USOCR;  FIT (CA, CN, EP, FR, JP, WO); FPRS;  EPO;  JPO; IBM_TDB) | ADJ | ON | ON | 2023/11/09 08:50 AM |
| L66 | 13 | (shaft SAME ((flexible OR flex OR bendable) NEAR collar)) AND (wall WITH outlet) | (US-PGPUB;  USPAT; USOCR;  FIT (CA, CN, EP, FR, JP, WO); FPRS;  EPO;  JPO; IBM_TDB) | ADJ | ON | ON | 2023/11/09 08:51 AM |
| L67 | 32 | (Artificial Intelligence) Similar to: 17/420,884 with 0 CPC Selections and 0 Text Selections<br><br>Text: (US-20230140080-A1 OR EP-4088350-A1 OR US-20210210915-A1 OR WO-2021141952-A1 OR GB-2481736-A OR US-8920191-B2 OR | (US-PGPUB;  USPAT; USOCR;  FIT (CA, CN, EP, FR, JP, WO)) | ADJ | ON | ON | 2023/11/09 08:53 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | US-20150318648-A1 OR US-8221131-B1 OR KR-20020071831-A OR CA-2769419-A1 OR US-9478920-B1 OR US-20230318241-A1 OR AU-2011362547-A1 OR WO-2012122702-A1 OR US-20150079810-A1 OR KR-101235586-B1 OR US-9147984-B2 OR US-9373921-B1 OR US-20180115125-A1 OR EP-1182747-A2 OR EP-2686916-A1 OR TW-I533539-B OR DE-102007002307-A1 OR US-20180337498-A1 OR CN-111564737-A OR TW-201310821-A OR US-20170346244-A1 OR EP-1182747-B1 OR KR-100991709-B1 OR US-5542859-A OR CN-207303552-U OR ES-2239080-T3 OR CN-208508093-U OR KR-100652643-B1 OR TW-M552700-U OR KR-20060009100-A OR EP-1619763-B1 OR CA-2159403-A1 OR WO-2022088902-A1 OR EP-1619763-A2 OR US-7156673-B2 OR US-20060019519-A1 OR RU-2306648-C2 OR RU-2005123024-A OR CN-1725564-A OR JP-2018073807-A OR KR-20170065145-A OR US-20090093163-A1 OR US-7628621-B2 OR CN-210201361-U).did. | | | | | |
| L68 | 45 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1 OR US-20200253029-A1 | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/11/10 09:10 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | OR US-20180158305-A1 OR US-20230140080-A1 OR US-20150318648-A1 OR US-20230318241-A1 OR US-20150079810-A1 OR US-20180115125-A1 OR US-20180337498-A1 OR US-20090093163-A1 OR US-20140030910-A1 OR US-20170273203-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A OR US-10797456-B1 OR US-8221131-B1 OR US-9373921-B1 OR US-5542859-A OR US-7156673-B2).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 OR GB-2553186-A OR EP-1182747-A2 OR WO-2022088902-A1).did. AND FTDB.dbnm.) OR ((GB-2571295-A OR US-20200244022-A1).did. AND DWPI.dbnm.) | | | | | | |
| L69 | 43 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1 OR US-20200253029-A1 | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; IBM_TDB) | ADJ | ON | ON | 2023/11/10 09:10 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | OR US-20180158305-A1 OR US-20230140080-A1 OR US-20150318648-A1 OR US-20230318241-A1 OR US-20150079810-A1 OR US-20180115125-A1 OR US-20180337498-A1 OR US-20090093163-A1 OR US-20140030910-A1 OR US-20170273203-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A OR US-10797456-B1 OR US-8221131-B1 OR US-9373921-B1 OR US-5542859-A OR US-7156673-B2).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 OR GB-2553186-A OR EP-1182747-A2 OR WO-2022088902-A1).did. AND FTDB.dbnm.) OR ((GB-2571295-A OR US-20200244022-A1).did. AND DWPI.dbnm.) | | | | | |
| L70 | 37 | (Artificial Intelligence) More like doc: US-20200313378-A1<br><br>Text: (US-10797456-B1 OR US-20230291142-A1 OR US-20230127590-A1 OR US-11764528-B2 OR US-11146019-B1 OR US-5957701-A OR US-20210135407-A1 OR US-11735878- | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, | ADJ | ON | ON | 2023/11/13 07:35 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | B2 OR US-20230062070-A1 OR US-11108197-B2 OR US-9991627-B1 OR US-6004138-A OR US-20180149350-A1 OR US-9124044-B2 OR US-5895275-A OR US-6068490-A OR CA-2228089-A1 OR US-9960539-B2 OR US-20230140080-A1 OR US-9742094-B1).did. | VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
| L71 | 35 | (Artificial Intelligence) More like doc: US-20210210915-A1 Text: (WO-2021141952-A1 OR EP-4088350-A1 OR US-20230140080-A1 OR US-5895275-A OR US-6004138-A OR WO-2019162691-A1 OR US-20210050695-A1 OR US-11303080-B2 OR GB-2571295-A OR US-9525232-B1 OR CA-2947173-C OR CA-2947173-A1 OR US-4553798-A OR US-5957701-A OR EP-2686916-A1 OR US-20170346244-A1 OR AU-2011362547-A1 OR WO-2012122702-A1 OR US-20150079810-A1 OR US-9147984-B2).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/11/13 07:42 AM |
| L72 | 40 | (Artificial Intelligence) More like doc: US-9955601-B2 Text: (US-20170064848-A1 OR EP-3139454-B1 OR EP-3139454-A1 OR DE-102015114570-A1 OR CN-106410537-A OR CN-106410537-B OR JP-3238086-U OR TW-M600960-U OR DE-202013102026-U1 OR CN-212876380-U OR EP-3913780-A1 OR EP-3913780-B1 OR WO-2017182032-A1 OR US-20160226186-A1 OR JP-2013538422- | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/11/13 07:52 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | A OR JP-2013539191-A OR US-8932073-B2 OR US-20130210259-A1 OR JP-5595594-B2 OR CN-108377623-A).did. | | | | | |
| L73 | 4 | ((US-20200313378-A1).did. AND PGPB.dbnm.) OR ((US-10797456-B1 OR US-9955601-B2).did. AND USPT.dbnm.) OR ((US-20200313378-A1).did. AND DWPI.dbnm.) | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2023/11/13 08:00 AM |
| L74 | 3 | ((US-20200313378-A1).did. AND PGPB.dbnm.) OR ((US-10797456-B1 OR US-9955601-B2).did. AND USPT.dbnm.) OR ((US-20200313378-A1).did. AND DWPI.dbnm.) | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; IBM_TDB) | ADJ | ON | ON | 2023/11/13 08:00 AM |
| L75 | 3 | ((US-20200313378-A1).did. AND PGPB.dbnm.) OR ((US-10797456-B1 OR US-9955601-B2).did. AND USPT.dbnm.) OR ((US-20200313378-A1).did. AND DWPI.dbnm.) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; IBM_TDB) | ADJ | ON | ON | 2023/11/13 09:08 AM |

**PE2E SEARCH - Search History (Interference)**

| |
|---|
| There are no Interference searches to show. |

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,884 | 07/06/2021 | Tony Matthew Galazin | 48071-00006 | 5873 |

33772          7590          11/16/2023
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| EXAMINER |
|---|
| ZARROLI, MICHAEL C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3649 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 11/16/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ipmailbox@mcdonaldhopkins.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | **Application No.**<br>17/420,884 | **Applicant(s)**<br>Galazin, Tony Matthew | |
|---|---|---|---|
| | **Examiner**<br>Michael C Zarroli | **Art Unit**<br>3649 | **AIA (FITF) Status**<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on <u>9/27/2023</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☑ This action is **FINAL.**          2b) ☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)  ☑  Claim(s)  <u>1-12,14-17 and 19-22</u> is/are pending in the application.

  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)  ☐  Claim(s) _____ is/are allowed.

7)  ☑  Claim(s) <u>1-6,10-12,14-17 and 19-21</u> is/are rejected.

8)  ☑  Claim(s) <u>7-9 and 22</u> is/are objected to.

9)  ☐  Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☑ The drawing(s) filed on <u>7/6/2021</u> is/are:  a)☑  accepted or  b)☐ objected to by the Examiner.

  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a)☐ All     b)☐ Some**     c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
  Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

Application/Control Number: 17/420,884                                                    Page 2
Art Unit: 3649

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### *Claim Rejections - 35 USC § 103*

2.      In the event the determination of the status of the application as subject to

AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is

incorrect, any correction of the statutory basis for the rejection will not be

considered a new ground of rejection if the prior art relied upon, and the

rationale supporting the rejection, would be the same under either status.

3.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention
> was made.

4.      Claim 1-4, 6 & 11 is rejected under 35 U.S.C. 103 as being unpatentable

over Fyock (US2020/0313378A).

A wall outlet extender (fig. 1) comprising:

Application/Control Number: 17/420,884                                    Page 3
Art Unit: 3649

a plug end (12, fig. 2) configured to selectively plug into a wall outlet (14 in

fig. 7), an outlet end (54) configured to selectively receive one or more plugs (55

in fig. 7),

an extendable shaft (42/38) positioned between the plug end and the

outlet end (fig. 2), wherein the plug end is rotatable (figure 5 at curved double

ended arrow), and

an electrical cord (68) portion positioned between the extendable shaft and

the plug end (figures 4a/b).

wherein the extendable shaft comprises a bend collar (46, 48, 50)

configured to enable flexibility (fig. 6) in the extendable shaft adjacent to the plug

end.

Fyock discloses that the flexible collar is configured to "enable flexibility" at

the outlet end not the plug end.

At the time the invention was made it would have been well known to one

of ordinary skill in the electrical connector art to reverse the placement of the

bend collar of Fyock so that flexibility would be enabled at the plug end not the

outlet end.  A motivation for this would be to provide greater variety in how the

wall outlet is positioned in sometimes cramped situations.  Well settled case law

has shown that merely rearranging (*In re Japsike or In re Kuhle*) or reversing (*In re*

Application/Control Number: 17/420,884                                          Page 4
Art Unit: 3649

*Gazda*) the location of parts on the basis of suitability for its intended use where

operation of the device is not seriously affected and where requisite

modifications involve only routine skill in the art, is not grounds for a patent.

Claim 2 Fyock discloses that the extendable shaft includes two or more

telescoping portions (fig. 5 at 42/38/40).

Claim 3 Fyock discloses (fig. 6) that the extendable shaft includes a first

telescoping portion (38) having a first diameter and a second telescoping portion

having a second diameter (40), wherein the first diameter is larger than the

second diameter.

Claim 4 Fyock discloses that the first telescoping portion is configured to

internally receive the second telescoping portion in a retracted position (figures 5

& 6).

Claim 6 Fyock discloses the plug end is rotatable about 360° (fig. 5, 16 rotates

within circle 28).

Claim 11 Fyock discloses that the outlet end comprises a device cradle (60)

configured to hold a device while the device is plugged into the outlet end.

Application/Control Number: 17/420,884                                          Page 5
Art Unit: 3649



5.      Claim 5 is rejected under 35 U.S.C. 103 as being unpatentable over Fyock

(US2020/0313378A).

Fyock does not disclose that the shaft is extendable between 21 and 34 inches.

At the time the invention was made it would have been well within the

knowledge of one of ordinary skill to adjust the extension range of the shaft of

Fyock to be within a certain range.  Regarding the particular dimensions of the

extendable shaft of Fyock, to the extent that Fyock does not specify exact

dimensions, at the time of the invention, workable dimensions of the shaft would

have been a matter of routine experimentation.  _In re Antonie_, 559 F.2d 618

(CCPA 1977).  Variations in the distance would have been obvious minor

adjustments without patentable significance.  See _In re Aller_, 105 USPQ 233 (CCPA

1955) (Where general conditions of the claim are disclosed in the prior art, it is

Application/Control Number: 17/420,884                                    Page 6

Art Unit: 3649

not inventive to discover optimal or workable ranges by routine

experimentation).

6.      Claim 10 is rejected under 35 U.S.C. 103 as being unpatentable over Fyock

(US2020/0313378A) in view of Comis.

Fyock discloses that the outlet end includes an even number of outlets (2) but

does not disclose a USB outlet.

Comis discloses an outlet end includes one USB port (claim 10).

At the time the invention was made it would have been well known to one of

ordinary skill to include a USB port as taught by Comis on the outlet end of Fyock.

A motivation for this would be to increase device functionality. The claim would

have been obvious because the technique for improving a particular class of

devices (including a USB port) was part of the ordinary capabilities of a person of

ordinary skill in the art, in view of the teaching of the technique for improvement

in other situations.

7.      Claim 12 is rejected under 35 U.S.C. 103 as being unpatentable over Fyock

in view of Noland et al.

Fyock does not disclose that the wall outlet includes WiFi capabilities.

Noland discloses a wall outlet with WiFi capabilities (¶0079 & ¶0230). At the time

the invention was made it would have been well known to one of ordinary skill in

Application/Control Number: 17/420,884                                    Page 7
Art Unit: 3649

this art to include WiFi capabilities as taught by Noland with the outlet of Fyock.

One motivation for this combination could be to increase functionality of the

whole device. The claim would have been obvious because the technique for

improving a particular class of devices (including WiFi capability) was part of the

ordinary capabilities of a person of ordinary skill in the art, in view of the teaching

of the technique for improvement in other situations.

8.      Claims 14 & 17 are rejected under 35 U.S.C. 103 as being unpatentable over

Fyock (US2020/0313378A) in view of Iaconis.

An extendable (¶0006) power outlet adaptor (fig. 7), comprising:

a plug (12) selectively configured to insert into a wall outlet (14),

an extendable shaft (42, fig. 5) that comprises a bend collar (50, 46, 48) is

telescopic (fig. 5) and rotatable about the plug up to 360° (fig. 5 double ended

arrow);

one or more outlet receptacles (figures 1 & 3 at 66; fig. 5 at 16), connected to the

shaft that are selectively attachable to a position on a wall (fig. 7);

an interchangeable faceplate selectively attached with the one or more outlet

receptacles; and

Application/Control Number: 17/420,884                                                      Page 8
Art Unit: 3649

an electrical cord (68) portion positioned between the extendable shaft and the

plug end (figures 4a/b).

Fyock does not disclose an interchangeable faceplate.

Iaconis discloses interchanging faceplates for outlet receptacles (120 in figures 1,

5, 10 & 11).  At the time the invention was made it would have been well known

to one of ordinary skill in this art to provide interchangeable faceplates as taught

by Iaconis for the outlet receptacles of Fyock.  A motivation for this would be to

provide decorative faceplates.

Claim 17 Fyock discloses that the one or more outlet receptacles may be removed

and repositioned onto the wall (e.g., figure 7 outlet 54 could be rotated along

with the extension shaft up higher on the wall).

9.      Claims 15-16 are rejected under 35 U.S.C. 103 as being unpatentable over

Fyock in view of Iaconis as applied to claim 14 above, and further in view of Hicks.

Fyock does not disclose one or more outlet receptacles are attachable to the wall

by temporary adhesive, putty, or stickable surface.

Hicks discloses an outlet receptacle stuck onto a wall with adhesive (col. 3 ll 59 to

col. 4 ll 6).  At the time the invention was made it would have been well known to

one of ordinary skill to utilize some type of affixing material as taught by Hicks to

stick the outlet receptacle of Fyock onto a wall.

Application/Control Number: 17/420,884                                    Page 9

Art Unit: 3649

Claim 16 Hicks discloses that the one or more outlet receptacles are free from any

attachment to the wall that traverses or damages the wall surface ("two-sided

adhesive tape").

10.     Claim 19 is rejected under 35 U.S.C. 103 as being unpatentable over Fyock

(US2020/0313378A) in view of Iaconis.

Fyock in view of Iaconis does not disclose that the plug is replaceable with a

different type of plug.

At the time the invention was made it would have been well known to one of

ordinary skill in electric connectors to replace the plug of Fyock with a different

type of plug.  A motivation for this replacement would be to adjust the power

adapter to different settings.  All the claimed elements were known in the prior

art and one skilled in the art could have combined the elements as claimed by

known methods with no change in their respective functions, and the

combination would have yielded predictable results to one of ordinary skill in the

art at the time of the invention.

11.     Claim 20 is rejected under 35 U.S.C. 103 as being unpatentable over Fyock

(US2020/0313378A) in view of Iaconis.

Fyock in view of Iaconis does not disclose that the plug end comprises Type A, B,

C, D, E, F, G, H, I, J, K, L, M, N **or** OIEC plug ends, a 120-volt end **or** a 240-volt end.

Application/Control Number: 17/420,884                                    Page 10
Art Unit: 3649

At the time the invention was made it would have been well known to one of ordinary skill in the electrical connectors art to replace the plug of Fyock with a different type of plug. A motivation for this replacement would be to adjust the power adapter to different settings. All the claimed elements were known in the prior art and one skilled in the art could have combined the elements as claimed by known methods with no change in their respective functions, and the combination would have yielded predictable results to one of ordinary skill in the art at the time of the invention.

12.    Claim 21 is rejected under 35 U.S.C. 103 as being unpatentable over Fyock (US2020/0313378A) in view of Comis.

Fyock does not disclose a USB outlet.

Comis discloses an outlet end includes one USB port (claim 10).

At the time the invention was made it would have been well known to one of ordinary skill with electric connectors to include a USB port as taught by Comis on the outlet end of Fyock. A motivation for this would be to increase device functionality. The claim would have been obvious because the technique for improving a particular class of devices (including a USB port) was part of the ordinary capabilities of a person of ordinary skill in the art, in view of the teaching of the technique for improvement in other situations.

Application/Control Number: 17/420,884                                      Page 11

Art Unit: 3649

### *Allowable Subject Matter*

13.     Claims 7-9 & 22 objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

### *Conclusion*

14.     **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of this final action.

Application/Control Number: 17/420,884                                    Page 12
Art Unit: 3649

15.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to Michael C Zarroli whose telephone number is (571)272-2101. The examiner can normally be reached Monday-Friday 9-5 ET IFP.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Darnell M Jayne can be reached on 5712727723. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

Application/Control Number: 17/420,884                                     Page 13
Art Unit: 3649

USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA)

or 571-272-1000.

                                         MICHAEL C. ZARROLI
                                         Primary Examiner
                                         Art Unit 3649


/MICHAEL C ZARROLI/
Primary Examiner, Art Unit 3649
/M.C.Z/
Primary Examiner, Art Unit 3649

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>17/420,884 | Filing Date<br>07/06/2021 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE   ☑ SMALL   ☐ MICRO

### APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | x $50 = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | x $240 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| AMENDMENT<br>05/16/2024 | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| Total<br>(37 CFR 1.16(i)) | * 18 | Minus | ** 20 | = 0 | x $40 = | 0 |
| Independent<br>(37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | x $192 = | 0 |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | TOTAL ADD'L FEE | 0 |

| AMENDMENT | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | TOTAL ADD'L FEE | |

| | |
|---|---|
| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | Program Support Specialist |
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /NICOLE C LAWRENCE/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Patent Application

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re application: | Tony Matthew Galazin | Group Art Unit: | 3649 |
| Serial No.: | 17/420,884 | Examiner: | Zarroli, Michael C. |
| Filing Date: | July 6, 2021 | Docket No.: | 48071-00006 |
| | | Confirmation No.: | 5873 |

Title:  WALL MOUNTING OUTLET EXTENDER

Mail Stop RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

## RCE AND RESPONSE TO FINAL OFFICE ACTION

Dear Examiner Zarroli:

Applicant acknowledges receipt of the Final Office Action with a notification date of November 16, 2023, setting a shortened statutory period of reply of three months. As this Response is being filed electronically on May 16, 2024, along with a petition for a three-month extension of time, Applicant believes no additional fees are due. However, if any fees are required for filing this Response, please charge such fees to our Deposit Account No. 13-0265 identifying attorney docket no. 48071-00006.

Applicant respectfully requests that the Patent Office consider the following Amendments and Remarks in examining the present application.

1

33591768.1

## AMENDMENT TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:

1. (Currently Amended) A wall outlet extender comprising:

a plug end configured to selectively plug into a wall outlet;

an outlet end configured to selectively receive one or more plugs;

an extendable shaft positioned between the plug end and the outlet end, wherein the plug end is rotatable; ~~and~~

an electrical cord portion positioned between the extendable shaft and the plug end, wherein the extendable shaft comprises a bend collar configured to enable flexibility in the extendable shaft adjacent to the plug end; and

an engagement portion, wherein the engagement portion is positioned on a wall-facing side of the outlet end and is configured to selectively engage the wall.

2. (Original) The wall outlet extender of claim 1, wherein the extendable shaft includes two or more telescoping portions.

3. (Original) The wall outlet extender of claim 2, wherein the extendable shaft includes a first telescoping portion having a first diameter and a second telescoping portion having a second diameter, wherein the first diameter is larger than the second diameter.

4. (Original) The wall outlet extender of claim 3, wherein the first telescoping portion is configured to internally receive the second telescoping portion in a retracted position.

5. (Original) The wall outlet extender of claim 4, wherein the extendable shaft is extendable from about 21 inches to about 34 inches.

6. (Previously Presented) The wall outlet extender of claim 1, wherein the plug end is rotatable about 360°.

2

33591768.1

7. (Canceled).

8. (Currently Amended) The wall outlet extender of claim [[7]] 1, wherein the engagement portion comprises a non-permanent adhesive, removable putty, or stickable surface.

9. (Original) The wall outlet extender of claim 8, wherein the engagement portion is free from any attachment to the wall that traverses or damages the wall surface.

10. (Previously Presented) The wall outlet extender of claim 1, wherein the outlet end includes an even number of outlets and at least one USB port.

11. (Previously Presented) The wall outlet extender of claim 1, wherein the outlet end comprises a device cradle configured to hold a device while the device is plugged into the outlet end.

12. (Previously Presented) The wall outlet extender of claim 1, wherein the wall outlet extender comprises Bluetooth or Wi-Fi connectivity capabilities.

13. (Canceled)

14. (Currently Amended) An extendable power outlet adaptor, comprising:

a plug selectively configured to insert into a wall outlet;

an extendable shaft that comprises a bend collar is telescopic and rotatable about the plug up to 360°;

one or more outlet receptacles connected to the shaft that are selectively attachable to a position on a wall;

an interchangeable faceplate selectively attached with the one or more outlet receptacles; and

an electrical cord portion positioned between the extendable shaft and the plug end.; and

a device cradle that includes wireless charging technology configured to hold a device and facilitate charging the device.

3

15. (Original) The extendable power outlet adaptor of claim 14, wherein the one or more outlet receptacles are attachable to the wall by temporary adhesive, putty, or stickable surface.

16. (Original) The extendable power outlet adaptor of claim 15, wherein the one or more outlet receptacles are free from any attachment to the wall that traverses or damages the wall surface.

17. (Previously Presented) The extendable power outlet adaptor of claim 14, wherein the one or more outlet receptacles may be removed and repositioned onto the wall.

18. (Canceled)

19. (Previously Presented) The extendable power outlet adaptor of claim 14, wherein the plug end is replaceable with a different type of plug.

20. (Previously Presented) The extendable power outlet adaptor of claim 14, wherein the plug end comprises Type A, B, C, D, E, F, G, H, I, J, K, L, M, N or O IEC plug ends, a 120 volt end or a 240 volt end.

21. (Previously Presented) The extendable power outlet adaptor of claim 14, further comprises at least one USB port.

22. (Canceled)

4

33591768.1

<div align="center">**REMARKS**</div>

The Final Office Action dated November 16, 2023, has been carefully reviewed and the following amendments and remarks are responsive thereto. Prior to this response, claims 1-12, 14-17 and 19-22 were pending and claims 13 and 18 were canceled.  By this response, claims 1 and 14 have been amended and claims 7 and 22 canceled. In conformance with the applicable statutory requirements, this paper constitutes a complete reply and/or a bona fide attempt to advance the application to allowance.  Favorable consideration of the claims now presented is respectfully requested, in view of the remarks and amendments set forth herein.

**Claims 1-4, 6 and 11 - §103 Rejection**

Claims 1-4, 6 and 11 stand rejected under 35 U.S.C. § 103 as being anticipated over US2020/0313378A (hereinafter, "Fyock"). Claim 1 is amended to include the limitation of claim 7. As the Office Action indicates that claim 7 would be allowable if rewritten in independent form, Applicant respectfully contends that claim 1 is allowable and requests indication of such.

As claims 2-4, 6 and 11 depend from claim 1 and include additional limitations, Applicant incorporates the arguments above regarding claim 1 being allowable. Applicant, therefore, respectfully contends that claims 2-4, 6 and 11 are allowable and requests indication of such.

**Claim 5 - §103 Rejection**

Claim 5 stands rejected under 35 U.S.C. § 103 as being obvious over US2020/0313378A (hereinafter, "Fyock"). As claim 5 depends from claim 1 and includes additional limitations,

<div align="center">5</div>

33591768.1

Applicant incorporates the arguments above regarding claim 1 being allowable over Fyock.

Applicant, therefore, respectfully requests indication of allowance of claim 5.

**Claim 10 - §103 Rejection**

Claim 10 stands rejected under 35 U.S.C. § 103 as being obvious over Fyock in view of US2017/0346244A1 (hereinafter, "Comis"). As claim 10 depends from claim 1 and includes additional limitations, Applicant incorporates the arguments above regarding claim 1 being allowable over Fyock. Applicant respectfully contends that Comis fails to remedy the deficiencies noted above. Applicant, therefore, respectfully requests indication of allowance of claim 10.

**Claims 12 - §103 Rejection**

Claim 12 stands rejected under 35 U.S.C. § 103 as being obvious over Fyock in view of US2018/0158305A1 (hereinafter, "Noland"). As claim 12 depends from claim 1 and includes additional limitations, Applicant incorporates the arguments above regarding claim 1 being allowable over Fyock. Applicant respectfully contends that Noland fails to remedy the deficiencies noted above. Applicant, therefore, respectfully requests indication of allowance of claim 12.

**Claims 14 and 17 - §103 Rejection**

Claims 14 and 17 stand rejected under 35 U.S.C. § 103 as being obvious over Fyock in view of Iaconis. Claim 14 is amended to include the limitation of claim 22. As the Office Action

6

indicates that claim 22 would be allowable if rewritten in independent form, Applicant respectfully contends that claim 14 is allowable and requests indication of such.

As claim 17 depends from claim 14 and includes additional limitations, Applicant incorporates the arguments above regarding claim 14 being allowable. Applicant, therefore, respectfully contends that claim 17 is allowable and requests indication of such.

**Claims 15-16 - §103 Rejection**

Claims 15-16 stand rejected under 35 U.S.C. § 103 as being obvious over Fyock in view of Iaconis and further in view of Hicks. As claims 15-16 depend from claim 14 and include additional limitations, Applicant incorporates the arguments above regarding claim 14 being allowable over Fyock and Iaconis. Applicant further contends that Hicks fails to remedy the deficiencies noted above. Applicant, therefore, respectfully contends that claims 15-16 are allowable and requests indication of such.

**Claim 19 - §103 Rejection**

Claim 19 stands rejected under 35 U.S.C. § 103 as being obvious over Fyock in view of Iaconis. As claim 19 depends from claim 14 and includes additional limitations, Applicant incorporates the arguments above regarding claim 14 being allowable over Fyock. Applicant respectfully contends that Iaconis fails to remedy the deficiencies noted above. Applicant, therefore, respectfully requests indication of allowance of claim 19.

**Claim 20 - §103 Rejection**

7

33591768.1

Claim 20 stands rejected under 35 U.S.C. § 103 as being obvious over Fyock in view of Iaconis. As claim 20 depends from claim 14 and includes additional limitations, Applicant incorporates the arguments above regarding claim 14 being allowable over Fyock. Applicant respectfully contends that Iaconis fails to remedy the deficiencies noted above. Applicant, therefore, respectfully requests indication of allowance of claim 20.

**Claim 21 - §103 Rejection**

Claim 21 stands rejected under 35 U.S.C. § 103 as being obvious over Fyock in view of Comis. As claim 21 depends from claim 14 and includes additional limitations, Applicant incorporates the arguments above regarding claim 14 being allowable over Fyock. Applicant respectfully contends that Comis fails to remedy the deficiencies noted above. Applicant, therefore, respectfully requests indication of allowance of claim 21.

*Disclaimers or Disavowals*

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application. Applicant reserves the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that

8

33591768.1

Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

## CONCLUSION

Based on the foregoing remarks, the pending claims are believed to be in condition for allowance, and such allowance is courteously solicited. If any further amendment is necessary to advance prosecution and place this case in allowable condition, the Examiner is requested to contact the undersigned by e-mail or telephone at the contact information listed below.

In general, the Office Action makes various statements regarding the pending claims and the cited references that are now moot in light of the above amendments and remarks. Thus, those statements are not addressed at the present time. However, Applicant expressly reserves the right to challenge such statements in the future should the need arise (e.g., if any such statement should become relevant by appearing in a rejection of any current or future claim).

Respectfully submitted,

Date:   May 16, 2024

/Todd A. Benni/
Todd A. Benni - Reg. No. 42,313
McDonald Hopkins LLC
600 Superior Avenue, E.
Suite 2100
Cleveland, OH 44114-2653
(216) 348-5712
tbenni@mcdonaldhopkins.com

9

33591768.1

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

PTO/SB/30EFS (01-22)

Case 2:26-cv-00414-CB    Document 60-2    Filed 06/16/26    Page 796 of 854

# REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
## (Submitted Only via EFS-Web)

| Application Number | 17/420,884 | Filing Date | 2021-07-06 | Docket Number (if applicable) | 48071-00006 | Art Unit | 3649 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Tony Matthew Galazin | | | Examiner Name | MICHAEL C. ZARROLI | | |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**

Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application.  The Instruction Sheet for this form is located at WWW.USPTO.GOV

## SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

- [ ] Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

  - [ ] Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

  - [ ] Other _____

- [x] Enclosed

  - [x] Amendment/Reply

  - [ ] Information Disclosure Statement (IDS)

  - [ ] Affidavit(s)/ Declaration(s)

  - [x] Other _____ Request for Extension of Time

## MISCELLANEOUS

- [ ] Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a  period of months _____
 (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

- [ ] Other _____

## FEES

**The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
- [x] The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to Deposit Account No   130265

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

- [x] Patent Practitioner Signature
- [ ] Applicant Signature

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
PTO/SB/30EFS (01-22)
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | | |
|---|---|---|---|
| Signature | /Todd A. Benni/ | Date (YYYY-MM-DD) | 2024-05-16 |
| Name | Todd A. Benni | Registration Number | 42313 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

**USPTO** UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION #<br>**17/420,884** | RECEIPT DATE / TIME<br>**05/16/2024 09:20:47 AM Z ET** | ATTORNEY DOCKET #<br>**48071-00006** |
|---|---|---|

## Title of Invention

WALL MOUNTING OUTLET EXTENDER

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - U.S. National Stage under 35 USC 371 | PATENT # | - |
| CONFIRMATION # | 5873 | FILED BY | Rebecca Shofar |
| PATENT CENTER # | 65549862 | FILING DATE | 07/06/2021 |
| CUSTOMER # | 33772 | FIRST NAMED INVENTOR | Tony Matthew Galazin |
| INTL. APPLICATION # | - | INTL. FILING DATE | - |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Todd Benni |

## Documents                                   TOTAL DOCUMENTS: 4

| DOCUMENT | | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|---|
| Response_to_Final_Office_Action_for_filing_33597257v1.pdf | | 9 | - | 135 KB |
| Response_to_Final_Office_Action_for_filing_33597257v1-AMSB.pdf | (1-1) | 1 | Amendment Submitted/Entered with Filing of Continued Prosecution Application (CPA)/Request for Continued Examination(RCE) | 89 KB |
| Response_to_Final_Office_Action_for_filing_33597257v1-CLM.pdf | (2-4) | 3 | Claims | 94 KB |

| Response_to_Final_Office_ Action_for_filing_33597257v 1-REM.pdf | (5-9) | 5 | Applicant Arguments/Remarks Made in an Amendment | 119 KB |
|---|---|---|---|---|
| RCE_for_filing_33597280v1. pdf | | 3 | Request for Continued Examination (RCE) | 1097 KB |

Warning: This is not a USPTO supplied RCE fillable form. Data in the form cannot be automatically loaded to other USPTO systems.

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| Response_to_Final_Office_Acti on_for_filing_33597257v1.pdf | AD66355C1CC32D70FC540DE3D5AEBB8DF05CF4780D980D57 83C5D372BBDED3299C2A1CE03E091EC51D0C62C62353288C D85D74F63FE193927974035ADF0921B3 |
| Response_to_Final_Office_Acti on_for_filing_33597257v1- AMSB.pdf | 19C5664A235D1F02F9017CB4C4B1DF0C85C6674C468F05877 A9CA0F1F930E3277BAE6DB3E63CDED0C504A24182AEBB201 CD7EC85C2F337E880568EF87EA18BD5 |
| Response_to_Final_Office_Acti on_for_filing_33597257v1- CLM.pdf | 1012F11C5DF0469A1FB5C7CC5F5608EEF70DC0C7B593E0AC 77FF04443B8D355B1B6C19F111637546C9011BD87A6E6C1CF2 585726F48D3BF7E54C1F234D0F5EB8 |
| Response_to_Final_Office_Acti on_for_filing_33597257v1- REM.pdf | D8DE85DB4C4B6EEA180BBC0B54FE96FE4E6867E8C3594275 F58C3818954C2D9FA9353AFB74F8CD4A2223262F971C537480 D2DECD06D6C8DC6A5A500E760A8782 |
| RCE_for_filing_33597280v1.pdf | F5E990B77FC31AEC9B97344A1AEF30AF28846E22665328442F 38BB9CA3AAAE02DF4CF1CD4A1A16F2765D7B3077511055449 2AF036E66805CC911353B35D8726B |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**USPTO** UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| 17/420,884 | 05/16/2024 09:20:47 AM Z ET | 48071-00006 |

## Title of Invention

WALL MOUNTING OUTLET EXTENDER

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - U.S. National Stage under 35 USC 371 | PATENT # | - |
| CONFIRMATION # | 5873 | FILED BY | Rebecca Shofar |
| PATENT CENTER # | 65549862 | AUTHORIZED BY | Todd Benni |
| CUSTOMER # | 33772 | FILING DATE | 07/06/2021 |
| INTL. APPLICATION # | - | INTL. FILING DATE | - |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Tony Matthew Galazin |

## Payment Information

| PAYMENT METHOD | PAYMENT TRANSACTION ID | PAYMENT AUTHORIZED BY |
|---|---|---|
| CARD / 3094 | E20245F021146503 | Rebecca Shofar |

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 2253 | EXTENSION FOR RESPONSE WITHIN THIRD MONTH - | 592.00 | 1 | 592.00 |
| 2801 | REQUEST FOR CONTINUED EXAMINATION (RCE) - 1ST REQUEST (SEE 37 CFR 1.114) | 544.00 | 1 | 544.00 |
| | | | TOTAL AMOUNT: | $1,136.00 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 17/420,884 | Galazin, Tony Matthew |
| | Examiner | Art Unit |
| | Michael C Zarroli | 3649 |

**CPC**

| Symbol | | | | | | Type | Version |
|---|---|---|---|---|---|---|---|
| H01R | / | 13 | / | 74 | | F | 2013-01-01 |
| H01R | / | 25 | / | 006 | | I | 2013-01-01 |
| H01R | / | 24 | / | 68 | | I | 2013-01-01 |
| H01R | / | 13 | / | 72 | | I | 2013-01-01 |

**CPC Combination Sets**

| Symbol | | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|---|
| | / | | / | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 18 | |
| /MICHAEL C ZARROLI/ Primary Examiner, Art Unit 3649 | 13 July 2024 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1B |

U.S. Patent and Trademark Office Part of Paper No.: 20240713

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 17/420,884 | Galazin, Tony Matthew |
| | Examiner | Art Unit |
| | Michael C Zarroli | 3649 |

| INTERNATIONAL CLASSIFICATION | | | | |
|---|---|---|---|---|
| **CLAIMED** | | | | |
| H01R25/00 | / | 25 | / | 00 |
| H01R24/68 | / | 24 | / | 68 |

| NON-CLAIMED | | | | |
|---|---|---|---|---|
| H01R13/74 | / | 13 | / | 74 |
| H01R13/72 | / | 13 | / | 72 |

| US ORIGINAL CLASSIFICATION | |
|---|---|
| CLASS | SUBCLASS |
| | |

| CROSS REFERENCES(S) | | | | | | |
|---|---|---|---|---|---|---|
| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | |
| | | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 18 | |
| /MICHAEL C ZARROLI/ Primary Examiner, Art Unit 3649 | 13 July 2024 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1B |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 17/420,884 | Galazin, Tony Matthew |
| | Examiner | Art Unit |
| | Michael C Zarroli | 3649 |

| ☑ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 |

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 18 | |
| /MICHAEL C ZARROLI/<br>Primary Examiner, Art Unit 3649 | 13 July 2024 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1B |

U.S. Patent and Trademark Office                                                    Part of Paper No.: 20240713

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 17/420,884 | Galazin, Tony Matthew |
| | **Examiner** | **Art Unit** |
| | Michael C Zarroli | 3649 |

**CPC - Searched\***

| Symbol | Date | Examiner |
|---|---|---|
| H01R13/74 OR H01R13/72 OR H01R24/68 OR H01R25/006 | 03/19/2023 | MCZ |

**CPC Combination Sets - Searched\***

| Symbol | Date | Examiner |
|---|---|---|
| | | |

**US Classification - Searched\***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| H01R13/74 OR H01R13/72 OR H01R24/68 OR H01R25/006 | 03/21/2023 | MCZ |
| PE2E searches, see printout. | 07/13/2024 | MCZ |
| Inventor double patent search. Also search in PALM. | 03/19/2023 | MCZ |
| PE2E Similarity search. | 11/09/2023 | MCZ |
| Global Dossier & Common Citation searches. | 11/09/2023 | MCZ |
| GOOGLE Patents term search. | 11/13/2023 | MCZ |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| | Interference search conducted, see printout. | 07/13/2024 | MCZ |

| /M.C.Z/ <br> Primary Examiner, Art Unit 3649 | /MICHAEL C ZARROLI/ <br> Primary Examiner, Art Unit 3649 |
|---|---|

# Bibliographic Data

Application No:    **17/420,884**

Foreign Priority claimed:    ◯ Yes    ⦿ No

35 USC 119 (a-d) conditions met:    ☐ Yes    ☐ No        ☐ Met After Allowance

Verified and Acknowledged:    | /MICHAEL C ZARROLI/ |    | mcz |

Examiner's Signature        Initials

Title:    | WALL MOUNTING OUTLET EXTENDER |

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/06/2021 **RULE** | 174 | 3649 | 48071-00006 |

**APPLICANTS**

TOKA, LLC, Greenwich, CT, UNITED STATES

**INVENTORS**

Tony Matthew Galazin, Greenwich, CT, UNITED STATES

**CONTINUING DATA**

This application is a 371 of PCT/US2021/012261 01/06/2021

**FOREIGN APPLICATIONS**

**IF REQUIRED, FOREIGN LICENSE GRANTED\*\***

01/20/2023

**\*\* SMALL ENTITY \*\***

**STATE OR COUNTRY**

UNITED STATES

**ADDRESS**

MCDONALD HOPKINS LLC

600 Superior Avenue, East

Suite 2100

CLEVELAND, OH 44114-2653

UNITED STATES

**FILING FEE RECEIVED**

$830

## PE2E SEARCH - Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| L76 | 1 | ("20210210915").pn. | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2024/07/13 02:46 PM |
| L77 | 45 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1 OR US-20200253029-A1 OR US-20180158305-A1 OR US-20230140080-A1 OR US-20150318648-A1 OR US-20230318241-A1 OR US-20150079810-A1 OR US-20180115125-A1 OR US-20180337498-A1 OR US-20090093163-A1 OR US-20140030910-A1 OR US-20170273203-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A OR US-10797456-B1 OR US-8221131-B1 OR US-9373921-B1 OR US-5542859-A OR US-7156673-B2).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2024/07/13 02:57 PM |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | OR GB-2553186-A OR EP-1182747-A2 OR WO-2022088902-A1).did. AND FTDB.dbnm.) OR ((GB-2571295-A OR US-20200244022-A1).did. AND DWPI.dbnm.) | | | | | | |
| L78 | 14400 | (H01R25/006 OR H01R2103/00).cpc. | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2024/07/13 02:58 PM |
| L79 | 0 | L78 AND (shaft WITH ((flexible OR flex OR bendable) NEAR collar)) | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2024/07/13 03:19 PM |
| L80 | 169 | (shaft WITH ((flexible OR flex OR bendable) NEAR collar)) | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2024/07/13 03:19 PM |
| L81 | 46 | (Artificial Intelligence) Similar to: 17/420,884 with 0 CPC Selections and 0 Text Selections | (US-PGPUB; USPAT; USOCR; FIT (CA, CN, EP, FR, JP, WO)) | ADJ | ON | ON | 2024/07/13 03:20 PM |
| | | Text: (US-20230140080-A1 OR WO-2021141952-A1 OR US-20210210915-A1 OR US-20240178623-A1 OR US-6004138-A OR US-5895275-A OR US-7347734-B1 OR US-9673584-B1 OR US-20090029597-A1 OR US-7517221-B2 OR US-20150229062-A1 OR US-20200028308-A1 OR US-20080073101-A1 OR KR-20070050014-A OR JP-S63143870-U OR WO-2009008994-A1 OR US-20180359873-A1 OR US-20220077622-A1 OR US-7140922-B2 OR US-11445626-B2 OR US-8384241-B2 OR US-8851909-B2 OR JP-H01166985-U OR US-20080150357-A1 OR US-11670888-B2 OR US-9960539-B2 OR US-20040092158-A1 OR US-20140099821-A1 OR US-20170302026-A1 OR | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | US-7544100-B2 OR US-20040218411-A1 OR GB-2401491-A OR JP-2013099243-A OR JP-S63131081-U OR US-6482043-B1 OR WO-2005093937-A1 OR KR-100861636-B1 OR US-20110039453-A1 OR US-20120142204-A1 OR CA-2442099-C OR US-9525232-B1 OR US-6709297-B2 OR WO-2015089085-A1 OR US-20030181105-A1 OR US-20150249310-A1 OR US-20100246232-A1 OR US-20040142601-A1 OR EP-3876366-A1 OR KR-100438923-B1 OR US-20180062331-A1).did. | | | | | |
| L82 | 70 | ((US-20210210915-A1 OR US-20170346244-A1 OR US-20170250509-A1 OR US-20160079721-A1 OR US-20040221883-A1 OR US-20040108126-A1 OR US-20210143587-A1 OR US-20200313378-A1 OR US-20140148049-A1 OR US-20200253029-A1 OR US-20180158305-A1 OR US-20240178623-A1 OR US-20090029597-A1 OR US-20150229062-A1 OR US-20200028308-A1 OR US-20080073101-A1 OR US-20080150357-A1 OR US-20180359873-A1 OR US-20220077622-A1 OR US-20040092158-A1 OR US-20110039453-A1 OR US-20120142204-A1 OR US-20150249310-A1 OR US-20040142601-A1 OR US-20180062331-A1 | (US-PGPUB;  USPAT;  USOCR;  FIT (CA, CN, EP, FR, JP, WO);  FPRS;  EPO;  JPO;  DERWENT;  IBM_TDB) | ADJ | ON | ON | 2024/07/13 03:22 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | OR US-20230140080-A1 OR US-20150318648-A1 OR US-20230318241-A1 OR US-20150079810-A1 OR US-20180115125-A1 OR US-20180337498-A1 OR US-20090093163-A1 OR US-20140030910-A1 OR US-20170273203-A1).did. AND PGPB.dbnm.) OR ((US-8920191-B2 OR US-9478920-B1 OR US-9955601-B2 OR US-5539821-A OR US-6379182-B1 OR US-4863398-A OR US-11355891-B2 OR US-4447106-A OR US-11201444-B1 OR US-9525232-B1 OR US-5895275-A OR US-4553798-A OR US-5700150-A OR US-7220128-B1 OR US-6004138-A OR US-7347734-B1 OR US-9673584-B1 OR US-7544100-B2 OR US-7140922-B2 OR US-8384241-B2 OR US-8851909-B2 OR US-9960539-B2 OR US-6482043-B1 OR US-6709297-B2 OR US-10797456-B1 OR US-8221131-B1 OR US-9373921-B1 OR US-5542859-A OR US-7156673-B2).did. AND USPT.dbnm.) OR ((WO-2021141952-A1 OR GB-2553186-A OR WO-2005093937-A1 OR EP-3876366-A1 OR EP-1182747-A2 OR WO-2022088902-A1).did. AND FTDB.dbnm.) OR ((GB-2571295-A OR US-20200244022-A1).did. AND DWPI.dbnm.) | | | | | | |
| L83 | 0 | ("2020/0028308").urpn. AND (PGPB \| USPT \| | (US-PGPUB; USPAT; USOCR) | ADJ | ON | ON | 2024/07/13 03:24 PM |

| L84 | 34 | USOC).dbnm. (Artificial Intelligence) More like doc: US-20200028308-A1 Text: (US-7399201-B1 OR US-20170346244-A1 OR US-9513682-B2 OR US-20150008741-A1 OR US-20190116678-A1 OR US-8752848-B2 OR US-10054982-B2 OR US-10554033-B2 OR TW-M267404-U OR WO-2018090038-A2 OR US-20180138683-A1 OR US-10653018-B2 OR CN-110447153-A OR CN-205337109-U OR US-8952659-B2 OR CN-110447153-B OR JP-2019537922-A OR CA-2740285-C OR JP-7099780-B2 OR US-20110279084-A1).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | ADJ | ON | ON | 2024/07/13 03:24 PM |

## PE2E SEARCH - Search History (Interference)

There are no Interference searches to show.

## PE2E SEARCH - Search History (Prior Art)

There are no Prior Art searches to show.

## PE2E SEARCH - Search History (Interference)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| N1 | 0 | (outlet WITH extender WITH wall WITH engagement WITH plug WITH rotatable WITH shaft) | (US-PGPUB;  USPAT) | ADJ | ON | ON | 2024/07/13 02:57 PM |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | | | | EXAMINER |
|---|---|---|---|---|---|
| 33772 | 7590 | 07/18/2024 | | | ZARROLI, MICHAEL C |

MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| ART UNIT | PAPER NUMBER |
|---|---|
| 3649 | |

DATE MAILED: 07/18/2024

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,884 | 07/06/2021 | Tony Matthew Galazin | 48071-00006 | 5873 |

TITLE OF INVENTION: WALL MOUNTING OUTLET EXTENDER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0.00 | $0.00 | $480 | 10/18/2024 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. <u>PROSECUTION ON THE MERITS IS CLOSED.</u> THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 40% the amount of undiscounted fees, and micro entity fees are 20% the amount of undiscounted fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 11/23)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via the USPTO patent electronic filing system.

| By mail, send to: | Mail Stop ISSUE FEE | By fax, send to: | (571)-273-2885 |
|---|---|---|---|
| | Commissioner for Patents | | |
| | P.O. Box 1450 | | |
| | Alexandria, Virginia 22313-1450 | | |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

33772      7590      07/18/2024

MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via the USPTO patent electronic filing system or by facsimile to (571) 273-2885, on the date below.

| | (Typed or printed name) |
|---|---|
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,884 | 07/06/2021 | Tony Matthew Galazin | 48071-00006 | 5873 |

TITLE OF INVENTION: WALL MOUNTING OUTLET EXTENDER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0.00 | $0.00 | $480 | 10/18/2024 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| ZARROLI, MICHAEL C | 3649 | 174-053000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE           (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐ Issue Fee ☐ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☐ Electronic Payment via the USPTO patent electronic filing system    ☐ Enclosed check    ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

PTOL-85 Part B (11/23) Approved for use through 03/31/2026    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,884 | 07/06/2021 | Tony Matthew Galazin | 48071-00006 | 5873 |

| | | |
|---|---|---|
| 33772        7590        07/18/2024 | EXAMINER | |
| MCDONALD HOPKINS LLC | ZARROLI, MICHAEL C | |
| 600 Superior Avenue, East | | |
| Suite 2100 | ART UNIT | PAPER NUMBER |
| CLEVELAND, OH 44114-2653 | 3649 | |

DATE MAILED: 07/18/2024

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 11/23)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. The United States Patent and Trademark Office (USPTO) collects the information in this record under authority of 35 U.S.C. 2. The USPTO's system of records is used to manage all applicant and owner information including name, citizenship, residence, post office address, and other information with respect to inventors and their legal representatives pertaining to the applicant's/owner's activities in connection with the invention for which a patent is sought or has been granted. The applicable Privacy Act System of Records Notice for the information collected in this form is COMMERCE/PAT-TM-7 Patent Application Files, available in the Federal Register at 78 FR 19243 (March 29, 2013). https://www.govinfo.gov/content/pkg/FR-2013-03-29/pdf/2013-07341.pdf

Routine uses of the information in this record may include disclosure to:

1) law enforcement, in the event that the system of records indicates a violation or potential violation of law;

2) a federal, state, local, or international agency, in response to its request;

3) a contractor of the USPTO having need for the information in order to perform a contract;

4) the Department of Justice for determination of whether the Freedom of Information Act (FOIA) requires disclosure of the record;

5) a Member of Congress submitting a request involving an individual to whom the record pertains, when the individual has requested the Member's assistance with respect to the subject matter of the record;

6) a court, magistrate, or administrative tribunal, in the course of presenting evidence, including disclosures to opposing counsel in the course of settlement negotiations;

7) the Administrator, General Services Administration (GSA), or their designee, during an inspection of records conducted by GSA under authority of 44 U.S.C. 2904 and 2906, in accordance with the GSA regulations and any other relevant (i.e., GSA or Commerce) directive, where such disclosure shall not be used to make determinations about individuals;

8) another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c));

9) the Office of Personnel Management (OPM) for personnel research purposes; and

10) the Office of Management and Budget (OMB) for legislative coordination and clearance.

If you do not furnish the information requested on this form, the USPTO may not be able to process and/or examine your submission, which may result in termination of proceedings, abandonment of the application, and/or expiration of the patent.

| *Notice of Allowability* | Application No.<br>17/420,884 | Applicant(s)<br>Galazin, Tony Matthew | |
|---|---|---|---|
| | Examiner<br>Michael C Zarroli | Art Unit<br>3649 | AIA (FITF) Status<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to the RCE filed 5/16/2024.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are See Continuation Sheet . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All      b) ☐ Some*      c) ☐ None of the:

   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____.
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____.
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____.

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/MICHAEL C ZARROLI/
Primary Examiner, Art Unit 3649

**Continuation Sheet (PTOL-37)**                                    **Application No. 17/420,884**

Continuation of 3. The allowed claim(s) is/are: 1-6,8-12,14-17 and 19-21

Application/Control Number: 17/420,884                                    Page 2
Art Unit: 3649

1.    The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

2.    A request for continued examination under 37 CFR 1.114, including the fee set forth in 37 CFR 1.17(e), was filed in this application after final rejection.  Since this application is eligible for continued examination under 37 CFR 1.114, and the fee set forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action has been withdrawn pursuant to 37 CFR 1.114.  Applicant's submission filed on 5/16/2024 has been entered.

3.    The following is an examiner's statement of reasons for allowance:

Claim 1, the wall outlet extender with an engagement portion that is positioned on a wall facing side of the outlet end and is configured to selectively engage the wall.

Claim 14, the extendable power outlet adaptor with a device cradle that has wireless charging capability that holds a device to be charged and facilitates the charging.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should

Application/Control Number: 17/420,884                                                    Page 3
Art Unit: 3649

preferably accompany the issue fee.  Such submissions should be clearly labeled

"Comments on Statement of Reasons for Allowance."

4.      Any inquiry concerning this communication or earlier communications from

the examiner should be directed to Michael C Zarroli whose telephone number is

(571)272-2101. The examiner can normally be reached Monday-Friday 9-5 ET IFP.

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule

an interview, applicant is encouraged to use the USPTO Automated Interview

Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the

examiner's supervisor, Nicholas McFall can be reached on 571-270-5769. The fax

phone number for the organization where this application or proceeding is

assigned is 571-273-8300.

Information regarding the status of published or unpublished applications

may be obtained from Patent Center. Unpublished application information in

Patent Center is available to registered users. To file and manage patent

submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit

https://www.uspto.gov/patents/apply/patent-center for more information about

Application/Control Number: 17/420,884                                        Page 4
Art Unit: 3649

Patent Center and https://www.uspto.gov/patents/docx for information about

filing in DOCX format. For additional questions, contact the Electronic Business

Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA)

or 571-272-1000.

MICHAEL C. ZARROLI
Primary Examiner
Art Unit 3649

/MICHAEL C ZARROLI/
Primary Examiner, Art Unit 3649
/M.C.Z/
Primary Examiner, Art Unit 3649



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 17/420,884 | 07/06/2021 | 3664 | 830 | 48071-00006 | 17 | 2 |

**CONFIRMATION NO. 5873**

33772
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

**REPLACEMENT FILING RECEIPT**

*OC0000000075961051*

Date Mailed: 08/01/2024

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**

    Tony Matthew Galazin, Greenwich, CT;

**Applicant(s)**

    TOKA, LLC, Greenwich, CT;

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**
    This application is a 371 of PCT/US2021/012261 01/06/2021
        which is a CON of 16/988,045 08/07/2020 ABN
    and claims benefit of 62/957,903 01/07/2020

Foreign Applications for which priority is claimed  (You may be eligible to benefit from the Patent Prosecution Highway program at the USPTO. Please see http://www.uspto.gov for more information.)  - None.
Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 01/20/2023

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 17/420,884**

**Projected Publication Date:** 05/04/2023

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

> WALL MOUNTING OUTLET EXTENDER

**Preliminary Class**

> 174

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 17/420,884 | 07/06/2021 | 3664 | 830 | 48071-00006 | 17 | 2 |

**CONFIRMATION NO. 5873**
**REPLACEMENT FILING RECEIPT**

33772
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

*OC000000075961299*

Date Mailed: 08/01/2024

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**
　　　　Tony Matthew Galazin, Greenwich, CT;
**Applicant(s)**
　　　　TOKA, LLC, Greenwich, CT;

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**
　　　　This application is a 371 of PCT/US2021/012261 01/06/2021
　　　　　　which is a CON of 16/988,045 08/07/2020 ABN
　　　　　　which claims benefit of 62/957,903 01/07/2020

Foreign Applications for which priority is claimed  (You may be eligible to benefit from the Patent Prosecution Highway program at the USPTO. Please see http://www.uspto.gov for more information.)  - None.
Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 01/20/2023

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 17/420,884**

**Projected Publication Date:** 05/04/2023

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

WALL MOUNTING OUTLET EXTENDER

**Preliminary Class**

174

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

**USPTO**  UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **17/420,884** | **10/17/2024 09:21:17 AM Z ET** | **48071-00006** |

## Title of Invention

WALL MOUNTING OUTLET EXTENDER

## Application Information

| APPLICATION TYPE | Utility - U.S. National Stage under 35 USC 371 | PATENT # | - |
|---|---|---|---|
| CONFIRMATION # | 5873 | FILED BY | Danielle Mueller |
| PATENT CENTER # | 67605776 | FILING DATE | 07/06/2021 |
| CUSTOMER # | 33772 | FIRST NAMED INVENTOR | Tony Matthew Galazin |
| INTL. APPLICATION # | - | INTL. FILING DATE | - |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Todd Benni |

## Documents

# TOTAL DOCUMENTS: 1

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| Issue_Fee_48071-6_34306278v1.pdf | 1 | Issue Fee Payment (PTO-85B) | 176 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| Issue_Fee_48071-6_34306278v1.pdf | D2D944DD1CF7B6681F456B02965CADB583EA9EF0CF1F12CE 619035ABCFA0282DF6780DF66929C5F6D960C0C00D0FEF720 54EC853CC72B22CD50D6FE06C9E5D4F |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as

described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**USPTO**
UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **17/420,884** | **10/17/2024 09:21:17 AM Z ET** | **48071-00006** |

## Title of Invention

WALL MOUNTING OUTLET EXTENDER

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - U.S. National Stage under 35 USC 371 | PATENT # | - |
| CONFIRMATION # | 5873 | FILED BY | Danielle Mueller |
| PATENT CENTER # | 67605776 | AUTHORIZED BY | Todd Benni |
| CUSTOMER # | 33772 | FILING DATE | 07/06/2021 |
| INTL. APPLICATION # | - | INTL. FILING DATE | - |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Tony Matthew Galazin |

## Payment Information

| PAYMENT METHOD | PAYMENT TRANSACTION ID | PAYMENT AUTHORIZED BY |
|---|---|---|
| **CARD / 3094** | **E20240G021566917** | **Danielle Mueller** |

| PRE-AUTHORIZED ACCOUNT | PRE-AUTHORIZED CATEGORY |
|---|---|
| - | **37 CFR 1.17 (Patent application and reexamination processing fees); 37 CFR 1.19 (Document supply fees); 37 CFR 1.20 (Post Issuance fees); 37 CFR 1.21 (Miscellaneous fees and charges); 37 CFR 1.492 (National application filing, search, and examination fees); 37 CFR 1.492(a) (Basic national fee only)** |

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 2501 | UTILITY ISSUE FEE | 480.00 | 1 | 480.00 |
| | | | **TOTAL AMOUNT:** | **$480.00** |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, *or via the USPTO patent electronic filing system.*

By mail, send to:     Mail Stop ISSUE FEE
                      Commissioner for Patents
                      P.O. Box 1450
                      Alexandria, Virginia 22313-1450

By fax, send to:     (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

33772          7590          07/18/2024

MCDONALD HOPKINS LLC

600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via the USPTO patent electronic filing system or by facsimile to (571) 273-2885, on the date below.

|  |  |
|---|---|
|  | (Typed or printed name) |
|  | (Signature) |
| EFS | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,884 | 07/06/2021 | Tony Matthew Galazin | 48071-00006 | 5873 |

TITLE OF INVENTION: WALL MOUNTING OUTLET EXTENDER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0.00 | $0.00 | $480 | 10/18/2024 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| ZARROLI, MICHAEL C | 3649 | 174-053000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❏ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

❏ "Fee Address" indication (or "Fee Address" Indication form PTO/ AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  McDonald Hopkins LLC

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)
TOKA, LLC                                              Greenwich, CT

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❏ Individual ☒ Corporation or other private group entity ❏ Government

4a. Fees submitted:     ☒ Issue Fee     ❏ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☒ Electronic Payment via the USPTO patent electronic filing system     ❏ Enclosed check     ❏ Non-electronic payment by credit card (Attach form PTO-2038)

☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. 130265

5. **Change in Entity Status**  (from status indicated above)

❏ Applicant certifying micro entity status. See 37 CFR 1.29

❏ Applicant asserting small entity status. See 37 CFR 1.27

❏ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature     /Todd A. Benni/                    Date     October 17, 2024

Typed or printed name     Todd A. Benni                    Registration No.     42313

PTOL-85 Part B (11/23) Approved for use through 03/31/2026          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,884 | 11/26/2024 | 12155158 | 48071-00006 | 5873 |

33772        7590        11/06/2024

MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above. The patent will issue electronically. The electronically issued patent is the official patent grant pursuant to 35 U.S.C. § 153. The patent may be accessed on or after the issue date through Patent Center at https://patentcenter.uspto.gov/. The patent will be available in both the public and the private sides of Patent Center. Further assistance in electronically accessing the patent, or about Patent Center, is available by calling the Patent Electronic Business Center at 1-888-217-9197.

The USPTO is implementing electronic patent issuance with a transition period, during which period the USPTO will mail a ceremonial paper copy of the electronic patent grant to the correspondence address of record. Additional copies of the patent (i.e., certified and presentation copies) may be ordered for a fee from the USPTO's Certified Copy Center at https://certifiedcopycenter.uspto.gov/index.html. The Certified Copy Center may be reached at (800)972-6382.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 99 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Center (https://patentcenter.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Patents Stakeholder Experience (OPSE), Stakeholder Support Division (SSD) at (571)-272-4200.

IR103 (Rev. 10/09)

INVENTOR(s)  (Please see PATENT CENTER site https://patentcenter.uspto.gov for additional inventors):

Tony Matthew Galazin, Greenwich, CT;

APPLICANT(s)  (Please see PATENT CENTER site https://patentcenter.uspto.gov for additional applicants):

TOKA, LLC, Greenwich, CT;


The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

U NITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/420,884 | 07/06/2021 | Tony Matthew Galazin | 48071-00006 | 5873 |

33772      7590      11/26/2024
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
CLEVELAND, OH 44114-2653

| EXAMINER |
|---|
| ZARROLI, MICHAEL C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3658 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 11/26/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ipmailbox@mcdonaldhopkins.com

PTOL-90A (Rev. 04/07)

| APPLICATION NO. | ISSUE DATE | PATENT NO. |
|---|---|---|
| 17/420,884 | 26-Nov-2024 | 12155158 |

MCDONALD HOPKINS LLC
600 Superior Avenue, East
CLEVELAND, OH 44114-2653

# EGRANT NOTIFICATION

Your electronic patent grant (eGrant) is now available, which can be accessed via Patent Center at https://patentcenter.uspto.gov

The electronic patent grant is the official patent grant under 35 U.S.C. 153. For more information, please visit https://www.uspto.gov/electronicgrants

**Notice Revoking Deposit Account Authorization**

This patent application was impacted by an Agency fee processing system ("Fee Processing Next Generation", or FPNG) affecting Electronic Payment Receipts that occurred on Wednesday, October 9 (from 8 a.m. until 4:39 p.m. ET), and then again between Thursday, October 10 (from 12 p.m. ET) through Friday, October 18 (until 3:54 p.m. ET).  In general, Patent customers who paid fees during these periods using any of the accepted payment methods (i.e., credit/debit card, EFT, or deposit account) were impacted due to this FPNG issue.

**What Happened**
In impacted applications, the Electronic Payment Receipts (N417.PYMT documents) displayed correct information about the fees that were actually charged to the customer-selected payment methods shown under the "Payment Method" heading. However, the Electronic Payment Receipts also displayed two types of potentially incorrect information about pre-authorizations to charge fees. First, under the "Pre-Authorized Account" heading, particular deposit accounts were identified as pre-authorized for payment of fee deficiencies if payment was made by deposit account, regardless of whether customers intended to pre-authorize those accounts. Second, under the "Pre-Authorized Category", all the available category options (37 CFR 1.16, 1.17, 1.19, 1.20, and 1.21 fees) were identified as pre-authorized, regardless of whether customers intended to select none, one, some, or all of the applicable categories and regardless of how fees were paid. No deposit account number was listed under the "Pre-Authorized Account" heading if applicant paid by credit/debit card or EFT.

Since it cannot be determined whether applicant intended to submit the pre-authorization in this application, the pre-authorization to charge fees reflected on the Electronic Payment Receipt (N417.PYMT) is not effective and, to the extent an authorization was made, it has been revoked.

**What You Need To Do**
If applicant wants to submit an authorization to charge fees to a deposit account in this application, the applicant should submit a miscellaneous letter (if using Patent Center, use: Document Code: LET.; Document description: Miscellaneous incoming letter) including any desired general authorization to charge fees to a deposit account.

If fees were charged against your deposit account based on an erroneous pre-authorization displayed on an Electronic Payment Receipt issued during the affected time periods, you may submit a request for refund (e.g., PTO-2326) indicating that a pre-authorization to charge fees to a deposit account was not made in this application.

Questions regarding this notice may be directed to FeesHelp@uspto.gov.

# BABCOCK DECLARATION

# EXHIBIT F

**James Bennett Babcock**
President, MechEx, LLC
jbbabcock1963@gmail.com   410-599-2369

HIGHLIGHTS

- Degreed mechanical engineer with more than 40 years of experience developing intricate, high-speed industrial machinery, precision automation equipment, accurate custom testing systems, and complex consumer products.  Fully versed in all aspects of machine and product design.
- Expert witness since 2013 with casework in patent litigation, ITC, PTAB, contract law and personal injury cases, including trial testimony in Federal court, technical tutorials, expert reports and depositions.
- Accomplished department and project manager responsible for multidisciplinary staff and complex projects requiring 1000s of hours.  Responsible for project budgets, schedules, system performance specifications, and machine build and commissioning.  Full ownership of department personnel issues including performance reviews, hiring, and dismissals.


UNIVERSITY EDUCATION, PATENTS AND PUBLICATIONS

- Masters of Engineering Management, George Washington University, 1993
- Bachelor of Science in Mechanical Engineering, Lehigh University, 1985
- US 7,047,890: Integrated Flat Panel Workstation
- US 9,126,381: Box-Making Machines
- US 9,539,785: Box-Making Machines
- US 9,569,858: Cloud-Based System for Water Analysis
- US Application 17/358,192: Flip-Top Vial
- US Application 63/279,726: Multiple-Strip Reader
- Babcock, James, *Getting the most out of your FDM 3D printer,* Machine Design, October 2015
- Babcock, James, *3D Printing Tips and Techniques - Part 4,* Machine Design, December 2015
- Babcock, James, *Getting the most out of your FDM 3D printer, Part 2,* Machine Design, January 2016
- Babcock, James, *Overconstraint – The Hidden Killer,* Machine Design, May 2016

CONTINUING EDUCATION

- Patent Design Arounds: Minimizing Risk of Infringement or Reducing Likelihood of Design Arounds
- 3D Printing: Implications for Patents, Trademarks, Trade Secrets and Copyrights
- Obviousness Standard After the AIA: Leveraging Latest PTO and Court Guidance
- Section 102 and Prior Art: Navigating the Expanded Scope of Prior Art and AIA Exceptions
- Simplifying Scientific Evidence for Jurors
- ISO14119: The New Machine Safety Standard for Guard Door Interlocks
- TRIZ: Systematic Innovation Methods for Product Development
- LEAN Facilities Design
- FCC Part 15 Compliance
- Patent Claims: After Williamson
- Trademarks: Basics, Filing, and Enforcement

WORK HISTORY

12/2021─Present: President, MechEx, LLC, Phoenix, MD
Engineering and expert witness consulting practice.

8/2015–Present: Contributing Technical Expert, *Machine Design* Magazine

- Write articles on various topics pertaining to the field of machine design.

10/2017─1/2022: VP of R&D Engineering, Taylor Technologies, Inc., Sparks, MD
New position reporting to the CEO of this specialty chemical company. Responsible for overseeing all aspects of product development and engineering operations.

11/2011─10/2017: Director of Engineering, Taylor Technologies, Inc., Sparks, MD
New position reporting to the CEO of this specialty chemical company. Responsible for overseeing product development, automation, and engineering operations.

- Invented an in-store water-testing kiosk for the mass-merchant market that tests a customer's swimming pool water automatically and provides them with complete pool treatment requirements: chemicals needed, dosing, and instructions. A completely new packaging system was created for the water test strips used in the kiosk in order to enhance the user experience and further differentiate the product from the competition. First-year beta test sales exceed $1M, and full-scale implementation will exceed 4000 units.
- Created a line of in-store testing stations for swimming pool stores that replaces all manual operations using micropumps and automation to reduce testing time and

CV of James Bennett Babcock                    2

eliminate operator errors. To date, $2M in sales on the equipment; back-end consumables are just coming up to speed.

- Oversaw $3M project to bring in-house the manufacture of all aspects of test strips. This included the coating, floatation drying, slitting, rewinding, and lamination operations. Also oversaw manufacture of the equipment at selected vendors and expansive facility build project to house the new process.  Included management of state and local regulatory compliance with safety, environmental, and fire codes.

9/2010─10/2011 Engineering Manager, McCormick & Company, Atlanta, GA

- Created and implemented all capital projects. Oversaw with 11 direct employees, the IT and Maintenance functions for plant and a budget of $850,000 (maintenance) and $6M (projects).

6/2008─9/2010: Director of Engineering, SUN Automation Group, Sparks, MD
Selected for newly created position in the corrugated box machinery company to invigorate product development and oversee engineering and technical operations within the $62M international machinery company. Reporting directly to the president. Drove new product development, process improvements, and market expansion. Extensive daily interaction with sales and manufacturing groups. Presented regularly to Board of Directors on status of department and projects. Managed staff of 22 in Engineering Department.

- Developed/executed a revolutionary, patented machinery product; results include $10M in incremental annual sales plus revitalization of spare parts business. This is now the flagship product of the company.
- Created unique visual scheduling system that enabled team to stay on target and deliver between 10 and 20 production engineering jobs per week, including retrofits and ETO (Engineer to Order) items.

6/1994─9/2005 and 9/2006─6/2008: President, Integer Design and Engineering, Inc., Sparks, MD
Founder and Principal Engineer. Directed all technical activities within the 12-person company, as well as finance, marketing and sales.

- Selected by Black and Decker to design and build multiple automated test cells for various power tools and consumables.
- Created mechanical design and working prototypes for Avery Dennison that resulted in the first automated handheld, battery-operated cable tie gun.
- Retained by NxStage Medical to design and build 1st and 2nd round prototypes for the disposable tube and filter sets used in their patented home hemodialysis equipment, as well as the pumping and valve systems.

CV of James Bennett Babcock                                    3

- Contracted by Northrop-Grumman for design and build of high-speed automated flats sortation system for use by the US Postal Service.
- Sought by multiple clients to design from scratch a total of 5 complete corrugated box-finishing machine systems comprising on the order of 1200 parts each.
- Designed the injection-molded packaging and engineered and built the high-speed automated assembly line for a local client's high-volume consumer product that accounts for 1/3 of their sales.
- Other clients included Becton Dickinson, McCormick & Company, Locke Insulator, EPI Labelers, AMBEC, J.L. Wickham, Ward Machinery, KBA North America, JLS Automation, Hershey Foods, Vasca, Georgia Pacific, Harley Davidson, Sylvania.

9/2005─9/2006: Manager - Product Development, KBA North America, Inc., York, PA

- Drove all new product development activities within the $35M division of the German ISO 9000 certified printing press company.
- Selected to oversee strategic project that created a system to automatically change the anilox rolls on the printing press. Resulted in a leading edge product in direct print corrugated packaging.

11/1992─6/1994: Senior R&D Engineer, AMBEC, Inc., Owings Mills, MD

- Developed, tested, and launched new products in a wide range of food, beverage, and consumer products industries. Provided field support for prototypes and newly developed machinery across the country.

11/1991–11/1992: Senior Engineer, J.L. Wickham Co., Inc., Baltimore, MD

- Designed workholding fixtures and machining stations for high-volume machine tool systems used in the automotive industry.

7/1985─11/1991: Senior Project Engineer, Prime Technology, Inc., Hunt Valley, MD

- Designed and engineered machinery for the corrugated box industry that enhanced the performance of existing capital equipment. This included high-speed feeding systems, machine vision registration systems, and counting/stacking systems.

CURRENT AFFILIATIONS

- ASME (The American Society of Mechanical Engineers)
- SME (The Society of Manufacturing Engineers)
- SAE (The Society of Automotive Engineers)

OTHER SKILLS

- Languages:  English (native), Spanish (proficient+), German (intermediate), Mandarin Chinese (basic).
- Industrial: Welding, fabrication, milling, turning, 3D printing, machine rebuilding and restoration.

VOLUNTEER WORK

- 1/2016 –Present: Consulting Engineer, Project oversight committee member, V-LINC.org
  - V-LINC is a non-profit organization that serves people with disabilities of any kind in central Maryland. They bring volunteer engineers together with people who can't find a commercial solution to their unique needs.
  - Oversight committee member, project engineer, working one-on-one with clients, then designing and building a solution that meets their unique needs.

EXAMPLES OF MACHINERY AND PRODUCTS DESIGNED AND ENGINEERED

- Sheet feeders
- Flexographic printers
- Linear actuators
- Pick and place mechanisms
- Labelling machines
- Product inserters
- Vacuum sheet transfers
- Servo counter ejectors
- Anvil trimmers
- Sheet-fed digital printers
- Medical waste sterilizers
- Conveyor systems
- Bottle washers
- Soldering systems
- Die-cutting machines
- Angle grinder test cells
- Corrugated box machines
- Sortation systems
- Postal machinery
- Linear actuators
- Dialysis machines
- Cable tie guns
- Machine tools
- Tooling fixtures
- Optical instruments
- Retail kiosks
- Dispensing machines
- Gear reducers
- Cleaning systems
- Agricultural tillers
- Bottling lines
- Concrete reinforcing systems
- Rolling beach chairs
- 3D imaging systems
- Injection-molding tools
- Test strip retail dispenser cases
- Stacking machines
- Dredge and barge cranes
- Welding systems
- CNC cutoff saws
- Brush-making machines
- Foundry brick automation machines
- Vibratory parts feeders
- Workholding fixtures
- Bottling machines
- Sheet feeding systems
- Parts feeding mechanisms
- Part orienting systems
- Inserting machines
- Color recognition devices
- Molded bottles
- Optical scanning systems
- Filling machinery
- Folding beach chairs
- Soft sewn products

Depositions and Case Log - James B. Babcock

Updated 30 November 2025

<u>LIVE TESTIMONY I have given:</u>

Stengel v. Korber (SmartDesks) - ca. 2004

Changzhou Kaidi Electrical Co., Ltd., et al. v. Okin America, Inc., et al.
Case No.: 1:13-cv-1798 IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION) – April 2015

National Products Inc. v. Arkon Resources, Inc.
Case No.: 2:15-cv-01553-RSL IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE – December 2017

GCI Outdoor, Inc. v. Denovo Brands, LLC., et al.
Investigation No. 337-TA-1178
UNITED STATES INTERNATIONAL TRADE COMMISSION, WASHINGTON, DC- December 2020

Buddy's Plants Plus Corporation v. Viking Masek Global Packaging Technologies, et al.
Case No.:  20-CV-000145
STATE OF WISCONSIN CIRCUIT COURT, SHEBOYGAN COUNTY - May 2023

Shibumi Shade, Inc. v. Beach Shade, LLC
Civil Action No.: 5:23-cv-00297-FL
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION – November 2023

DEPOSITIONS I have given:

Stengel v. Korber (SmartDesks) - ca. 2004

Changzhou Kaidi Electrical Co., Ltd., et al. v. Okin America, Inc., et al.
Case No.: 1:13-cv-1798 IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION) - 6 March 2015

Gary Jones v. United Abrasives, Inc. et al.
Cause No.: CV15-1304 IN THE
DISTRICT COURT, 43RD JUDICIAL DISTRICT
PARKER COUNTY, TEXAS – 20 September 2017

National Products, Inc. v. Bracketron, Inc.,
Case No. 2:15-cv-2024-JLR (W.D. Wash.).
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE - 19 April 2018

National Products, Inc. v. Arkon Resources, Inc., et al.
Case No. 2:18-cv-02936-AG-SS
UNITED STATES DISTRICT COURT
CENTRAL DISTRIC OF CALIFORNIA
(WESTERN DIVISION) – 20 July 2018

Quest, Inc. v. PopSockets, Inc.
Case No. IPR2018-0497
UNITED STATES PATENT AND TRADEMARK OFFICE
PATENT TRIAL AND APPEAL BOARD, WASHINGTON, DC – 24 January 2019

Varidesk LLC v. Albeit, LLC et al.
Investigation No. 337-TA-1125
UNITED STATES INTERNATIONAL TRADE COMMISSION, WASHINGTON, DC – 2 April 2019

Quest, Inc. v. PopSockets, Inc.
Case No. IPR2018-1294
UNITED STATES PATENT AND TRADEMARK OFFICE
PATENT TRIAL AND APPEAL BOARD, WASHINGTON, DC – 2 July 2019

Michael Keshock et al. v. Metabowerke GMBH et al.
Case No.: CV-15-901370 IN THE
CIRCUIT COURT OF MOBILE COUNTY, ALABAMA
MOBILE, AL – 16 January 2020
GCI Outdoor, Inc. v. Denovo Brands, LLC., et al.
Investigation No. 337-TA-1178
UNITED STATES INTERNATIONAL TRADE COMMISSION, WASHINGTON, DC
WASHINGTON, DC – 4 March 2020

Kaidi LLC and Changzhou Kaidi  Electrical Co., LTD., v. Limoss US, LLC
Case No. IPR2019-01184
UNITED STATES PATENT AND TRADEMARK OFFICE
PATENT TRIAL AND APPEAL BOARD, WASHINGTON, DC – 13 May 2020

Jacorrien Martin v. Greif., et al.
Civil Action: 2020-900353 IN THE
CIRCUIT COURT OF MOBILE COUNTY, ALABAMA
MOBILE, AL – 16 November 2021

National Products Inc. v. Proclip USA, Inc., et al.
Case No.:  3:20-cv-00439-WMC IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN – 4 January 2022

National Products Inc. v. Gamber-Johnson LLC
Case No.:  3:20-cv-11108-WMC IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN – 2 September 2022

National Products Inc. v. Innovative Intelligent Products, LLC.
Case No.:  2:20-cv-00428-RAJ IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE – 15 November 2023

Zane Curtis v. B & N Clearing & Environmental, LLC, et al.
Civil Action No.:  CV-2019-901739
CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA – 21 August 2024

The Ridge Wallet LLC v. 2895 LLC
Civil Action No.: 1:23-cv-00407-CNS-SP
UNITED STATES DISTRICT COURT
DISTRIC OF COLORADO – 13 September 2024

2985 LLC. v. The Ridge Wallet LLC
Case No. IPR2024-00692
UNITED STATES PATENT AND TRADEMARK OFFICE
PATENT TRIAL AND APPEAL BOARD, WASHINGTON, DC – 14 November 2024

Zane Curtis v. B & N Clearing & Environmental, LLC, et al.
Civil Action No.:  CV-2019-901739
CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA – 28 February 2025

CASES I have provided/am providing litigation support for:

Changzhou Kaidi Electrical Co., Ltd., et al. v. Okin America, Inc., et al.
Case No.: 1:13-cv-1798 IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)

National Products Inc. v. Arkon Resources, Inc.
Case No.: 2:15-cv-01553-RSL IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

National Products Inc v. Belkin, Inc.
Case No.: 2:16-cv-00402-TSZ IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Rio Brands, LLC v. GCI Outdoor
Case No.: 3:17-cv-00786 IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
And ITC Investigation No. 337-TA-1062

Bolson Materials, Inc. v. 3D Systems Corporation
Case No.: 5:14-cv-01441-JRA IN THE
UNITED STATES DISTRIC COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

R.A. Allen Company v. Bell Sports, Inc.
Case No.: 1:16-cv-12087-WGY IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Gary Jones v. United Abrasives, Inc. et al.
Cause No.: CV15-1304 IN THE
DISTRICT COURT, 43RD JUDICIAL DISTRICT
PARKER COUNTY, TEXAS

National Products Inc. v. Bracketron, Inc.
Case No.: 2:16-cv-00109 IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

National Products Inc. v. Arkon Resources, Inc.
Case No.: 2:18-cv-02936 IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

National Products Inc. v. Wireless Accessory Solutions, LLC
Case No.: 2:15-cv-03505 IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

National Products Inc. v. High Gear Specialties, Inc.
Case No.:  6:18-cv-543-Orl-37DCI  IN THE
UNITED STATES DISTRICT COURT
MIDDLE DISTRIC OF FLORIDA
ORLANDO DIVISION

Varidesk LLC v. Ningbo Loctek Visual Technology Corporation et al.
Case 3:15 cv-00907 IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

Varidesk LLC v. Ningbo Loctek Visual Technology Corporation et al.
UNITED STATES INTERNATIONAL TRADE COMMISSION, WASHINGTON, DC
Investigation No. 337-TA-1054

Michael Keshock et al. v. Metabowerke GMBH et al.
Case No.: CV-15-901370 IN THE
CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

Richard Klein v. Burlington County, New Jersey
BURLINGTON COUNTY SUPERIOR COURT, NEW JERSEY

Varidesk LLC v. Albeit, LLC et al.
Investigation No. 337-TA-1125
UNITED STATES INTERNATIONAL TRADE COMMISSION, WASHINGTON, DC

Quest, Inc. v. PopSockets, Inc.
Case No. IPR2018-0497
UNITED STATES PATENT AND TRADEMARK OFFICE
PATENT TRIAL AND APPEAL BOARD, WASHINGTON, DC

Quest, Inc. v. PopSockets, Inc.
Case No. IPR2018-1294
UNITED STATES PATENT AND TRADEMARK OFFICE
PATENT TRIAL AND APPEAL BOARD, WASHINGTON, DC

National Products, Inc. v. Shenzhen Chengshuo Technology Co., Ltd.  et al.
Investigation No. 337-TA-1086
UNITED STATES INTERNATIONAL TRADE COMMISSION, WASHINGTON, DC

PopSockets, Inc. v. Agomax Group Ltd. et al.
Investigation No. 337-TA-1056
UNITED STATES INTERNATIONAL TRADE COMMISSION, WASHINGTON, DC

Limoss US, LLC v. Changzhou Kaidi Electrical Co., Ltd. et al.
Case No.: 1:18-cv-00166 IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
(ABERDEEN DIVISION)

Kaidi LLC et al. v. Limoss US, LLC
Case No. IPR2019-01184
UNITED STATES PATENT AND TRADEMARK OFFICE
PATENT TRIAL AND APPEAL BOARD, WASHINGTON, DC

Smarte Carte, Inc. v. Innovative Vending Solutions, LLC
Case No.: 1:19-cv-08681-NLH-AMD IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Michael Pieczynski v. John Boos Co. et al.
Case No.: 02-CV-2019-900008 IN THE
CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

GCI Outdoor, Inc. v. Denovo Brands, LLC., et al.
Investigation No. 337-TA-1178
UNITED STATES INTERNATIONAL TRADE COMMISSION, WASHINGTON, DC

National Products Inc. v. Innovative Intelligent Products, LLC.
Case No.:  2:20-cv-00428-RAJ IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

National Products Inc. v. Proclip USA, Inc., et al.
Case No.:  3:20-cv-00439-WMC IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

Buddy's Plants Plus Corporation v. Viking Masek Global Packaging Technologies, et al.
Case No.:  20-CV-000145
STATE OF WISCONSIN CIRCUIT COURT, SHEBOYGAN COUNTY

National Products Inc. v. Scanstrut, Inc.
Case No.: 3:19-cv-01322-VLB IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Jacorrien Martin v. Greif., et al.
Civil Action: 2020-900353 IN THE
CIRCUIT COURT OF MOBILE COUNTY, ALABAMA
MOBILE, AL

iFetch LLC v. Shenzhen Coolmate Ltd.
Case No.: 20-CV-1281-DDD-NRN IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

National Products Inc. v. Gamber-Johnson LLC
Case No.: 3:20-cv-11108-WMC IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

Zane Curtis v. B & N Clearing & Environmental, LLC, et al.
Civil Action No.: CV-2019-901739
CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

Shibumi Shade, Inc. v. Beach Shade, LLC
Civil Action No.: 5:21-cv-00256-FL
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Shibumi Shade, Inc. v. Beach Shade, LLC
Civil Action No.: 5:23-cv-00297-FL
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

2985 LLC. v. The Ridge Wallet LLC
Case No. IPR2024-00692
UNITED STATES PATENT AND TRADEMARK OFFICE
PATENT TRIAL AND APPEAL BOARD, WASHINGTON, DC

The Ridge Wallet LLC v. 2895 LLC
Civil Action No.: 1:23-cv-00407-CNS-SP
UNITED STATES DISTRICT COURT
DISTRIC OF COLORADO

Ministrap, LLC. v. Target Corporation
Civil Action No.: 2:23-cv-00330-JRG-RSP
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

Trove Brands, LLC v. Camelbak Products, LLC
Case No.: 5:23-cv-04267-PCP
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

BOA Technology, Inc. v. MacNeill Engineering Company, Inc.
Case No.: 3:23-cv-01431 GPC-JLB
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

National Products Inc. v. Dana Innovations, Inc.
Case No.:  8:25-cv-02499
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

Phillip Poppie v. Allied Waste Transportation, Inc. et al.
Case No.: 25-cv-1328
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION